1  EDWARD O. LEAR, State Bar No. 132699
2  **CENTURY LAW GROUP**
   5200 W. Century Blvd., Suite 345
3  Los Angeles, California 90045
4  Telephone: (310) 642-6900
   Facsimile: (310) 642-6910
5
6  Attorneys for Plaintiff
   OSAMA AHMED FAHMY
7

8              **UNITED STATES DISTRICT COURT**

9          **FOR THE CENTRAL DISTRICT OF CALIFORNIA**

10 OSAMA AHMED FAHMY, an                Case No.: CV 07-05715-CAS (Ex)
   individual,
11                                       **PLAINTIFF'S MEMORANDUM
                                         OF POINTS AND AUTHORITIES
12            Plaintiff,                 IN SUPPORT OF MOTION FOR
                                         AN ORDER SPECIFYING
13        vs.                            MATERIAL FACTS AND ISSUES
                                         OF LAW, INCLUDING FOREIGN
14 Jay-Z (aka Shawn Carter), Timothy    LAW, THAT EXIST WITHOUT
   Mosely, Kyambo Joshua, Rob           SUBSTANTIAL CONTROVERSY**
15 Bourdon, Brad Delson, Mike Shinoda,
   Dave Farrell, Joseph Hahn, Chester   **[Fed. R. Civ. Proc. 44.1 and 56(d)]**
16 Bennington, Big Bad Mr. Han Music,
   Chesterchaz Publishing, EMI          Date:  __       October 18, 2010
17 Blackwood Music Inc., EMI Music      Time:           10:00 a.m.
   Publishing Ltd., Kenji Kobayashi     Courtroom:      5
18 Music, Lil Lulu Publishing, Machine
   Shop Recordings LLC, Marcy Projects
19 Productions II, Inc., MTV Networks
   Enterprise Inc., Nondisclosure
20 Agreement Music, Paramount Home
   Entertainment, Inc., Paramount
21 Pictures Corporation, Radical Media,
   Rob Bourdon Music, Roc-A-Fella
22 Records LLC, Timbaland Productions,
   Inc., UMG Recordings, Inc., Universal
23 Music and Video Distribution Inc., and
   Warner Music Inc.,
24
              Defendants.
25

26

27

28

1

## TABLE OF CONTENTS

2

I.    **INTRODUCTION** ............................................................................................... 1

II.   **SUMMARY OF UNCONTROVERTED MATERIAL FACTS AND
ISSUES OF FOREIGN LAW**..................................................................................... 5

A. Ownership Of The Copyright In The "Khosara Khosara" Musical
Composition…………………………………………………7:21
PM…………………………….5

1.    Baligh Hamdy Authored The "Khosara Khosara" Musical Composition,
And Registered His Copyright In Egypt In 1960 ................................................. 5

2.    "Khosara, Khosara" Was A Work Of Egyptian Origin, Authored By An
Egyptian National. ................................................................................................. 5

4.    Upon Mr. Hamdy's Death, Copyright Ownership In The "Khosara,
Khosara" Musical Composition Passed To His Heirs, Including Plaintiff Osama
Ahmed Fahmy........................................................................................................ 6

B.    Egyptian Law Governs The Moral Rights In The "Khosara, Khosara"
Musical Composition.............................................................................................. 7

1.    Egyptian Law Governs The Moral Rights At Issue In This Case.............. 7

2.    Under Egyptian Law, Moral Rights Are Personal And Inalienable; Thus,
No Transfer, Assignment Or Conveyance Of Moral Rights In The "Khosara,
Khosara" Musical Composition Has Ever Occurred Or Could Occur. ................. 7

C.    Defendants Do Not Have Permission From Any Owner Of Copyright In
The "Khosara Khosara" Musical Composition To Copy That Work In "Big
Pimpin'" Or "Big Pimpin'/Papercut," The Film "Fade To Black," Or Any
Derivative Thereof................................................................................................. 9

III.   **STANDARDS THAT GOVERN THIS MOTION**...................................... 11

IV.   **LEGAL ARGUMENT** .................................................................................. 12

A.    The United States Is Obligated To Provide Copyright Protection For The
Egyptian Work The "Khosara, Khosara" Musical Composition........................... 12

1.    The "Khosara, Khosara" Musical Composition Continues To Be
Protected Under Copyright In Egypt, Which Is The "Source Country." ........... 15

2.    Even If Defendants Could Show That The "Khosara, Khosara" Musical
Composition Entered The Public Domain In The United States For Some
Reason, The Work Is Still Entitled Protection As A "Restored Work" Under
The URAA. .......................................................................................................... 16

3.    Baligh Hamdy Was An Egyptian National When He Created The
"Khosara, Khosara" Musical Composition; The Work Was First Published In
Egypt, Which Is An "Eligible Country"; And The Work Was Not Published In
The United States Within 30 Days After First Publication In Egypt. ................ 17

B.    Issues Of Copyright Ownership And The Essential Nature Of The
Copyrights In This Case Are Governed By Egypt Law. ....................................... 18

ii
--

C.   Plaintiff Is An Owner Of Copyright In the "Khosara Khosara" Musical Composition, And Thus Has Standing To Pursue The Claims Asserted In The Complaint For Infringement Of the Copyright Owner's Exclusive Right To Control Derivative Works......................................................................................19

D.   Issues Of Egyptian Law Regarding The Moral Rights In The "Khosara, Khosara" Musical Composition Are Without Substantial Controversy, And Should Be Adjudicated Upon This Motion. ..........................................................20

1.   Moral Rights In The "Khosara, Khosara" Musical Composition Belong To Mr. Hamdy's Heirs, Including Mr. Fahmy, And Are Perpetual, Inalienable, And Imprescriptible. ..........................................................................................20

2.   The Scope Of Mr. Fahmy's Moral Rights In The "Khosara, Khosara" Musical Composition Is Also Without Substantial Dispute...............................20

E.   No Owner Of Copyright In The Musical Composition "Khosara Khosara" Ever Purported to Grant Any License In That Work.............................................21

F.   As A Matter of Law, No Defendant Could Have, Or Did, Obtain Permission To Engage In Any Conduct That Violated The Copyright Owners' Moral Rights In The "Khosara, Khosara" Musical Composition...........................23

V.   CONCLUSION ...........................................................................................24

--

PLAINTIFF'S MEMO. Ps&As IN SUPPORT OF MOTION FOR ORDER SPECIFYING MATERIAL FACTS AND ISSUES OF FOREIGN LAW THAT EXIST WITHOUT SUBSTANTIAL CONTROVERSY

1

# **TABLE OF AUTHORITIES**

2

3   **CASES**

4   *Access Telecom, Inc. v. MCI Telecommunications Corp.*, 197 F.3d 694, 713 (5ᵗʰ Cir. 1999), *cert. denied*, 531 U.S. 917 (2000) ............................... 12, 19

5   *Bridgeport Music, Inc. v. Dimension Films*, 410 F.3d 792, (6ᵗʰ Cir.
6   2005) ......................................................................................................................22

7   *Cordon Art B.V. v. Walker*, 40 U.S.P.Q.2d 1506, 1996 WL 672969
    (S.D. Cal. 1996).............................................................................................. 13

8   *Cordon Holding B.V. v. Northwest Publishing Corp.*, 63 U.S.P.Q.2d
9   1013, 2002 WL 530991 * 8 (S.D.N.Y. 2002) ............................................. 14, 18

10  *Feist Publications v. Rural Tel. Serv. Co.*, 499 U.S. 340 (1991) ............................3

11  *Films by Jove, Inc. v. Berov*, 154 F.Supp.2d 432 (E.D.N.Y. 2001) ...................... 18

12  *Griffin v. J-Records*, 398 F.Supp.2d 1137 (E.D. Wash. 2005)...............................22

13  *Itar-Tass Russian News Agency v. Russian Kurier, Inc.*, 153 F.3d 82
    (2ⁿᵈ Cir. 1998)............................................................................................... 18, 19

14  *Leicester v. Warner Bros.*, 232 F.3d 1212 (9ᵗʰ Cir. 2000)...................................... 12

15  *Luck's Music Library, Inc. v. Ashcroft*, 321 F.Supp.2d 107, 109
16  (D.D.C. 2004), *aff'd*, 407 F.3d 1262 (D.C. Cir. 2005)........................ 13, 15, 16

17  *McKesson HBOC, Inc. v. Islamic Republic of Iran*, 271 F.3d 1101,
    1108 (D.C. Cir. 2001), *cert. denied*, 537 U.S. 941 (2002), *vacated in*
18  *part*, 320 F.3d 280 (D.C. Cir. 2003)........................................................... 12, 19

19  *Newton v. Diamond*, 388 F.3d 1189, 1191 (9ᵗʰ Cir. 2004), *cert. denied*,
20  545 U.S. 1114 (2005), *citing* 17 U.S.C. § 102(a)(2) and (7).............................22

21  *Russian Academy of Sciences v. American Geophysical Union*, 1998
    WL 34333239 * 11 (D.D.C. 1998)....................................................................... 18

22  *Toho Co., Ltd. v. Priority Records, LLC*, 2002 WL 33840993 (C.D.
23  Cal. 2002) ................................................................................................... 14, 15

24  *Toho Co., Ltd. v. William Morrow and Co., Inc.*, 33 F.Supp.2d 1206............ 15, 22

25  ///
26  ///

27

28
                                    iv
                                    --

1

**STATUTES**

17 U.S.C. § 104A(a) ........................................................................................... 14, 17

17 U.S.C. § 104A(b) ................................................................................................ 18

17 U.S.C. § 104A(d). ............................................................................................... 14

17 U.S.C. § 104A(h) ..................................................................................... 14, 16, 17

17 U.S.C. § 106 ......................................................................................................... 4

F.R.C.P., Rule 44(a) ................................................................................................. 6

F.R.E., Rule 902(3) .................................................................................................. 6

Fed. R. Civ. Proc. 44.1 ..................................................................................... 12, 19

Fed. R. Civ. Proc. 56 ........................................................................................ 11, 12

L.R. 56-3 ................................................................................................................ 12

L.R. 56-4 ................................................................................................................ 11

**TREATISES**

1 Copyright Throughout The World, Ch. 14 "Egypt," (2009) ....................................

........................................................... 8, 15, 16, 19, 21, 22, 25, 26, 27, 28, 29, 30

W. Patry, 2 Patry on Copyright § 3 (2010) ............................................................. 29

W. Patry, 7 Patry on Copyright § 24 (2010) ........................................................... 21

v

# I.   INTRODUCTION

Baligh Hamdy was an Egyptian national and a prolific music composer, who authored hit songs recorded by the leading artists of his time, and played a key role in the renaissance in arts and entertainment that flowered in the Middle East during the 1960s and 1970s. Among the thousands of songs he composed is "Khosara, Khosara." Initial ownership of a copyright work such as "Khosara, Khosara" is determined by the laws in the work's country of origin. In "Khosara, Khosara's" country of origin, the Egyptian copyright society issued a registration identifying Baligh Hamdy as the author and copyright owner of that musical composition. Since Mr. Hamdy passed away in 1993, the Egyptian courts have also issued writs of inheritance, confirming that Osama Fahmy, who is Hamdy's nephew, together with Hamdy's lone surviving sibling and Osama Fahmy's own siblings, inherited the Hamdy estate. Egypt's copyright statute expressly states that authors like Baligh Hamdy retain for their lifetime that portion of the copyright that controls whether fundamental changes, such as derivative works, can be made to the author's copyright work; that those rights descend, on death, to the author's heirs; and that any attempt to make a general transfer of those rights is null and void. Should this Court determine that there is no triable issue as to the ownership of the copyright in the "Khosara, Khosara" musical composition because, by Egyptian statute, that copyright descended to and is owned by Hamdy's heirs, including Mr. Fahmy? Secondarily, in light of the evidence of the Hamdy heirs' copyright ownership, should the Court set this copyright infringement case for trial on the remaining issues of liability and relief?

1 　　　As Hamdy's nephew and heir, Mr. Fahmy sues for infringement of the
2 copyright owners' exclusive right to prepare derivative works based on the
3 "Khosara, Khosara" musical composition. He contends that Defendant Shawn
4 Carter (publicly known as Jay-Z), working with his co-producers, Defendants
5 Mosely, Timbaland and Joshua, copied a recording of "Khosara, Khosara," and
6 thereby copied the underlying musical composition authored by Baligh Hamdy. In
7 the studio, they mixed lyrics written and recorded by Jay-Z with their copy of the
8 "Khosara" recording. As a result, the melody, rhythm and orchestration heard
9 throughout a rap song Jay-Z, Mosely, Timbaland and Joshua produced, titled "Big
10 Pimpin'" is in fact the "Khosara, Khosara" composition, copied by these defendants.
11 Complaint ¶12. "Big Pimpin'" was a smashing success in the popular music
12 markets. The single reached the top of the Billboard charts, the first album on
13 which it was subsequently released, "Jay-Z Vol. 3: Life and Times of S. Carter,"
14 went triple platinum, and critical acclaim was bestowed on Jay-Z and Mosely for
15 their creativity within the rap/hip-hop genre, including, notably, the exotic and
16 mesmerizing music they "created" for "Big Pimpin'".

17 　　　In the years following "Big Pimpin's" initial success, Jay-Z and his co-
18 producers made a host of new derivative music and video works, each of which was
19 separately released to the public, is considered a separate work under the Copyright
20 Act, and is alleged to infringe the "Khosara, Khosara" composition. Complaint
21 ¶¶13-16. Among these new alleged infringing works were an unplugged (acoustic)
22 version of "Big Pimpin'," instrumental and radio-edit (clean language) versions of
23 "Big Pimpin'"; a November 2004 joint CD/DVD titled "Collision Course," on
24 which Jay-Z and the band "Linkin Park" "mashed" (i.e., combined) "Big Pimpin'"
25 with lyrics Linkin Park had previously used in another of that band's songs; an April
26 2005 film produced by Jay-Z, *Fade to Black*, which features another version of "Big
27 Pimpin'" and "Big Pimpin'" cell phone ring tones and callbacks featuring the
28

2

1  "Khosara" music.  Plaintiff alleges that each of these works continues to be
2  distributed, sold and performed in commerce to this day.

3  　　　　To prove defendants committed copyright infringement, Mr. Fahmy must
4  show (1) his ownership of a copyright work, in this case the "Khosara, Khosara"
5  musical composition; and (2) that this musical composition was copied in one or
6  more of defendants' works.  *Feist Publications v. Rural Tel. Serv. Co.*, 499 U.S.
7  340, 361 (1991).  This motion for summary adjudication ("Motion") is directed to
8  the first of these elements.

9  　　　　As to the first element of copyright infringement, there is no triable issue as to
10  whether Mr. Fahmy, as an heir of Baligh Hamdy, co-owns the copyright to
11  "Khosara's" musical composition.  Plainly, that musical composition is a work of
12  Egyptian origin authored by an Egyptian national, Baligh Hamdy.  Its copyright was
13  properly registered in Hamdy's name, with Egypt's official copyright society.  Nor
14  is there any triable issue about whether the copyright transferred after it vested in the
15  composer, Hamdy.  Egyptian copyright law, the law that determines the owner of
16  the "Khosara" copyright, provides that an author's moral rights in a copyright work
17  cannot be the subject of a general sale or transfer, and cannot be divested from the
18  author.  The author's moral rights, which fall within the copyright to an Egyptian
19  work, are inalienable and imprescriptible.  Upon the author's death, they descend to
20  his or her heirs, again, from whom they cannot be divested.

21
22
23
24
25
26
27
28

3

1    It is similarly beyond dispute who Baligh Hamdy's heirs are—they are
2  confirmed in writs of inheritance issued by the Egyptian courts. Those writs of
3  inheritance are stamped by the Egyptian and U.S. embassies and submitted with the
4  evidence supporting this Motion. They are self-authenticating under the federal
5  rules. They specifically identify Plaintiff Osama Fahmy as Baligh Hamdy's heir.[1]

6    Osama Fahmy does not, in his Complaint, allege infringement of the
7  copyright owner's "moral rights." He alleges defendants infringed the copyright
8  owner's exclusive right to make derivative works, including new musical
9  arrangements and synchronizations, based on the copyright work. *See* 17 U.S.C. §
10  106 (enumeration of copyright owner's exclusive rights). And based on Egyptian
11  copyright law, which considers the right to make derivative works to be personal
12  and moral, inalienable, and exercisable only by the author and his or her heirs, the
13  owner of the exclusive right to make derivative works in the musical composition to
14  "Khosara, Khosara" surely must be the composer's heirs. Based on the Egyptian
15  government's writs of inheritance, the composer's heirs necessarily include Mr.
16  Fahmy. Mr. Fahmy has never granted permission for any of the derivative works
17  identified in the Complaint to be made. No evidence exists that any permission was
18  ever obtained from any of the other Hamdy heirs to make a derivative work from the
19  copyright in the "Khosara, Khosara" musical composition. Each of these facts
20  should be determined to be beyond dispute, and a trial on all remaining issues
21  should be scheduled.

22
23

24    [1] Mr. Hamdy's other living heirs (Plaintiff's uncle and his siblings) have provided Plaintiff—who
25  manages Mr. Hamdy's estate--a power of attorney to prosecute this copyright infringement action.
   Statement of Undisputed Facts filed herewith, No. 16. For that reason, and because of their
26  advanced age and residency abroad, in Egypt, Plaintiff's uncle and siblings have not been named
   as co-plaintiffs; however, Plaintiff has stated to defendants, and repeats here, that they may be
27  named as co-plaintiffs prior to trial should any rule require as much.
28
                                                    4

II.  **SUMMARY OF UNCONTROVERTED MATERIAL FACTS AND ISSUES OF FOREIGN LAW.**

    A.  **Ownership Of The Copyright In The "Khosara Khosara" Musical Composition.**

        1.  Baligh Hamdy Authored The "Khosara Khosara" Musical Composition, And Registered His Copyright In Egypt In 1960.

Baligh Hamdy was the author of the musical composition "Khosara, Khosara."[2]  *See* Plaintiff's Statement of Uncontroverted Facts ("UF") 1 (filed concurrently).  Mr. Hamdy's authorship of "Khosara, Khosara" is evidenced by his 1960 registration of his copyright interest in that musical composition with "SACERAU," the Egyptian Society of Authors, Composers, and Publishers.  UF 2.

        2.  "Khosara, Khosara" Was A Work Of Egyptian Origin, Authored By An Egyptian National.

Plaintiff's uncle, Baligh Hamdy, was an Egyptian national, and the "Khosara, Khosara" musical composition that Mr. Hamdy authored was a work of Egyptian origin.  UF 3.  In addition, Mr. Hamdy's declaration of his work to SACERAU, as shown by the copyright certificate issued by SACERAU, constitutes Mr. Hamdy's declaration that the "Khosara, Khosara" musical composition was a work of Egyptian origin authored by an Egyptian national.  UF 4.

        3.  "Khosara, Khosara" Was First Published In Egypt.

"Khosora, Khosara" was first released in Egypt in the 1960s when Abdel Halim Hafez recorded it.  UF 5.  It was not authorized for release in the United States at that time.  UF 5.

        4.  Upon Mr. Hamdy's Death, Copyright Ownership In The "Khosara, Khosara" Musical Composition Passed To His Heirs,

---

[2]  Because it was originally written in Arabic, the "Khosara, Khosara" title's transliteration into the English alphabet has seen numerous alternative English spellings, such as "Khasara, Khasara."

5

1          Including Plaintiff Osama Ahmed Fahmy.

2          As explained in more detail below, Plaintiff Osama Ahmed Fahmy is one of

3   Mr. Hamdy's rightful heirs, and Mr. Fahmy therefore has standing to assert the

4   claims in this lawsuit. UF 7 - 16. F.R.C.P., Rule 44(a)(2), F.R.E., Rule 902(3) (self-

5   authentication for consularized Egyptian documents attached through Exhibit 1 to

6   Lear Decl.)

7          Mr. Hamdy died on September 12, 1993. UF 8. Upon Baligh Hamdy's death,

8   his three siblings – Mr. Morsy Saad El-Din, Ms. Safia Abdel Hamid Hamdy Morsy,

9   and Ms. Asmaa Abdel Hamid Hamdy – inherited Baligh Hamdy's copyright

10  ownership in the musical composition "Khosara, Khosara." UF 9. Under Egyptian

11  succession laws, Mr. Morsy Saad El-Din inherited a 50% ownership interest in

12  "Khosara Khosara," and his sisters – Ms. Safia Abdel Hamid Hamdy Morsy, and

13  Ms. Asmaa Abdel Hamid Hamdy – each inherited a 25% ownership interest in the

14  composition. UF 10.

15         On December 12, 1993, Ms. Safia Abdel Hamid Hamdy Morsy died, and her

16  25% ownership interest in the "Khosara Khosara" musical composition was

17  inherited by her two siblings, Ms. Asmaa Abdel Hamid Hamdy and Mr. Morsy Saad

18  El-Din. UF 11. Under Egyptian succession laws, Mr. Morsy Saad El-Din inherited

19  2/3 of Ms. Safia Abdel Hamid Hamdy Morsy's 25% ownership interest in the

20  "Khosara Khosara" musical composition, and Ms. Asmaa Abdel Hamid Hamdy

21  inherited the remaining 1/3. UF 12. Thus, upon Ms. Safia Abdel Hamid Hamdy

22  Morsy's death, the copyright ownership in the "Khosara Khosara" musical

23  composition was held jointly, in the following percentages: Mr. Morsy Saad El-Din

24  owned 2/3, and Ms. Asmaa Abdel Hamid Hamdy owned 1/3. UF 13.

25         On December 26, 2002, Ms. Asmaa Abdel Hamid Hamdy died, and her four

26  children inherited her 1/3 interest in the "Khosara Khosara" musical composition, as

27  follows: (1) Mr. Ossama Fahmy – 2/5; (2) Ms. Iman Fahmy – 1/5; (3) Ms. Ayah

28  Fahmy – 1/5; and (4) Ms. Omneya Fahmy – 1/5. UF 14. Mr. Morsy Saad El-Din

1  continued to own the remaining 2/3 interest.  UF 15.

2     **B.**    **Egyptian Law Governs The Moral Rights In The "Khosara,**

3            **Khosara" Musical Composition**.

4         1.   Egyptian Law Governs The Moral Rights At Issue In This Case.

5     As explained above in Section II.A.1 and 2, the "Khosara, Khosara" musical

6  composition was authored by Mr. Hamdy, who was an Egyptian national at the time.

7  "Khosara Khosara" was also first published in Egypt.  *See* Section II.A.3.  Thus,

8  Egypt law governs the moral rights in the "Khosara Khosara" musical composition

9  that are at issue.  *See* Loutfi Decl., ¶ 6, Ex. B; *see also*, Section IV, below.

10       2.   Under Egyptian Law, Moral Rights Are Personal And

11             Inalienable; Thus, No Transfer, Assignment Or Conveyance Of

12             Moral Rights In The "Khosara, Khosara" Musical Composition

13             Has Ever Occurred Or Could Occur.

14     Under Egyptian law, "moral rights are perpetual, inalienable, and

15  imprescriptable."  1 Copyright Throughout the World §§ 14:20, *citing* Article 143 of

16  Egypt's Intellectual Property Law No. 82 of 2002 (the "IP Code").[3]  "Therefore,

17  whilst the author can assign or transfer any or all of his economic rights, a

18  disposition of any of the moral rights is null and void."  *Id.* § 14:29, *citing* Article

19  145 of the IP Code.

20     The law was the same when Baligh Hamdy authored the "Khosara, Khosara"

21  musical composition.  As Dr. Loutfi explains:

22     "Article 38 of Egypt's Law No. 354 of the Year 1954, titled 'Law on

23

24  [3] Egypt's current IP Code came into force on June 3, 2002.  1 Copyright
Throughout The World § 14:2.  The IP Code is divided into four books that deal
25  with patents, trade marks, author's rights and neighboring rights, and plant varieties,
respectively.  *Id.*  "The protection of literary and artistic works, as well as
26  neighboring rights, is governed by the Author's Rights Law of Book Three, Articles
138 to 188 of the IP Code."  *Id.*  Plaintiff's expert, Dr. Loutfi, was "the author of the
27  draft of the third book of Egypt's new law No. 82 for the year 2002 in regard to the
protection of intellectual property, including author's rights, and the neighboring
28  rights."  Loutfi Decl., ¶ 3.

7

1   Protecting the Author's Rights,' states that any transfer or assignment of the
2   moral rights of an author shall be null and void.  As to a work of Egyptian
3   origin, the author's moral rights in that work are personal to the author and
4   inalienable.  Any assignment of one or more of those rights is prohibited, as
5   they may be exercised, for the life of the work, solely by the author or his
6   heirs; and consents to exploit a work through the use of the moral rights may
7   be granted by the author or his heirs on a case-by-case basis in consideration
8   of the specific use proposed, prior to placing the proposed new, derivative
9   work into public circulation."

10  Loutfi Decl. ¶ 9, Ex. D.

11      Thus, these moral rights in the "Khosara, Khosara" musical composition
12  belonged exclusively to Mr. Hamdy during his lifetime, and passed to his heirs after
13  his death.  *Id.*

14          3.      The Scope Of Moral Rights Under Egyptian Law.

15      Under Egyptian copyright law, "moral rights" in a musical composition, like
16  "Khosara, Khosara" include the right to make derivative works, the right to make
17  new arrangements, the right to synchronize the composition with images or moving
18  pictures, and the right to make any other fundamental alteration of the composition.
19  Loutfi Decl., ¶ 9.  As Dr. Loutfi explains:

20      "Under Law No. 354, the author's inalienable moral rights include the right to
21  make modifications or changes to his work, and the right to relate, or attribute
22  the work to the author or claim authorship of that work.  The right to make
23  derivative works, recognized under the United States Copyright Act, is one of
24  the rights falling within what is considered a personal and inalienable moral
25  right in Egypt.  Only the rights that in Egypt are called the 'financial rights'
26  may be the subject of a general transfer by the author.  The financial rights,
27  under Egyptian law, are limited to the right to perform, reproduce and
28  distribute a work to the public without alteration.  These financial rights are

1   similar to what, in the United States, fall within compulsory licenses for
2   recording and performing works without altering their fundamental nature and
3   integrity."

4   Loutfi Decl., ¶ 9, Ex. D.

5       **C.**      **Defendants Do Not Have Permission From Any Owner Of**
6               **Copyright In The "Khosara Khosara" Musical Composition To**
7               **Copy That Work In "Big Pimpin'" Or "Big Pimpin'/Papercut,"**
8               **The Film "Fade To Black," Or Any Derivative Thereof.**

9       The Complaint alleges that defendants' infringing works include "Big
10  Pimpin'," "Big Pimpin'/Papercut," and the documentary film *Fade to Black*.
11  Complaint ¶ 3. There is no evidence that any defendant had permission from any
12  owner of copyright in the "Khosara, Khosara" musical composition to copy that
13  work in "Big Pimpin'," "Big Pimpin'/Papercut," the documentary film *Fade to*
14  *Black* or in any other work derivative thereof.

15      To the contrary, Plaintiffs' expert, Dr. Loutfi, has reviewed the documents
16  upon which defendants apparently rely for a purported license or other transfer of
17  such rights, and no such license or transfer of rights exists. *See* Loutfi Decl., ¶¶ 7-9.

18      First, as discussed in Section II.B above, no transfer of moral rights in the
19  "Khosara, Khosara" musical composition, that is to say, the right to make
20  fundamental changes in it through derivative works, was possible under Egyptian
21  law, and thus no defendant could have, or ever did, obtain any such moral (or
22  derivative works) rights.

23      Second, no document produced by defendants in this case granted any
24  defendant in this case any right to make derivative works from the "Khosara,
25  Khosara" musical composition, including the right to arrange, record and perform
26  any derivative work with new lyrics, or synchronization with video and film. Loutfi
27  Decl. ¶ 8. Similarly, no document produced by defendants in this case granted any
28  defendant any right to make changes or modifications to the "Khosara, Khosara"

9

PLAINTIFF'S MEMO. Ps&As IN SUPPORT OF MOTION FOR ORDER SPECIFYING MATERIAL FACTS AND
ISSUES OF FOREIGN LAW THAT EXIST WITHOUT SUBSTANTIAL CONTROVERSY

1 musical composition, or to insert the musical composition or a sampling thereof into
2 another work. *Id.*

3     Defendants apparently rely upon, and Dr. Loutfi therefore reviewed, the
4 SACERAU records of a "registration of the copyright for musical recordings
5 produced by Sout El Phan Company" which "include "Khosara Khosara." Loutfi
6 Decl. ¶ 7, and Ex. C. This registration by Sout El Phan of copyright in musical
7 recordings "is the Egyptian equivalent of what is called in the United States a 'sound
8 recording" copyright." *Id.* However, Sout El Phan's musical *recording* copyright
9 was limited, and did not include the power to grant any license or other right to any
10 defendant with respect to the underlying "Khosara Khosara" musical *composition*:

11     "As the Arabic certificate recites, Sout El Phan Company's copyright in the
12 musical recording allows it the exclusive right to edit and distribute the
13 recording of 'Khosara Khosara' and the other works listed on this certificate.
14 In Egypt, the words 'edit' and 'editor' are terms of art that refer to the
15 reproduction of sound recordings by technical means such as pressing CDs.
16 As the copyright certificate also recites, Sout El Phan does not hold the right
17 to make changes or modifications to the composition, or to insert the said
18 changes and/or modifications into another work, without obtaining a prior
19 written consent from the author of the composition of his heirs, as SACERAU
20 is not entitled to exercise any of the moral rights of its members."

21 Loutfi Decl., ¶ 7.

22     In addition to SACERAU's records, Dr. Loutfi reviewed the following
23 documents produced by defendants in this case:

24 ▶    the License Agreement dated December 11, 1995 between Sout El Phan Co.
25 and EMI Music Arabia FZE and attachments (bates numbers EMI 0001 through
26 EMI 0044 inclusive);

27 ▶    an agreement dated 1997 between EMI Music Arabia FZE and EMI Music
28 Publishing Limited (bates numbers EMI 0045 through EMI 0069 inclusive);

1  ▶  a Settlement Agreement dated March 30, 2001 between Timothy Mosley,
2  individually and d/b/a and/or p/k/a Timbaland Productions, Inc., Virginia Beach
3  Music and Timbaland, on the one hand, and EMI Music Arabia, on the other hand
4  (bates numbers EMI 0070 – EMI 0078, inclusive);

5  ▶  an agreement dated August 30, 2001 between Arc Music Incorporated and
6  Roc-a-Fella Records, LLC (bates numbers TB 0030 – TB 0042, inclusive); and

7  ▶  an agreement dated February 12, 1968 between Sout El Phan Co. and Baligh
8  Hamdy (bates numbers P 031 – P 033, inclusive).  Dr. Loutfi's conclusion, based
9  upon his review of these documents and of SACERAU's records, is that there is no
10  "agreement indicating any transfer at all, from the copyright holder to Sout El Phan
11  Company or any of the defendants in this case, of the right to make derivative works
12  from the 'Khosara Khosara' musical composition, including the right to arrange,
13  record and perform any derivative work with new lyrics." Loutfi Decl. ¶ 8.  Nor did
14  any of these documents purport to grant Sout El Phan Co. or any of the other
15  defendants in this case the right to make changes or modifications to the 'Khosara
16  Khosara' musical composition, or to insert the musical composition or a sampling
17  thereof into another work." *Id.*

18  **III.  STANDARDS THAT GOVERN THIS MOTION.**

19  "A party claiming relief may move, with or without supporting affidavits, for
20  summary judgment on all *or part* of the claim." Fed. R. Civ. Proc. 56(a) (emphasis
21  added).  "If summary judgment is not rendered on the whole action, the court
22  should, to the extent practicable, determine what material facts are not genuinely in
23  issue." Fed. R. Civ. Proc. 56(d)(1); *see also* L.R. 56-4 (authorizing motion for order
24  specifying material facts that appear without substantial controversy).  "The court
25  should so determine by examining the pleadings and evidence before it and by
26  interrogating the attorneys." *Id.*  "It should then issue an order specifying what facts
27  – including items of damages or other relief – are not genuinely at issue." *Id.*  "The
28  facts so specified must be treated as established in the action." Fed. R. Civ. Proc.

11

1 56(d)(1).

2     This Court "will assume that the material facts as claimed and adequately

3 supported by the moving party are admitted to exist without controversy except to

4 the extent that such material facts are (a) included in the 'Statement of Genuine

5 Issues' and (b) controverted by declaration or other written evidence filed in

6 opposition to the motion." L.R. 56-3.

7     As an issue of law, a determination of foreign law is appropriate for summary

8 judgment. Fed. R. Civ. Proc. 44.1; *McKesson HBOC, Inc. v. Islamic Republic of*

9 *Iran*, 271 F.3d 1101, 1108 (D.C. Cir. 2001), *cert. denied*, 537 U.S. 941 (2002),

10 *vacated in part*, 320 F.3d 280 (D.C. Cir. 2003); *Access Telecom, Inc. v. MCI*

11 *Telecommunications Corp.*, 197 F.3d 694, 713 (5th Cir. 1999), *cert. denied*, 531 U.S.

12 917 (2000).

13 **IV.    LEGAL ARGUMENT.**

14     **A.    The United States Is Obligated To Provide Copyright Protection**

15         **For The Egyptian Work The "Khosara, Khosara" Musical**

16         **Composition.**

17     As explained below, the United States is obligated to protect the Plaintiff's

18 rights in the "Khosara, Khosara" musical composition under applicable international

19 conventions, treaties and agreements.

20     The United States and Egypt are both parties to the Berne Convention for the

21 Protection of Literary and Artistic Works (the "Berne Convention"). "On March 1,

22 1989, the United States joined the Berne Convention." *Leicester v. Warner Bros.*,

23 232 F.3d 1212, 1217 (9th Cir. 2000). Egypt ratified the Berne Convention even

24 earlier, in 1977. 1 Copyright Throughout the World, Ch. 14 "Egypt," § 14:8 n. 1

25 (2009).

26     One of the obligations of the United States under Berne Convention is its

27 recognition of a "Rule of Retroactivity," which states that the Berne Convention

28 applies "to all works which, at the moment of its coming into force, have not yet

---

1  fallen into the public domain in the country of origin through the expiry of the term
2  of protection." *Luck's Music Library, Inc. v. Ashcroft*, 321 F.Supp.2d 107, 109
3  (D.D.C. 2004), *aff'd*, 407 F.3d 1262 (D.C. Cir. 2005). In order to implement the
4  Berne Convention and bring the United States into compliance with the Rule of
5  Retroactivity, the United States Congress enacted Section 514 of the Uruguay
6  Round Agreements Act (the "URAA"), Pub.L. No. 103-665, which amended 17
7  U.S.C. § 104A. *Id.* "The URAA implemented the General Agreement on Tariffs
8  and Trade 1994 ('GATT'). S. REP. No. 103-412, at 3, (Nov. 22, 1994). Title V of
9  the URAA implements the Agreement on Trade Related Aspects of Intellectual
10  Property Rights ('TRIPs'), which requires compliance with the Articles 1-21 of the
11  Berne Convention. *Id.*" *Luck's Music*, 321 F.Supp.2d at 109 n. 1. Like the United
12  States, Egypt is a member of the World Trade Organization, and has ratified TRIPs.
13  1 Copyright Throughout the World, Ch. 14 "Egypt," § 14:8 n. 4 (2009).

14      Defendants may contend that Mr. Fahmy is not entitled to protect copyright in
15  the "Khosara, Khosara" musical composition under United States law because
16  "Khosara Khosara" has fallen into the public domain in the United States. Any such
17  argument would fail as a matter of law. *See Cordon Art B.V. v. Walker*, 40
18  U.S.P.Q.2d 1506, 1996 WL 672969 at * 6 (S.D. Cal. 1996) (for a "restored work"
19  the URAA "makes makes any such entrance into the public domain irrelevant"). As
20  we explain more fully below, even if "Khosara, Khosara" musical composition were
21  not otherwise protected under United States Copyright law or international treaties
22  before the URAA, the "Khosara, Khosara" musical composition is now a "restored
23  work"[4] under the URAA and "[c]opyright subsists" therein and vested

24  ⁴ A "restored work" is defined in the URAA, in pertinent part, as follows:
25       "The term 'restored work' means an original work of authorship that –
         (A) is protected under subsection (a);
26       (B) is not in the public domain in its source country through expiration of
         term of protection;
27       (C) is in the public domain in the United States due to –
              (i) noncompliance with formalities imposed at any time by United
28            States copyright law, including failure of renewal, lack of proper
              notice, or failure to comply with any manufacturing requirements;

1  "automatically on the date of restoration," which in this case was January 1, 1996.[5]

2  17 U.S.C. § 104A(a)(1)(A).

3  Under Section 104A, "a work that has lost its copyright status is restored to

4  the state it would have had if the work had never fallen into the public domain in the

5  first place." *Cordon Holding B.V. v. Northwest Publishing Corp.*, 63 U.S.P.Q.2d

6  1013, 2002 WL 530991 * 8 (S.D.N.Y. 2002), *citing* 17 U.S.C. § 104A(a)(1). "If a

7  copyright is restored, after the restoration date, the copyright holder can enforce the

8  copyright against infringers, notwithstanding the fact that the copyright had earlier

9  fallen into the public domain." *Id.*, *citing* 17 U.S.C. § 104A(d).

10  A "restored work" is one which: (1) is not in the public domain in the source

11  country through the expiration of the term of protection; (2) is in the public domain

12  in the United States for one or more of the reasons listed in Section 104A(h)(6)(C);

13  and (3) has at least one author who was, at the time the work was created, a national

14  or domiciliary of an eligible country and, if the work was published, it was first

15  published in an eligible country and not published in the United States during the

16  30-day period following publication in the eligible country. *Cordon Holding*, 2002

17  WL 530991 at * 8; *see also Toho Co., Ltd. v. Priority Records, LLC*, 2002 WL

18  33840993 at * 5 (C.D. Cal. 2002) (discussing elements of a "restored work"). For

19
20  ... or
    (iii) lack of national eligibility;
    (D) has at least one author or rightholder who was, at the time the work was
21  created, a national or domiciliary of an eligible country, and if published, was
    first published in an eligible country and not published in the United States
22  during the 30-day period following publication in such eligible country...."
    17 U.S.C. § 104A(h)(6).

23  [5] The "'date of restoration' of a restored copyright is ... January 1, 1996, if the
    source country of the restored work is a nation adhering to the Berne Convention or
24  a WTO member country on such date..." 17 U.S.C. § 104A(h)(2). Egypt adhered
    to the Berne Convention in 1977, and was a WTO member country as of January 1,
25  1996. 1 Copyright Throughout the World, Ch. 14 "Egypt," § 14:8 n. 1 and 4. Egypt
    meets the Section 104A(h)(8) definition of the "source country" because the
26  "Khosara, Khosara" musical composition was first published in Egypt, and because
    Egypt was an "eligible country" – *i.e.*, a nation, other than the United States, that on
27  the date of the URAA's enactment was "a nation adhering to the Berne
    Convention." 17 U.S.C. § 104A(h)(2), (3) and (8).
28
    14
    --

1  example, in *Luck's Music* the works at issue included "music composed and
2  published in countries ineligible for copyright in the United States due to their
3  refusal to provide reciprocal protection," including "Russian works published in the
4  former Soviet Union" which "remained in the public domain in the United States."
5  321 F.Supp.2d at 110. "Congress' passage of [the URAA] restored copyright to
6  these works." *Id.*

7  Similarly, *Toho* concerned, among other things, the musical composition
8  "Godzilla's Theme," which was first published in Japan in 1962. 2002 WL
9  33840993 at * 5. The defendants in *Toho* asserted that the "Godzilla's Theme"
10 musical composition was in the public domain in the United States for failure to
11 comply with copyright formalities under United States law. *Id.* at ** 4-5. The
12 District Court disagreed, finding that all of the requirements for a "restored work"
13 were satisfied: "[h]ad the 'Godzilla's Theme' musical composition entered the
14 public domain, it would have been automatically restored under the [URAA] for the
15 remainder of the term of copyright that the work would have otherwise been granted
16 in the United States had it not entered the public domain." *Id.* at * 6, *citing Toho*
17 *Co., Ltd. v. William Morrow and Co., Inc.*, 33 F.Supp.2d 1206, 1216 (C.D. Cal.
18 1998) (holding that even if certain Godzilla photographs could be considered to
19 have entered the public domain due to publication without notice, they would have
20 been restored to copyright protection under the URAA).

21 Even if defendants were to come forward with evidence that the "Khosara,
22 Khosara" musical composition at one time entered the public domain in the United
23 States for some reason, the work is still entitled to copyright protection now because
24 it qualifies as a "restored work" under the URAA, for the following reasons.

25  1.  The "Khosara, Khosara" Musical Composition Continues To Be
26     Protected Under Copyright In Egypt, Which Is The "Source
27     Country."

28 Baligh Hamdy, the author of the "Khosara, Khosara" musical composition,

1  died on September 12, 1993.  UF 8.  Under Egyptian law, "the general term of
2  protection of economic rights is 50 years post mortem auctoris."  1 Copyright
3  Throughout The World, Ch. 14 "Egypt," § 14:23(a) (2009).  Thus, Egyptian law will
4  continue to protect the *economic* rights in the "Khosara, Khosara" musical
5  composition until 2043 – 50 years after Mr. Hamdy's death.

6      However, rights that constitute "moral rights" under Egyptian law "are
7  perpetual and imprescriptible."  *Id* at § 14:23(b).  Thus, Egyptian law will continue
8  to protect the moral rights in the "Khosara, Khosara" musical composition in
9  perpetuity.  The power to protect those rights presently resides in Mr. Hamdy's
10  surviving heirs, including the Plaintiff.  *Id.*

11          2.      Even If Defendants Could Show That The "Khosara, Khosara"
12                  Musical Composition Entered The Public Domain In The United
13                  States For Some Reason, The Work Is Still Entitled Protection
14                  As A "Restored Work" Under The URAA.

15      Defendants may contend that Mr. Hamdy did not comply with United States
16  copyright formalities with respect to the "Khosara, Khosara" musical composition.
17  Defendant may also contend that the "Khosara, Khosara" musical composition
18  entered the public domain in the United States because when the work was first
19  published in Egypt there was a "lack of national eligibility" because Egypt and the
20  United States had not at that time agreed to grant each other reciprocal copyright
21  protections.  Any such argument must fail as a matter of law because the URAA
22  expressly restored copyright protection in the United States under all such
23  circumstances.  17 U.S.C. § 104A(h)(6)(C); *Luck's Music*, 321 F.Supp.2d at 110
24  (URAA restored copyright in works that formerly lacked national eligibility);
25  *Cordon Holding*, 2002 WL 530991 at * 8 (the URAA "resuscitate[d] past copyrights
26  which had been lost due to failure to comply with various formalities of U.S. law,
27  including the copyright notice requirement"); *Toho*, 2002 WL 33840993 at * 5
28  (URAA restored United States copyright lost due to failure to renew copyright in the

16

1  United States or other failure to comply with statutory formalities).

2      No filing with the United States Copyright Office or any other formality was
3  required to grant protection to "Khosara, Khosara" as a "restored work" under the
4  URAA.  When the URAA came into effect, Egypt had already adhered to the Berne
5  Convention, and Egypt is also a WTO member.  1 Copyright Throughout The
6  World, Ch. 14 "Egypt," § 14:8 (2009) (Egypt adhered to Berne in 1977, and joined
7  the WTO as part of the Uruguay Round Agreements).  "Restored work" status for
8  "Khosara, Khosara" was therefore automatic as soon as the URAA came into effect.
9  17 U.S.C. § 104A(a)(1)(A) (restored work status "vests automatically on the date of
10  restoration"); W. Patry, 7 Patry on Copyright § 24:29 (2010) (if source country of
11  the restored work was a Berne or WTO member, copyright in all preexisting original
12  works of authorship from that county was automatically restored).

13      The term of protection for a "restored work" that was published before
14  January 1, 1978 "is 95 years from the date of first publication or registration."  W.
15  Patry, 7 Patry on Copyright § 24:36 (2010).  Since the "Khosara, Khosara" musical
16  composition was first released in Egypt and registered with Egypt's Copyright
17  Society in or about 1960 [see UF 2, UF 6], it will continue to have protection under
18  United States law as a "restored work" until at least 2055.

19      3.   Baligh Hamdy Was An Egyptian National When He Created The
20          "Khosara, Khosara" Musical Composition; The Work Was First
21          Published In Egypt, Which Is An "Eligible Country"; And The
22          Work Was Not Published In The United States Within 30 Days
23          After First Publication In Egypt.

24      Mr. Hamdy was an Egyptian national when he authored the "Khosara,
25  Khosara" musical composition and when that work was first published in Egypt.
26  UF 3, 4.  Egypt is an "eligible country" under the URAA, because when the URAA
27  came into effect Egypt was "a nation adhering to the Berne Convention," and Egypt
28  joined the WTO as part of Uruguay Round Agreements.  17 U.S.C. § 104A(h)(3)

1 (definition of "eligible country"); 1 Copyright Throughout The World, Ch. 14
2 "Egypt," § 14:8.

3 Further, the "Khosara, Khosara" musical composition was first released in
4 Egypt in the 1960s and was not authorized for publication in the United States at
5 that time. UF 6.

6 Given the foregoing, there is no material dispute that the United States is
7 obligated to provide copyright protection for the "Khosara, Khosara" musical
8 composition.

9      **B.      Issues Of Copyright Ownership And The Essential Nature Of The**
10             **Copyrights In This Case Are Governed By Egypt Law.**

11 Initial ownership of a copyrighted work is determined by the laws in the
12 work's country of origin. *Itar-Tass Russian News Agency v. Russian Kurier, Inc.*,
13 153 F.3d 82, 90 (2nd Cir. 1998) ("Since the works at issue were created by Russian
14 nationals and first published in Russia, Russian law is the appropriate source of law
15 to determine issues of ownership of rights."). The law of the country of origin
16 governs the "essential nature of the copyrights alleged to have been infringed." *Itar-*
17 *Tass,* 153 F.3d at 84. The law of the country of origin also governs the effectiveness
18 of a purported transfer of copyright ownership. *See Russian Academy of Sciences v.*
19 *American Geophysical Union*, 1998 WL 34333239 * 11 (D.D.C. 1998) (looking to
20 Russian law to answer question of whether copyright interests of Russian authors
21 were effectively transferred). Likewise, the initial vesting of copyright in a
22 "restored work" under the URAA is also determined by the law of the source
23 country. 17 U.S.C. § 104A(b) ("A restored work vests initially in the author or
24 initial rightholder of the work as determined by the law of the source country of the
25 work."); *Cordon Holding B.V. v. Northwest Publishing Corp.*, 63 U.S.P.Q.2d 1013,
26 2002 WL 530991 * 8 (S.D.N.Y. 2002); *Films by Jove, Inc. v. Berov*, 154 F.Supp.2d
27 432, 448 (E.D.N.Y. 2001) (Russian law applied to question of initial copyright
28 ownership for purposes of applying the URAA).

18

1    "The court, in determining foreign law, may consider any relevant material or
2    source, including testimony, whether or not submitted by a party or admissible
3    under the Federal Rules of Evidence. The court's determination shall be treated as a
4    ruling on a question of law." Fed. R. Civ. Proc. 44.1. "Determination of a foreign
5    country's law is an issue of law." *Itar-Tass*, 153 F.3d at 92. Since a determination
6    of Egyptian law presents a question of law for the Court, it may properly be
7    adjudicated by summary judgment. *McKesson HBOC, Inc. v. Islamic Republic of*
8    *Iran*, 271 F.3d 1101, 1108 (D.C. Cir. 2001), *cert. denied*, 537 U.S. 941 (2002),
9    *vacated in part*, 320 F.3d 280 (D.C. Cir. 2003); *Access Telecom, Inc. v. MCI*
10   *Telecommunications Corp.*, 197 F.3d 694, 713 (5th Cir. 1999), *cert. denied*, 531 U.S.
11   917 (2000) ("In general, summary judgment is appropriate to determine the content
12   of foreign law.").

13       **C.   Plaintiff Is An Owner Of Copyright In the "Khosara Khosara"**
14            **Musical Composition, And Thus Has Standing To Pursue The**
15            **Claims Asserted In The Complaint For Infringement Of the**
16            **Copyright Owner's Exclusive Right To Control Derivative Works.**

17       As a general rule, under Egyptian law, "the author is the first owner of the
18   work." 1 Copyright Throughout the World, Ch. 14 "Egypt" § 14:29 (2009). "As
19   such, the author is vested with economic as well as moral rights." *Id.* "Both sets of
20   rights are transmissible mortis causa." *Id.*

21       Under Egypt law, "economic" or "financial" rights in a work of authorship
22   are protected for "50 years post mortem auctoris." *Id.* § 14:23.[6] Moral rights, by
23   contrast, "are perpetual and imprescriptible." *Id.* "In the absence of an heir or
24   legatee, and after the expiry of the term of protection for economic rights, the
25   Competent [Egyptian] Ministry is empowered to exercise these [moral] rights." *Id.*

26   [6] As Dr. Loutfi explains, the "financial" or 'economic' rights under Egyptian copyright law are
27   limited to the right to perform, reproduce and distribute a work to the public without alteration.
     Loutfi Decl. ¶9. These rights, which are similar to mechanical licensing rights in the U.S., are not
28   alleged to be infringed in Plaintiff's Complaint.

19

1     In this case, the economic or financial rights in the "Khosara, Khosara"

2 musical composition are protected by Egyptian law for 50 years after Mr. Hamdy's

3 death, or until 2043. The moral rights in the "Khosara, Khosara" musical

4 composition at present belong to his heirs, and are "perpetual, inalienable, and

5 imprescriptible." *Id.* § 14:20.

6     As explained above in Section II.A.4, Plaintiffs Osama Ahmed Fahmy is one

7 of Mr. Hamdy's heirs; indeed he is the very heir in charge of administering the

8 estate. *See* UF 7 - 16. Mr. Fahmy therefore indisputably owns an interest in the

9 copyright in the musical composition "Khosara, Khosara" (including specifically

10 that portion of the copyright considered the moral rights in Egypt); for this reason,

11 too, he has standing to assert the copyright infringement claims in the Complaint.

12     **D.**     **Issues Of Egyptian Law Regarding The Moral Rights In The**

13         **"Khosara, Khosara" Musical Composition Are Without**

14         **Substantial Controversy, And Should Be Adjudicated Upon This**

15         **Motion.**

16         1.     Moral Rights In The "Khosara, Khosara" Musical Composition

17              Belong To Mr. Hamdy's Heirs, Including Mr. Fahmy, And Are

18              Perpetual, Inalienable, And Imprescriptible.

19     "[T]he Egyptian legislature recognized moral rights as perpetual, inalienable

20 and imprescriptible." 1 Copyright Throughout the World, Ch. 14 "Egypt" § 14:29

21 (2009); *see also id.* § 14:20 ("moral rights are perpetual, inalienable, and

22 imprescriptible"). "Therefore, whilst the author can assign or transfer any or all of

23 his economic rights, a disposition of any of the moral rights is null and void." *Id.* §

24 14:29; *see also* Loutfi Decl., ¶ 9 (Egyptian moral rights are inalienable).

25         2.     The Scope Of Mr. Fahmy's Moral Rights In The "Khosara,

26              Khosara" Musical Composition Is Also Without Substantial

27              Dispute.

28

20

1         Plaintiff's expert, Dr. Loutfi, has explained the scope of protected moral

2 rights in the "Khosara, Khosara" musical composition under the Egyptian law that

3 was in effect at the time of its creation and first publication:

4         "Under Law No. 354, the author's inalienable moral rights include the right to

5         make modifications or changes to his work, and the right to relate, or attribute

6         the work to the author or claim authorship of that work. The right to make

7         derivative works, recognized under the United States Copyright Act, is one of

8         the rights falling within what is considered a personal and inalienable moral

9         right in Egypt."

10 Loutfi Decl., ¶ 9.

11 An author's moral rights under Egyptian law include not just the right to make or

12 authorize derivative works and other fundamental changes to a copyright work, but

13 also "the right to be identified as the author of the work," as well as "the right to

14 object to any modification of his work, which in his view amounts to mutilation or

15 distortion of the work" – the "right of integrity." 1 Copyright Throughout the World,

16 Ch. 14 "Egypt" § 14:20 ("Moral Rights"). "Whilst under Article 6*bis* of the Berne

17 Convention, the right of integrity is subject to an objective test under Egyptian law a

18 purely subjective criterion is adopted." *Id.* Hence, "no proof of actual damages to

19 the author's reputation is required" to make out a claim for violation of the right of

20 integrity under Egyptian law. *Id.*

21         Defendants cannot dispute these principles of Egyptian law.

22     **E.**     **No Owner Of Copyright In The Musical Composition "Khosara**

23         **Khosara" Ever Purported to Grant Any License In That Work.**

24         As explained above, economic rights and moral rights are completely separate

25 under Egyptian copyright law: "[U]nder the [Egyptian] IP Code, moral rights

26 protection is governed by separate articles from those dealing with economic rights.

27 As such, moral rights constitute a separate and independent set of rules from those

28 governing economic rights. In case of conflict between moral rights and economic

21

1    rights, the former prevail." 1 Copyright Throughout the World, Ch. 14 "Egypt" §

2    14:20 ("Moral Rights"). Plaintiff's Complaint does not allege that defendants

3    infringed what Egypt calls the economic rights in a copyright work. By the same

4    token, it is clear that, to the extent defendants suggest they obtained a license in the

5    economic rights to an Egyptian copyright work such as "Khosara, Khosara," such a

6    license would extend only to the reproduction, performance or distribution of the

7    work "without alteration." Loutfi Decl. ¶9.

8           Likewise, "[s]ound recordings and their underlying compositions are separate

9    works with their own distinct copyrights." *Newton v. Diamond*, 388 F.3d 1189,

10   1191 (9th Cir. 2004), *cert. denied*, 545 U.S. 1114 (2005), *citing* 17 U.S.C. §

11   102(a)(2) and (7); *see also, Bridgeport Music, Inc. v. Dimension Films*, 410 F.3d

12   792, 796 n. 3 (6th Cir. 2005) (same); *Toho Co., Ltd. v. Priority Records, LLC*, 2002

13   WL 33840993 at * 4 (C.D. Cal. 2002) ("A composition is a work separate and

14   distinct from the sound recording embodying the composition."). "The rights of a

15   copyright in a sound recording do not extend to the song itself, and vice versa."

16   *Griffin v. J-Records*, 398 F.Supp.2d 1137, 1142 (E.D. Wash. 2005). "Sound

17   recordings are thus purely aural works, covering only the series of recorded sounds."

18   W. Patry, 2 Patry on Copyright § 3:160 (2010).

19          This is also the law in Egypt. Musical works come within the scope of

20   literary and artistic works under Egypt law. 1 Copyright Throughout The World §

21   14:9. Sound recordings, by contrast, are separately protected "as related rights." *Id.*

22   at § 14:10. The protected interests are distinct. Thus, the holder of rights in a sound

23   recording under Egyptian law does not have the right to make changes or

24   modification of the underlying musical composition. Loutfi Decl., ¶ 7.

25          Accordingly, any license that defendants may claim that they obtained with

26   respect to a particular *sound recording* of "Khosara, Khosara" was not in itself a

27

28
                                        22

license of any right to the underlying musical composition, which is the subject of
this lawsuit.[7]

Plaintiffs' expert, Dr. Loutfi, has examined the various agreements upon
which the defendants in this case have purported to rely as a basis for claiming that
they had a license to make derivative works based upon the "Khosara, Khosara"
musical composition. Loutfi Decl., ¶¶ 7-8. None of those agreements transferred to
any defendant in this case "the right to make derivative works from the 'Khosara
Khosara' musical composition, including the right to arrange, record and perform
any derivative work with new lyrics." *Id.* ¶ 8. Nor did any of those agreements give
any defendant in this case "the right to make changes or modifications to the
'Khosara Khosara' musical composition, or to insert the musical composition or a
sampling thereof into another work." *Id.*

    **F.**    **As A Matter of Law, No Defendant Could Have, Or Did, Obtain
Permission To Engage In Any Conduct That Violated The
Copyright Owners' Moral Rights In The "Khosara, Khosara"
Musical Composition.**

"According to Article 143 of the [Egyptian] IP Code, moral rights are
perpetual, inalienable, and imprescriptible." 1 Copyright Throughout the World,
Ch. 14 "Egypt" § 14:20 ("Moral Rights"). Thus, while an Egyptian author "can
assign or transfer any or all of his economic rights, a disposition of any of the moral
rights is null and void." *Id.* at § 14:29.

---

[7] The principles discussed in the text above are also well recognized under
international law. William Patry, a leading copyright expert, explains that "most
countries protect sound recordings and broadcast works under a neighboring rights
rather than a copyright regime." W. Patry, 7 Patry on Copyright § 23:48. Thus,
when the WIPO Performances and Phonograms Treaty became effective May 20,
2002, it included an "agreed statement" that "clarified" that "where another work of
authorship is embodied in a phonorecord (e.g., a musical work), permission of both
the author of that work and the owner of rights in the phonogram is separately
required." *Id.*

1   Since this is the law in Egypt, no defendant in this case could have, or did,
2   obtain any valid transfer of any moral rights in the "Khosara, Khosara" musical
3   composition, through any purported license from Sout el Phan, or otherwise. Since
4   Mr. Hamdy is now deceased, the moral rights in the "Khosara, Khosara" musical
5   composition belong exclusively to Mr. Hamdy's heirs, including Mr. Fahmy.

6   And since moral rights under Egyptian law include the right to make
7   derivative works, no defendant in this case could have created a derivative sound
8   recording that incorporated the musical composition "Khosara, Khosara" without
9   the express permission of one of Mr. Hamdy's heirs. No general transfer of any
10  such right could have been granted as a matter of Egyptian law. And defendants
11  have no evidence that they obtained any specific permission to use the "Khosara,
12  Khosara" musical composition in any of the infringing works at issue in this case.
13  These matters are without substantial controversy and should be adjudicated as a
14  matter of law upon this Motion.

15  **V.     CONCLUSION**

16  The Court should determine that there is no triable issue regarding the
17  following matters: that Baligh Hamdy authored and owned the copyright in the
18  "Khosara, Khosara" musical composition' that the copyright, insofar as it includes
19  "moral rights" in Egypt and the exclusive right to make derivative works, descended
20  to and is controlled by Hamdy's heirs' that Plaintiff Osama Fahmy is a Hamdy heir,
21  and a co-owner of the "Khosara, Khosara" copyright; that he has standing, for
22  purposes of the trial of claims that defendants' works infringed that copyright; and
23  that defendants do not have a grant of permission to make derivative works from the
24  "Khosara, Khosara" musical composition. In addition, the Court should set the
25  schedule for trial of all remaining issues of liability and relief for this case.
26  ///
    ///
27  ///
    ///
28

24

1   DATED: September 17, 2010          **CENTURY LAW GROUP LLP**

2

3

4                                      Edward O. Lear, Esq.
                                       Attorneys for Plaintiff
5                                      OSAMA AHMED FAHMY

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28
                                       25