1   RUSSELL J. FRACKMAN (SBN 49087)
    rjf@msk.com
2   ALEXA L. LEWIS (SBN 235867)
    all@msk.com
3   MITCHELL SILBERBERG & KNUPP LLP
    11377 West Olympic Boulevard
4   Los Angeles, California 90064-1683
    Telephone:  (310) 312-2000
5   Facsimile:   (310) 312-3100

6   Attorneys for Defendants

7

8                   UNITED STATES DISTRICT COURT

9                   CENTRAL DISTRICT OF CALIFORNIA

10

11  Osama Ahmed Fahmy, an individual,        Case No. CV 07-05715 CAS (PJWx)

12          Plaintiff,                        The Honorable Christina A. Snyder

13      v.                                    **DEFENDANTS' MEMORANDUM
                                              OF POINTS AND AUTHORITIES
14  Jay-Z (aka Shawn Carter), Timothy Mosely, IN OPPOSITION TO MOTION BY
    Kyambo Joshua, Rob Bourdon, Brad          PLAINTIFF OSAMA FAHMY FOR
15  Delson, Mike Shinoda, Dave Farrell, Joseph AN ORDER THAT MATERIAL
    Hahn, Chester Bennington, Big Bad Mr.     FACTS AND ISSUES OF LAW,
16  Hahn Music, Chesterchaz Publishing, EMI   INCLUDING FOREIGN LAW,
    Blackwood Music, Inc., EMI Music          EXIST WITHOUT SUBSTANTIAL
17  Publishing Ltd., Kenji Kobayashi Music,   CONTROVERSY**
    Lil Lulu Publishing, Machine Shop
18  Recordings, LLC, Marcy Projects           Date:        February 28, 2011
    Productions II, Inc., MTV Networks        Time:        10:00 a.m.
19  Enterprises Inc., Nondisclosure Agreement Ctrm.:       5
    Music, Paramount Home Entertainment,
20  Inc., Paramount Pictures Corporation,
    Radical Media, Rob Bourdon Music, Roc-
21  A-Fella Records, LLC, Timbaland
    Productions, Inc., UMG Recordings, Inc.,
22  Universal Music and Video Distribution,
    Inc., and Warner Music Inc.,
23
            Defendants.
24

25

26

27

Mitchell
Silberberg &
Knupp LLP
3295056.7   28

DEFENDANTS' OPPOSITION TO MOTION BY PLAINTIFF FOR AN ORDER THAT MATERIAL FACTS
AND ISSUES OF LAW, INCLUDING FOREIGN LAW, EXIST WITHOUT SUBSTANTIAL CONTROVERSY

# TABLE OF CONTENTS

**Page(s)**

PRELIMINARY STATEMENT ..................................................................... 1

STATEMENT OF FACTS ............................................................................ 2

LEGAL STANDARD ................................................................................... 6

ARGUMENT ................................................................................................ 6

I.    PLAINTIFF'S MOTION SHOULD BE DENIED BECAUSE
HIS CLAIM IS PREMISED ON A VIOLATION OF MORAL
RIGHTS, OVER WHICH THIS COURT DOES NOT HAVE
JURISDICTION. ................................................................................ 7

    A.    Plaintiff Asserts A Violation Of Purported Moral Rights. .............. 7

    B.    U.S. Copyright Law Does Not Encompass Claims For
Violation Of Moral Rights Under Foreign Law. ................................ 11

II.    PLAINTIFF'S MOTION ALSO SHOULD BE DENIED
BECAUSE DEFENDANTS HOLD A LICENSE TO THE
ECONOMIC RIGHTS NECESSARY TO USE *KHOSARA
KHOSARA*. ...................................................................................... 17

III.    ALTERNATIVELY, THIS COURT SHOULD DEFER ITS
DETERMINATION ON PLAINTIFF'S MOTION. ........................... 19

CONCLUSION .......................................................................................... 20

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Mitchell
Silberberg &
Knupp LLP

3295056.8

DEFENDANTS' OPPOSITION TO MOTION BY PLAINTIFF FOR AN ORDER THAT MATERIAL FACTS
AND ISSUES OF LAW, INCLUDING FOREIGN LAW, EXIST WITHOUT SUBSTANTIAL CONTROVERSY

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Bach v. Forever Living Products U.S., Inc.*,
 473 F.Supp. 2d 1110 (W.D. Wash. 2007)...................................... 12

*Baker v. Urban Outfitters, Inc.*,
 254 F. Supp. 346 (S.D.N.Y. 2003)............................................. 12

*Batiste v. Island Records, Inc.*,
 179 F.3d 217 (5th Cir. 1999)..................................................... 17

*Berrios Nogueras v. Home Depot*,
 330 F. Supp. 2d 48 (D.P.R. 2004).......................................... 7, 12

*Celotex Corp. v. Catrett*,
 477 U.S. 317 (1986) ................................................................... 6

*Choe v. Fordham University School of Law*,
 920 F. Supp. 44 (S.D.N.Y. 1995)
 *aff'd*, 81 F.3d 319 (2d Cir.1996) ............................................. 13

*Cort v. St. Paul Fire & Marine Ins. Cos, Inc.*,
 311 F.3d 979 (9th Cir. 2002)..................................................... 12

*Franconero v. Universal Music Corp.*,
 2003 WL 22990060 (S.D.N.Y. December 19, 2003) ............................ 12, 14

*Freeplay Music, Inc. v. Cox Radio, Inc.*,
 409 F.Supp. 2d 259 (S.D.N.Y. 2005)........................................ 18

*Hanrahan v. Ramirez*,
 1998 WL 34369997 (C.D.Cal. June 3, 1998) ............................ 8, 12

*ITST T.V. Prods. v. Cal Authority of Racing Fairs*,
 785 F. Supp. 854 (E.D.Cal. 1992)............................................. 16

*Leicester v. Warner Bros.*,
 232 F.3d 1212 (9th Cir. 2000)..................................................... 8

*Mass. Museum of Contemporary Art Found., Inc. v. Buechel*,
 593 F.3d 38 (1st Cir. 2010) ........................................................ 8

Mitchell
Silberberg &
Knupp LLP

3295056.8

ii

## TABLE OF AUTHORITIES
### (continued)

**Page(s)**

*Music Sales Limited v. Charles Dumont & Son, Inc.,*
    2009 WL 3417446 (D.N.J. Oct. 19, 2009)....................................................16

*Nafal v. Carter,*
    540 F.Supp.2d 1128 (C.D.Cal. 2007) ....................................................2, 6, 17

*Peer Int'l Corp. v. Pausa Records, Inc.,*
    909 F.2d 1332 (9th Cir. 1990).......................................................................17

*Rudnicki v. WPNA 1490 AM,*
    2009 WL 4800030 (N.D. Ill. December 10, 2009)................................12, 17

*Shostakovich v. Twentieth Century-Fox Film Corp.,*
    80 N.Y.S.2d 575 (Sup.Ct. 1948),
    *order aff'd*, 87 N.Y.S. 2d 430 (App. Div. 1949)............................................14

*Stoll v. Runyon,*
    165 F. 3d 1238 (9th Cir. 1999).........................................................................7

*Superior Eng'g & Elec. Co., Inc. v. Sanders,*
    833 F.2d 823 (9th Cir. 1987)............................................................................7

*Vargas v. Esquire, Inc.,*
    164 F.2d 522 (7th Cir. 1947)....................................................................11, 17

## STATUTES

17 U.S.C.
    § 106.................................................................................................................7
    § 106A............................................................................................................12
    § 501(b) ..........................................................................................................12

## RULES

Federal Rules of Civil Procedure
    Rule 56(c)..........................................................................................................6

Mitchell
Silberberg &
Knupp LLP

3295056.8

1

## **TABLE OF AUTHORITIES**
### **(continued)**

2

**Page(s)**

3

## **OTHER AUTHORITIES**

4

5  3 M. Nimmer & D. Nimmer, *Nimmer On Copyright*,
          (2010 ed.)...............................................................................8, 16

6

7  3 T. Selz, M. Simensky, P. Acton, R. Lind,
          *Entertainment Law 3d: Legal Concepts and Business Practices*,
8          (2009 ed.)............................................................................13, 15

9  Federal Rules of Civil Procedure
          Rule 56(c) ........................................................................................6

10

11  Jane C. Ginsburg, "*Copyright in the 101st Congress: Commentary on
          the Visual Artists Rights Act and the Architectural Works
12          Copyright Protection Act of 1990,*"
13          14 Colum. VLA J. L. & Arts 477, 478 (1991)...................................8

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Mitchell
Silberberg &
Knupp LLP

3295056.8

# **PRELIMINARY STATEMENT**

This case concerns a musical composition of Egyptian origin ("*Khosara Khosara*"), authored by an Egyptian national (Baligh Hamdy), brought by one of his heirs (Plaintiff Fahmy), asserting a violation of moral rights under Egyptian law. There is no dispute that Egyptian law provides for certain moral rights to authors. Likewise, there is no dispute that U.S. copyright law does not. Plaintiff is asking the Court to adjudicate a claim alleging copyright infringement under U.S. law based on his claim that Defendants' use in the U.S. of the musical composition *Khosara Khosara* in their recording of *Big Pimpin'* violated Egyptian principles of moral rights. This Court cannot do so.[1]

Plaintiff's motion fails for two independent reasons: ***First***, because Plaintiff's motion now makes clear that he is attempting to assert a violation of moral rights under Egyptian law, this Court lacks subject matter jurisdiction over this lawsuit. ***Second***, while Plaintiff may possess certain moral rights in Egypt, the undisputed facts and the applicable law demonstrate that under U.S. copyright law, Defendants own the relevant "economic" rights in the form of a license to use *Khosara Khosara*; or at the least, there are disputed issues of material fact with regard to the existence, scope and applicability of such a license.

---

[1]     Most of Plaintiff's Memorandum of Points and Authorities ("Pl's Memo.") and almost all of his Statement of Undisputed Facts ("SUF") are devoted to arguments that are hypothetical and/or not material to the determination of this motion. For example, Plaintiff surmises that "Defendants may contend that Mr. Fahmy is not entitled to protect copyright in [*Khosara Khosara*] because [*Khosara Khosara*] has fallen into the public domain in the United States." Pl's Memo. at 13. Determination of this and other extraneous issues is not necessary on this motion.

Mitchell
Silberberg &
Knupp LLP

3295056.8

1

## STATEMENT OF FACTS

Hamdy (and his heirs) and Sout El Phan:  In or around 1957, Baligh Hamdy ("Hamdy"), an Egyptian composer, wrote the music to the musical composition *Khosara Khosara*.[2]  SGI 1-2.  In 1968, Hamdy entered into an agreement with an Egyptian company, Sout El Phan, that included conveyance to Sout El Phan of certain rights, including publishing rights, in *Khosara Khosara* (and other Hamdy songs).[3]  Defendants' SGI, Additional Material Fact ("AMF") 19.  This agreement was governed by the laws of Egypt.  AMF 19.  In 1995, after Hamdy died, Plaintiff (on behalf of all of the Hamdy heirs, SGI 16) entered into his own agreement with Sout El Phan.  AMF 20.  This agreement, titled "Authorization to Print, Publish, Sell and Circulate From the Composer," included rights in *Khosara Khosara* and, in Plaintiff's words, was a "renewal" of the agreement Hamdy had made with Sout El Phan in 1968.  AMF 20.  It states in part:

> "I Osama Ahmed [Fahmy], in my capacity as an agent for the heirs of the late Mr. [Baligh Hamdy]…authorize Sout El Phan Company, 16 Adly Street, Cairo to print and publish the following songs on all currently known mechanical printing matter and those to be introduced in the future, including records, cassette tapes, and cartridges.  This authorization gives Sout El Phan Company alone, ***or to those it selects***, the right to ***publish and sell*** [songs including *Khosara Khosara*] ***using all means and in all parts of the world***, and I hereby state that by signing this authorization, I pledge not to dispose once again of this music, or republish, resell, or present them to any other individual, company, authority, or institution as with this authorization to Sout El Phan Company with respect to this music, I would have authorized it solely, fully, and irrevocably, to the right to the aforementioned, to use this music whichever way it deems necessary in order to print them on commercial records or cassette and cartridge tapes, or any other use under the name and trademark of the company.  This authorization is

---

[2]     For purposes of this motion, Defendants assume to be true this and certain other facts alleged by Plaintiff.

[3]     Although there is no dispute over the authenticity of these documents, Defendants are providing the Court with copies of declarations previously filed in *Nafal v. Carter*, Case No. CV 05-2480 SVW (PJWx), solely to confirm their authenticity.  In addition, most of the key documents are in Arabic.  (*See, e.g.,* Lewis Decl., Exs. 4-8, 11.)  Defendants are submitting certified translations of those documents contemporaneously with this opposition.  (Plaintiff's translations – to the extent they exist or differ from Defendant's translations – should be given little or no weight, as they are not certified and were created by Plaintiff's own retained expert.)

Mitchell
Silberberg &
Knupp LLP

3295056.8

2

DEFENDANTS' OPPOSITION TO MOTION BY PLAINTIFF FOR AN ORDER THAT MATERIAL FACTS AND ISSUES OF LAW, INCLUDING FOREIGN LAW, EXIST WITHOUT SUBSTANTIAL CONTROVERSY

1

given in execution of the contract signed between the late [Baligh
Hamdy] and the company on 2/12/1968, in return for a sum equal to
one thousand pounds…." (emphasis added).

2

3

AMF 20.

4

<u>Sout El Phan and EMI Music Arabia</u>:  Shortly thereafter, on December 11,

5

1995, Sout El Phan entered into a License Agreement with EMI Music Arabia.

6

AMF 21.  This agreement (governed by the laws of England), granted to EMI Music

7

Arabia, among other things, "the sole and exclusive right to protect, publish and/or

8

sub-publish songs contained on records from the [entire catalogue of sound

9

recordings owned or controlled by Sout El Phan] in the [World excluding Egypt]."

10

AMF 21. It specifically included *Khosara Khosara* within the grant.  AMF 21.

11

Further communications between Sout El Phan and EMI Music Arabia clarified the

12

inclusion of *Khosara Khosara* to be within the scope of these agreements.  AMF 22.

13

Notwithstanding the foregoing, in 1997 Plaintiff sent a cease and desist letter

14

to EMI Music Arabia:

15

16

"…[I]n my capacity as the agent for the heirs of the late musician
[Baligh Hamdy], I would like to warn you not to print any work by the
late musician without a written permission from me personally, and that
they may not be printed on audio or audio video tapes without a written
permission from me."

17

18

19

AMF 23.  This dispute soon was resolved and the rights acquired by EMI Music

20

Arabia from Sout El Phan were ***ratified and confirmed*** by Plaintiff (on behalf of all

21

of the Hamdy heirs) in return for a substantial payment:

22

23

"… neither I [Plaintiff] nor the heirs have any other right to discuss that
contract again, as now E.M.I. Company has the right to print the full
Sout El Phan Catalogue through its branch in Athens, including all the
late [Baligh Hamdy] that were recorded on the basis of his contract with
Sout El Phan, dated 2/13/1968…."

24

25

AMF 24.  Thereafter, on January 26, 1998, Sout El Phan confirmed to EMI Music

26

Arabia that *Khosara Khosara* was part of the licensed Sout El Phan "repertoire."

27

AMF 26.

28

DEFENDANTS' OPPOSITION TO MOTION BY PLAINTIFF FOR AN ORDER THAT MATERIAL FACTS AND
ISSUES OF LAW, INCLUDING FOREIGN LAW, EXIST WITHOUT SUBSTANTIAL CONTROVERSY

On September 14, 2000, after articles had already appeared in major Egyptian publications noting the apparent use of a sample of *Khosara Khosara* in *Big Pimpin,'* Mr. El Amrousi, Sout El Phan's president, who had signed both of the Sout El Phan agreements -- with Hamdy and with EMI Arabia -- reiterated that the agreement between Sout El Phan and EMI Music Arabia included the right to "publish and sub-publish the **songs**," (in other words, the musical compositions, as opposed to recordings), including *Khosara Khosara*, that were covered by the agreement:

> "In line with the General Agreement between Sout El Phan Co. and EMI Music Arabia FZE dated 11 December 1995, EMI Music Arabia has the sole and exclusive right to exploit, to protect, to publish or sub-publish songs contained or[sic] records from the catalog for all territories of the world, excluding Egypt."

AMF 27.

Plaintiff and Alam El Phan (Successor to Sout El Phan): On December 11, 2002, Plaintiff entered into an agreement with Mohsen Jaber, owner of the company Alam El Phan, which had recently acquired a majority stake in Sout El Phan. AMF 29. The 2002 agreement again listed *Khosara Khosara* as an included work, and followed the format of the 1995 agreement between Fahmy and Sout El Phan. AMF 29. In return for 115,000 Egyptian pounds, this agreement conveyed, among other things, "the right to print, publish and use the music of the [listed] songs" by "all currently known audio and/or visual [means]," including "records, cassette tapes, and cartridges in addition to all the modern technological and digital means such as the internet, telephones, satellites, or any other means …in the future." AMF 29. It also expressly provided for "musical re-segmentation and alteration methods while maintaining the original segment of the music," and provided that "Jaber [i.e. Alam El Phan] and his successor become the sole publisher of the melodies of these songs in all the current publishing means and in any way he deems whether … direct or

Mitchell Silberberg & Knupp LLP
3295056.8

4

DEFENDANTS' OPPOSITION TO MOTION BY PLAINTIFF FOR AN ORDER THAT MATERIAL FACTS AND ISSUES OF LAW, INCLUDING FOREIGN LAW, EXIST WITHOUT SUBSTANTIAL CONTROVERSY

1    indirect."[4]  AMF 29.  EMI Music Arabia repeatedly used and licensed these

2    economic publishing rights in *Khosara Khosara*.   AMF 26, 28, 30.

3         <u>Defendants' License to Use *Khosara Khosara*</u>:  On March 30, 2001,

4    Defendant Timothy Mosley (professionally known as "Timbaland"), the producer of

5    *Big Pimpin'*, with no knowledge of any claim by Plaintiff, entered into an agreement

6    with EMI Music Arabia (governed by the laws of the United States).  AMF 28.  EMI

7    Music Arabia represented and warranted that (1) it controlled the copyright in the

8    musical composition *Khosara Khosara* throughout the world (excluding Egypt), and

9    (2) "that it has no reason to believe that any third party or entity not a party to this

10   agreement could assert claims of ownership or authorship in and to [EMI Music

11   Arabia's] right in the Hamdy composition."  AMF 28.  In return for a payment, EMI

12   Music Arabia agreed to grant the right to exploit the *Big Pimpin'* composition,

13   including to the extent it used *Khosara Khosara*, "in perpetuity throughout the

14   world, excluding Egypt, free and clear of any claim by [EMI Music Arabia] that

15   such exploitation in any way violates any of EMI's copyright interest in [*Khosara*

16   *Khosara*]."  AMF 28.

17        On August 30, 2001, ARC Music and Defendant Roc-A-Fella Records, LLC,

18   entered into an agreement, pursuant to which ARC Music granted the right to

19   sample a re-recording of *Khosara Khosara* and release it as *Big Pimpin'*.   Plaintiff

20   has never claimed that the ARC recording used *Khosara Khosara* without

21   permission, and has abandoned any claim (raised by Plaintiff's surrogate in the

22   *Nafal v. Carter*, 540 F.Supp. 2d 1128 (C.D.Cal. 2007)), that Defendants infringed

23   any sound recording rights.

24

---

25   [4]      Asked about the purpose and scope of this agreement, Plaintiff testified that,
26   with the exception of the change of entity from Sout El Phan to its successor, Alam
     El Phan (which made the agreement necessary in his view), this agreement "was the
27   same contract that was existing with Sout El Phan," and that he understood this
     contract to grant the exact same rights that had been granted in the previous
28   agreements. AMF 29.

Mitchell
Silberberg &
Knupp LLP

3295056.8

DEFENDANTS' OPPOSITION TO MOTION BY PLAINTIFF FOR AN ORDER THAT MATERIAL FACTS AND
ISSUES OF LAW, INCLUDING FOREIGN LAW, EXIST WITHOUT SUBSTANTIAL CONTROVERSY

On August 31, 2007, over seven years after Defendants' release of "Vol 3… Life and Times of S. Carter," containing *Big Pimpin,'* Plaintiff filed this lawsuit. At the latest, Plaintiff discovered his claims in 2000 – over six and a half years before the filing of this lawsuit – when his cousin (Hamdy's nephew) referring to the asserted use of *Khosara Khosara* in *Big Pimpin'* in an Egyptian newspaper and (ironically, considering Plaintiff's assertion of moral rights) was quoted as saying "if … Hamdy were alive he would have felt proud."   (Declaration of Alexa L. Lewis In Support of Defendants' Opposition to Motion by Plaintiff Osama Fahmy for an Order That Material Facts and Issues of Law, Including Foreign Law, Exist Without Substantial Controversy ["Lewis Decl."], Ex. 9.)[5]

## **LEGAL STANDARD**

Plaintiff as, the moving party, has the burden of demonstrating the absence of any genuine issue of material fact on his claim.  Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986).

## **ARGUMENT**

Plaintiff's motion should be denied for two independent reasons:

(1) Plaintiff necessarily concedes that he is asserting a claim for violation of moral rights under Egyptian law, which is not cognizable in this Court and not available to Plaintiff under U.S. copyright law.  Therefore, this Court lacks subject matter jurisdiction over Plaintiff's claims, and either the motion should be denied or Plaintiff's claims should be dismissed.

---

[5]   The statute of limitations had long run by the time Plaintiff filed this action. In the interim, witnesses had died, including the key witness, Mr. El Amrousi, among others, memories had faded, and as Plaintiff testified, documents had disappeared.

Mitchell Silberberg & Knupp LLP

3295056.8

DEFENDANTS' OPPOSITION TO MOTION BY PLAINTIFF FOR AN ORDER THAT MATERIAL FACTS AND ISSUES OF LAW, INCLUDING FOREIGN LAW, EXIST WITHOUT SUBSTANTIAL CONTROVERSY

1    (2) Defendants are licensees of the economic rights that are recognized by

2    U.S. copyright law to use *Khosara Khosara* in *Big Pimpin'* or, at a minimum, an

3    issue of fact exists as to the nature, scope, and applicability of the license

4    Defendants obtained.

5

6    **I.    PLAINTIFF'S MOTION SHOULD BE DENIED BECAUSE HIS**

7    **CLAIM IS PREMISED ON A VIOLATION OF MORAL RIGHTS,**

8    **OVER WHICH THIS COURT DOES NOT HAVE JURISDICTION.**

9    Plaintiff's motion makes clear the obvious fact that his claims are for violation

10   of his moral rights. Because moral rights claims are not subject to U.S. copyright

11   protection and are not cognizable in federal court, this Court lacks subject matter

12   jurisdiction over them.  Therefore, rather than denying Plaintiff's motion, this action

13   should be dismissed.  *See, e.g.*, *Stoll v. Runyon*, 165 F. 3d 1238, 1243 n.1 (9th Cir.

14   1999) ("Summary judgment for the non-moving party is appropriate if it is apparent

15   from the record and at the hearing that there is no genuine issue of material fact, that

16   the moving party has had a full opportunity to ventilate the issue, and the non-

17   movant is entitled to judgment as a matter of law"); *Superior Eng'g & Elec. Co.,*

18   *Inc. v. Sanders*, 833 F.2d 823, 825 (9th Cir. 1987) (same).

19

20       **A.    Plaintiff Asserts A Violation Of Purported Moral Rights.**

21   The parties agree that moral rights (protected under the law of various

22   countries, including Egypt) are separate and distinct from "economic" or financial

23   rights, protected under U.S. copyright law.  (Declaration of Ahmed Y. Zohny, Ph.D.,

24   L.L.B., L.L.M. in Support of Defendants' Opposition to Motion by Plaintiff Osama

25   Fahmy for an Order That Material Facts and Issues of Law, Including Foreign Law,

26   Exist Without Substantial Controversy ["Zohny Decl."] ¶¶4, 6; Declaration of

27   Professor/Dr. Mohamed-Hossam Loutfi in Support of Plaintiff's Opposition to

28

Mitchell
Silberberg &
Knupp LLP
3295056.8

7

1   Defendants' Motion to Dismiss ["Loutfi Decl."] ¶9; Lewis Decl., Ex. 13 at 51:23-

2   52:14.) *See also* 17 U.S.C. § 106 (listing rights); *Berrios Nogueras v. Home Depot*,

3   330 F. Supp. 2d 48, 50-51 (D.P.R. 2004) ("Moral rights are to be distinguished from

4   economic rights, which are held by the holder of the copyright in a work…"); *Mass.*

5   *Museum of Contemporary Art Found., Inc. v. Buechel*, 593 F.3d 38, 47-48 (1st Cir.

6   2010) ("moral rights exist independently of the economic rights granted to all

7   authors") (internal quotations omitted).  As Professor Nimmer explains:

8           "Certain countries of the world have long recognized rights personal to
            authors, and as such viable separate and apart from the economic aspect
9           of copyright.  Their separate viability is such that a full transfer of
            copyright may suffice for all economic purposes, but may exert no
10          impact on the assertion of these claims.  In France, home country to the
            doctrine, these rights are known as *le droit moral*, or moral rights. 'The
11          adjective 'moral' has no precise English equivalent, although
            'spiritual,' 'non-economic,' and 'personal' convey something of the
12          intended meaning."  3 M. Nimmer & D. Nimmer, *Nimmer On
            Copyright*, § 8D.01[A] at 8D-3 (2010 ed.).
13

14          There is a critical distinction between "economic rights" and "moral rights,"

15   with "moral rights 'afford[ing] protection for the author's personal, non-economic

16   interests in receiving attribution for her work, and in preserving the work in the form

17   in which it was created, even after its sale or licensing.'"  *Leicester v. Warner Bros.*,

18   232 F.3d 1212, 1227 (9th Cir. 2000), *quoting* Jane C. Ginsburg, "Copyright in the

19   101st Congress: Commentary on the Visual Artists Rights Act and the Architectural

20   Works Copyright Protection Act of 1990," 14 Colum. VLA J. L. & Arts 477, 478

21   (1991).

22          "The term 'moral rights' has its origins in the civil law and is a
            translation of the French is droit moral, which is meant to capture those
23          rights of a spiritual, non-economic and personal nature. The rights
            spring from a belief that an artist in the process of creation injects his
24          spirit into the work and that the artist's personality, as well as the
            integrity of the work, should therefore be protected and preserved."
25

26   *Hanrahan v. Ramirez*, 1998 WL 34369997 at *3 n.3 (C.D.Cal. June 3, 1998).

27

28

Mitchell
Silberberg &
Knupp LLP

3295056.8

8

Plaintiff's motion explicitly confirms that: ***"Plaintiff's Complaint does not allege that defendants infringed what Egypt calls the economic rights in a copyrighted work."*** (Pl.'s Memo at 22, emphasis added.)  *See also* Pl's Memo. at 9 ("…[N]o transfer of moral rights in the 'Khosara Khosara' musical composition, that is to say, the right to make fundamental changes in it through derivative works, was possible under Egyptian law, and thus no defendant could have, or ever did, obtain any such moral (or derivative works) rights");  Pl.'s Memo. at 19 n. 6 ("As Dr. Loutfi explains, the 'financial' or 'economic' rights under Egyptian copyright law are limited to the right to perform, reproduce and distribute a work to the public without alteration.  Loutfi Decl. ¶ 9.  ***These rights, which are similar to mechanical licensing rights in the U.S., are not alleged to be infringed in Plaintiff's Complaint***.") (emphasis added); Pl.'s Memo. at 24 ("Since this is the law in Egypt, no defendant in this case could have, or did, obtain any valid transfer of any moral rights in the 'Khosara Khosara' musical composition, through any purported license from Sout el Phan, or otherwise.").

Plaintiff's claims are all grounded on the argument that Defendants' use of *Khosara Khosara* constituted a mutilation of the composition (itself a doubtful proposition), *i.e.*, violated his (uncle's) moral rights.  Thus, the claims are based squarely on the concept of moral rights, not "financial" or "economic" rights.  Plaintiff's expert's opinions reiterate that the gravamen of the claim is for a moral rights violation:

- "As to a work of Egyptian origin, the author's moral rights in that work are personal to the author and inalienable.  Any assignment of one or more of those rights is prohibited, as they may be exercised… solely by the author or his heirs; and consents to exploit a work through the use

Mitchell Silberberg & Knupp LLP

3295056.8

9

DEFENDANTS' OPPOSITION TO MOTION BY PLAINTIFF FOR AN ORDER THAT MATERIAL FACTS AND ISSUES OF LAW, INCLUDING FOREIGN LAW, EXIST WITHOUT SUBSTANTIAL CONTROVERSY

of the moral rights may only be granted by the author or his heirs on a case-by-case basis…" (Loutfi Decl. at ¶ 9.)[6]

- "As stated in my May 2006 Declaration, the moral rights in the 'Khosara Khosara' musical composition would include the rights to adapt and make derivative works from the composition, the right to synchronize the composition with images, the right to arrange the composition with new lyrics or make other new musical arrangements from it, the right to make any other fundamental changes to or distortions and mutilations of the nature and integrity of the composition, and the right of paternity (relating to identification as the composition's author)." (Supplemental Declaration of Professor/Dr. Mohamed-Hossam Loutfi Dated May 17, 2009 ["Supp. Loutfi Decl."] at ¶ 3.)

- "It has been and continues to be my opinion that any license would be null and void as a matter of law that attempted to transfer to a third party any of the moral rights in regard to the 'Khosara Khosara musical composition, which, as my May 2006 Declaration confirms, is a work of Egyptian origin authored by an Egyptian national.  Equally so, it continues to be my opinion that the moral rights in the 'Khosara Khosara' composition reside with the heirs of the author, Baligh Hamdy, and can only be exercised by one of his heirs."  (Supp. Loutfi Decl. at ¶ 4.)

- "I have been called by Mr. Andrew Kent [Nafal's attorney] saying that I want to make a supplementary Declaration by emphasizing the basic point of my first Declaration concerning the lawful representative of

---

[6]    Despite its title, Plaintiff relies on the Loutfi Declaration in support of the instant motion.

1    moral right under the Egyptian legal system. And I did -- I did prepare

2    it just to reflect or to emphasize this idea." (Lewis Decl., Ex. 13 at

3    30:10-15.)

4    &bull; "I refer to the lawful plaintiff because it was my idea from the early

5    beginning that Mr. Nafal should not be the plaintiff because this is a

6    moral right case, and it has to be submitted by the lawful heirs of

7    Baligh Hamdy." (*Id.* at 31:1-5.)

8    &bull; "Upon arrival to States early, at the early beginning, I said, 'This is a

9    moral right case. If I would be the lawyer, I should know I would not

10    ask Mr. Nafal to sign this case because Mr. Nafal is not a lawful owner

11    or representative of owners of moral rights.'" (*Id.* at 32:1-6.)

12    &bull; "At the early beginning of the case, yes, of course, with Mr. Kent.

13    When I came and I studied the whole file, I said, 'There is a problem

14    here. You have to represent the heirs of Baligh Hamdy, not a licensee,

15    because a licensee should not be considered as a lawful representative

16    of the lawful owner of moral rights.'" (*Id.* at 33:6-11.)

17

18    **B.**    **U.S. Copyright Law Does Not Encompass Claims For Violation Of Moral Rights Under Foreign Law.**

19

20    Historically, there ***never*** has been a claim assertable under U.S. copyright

21  laws for violation of an author's moral rights, in contrast to his economic rights:

22    "Plaintiff advances another theory which needs little discussion. It is predicated upon the contention that there is a distinction between the

23    economic rights of an author capable of assignment and what are called 'moral rights' of the author, said to be those necessary for the

24    protection of his honor and integrity. These so-called 'moral rights,' so we are informed, are recognized by the civil law of certain foreign

25    countries....What plaintiff in reality seeks is a change in the law of this country to conform to that of certain other countries. We need not stop

26    to inquire whether such a change, if desirable, is a matter for the legislative or judicial branch of the government; in any event, we are

27    not disposed to make any new law in this respect."

28

Mitchell
Silberberg &
Knupp LLP

3295056.8

DEFENDANTS' OPPOSITION TO MOTION BY PLAINTIFF FOR AN ORDER THAT MATERIAL FACTS AND ISSUES OF LAW, INCLUDING FOREIGN LAW, EXIST WITHOUT SUBSTANTIAL CONTROVERSY

1   *Vargas v. Esquire, Inc.*, 164 F.2d 522, 526 (7th Cir. 1947).

2       The United States' implementation of the Berne Convention in 1988,

3   confirmed that, with one exception inapplicable here, moral rights claims do not

4   exist under U. S. copyright law.  That one exception is the 1990 Visual Artists

5   Rights Act ("VARA"). 17 U.S.C. § 106A.  VARA offers moral rights protection

6   only to authors of visual art, "a narrow class of art defined to include paintings,

7   drawings, prints, sculptures, or photographs produced for exhibition purposes,

8   existing in a single copy or limited edition of 200 copies or fewer." *Hanrahan*, 1998

9   WL 34369997 at *3; *Berrios Nogueras*, 330 F. Supp. 2d at 50-51 (moral rights

10  claims only available under United States copyright law in connection with "works

11  of visual art").  Thus, VARA  further evidences that the work at issue, a musical

12  composition which falls outside the definition of "visual art," cannot be subject to a

13  moral rights claim in this Court.

14      The law in the United States in the 1940's thus remains the law in the United

15  States today: there is no moral rights claim available in the U.S. courts to authors of

16  musical compositions and/or their heirs.  *See, e.g., Cort v. St. Paul Fire & Marine*

17  *Ins. Cos, Inc.*, 311 F.3d 979, 985 (9th Cir. 2002) ("In part because moral rights

18  conflict with traditional common law property rights, American law has resisted

19  recognizing moral rights."); *Rudnicki v. WPNA 1490 AM*, 2009 WL 4800030 at *10

20  (N.D. Ill. December 10, 2009) (granting defendants' motion for summary judgment,

21  and stating that "in this case, while [plaintiff] retains nontransferable moral rights to

22  his work under Polish law, he does not have an 'exclusive right' under a copyright

23  that is cognizable under 17 U.S.C. § 501(b)."); *Bach v. Forever Living Products*

24  *U.S., Inc.*,  473 F.Supp. 2d 1110, 1121 (W.D. Wash. 2007) ("Federal courts do not

25  recognize 'moral rights' to sue for distortion of an author's written work."); *Baker v.*

26  *Urban Outfitters, Inc.*, 254 F. Supp. 2d 346, 357 (S.D.N.Y. 2003) ("the law in this

27  Circuit does not recognize an author's common law 'moral rights' to sue for an

28

Mitchell
Silberberg &
Knupp LLP

3295056.8

12

DEFENDANTS' OPPOSITION TO MOTION BY PLAINTIFF FOR AN ORDER THAT MATERIAL FACTS AND
ISSUES OF LAW, INCLUDING FOREIGN LAW, EXIST WITHOUT SUBSTANTIAL CONTROVERSY

alleged distortion of his written work."); *Franconero v. Universal Music Corp*., 2003 WL 22990060 at *2 (S.D.N.Y. December 19, 2003) (dismissing moral rights claims, and stating "Francis has asserted a 'moral rights' claim for improper synch licensing of her songs. United States law does not recognize moral rights with respect to vocal performances, and only recognizes moral rights claims as to visual arts that have been altered or deformed…"); *Choe v. Fordham University School of Law*, 920 F. Supp. 44, 49 (S.D.N.Y. 1995) *aff'd*, 81 F.3d 319 (2d Cir. 1996) ("There is no federal claim for violation of plaintiff's alleged 'moral rights.'….Because the law in this Circuit does not recognize an author's common law 'moral rights' to sue for alleged distortion of his written work, plaintiff's purported 'moral rights' claim is dismissed.").

As Plaintiff's expert acknowledged (and Defendants' expert agrees), Egyptian courts will apply Egyptian law to claimed violations by Egyptian nationals of moral rights that ***occurred in Egypt*** (assuming jurisdiction over the defendants exists). Just as U.S. copyright law is not extra-territorial, neither is Egypt's.  There is ample reason for U.S. courts to refuse to adjudicate moral rights claims that do not exist under U.S. copyright law.  If it were otherwise, any licensee of an Egyptian work (or of any country that recognizes moral rights) would be at risk for any use of those licensed rights ***in the U.S.***, even if that use did not violate U.S. copyright law.

Thus, even if hypothetically Defendants had obtained a license directly from Hamdy, under Plaintiff's theory he (or his heirs) nevertheless could sue under U.S. copyright law ***at any time*** claiming the use by Defendants violated his moral rights. See Loutfi at 51:23-52:7, attached to Lewis Decl. as Ex. 13 (stating that the heirs of Shakespeare could today bring a claim for violation of moral rights.)  The admitted subjective, vague, and "spiritual" (in Nimmer's words) nature of what constitutes a moral rights violation, would mean the U.S. licensee would always be at risk.  3 T. Selz, M. Simensky, P. Acton, R. Lind, *Entertainment Law 3d:  Legal Concepts and*

Mitchell
Silberberg &
Knupp LLP

3295056.8

13

DEFENDANTS' OPPOSITION TO MOTION BY PLAINTIFF FOR AN ORDER THAT MATERIAL FACTS AND ISSUES OF LAW, INCLUDING FOREIGN LAW, EXIST WITHOUT SUBSTANTIAL CONTROVERSY

1   *Business Practices*, § 20:29 at 20-88 (2009 ed.) ("Motion picture producers, record

2   companies, and magazine publishers fear that formal recognition of the [moral

3   rights] doctrine would make the law unpredictable and create legal and practical

4   roadblocks to production.").

5         In *Franconero*, 2003 WL 22990060 at *2, the plaintiff claimed that even

6   though the defendant was contractually entitled to issue synchronization licenses (an

7   economic right), the particular use violated foreign moral rights laws.  The Court

8   dismissed the action stating:

9                "United States law does not recognize moral rights with respect to
             vocal performances, and only recognizes moral rights claims to visual
10            arts that have been altered or deformed.  [Plaintiff] thus alleges that
             under other unidentified foreign laws, her moral rights have been
11            violated.  What is unclear, however, is how [defendant] is liable under
             foreign law for licensing songs to film distributors – not parties to this
12            action – who in turn distributed the film into foreign markets.

13                                            …

14            Recognition of such a claim would subject everyone who issues a synch
             license to potential liability under foreign law or grant a veto power
15            over licenses to those, like [plaintiff], who have transferred their rights
             without reservation.  Such an outcome would defy the language of the
16            contracts …  The moral rights claims are dismissed."

17

18        In *Shostakovich v. Twentieth Century-Fox Film Corp.*, 80 N.Y.S.2d 575, 579

19  (Sup.Ct. 1948), *order aff'd*, 87 N.Y.S. 2d 430 (App. Div. 1949), the plaintiff

20  composers were foreign residents who objected to the use of their music in a motion

21  picture.  They asserted a violation of moral rights, among other things.  The Court

22  rejected that claim, stating:  "[T]here arises the question of the norm by which the

23  use of such work is to be tested to determine whether or not the author's moral right

24

25

26

27

28

Mitchell
Silberberg &
Knupp LLP

3295056.8

14

1   as an author has been violated.  Is the standard to be good taste, artistic with,

2   political beliefs, moral concepts, or what is it to be?"[7]

3        At the same time, a court in France, a country that recognizes the moral rights

4   doctrine, did entertain the claim under French law.  3 *Entertainment Law 3d*, § 20:27

5   at 20-83 ("At the time Shostakovich was tried under American law, a companion

6   case was litigated in France.  Under the same set of facts, the French court found

7   that the composers' moral rights had been violated.  Thus the multi-territorial nature

8   of entertainment projects may have significant ramifications when considering

9   claims of droit moral in artistic control disputes."), *citing Soc. Le Chant du Mond v.*

10  *Soc Fox Europe et Fox Américaine Twentieth Century*, [1954] D Jur 16, 80 (Cour'

11  d'appel, Paris).

12       Plaintiff's expert provided another apt example, in connection with the

13  colorization of a motion picture originally released in black and white, where a U.S.

14  court dismissed the claim and a French court upheld a moral rights claim:

15       "You got here -- and you may write it – that you do have a very
         important case concerning John Huston and his film ASPHALT

16       JUNGLE. When the studio decided here in the States to colorize the
         film, he did succeed before the American courts that the studio is the

17       owner of the copyright material and the heirs has no right, they have no
         right to stop them -- to stop the studio  from reproducing copies of this

18       colorized film. When the studio tried to sell this new copy to  France,
         the heirs obtained a verdict from the court of cassation in France

19       depriving the studio from selling this colorized version of the film,
         saying that it affects the moral right of the author, i.e., in this case, John

20       Huston, who turn this film at the early beginning in black and white.
         Then changing the color of the film means that you are making a

21       derivative work, which you cannot execute it under the French legal
         system. And I think this case will help to understand the notion of

22       moral right, which is very attached to the personality of the author and
         which is considering the moral right -- which is proving that the moral

23       right is an integral part of the author and his heirs. ***And the difference
         between the American judges and the French judges is***

24       ***understandable because of the difference between culture, legal --***
         ***American legal culture and the Latin legal culture***."

25

26  _____

27  [7]    This dilemma is evident in this case, where Hamdy's nephew was quoted as
    believing his uncle would approve of the use of *Khosara Khosara* in *Big Pimpin.'*
    (Lewis Decl., Ex. 9.)

28

Mitchell
Silberberg &
Knupp LLP
3295056.8

DEFENDANTS' OPPOSITION TO MOTION BY PLAINTIFF FOR AN ORDER THAT MATERIAL FACTS AND
ISSUES OF LAW, INCLUDING FOREIGN LAW, EXIST WITHOUT SUBSTANTIAL CONTROVERSY

1

2    (Lewis Decl., Ex. 13 at 104:12-105:13.) (emphasis added).

3        Professor Nimmer summarized the ramifications of a U.S. Court litigating

4    claims like those of Plaintiff:

5            "…[T]he result would be…that foreign authors could sue unauthorized
             exploiters of their works in American courts for acts occurring abroad
6            that constitute infringement of foreign copyright laws, even if such acts,
             had they occurred in the United States, would not be infringing.  That
7            last device could theoretically serve as a surrogate vehicle for
             attempting to enforce moral rights in the United States."

8

9
     *Nimmer*, § 17.03 at 17-24-25.
10
         Because Plaintiff's claims are for violation of his moral rights and because
11
     this Court will not, and in fact cannot, adjudicate those claims, the proper result is
12
     dismissal of Plaintiff's complaint.  In *Music Sales Limited v. Charles Dumont &*
13
     *Son, Inc.*, 2009 WL 3417446, at *5 (D.N.J. Oct. 19, 2009), the Court dismissed a
14
     claim for lack of subject matter jurisdiction over claimed unauthorized distribution
15
     in violation of foreign law.  The Court stated:
16
             "in order for the court to exercise subject matter jurisdiction over
17           plaintiff's claims, plaintiffs bear the burden of alleging and proving that
             the defendant is liable for an act of infringement committed in the
18           United States."

19
                                              ...
20
             "Plaintiffs are asking the Court to hold that any act occurring within the
21           United States that causes the unauthorized use of copyrighted material
             abroad is actionable under the Copyright Act. …  The clear governing
22           legal rule is that the predicate act occurring in the United States lets
             itself constitute *infringement* under the Copyright Act.
23
                                              …
24
             "Plaintiffs treat the copyright law of disparate nations as if they
25           comprise a seamless ensemble, with infringement of any one's law
             enforceable wherever the act was committed.  Of course, this court's
26           subject matter jurisdiction is limited to cases arising under the
             Copyright Act; it has no power to vindicate violations of British law."

27

28

Mitchell
Silberberg &
Knupp LLP

3295056.8

16

DEFENDANTS' OPPOSITION TO MOTION BY PLAINTIFF FOR AN ORDER THAT MATERIAL FACTS AND
ISSUES OF LAW, INCLUDING FOREIGN LAW, EXIST WITHOUT SUBSTANTIAL CONTROVERSY

See also, e.g., ITST T.V. Prods. v. Cal Authority of Racing Fairs, 785 F. Supp. 854, 862 (E.D.Cal. 1992)  ("in order for the court to exercise subject matter jurisdiction over [P]laintiff's claims, plaintiffs bear the burden of alleging and proving that the defendant is liable for an act of infringement committed in the United States.").  The same reasoning repeatedly has been applied to claims for violation of moral rights sought to be brought in U.S. courts.  See, e.g., Rudnicki, 2009 WL 4800030 at *10; Vargas, 164 F.2d at 526.

## II.   PLAINTIFF'S MOTION ALSO SHOULD BE DENIED BECAUSE DEFENDANTS HOLD A LICENSE TO THE ECONOMIC RIGHTS NECESSARY TO USE *KHOSARA KHOSARA*.

This Court's inquiry can, and should, end with dismissal of Plaintiff's claims. Plaintiff has not tried to show that Defendants have violated U.S. copyright law, nor could they, because Defendants acquired (from EMI Music Arabia) and paid for the economic rights in *Khosara Khosara* almost a decade ago.  *See* AMF 28.  Plaintiff's motion should be denied on that basis as well.  *See, e.g., Peer Int'l Corp. v. Pausa Records, Inc.*, 909 F.2d 1332, 1338 (9th Cir. 1990) ("anyone who is authorized by the copyright owner to use the copyrighted work in a way specified in the statute … is not an infringer."); *Batiste v. Island Records, Inc.*, 179 F.3d 217, 223 (5th Cir. 1999) (defendant who acted pursuant to license from copyright owner could not be liable for copyright infringement).[8]

As described above, Hamdy conveyed publishing rights in *Khosara Khosara* to the Egyptian company Sout El Phan, which used them to make sound recordings. These rights were reiterated and re-conveyed to Sout El Phan by Hamdy's heirs in

---

[8]   Although he ultimately did not rule on that basis, the Court in the *Nafal* action (brought by Plaintiff's surrogate) recognized that "Defendants also describe numerous facts that would appear to demonstrate that they have a valid license to use the *Khosara Khosara* musical composition. *Nafal v. Carter*, 540 F.Supp. 2d 1128, 1132 (C.D.Cal. 2007).

Mitchell
Silberberg &
Knupp LLP

3295056.8

17

1995, and were in turn conveyed in 1995 by Sout El Phan to EMI Music Arabia
(whose economic rights in these compositions were reconfirmed on multiple
occasions).  Over the years, EMI Music Arabia actually used and licensed the
economic publishing rights (including for cover recordings).  AMF 26, 28, 30.  In
2002, Plaintiff specifically confirmed that the rights granted to Sout El Phan
included:  "all currently known audio and/or visual [means]," including "records,
cassette tapes, and cartridges in addition to all the modern technological and digital
means such as the internet, telephones, satellites, or any other means … in the
future."  AMF 29.  That it could be used for "musical re-segmentation and alteration
methods while maintaining the original segment of the music," and that "Jaber [i.e.,
Alam El Phan] and his successor become the sole publisher of the melodies of these
songs in all the current publishing means and in any way he deems whether … direct
or indirect."  AMF 29.[9]

EMI Music Arabia granted a license to Defendants that authorizes their use of
*Khosara Khosara* in the allegedly infringing work.  AMF 28.  Whether or not the
use of *Khosara Khosara* at issue in this case amounts to a "change" or
"modification" is irrelevant under U.S. law, although Plaintiff has alleged that
Defendants have copied, without change, *Khosara Khosara*.  *See* Complaint, Docket
No. 1 at ¶ 13.  That is an exercise of the economic right of reproduction.  *See*
*Freeplay Music, Inc. v. Cox Radio, Inc.*, 409 F.Supp. 2d 259, 262 (S.D.N.Y. 2005)
("The Broadcasters suggest no reason why the 'synchronization of previously
recorded sounds' with other recorded sounds to create a commercial for radio rather
than for television use would not be just another example of the reproduction right,
similar to a 'sample.').  The same is true from the viewpoint of economic rights

---

[9]      Plaintiff's expert, who admittedly is not an expert on U.S. copyright law
(Loutfi Decl. ¶ 2), refers briefly to these documents (Loutfi Decl. ¶ 8), but does not
attach them to his Declaration or analyze the chain of title in them because they are
irrelevant to Plaintiff's moral rights claim.

1    under Egyptian law (as distinct from moral rights), an excerpt is not a "change," and
2    the publisher of a composition can have the economic right to exploit an exact,
3    verbatim excerpt of a work as a reproductive "sample." (Zohny Decl., ¶ 23.)  Even if
4    such a use is considered to be an adaptation, Defendants' use  was permissible.  *See*
5    SGI 17-18.  And, ultimately, even if such a use might be subject to moral rights
6    objections on the part of the author, this would give rise to a possible legal claim
7    only in Egypt, where moral rights are recognized.

8

9    **III.    ALTERNATIVELY, THIS COURT SHOULD DEFER ITS**
10   **DETERMINATION ON PLAINTIFF'S MOTION.**

11   The motion should be denied and the action dismissed.  At the least, an issue
12   of fact exists as to the scope of the license Defendants obtained and whether their
13   use of *Khosara Khosara* was a reproduction, an adaptation and if so whether it was
14   within the grant of rights.

15   Alternatively, if the Court believes that Plaintiff has not carried his burden of
16   proving both the relevant foreign law and its applicability, the Court should deny the
17   motion on that basis, defer ruling on the issue of foreign law until trial, and proceed
18   to the next stage of this litigation concerning Defendants' affirmative defenses of
19   statute of limitations and laches.

20
21
22
23
24
25
26
27
28

Mitchell
Silberberg &
Knupp LLP

3295056.8

19

1

## <u>CONCLUSION</u>

2     As set forth herein, Defendants respectfully request that Plaintiff's Motion For

3  an Order That Material Facts and Issues of Law, Including Foreign Law, Exist

4  Without Substantial Controversy be denied and that the complaint be dismissed for

5  lack of subject matter jurisdiction.

6

7  DATED: December 13, 2010          RUSSELL J. FRACKMAN
                                      ALEXA L. LEWIS
8                                     MITCHELL SILBERBERG & KNUPP LLP

9

10                                    By: /s/ Alexa L. Lewis
                                          _____
11                                        Alexa L. Lewis
                                          Attorneys for Defendants

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Mitchell
Silberberg &
Knupp LLP

3295056.8

20

DEFENDANTS' OPPOSITION TO MOTION BY PLAINTIFF FOR AN ORDER THAT MATERIAL FACTS AND
ISSUES OF LAW, INCLUDING FOREIGN LAW, EXIST WITHOUT SUBSTANTIAL CONTROVERSY