O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| OSAMA AHMED FAHMY, ) | Case No. CV 07-5715 CAS (Ex) |
| Plaintiff, ) ) | |
| vs. ) ) ) | **ORDER DENYING PLAINTIFF'S MOTION TO EXCLUDE TESTIMONY OF DEFENDANTS' EXPERT AHMED Y. ZOHNY AND GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT** |
| JAY-Z AKA SHAWN CARTER, ET ) AL.; ) ) | |
| Defendants. ) ) | |
| _____ ) | |

I.  **INTRODUCTION**

On August 31, 2007, plaintiff Osama Ahmed Fahmy initiated the instant suit against defendants Jay-Z (aka Shawn Carter) ("Jay-Z"), Timothy Mosley, Kyambo Joshua, Rob Bourdon, Brad Delson, Mike Shinoda, Dave Farrell, Joseph Hahn, Chester Bennington, Big Bad Mr. Hahn Music, Chesterchaz Publishing, EMI Blackwood Music Inc., EMI Publishing Ltd., Kenji Kobayashi Music, Lil Lulu Publishing, Machine Shop Recordings LLC, Marcy Projects Productions II, MTV Networks Enterprises Inc., Nondisclosure Agreement Music, Paramount Home Entertainment Inc., Paramount

Pictures Corporation, Radical Media, Rob Bourdon Music, Roc-A-Fella Records LLC, Timbaland Productions Inc., UMG Recordings Inc., Universal Music and Video Distribution Inc., and Warner Music Inc. Plaintiff alleges claims for copyright infringement under the Copyright Act of 1976, 17 U.S.C. §§ 101 et seq. (claims one, two and three) and for violation of Cal. Bus. & Prof. Code §§ 17200 et seq. (claim four).[1] On March 19, 2008, the Court dismissed plaintiff's fourth claim for relief pursuant to Rule 12(b)(6). Plaintiff's allegations stem from an alleged infringement of his copyright interest in the Egyptian musical composition, "Khosara, Khosara," through the performance, recording and transmittal of the song "Big Pimpin'" and its variations.

On September 20, 2010, plaintiff filed the instant motion for partial summary judgment as to material facts and issues of law, including foreign law. On December 13, 2010, defendants filed an opposition to plaintiff's motion for partial summary judgment. On January 17, 2011, plaintiff filed a reply in support of his motion. On February 8, 2011, defendants filed a sur-reply. On January 31, 2011, plaintiff filed a motion to exclude testimony of defendants' expert Ahmed Y. Zohny. On February 7, 2011, defendants filed an opposition to plaintiff's motion. On February 14, 2011, plaintiff filed a reply in support of his motion. On February 28, 2011, a hearing was held on both

---

[1] Previously, Ahab Joseph Nafal ("Nafal") filed suit against Jay-Z and others in the case entitled Ahab Joseph ("Julian") Nafal v. Shawn Carter, et al., Case No. CV 05-2480 SVW (PJWx) (C.D. Cal. 2005) ("Nafal Action"). Nafal asserted claims similar to those alleged herein: that the song "Big Pimpin,'" and variations thereof, infringed Nafal's co-ownership interest in an exclusive license to use the Egyptian musical composition, "Khosara, Khosara." Defs.' Req. Judicial Notice ("Defs.' RJN"), Ex. 3 ("Aug. 3, 2007 Order, Nafal Action") at 44. Nafal claimed that he had acquired his interest in a license for "Khosara, Khosara" pursuant to a January 27, 2005 written agreement. Id. at 45. However, the Court determined that Nafal was in fact a non-exclusive licensee, not authorized to prosecute an action against alleged infringers. Id. at 73. The court dismissed the case, concluding that Nafal lacked standing to maintain the lawsuit. Id. at 73-74.

of plaintiff's motions. Having carefully considered the parties' arguments, the Court finds and concludes as follows.

## II. BACKGROUND

Plaintiff alleges that Baligh Hamdy ("Hamdy"), an Egyptian composer, co-authored the musical composition "Khosara, Khosara." Compl. ¶ 8. According to plaintiff, Hamdy wrote the music in or about 1957. Id. Plaintiff alleges that thereafter, Hamdy authorized Mamoun El Shinnaway to author lyrics for the musical composition. Id. Plaintiff alleges that in or about 1960, Egyptian vocalist Abdel Halim Hafez ("Hafez") recorded "Khosara, Khosara" for use in the Egyptian film "Fata Ahlami," with Hamdy's authorization. Id. Hamdy allegedly retained all copyrights in the musical composition "Khosara, Khosara," but licensed the right to reproduce and distribute Hafez's recorded composition. Id. In or about 1960, Hamdy also allegedly registered his copyright in the "Khosara, Khosara" musical composition pursuant to Egyptian law. Id. ¶ 9.

Hamdy died in 1993. Id. Plaintiff alleges that upon Hamdy's death, Hamdy's three siblings, Morsi, Asmaa, and Safia, inherited his copyright interests in "Khosara, Khosara." Id. Plaintiff claims that after Safia and Asmaa's deaths, Morsi and Asmaa's four children, one of whom is plaintiff, jointly owned the "Khosara, Khosara" copyright interests. Id. Plaintiff alleges that he has the general power of attorney to act on behalf of the Hamdy heirs. Id. Plaintiff alleges that in or about 1995, Morsi and Asmaa's children "licensed the right to mechanically reproduce the 'Khosara, Khosara' composition and [Hafez's] 1960 Sound Recording without change or alteration, onto records, cassettes, and cartridges." Id. ¶ 10. According to plaintiff, "[p]ursuant to this license, . . . [Hafez's] 1960 Sound Recording of 'Khosara, Khosara' was published in or about 1997, as a track on an album title 'The Movie Collection,' containing original movie soundtracks sung by Abdel Halim Hafez." Id.

Plaintiff alleges that in approximately 1999 defendants Jay-Z and Timothy Mosley authored and then recorded a musical work entitled "Big Pimpin,'" wherein the rap/hip-hop artist Jay-Z sings rap lyrics over a "recording . . . of the musical composition of 'Khosara, Khosara.'" Id. ¶¶ 3, 12.  Plaintiff alleges that Jay-Z and Timothy Mosley then released a CD entitled "Jay-Z Volume III: Life and Times of S. Carter," ("Life and Times") which contains the song "Big Pimpin.'" Id. ¶ 12.  Subsequently, Jay-Z and the band Linkin Park performed a new musical work entitled "Big Pimpin'/Papercut" at a concert known as "Collision Course."[2] Id. ¶ 14.  Plaintiff alleges that this work also infringes the musical composition "Khosara, Khosara." Id.  Jay-Z and Linkin Park released a DVD with a recording of the their "Collision Course" live performance, and a CD with a studio recording of the song "Big Pimpin'/Papercut" in or about November 2004.  Id.  Later, in or about April 2005, defendants Jay-Z and Paramount Pictures Corporation released a documentary film entitled "Fade to Black." Id. ¶ 15.  Plaintiff alleges that the film's soundtrack includes the musical composition "Khosara, Khosara." Id.  Plaintiff further alleges that in recent years defendants Jay-Z, Timothy Mosely, Rob Bourdon, Brad Delson, Mike Shinoda, Dave Farrell, Joseph Hahn, Chester Bennington and the various corporate entity defendants "released and or distributed other, as-yet-unidentified, music-video, film and artistic works that substantially copy the creative elements of the 'Khosara, Khosara,' musical composition, all without license or other permission." Id. ¶¶ 5, 16.

## III.  LEGAL STANDARD

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The moving party has the initial burden of identifying relevant portions of the

---

[2] Linkin Park consists of defendants Rob Bourdon, Brad Delson, Mike Shinoda, Dave Farrell, Joseph Hahn and Chester Bennington.  Compl. ¶ 5.

4

record that demonstrate the absence of a fact or facts necessary for one or more essential elements of each cause of action upon which the moving party seeks judgment. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

If the moving party meets its initial burden, the opposing party must then set out specific facts showing a genuine issue for trial in order to defeat the motion. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986); see also Fed. R. Civ. P. 56(c), (e). The nonmoving party must not simply rely on the pleadings and must do more than make "conclusory allegations [in] an affidavit." Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 888 (1990); see also Celotex, 477 U.S. at 324. Summary judgment must be granted for the moving party if the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Id. at 322; see also Abromson v. Am. Pac. Corp., 114 F.3d 898, 902 (9th Cir. 1997).

In light of the facts presented by the nonmoving party, along with any undisputed facts, the Court must decide whether the moving party is entitled to judgment as a matter of law. See T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 631 & n.3 (9th Cir. 1987). When deciding a motion for summary judgment, "the inferences to be drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citation omitted); Valley Nat'l Bank of Ariz. v. A.E. Rouse & Co., 121 F.3d 1332, 1335 (9th Cir. 1997). Summary judgment for the moving party is proper when a rational trier of fact would not be able to find for the nonmoving party on the claims at issue. See Matsushita, 475 U.S. at 587.

Federal Rule of Civil Procedure 56 also provides for partial summary judgment. "[The court] may enter an order stating any material fact–including an item of damages or other relief–that is not genuinely in dispute and treating the fact as established in the

case." Fed. R. Civ. P. 56(g).  See also L.R. 56-4 (authorizing motion for order specifying material facts that appear without substantial controversy).

## IV.   DISCUSSION

### A.   Plaintiff's Motion to Exclude Testimony of Ahmed Y. Zohny

Both parties submit expert testimony pursuant to Rule 44.1 to assist the Court in making its determination with respect to foreign law. "In determining foreign law, the court may consider any relevant material or source, including testimony, whether or not submitted by a party or admissible under the Federal Rules of Evidence. The court's determination must be treated as a ruling on a question of law." Fed. R. Civ. P. 44.1. Plaintiff argues that Dr. Zohny does not have the requisite expertise to offer the opinions to which he testifies in his declaration, based on statements made in his deposition. While the Court recognizes the limitations of defendants' expert, it concludes that plaintiff's arguments go to the weight, rather than admissibility of the testimony. The Court concludes that the witness is qualified to offer his opinions under Rule 44.1 and 104(a), and finds his testimony helpful to consider in making the determinations herein, while not determinative. Therefore, the Court DENIES plaintiff's motion.

### B.   Plaintiff's Motion for an Order that Material Facts and Issues of Law, Including Foreign Law, Exist Without Substantial Controversy

Plaintiff argues that the Court should grant partial summary judgment with respect to the following material facts and questions of law: "[(1)] that Baligh Hamdy authored and owned the copyright in the 'Khosara, Khosara' musical composition[;] [(2)]that the copyright, insofar as it includes 'moral rights' in Egypt and the exclusive right to make derivative works, descended to and is controlled by Hamdy's heirs[;] [(3)] that Plaintiff Osama Fahmy is a Hamdy heir, and a co-owner of the 'Khosara, Khosara' copyright; [(4)] that he has standing, for purposes of the trial of claims that defendants' works

infringed that copyright; [(5)] and that defendants do not have a grant of permission to make derivative works from the 'Khosara, Khosara' musical composition." Mot. at 24. There does not seem to be any dispute that "Khosara, Khosara" was authored by Baligh Hamdy, nor that plaintiff is among his heirs. The gravamen of plaintiff's motion is that the treatment of moral rights and of the right to make derivative works under Egyptian law precludes a finding that defendants had a license to make the work at issue.

First, plaintiff argues, because Hamdy was an Egyptian national at the time of the composition of "Khosara, Khosara," and because the song was first published in Egypt, "Egypt law governs the moral rights in the 'Khosara, Khosara' musical composition that are at issue."[3] Id. at 7. "The law of the country of origin [of the copyrighted work] governs the 'essential nature of the copyrights alleged to have been infringed,'" and "the effectiveness of a purported transfer of copyright ownership." Id. at 18, citing Itar-Tass Russian News Agency v. Russian Kurier, Inc., 153 F. 3d 82, 84 (2nd Cir. 1998), Russian Academy of Sciences v. American Geophysical Union, 1998 WL 34333239 * 11 (D.D.C. 1998). According to plaintiff, "[u]nder Egyptian copyright law, 'moral rights' in a musical composition, like 'Khosara, Khosara' include the right to make derivative works, the right to make new arrangements, the right to synchronize the composition with images or moving pictures, and the right to make any other fundamental alteration of the composition." Mot. at 8. Further, plaintiff argues, under Egyptian law, "'moral rights are perpetual, inalienable, and imprescriptable,'" and therefore, "'whilst the author can assign or transfer any or all of his economic rights, a disposition of any of the moral rights is null and void.'" Id., citing 1 Copyright Throughout the World §14:20, citing

---

[3] Plaintiff also argues, and defendants do not appear to challenge, that "the United States is obligated to protect the Plaintiff's rights in 'Khosara, Khosara' musical composition under applicable international conventions, treaties, and agreements," specifically the Berne Convention, and the Uruguay Round Agreements Act. Mot. at 12-18.

7

Article 143 of Egypt's Intellectual Property Law No. 82 of 2002 (the "IP code"), and § 14:29, citing Article 145 of the IP Code.  Plaintiff submits testimony by its expert that [a]ny assignment of or more of [an author's moral rights] is prohibited, as they may be exercised, for the life of the work, solely by the author or his heirs; and consents to exploit a work through the use of the moral rights may be granted by the author or his heirs on a case-by-case basis in consideration of the specific use proposed, prior to placing the proposed new, derivative work into public circulation." Mot. at 7-8, citing Loutfi Decl. ¶ 9.

Moreover, plaintiff argues, its expert "has reviewed the documents upon which defendants apparently rely for a purported license or other transfer of such rights, and no such license or transfer of rights exists."  Mot. at 9.  First, plaintiff argues, "Plaintiff's Complaint does not allege that defendants infringed what Egypt calls the economic rights in a copyrighted work. By the same token, it is clear that, to the extent defendants suggest they obtained a license in the economic rights to an Egyptian copyright work such as 'Khosara, Khosara,' such a license would extend only to the reproduction, performance or distribution of the work 'without alteration.'" Id. at 22.  Furthermore, plaintiffs argue that "any license that defendants may claim that they obtained with respect to a particular *sound recording* of 'Khosara, Khosara' was not in itself a license of any right to the underlying musical composition, which is the subject of this lawsuit." Id. at 22-23.

In sum, plaintiffs argue that "since moral rights under Egyptian law include the right to make derivative works, no defendant in this case could have created a derivative sound recording that incorporated the musical composition 'Khosara, Khosara' without the express permission of one of Mr. Hamdy's heirs.  No general transfer of any such right could have been granted as a matter of Egyptian law.  And defendants have no

evidence that they obtained any specific permission to use the 'Khosara, Khosara' musical composition in any of the infringing works at issue in this case." Id. at 24.

In opposition, defendants argue that plaintiff's motion "makes clear that he is attempting to assert a violation of moral rights under Egyptian law, [and therefore] this Court lacks subject matter jurisdiction over this lawsuit," and should, as a result, dismiss it. Opp. at 1. Defendants cite various portions of plaintiff's brief and declarations by his expert to demonstrate that "[p]laintiff's claims are all grounded on the argument that Defendants' use of *Khosara Khosara* constituted a mutilation of the composition (itself a doubtful proposition), i.e., violated his (uncle's) moral rights. Thus, the claims are based squarely on the concept of moral rights, not 'financial' or 'economic' rights." Id. at 9. Defendants argue that the Court should therefore dismiss the action for lack of subject matter jurisdiction because "there [has] never been a claim assertable under U.S. copyright laws for violation of an author's moral rights, in contrast to his economic rights." Id. at 11, citing Vargas v. Esquire, Inc., 164 F. 2d 522, 526 (7th Cir. 1947). "Because Plaintiff's claims are for violation of his moral rights and because this Court will not, and in fact cannot, adjudicate those claims, the proper result is dismissal of Plaintiff's complaint." Id. at 16.

Alternatively, defendants argue, plaintiff's motion should be denied because plaintiff cannot show that defendants have violated U.S. copyright law "because Defendants acquired (from EMI Music Arabia) and paid for the economic rights in *Khosara Khosara* almost a decade ago." Id. at 17. "Whether or not the use of *Khosara Khosara* at issue in this case amounts to a 'change' or 'modification' is irrelevant under U.S. law, although Plaintiff has alleged that Defendants have copied, without change, Khosara Khosara. See Complaint, Docket No. 1 at ¶ 13. That is an exercise of the economic right of reproduction." Id. at 18. Therefore, defendants argue, the motion should be denied because "[a]t the least, an issue of fact exists as to the scope of the

license Defendants obtained and whether their use of *Khosara Khosara* was a reproduction, an adaption and if so whether it was within the grant of rights." Id. at 19.

In reply, plaintiffs argue that "[d]efendants' license argument fails as a matter of law for many reasons. First, no license in the 'chain of title' that Defendants purport to rely on could have included any right to modify or change the Khosara musical composition, as a matter of Egypt law (which governs alienability issues). Second, any economic rights that were conveyed by Hamdy or his heirs were necessarily limited by Egypt law, and could not have included the right to make derivative works that fundamentally changed the character of Khosara." Reply at 1-2.

Specifically, plaintiff argues that defendants do not demonstrate that they had a license to create a derivative work, and because the works complained of are derivative works, they are outside of the scope of any license that might exist and therefore infringe plaintiff's rights under Section 106(2).[4] "Despite any license Defendants claim to have, the accused works were new 'derivative works' of the underlying Khosara musical composition, and under Egypt law no agreement making a blanket assignment or general license of rights to make derivative works based upon and modifying the Khosara musical composition was, or could have been, granted to the Defendants." Id. at 7.

---

[4] Plaintiff challenges defendants' characterization of their complaint, arguing that "Plaintiff does not claim that Defendants 'copied' Khosara without changing it. Rather, Plaintiff explicitly alleges that Defendants made infringing or 'derivative works.'" Reply at 20, citing Compl. ¶¶ 4, 21, 28, 34. Plaintiffs also disagree with defendants' characterization of their claimed violations of moral rights. "That Hamdy or his heirs have moral rights in 'Khosara' under Egypt law is not an element of Plaintiff's copyright claims. . . . "Moral rights have become an issue only because Defendants have made it one, by asserting a license affirmative defense. . . . . Plaintiff relies on Egypt's moral rights law in rebuttal–to explain why Defendants cannot, and do not, have any license that includes the right to make derivative works that are based on and fundamentally change the Khosara musical composition." Reply. at 24. Moreover, plaintiff adds, defendants' argument that the suit should be dismissed is not properly before the Court. Id. at 22.

Plaintiffs point to the Loutfi Reply Declaration, and Articles 7, 9 and 37 of the IP Code to argue that "the right to make 'modifications or changes' to the Khosara musical composition was not one of the "financial exploitation rights' that could be disposed of; any attempted disposal of the right to make 'modifications or changes' would have been 'null and void' . . . . And even if making 'modifications or changes' were a financial right–it is not–it would still have to be the subject of an express, detailed document of transfer. . . . . Defendants have not identified any such document." Id. at 8-9. Defendants review the agreements at issue in this case–specifically the 1968 Hamdy/Sout El Phan Agreement; the August 8, 1992 Authorization; the Sout El Phan-EMI Music Arabia License Agreement; and the EMI Music Arabia Settlement Agreement–and argue that "[a]*ll* of [these] documents in Defendants' purported chain of title share the same fatal defect: not one of them makes any mention of *any* grant to make new *derivative works* that are based on, and fundamentally modify, any *musical composition*." Id. at 12.

Plaintiffs also argue that the opinion of defendants' expert Dr. Zohny is inadmissible and should be disregarded by the Court because he "is not qualified as an expert on the issues actually presented by this motion," and he "did not apply a reliable methodology to reach his conclusions about what kinds of rights were transferred to defendants under the instruments he reviewed.⁵ Id. at 10-11. Moreover, plaintiffs argue,

---

⁵Plaintiffs make additional arguments in this regard in their motion to exclude testimony by defendants' expert. In surreply, defendants note that they have responded in depth in their opposition to plaintiff's *Daubert* motion, and assert that plaintiff "misstates and selectively quotes from [defendants'] expert's testimony," and outline the portions of his deposition testimony that they contend demonstrate the mischaracterizations. Surreply at 15. Moreover, defendants argue, "[n]otwithstanding Plaintiff's mischaracterizations, and even if the Court somehow gave credence to them, such assertions would not, and do not, change the result on this motion. This is because Plaintiff's expert has not done enough
(continued...)

Case 2:07-cv-05715-CAS-PJW   Document 271   Filed 05/02/11   Page 12 of 19   Page ID
#:4258

to the extent he purports to give expert testimony with respect to U.S. law, these are "not proper subjects for opinion by an 'expert' witness." Id. at 11.

In surreply, defendants argue that plaintiff's reply impermissibly sets forth "a different theory of the case." Surreply at 1. Moreover, defendants argue, based on the theory asserted in plaintiff's reply, "at the least several key issues of fact will necessarily remain. Second, to the extent Plaintiff's claim is based on a violation of an economic derivative work (adaptation) right, contrary to Plaintiff's contention those rights were transferable. Third, the evidence is that the right to reproduce a sample of *Khosara, Khosara* in *Big Pimpin'* was granted to Defendants or, at a minimum, there remain issues of fact concerning whether the various contractual grants of rights (culminating in the license from EMI Music Arabia to Defendants) conveyed that right." Id.

First, defendants argue, there remain issues of fact on defendants' license defense. Id. Defendants contend that plaintiff "concedes that Hamdy and his successors did transfer the reproduction right, and that right permitted the use of the *Khosara, Khosara* musical composition." Id. However, defendants argue, "[t]here is not . . . any evidence on this motion as to whether Defendants' use, if any, was a 'reproduction' use or an 'adaptation' use. . . . There is no evidence of how the recording was created and how much of or how *Khosara, Khosara* was used. Neither expert pointed to relevant law or authority on how Egyptian law defines these rights in the context of sampling, let alone in a context where Defendants are alleged to have copied portions of *Khosara, Khosara* without change. Nor did . . . either expert opine on whether *Big Pimpin'* was a derivative work–either under Egyptian law or U.S. law." Id. at 2. Also missing, according to defendants, is any evidence by plaintiff's expert as to "the methodology an

---

[5](...continued)
to allow the Court to determine, as a matter of law, issues of foreign law applicable to Defendant's chain of title in Plaintiff's favor." Id. at 17.

Egyptian court would use to interpret the scope of the relevant agreements, and indeed, whether they granted to Defendants the economic derivative work right (to the extent it was necessary. Plaintiff provided no evidence of the circumstances surrounding the agreements, the intent of the parties, the conduct of the parties, or how Egyptian law construes agreements either internally or in light of extrinsic evidence. That Loutfi opined, without such evidence, that rights to create derivative works were needed ***and*** were not granted (or not granted with the proper wording), is irrelevant and beyond the scope of expert testimony." Id. at 3. Given these gaps in evidence, defendant argues that "at worst the chain of title documents are ambiguous, and then interpretation is for the trier of fact." Id.

Second, defendants argue that plaintiff improperly conflates moral rights with the right of adaptation. "To be sure, the complaint 'alleges' a violation of the derivative work (adaptation) right. The point, however, is that according to Plaintiff whether there has been a violation of the economic adaptation right depends on whether Plaintiff's moral rights have been violated." Id. at 4. "The fatal flaw in Plaintiff's reasoning is that while moral rights cannot be transferred, economic rights, including the adaptation right, can be transferred." Id. at 5-6. To support this assertion, defendant compares Articles 7, 37 and 38 in the 1954 Egyptian Copyright Law with Articles 145, 138 and 149 of the 2002 Egyptian IP Law, which it contends is proper as they provide the same rights with respect to derivative rights, according to plaintiff's expert. Id. at 7. Defendants contend that the 2002 law clarifies a seeming inconsistency in the 1954 law, and makes the "dichotomy" between the economic right of adaptation and an artist's moral rights "explicit." Id. Specifically, defendant contends that Article 149 allows the author to transfer "all or some of his economic rights," which includes the right to authorize and exploit adaptations. Id. "On the other hand, the moral right, which is defined as 'the right to prevent any modification considered by the author as distortion or mutilation of

13

the work,' (Article 143) may not be alienated." Id. According to defendants, this distinction is consistent with the Berne Convention, and therefore, under both Egyptian law and the Berne Convention, "an economic adaptation right is assignable; therefore, a license of the economic right is a defense to an infringement claim under U.S. law." Id. at 8.

Defendants further argue that the Court should find that "the financial right of adaptation was conveyed to defendants or remains an issue of fact," precluding a grant of summary judgment in plaintiff's favor.[6] Id. at 10. "[T]he issue of whether the documents here transferred to Defendants the right to include a sample of *Khosara, Khosara* in *Big Pimpin'* is a matter of fact. . . . Moreover, an examination of the relevant documents in detail also leads to the conclusion that, at the least, there remain issues of fact as to what was conveyed to Defendants' predecessors and to Defendants and whether any use of *Khosara, Khosara* by Defendants would be outside the conveyance." Id.

The Court construes the relevant questions raised by the instant motion as follows. First, under Egyptian law, could rights to create derivative works be transferred? If the answer to the first question is in the affirmative, the Court must next ask if the licenses at issue here effectively transfer the right to make derivative works based on the musical composition *Khosara, Khosara*.[7]

---

[6] Defendants further argue that plaintiff has also "not shown that transfer of the adaptation right under Egyptian law was required to authorize a sample of *Khosara, Khosara*," based on the theory that the reproduction right purportedly conceded by plaintiffs may have been sufficient to allow defendants' to make the use of *Khosara Khosara* at issue. Surreply at 10.

[7] The Court does not, and cannot, reach the question of whether defendants could have used *Khosara, Khosara* in *Big Pimpin'* with a license that provided solely a
(continued...)

With respect to the first question, the expert testimony presented is contradictory. While the experts agree that Egyptian law provides for both economic and moral rights, they disagree on what rights fall into the category of "financial rights," and, specifically, whether there exists a financial right to make derivative works or adaptations. Plaintiff's expert states that "[t]he right to make derivative works, recognized under the United States Copyright Act, is one of the rights falling within what is considered a personal and inalienable moral right in Egypt. Only the rights that in Egypt are called the 'financial rights' may be the subject of a general transfer by the author. The financial rights, under Egyptian law, are limited to the right to perform, reproduce and distribute a work to the public without alteration." Loutfi Decl. ¶ 6. Defendants' expert, on the other hand, states that "Egypt's IP Law of 2002, in Articles 143, 145 and 147, clarifies the distinction between inalienable moral rights and fully transferable economic rights, which once again, as in the Berne Convention, include economic rights equivalent to the various exclusive rights under U.S. law, including reproduction, adaptation and translation. Moreover, as Loutfi acknowledged at his deposition, even under Egypt's earlier 1954 law, blanket statements regarding an author's right to prevent 'modifications' or 'changes' to a work refer to the author's moral rights, not financial rights." Zohny Decl. ¶ 10. The Court is persuaded, based on an examination of excerpts of Egypt's Law 82 of 2002, provided by defendants at Exhibit 16 to the Zohny Declaration, that a transferable adaptation right exists independently of inalienable moral rights.[8]

---

[7](...continued)
reproduction right, because, as noted by defendants, there is not sufficient argument or evidence in the record to make such a determination.

[8] To the extent that plaintiffs request that the Court determine whether defendants'
(continued...)

Having determined that an economic right to make derivative works exists, the Court is left with the question of whether the licenses at issue provided defendant with the right to make a derivative work; in other words whether the use of *Khosara Khosara* was outside the scope of the licenses at issue. With respect to the second question, the Court must consider whether, as a matter of law, the right to create derivative works based on the musical composition *Khosara, Khosara* such as defendants' was outside or within the scope of the licenses, or whether there remains a question of fact.

The relevant documents to determine the chain of title are as follows. First, the 1968 agreement between Hamdy and Sout El Phan, through which it is agreed by all parties that some rights in *Khosara, Khosara* were initially transferred. Next, the August 8, 1995 Fahmy-Sout El Phan Agreement, through which Hamdy's heirs confirmed the continuing viability of the rights transferred through the 1968 agreement. Then, the 1995 Sout El Phan-EMI Music Arabia agreement, through which Sout El Phan transferred some rights in *Khosara, Khosara* to EMI Music Arabia. And, finally, the March 2001 agreement between EMI Music and defendants (through defendant Timbaland). While it may be relevant to an analysis of the other documents, the 2002 agreement between Fahmy and Mohsen Jaber is not part of the chain of title.

Plaintiff argues that these documents only address sound recordings, not the musical composition *Khosara, Khosara*. Moreover, Plaintiff argues, none of the agreements specifically provide the right to make derivative works, and could not have

---

[8](...continued)
use of *Khosara, Khosara* violated plaintiff's moral rights in the work by making changes that might be considered "mutilation or distortion" of the original work, the Court agrees with defendants that the claim does not arise under U.S. copyright law, except to the extent that it is a reformulation of the question of whether defendants acted outside of the scope of the relevant licenses. To the extent plaintiffs argue that defendants acted outside of those licenses, the Court, as discussed herein, finds that this issue raises there is a triable question of fact.

because such a transfer would have been null and void. Moreover, even if Hamdy or plaintiff could have transferred such a right, these licenses fail to do so because under Egyptian law, the document would have to expressly and specifically grant the right, which they do not.

Defendant argues first that these documents transfer rights in the musical composition of *Khosara, Khosara*, not just sound recordings, and that these rights include the right to make derivative works. In support of their argument, defendants contend that while the Third Article in the 1968 agreement indicates that Hamdy "will have sole and full ownership" of "melodies" he "may prepare," the prospective language used suggests that Hamdy would have ownership of future musical compositions, but that for the songs already composed and listed as part of that agreement, that Sout El Phan would own rights to the musical compositions as well. Surreply at 12. Moreover, defendants argue, analysis of the 1995 and 2001 agreements "confirm, explain, elaborate and even expand the grant to Sout El Phan." Id. at 13. Specifically, in the 1995 agreements, defendants point to multiple uses of the term "music" and "songs" as distinct from "recordings," to argue that these agreements clearly transferred both, separate rights. Id. at 13-14. Further, defendant argues, an examination of the 2002 Fahmy-Mohsen Jaber (Alam El Phan) agreement is instructive, as plaintiff has conceded that this grant "authorize[d] the same rights that had been authorized originally from Baligh Hamdy to Sout El Phan and then renewed after Baligh Hamdy's death." Id. at 14, citing Lewis Opp. Decl., Ex. 12 (Fahmy Depo. 206:25-207:4). According to this document, "Alam El Phan was confirmed as 'publisher of the melodies of these songs and all current publishing means in any way.'" Id. at 14. Moroever, this agreement "specifically conveyed, among other things, the right of 'musical re-segmentation and alteration methods while maintaining the original segment of the song,'" which defendants contend might well describe the actions taken by defendants with respect to

17

the use of *Khosara, Khosara* in *Big Pimpin'*. Further, defendants argue, an examination of the March 31, 2001 agreement between EMI Music Arabia and Timbaland makes it clear that "EMI Music Arabia, which had obtained its rights directly from Sout El Phan, understood it possess the right to license Defendants[' use of the composition]." Id. at 12.

To the extent that plaintiff argues that these documents do not contain the right to make derivative works because to do so would necessarily violate Egyptian law with respect to an artist's moral rights, the Court finds that this argument is unsound. The Court concludes that a triable question of fact otherwise exists with respect to the scope of the grant. In making this determination, a jury can consider whether the grant was specific enough under Egyptian law, and defendants' argument that the 2002 agreement and the March 31, 2001 agreement make clear that the chain of title includes the right to make the type of use of *Khosara, Khosara* complained of here.

## V.     CONCLUSION

In accordance with the foregoing, the Court DENIES plaintiff's motion to exclude testimony of Ahmed Y. Zohny. The Court GRANTS plaintiff's motion for partial summary judgment with respect to the following issues: (1) that Baligh Hamdy authored and owned the copyright in the 'Khosara, Khosara' musical composition; (2) that plaintiff Osama Fahmy is a Hamdy heir, and a co-owner of the 'Khosara, Khosara' copyright; (3) that plaintiff Osama Fahmy has standing to bring claims that defendants' works infringed the 'Khosara, Khosara' copyright. The Court DENIES plaintiff's motion for partial summary judgment with respect to the following issue, which it concludes present triable issues of fact for the jury: that defendants do not have a grant of permission to make derivative works from the 'Khosara, Khosara' musical composition. The Court also DENIES plaintiff's motion with respect to the following issue to the extent it conflicts with this order: that the copyright, insofar as it includes

'moral rights' in Egypt and the exclusive right to make derivative works, descended to and is controlled by Hamdy's heirs.

IT IS SO ORDERED.

Dated: May 2, 2011

CHRISTINA A. SNYDER
UNITED STATES DISTRICT JUDGE