RUSSELL J. FRACKMAN (SBN 49087), rjf@msk.com
ALEXA L. LEWIS (SBN 235867), all@msk.com
MITCHELL SILBERBERG & KNUPP LLP
11377 West Olympic Boulevard
Los Angeles, California 90064-1683
Telephone: (310) 312-2000
Facsimile: (310) 312-3100

Attorneys for Certain Defendants

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Osama Ahmed Fahmy, | Case No. CV 07-05715-CAS (PJWx) |
| Plaintiff, | The Honorable Christina A. Snyder |
| v. | **NOTICE OF MOTION AND MOTION OF DEFENDANTS FOR PARTIAL SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** |
| Jay-Z (aka Shawn Carter), Timothy Mosely, Kyambo Joshua, Rob Bourdon, Brad Delson, Mike Shinoda, Dave Farrell, Joseph Hahn, Chester Bennington, Big Bad Mr. Hahn Music, Chesterchaz Publishing, EMI Blackwood Music, Inc., EMI Music Publishing Ltd., Kenji Kobayashi Music, Lil Lulu Publishing, Machine Shop Recordings, LLC, Marcy Projects Productions II, Inc., MTV Networks Enterprises Inc., Nondisclosure Agreement Music, Paramount Home Entertainment, Inc., Paramount Pictures Corporation, Radical Media, Rob Bourdon Music, Roc-A-Fella Records, LLC, Timbaland Productions, Inc., UMG Recordings, Inc., Universal Music and Video Distribution, Inc., and Warner Music Inc., | Date:  October 3, 2011<br>Time:  10:00 a.m.<br>Ctrm:  5<br><br>Discovery Cutoff:  TBD<br>Pretrial Conf.:  TBD<br>Trial:  TBD |
| Defendants. | |

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ............................................................................... 3

STATEMENT OF UNDISPUTED FACTS ............................................................. 4

ARGUMENT ........................................................................................................... 10

I. LEGAL STANDARD ................................................................................... 10

II. THE STATUTE OF LIMITATIONS ABSOLUTELY BARS ANY RECOVERY PRIOR TO AUGUST 31, 2004. .............................................. 11

CONCLUSION ........................................................................................................ 13

# TABLE OF AUTHORITIES

**Page(s)**

## FEDERAL CASES

Bridgeport Music, Inc. v. Rhyme Syndicate Music,
   376 F.3d 615 (6th Cir. 2004)..........................................................................12

Celotex Corp. v. Catrett,
   477 U.S. 317 (1986) ......................................................................................10

Daboub v. Gibbons,
   42 F.3d 285 (5th Cir. 1995)...........................................................................12

Hotaling v. Church of Jesus Christ of Latter Day Saints,
   118 F.3d 199 (4th Cir. 1997).........................................................................11

Jarrow Formulas, Inc. v. Nutrition Now, Inc.,
   304 F.3d 829 (9th Cir. 2002)...........................................................................4

Jaso v. The Coca Cola Co.,
   2011 WL 3279202 (5th Cir. 2011).................................................................12

Makedwde Publ'g Co. v. Johnson,
   37 F.3d 180 (5th Cir. 1994)...........................................................................11

Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,
   475 U.S. 574 (1986) ......................................................................................11

Roley v. New World Pictures, Ltd.,
   19 F.3d 479 (9th Cir. 1994).....................................................................11, 12

Stone v. Williams,
   970 F.2d 1043 (2d Cir. 1992)........................................................................11

Watermark Publishers v. High Tech. Sys., Inc.,
   44 U.S.P.Q. 2d 1578, 1997 WL 717677 (S.D. Cal. 1997)............................12

Weber v. Geffen Records, Inc.,
   63 F. Supp. 2d 458 (S.D.N.Y. 1999).............................................................12

Wood v. Santa Barbara Chamber of Commerce, Inc.,
   705 F.2d 1515 (9th Cir. 1983).......................................................................12

**TABLE OF AUTHORITIES**
**(continued)**

**Page(s)**

**STATE CASES**

Gutierrez v. Mofid,
  39 Cal. 3d 892 (1985) .................................................................................... 11

**FEDERAL STATUTES**

17 U.S.C.
  § 115(b) ......................................................................................................... 11
  § 507(b) ............................................................................................... 1, 4, 5, 11

**RULES**

Federal Rules of Civil Procedure
  Rule 56 ........................................................................................................... 10
  Rule 56 ............................................................................................................. 1
  Rule 56(a) ...................................................................................................... 10

Local Rules
  Rule 7-3 ............................................................................................................ 2

**OTHER AUTHORITIES**

Nafal v. Kent, et al.,
  S.B.S.C. No. 1301953 ...................................................................................... 5

W. Patry, Patry On Copyright, § 20:28 (2011 ed.) ..................................................... 13

Mitchell
Silberberg &
Knupp LLP

3955191.8

iii

MOTION OF DEFENDANTS FOR PARTIAL SUMMARY JUDGMENT

1  TO: ALL PARTIES AND THEIR COUNSEL OF RECORD

2

3  PLEASE TAKE NOTICE that, on October 3, 2011, at 10:00 a.m., or as soon
4  thereafter as counsel may be heard, in the courtroom of the Honorable Christina A.
5  Snyder, District Judge for the United States District Court, Central District of
6  California, located at 312 N. Spring Street, Los Angeles, CA 90012, Defendants Rob
7  Bourdon, Brad Delson, Mike Shinoda, Dave Farrell, Joseph Hahn, Chester
8  Bennington, Big Bad Mr. Hahn Music, Chesterchaz Publishing, Kenji Kobayashi
9  Music, Machine Shop Recordings LLC, Nondisclosure Agreement Music, Rob
10 Bourdon Music, Warner Music, Inc., UMG Recordings, Inc., Roc-A-Fella Records,
11 LLC, Universal Music Group Distribution, Corp. f/k/a Universal Music & Video
12 Distribution, Corp., MTV Networks Enterprises Inc., EMI Blackwood Music Inc.,
13 Timbaland Productions, Inc., Shawn Carter, Timothy Mosley, Paramount Home
14 Entertainment, Inc., and Paramount Pictures Corporation (collectively referred to as
15 "Defendants") will move this Court pursuant to Rule 56 of the Federal Rules of
16 Civil Procedure for partial summary judgment.
17  This motion is made on the grounds that there exist no genuine issues of
18 material fact and Defendants are entitled to a judgment as a matter of law that any
19 recovery that Plaintiff may obtain under his First Claim for Relief is limited to
20 claims accruing after August 31, 2004, three years prior to the filing of this action,
21 pursuant to the applicable statute of limitations period in 17 U.S.C. § 507(b).
22  This Motion is based on this Notice, the accompanying Memorandum of
23 Points and Authorities, the separately lodged Statement of Uncontroverted Facts and
24 Conclusions of Law, the Declaration of Alexa L. Lewis, the Request for Judicial
25 Notice, the pleadings and papers on file with the Court, and oral argument, if any.
26
27
28

Mitchell
Silberberg &
Knupp LLP
3955191.8

1
MOTION OF DEFENDANTS FOR PARTIAL SUMMARY JUDGMENT

This Motion is made following conferences of counsel pursuant to L.R. 7-3, the earliest of which took place on February 10, 2009, and the Order of this Court dated July 25, 2011.

Dated: August 25, 2011

RUSSELL J. FRACKMAN
ALEXA A. LEWIS
MITCHELL SILBERBERG & KNUPP LLP

By: /s/ Alexa L. Lewis
    Alexa L. Lewis
    Attorneys for Certain Defendants

## Preliminary Statement

At issue in this lawsuit for copyright infringement is the alleged use of a musical composition entitled *Khosara Khosara* in the song *Big Pimpin'*.[1] *Big Pimpin'* was recorded and sold by certain Defendants in **1999,** seven and a half years before this lawsuit was filed on August 31, **2007**. Plaintiff Osama Fahmy, who claims to own only a minority interest of 13-1/3% in *Khosara Khosara* and to hold general powers of attorney from all of his alleged co-owners, was in charge of the exploitation of *Khosara Khosara* written by his deceased uncle, Baligh Hamdy. Plaintiff has ***admitted*** that he had actual knowledge of the infringement claim at issue at least as early as December 2000, and even took steps at that time to actively pursue that claim.

This motion should not be necessary. Both the law and the relevant facts are beyond doubt. Plaintiff's ***actual*** knowledge here is clear and admitted. Fahmy was directly informed by a U.S. resident (Farouk Sima) that *Big Pimpin'* allegedly infringed *Khosara Khosara*, and that Sima had arranged for an expert to listen to the two songs to confirm that view. Fahmy hired his own copyright lawyer in Egypt to review the matter. Fahmy retained Sima as his "agent" to represent him and to bring an action for infringement pursuant to a detailed written "Agency Contract and Agreement" that Fahmy helped draft and that he signed on behalf of all the Hamdy heirs. The agreement specified the precise nature of the infringement claim against *Big Pimpin'*. Simultaneously, Fahmy entered into a "License Agreement" with Sima that also specifically referenced an infringement claim and that he signed on behalf of all the Hamdy heirs. All of this (and more) took place in 2000 and 2001.

Not only that (although that is more than enough), *Big Pimpin'* was discussed in June and July 2000 in multiple major Egyptian publications, including in a

---

[1] Plaintiff's claims are limited to the musical composition, and he makes no claim to the sound recording allegedly sampled.

newspaper of which Plaintiff's uncle (the alleged majority owner of *Khosara Khosara*) was a highly prominent editor and columnist. Among other things, these articles quoted Plaintiff's cousin and stated that "one of the hits on his [Jay-Z's] current album, 'Life and Times of S. Carter'…is called *Big Pimpin'*…. The haunting melody that provides the basis of *Big Pimpin'*'s success is clearly taken from *Khosara*, a song written by composer Baligh Hamdy."

Nevertheless, Plaintiff did not bring this action until August 31, 2007. Therefore, Defendants seek an order specifying that, pursuant to the applicable three-year statute of limitations, Plaintiff cannot recover under his First Claim for Relief ("Copyright Infringement (Composition), relating to 'Big Pimpin''/*Vol. 3, Life and Times of S. Carter*") for any claimed infringement more than three years preceding the filing of this lawsuit, *i.e.*, prior to August 31, 2004. 17 U.S.C. § 507(b).

## Statement of Undisputed Facts[2]

Plaintiff's lawsuit for copyright infringement is based on the alleged unlicensed use of a sample of the Egyptian musical composition *Khosara Khosara* in the Jay-Z song *Big Pimpin'*.[3] Statement of Undisputed Facts ("SUF") 3. Plaintiff alleges that *Big Pimpin'* was "released … in or about December 1999, on an album titled '*Jay-Z Volume III: Life and Times of S. Carter*.'" SUF 4. Its sales peaked

---

[2] These facts are undisputed for the purposes of this Motion only. Of course, Defendants have several defenses on the merits, including license (see Order dated May 2, 2011) and laches. See, e.g., Jarrow Formulas, Inc. v. Nutrition Now, Inc., 304 F.3d 829, 837 (9th Cir. 2002) (presumption of laches "if any part of the claimed wrongful conduct occurred beyond the limitations period.").

[3] *Khosara Khosara* was written in or around 1957 by Baligh Hamdy. SUF 1. Hamdy died in 1993. SUF 2. (Hamdy's name is spelled various ways in the documents. Defendants use the spelling in the Complaint.) The *Khosara Khosara* copyright interests presently are owned in varying percentages by Hamdy's surviving relatives, including Plaintiff, who is Hamdy's nephew; Plaintiff's uncle (who owns approximately 66% of the copyright); and each of Plaintiff's three siblings. SUF 2. At various times, Plaintiff's uncle and siblings granted general powers of attorney to Plaintiff giving him the right to make business decisions. Id.

shortly thereafter, and it was certified as triple platinum on February 14, 2001 (signifying sales of 3,000,000 units). Id.

Plaintiff admitted in a sworn declaration that in "approximately" 2001, he "was approached by an Egyptian, Farouok Fathalla Sima, who informed [Plaintiff] of an infringement of *Khosara Khosara* by a song called *Big Pimpin'* that had been released in America."[4] SUF 5. He has testified that at this meeting, Plaintiff was informed by Sima that a university professor had been consulted and had prepared a report confirming the alleged infringement. SUF 6.

Similarly, in his deposition Fahmy admitted ***actual*** knowledge of the existence of *Big Pimpin'* **and** his infringement claim as of December 2000, stating that he obtained documents at that time and gave them to his lawyer (and to Sima to give to a lawyer) specifically in order to pursue the infringement claim on *Khosara Khosara*:

> Q. Do you recognize Exhibit 103, sir?
> A. Of course.
> Q. And can you tell us what it is.
> A. This is a certificate from the Society of Authors and Musical Composers and Publishers, SACERAU, which says that the song KHOSARA KHOSARA is composed by the musical composer Baligh Hamdy, and it is documented in the Society dated June 17, 1960, under No. 3799.
> Q. Is this a document that you obtained, sir?
> A. Of course.
> Q. Why?

---

[4] The Declaration originally was submitted in support of a motion for summary judgment by the defendants (not parties to this matter) in a malpractice case brought in the Santa Barbara Superior Court (Nafal v. Kent, et al., S.B.S.C. No. 1301953). Plaintiff later submitted it in this action in opposition to Nafal's motion to intervene. See Docket No. 204.

| | | |
|---|---|---|
| 1 | A. | To bring it to the lawyer. |
| 2 | Q. | Mr. Ibrahim? |
| 3 | A. | In order to give it to Farouk Sima and him give it to the lawyer. |
| 4 | | At this time I sent it for my attorney to -- with Mr. -- with -- with |
| 5 | | the attachments. |
| 6 | Q. | Is there a date on Exhibit -- the first page of Exhibit 103? |
| 7 | A. | The year 2000, December, 2000. And the first -- the first -- it's |
| 8 | | 11? Okay. December 11, 2000. |
| 9 | Q. | Did you know of the claim that KHOSARA KHOSARA was |
| 10 | | infringed by BIG PIMPIN' in December, 2000? |
| 11 | A. | Farouk Sima called me, and I made this to him. And then I made |
| 12 | | an agreement with him, the contract, in order to follow up the |
| 13 | | case. |
| 14 | Q. | So he called you sometime before December 11, 2000? |
| 15 | MR. LEAR: | Mischarac- -- sorry. Mischaracterizes the evidence and the |
| 16 | | testimony. |
| 17 | THE WITNESS: | When Farouk Sima came to me and told me, I brought |
| 18 | | the certificate, and I made the agreement with him. This is in |
| 19 | | December, and that was in January. |
| 20 | BY MR. FRACKMAN: | So my question, sir, was: Since this is in |
| 21 | | December, Exhibit 103, did you speak to Mr. Sima before you |
| 22 | | got the certificate? |
| 23 | A. | I made the -- the certificate immediately after he told me about it, |
| 24 | | about the claim. I made this certificate, and I went to the |
| 25 | | attorney, and we made the -- the contract. And both of them |
| 26 | | within a month. This is December, 2000, and the other – and the |
| 27 | | other one in January of 2001. |
| 28 | | |

> Q. And just so that I'm clear -- and I think I understand -- Mr. Sima called you sometime before December 11, 2000, and you got this certificate, Exhibit 103, and then you met with him in January?
>
> A. And then I gave him the agreement in January when the attorney drafted it.

SUF 5, 7 (Declaration of Alexa L. Lewis ("Lewis Decl."), Ex. 4 at 79:6-81:8).

Thus, in or around the end of 2000, Plaintiff met personally with Sima, who had listened to *Big Pimpin'* "several times," and who advised him of the claim. SUF 5. Plaintiff retained a copyright lawyer to pursue claims and to work with a lawyer in the United States; Sima played the music for experts in the U.S. and in Egypt; and Plaintiff obtained documents to pursue his claim, including the certificate of ownership from the Society of Authors, Composers, and Publishers of the Arab Republic of Egypt ("SACERAU"). SUF 7. At least as early as December 2000, Plaintiff believed "there was an infringement" and "wanted to make a claim." SUF 7 (Lewis Decl., Ex. 4 at 82:3-19).

As alluded to in Plaintiff's testimony above, Plaintiff, on behalf of the Hamdy heirs, then entered two written agreements with Sima on or about January 27, 2001. SUF 8. One of the two agreements (which Fahmy went to the effort of having notarized), entitled "Agency Contract and Agreement," specified in its preamble that Sima had determined that a song allegedly infringing *Khosara Khosara* was being "broadcast[] on radio, T.V. and on CD's," and conveyed to Sima an "official power of attorney" authorizing him to take various measures on the heirs' behalf pertaining to a planned litigation in the United States. SUF 9. Excerpts from that agreement, dated January 27, 2001, leave no doubt as to Plaintiff's knowledge of the claim:

> "The second party Mr. Farouk Mohamed Fathallah Sima is currently living in California, the United States of America. He determined that there is a song for an American famous singer broadcasted on radio, T.V. and on CD's. The music of this song is taken from the overture of

Mitchell Silberberg & Knupp LLP
3955191.8

7
MOTION OF DEFENDANTS FOR PARTIAL SUMMARY JUDGMENT

|   |   |
|---|---|
| 1 | the song "*Khosara, Khosara*" composed by the musician Baligh |
| 2 | Hamdy." |
| 3 | … "Therefore, the second party immediately notified the first party |
| 4 | [Plaintiff], owner of the arts work subject to infringement. …  The |
| 5 | second party referred this matter to a university professor of music in |
| 6 | order to verify to what extent the music used in the American song is |
| 7 | identical, and to compare it with the original Egyptian version where |
| 8 | the professor declared it is completely identical to the Egyptian one." |
| 9 |   … "The second party contacted prominent lawyers specialized in |
| 10 | intellectual property and protection of composers' rights cases, and |
| 11 | consulted them over infringement of the first party's rights by using the |
| 12 | musical composition of the above mentioned song and they confirmed |
| 13 | that such infringement exists and proved to be true…. |
| 14 |   "And since the second party has presented the details of this matter to |
| 15 | the first party as he is the representative of the company holding the |
| 16 | right of the financial exploitation of the said musical arts work, |
| 17 | therefore the first party agreed to issue a special power of attorney to |
| 18 | the second party appointing him to enter into contract with a specialized |
| 19 | attorney office to handle the aforementioned lawsuit…." |
| 20 | SUF 9.  The second of these two agreements between Plaintiff and Sima was a |
| 21 | "License Agreement" entered into on or about January 27, 2001, which granted |
| 22 | permission for Sima to sue in the United States for copyright infringement of |
| 23 | *Khosara Khosara*.  SUF 10. |
| 24 |     Testifying about these agreements in his deposition, Plaintiff reiterated that he |
| 25 | entered into them believing he had a claim: |
| 26 |         Q:    And at the time that you signed [the License Agreement] and [the |
| 27 |                 Agency Contract and Agreement], you believed that the heirs had |
| 28 |   |

a claim that KHOSARA KHOSARA was infringed by BIG PIMPIN'?

A. Yes.

SUF 8 (Lewis Decl., Ex. 4 at 64:3-7).

Fahmy was not the only one in Egypt aware of a possible infringement claim. In June 2000, the prominent Egyptian newspaper *Al Ahram Weekly* ran an article regarding *Big Pimpin'*. SUF 11. This article asserted that elements of *Big Pimpin'* were derived from *Khosara Khosara*, "a song written by composer Baligh Hamdi." Id. (Plaintiff has characterized *Khosara Khosara* as "famous throughout the Arab world for its distinctive, romantic melody." SUF 1.) In the online edition of *Al Ahram Weekly*, this article appeared adjacent to an article by Plaintiff's uncle (Hamdy's brother), Morsy Saad El-Din, a "very well-known person" who was a prominent editor and columnist at *Al Ahram* and a **majority (66-2/3%) owner of Khosara Khosara**. SUF 12. The article stated that "several experts, DJs and musicians" had been consulted on the issue, as well as the owner of the Egyptian record label to whom Plaintiff had licensed the song. SUF 11. It also reprinted the following comments attributed to Haitham Hamdy, another Hamdy family member (Fahmy's cousin) and Hamdy's former assistant:

> "Baligh Hamdi's nephew and assistant up to the time of his passing, Haitham Hamdi, was quite proud when he found out that the tune for Khosara was used by Jay-Z. 'The fact that it was taken abroad means that when you strip the song down to its elements, the strongest part was the melody. I see that it could open doors. If Baligh was alive today, he would be proud.'"

Id.

In July 2000, *Big Pimpin'* also was discussed in the Egyptian publication *Al-Ahram Al-Arabi,* which again attributed comments to Haitham Hamdy:

> "Haitham, Baleegh Hamdi's nephew, surprised us by announcing his happiness when he found out that Jay-Z used the music of the song Khosara in the Big Pimpin' song, and said, " 'Using the music in this way means that it is the strongest factor in the song, and this will open the door in the face of other Arabic music to invade the United States and Europe, and if Baleegh Hamdi was alive he would have felt proud....'"

SUF 13.

Plaintiff's lawsuit was filed on August 31, 2007, ***seven and a half years*** after Defendants' December 1999 release of "Vol. 3… Life and Times of S. Carter," and, ***at the least***, over six and a half years after he became aware of the potential claim. SUF 14.

## **Argument**

### I. **LEGAL STANDARD**

Summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A party may move for summary judgment, identifying each claim or defense – or the part of each claim or defense – on which summary judgment is sought." Id. See Advisory Committee Note, 2010 ("The first sentence [of subdivision (a)] is added to make clear at the beginning that summary judgment may be requested … as to … part of a claim or defense.")

A party seeking summary judgment has the initial burden of "informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (internal citations omitted). Once the moving party has met its burden under Rule 56, "its

opponent must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).

## II. THE STATUTE OF LIMITATIONS ABSOLUTELY BARS ANY RECOVERY PRIOR TO AUGUST 31, 2004.

The Copyright Act's statute of limitations provides that "No civil action shall be maintained under the provisions of this title unless it is commenced within three years after the claim accrued." 17 U.S.C. § 507(b).[5] "A cause of action for copyright infringement accrues when one has knowledge of a violation or is chargeable with such knowledge." Roley v. New World Pictures, Ltd., 19 F.3d 479, 481 (9th Cir. 1994). Knowledge (actual *or* constructive) of facts giving rise to a claim is sufficient; knowledge of the legal theory is not required, although here plaintiff had both. Gutierrez v. Mofid, 39 Cal. 3d 892, 897-98 (1985) (for purposes of limitations period, "[i]t is irrelevant that plaintiff is ignorant of his legal remedy or the legal theories underlying his cause of action").

A defendant "is only liable for his acts of infringement committed within three years prior to Plaintiffs' lawsuit." Makedwde Publ'g Co. v. Johnson, 37 F.3d 180, 181 (5th Cir. 1994) ("We are persuaded by the Ninth, Sixth, and Second Circuits' interpretation of section 507(b). [Defendant] is only liable for *his* acts of infringement committed within three years prior to plaintiffs' lawsuit.") (emphasis in original). Thus, recovery "is allowed only for those acts occurring within three years of suit and is disallowed for earlier infringing acts." Stone v. Williams, 970 F.2d 1043, 1049-50 (2d Cir. 1992); see, e.g., Hotaling v. Church of Jesus Christ of

---

[5] The statute of limitations in the 1909 Copyright Act is substantively identical: "No civil action shall be maintained under the provisions of this title unless the same is commenced within three years after the claim accrued." 1909 Act, 17 U.S.C. § 115(b).

1   Latter Day Saints, 118 F.3d 199, 202 (4th Cir. 1997) ("a party cannot ... recover for
2   claims that accrued outside the limitations period").  The issue of the statute of
3   limitations is appropriately decided on summary judgment.  Bridgeport Music, Inc.
4   v. Rhyme Syndicate Music, 376 F.3d 615, 621 (6th Cir. 2004) (citing Roley); see
5   also, e.g., Watermark Publishers v. High Tech. Sys., Inc., 44 U.S.P.Q. 2d 1578,
6   1582-83, 1997 WL 717677 (S.D. Cal. 1997) (granting summary judgment on all
7   claims that accrued more than three years before suit, citing Roley).[6]

8       As evidenced by the references in the Egyptian press, Plaintiff's claims
9   accrued shortly after the December 1999 release of *Big Pimpin'* on the album
10  "Vol. 3…Life and Times of S. Carter."  SUF 4, 11-13.  See Daboub v. Gibbons, 42
11  F.3d 285, 291 (5th Cir. 1995) ("ZZ Top's actions were not covert or concealed.
12  Indeed, many copies of [the infringing work] were released and ZZ Top performed
13  the song publicly."); Weber v. Geffen Records, Inc., 63 F. Supp. 2d 458, 465-66
14  (S.D.N.Y. 1999) (plaintiff had constructive knowledge of infringement claims at the
15  time the allegedly infringing album entered wide retail distribution).  However,
16  Defendants need not rely on this fact because, as discussed above, at the latest
17  Plaintiff admittedly discovered and had actual knowledge of his claims in December
18  2000 – over six and a half years before the filing of this lawsuit.  SUF 5-10.
19  Regardless of whether the claims accrued in 1999 or in 2000, Plaintiff can recover,
20  at most, for any purportedly infringing conduct that took place after August 31,

---

[6] There is no basis for Plaintiff to argue that the facts here fall within the narrow "extraordinary circumstances" that might toll the statute of limitations.  See, e.g., Jaso v. The Coca Cola Co., 2011 WL 3279202, *1-2 (5th Cir. 2011) (that plaintiff lived in Mexico and was threatened at gunpoint to stop his lawsuit, was subject to attempted kidnapping against his son, suffered from depression and drug dependency, and was incarcerated in Mexico on charges that were later dismissed, was not "extraordinary"); see also Wood v. Santa Barbara Chamber of Commerce, Inc., 705 F.2d 1515, 1521 (9th Cir. 1983) (tolling for fraudulent concealment requires "a showing both that the defendant used fraudulent means to keep the plaintiff unaware of his cause of action, and also that the plaintiff was, in fact, ignorant of the existence of his cause of action.").

2004, three years before he filed suit. SUF 3, 14. One treatise succinctly illustrates this result by way of a hypothetical:

> "Defendant begins to infringe in 2000, and continues to infringe until 2004, when the complaint is filed. Plaintiff became aware of the violation in 2000. Plaintiff may collect for the period 2001 to 2004."

W. Patry, Patry On Copyright, § 20:28 (2011 ed.). Here, the dates are (slightly) different, but the theory is precisely the same. If Defendants commenced the alleged infringement in 1999, and Plaintiff became aware of the alleged infringement in 2000 but waited until 2007 to file his lawsuit, he may recover only for the period commencing in 2004. Plaintiff has no defense to this black letter principle of copyright law.

## **CONCLUSION**

Defendants request an order granting partial summary judgment that any potential recovery by Plaintiff under his First Claim for Relief is limited to damages incurred, if any, after August 31, 2004.

Dated: August 25, 2011           Respectfully submitted,

RUSSELL J. FRACKMAN
ALEXA A. LEWIS
MITCHELL SILBERBERG & KNUPP LLP


By: /s/ Alexa L. Lewis
    Alexa L. Lewis
    Attorneys for Certain Defendants