UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 07-5715 CAS (PJWx) | Date | December 9, 2011 |
|---|---|---|---|
| Title | OSAMA AHMED FAHMY v. JAY-Z; ET AL. | | |

| Present: The Honorable | CHRISTINA A. SNYDER, U.S. DISTRICT JUDGE | |
|---|---|---|
| RITA SANCHEZ | N/A | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| N/A | N/A |

**Proceedings:** (In Chambers:) DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT WITH RESPECT TO STATUTE OF LIMITATIONS (filed 8/25/2011)

PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT WITH RESPECT TO CONCERT REVENUES (filed 8/25/2011)

## I.    INTRODUCTION

On August 31, 2011, plaintiff Osama Ahmed Fahmy ("plaintiff") filed suit against defendants Jay-Z, (aka Shawn Carter) ("Jay-Z"), Timothy Mosley, Kyambo Joshua, Rob Bourdon, Brad Delson, Mike Shinoda, Dave Farrell, Joseph Hahn, Chester Bennington, Big Bad Mr. Hahn Music, Chesterchaz Publishing, EMI Blackwood Music Inc., EMI Publishing Ltd., Kenji Kobayashi Music, Lil Lulu Publishing, Machine Shop Recordings LLC, Marcy Projects Productions II, MTV Networks Enterprises Inc., Nondisclosure Agreement Music, Paramount Home Entertainment Inc., Paramount Pictures Corporation, Radical Media, Rob Bourdon Music, Roc-A-Fella Records LLC, Timbaland Productions Inc., UMG Recordings Inc., Universal Music and Video Distribution Inc., and Warner Music Inc, alleging various claims of copyright infringement pursuant to the Copyright Act, 17 U.S.C. § 101 et seq.

On August 25, 2011, both parties filed motions for partial summary judgment as to discrete questions of law. Defendants' motion concerns whether the Copyright Act's statute of limitations period limits plaintiff's available damages. Plaintiff opposed the motion on September 26, 2011, and defendants replied on October 10, 2011.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

O

| Case No. | CV 07-5715 CAS (PJWx) | Date | December 9, 2011 |
|---|---|---|---|
| Title | OSAMA AHMED FAHMY v. JAY-Z; ET AL. | | |

Plaintiff's motion pertains to whether plaintiff may recover defendants' profits from concert revenues due to defendants' alleged infringing live performances of *Big Pimpin'*. Defendants filed their opposition on September 26, 2011; plaintiff replied on October 10, 2011; defendants filled a surreply on October 25, 2011; and plaintiff filed a response to the surreply on November 2, 2011. Both motions are currently before the Court.

**II.     BACKGROUND**

Plaintiff is the nephew of Baligh Hamdy, an Egyptian composer (now deceased) who allegedly wrote the song *Khosara, Khosara* in 1957. The gravamen of plaintiff's complaint is that Jay-Z infringed the *Khosara, Khosara* composition in his well-known hip-hop song *Big Pimpin'*, released in or around 1999. The *Khosara, Khosara* copyright interests presently are owned in varying percentages by Hamdy's surviving relatives, including: plaintiff; plaintiff's uncle (owner of approximately 66 percent of the copyright); and each of plaintiff's three siblings. Defendants' Statement of Uncontroverted Facts ("DSUF") ¶ 1.

It is undisputed that plaintiff became aware of *Big Pimpin'* and its alleged infringement of *Khosara, Khosara* during a December 2000 telephone call. Plaintiff's Statement of Undisputed Facts ("PSUF") ¶ 21. Farouk Sima ("Sima"), an Egyptian businessman with business interests in the United States, approached plaintiff one or two days after the telephone call and offered to help prosecute an infringement action in the United States. Id. ¶ 22. Sima and plaintiff agreed that Sima would have the power of attorney to act as a representative of Hamdy's heirs in asserting their legal claim for infringement in the United States, and they executed a written power of attorney agreement concerning the infringement claim for *Big Pimpin'* on approximately January 27, 2001. Id. ¶¶ 28–29. Between 2001 and 2004, plaintiff believed that Sima was pursuing the heirs' infringement claim in the United States, and in 2004, Sima specifically (and erroneously) told Fahmy that a lawsuit had been filed in the United States. Id. ¶¶ 34–35. During this time, plaintiff also hired David Braun ("Braun"), a U.S.-based intellectual property attorney, to investigate a claim for copyright infringement against the defendants. Id. ¶ 30. According to plaintiff, Braun was told by an attorney at EMI (one of the original defendants in this action) that EMI had a valid license with respect to the *Khosara, Khosara* copyright, authorizing EMI to publish *Big Pimpin'*. Id. ¶ 31. The EMI attorney refused to disclose the agreement to Braun. Id.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 07-5715 CAS (PJWx) | Date | December 9, 2011 |
|---|---|---|---|
| Title | OSAMA AHMED FAHMY v. JAY-Z; ET AL. | | |

Braun thereafter declined representation of the Hamdy heirs. Id. ¶ 33.

In or around 2004 or 2005, plaintiff signed a document presented by Sima authorizing third-party Ahab Joseph Nafal ("Nafal") to assert claims on behalf of the Hamdy heirs in the United States. On April 1, 2005, Nafal filed suit against Jay-Z and others in this district. See Ahab Joseph ("Julian") Nafal v. Shawn Carter, et al., Case No. CV 05-2480 SVW (PJWx) (C.D. Cal. 2005). Nafal asserted claims similar to those alleged herein: that the song *Big Pimpin'*, and variations thereof, infringed Nafal's co-ownership interest in *Khosara Khosara*. However, the court determined that Nafal was a non-exclusive licensee—not authorized to prosecute an action against alleged infringers—and therefore lacked standing to bring the case. See Nafal v. Carter, 540 F. Supp. 2d 1128, 1143–44 (C.D. Cal. 2007), aff'd 388 Fed. Appx. 721 (9th Cir. 2010).

On August 31, 2007, approximately three weeks after the Nafal case was dismissed, plaintiff filed the present action in this Court. See Dkt. No. 1.

### III. LEGAL STANDARD

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party has the initial burden of identifying relevant portions of the record that demonstrate the absence of a fact or facts necessary for one or more essential elements of each cause of action upon which the moving party seeks judgment. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

If the moving party meets its initial burden, the opposing party must then set out specific facts showing a genuine issue for trial in order to defeat the motion. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986); see also Fed. R. Civ. P. 56(c), (e). The nonmoving party must not simply rely on the pleadings and must do more than make "conclusory allegations [in] an affidavit." Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 888 (1990); see also Celotex, 477 U.S. at 324. Summary judgment must be granted for the moving party if the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Id. at 322; see also Abromson v. Am. Pac. Corp., 114 F.3d 898, 902 (9th Cir. 1997).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 07-5715 CAS (PJWx) | Date | December 9, 2011 |
|---|---|---|---|
| Title | OSAMA AHMED FAHMY v. JAY-Z; ET AL. | | |

In light of the facts presented by the nonmoving party, along with any undisputed facts, the Court must decide whether the moving party is entitled to judgment as a matter of law. See T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 631 & n.3 (9th Cir. 1987). When deciding a motion for summary judgment, "the inferences to be drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citation omitted); Valley Nat'l Bank of Ariz. v. A.E. Rouse & Co., 121 F.3d 1332, 1335 (9th Cir. 1997). Summary judgment for the moving party is proper when a rational trier of fact would not be able to find for the nonmoving party on the claims at issue. See Matsushita, 475 U.S. at 587.

**IV.   DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT REGARDING STATUTE OF LIMITATIONS**

The Copyright Act's statute of limitations provides: "No civil action shall be maintained under the provisions of this title unless it is commenced within three years after the claim accrued." 17 U.S.C. § 507(b). A claim for copyright infringement "accrues when one has knowledge of a violation or is chargeable with such knowledge." Roley v. New World Pictures, Ltd., 19 F.3d 479, 481 (9th Cir. 1994). Actual or constructive knowledge of facts giving rise to the alleged infringement is sufficient; knowledge of the legal theory is not required. See Gutierrez v. Mofid, 39 Cal. 3d 892, 897–98 (1985) ("[T]he uniform California rule is that a limitations period dependent on discovery of the cause of action begins to run no later than the time the plaintiff learns, or should have learned, the *facts* essential to his claim," and therefore "[i]t is irrelevant that the plaintiff is ignorant of his legal remedy or the legal theories underlying his cause of action") (emphasis in original).

A defendant is only liable for "his acts of infringement committed within three years prior to [a plaintiff's] lawsuit." Makedwe Publ'g Co. v. Johnson, 37 F.3d 180, 181 (5th Cir. 1994) ("We are persuaded by the Ninth, Sixth, and Second Circuits' interpretation of section 507(b). [A defendant] is only liable for *his* acts of infringement committed within three years prior to [a plaintiff's] lawsuit.") (emphasis in original); see Roley, 19 F.3d at 481–82. Accordingly, recovery "is allowed only for those acts occurring within three years of suit and is disallowed for earlier infringing acts." Stone v. Williams, 970 F.2d 1043, 1049–50 (2d Cir. 1992).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 07-5715 CAS (PJWx) | Date | December 9, 2011 |
|---|---|---|---|
| Title | OSAMA AHMED FAHMY v. JAY-Z; ET AL. | | |

Generally, statutes of limitations are subject to equitable tolling if a plaintiff shows: "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevent timely filing." Holland v. Florida, 130 S.Ct. 2549, 2562 (2010) (internal quotation marks and citation omitted). Thus, "the limit imposed by § 507(b) [of the Copyright Act] should not be construed to prohibit recovery for prior infringement in every circumstance." Polar Bear Prods., Inc. v. Timex Corp., 384 F.3d 700, 707 (9th Cir. 2004); see also Santa Maria v. Pac. Bell, 202 F.3d 1170, 1178 (9th Cir. 2000) ("Equitable tolling may be applied if, despite all due diligence, a plaintiff is unable to obtain vital information bearing on the existence of his claim.").

Here, defendants contend that the three-year statute of limitations "absolutely bars" plaintiff from recovering any damages due to the defendants' infringement prior to August 31, 2004, three years before the present suit was filed. Def. Mot. at 11. Defendants argue that plaintiff had admitted actual knowledge of his claims by December 2000 at the latest, more than six years prior to filing suit. Id. at 12.

In opposition, plaintiff contends that "defendants' motion is not properly directed to any infringing work other than the *Big Pimpin'* single," and that none of the derivative works or "other infringing works" are properly the subject of this motion. Pl. Opp'n at 11–13. Plaintiff also proffers several reasons why the three year statutory period should be equitably tolled. First, plaintiff argues that the statute should be tolled because he is an Egyptian resident who speaks little English and had never been to the United States prior to having his deposition taken in this case. Id. at 20–21. Second, plaintiff argues he was misled by both EMI's attorney's statements that it had obtained a license to use *Khosara Khosara*, and by Sima and Nafal who ensured him his claims were being pursued in America. Id. at 19–20. Finally, plaintiff contends that the filing of Nafal v. Carter in 2005 tolled the statute. Id. at 22.

Defendants reply that "plaintiff cannot circumvent the statute of limitations by claiming actual knowledge only of the *Big Pimpin'* 'single.'" Def. Reply at 8. Defendants argue that "no matter how it is 'packaged,'" the plaintiff's claim is the same: that *Big Pimpin'* infringed *Khosara, Khosara* by sampling a portion of it. Id. Moreover, defendants contend that plaintiff's "awareness of the alleged infringement . . . in 2000 triggered the running of the statute of limitations in connection with his claim for infringement by **any** sound recording using the *Khosara, Khosara* composition." Id. at

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 07-5715 CAS (PJWx) | Date | December 9, 2011 |
|---|---|---|---|
| Title | OSAMA AHMED FAHMY v. JAY-Z; ET AL. | | |

10 (emphasis in original). As to equitable tolling, defendants assert that plaintiff's residence outside the United States "does not constitute the type of 'extraordinary circumstances' that serve to toll the statute of limitations." Id. at 4. Defendants reason that "[i]f a plaintiff's residence would act to toll the statute, it would never run on a claim by a foreign resident, even where, as here, the plaintiff had knowledge of the claim and the ability to prosecute it." Id. Moreover, defendants argue that plaintiff's arguments regarding alleged misrepresentations by EMI, Sima, and Nafal do not toll the statute. Id. at 6–8. Specifically, defendants refute the notion that EMI's misrepresentation tolled the statute because plaintiff was clearly on notice of his potential claim notwithstanding whatever EMI's attorney told him. Id. at 7. Defendants also note that "quite simply, any such assertion by EMI was not a misrepresentation [because] it is still Defendants' belief that their use of *Khosara Khosara* was and is licensed." Id. Finally, defendants argue that the Nafal v. Carter action did not toll the statute because "that separate action was also filed after the statute had run, was designed so Plaintiff (and the heirs) could avoid filing a lawsuit, was a prohibited 'disguised assignment of a cause of action,' and judgment was entered in favor of defendants and the case dismissed." Id. at 3, 13–15. Thus, according to defendants, Nafal v. Carter "cannot serve to toll the statute of limitations on a new lawsuit filed thereafter by a different party." Id. at 3.

As an initial matter, the Court rejects plaintiff's argument that because he allegedly only knew of the *Big Pimpin'* "single" released in 1999, the statute of limitations does not bar recovery for any derivative works subsequently released (including, among others, the expletive-free version of *Big Pimpin'* or the acoustic version of *Big Pimpin'*). First, the complaint's allegations suggest that Jay-Z's various iterations of *Big Pimpin'* embodied the exact same infringing melody from *Khosara Khosara*.[1] See Compl. ¶ 3 ("'Jay-Z . . . unlawfully used musical works that infringed Plaintiff's rights in *Khosara, Khosara*. The infringing works . . . have appeared under variations of the title *Big Pimpin'*"); ¶¶ 20, 21 (alleging that each infringing work was released under the title *Big Pimpin'* by engaging in "wholesale copying" of *Khosara Khosara*). Thus, plaintiff's first claim could be construed as one for "continuous" infringement, but such a theory does

---

[1]Defendants acknowledge that two derivative works—Jay-Z's collaborative song with Linkin Park *Big Pimpin'/Papercut* (second claim for relief) and the DVD "Fade to Black" (third claim for relief)—are not implicated by this motion because both were released within the three years prior to plaintiff filing this action.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**O**

**CIVIL MINUTES - GENERAL**

| Case No. | CV 07-5715 CAS (PJWx) | Date | December 9, 2011 |
|---|---|---|---|
| Title | OSAMA AHMED FAHMY v. JAY-Z; ET AL. | | |

not toll the statute of limitations. In Roley, for example, the plaintiff screenwriter argued that he was entitled to recover damages for infringement that occurred before the three-year period prior to filing his suit because the infringement was continuous—i.e., there was at least one infringement within the three-year period. 19 F.3d at 480–81. The Ninth Circuit rejected the plaintiff's theory because "in a case of continuing copyright infringements, an action may be brought for all acts that accrued within the three years preceding the filing of suit." Id. at 481. The Ninth Circuit has upheld this construction of § 507(b): "The copyright plaintiff cannot . . . reach back beyond the three-year limit and sue for damages or other relief for infringing acts that he knew about at the time but did not pursue." Polar Bear, 384 F.3d at 706 (citing Roley, 19 F.3d at 481). Thus, the general rule is that "[a] plaintiff's right to damages is limited to those suffered during the statutory period for bringing claims." Los Angeles News Serv. v. Reuters Tele. Int'l, Ltd., 149 F.3d 987, 002 (9th Cir. 1998); see also 3 Nimmer on Copyright § 12.05[B] ("The prevailing view is . . . that the statute of limitations bars recovery on any damage claim that accrued over three years prior to filing of suit."). In the present case, plaintiff admits he had actual knowledge of *Big Pimpin'* in December 2000 by the latest; thus, the statute began to run at that time, and any "continuing" infringement did not restart the statutory period. Thus, under the "continuing infringement" theory, plaintiff is entitled to recover damages for infringements only within three years of filing suit (notwithstanding equitable tolling).

Even assuming each new iteration of *Big Pimpin'* contained its own statute of limitations period, plaintiff was on constructive notice as of December 2000 that there may exist one or more infringing compositions containing elements from *Khosara, Khosara*. The Ninth Circuit has held that a plaintiff may recover damages occurring outside the three-year window only if "the copyright owner did not discover—*and reasonably could not have discovered*—the infringement before the commencement of the three-year limitation period." Polar Bear, 384 F.3d at 706 (emphasis added). The general discovery rule creates a "disjunctive two-prong test of actual or constructive notice, under which the statute begins to run under either prong. . . . The plaintiff is deemed to have had constructive knowledge if it had enough information to warrant an investigation which, if reasonably diligent, would have led to discovery of the [claim.]" Pincay v. Andrews, 238 F.3d 1106, 1109–10 (9th Cir. 2001). Here, plaintiff became aware of the alleged infringement of *Khosara, Khosara* by December 2000 at the latest, and thus was put on constructive notice that there may be more infringing works on the market (especially produced by the same alleged infringer). This is bolstered by the fact

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 07-5715 CAS (PJWx) | Date | December 9, 2011 |
|---|---|---|---|
| Title | OSAMA AHMED FAHMY v. JAY-Z; ET AL. | | |

O

that plaintiff governs his uncle's entire music catalog and is charged with making business decisions concerning those songs. See Declaration of Osama Fahmy ("Fahmy Decl.") ¶ 3. Plaintiff therefore had a duty to investigate whether other "products" contained the same infringement. E.g., Wood v. Santa Barbara Chamber of Commerce, Inc., 705 F.2d 1515, 1521 (9th Cir. 1983) ("[E]quity will impute to a litigant knowledge of facts that would have been revealed by reasonably required further investigation."); Indus. Constructors Corp. v. Bureau of Reclamation, 15 F.3d 963, 969 (10th Cir. 1994) ("A plaintiff need not know the full extent of his injuries before the statute of limitations begins to run."); Kepner-Tregoe, Inc. v. Exec. Dev., Inc., 79 F. Supp. 2d 474, 488 (D.N.J. 1999) ("[U]pon discovering one infringing work, plaintiff had a duty to monitor the defendant's additional published works because '[a] reasonable [copyright owner], motivated by his interest in recovering for and preventing infringement, keeps abreast of the activities of those in his field of endeavor.'") (quoting Wanlass v. Gen. Elec. Co., 148 F.3d 1334, 1339 (Fed. Cir. 1998)).

Accordingly, the Court concludes that plaintiff may recover damages from any infringement only within three years prior to the filing of his lawsuit—i.e., from August 31, 2004 to the present—unless he can provide other bases for equitably tolling the statute.

### A. Whether Plaintiff Has Proved Equitable Tolling

The Court is unpersuaded by any of the three bases offered by plaintiff for why the statutory period should be equitably tolled in this case.

First, the mere fact that plaintiff lived in Egypt and speaks little to no English does not toll the statutory period. In Jaso v. The Coca Cola Co., the Fifth Circuit rejected an equitable tolling argument made by a plaintiff residing in Mexico: "[Plaintiff] claims that he could not commence his lawsuit against Defendants from Mexico and had to wait until he arrived in the United States in 2008. The district court correctly rejected this argument." 2011 WL 3279202, *9 (5th Cir. 2011) (also noting that "a plaintiff who 'fails to act diligently cannot invoke equitable principles to excuse that lack of diligence,'" regardless where he or she lives) (quoting Baldwin Cnty. Welcome Ctr. v. Brown, 466 U.S. 147, 152 (1984) (per curium)). Moreover, plaintiff admits he had knowledge of the *factual* basis of his claim no later than December 2000, and ignorance of the law or difficulty in bringing suit are not grounds for equitable tolling. See Sperling v. White, 30

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 07-5715 CAS (PJWx) | Date | December 9, 2011 |
|---|---|---|---|
| Title | OSAMA AHMED FAHMY v. JAY-Z; ET AL. | | |

F. Supp. 2d 1246, 1254 (C.D. Cal. 1998) (holding that no "extraordinary circumstances" existed to toll AEDPA statute of limitations despite petitioner's "[i]gnorance of the law and lack of legal assistance") (internal quotation marks and citation omitted); Allan v. GreenPoint Mortg. Funding, 730 F. Supp. 2d 1071, 1076 (N.D. Cal. 2010) ("Equitable tolling is appropriate only when 'despite all due diligence a plaintiff is unable to obtain vital information bearing on the existence of his claim.'") (quoting Santa Maria v. Pac. Bell, 202 F.3d 1170, 1178 (9th Cir. 2000)).

 Second, the alleged misrepresentations do not toll the statute. At the time the EMI attorney allegedly "misled" plaintiff, the plaintiff already knew that *Big Pimpin'* allegedly infringed on *Khosara, Khosara*. That alone defeats an argument for equitable tolling. See Grimmett v. Brown, 75 F.3d 506, 514 (9th Cir. 1996) ("The doctrine of fraudulent concealment is invoked only if the plaintiff both pleads and proves that the defendant *actively* misled her, and that she had neither actual nor constructive knowledge of the *facts constituting his cause of action* despite her due diligence.") (emphasis in original); California Sansome Co. v. U.S. Gypsum, 55 F.3d 1402, 1409 n.12 (9th Cir. 1995) (noting that evidence of defendant's misrepresentations was irrelevant because plaintiff was on notice of a potential claim). Moreover, it is questionable whether EMI's statements were in fact misrepresentations—the Court has already determined that whether defendants had a license to produce *Big Pimpin'* is a question for the jury. See Dkt. No. 271. Finally, plaintiff plainly did not believe EMI's statements, as he continued to pursue his lawsuit notwithstanding EMI's claim to ownership of rights. See Volk v. D.A. Davidson & Co., 816 F.2d 1406, 1416 (9th Cir. 1987) ("Once appellants had clear knowledge of their claims, it was not reasonable for them to rely on reassuring comments from a [defendant-employed] broker."); Abbas v. Dixon, 480 F.3d 636, 642 (2d Cir. 2007) (holding that even if there were a misrepresentation, no equitable tolling if plaintiff failed to show it prevented him from timely filing his complaint). Plaintiff also may not rely on alleged misrepresentations from his own agents, Sima and Nafal, to toll the statute, because the doctrine of fraudulent concealment requires "affirmative conduct *upon the part of the defendant* which would, under the circumstances, lead a reasonable person to believe that he did not have a claim for relief." Gibson v. United States, 781 F.2d 1334, 1345 (9th Cir. 1986) (emphasis added). Thus, the fact that plaintiff's own agents may have misled him does not provide a ground for equitable tolling.

 Finally, existence of the Nafal v. Carter action does not toll the statutory period. "Prior judicial actions . . . 'do not toll the statute of limitations, no matter how close their

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 07-5715 CAS (PJWx) | Date | December 9, 2011 |
|---|---|---|---|
| Title | OSAMA AHMED FAHMY v. JAY-Z; ET AL. | | |

relationship to the one at bar.'" Pace Indus., Inc. v. Three Phoenix Co., 813 F.2d 234, 240 (9th Cir. 1987) (internal citations omitted). To toll the statute, the prior case "must be the case at bar, and not merely a somewhat related action arising from the same facts." Id. at 241 (internal quotation marks and citation omitted). Furthermore, in affirming the district court's dismissal of Nafal for lack of standing, the Ninth Circuit explained that "the documents [signed by plaintiff, Sima, and Nafal] were a disguised assignment of a cause of action prohibited under Silvers v. Sony Pictures Entm't, Inc., 402 F.3d 881, 884–89 (9th Cir. 2005) (en banc)." Nafal v. Carter, 388 Fed. Appx. 721, 723 (9th Cir. 2010). Thus, the district court concluded, and the Ninth Circuit affirmed, that plaintiff actually avoided filing an action prior to the one in 2007. Surely plaintiff's own choice not to pursue a lawsuit cannot serve to equitably toll the limitations period.

Ultimately, plaintiff cannot avoid the fact that he admittedly knew that *Big Pimpin'* allegedly infringed *Khosara, Khosara* by December 2000, more than six years prior to filing the present lawsuit. The aforementioned factors do not rise to the level of "extraordinary circumstance[s]" required to equitably toll the limitations period. Holland, 130 S.Ct. at 2562.

Accordingly, defendants' motion for partial summary judgment is GRANTED.

## V. PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT WITH RESPECT TO CONCERT REVENUES

The purpose of plaintiff's motion is to determine whether he might be entitled to discovery of Jay-Z's concert revenues—not to decide the ultimate question of whether defendants are liable for copyright infringement. As this Court already ruled, the question of infringement is properly a question for the jury.

If plaintiff were able to prove copyright infringement at this time, however, the question would be whether plaintiff is entitled to recover any profits Jay-Z generated through his live performances of *Big Pimpin'*, or whether the law precludes recovery.[2] Plaintiff argues he is entitled to at least a portion of concert revenues because Jay-Z's live

---

[2]The Court decides this question at this time to promote judicial economy and to avoid a need for a bifurcation of the issues of liability and damages.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 07-5715 CAS (PJWx) | Date | December 9, 2011 |
|---|---|---|---|
| Title | OSAMA AHMED FAHMY v. JAY-Z; ET AL. | | |

performances of *Big Pimpin'* directly contributed to his profits from those concert ticket sales. Pl. Mot. at 9–12; Pl. Reply at 6–12; Response to Surreply ("RS") at 2. Defendants counter that plaintiff cannot prove a causal relationship between the infringement and gross concert revenue and cannot offer a non-speculative method of determining which portion of gross revenues are attributable to the infringement. Def. Opp'n at 9–17; Surreply at 1–3. The Court must analyze the statutory framework and the applicable Ninth Circuit law to decide this question in light of the novel circumstances presented in this case.

    **A.    Statutory Framework and Interpretation**

    Section 504(b) of the Copyright Act permits a copyright owner to recover, in addition to actual damages, "any profits of the infringer that are attributable to the infringement and are not taken into account in computing the actual damages." 17 U.S.C. § 504(b). "In establishing the infringer's profits, the copyright owner is required to present proof only of the infringer's gross revenue, and the infringer is required to prove his or her deductible expenses and the elements of profit attributable to factors other than the copyrighted work." Id.[3] Although § 504 does not explicitly differentiate between "direct" profits and "indirect" profits, courts have done so. Direct profits are "those that are generated by selling an infringing product," and indirect profits are "revenue that has a more attenuated nexus to the infringement." Mackie v. Reiser, 296 F.3d 909, 914 (9th Cir. 2002), cert. denied, 537 U.S. 1189 (2003).

    The Ninth Circuit has suggested that regardless of whether profits are classified as direct or indirect, a party must first establish a "causal nexus" between the infringement and the gross revenue before the burden shifts to the infringer to apportion the profits. See Polar Bear, 384 F.3d at 711 n.7 ("We do not suggest that a showing of causation is required only for claims of indirect profits. . . ."). The Eight Circuit has explicitly held that "[t]he nexus requirement exists in both direct and indirect profits cases." Andreas v. Volkswagen of Am., Inc., 336 F.3d 789, 796 (8th Cir. 2003). "Once that nexus is established in either a direct or indirect profits case, if 'an infringer's profits are

---

    [3]"Gross revenue" is defined as "the gross revenue associated with the infringement, as opposed to the infringer's overall gross sales resulting from all streams of revenue." Polar Bear Prods., Inc. v. Timex Corp., 384 F.3d 700, 711 n.8 (9th Cir. 2004).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 07-5715 CAS (PJWx) | Date | December 9, 2011 |
|---|---|---|---|
| Title | OSAMA AHMED FAHMY v. JAY-Z; ET AL. | | |

attributable to factors in addition to use of plaintiff's work, an apportionment of profits is proper. The burden of proving apportionment (i.e., the contribution to profits of elements other than the infringed property), is the defendant's.'" Id. (quoting Frank Music Corp. v. Metro-Goldwyn-Mayer, Inc., 772 F.2d 505, 518 (9th Cir. 1985) ("Frank Music I")).

Thus, if plaintiff is able to establish a causal connection between Jay-Z's infringing live performances of *Big Pimpin'* and his concert revenues, the burden shifts to defendants to apportion what elements other than the infringement contributed to the concert revenues. However, whether a court classifies a plaintiff's claims as seeking direct or indirect profits is nonetheless an important ingredient in § 504(b)'s burden-shifting mechanism in the Ninth Circuit. In indirect profits cases, "a plaintiff seeking to recover indirect profits must 'formulate the initial evidence of gross revenue duly apportioned to relate to the infringement,'" and may not simply "toss up an undifferentiated gross revenue number." Polar Bear, 384 F.3d at 711 (quoting 4 Nimmer on Copyright § 14.03[B]). This is suggested to be a greater burden than the plaintiff carries in a direct profits case: "[C]ausation in indirect profit claims is often more attenuated than claims for actual damages or direct profits. It is therefore particularly important for the plaintiff in [an] indirect profit action to demonstrate the alleged causal link between the infringement and profits sought." Id. at 711 n.7.

With this background in mind, the Court turns to the question of whether Jay-Z's concert revenues are properly considered direct or indirect profits resulting from his allegedly infringing performances of *Big Pimpin'*. Because the Court determines that this question presents a triable issue, see infra, the Court reserves judgment as to whether plaintiff is able to prove the requisite causal nexus.

    **B.**    **Whether Concert Revenues Should be Classified as Direct or Indirect Profits of Jay-Z's Infringing Live Performances of *Big Pimpin'***

Plaintiff contends that Frank Music I "recognized that profits earned from the presentation of the infringing musical were direct profits." Pl. Mot. at 9 (citing Frank Music I, 772 F.2d at 514–15). According to plaintiff, when a copyright owner's exclusive right to perform a work is infringed, "the profits that the infringer has earned as a result of a public performance of the work are direct profits." Pl. Mot. at 10. Thus, plaintiff contends he need offer only the gross revenues of the concerts in which Jay-Z performed *Big Pimpin'* to shift the burden to defendants to prove "deductible expenses,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 07-5715 CAS (PJWx) | Date | December 9, 2011 |
|---|---|---|---|
| Title | OSAMA AHMED FAHMY v. JAY-Z; ET AL. | | |

or apportionment to factors other than the infringement." Id. at 12; 17 U.S.C. § 504(b).

Defendants counter that concert revenues are "at most" indirect profits, because "[c]oncertgoers are not 'buying' in advance a particular performance of a specific song. They may not know or care that any given song will be performed at all, nor, if it is, how it will be performed." Def. Opp'n at 3. According to defendants, "[t]he 'product' ticket purchasers are buying . . . and that concert promoters are 'selling' and being paid for, is something different: it is the entire concert event." Id. Thus, defendants' argument goes, the fact that *Big Pimpin'* may be performed at a given concert does not have any influence on whether a concertgoer purchases a ticket, and therefore those revenues must be considered indirect. Id. at 5–6. Defendants argue that only circumstances in which purchasers purchase tickets "***directly*** to see the performance of an entire production of an infringing work" constitute direct profits. Id. at 5 (emphasis in original).

The Court finds that there are triable questions of fact regarding whether Jay-Z's concert revenues constitute direct profits as a result of infringing live performances of *Big Pimpin'*. See 4 Nimmer on Copyright § 14.03 ("The first inquiry looks to defining the permissible scope of gross receipts attributable to the infringement. . . .") The Court begins its analysis with an examination of relevant case law involving direct profits. In Frank Music I, the plaintiffs wrote and copyrighted a dramatico-musical play entitled *Kismet* in 1973. 772 F.2d at 509–10. In 1974, defendant MGM Grand Hotel premiered a musical revue entitled *Hallelujah Hollywood* that featured ten acts of singing, dancing, and variety performances. Id. at 510. Of the ten acts, one act—Act IV—was entitled "Kismet," and contained five songs taken in whole or in part from plaintiffs' play of the same name. Id. Of the 100 minute *Hallelujah Hollywood* production, approximately six minutes of infringing music was performed. Id. The Ninth Circuit upheld the trial court's decision to permit the plaintiff to offer the gross revenues of *Hallelujah Hollywood* and require the defendant to prove apportionment. See id. at 514.[4] The Ninth

---

[4]The Ninth Circuit remanded on the issue of apportionment because the district court failed to provide "any reasoned explanation of or formula for its apportionment." Id. at 518–19. On appeal, after remand, the Ninth Circuit upheld an award for both direct and indirect profits stemming from *Hallelujah Hollywood*'s infringing use of music from *Kismet*. See Frank Music Corp. v. Metro-Goldwyn-Mayer, Inc., 886 F.2d 1545, 1550 & n.4 (9th Cir. 1989), cert. denied, 494 U.S. 1017 (1990) ("Frank Music II").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 07-5715 CAS (PJWx) | Date | December 9, 2011 |
|---|---|---|---|
| Title | OSAMA AHMED FAHMY v. JAY-Z; ET AL. | | |

Circuit subsequently held that the revenues generated by ticket sales of *Hallelujah Hollywood* were direct profits from the infringement. See Frank Music II, 886 F.2d at 1550 n.3 ("Based on this allocation [of Act IV's effect on *Hallelujah Hollywood* as a whole], plaintiffs are entitled to $551,844.54 as direct profits from the infringement."). These direct profits generated through ticket sales were in contrast to the indirect profits generated from *Hallelujah Hollywood*, including "the hotel's guest accommodations, restaurants, cocktail lounges . . . the casino itself, convention and banquet facilities, tennis courts, swimming pools, [and the] gym and sauna"—2 percent of which the court concluded were recoverable as a result of *Hallelujah Hollywood*'s promotional value for MGM as a whole. Id. at 1550 & n.4 (upholding nearly $700,000 in an indirect profits award).

Likewise, in Bergt v. McDougal Littell, an artist brought a copyright infringement action against a textbook publisher and printer arising out of the use of his "Primavera" painting in the publisher's textbook. 661 F. Supp. 2d 916, 919–20 (N.D. Ill. 2009). The court rejected defendants' argument that plaintiff's request for disgorgement of profits was one for indirect profits:

> [T]he court must determine whether the profits derived from the sale of a product containing the copyrighted work or from the use of the copyrighted work to promote sales of another product. Here, the painting was not used separately in an attempt to promote the sale of the textbook, but instead forms an integrated component of the textbook. As such, this case is more comparable to the infringing use of . . . copyrighted songs as part of a musical revue, [Frank Music I, 772 F.2d at 505].

Id. at 927; see also On Davis v. The Gap, Inc., 246 F.3d 152, 160 (2d Cir. 2001) (noting, in dicta, that in the context of one infringing poem within a poetry anthology, "the owner's burden would require evidence of the revenues realized from the sale of the anthology containing the infringing poem" to shift the burden to defendants).

In contrast, indirect profit cases generally are those in which "the infringers did not sell the copyrighted work, but used the copyrighted work to sell another product." Andreas, 336 F.3d at 796. In Mackie, for example, the infringing artwork formed part of a brochure used to promote season ticket sales to the symphony. 296 F.3d at 912. The plaintiff sought to recover the symphony's profits from its ticket sales for that season. Id.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 07-5715 CAS (PJWx) | Date | December 9, 2011 |
|---|---|---|---|
| Title | OSAMA AHMED FAHMY v. JAY-Z; ET AL. | | |

His request was classified as one for indirect profits because the sale of tickets were indirectly related to the infringing use of his artwork. Id. Similarly, in Andreas, the plaintiff sought to recover Audi's revenue from sales of its TT coupe, where Audi had used plaintiff's copyrighted artwork in a television commercial for the car. 336 F.3d at 791–92. The Eighth Circuit held that plaintiff's request was one for indirect profits, because "the infringers did not sell the copyrighted work, but used the copyrighted work to sell another product, the TT coupe." Id. at 796. Finally, in Polar Bear, a film production company sought profits from Timex's sale of its products, where Timex had used the production company's copyrighted film footage depicting extreme kayaking in its advertisements for Timex watches. 384 F.3d at 703. The Ninth Circuit held that such profits were indirect, as Timex's infringing use of the film was not to sell copies of the film, but to sell its watches. See id.

Turning to the present case, defendants urge the Court to view concert revenues as indirect profits because Jay-Z's infringing performances of *Big Pimpin'* are unrelated to its ticket sales to "the entire concert event." Def. Opp'n at 3. Defendants' position appears to be that Jay-Z does not directly profit from performing *Big Pimpin'* at his concerts, but that concertgoers purchase concert tickets for the "experience" of the event as a whole. The Court is unpersuaded by this argument because there are material questions of fact whether Jay-Z directly profited from performances of *Big Pimpin'* as set forth above. The same could have been said about anyone who purchased tickets to *Hallelujah Hollywood* in Frank Music I: perhaps they purchased tickets not because of the infringing music from *Kismet*, but because the show had received critical acclaim; perhaps they purchased tickets based on pure chance—i.e., they just happened to have been staying at the MGM Grand and decided to see whatever show was running; perhaps they purchased tickets to enjoy the ambiance of the hotel's Ziegfield Theatre, and ultimately did not care about the actual musical at all. Whatever prompted individuals to purchase tickets for *Hallelujah Hollywood*, the fact remains that defendants allegedly infringed plaintiff's songs as a part of their performance and profited from those performances. The same could be said of this case. On the other hand, a principal distinction between Frank Music I and the present case is that the MGM used *Kismet* in their advertisements for *Hallelujah Hollywood*—in other words, there was advance notice that *Kismet* would be performed, and it was performed at every show. See Frank Music II, 886 F.2d at 1550 n.3 (finding direct profits of infringing performances of *Kismet*). Here, there is no record evidence that Jay-Z used *Big Pimpin'* in his advertisements for a particular concert or concert series, or that *Big Pimpin'* was performed at every concert.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 07-5715 CAS (PJWx) | Date | December 9, 2011 |
|---|---|---|---|
| Title | OSAMA AHMED FAHMY v. JAY-Z; ET AL. | | |

O

Accordingly, it is a question of fact whether Jay-Z's concert revenues should be considered direct or indirect.[5]

In light of the above, this case may be more akin to the infringing use of copyrighted songs as part of a larger musical revue, Frank Music I, 772 F.2d at 510, an infringing use of a painting in a textbook, Bergt, 661 F. Supp. 2d at 927, and one infringing poem contained in a poetry anthology, see On Davis, 246 F.3d at 160, than the infringing use of copyrighted text or images to promote season tickets for the symphony, Mackie, 296 F.3d at 911, or the sale of a car, Andreas, 336 F.3d at 796—but that is up to a jury to decide. Accordingly, the Court finds that there is a triable issue whether Jay-Z's concert revenues constitute direct profits from his infringing live performances of *Big Pimpin'* for purposes of the Copyright Act.

## VI. CONCLUSION

In accordance with the foregoing, the Court GRANTS defendants' motion for summary judgment as to the statute of limitations period. Plaintiff shall not be permitted to seek damages from any alleged infringement occurring prior to August 31, 2004.

---

[5]The Court recognizes that a concert is not identical to a musical production because concerts often vary dramatically from venue to venue, both in size, substance, performers, special guests, pyrotechnics, etc. that makes each concert unique. Certainly, there are more obvious examples of direct profits in this case than concert revenues. For example, plaintiff could seek profits derived from selling *Big Pimpin'* as a stand-alone single, which clearly constitute direct profits from Jay-Z's alleged infringement. Even sales of *Big Pimpin'* as a part of a multi-track album is more clearly analogous to a painting used in a textbook. Bergt. 661 F. Supp. 2d at 919–20. Conversely, there are more obvious examples of indirect profits at issue here too. For example, this is not a situation where Jay-Z used *Big Pimpin'* to promote something entirely unrelated to the song, such as his new album, a music video, or his clothing line. Cf. Andreas, 336 F.3d at 791–92 (using artwork in a TV commercial to sell a car). Stripped to its core, a question of fact nevertheless remains: whether Jay-Z profited from onstage performances of *Big Pimpin'* through concert ticket sales, regardless of the specific reasons for every individual ticket sale.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**O**

**CIVIL MINUTES - GENERAL**

| Case No. | CV 07-5715 CAS (PJWx) | Date | December 9, 2011 |
|---|---|---|---|
| Title | OSAMA AHMED FAHMY v. JAY-Z; ET AL. | | |

     The Court also concludes that there is a triable issue of fact whether the concert revenues plaintiff seeks are properly considered direct profits.  The Court reserves judgment as to whether plaintiff is able to prove the requisite causal nexus.  The Court therefore DENIES plaintiff's motion for an order specifying that concert revenues are recoverable as a matter of law.  However, defendants are directed to respond to discovery requests that go to both the manner of advertising concerts as well as the revenues derived therefrom.

     IT IS SO ORDERED.

|  |  | 00 | : | 00 |
|---|---|---|---|---|
|  | Initials of Preparer | RS | | |