

"Christina J. Johnson"
<cjohnson@bgrfirm.com>
11/12/2014 03:42 PM

To: "'pjw_chambers@cacd.uscourts.gov'" <pjw_chambers@cacd.uscourts.gov>

cc: "'burrow@caldwell-leslie.com' (burrow@caldwell-leslie.com)'" <burrow@caldwell-leslie.com>, "Lewis, Alexa'" <all@msk.com>, Keith Wesley <kwesley@bgrfirm.com>, Peter Ross <PRoss@bgrfirm.com>, "'Steinberg, David'" <DAS@msk.com>, "'Eric S. Pettit'" <pettit@caldwell-leslie.com>, "'Lepera, Christine'" <ctl@msk.com>, Jordan Kushner <jkushner@bgrfirm.com>

Subject: Fahmy v. Jay-Z, et al. [Case No. 07-CV-05715 CAS (PJWx)]

Dear Magistrate Judge Walsh,

Pursuant to the Court's instruction, Plaintiff hereby respectfully requests an order compelling Defendants to provide the following discovery:

1) Information regarding revenues from concerts at which *Big Pimpin* was performed (RFPs 131-136)

(For purposes of this motion, "*Big Pimpin*" refers to the Jay-Z song, as well as the Jay-Z/Linkin Park song *Big Pimpin/Papercut*);
2) License agreements regarding music samples used in songs by Jay-Z and Timbaland (RFPs 170-172);
3) A multi-track recording of *Big Pimpin* (RFPs 40-48); and
4) Substantive responses to interrogatories seeking revenues and expenses related to *Big Pimpin* (Rogs 26-29).

Plaintiff also seeks monetary sanctions to recover its costs associated with this motion.

The issues above were addressed in the attached three letters to Defendants' counsel, and were discussed with Defendants' counsel in telephonic conferences on October 30, 2014 and November 7, 2014.

This is a copyright infringement dispute regarding the Jay-Z/Timbaland song *Big Pimpin*. Plaintiff is the heir of prominent Egyptian composer Baligh Hamdy, who wrote the music for the hit Egyptian song *Khosara, Khosara*. Plaintiff alleges that *Big Pimpin* infringes Plaintiff's copyright in *Khosara* by prominently repeating a sample from that song every three seconds from beginning to end.

*Big Pimpin* is the most commercially successful song on one of Jay-Z's most successful albums. It made Rolling Stone's lists of "The 500 Greatest Songs of All Time" and "The 50 Greatest Hip-Hop Songs of All Time," it ranked #1 on the U.S. Billboard Rhythmic Top 40, was selected for Jay-Z's compilation albums *Jay-Z: The Hits Collection, Volume One* and *Jay-Z: Unplugged*, is featured in Jay-Z's Fade to Black documentary film, and was one of five songs selected for the album *Collision Course*, Jay-Z's collaboration with Linkin Park. *Big Pimpin* remains one of Jay-Z's most popular songs. Jay-Z performs *Big Pimpin* at all, or nearly all, of his concerts. Jay-Z testified in his deposition that he could not think of a single concert at which he did not perform the song. (Ex. A at 133:16-23) ("Q. Can you think, as you sit here today, of any particular shows that you did where you didn't perform Big Pimpin'? A. I don't know.")

**1) The Court Should Compel Production Of Concert Revenue Information (RFPs 131-136)**

Information regarding Defendants' concert revenue is among the most critical discovery in this case. Defendants' concert revenue is likely to be the largest component of Plaintiff's damages. The Court has already ruled that Plaintiff's entitlement to recover Defendants' concert revenues is an issue for trial, and therefore ordered Defendants to produce information regarding concert revenues. Since that ruling, Defendants have made every effort to stifle discovery on that issue.

Specifically, in 2011, Plaintiff moved for a partial summary judgment that he would be entitled to Defendants' concert revenues in the event Defendants are found liable for infringement. In its December 2011 ruling on that motion, the Court confirmed that Plaintiff would be entitled to concert revenues "if plaintiff is able to establish a causal connection between Jay-Z's infringing live performances of Big Pimpin and his concert revenues." (Ex. B at 12). The Court found that "there are triable questions of fact regarding whether Jay-Z's concert revenues constitute direct profits," which is a threshold issue for determining the burdens of proving apportionment. (Ex. B at 13, 17). On that basis, the Court "reserve[d] judgment as to whether plaintiff is able to prove the requisite causal nexus" between *Big Pimpin* and concert revenues. (Ex. B at 12) In light of these triable issues, the Court explicitly directed Defendants to respond to Plaintiff's discovery requests seeking concert revenues.

(Ex. B at 17) ("defendants are directed to respond to discovery requests that go to both the manner of advertising concerts as well as the revenues derived therefrom.")

By April 2013, Defendants still had not produced concert revenue information. Plaintiff moved for contempt. The Court denied that motion on the grounds that Plaintiff had not yet formally moved to compel (which it is now doing). Defendants also sought a protective order deferring discovery on concert revenue until after the Court ruled on Defendants' motion for summary judgment based on laches. (Ex. F at 5) The Court granted that request.

The Court ultimately denied Defendants' MSJ regarding laches, and Defendants tried again to avoid producing concert revenue information by moving for a bifurcated schedule that would defer discovery on concert revenues until after a trial on liability. (Ex. E at 9) The Court rejected Defendants' request. In a July 2014 ruling, the Court held that "evidence regarding the amount of defendants' profits that are attributable to the alleged infringement may be relevant to the jury's determination of a damages award, and therefore would be an appropriate subject of discovery prior to an adjudication of liability and damages." (Ex. E at 10) (emphasis added)

In defiance of the Court's directives, Defendant Jay-Z still refuses to produce discovery regarding his concert revenues. Jay-Z's stated reason for withholding this discovery is that, in Jay-Z's own judgment, Plaintiff has failed to establish a causal nexus between those revenues and his performance of *Big Pimpin* . This judgment, however, is not Jay-Z's to make. The Court determined that this is an issue for trial, and because this case has not been bifurcated, it is inappropriate for Jay-Z to withhold damages discovery until Defendants have been found liable for those damages. Indeed, Jay-Z's approach to damages discovery – *i.e* ., withhold concert revenue information until after the issue of causation has been tried – would create a *de facto* bifurcation that the Court has previously rejected. If Jay-Z were to have his way, in the event a causal nexus between concert revenues and Big Pimpin is found at trial, Plaintiff will have no way to quantify those damages unless the Court permits post-trial discovery of those revenues and, potentially, a second trial. This approach is contrary to the Court's previous rejection of a bifurcated schedule.

The most pragmatic and efficient process – and the process the Court has already ordered – is for Defendants to produce information regarding concert revenues now, so that all issues can be tried at once. Accordingly, Defendants should be ordered to fully respond to Plaintiff's RFPs 131-136 by disclosing, *inter alia* , their revenue, profits, and other compensation for all concerts at which *Big Pimpin* was performed, any deductible expenses, and any concert revenue Defendants believe is not attributable to *Big Pimpin* .

**2) The Court Should Compel Production Of License Agreements Relating To Music Samples (RFPs 170-172)**

One measure of Plaintiff's damages is "the actual damages suffered by him ... as a result of the infringement." 17 U.S.C. § 504(b). "Actual damages" can be measured as "the fair market value of a license covering the defendant's use." *Gaylord v. U.S.* , 678 F.3d 1339, 1343 (Fed. Cir. 2012) (quotations omitted).

Defendants' licenses for other music samples are relevant to establish the fair market value of a license for the *Khosara* sample. *Oracle Corp. v. SAPA AG* , 765 F.3d 1081, 1093 (9th Cir. 2014) ("Although a

copyright plaintiff need not demonstrate that it would have reached a licensing agreement with the infringer or present evidence of 'benchmark' agreements in order to recover hypothetical-license damages, it may be difficult for a plaintiff to establish the amount of such damages without undue speculation in the absence of such evidence."). Indeed, the use of comparable licenses to establish a reasonable royalty is commonplace in intellectual property litigation. *E.g., Freeman v. Gerber Products Co.*, 450 F.Supp.2d 1248, 1262 (D. Kan. 2006) ("Evidence of royalty rates prevalent in the industry is generally relevant to determining a reasonable royalty."); *ActiveVideo Networks, Inc. v. Verizon Communications, Inc*., 694 F.3d 1312, 1333 (Fed. Cir. 2012) ("The degree of comparability of the Gemstar and Grande license agreements as well as any failure on the part of ActiveVideo's expert to control for certain variables are factual issues best addressed by cross examination and not by exclusion.")

Accordingly, Plaintiff's RFPs 170-172 seek information relating to Defendants' monetary payments for other music samples. Defendants objected to the breadth of these requests. In response to those objections, Plaintiff proposed, as a compromise, to limit the requests to the license agreements themselves. Defendants have not agreed to produce even this narrowed category of information, and have not made any counter-proposal. Accordingly, Defendants should be ordered to produce all license agreements for samples used in songs produced and/or performed by Jay-Z or Timbaland.

### 3) The Court Should Compel Production Of A Multitrack Recording of *Big Pimpin* (RFPs 40-48)

Multitrack recording is a method of sound recording in which different sound components (*e.g.*, instruments, vocals, or electronic rhythms) are recorded on separate "tracks" and then combined into one cohesive song. This method allows different sounds to be heard, manipulated, or re-recorded individually. Virtually all popular music is now recorded using the multitrack recording method, and artists commonly maintain multitrack format recordings for future uses, including for remixes. (*See, e.g*., Ex. C at 3)

A multitrack version of *Big Pimpin* will allow Plaintiff to isolate the relevant portion of the song and prove which version and portions of *Khosara* Defendants sampled. It will also allow the Court and the jury to hear *Big Pimpin* without the *Khosara* sample, to illustrate the significant role the sample plays in the overall song. This will be relevant to determining both liability and any necessary apportionment of damages.

Defendants have not agreed to produce multitrack recordings. Defendants' counsel profess to not understand Plaintiff's request for a multitrack recording, but as discussed above, this is a process and term of art that is widely used within the music industry. Indeed, Jay-Z did not have any difficulty comprehending the term during his deposition, and even admitted that he could likely obtain a copy of the original multitrack recording of *Big Pimpin*. (Ex. A at 50:10-16) ("Q. If you were to request the original multitrack version of Big Pimpin' today, do you think you personally could get it? A. I would like to think yes.") (objections omitted).

Defendants also claim, incorrectly, that Plaintiff's RFPs do not encompass the multitrack recordings. Plaintiff requested "all … things (within the meaning of Rule 34, Federal Rules of Civil Procedure) that record, evidence, show, or REFER TO the creation of the musical compositions 'Big Pimpin.'" (RFP 40) This request clearly includes the multitrack recordings of that song.

Accordingly, Defendants should be ordered to produce multitrack recordings of *Big Pimpin*, to the extent those recordings are Defendants' possession, custody, or control.

**4) The Court Should Compel Substantive Responses To Interrogatories 26-29 (revenue and expenses)**

Plaintiff's September 9, 2014 Interrogatories 26-29 (inadvertently numbered 22-25) seek critically important financial information that go to the heart of Plaintiff's damages case. Specifically, these interrogatories seek Defendants' revenues and deductible expenses relating to *Big Pimpin*, as well as any elements of profit Defendants contend are not attributable to the *Khosara* sample. As a result of the critical nature of this information, and the relative burdens of parsing Defendants' cryptic accounting documents, Plaintiff requested that Defendants provide substantive responses to these interrogatories without reliance on Rule 33(d) (reference to documents).

Defendants objected to the interrogatories on several grounds, including that the interrogatories exceed the limit of 25 set forth in Rule 33. Defendant Jay-Z did not respond beyond his objections. The other Defendants stated that they would produce documents responsive to interrogatories 26 and 28 (numbered 22 and 24), but provided objection-only responses to the other interrogatories. Those Defendants have since stated that they will supplement their responses, but have not specified how.

A party may propound more than 25 interrogatories pursuant to a stipulation between the parties or with leave of court. F.R.C.P. 33(a)(1). Interrogatories exceeding 25 in number are appropriate in the following circumstances:

1. The burden of the proposed discovery does not outweigh its likely benefit considering the needs of the case, the parties' resources, the amount in controversy, and the importance of the discovery;
2. The interrogatories are not unreasonably cumulative;
3. The information sought by the interrogatories cannot be obtained from a more convenient source; and
4. The propounding party has not had ample opportunity to obtain the information.

F.R.C.P. 33(a)(1), 26(b)(2)(C); *Protective Optics, Inc. v. Panoptx, Inc*., No. C-05-02732 CRB, 2007 WL 963972 (N.D. Cal. Mar. 30, 2007); *Castaneda v. Burger King Corp.*, No. C 08-4262 WHA, 2009 WL 4282596 (N.D. Cal. Nov. 25, 2009); *Williams v. Adams*, 1:05-cv-00124-AWI, 2009 WL 1220311 (E.D. Cal. May 4, 2009); *Jacobs IV v. Scribner*, 1:06-cv-01280-AWI, 2008 WL 2773999 (E.D. Cal. June 27, 2008).

All of the above considerations weigh in favor of an order that Defendants respond. First, the interrogatories seek critical damages-related information. Plaintiff's damages are among the most important issues to be litigated in this suit. The interrogatories are small in scope and number, and impose burdens that are reasonable in light of the hundreds of millions of dollars potentially at issue in this case.

With respect to the remaining considerations, the interrogatories are not cumulative of other discovery requests and the information they seek cannot be obtained from other sources. Defendants appear to believe that the information sought by some of the interrogatories can be gleaned from Defendants' business records, but Defendants' reliance on F.R.C.P. 33(d) is inappropriate. A responding party may respond to an interrogatory with reference to business records only if "the burden of deriving or

ascertaining the answer [from the records] will be substantially the same for either party." F.R.C.P. 33(d). Plaintiff's burden of analyzing Defendants' financial records is far greater than Defendants' burden of doing so. Defendants produced a conglomeration of financial records containing cryptic abbreviations and codes that only Defendants can easily decipher. (*E.g*., Ex. D) It would be extremely difficult for Plaintiff to glean the responsive information from these documents. Doing so would require additional damages depositions of every Defendant, which will also dramatically increase the number of trial witnesses. Defendants, on the other hand, authored the documents, know what the documents mean, and know where the responsive information is located. Defendants have daily access to their relevant employees and accounting software, and can easily compile the responsive financial information without additional discovery procedures. Accordingly, there is no more convenient or practical way for Plaintiff to obtain the information than through the interrogatories. Moreover, the burdens of deriving the responsive information are not "substantially the same for either party," and therefore Defendants' reliance on Rule 33(d) is inappropriate.

For the above reasons, Plaintiff requests that the Court order Defendants to provide substantive responses to Plaintiff's September 9, 2014 Interrogatories 26-29 (inadvertently numbered 22-25), without reference to business records. As discussed above, this information should include concert revenues.

**5) Plaintiff is Entitled to Sanctions**

The party who prevails on a motion to compel is entitled to his or her expenses, including reasonable attorney fees, unless the losing party was substantially justified in making or opposing the motion. F.R.C.P. 37(a)(5). The burden of proving substantial justification is on the losing party. *Lorillard Tobacco Co. v. Elston Self Service Wholesale Groceries, Inc*., 259 F.R.D. 323, 327 (N.D. Ill. 2009).

Defendants have no substantial justification for opposing this motion. The Court has already found concert revenue to be relevant and discoverable, and rejected Defendants' request to defer that discovery until after liability is found. Jay-Z's refusal to produce this discovery violates the Court's prior directives. Defendants' refusal to produce license agreements and multi-track recordings is also unjustified, since this information is indisputably relevant. To the extent the Defendants believe the requests are burdensome, Defendants have refused to propose any compromises, thereby necessitating this motion.

Plaintiff's counsel has expended more than 6 hours briefing this motion, at an hourly billing rate of $450.00 per hour. Accordingly, Plaintiff seeks an award of $2,700.00 in monetary sanctions. If the Court requires any further information or any additional legal authority, please do not hesitate to ask.

Best regards,
Christina Johnson

Christina J. Johnson, Esq.
Browne George Ross LLP
2121 Avenue of the Stars, Suite 2400
Los Angeles, California 90067
T 310.274.7100



**BROWNE GEORGE ROSS**

LOS ANGELES • SAN FRANCISCO

www.bgrfirm.com

F 310.275.5697
cjohnson@bgrfirm.com

This e-mail message may contain legally privileged and/or confidential information. If you are not the intended recipient(s), or the employee or agent responsible for delivery of this message to the intended recipient(s), you are hereby notified that any dissemination, distribution or copying of this e-mail message is strictly prohibited. If you have received this message in error, please immediately notify the sender and delete this e-mail message from your computer.

IRS CIRCULAR 230 DISCLOSURE: To ensure compliance with Treasury Department regulations, we inform you that any U.S. federal tax advice contained in this correspondence (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties that may be imposed under the U.S. Internal Revenue Code or (ii) promoting, marketing or recommending to another party any transaction or matter addressed herein.



RFPs 40-48.pdf   RFPs 131-136.pdf   RFPs 170-172.pdf   Interrogatories 26-29.pdf

Ex. F  #357 -- 6 10 13 Minute Order re Plaintiff_s Motion for Contempt a....pdf

Ex. A Carter Deposition Excerpts AEO Confidential.pdf

Ex. B Civil Minutes - General Defendants' Mtn for Partial Summary Judgme....pdf   Ex. C Multitrack recording.pdf

Ex. E #418 - Civil Minutes Mtn for Reconsideration of the Court_s Orders....pdf

Ex. D Financial Documents AEO Confidential.pdf   2014_11_07 Kushner letter to Burrow and Frackman (3).pdf

2014_10_28 Kushner letter to Burrow and Frackman (2).pdf   2014_10_20 Kushner letter to Burrow and Frackman.pdf