RUSSELL J. FRACKMAN (SBN 49087)
  rjf@msk.com
DAVID A. STEINBERG (SNB 130593)
  das@msk.com
ALEXA L. LEWIS (SNB 235867)
  all@msk.com
MITCHELL SILBERBERG & KNUPP LLP
11377 West Olympic Boulevard
Los Angeles, California 90064-1683
Telephone:  (310) 312-2000
Facsimile:  (310) 312-3100

CHRISTINE T. LEPERA (Admitted *Pro Hac Vice*)
  ctl@msk.com
MITCHELL SILBERBERG & KNUPP LLP
12 East 49th Street, 30th Floor
New York, NY 10017
Telephone:  (212) 509-3900
Facsimile:  (212) 509-7239

Attorneys for Defendants

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Osama Ahmed Fahmy,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>Jay-Z (aka Shawn Carter), Timothy Mosely, Kyambo Joshua, Rob Bourdon, Brad Delson, Mike Shinoda, Dave Farrell, Joseph Hahn, Chester Bennington, Big Bad Mr. Hahn Music, Chesterchaz Publishing, EMI Blackwood Music, Inc., EMI Music Publishing Ltd., Kenji Kobayashi Music, Lil Lulu Publishing, Machine Shop Recordings, LLC, Marcy Projects Productions II, Inc., MTV Networks Enterprises Inc., Nondisclosure Agreement Music, Paramount Home Entertainment, Inc., Paramount Pictures Corporation, Radical Media, Rob Bourdon Music, Roc-A-Fella Records, LLC, Timbaland Productions, Inc., UMG Recordings, Inc., Universal Music and Video Distribution, Inc., and Warner Music Inc.,<br><br>　　　　Defendants. | Case No. CV 07-05715 CAS (PJWx)<br><br>The Honorable Christina A. Snyder<br><br>**OPPOSITION OF CERTAIN DEFENDANTS TO PLAINTIFF'S MOTION TO COMPEL FURTHER DISCOVERY RESPONSES**<br><br>Date:　　　November 24, 2014<br>Time:　　　2:00 p.m.<br>Ctrm:　　　5<br><br>Discovery Cutoff: November 28, 2014<br>Trial:　　　May 12, 2015 |

# TABLE OF CONTENTS

**Page**

Introduction ..................................................................................................................4

Argument .....................................................................................................................5

I. There Is Nothing to Compel From the Responding Parties Regarding Concert Revenues. ..................................................................................5

II. A "Multi-Track" Version of Big Pimpin' Is Not In the Responding Parties' Possession, Custody, or Control. .......................................................6

III. There Is No Need To Compel Responses To Interrogatory Nos. 26-29.........7

IV. Plaintiff's "Narrowed" Demand For All License Agreements Relating To Music Samples by Jay-Z and/or Timbaland Remains Overbroad, Burdensome, and Irrelevant. ..............................................................................8

V. Sanctions ....................................................................................................12

i

**OPPOSITION OF CERTAIN DEFENDANTS TO PLAINTIFF'S MOTION TO COMPEL FURTHER DISCOVERY RESPONSES**

Mitchell Silberberg & Knupp LLP

6501252.5

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Baker v. Urban Outfitters, Inc.*,
   254 F. Supp. 2d 346 (S.D.N.Y. 2003)................................................................... 8

*Beinin v. Ctr. for the Study of Popular Culture*,
   No. 06-2298, 2007 U.S. Dist. LEXIS 22518 (N.D. Cal. Mar. 16,
   2007) ..................................................................................................................... 8

*Bi-Rite v. Button Master*,
   578 F. Supp. 59 (S.D.N.Y. 1983) ......................................................................... 8

*Frank Music Corp. v. Metro-Goldwyn-Mayer, Inc.*,
   772 F.2d 505 (9th Cir. 1985) ................................................................................ 8

*Jarvis v. K2 Inc.*,
   486 F.3d 526 (9th Cir. 2007) ................................................................................ 7

*Maddow v. Proctor & Gamble*,
   107 F.3d 846 (11th Cir. 1997) .............................................................................. 9

*Oracle Corp. v. SAP AG,*
   765 F.3d 1081 (9th Cir. 2014) ......................................................................... 6, 7

*Polar Bear Prods., Inc. v. Timex Corp.*,
   384 F.3d 700 (9th Cir. 2004) ................................................................................ 6

*Reygo Pacific Corp. v. Johnston Pump Co.*,
   680 F.2d 647 (9th Cir. 1982) ................................................................................ 9

*Siegel v. Warner Bros. Entm't, Inc.*,
   No. 04-8400, 2009 U.S. Dist. LEXIS 66115 (C.D. Cal. July 8,
   2009) ..................................................................................................................... 8

*Wall Data Inc. v. L.A. Cnty. Sheriff's Dep't*,
   447 F.3d 769 (9th Cir. 2006) ................................................................................ 6

**STATUTES**

17 U.S.C.
   § 504(b) ................................................................................................................. 4

Federal Rules of Civil Procedure
   Rule 33 .................................................................................................................. 4

## TABLE OF AUTHORITIES

**Page(s)**

**OTHER AUTHORITIES**

8B Charles A. Wright, et. al., FEDERAL PRACTICE AND PROCEDURE,
    § 2288 at 526 (3rd Ed. 2010) ............................................................................... 9

**Introduction**

Defendants[1] Timothy Mosley, Rob Bourdon, Brad Delson, Mike Shinoda, Dave Farrell, Joseph Hahn, Chester Bennington, Big Bad Mr. Hahn Music, Chesterchaz Publishing, EMI Blackwood Music Inc., Kenji Kobayashi Music, Machine Shop Recordings, LLC, MTV Networks Enterprises Inc., Nondisclosure Agreement Music, Paramount Home Entertainment, Inc., Paramount Pictures Corporation, Rob Bourdon Music, Roc-A-Fella Records, LLC, Timbaland Productions, Inc., UMG Recordings, Inc., Universal Music Group Distribution, Corp. (f/k/a Universal Music and Video Distribution, Inc.), and Warner Music Inc. (collectively, the "Responding Parties") hereby submit this Opposition to Plaintiff's Motion to Compel.[2]

Plaintiff's Motion, which appears to be only partly directed to the Responding Parties, should be denied in its entirety. Plaintiff distorts the record, misstates what has transpired during discovery, and omits critical facts. In several instances the items moved on are simply moot. For example, Responding Parties have already produced, or agreed to produce, documents responsive to Plaintiff's requests; have agreed to supplement their responses to Plaintiff's interrogatories; and have advised Plaintiff that they do not possess a copy of the multi-track recording only recently requested. It is entirely unclear why Plaintiff has opted to engage in motion practice on these issues. In fact, there is only a single issue that is truly in dispute: whether ten days before the close of discovery (and based on a request first formalized on November 7, 2014), Plaintiff is entitled to copies of all sample license agreements entered into by Jay-Z and Timbaland (*i.e.,* Defendants Carter and Mosley) pertaining to each and every composition and/or sound

---

[1] Defendant Shawn Carter, currently represented by other counsel, is responding separately to Plaintiff's Motion.

[2] On November 12, 2014, Plaintiff sent an email to Judge Walsh outlining four categories of discovery requests and requesting an order compelling further responses. Pursuant to the Court's own November 12 notice, Defendants submit this formal opposition.

4

**OPPOSITION OF CERTAIN DEFENDANTS TO PLAINTIFF'S MOTION TO COMPEL FURTHER DISCOVERY RESPONSES**

recording they ever created. The Responding Parties should not be compelled to locate and produce hundreds of sampling license agreements entered into over decades in connection with works entirely unrelated to this case. The Responding Parties respectfully contend that this belated request is so clearly overbroad, burdensome, and irrelevant that Plaintiff's motion should be denied out of hand.

## Argument

### I. There Is Nothing to Compel From the Responding Parties Regarding Concert Revenues.

Plaintiff's Motion makes no specific reference to any of the Responding Parties on the topic of concert revenues. Instead, after repeated reference to concert performances by Defendant Shawn Carter (*i.e.* Jay-Z), Plaintiff argues vaguely only that "Defendants should be ordered to fully respond to Plaintiff's RFPs 131-136 by disclosing, inter alia, their revenue, profits, and other compensation for all concerts at which *Big Pimpin* was performed, any deductible expenses, and any concert revenue Defendants believe is not attributable to *Big Pimpin*." Putting aside whether such discovery is relevant and properly compelled from any defendant (it is not), the Responding Parties are not currently withholding *any* such information.

Far from "ma[king] every effort to stifle discovery" with regard to revenues from concerts "at which *Big Pimpin* was performed," Defendant Timothy Mosley has produced documents pertaining to performance royalties earned from *Big Pimpin'* during the statutory period. Other Responding Parties have no connection whatsoever to revenues earned from performance of *Big Pimpin'* at concerts. Moreover, although not sought in Plaintiff's Motion, Responding Parties have already produced documents regarding the only two concerts – both of them benefits – at which Linkin Park is known to have performed the "mash-up" *Big*

*Pimpin'/Papercut* within the statutory period. *See* Declaration of Alexa L. Lewis ("Lewis Decl."), ¶ 2.

## II. A "Multi-Track" Version of *Big Pimpin'* Is Not In the Responding Parties' Possession, Custody, or Control.

Plaintiff asked for an "original multi-track" recording of *Big Pimpin'* only a few weeks ago, and since that time, has struggled to define exactly what was being sought. A multi-track recording of some type was created, presumably, in 1999, the year in which the album containing *Big Pimpin'* was released. The Responding Parties did not have notice of Plaintiff's claim until 2007, and the statute of limitations creates a bar prior to 2004. In a nutshell, Plaintiff is now moving to compel production of an item that he did not ask for until fifteen years after it was created. Regardless of whether Plaintiff's Request was appropriately propounded, the issue is now moot. The Responding Parties have determined that any such recording is not in their possession, custody, or control.

On November 12, Plaintiff filed the instant Motion, seeking ***only*** "a multi-track recording of *Big Pimpin*."[3] Responding Parties have had an opportunity to investigate whether they are in possession of an item fitting this description and have now determined that in fact they are ***not*** in possession, custody or control of such an object. On November 17, 2014, counsel for Responding Parties told counsel for Plaintiff that the Responding Parties did not have the requested multi-track, and asked them to withdraw this portion of their Motion. Lewis Decl., ¶ 3. However, on November 18, less than twenty-four hours before the deadline to file this Opposition, Plaintiff's counsel informed counsel for the Responding Parties that they were not withdrawing this portion of the Motion because they also

---

[3] In the Motion, Plaintiff seeks only a multi-track recording or "multi-track version" of *Big Pimpin'*, and makes no reference to any such recording involving *Big Pimpin'/Papercut*.

6

**OPPOSITION OF CERTAIN DEFENDANTS TO PLAINTIFF'S MOTION TO COMPEL FURTHER DISCOVERY RESPONSES**

wanted a multi-track of *Big Pimpin'/Papercut* – an item mentioned nowhere in their actual motion papers. Lewis Decl., Ex. 1. The Responding Parties are investigating, but presently do not know if they have possession, custody, or control of this item – which, of course, is a different track by a different group of artists released by a different record company at a completely different time than *Big Pimpin'* itself.

### III. There Is No Need To Compel Responses To Interrogatory Nos. 26-29.

Plaintiff moves to compel responses to Interrogatory Nos. 26-29, which seek complex financial information from each defendant in summary form.[4] Putting aside that Plaintiff did not seek the necessary leave to serve more than 25 interrogatories, the Responding Parties have already produced (and are continuing to produce) documents providing Plaintiff with the information sought, and have already notified Plaintiff of their intention to further supplement their responses.[5] Lewis Decl., ¶¶ 5-6 & Ex. 2; *see also, e.g.,* Plaintiff's Ex. D (under seal).

Additionally, Plaintiff has noticed the depositions of UMG, Paramount, and Warner with regard to Responding Parties' financial productions. Lewis Decl., Ex. 3. To the extent that Plaintiff cannot understand certain of the information provided, they will have an opportunity to ask Responding Parties' witnesses

---

[4] Plaintiff propounded these interrogatories wrongly numbered as Interrogatories Nos. 22-25. Plaintiff neither asked the Responding Parties to stipulate to the use of over 25 interrogatories pursuant to F.R.C.P. 33, nor sought leave of court to do so. When Responding Parties served responses objecting to the number of interrogatories, Plaintiff responded with a belligerent meet and confer letter. Lewis Decl., Ex. 4; Plaintiff's exhibit dated October 20, 2014 (Docket No. 429-13). During the parties' meet and confer session, counsel for the Responding Parties indicated that they would have been willing to stipulate to the service of additional interrogatories, had Plaintiff's counsel simply asked. Lewis Decl., ¶ 8.

[5] The Responding Parties maintain their objections to Interrogatory No. 29, requesting that Responding Parties "Identify (by type and amount) all elements of profit, if any, YOU contend are attributable to factors other than the use of KHOSARA KHOSARA in BIG PIMPIN' when calculating an award of profits under 17 U.S.C. Section 504(b) in this matter, assuming liability and an entitlement to profits are found."

whatever questions they might have.  Moreover, the Responding Parties' financials are, in part, subject to expert testimony – for example, on apportionment – and expert discovery has not yet opened.  Plaintiff's premature Motion on this topic is unwarranted and should be denied.

### IV. Plaintiff's "Narrowed" Demand For All License Agreements Relating To Music Samples by Jay-Z and/or Timbaland During Their Entire Careers Remains Overbroad, Burdensome, and Irrelevant.

In September 2014, Plaintiff served his original Requests for Production Nos. 170-172, which contained wildly overbroad demands to which the Responding Parties duly objected.  Specifically, these Requests asked that the defendants (including two major music companies) produce the following:

- All DOCUMENTS that RELATE TO the payment of money or other consideration in exchange for the right to use or sample a preexisting musical work.  (Request No. 170)
- All agreements that RELATE TO the use and/or sampling of any preexisting musical work.  (Request No. 171)
- All DOCUMENTS that RELATE TO seeking or obtaining approval or permission to use and/or sample a preexisting musical work. (Request No. 172)

Lewis Decl., Ex. 5.  Such Requests, by their own terms, sought every sample license agreement, correspondence, and negotiation for every sample ever utilized by Universal, Warner, and the other defendants.  Needless to say, Responding Parties objected to these Requests.

Pursuant to a telephonic meet and confer on November 7, 2014, Plaintiff now asserts that these Requests have been "narrowed" to a demand, days before the close of discovery, that Responding Parties locate and produce "*all* license agreements for samples used in songs produced and/or performed by Jay-Z or

1  Timbaland." (emphasis added).  However, said "narrowing" does not make them
2  any less objectionable.
3      It is beyond dispute that Jay-Z and Timbaland have both had long and
4  commercially successful careers.  Jay-Z has released fifteen studio albums, and, as
5  a hip-hop artist, has likely sampled hundreds of songs.  *See* Lewis Decl., Ex. 6.
6  Timbaland's career is equally lengthy.  Both a producer and an artist in his own
7  right, he began working in the mid-1990s, creating tracks for artists such as Justin
8  Timberlake, Aaliyah, Missy Elliott, Ginuwine, Nelly Furtado, Keri Hilson, Jay-Z,
9  OneRepublic, Michael Jackson, and Lil' Kim.  *See id.,* Ex. 7.  As a producer and as
10 an artist, and like Jay-Z, Timbaland has likely sampled hundreds of prior works.
11 *Id.*
12     Plaintiff claims that the Responding Parties' licenses for other music
13 samples are somehow relevant to establish the fair market value of a license for a
14 "Khosara Khosara" sample.  Not so, and Plaintiff's purported authority for such a
15 proposition does not support his position.  As an initial matter, two of the three
16 cases cited by Plaintiff, *Freeman* and *ActiveVideo*, are actually patent cases.  Patent
17 infringement is, of course, governed by an entirely different statutory scheme than
18 copyright cases.  It is telling that Plaintiff chose not to alert the Court (or even
19 suggest) that they were ***not*** copyright cases.
20     In *Oracle Corp. v. SAP AG*, 765 F.3d 1081 (9th Cir. 2014), the sole
21 copyright case cited by Plaintiff, the Court gave several examples of "benchmark"
22 licenses.  *Id*. at 1091.  In each instance cited by the Ninth Circuit, the "benchmark"
23 license had a tangible and obvious relationship to the allegedly infringed work
24 and/or the parties to the lawsuit.  For example:
25  • In *Polar Bear Prods., Inc. v. Timex Corp.*, 384 F.3d 700 (9th Cir.
26    2004), the "benchmark" license was a prior agreement ***between the***

      *parties* to the lawsuit concerning the allegedly infringed work. 765 F.3d. 1081 at 1091-92.

- In *Wall Data Inc. v. L.A. Cnty. Sheriff's Dep't*, 447 F.3d 769, 786 (9th Cir. 2006), the defendant paid for a certain number of software licenses, but installed the software on additional computers. The "benchmark" in this case was calculated based on licenses for the ***very same work at issue*** and was derived from (1) the amount the plaintiff charged the vendor that sold the infringed-upon software to the defendant; (2) the amount the defendant had paid for the infringed software; and (3) the amount other government entities were charged for that same software. 765 F.3d. 1081 at 1092.

- In *Jarvis v. K2 Inc.*, 486 F.3d 526, 534 (9th Cir. 2007), the "benchmark" licenses were ***prior licenses between the parties*** for previous images created by the plaintiff. 765 F.3d. 1081 at 1092-93.

In the instant case, on the other hand, there were ***no*** prior commercial dealings between the parties with respect to "Khosara Khosara" or its composer, Baligh Hamdy. The unrelated licenses sought by Plaintiff have ***nothing whatsoever*** to do with "Khosara Khosara" or Hamdy, and will be of no use in calculating a hypothetical license fee. The documents sought will concern completely different and disconnected works owned by differently situated parties. In addition, the nature of the rights licensed will be different; many – if not the majority – would concern the sampling of a sound recording, as opposed to a composition, as is alleged to be the case here.[6] Moreover, many samples will be of already popular recordings or compositions with a demonstrated market value, as opposed to the composition at issue here. (Plaintiff has supplied no evidence showing the "Khosara Khosara" composition ever to have been the subject of an

---

[6] Indeed, here Plaintiff ha specifically disclaimed ownership of the sampled master.

10

**OPPOSITION OF CERTAIN DEFENDANTS TO PLAINTIFF'S MOTION TO COMPEL FURTHER DISCOVERY RESPONSES**

1  individual licensing request beyond the license issued to Defendants by EMI Music
2  Arabia.)  Further allowing introduction of licenses from other unrelated parties
3  involving completely unrelated works would greatly expand the scope and length
4  of the pretrial and trial proceedings.  Undoubtedly, the trial would turn into a series
5  of mini-trials and evaluations attempting to qualitatively compare the value of one
6  sample license to another.

7        Courts have been unified in holding that licenses that are not comparable in
8  subject matter or scope to the theoretical license are not relevant to the reasonable-
9  royalty analysis. *See Frank Music Corp. v. Metro-Goldwyn-Mayer, Inc.*, 772 F.2d
10 505, 514 n.8 (9th Cir. 1985) (affirming the exclusion of "evidence of royalties
11 other Broadway shows had earned in Las Vegas productions" as irrelevant to the
12 value of a license for the Broadway show at issue); *Siegel v. Warner Bros. Entm't,
13 Inc.*, No. 04-8400, 2009 U.S. Dist. LEXIS 66115, at *19-26  (C.D. Cal. July 8,
14 2009) (refusing to consider evidence of dissimilar film licensing agreements to
15 calculate the fair market value of a film licensing agreement for the infringed work
16 because they were not "licensing agreements for the film rights to intellectual
17 property of similar popularity and awareness and from the same genre as the one at
18 issue in this case"); *Baker v. Urban Outfitters, Inc.*, 254 F. Supp. 2d 346, 353-54
19 (S.D.N.Y. 2003) (rejecting expert testimony based on commissioned photography
20 where the defendant infringed a stock photograph); *Bi-Rite v. Button Master*, 578
21 F. Supp. 59, 60 (S.D.N.Y. 1983) (excluding evidence of plaintiff's licenses with
22 non-parties because those licenses were for yearlong exclusive uses and the
23 defendant's use approximated a nonexclusive six-week license); *see also Beinin v.
24 Ctr. for the Study of Popular Culture*, No. 06-2298, 2007 U.S. Dist. LEXIS 22518 ,
25 at *15 (N.D. Cal. Mar. 16, 2007) (denying motion to compel production of
26 licensing agreements and holding that "[t]he probative value of the requested
27 documents in this case [] is minimal at best," where there was "no showing that
28

[licenses and assignments of] such disconnected photographs would have other than the most tenuous relationship to the issues presented in this action").

Because the documents Plaintiff is seeking are not relevant, Plaintiff is not entitled to them regardless of the burden that producing them would place on the Responding Parties. Nonetheless, that Plaintiff at this late hour seeks the wholesale production of hundreds, if not thousands, of highly confidential business documents concerning not only the Responding Parties but also third parties serves as an independent reason to deny Plaintiff's request. Not only would the Responding Parties be required to undertake a Herculean search to identify and locate each such agreement, but they would need to review each one to ascertain whether it contains confidentiality provisions requiring the contracting parties to give notice prior to any production to third parties. Both irrelevant and unnecessarily burdensome, Plaintiff's motion should be denied.

## V. Sanctions

Because Responding Parties should prevail on each issue addressed above, no sanctions are warranted. However, even if the Court hypothetically were to find against Responding Parties on one or more of the issues raised in Plaintiff's Motion, it should deny sanctions because Responding Parties' actions in opposing the discovery sought were substantially justified.

Opposing a motion is "'substantially justified' if the motion raised an issue about which reasonable people could genuinely differ on whether a party was bound to comply with a discovery rule." 8B Charles A. Wright, et. al., FEDERAL PRACTICE AND PROCEDURE, § 2288 at 526 (3rd Ed. 2010). *See Reygo Pacific Corp. v. Johnston Pump Co.*, 680 F.2d 647, 649 (9th Cir. 1982) (defining substantial justification as whether "reasonable people could differ as to whether the party requested must comply"); *see also Maddow v. Proctor & Gamble*, 107 F.3d 846,

853 (11th Cir. 1997) (reversing sanctions award where defendant's refusal to produce documents was justified).

Plaintiff argues that Responding Parties' refusal to produce license agreements and multi-track recordings is unjustified, because this information is "indisputably relevant". Not so. As set forth above (1) the relevance of the license agreements is ***not*** "indisputable;" and (2) the Responding Parties, as recently as November 7, said that they would conduct a search for the multi-track, ***not*** that they were refusing to produce it; and, as Plaintiff's counsel has been advised, no multitrack recording of *Big Pimpin'* is in the possession, custody, or control of the Responding Parties. Moreover, Responding Parties have already produced whatever limited financial information is in their possession regarding revenues pertaining to concert performances of *Big Pimpin'*, and have agreed to supplement their responses to Interrogatory Nos. 26-29 in concordance with their existing and continuing production of documents.

For any or all of these reasons, the Court should deny the request for sanctions.

Dated: November 19, 2014              MITCHELL SILBERBERG & KNUPP LLP


By:/s/ Alexa L. Lewis/
    Russell J. Frackman
    Christine T. Lepera
    David A. Steinberg
    Alexa L. Lewis
    Attorneys for Defendants