1   CALDWELL LESLIE & PROCTOR, PC
    LINDA M. BURROW, State Bar No. 194668
2    burrow@caldwell-leslie.com
    ERIC S. PETTIT, State Bar No. 234657
3    pettit@caldwell-leslie.com
    725 South Figueroa Street, 31st Floor
4   Los Angeles, California 90017-5524
    Telephone: (213) 629-9040
5   Facsimile: (213) 629-9022

6   Attorneys for Defendant SHAWN C.
    CARTER (professionally known as JAY Z).
7

8              UNITED STATES DISTRICT COURT

9       CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

10
    OSAMA AHMED FAHMY, an            Case No. 07-CV-05715 CAS (PJWx)
11  individual,
                                     The Honorable Christina A. Snyder
12              Plaintiff,
                                     **REDACTED OPPOSITION OF
13         v.                        DEFENDANT SHAWN C. CARTER
                                     (professionally known as JAY Z) TO
14  JAY-Z (aka SHAWN CARTER),        PLAINTIFF'S MOTION TO
    TIMOTHY MOSELY, KYAMBO           COMPEL FURTHER DISCOVERY
15  JOSHUA, BOB BOURDON, BRAD        RESPONSES; DECLARATIONS OF
    DELSON, MIKE SHINODA, DAVE       KASHYAP BAKHAI AND ERIC S.
16  FARRELL, JOSEPH HAHN, CHESTER    PETTIT AND EXHIBITS**
    BENNINGTON, BIG BAD MR. HAHN
17  MUSIC, CHESTERCHAZ              Judge:  Hon. Patrick J. Walsh
    PUBLISHING, EMI BLACKWOOD
18  MUSIC, INC., EMI MUSIC           Date:   November 24, 2014
    PUBLISHING LTD., KENJI           Time:   2:00 p.m.
19  KOBAYASHI MUSIC, LIL LULU        Ctrm:   23
    PUBLISHING, MACHINE SHOP
20  RECORDINGS, LLC, MARCY
    PROJECTS PRODUCTIONS II, INC.,
21  MTV NETWORKS ENTERPRISES
    INC., NONDISCLOSURE
22  AGREEMENT MUSIC, PARAMOUNT
    HOME ENTERTAINMENT, INC.,        Discovery Cutoff: Nov. 28, 2014
23  PARAMOUNT PICTURES               Trial Date:       May 12, 2015
    CORPORATION, RADICAL MEDIA,
24  ROB BOURDON MUSIC, ROC-A-
    FELLA RECORDS, LLC,
25  TIMBALAND PRODUCTIONS, INC.,
    UMG RECORDINGS, INC.,
26  UNIVERSAL MUSIC AND VIDEO
    DISTRIBUTION, INC., AND WARNER
27  MUSIC INC.,

28              Defendants.

CALDWELL
LESLIE &
PROCTOR

**DEFENDANT SHAWN C. CARTER'S OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL**

## TABLE OF CONTENTS

Page

I.    PLAINTIFF IS NOT ENTITLED TO FURTHER DISCOVERY ON CONCERT PROFITS ................................................................................ 1

    A.    Plaintiff Fails To Meet His Burden To Show That The Information Sought Is Relevant ..................................................... 1

       1.    Mr. Carter *Has* Produced Evidence of Performance Royalties, Which Are Directly Related to Performances of *Big Pimpin'* ......................................................................... 2

       2.    Plaintiff Fails to Meet His Burden to Show the Relevance of Other Concert-Related Information ............................... 3

          (a)    Plaintiff Must Establish a "Nexus" Between Concert Revenues and the Alleged Infringement ........................... 3

          (b)    Plaintiff Has Not Adduced Any Evidence Linking Concert Profits to the Alleged Infringement ..................... 4

    B.    The District Court Did Not Previously Order that Concert Revenues Be Produced .................................................................. 6

       1.    The December 2011 Order ................................................ 7

       2.    The June 2013 Order ......................................................... 8

       3.    The July 2014 Order .......................................................... 9

    C.    The Undue Burden on Mr. Carter Far Outweighs any Minimal Relevance of the Requested Documents ..................................... 9

II.    PLAINTIFF'S DEMAND FOR ALL LICENSE AGREEMENTS FOR ANY SAMPLE EVER USED IN ANY OF MR. CARTER'S SONGS IS IRRELEVANT, OVERBROAD, AND UNDULY BURDENSOME ....... 10

    A.    Plaintiff Has Not Established that the License Agreements He Seeks Are Relevant ................................................................... 10

    B.    The Breadth And Timing Of Plaintiff's Request Impose An Undue Burden .......................................................................... 12

III.    MR. CARTER DOES NOT HAVE A "MULTI-TRACK" VERSION OF THE ALLEGEDLY INFRINGING WORK ................................... 13

IV.    PLAINTIFF'S MOTION TO COMPEL SPECIAL INTERROGATORY RESPONSES SHOULD BE DENIED ....................... 14

    A.    Plaintiff Exceeded The Presumptive Limit On Interrogatories Without A Stipulation Or Leave Of Court In Direct Violation Of Rule 33 Of The Federal Rules Of Civil Procedure .............................. 14

CALDWELL
LESLIE &
PROCTOR

-i-

B.    Even If Plaintiff's Motion To Compel Was Procedurally Proper, The Responses To Plaintiff's Interrogatories Can Be Derived Through Less Burdensome Means..........................................16

V.    THE COURT SHOULD DENY PLAINTIFFS' SANCTIONS REQUEST ..........................................................................16

VI.    CONCLUSION ........................................................................17

**DEFENDANT SHAWN C. CARTER'S OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL**

1    Defendant Shawn C. Carter (professionally known as Jay Z) respectfully
2 submits this response to the motion to compel Plaintiff submitted to the chambers of
3 the Honorable Patrick J. Walsh via email on November 12, 2014 (the "Motion" or
4 "Mot."). *See* Dkt. No. 429. Each of the four issues raised in Plaintiff's Motion is
5 addressed separately below.

6 **I.    PLAINTIFF IS NOT ENTITLED TO FURTHER DISCOVERY ON
7          CONCERT PROFITS**

8    Before Plaintiff can obtain discovery on Mr. Carter's concert profits (or for
9 that matter, any subject) he must first establish the relevance of the facts he seeks to
10 discover, *see* Federal Rule of Civil Procedure 26(b)(1), which he fails entirely to do
11 here. Plaintiff has had more than sufficient time to develop even a shred of evidence
12 establishing a "causal nexus" between the alleged infringement of *Khosara Khosara*
13 and Mr. Carter's profits (other than royalties) from concert appearances. Yet, in the
14 fourteen years since Plaintiff first discovered the alleged infringement, the seven
15 years since Plaintiff filed this lawsuit, or the three years since the District Court
16 denied Plaintiff's motion for summary judgment regarding Defendants' concert
17 profits, no such evidence has been adduced.

18    Indeed, Plaintiff makes no effort to meet his burden, choosing instead to
19 mischaracterize both the evidence that has been produced in this case and the
20 District Court's orders in an effort to force Mr. Carter to undertake the significant
21 burden to produce highly sensitive concert-related information despite the absence
22 of any evidence that such information is even relevant. The Court should reject
23 Plaintiff's efforts to avoid his own obligations at Mr. Carter's expense and deny
24 Plaintiff's Motion.

25    ***A.    Plaintiff Fails To Meet His Burden To Show That The Information***
26          ***Sought Is Relevant***

27    Plaintiff claims in his Motion that "[i]nformation regarding Defendants'
28 concert revenue is among the most critical discovery in this case" because "concert

1  revenue is likely to be the largest component of Plaintiff's damages." Mot. at 2.

2  Plaintiff's Motion puts the cart before the horse. Before Plaintiff is entitled to *any*

3  discovery (on concert revenues or otherwise) he must first satisfy the relevancy

4  requirements in Federal Rule of Civil Procedure 26(b)(1). *See, e.g., Ellis v. JP*

5  *Morgan Chase & Co.*, No. 12-cv-03897-YGR (JCS), 2014 WL 1510884, at *3

6  (N.D. Cal. Apr. 1, 2014); *Rich v. Shrader*, No. 09-CV-0652-AJB(BGS), 2013 WL

7  3710806, at *8-9 (S.D. Cal. July 11, 2013) (denying motion to compel production of

8  documents where the plaintiff failed to meet its burden to show relevance).

9      As the District Court recognized in its December 9, 2011 order denying

10  Plaintiff's motion for summary judgment (the "December 2011 Order"), Plaintiff is

11  not entitled to *any* concert profits unless he can "first establish a 'causal nexus'

12  between the infringement" and Mr. Carter's profits (if any) from his concert

13  appearances. *See* Dkt. No. 309 at 11 (citing *Polar Bear Prods., Inc. v. Timex Corp.*,

14  384 F.3d 700, 711 n.7 (9th Cir. 2004)). As described in detail below, Mr. Carter *has*

15  produced documents reflecting those revenues for which the "causal nexus" between

16  the performance and the amounts Mr. Carter received can be established. *See*

17  Declaration of Eric S. Pettit ("Pettit Decl."), ¶ 2; Declaration of Kashyap Bakhai

18  ("Bakhai Decl."), ¶¶ 4-6. To the extent Plaintiff seeks documents relating to any

19  other concert-related receipts, Plaintiff fails to offer even a modicum of evidence

20  linking those receipts to the infringement alleged in this case, and Plaintiff's Motion

21  should therefore be denied.

22          **1.    Mr. Carter *Has* Produced Evidence of Performance**

23              **Royalties, Which Are Directly Related to Performances of**

24              ***Big Pimpin'***

25      Plaintiff fails to acknowledge anywhere in his Motion that Mr. Carter has, in

26  fact, produced documents reflecting income he received from performances of *Big*

27  *Pimpin'* throughout the limitations period. Pettit Decl., ¶ 2; Bakhai Decl., ¶¶ 4-6.

28  Each time any song is performed, the venue pays a royalty to the performing rights

1  societies (ASCAP, BMI and SEASAC), which in turn pay those royalties to the

2  song's writers and publishers.  *See* Melville D. Nimmer & David Nimmer, *Nimmer*

3  *on Copyright*, § 8.19[A]; *ABKCO Music, Inc. v. Harrisongs Music, Ltd.*, 508

4  F.Supp.798, 799-800 (S.D.N.Y. 1981), *modified*, 722 F.2d 988 (2d Cir. 1983)

5  (observing that the categories of profits available from exploitation of the George

6  Harrison hit "My Sweet Lord," which infringed Plaintiff's work, were mechanical

7  royalties, performance royalties, the sale of sheet music and folios, and the profits of

8  Apple Records, Inc., the Harrison-owned manufacturer of the principal recordings

9  of "My Sweet Lord").  If Plaintiff were able to establish infringement, he would be

10  entitled to a portion of those royalties relating to *Big Pimpin'*, to the extent those

11  royalties could be attributable to the *Khosara Khosara* sample.  *See* 17 U.S.C. §

12  504.

13            **2.     Plaintiff Fails to Meet His Burden to Show the Relevance of**

14                   **Other Concert-Related Information**

15                   **(a)     Plaintiff Must Establish a "Nexus" Between Concert**

16                          **Revenues and the Alleged Infringement**

17            Unlike performance royalties, which Mr. Carter receives on a song-by-song

18  basis, *see* Bakhai Decl., ¶ 6, Exh. B, Mr. Carter's additional profits (if any) from his

19  concert appearances are not discoverable unless Plaintiff can provide at least a

20  minimal showing of a "nexus" between the alleged infringement—the use of the

21  *Khosara Khosara* sample in the song *Big Pimpin'*—and Mr. Carter's profits from

22  his concert appearances.  *See Mackie v. Rieser*, 296 F.3d 909, 915-16 (9th Cir. 2002)

23  (upholding summary judgment for defendant based on plaintiff's failure to adduce

24  any non-speculative evidence suggesting a link between the infringement and

25  concert revenues); *see also Polar Bear Prods.*, 384 F.3d at 714 (vacating jury

26  verdict because plaintiff's circumstantial evidence of a connection between the

27  infringement and the profits sought was "woefully insufficient" as a matter of law).

28

1    The District Court's December 2011 Order was the result of *Plaintiff's*

2  motion asking the Court to decide, as a matter of law, that Plaintiff was entitled to

3  concert profits. *See* Dkt. No. 309 at 2.  The District Court correctly denied that

4  motion, and identified certain factors that would inform its analysis "as to whether

5  plaintiff is able to prove the required causal nexus" between the alleged

6  infringement and the profits from Mr. Carter's concerts. *Id.* at 15-17.  The Court,

7  for example, questioned whether Mr. Carter "used *Big Pimpin'* in his advertisements

8  for a particular concert or concert series," whether he performed *Big Pimpin'* at

9  every concert, and whether there was advance notice that *Big Pimpin'* would be

10  played at any particular show.  *See id.* at 15.  Ultimately, as the District Court

11  observed, Plaintiff would have to show whether and how Mr. Carter "directly

12  profited from performances of *Big Pimpin'*" to be entitled to any such revenues.  *Id.*

13              **(b)    Plaintiff Has Not Adduced Any Evidence Linking**

14                        **Concert Profits to the Alleged Infringement**

15              In the three years since the District Court issued its December 2011 Order,

16  Plaintiff has had ample opportunity, whether through discovery or his own

17  investigation, to produce evidence showing *any* connection between Mr. Carter's

18  concert profits (other than performance royalties) and the alleged infringement in

19  this case.  Yet Plaintiff offers no evidence at all in support of his Motion, let alone

20  evidence sufficient to satisfy his threshold burden to show that the evidence he seeks

21  is, in fact, relevant. *See Ellis*, 2014 WL 1510884, at *3 (requiring that a plaintiff

22  seeking to compel discovery must first satisfy the relevancy requirements in Federal

23  Rule of Civil Procedure 26(b)(1)).  Instead, Plaintiff inaccurately claims that

24  requiring him to produce *any* evidence of a causal nexus at all would be improper,

25  given the District Court's denial of Defendants' bifurcation motion. *See* Mot.at 3

26  (citing Dkt. No. 418).

27              Plaintiff's reliance on the bifurcation order is misplaced.  The issue of

28  bifurcation would arise only if Plaintiff *had* made a threshold showing of relevance

1   for discovery purposes, but Defendants nonetheless sought to postpone discovery
2   until after Plaintiff had met his burden of proof at trial.  Here, however, Plaintiff
3   cannot even meet his initial threshold for discoverability.  Indeed, if Plaintiff's
4   position were correct, it would read Rule 26(b)(1) out of the Rules entirely, by
5   relieving parties from the need to show establish relevance before compelling
6   discovery.  Plaintiff's position is not, however, the law, and Plaintiff's failure to
7   show the necessary relevance dooms his Motion here.  *See Rich*, 2013 WL 3710806,
8   at *8-9 (denying motion to compel production of documents where the plaintiff
9   failed to meet its burden to show relevance).

10      Not only has Plaintiff failed to offer any evidence to suggest a "nexus"
11  between concert revenues and the alleged infringement, the evidence that has been
12  discovered affirmatively establishes that no such connection exists.  Since the
13  District Court issued its December 2011 Order, Defendants, including Mr. Carter,
14  have produced numerous concert-related documents—including concert
15  advertisements and promotional materials, as well as set lists identifying songs that
16  Mr. Carter performed at concerts since 2004—and Mr. Carter was questioned
17  extensively at his deposition regarding his concert performances.  *See* Pettit Decl., ¶
18  3.  The evidence makes clear that Mr. Carter *never* advertised his concerts by
19  referencing *Big Pimpin'*, *see id.* ¶ 4 Exh. D, and while Plaintiff misleadingly points
20  to Mr. Carter's testimony that he could not think of a concert at which *Big Pimpin'*
21  was not played, *see* Mot. at 2, the set lists also establish conclusively that *Big
22  Pimpin'* was *not* performed at every concert at which Mr. Carter appeared.  *Id.*, ¶ 5,
23  Exh. E.

24      Plaintiff's theory reflects a fundamental misunderstanding of how concerts
25  are promoted.  As the District Court recognized, unlike patrons of classical music,
26  opera, or musical theater, who know ahead of time what piece(s) of music will be
27  performed when they purchase their seats, *see* Dkt. No. 309 at 15 (citing *Frank
28  Music II*, 886 F.2d 1545, 1550 n.3 (9th Cir. 1989)), consumers who purchase

1  concert tickets for a Jay Z show do so without knowing which particular songs Mr.

2  Carter is going to perform on any given night. *See id.* at 16 n.5 (observing that "a

3  concert is not identical to a musical production because concerts often vary

4  dramatically from venue to venue…"); *see also* Pettit Decl., Exh. C at 135:13-136:4

5  (describing the process by which concert set lists are created). Each Jay Z concert

6  tour, indeed, each Jay Z concert, is unique, featuring different artists, including

7  many, such as Kanye West, Eminem and Beyonce, with their own extensive fan

8  base. *See* Pettit Decl., Exh. D. As is clear from the promotional materials in the

9  record in this case, Mr. Carter's recent tours have been promoted either in

10  connection with then-current albums (*e.g.* 2011-2012's "Watch the Throne" tour

11  with Kanye West) or with artists with whom Mr. Carter shared the stage, such as the

12  2010 Jay Z-Eminem "Home and Home" tour. *See id.* The idea that *any* revenues

13  from *any* of these concerts can be directly attributed to the performance of a fifteen-

14  year-old song like *Big Pimpin'* is wholly unsupported by any evidence.

15       Moreover, Plaintiff's recovery (if any) would be limited to profits attributable

16  to the alleged infringement of *Khosara Khosara*, not to *Big Pimpin'* in general (*see*

17  17 U.S.C. § 408), and there is no evidence whatsoever linking Mr. Carter's concert

18  revenues to the allegedly infringed work. Indeed, as Plaintiff fails to point out,

19

20                                **REDACTED**

21

22

23       *See* Pettit Decl., Exh. C at 43:14-44:4.

24       **B.**    ***The District Court Did Not Previously Order that Concert Revenues***

25            ***Be Produced***

26       Faced with his inability to produce even the minimal evidence necessary to

27  establish relevance as Rule 26(b)(1) requires, Plaintiff mischaracterizes the District

28  Court's prior orders. Contrary to Plaintiff's assertion, *see* Mot. at 2, the District

1    Court has *never* ordered Mr. Carter or any other Defendant "to produce information
2    regarding concert revenues." Rather, the Court *rejected* Plaintiff's summary
3    judgment motion, correctly placed the burden on Plaintiff to establish a causal nexus
4    between the alleged infringement and Mr. Carter's concert profits, and expressly
5    anticipated that Plaintiff would not be able to meet this burden. *See* Dkt. No. 309 at
6    17.

### 1.    The December 2011 Order

8    The sole basis for Plaintiffs' assertion that the Court previously ordered
9    discovery of concert revenues is the District Court's December 2011 Order, in
10   which it denied Plaintiff's request to hold that Plaintiff was entitled to concert
11   profits as a matter of law, and "reserve[d] judgment as to whether plaintiff is able to
12   prove the requisite causal nexus" between the alleged infringement and concert
13   profits. *See* Mot. at 2 (quoting Dkt. No. 309 at 12).  Far from ordering Defendants
14   to "produce information regarding concert revenues," the Court ordered Defendants
15   "to *respond* to discovery requests that go to both the manner of advertising concerts
16   as well as the revenues derived therefrom." Dkt. No. 309 at 17 (emphasis added).

17   At the time of the December 2011 Order, Plaintiffs had not, in fact, even
18   served discovery requests that went either to "the manner of advertising concerts" or
19   "the revenues derived therefrom," despite having litigated this case for more than
20   four years.  Thereafter, Plaintiffs served discovery seeking concert profits (RFPs
21   131-136), to which Defendants responded on April 9, 2012.[1]  Defendants objected
22   on various grounds, including burden, overbreadth, and that the requested discovery
23   was not reasonably calculated to lead to the discovery of admissible evidence, and
24   declined to produce documents in response to any of these requests except for
25   Request 134, which sought concert set lists.  Mr. Carter has since produced concert

---

26   [1] Mr. Carter was represented at the time by Mitchell Silberberg & Knupp, which
27   also represents the other defendants in this action.  Mr. Carter obtained separate
28   counsel in August 2014. *See* Dkt. No. 425.

set lists, along with documents relating to "the manner of advertising concerts" and documents showing performance royalties Mr. Carter received from performances of *Big Pimpin'*. *See* Pettit Decl., ¶¶ 2-4, Exhs. D, E; Bakhai Decl., ¶¶ 4-6, Exhs. A, B. Despite the supposed centrality of this information to Plaintiff's case, *see* Mot. at 2, Plaintiff did not challenge Defendants' objections, and indeed, took no action with respect to these Requests for another year, when instead of meeting and conferring as required under Local Rule 37, he moved for contempt of the December 2011 Order in April 2013. *See* Dkt. No. 329.[2]

## 2.   The June 2013 Order

The District Court denied Plaintiff's contempt motion in June 2013, reiterating that the December 2011 Order only required Defendants to *respond* to discovery requests and finding that Plaintiff had failed to make a showing—or even an argument—that "defendants have improperly resisted any specific discovery request." *See* Dkt. No. 357 at 4. In rejecting Plaintiff's contempt arguments, the District Court specifically noted that

> by objecting to specific discovery requests propounded by
> plaintiff, defendants are not necessarily acting in a manner
> inconsistent with the Court's order, but merely asserting
> their rights related to the discovery process.

*Id*. The District Court thus left open the possibility that Defendants would object to Plaintiff's requests, and left its assessment of those objections for another day.

---

[2] Plaintiff's assertion that "Defendants have made every effort to stifle discovery" on the issue of concert revenues is, at best, misleading. *See* Mot. at 2. Plaintiff failed to pursue such discovery, and, moreover, Defendants, including Mr. Carter, have produced those documents for which even the minimum threshold of relevance could be established.

### 3. The July 2014 Order

The District Court granted Defendants' motion for summary judgment on laches grounds in August 2013, finding that Plaintiff had unreasonably waited more than six years after discovering the alleged infringement to bring the instant lawsuit. *See* Dkt. No. 377.  In July 2014, following the United States Supreme Court's decision in *Petrella v. Metro-Goldwyn-Mayer, Inc.*, --- U.S. ---, 134 S.Ct. 1962 (2014), the District Court vacated its summary judgment order and, further, denied Defendants' request to bifurcate liability and damages. *See* Dkt. No. 418.

As in its prior orders, however, the District Court did not deprive Defendants of their right to object to Plaintiff's discovery requests, nor did it relieve Plaintiff of his burden to demonstrate the relevance of Mr. Carter's concert profits by offering evidence of a "nexus" between those concert profits and the alleged infringement of *Khosara Khosara*.  As described above, Plaintiff fails to meet this threshold burden, and his Motion should therefore be denied.

### C. The Undue Burden on Mr. Carter Far Outweighs any Minimal Relevance of the Requested Documents

Even if Plaintiff could show some minimal relevance of the remaining documents he seeks (which he cannot), that relevance would be more than outweighed by the burden on Mr. Carter to gather and produce these documents. *See* Fed. R. Civ. P. 26(b)(2)(C); 8 Charles Alan Wright & Arthur R. Miller, *Federal Prac. & Proc. Civ.* § 2008.1 (3d. ed. 2010) (observing that "[j]udges relatively frequently limit or forbid discovery when the cost and burden seem to outweigh the likely benefit in producing evidence"); *see also Mattel, Inc. v. MGA Entm't, Inc.*, No. CV 04-9049 DOC (RNBx), 2010 WL 3705864, at *1 (C.D. Cal. Sept. 2, 2010) (rejecting discovery where potential relevance was "greatly outweighed" by the burden on the producing party).  Gathering and producing documents relating to Mr. Carter's revenues and costs for concerts from 2004 to the present—even if such documents exist—would require hundreds of person hours of work. *See* Bakhai

1  Decl., ¶ 7.  Moreover, the information Plaintiff seeks is highly confidential and
2  made available only to Mr. Carter's financial advisors on a need-to-know basis.  *See*
3  *id.* ¶ 8.  Indeed, as Mr. Carter testified,  **REDACTED**

4                                      *See* Pettit Decl. Exh. C at 137:2-143:16.

5                           \* \* \*

6       Plaintiff fails to supply any evidence of a "causal nexus" between the alleged
7  infringement of *Khosara Khosara* and Mr. Carter's concert profits.  The Court
8  should therefore deny Plaintiff's request to compel a burdensome production of
9  documents that are neither relevant nor reasonably calculated to lead to the
10  discovery of admissible evidence.

11  **II.  PLAINTIFF'S DEMAND FOR ALL LICENSE AGREEMENTS FOR**
12        **ANY SAMPLE EVER USED IN ANY OF MR. CARTER'S SONGS IS**
13        **IRRELEVANT, OVERBROAD, AND UNDULY BURDENSOME**

14       Mr. Carter joins in the Opposition submitted by counsel for the other
15  Defendants on this issue ("Defendants' Opp."), and submits this brief additional
16  response in opposition to Plaintiff's motion to compel further responses to Requests
17  for Production 170-172.

18       ***A.  Plaintiff Has Not Established that the License Agreements He Seeks***
19          ***Are Relevant***

20       Plaintiff's Motion seeks the production of *all* license agreements relating to
21  the use of *any* sample in *any* song by Mr. Carter at *any* point in his career.  *See* Mot.
22  at 3-4.  This request is overbroad, unduly burdensome, oppressive, harassing, and
23  seeks documents that are neither relevant nor reasonably likely to lead to the
24  discovery of admissible evidence.  As explained above, to be entitled to the
25  discovery he seeks, Plaintiff must satisfy the relevancy requirements in Federal Rule
26  of Civil Procedure 26(b)(1).  *See Rich*, 2013 WL 3710806, at \*8-9 (denying motion
27  to compel production of documents where the plaintiff failed to meet its burden to
28  show relevance).  While Plaintiff claims that these license agreements are relevant

-10-

1  to establish the fair market value of a hypothetical license for the *Khosara Khosara*

2  sample, he fails to articulate any factual basis for that contention.  Plaintiff

3  completely ignores the numerous variables that contribute to the hypothetical license

4  value of a sample, including the popularity and familiarity of the sampled track, the

5  use and prominence of the track in the song for which it is licensed, the period in

6  which it was licensed, the terms of the license, and the sophistication and relative

7  leverage of the licensing parties.  *See Dash v. Mayweather*, 731 F.3d 303, 319-26

8  (4th Cir. 2013) (rejecting plaintiff's attempt to demonstrate a hypothetical license

9  value for allegedly infringing use of a copyrighted musical work as "too

10  speculative" because the licensing agreements relied on by plaintiff's expert did not

11  involve "comparable uses of comparable works").

12       Rather than attempting to provide an empirical connection between the

13  license agreements that he seeks and the fair market value of the *Khosara Khosara*

14  sample, Plaintiff instead strings together a number of cases in support of the

15  proposition that "the use of comparable licenses to establish a reasonable royalty

16  rate is commonplace in intellectual property litigation."  Putting aside whether this

17  statement is accurate, it presupposes the very thing that Plaintiff fails to establish

18  here, i.e., that the licenses are *comparable* to the hypothetical license on which the

19  plaintiff bases his claim for damages.  Indeed, the Ninth Circuit case on which

20  Plaintiff relies confirms that, to be relevant, the license agreements at issue must be

21  *comparable* to the hypothetical license at issue so as to provide a "benchmark" by

22  which to value the hypothetical license.  *See Oracle Corp. v. SAP AG*, 765 F.3d

23  1081, 1093 (9th Cir. 2014) (affirming district court order overturning jury verdict

24  based on a failure to offer comparable licenses or otherwise provide objective

25  evidence of the fair market value of a hypothetical license).

26       The other cases Plaintiff cites are inapposite in that they relate to the

27  admissibility of expert testimony in patent infringement trials, and in no way limit

28  the proposition that license agreements must be comparable in order to be relevant

CALDWELL
LESLIE &
PROCTOR

-11-

**DEFENDANT SHAWN C. CARTER'S OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL**

1   to determining the fair market value of a hypothetical license. *See Freeman v.*

2   *Gerber Prods. Co.,* 450 F.Supp.2d 1248, 1262 (D.Kan. 2006) (refusing to exclude

3   expert testimony from patent infringement trial under Rule 702 of the Federal Rules

4   of Evidence where the expert "utilizes the accepted *Georgia–Pacific* analysis and

5   explains the effect that each factor would have on a negotiated royalty");

6   *ActiveVideo Networks, Inc. v. Verizon Commc'ns., Inc.,* 694 F.3d 1312, 1333 (Fed.

7   Cir. 2012) (same).  Here, Plaintiff has presented no evidence from an expert or

8   anyone else purporting to demonstrate that the license agreements he seeks by his

9   Motion involve samples that are in any way comparable to the *Khosara Khosara*

10  sample.  Indeed, it is undisputed that the license agreements Plaintiff seeks were

11  negotiated under completely different circumstances and involve completely

12  disconnected works owned by differently situated parties.  As such, they cannot

13  serve as "benchmarks" in connection with the valuation of a hypothetical license of

14  the *Khosara Khosara* sample, *see* Defendants' Opp. at 7-8 (citing cases), and thus

15  are neither relevant nor reasonably likely to lead to the discovery of admissible

16  evidence in this action.

17      **B.      The Breadth And Timing Of Plaintiff's Request Impose An Undue**

18               **Burden**

19      Even if Plaintiff established in his Motion that the license agreements he

20  seeks have some probative value regarding his actual damages—which he has not—

21  any such value is far outweighed by the cost and burden of compliance with an

22  order compelling their production.  Given the breadth of Plaintiff's request and the

23  sheer number of samples that have been licensed in connection with Mr. Carter's

24  songs over the course of his decades-long career, compliance with an order

25  compelling the production of these agreements would be extremely burdensome,

26  expensive, and time consuming. *See* Bakhai Decl. ¶ 9.  Moreover, as with the

27  concert revenue information discussed above, the license agreements Plaintiff seeks

28

CALDWELL
LESLIE &
PROCTOR

-12-

**DEFENDANT SHAWN C. CARTER'S OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL**

1    to compel are highly confidential and treated as such by Mr. Carter and his

2    representatives. *See id.* ¶ 10.

3          Plaintiff does not explain in his Motion why, if the license agreements that he

4    seeks are so critical, he waited until the close of discovery to propound, for the first

5    time, requests seeking their production.  In addition to undermining his claims

6    regarding their purported importance, Plaintiff's delay in seeking these documents

7    would significantly increase the burden of compliance by imposing unnecessary

8    time pressure on Mr. Carter and the other defendants to locate and compile the huge

9    volume of responsive agreements.  Given the paucity of Plaintiff's showing

10    regarding the relevance of the documents he seeks, his eleventh-hour attempt to

11    substantially increase the cost and burden of this litigation to Mr. Carter and the

12    other Defendants should be rejected as a strategic gambit rather than a legitimate

13    discovery request.  At a minimum, the Court should impose reasonable limits on

14    Plaintiff's request by requiring him to make a *prima facie* showing that a particular

15    licensed sample is sufficiently comparable to the *Khosara Khosara* sample as to be

16    relevant to an analysis of its hypothetical license value (e.g. because it involves a

17    similar piece of foreign music of similar popularity to be sampled in a similar way

18    as *Khosara Khosara* and was entered into at or around the time that *Big Pimpin'*

19    was produced).  *See* Fed. R. Civ. P. 26(b)(2)(C) (requiring a court to limit discovery

20    upon a finding of undue burden or inexcusable delay).

21  **III.   MR. CARTER DOES NOT HAVE A "MULTI-TRACK" VERSION OF**

22        **THE ALLEGEDLY INFRINGING WORK**

23          As noted in the Opposition submitted by the other defendants, Plaintiff asked

24    Defendants to produce an "original multi-track" recording of *Big Pimpin'* for the

25    first time only a few weeks ago, in a letter dated October 28, 2014.  Without

26    conceding the appropriateness of Plaintiff's request, Mr. Carter can confirm that he

27    does not have such a recording within his possession, custody, or control, thereby

28    rendering Plaintiff's Motion moot on this issue.

## IV.  PLAINTIFF'S MOTION TO COMPEL SPECIAL INTERROGATORY RESPONSES SHOULD BE DENIED

### A.  *Plaintiff Exceeded The Presumptive Limit On Interrogatories Without A Stipulation Or Leave Of Court In Direct Violation Of Rule 33 Of The Federal Rules Of Civil Procedure*

Contrary to Plaintiff's claim, Mr. Carter is not required to provide substantive responses to Plaintiff's Special Interrogatories 26-29 because, *inter alia*, Plaintiff violated Rule 33 of the Federal Rules of Civil Procedure by exceeding the presumptive limit on the number of interrogatories that a party may propound in federal court without a stipulation or leave of court.  Plaintiff's counsel has conceded that Plaintiff failed to comply with Rule 33 when propounding these interrogatories, but instead of trying to rectify the problem by asking Defendants to stipulate to the additional interrogatories or seeking leave of court, Plaintiff's counsel initiated a meet and confer pursuant to Local Rule 37-1, and is now attempting to compel responses to interrogatories that Plaintiff had no right to propound.

Plaintiff's Motion misleadingly elides his failure to comply with the procedural requirements of Rule 33.  The factors Plaintiff cites in support of his motion to compel, however, relate to whether the Court should grant a motion for leave to propound more than twenty-five interrogatories, *not* a motion to compel responses to interrogatories propounded in violation of Rule 33.  Indeed, of the four cases Plaintiff cites in support of his motion to compel, three of them did not involve motions to compel responses to interrogatories propounded beyond the presumptive limit, but instead addressed whether to grant a procedurally proper request to exceed that limit.  *See Castaneda v. Burger King Corp.*, No. C 08-4262 WHA JL, 2009 WL 4282596 (N.D. Cal. Nov. 25, 2009); *Williams v. Adams*, No. 1:05-cv-00124-AWI-SMS PC, 2009 WL 1220311 (E.D. Cal. May 4, 2009); *Jacobs IV v. Scribner*, No. 1:06-cv-01280-AWI-GSA PC, 2008 WL 2773999 (E.D. Cal. June 27, 2008).  Here,

CALDWELL
LESLIE &
PROCTOR

by contrast, it is undisputed that Plaintiff has *never* asked the Court for leave to propound more than twenty-five interrogatories.  Thus, those cases are inapposite, and do not support Plaintiff's request for an order compelling production of interrogatories he propounded in violation of the Federal Rules.

While the fourth case Plaintiff relies on did involve a motion to compel, that case is also readily distinguishable from the situation here.  In *Protective Optics, Inc. v. Panoptx, Inc.*, the plaintiff only propounded 23 total interrogatories.  *See* No. C-05-02732 CRB (EDL), 2007 WL 963972, at *1 (N.D. Cal. Mar. 30, 2007). Rather than respond, the defendant objected that the plaintiff had exceeded the presumptive limit on interrogatories because some of the interrogatories contained discrete subparts.  *See id.*  Here, by contrast, it is undisputed that, while Plaintiff misleadingly labeled the interrogatories at issue Nos. 22-25, he had previously propounded 25 interrogatories.  Thus, unlike in *Protective Optics*, where the defendant had a legitimate argument that the interrogatories at issue did not violate the numerical limit in Rule 33, Plaintiff here has not and cannot claim that he complied with Rule 33.

Plaintiff claims that his violation of the 25 interrogatory limit in Rule 33 was inadvertent.  Whether Plaintiff's mistake was innocent, however, does not change the fact that Plaintiff's interrogatories do not comply with the Federal Rules of Civil Procedure.  Upon realizing his mistake, Plaintiff had the opportunity to rectify it by seeking leave, either by stipulation of the parties or order of the Court, to exceed the presumptive limit on interrogatories.  Plaintiff chose not to do so, and should not now be permitted to circumvent his failure to comply with Rule 33 by moving to compel responses to interrogatories that he indisputably had no right to propound.

1    ### B.    *Even If Plaintiff's Motion To Compel Was Procedurally Proper, The*
2    ### *Responses To Plaintiff's Interrogatories Can Be Derived Through*
3    ### *Less Burdensome Means*

4    Even if the Court were permitted to overlook Plaintiff's failure to comply

5    with the Federal Rules of Civil Procedure, it should still deny Plaintiff's motion to

6    compel responses to the interrogatories at issue because the information sought by

7    those interrogatories can be more easily obtained by less burdensome means.

8    Pursuant to the protective order in place in this action, Mr. Carter has previously

9    produced sensitive business records containing the information Plaintiff seeks by

10   these interrogatories.  As Plaintiff acknowledges in his Motion, a party may respond

11   to interrogatories by reference to business records where the information sought can

12   be derived from those records and the burden of deriving the answer will be

13   substantially the same for either party.  *See* Mot. at 5-6; Fed. R. Civ. P. 33(d).

14   Mr. Carter has not only produced business records containing information

15   sought by Plaintiff's interrogatories, he has also agreed to make his financial

16   advisor, Kashyap Bakhai, available to be deposed regarding those records.  While

17   Plaintiff complains in his Motion that obtaining the information he seeks in the

18   interrogatories at issue "would require additional damages depositions," Mot. at 6,

19   the fact is that Plaintiff has already confirmed his intent to depose Mr. Bakhai and

20   others regarding Plaintiff's alleged damages.  In light of these depositions, Plaintiff

21   has not and cannot articulate any legitimate reason for requiring Mr. Carter to

22   undertake the burden of compiling responses to questions that Plaintiff can simply

23   ask at the upcoming depositions.  For this additional reason, the Court should deny

24   Plaintiff's motion to compel responses to his improperly propounded interrogatories.

25   ## V.    THE COURT SHOULD DENY PLAINTIFFS' SANCTIONS REQUEST

26   As Plaintiff cannot prevail on any of the grounds in his Motion, he is not

27   entitled to sanctions.

28

1    Even if, however, Plaintiff were to prevail on any ground, he would not be

2  entitled to sanctions because, as set forth above, each of Mr. Carter's positions is

3  more than "substantially justified," *see Reygo Pacific Corp. v. Johnston Pump Co.*,

4  680 F.2d 647, 649 (9th Cir. 1982) (reversing award of sanctions and observing that

5  "[a] request for discovery is 'substantially justified' under the rule if reasonable

6  people could differ as to whether the party requested must comply"); *see also*

7  *Maddow v. Proctor & Gamble Co.*, 107 F.3d 846, 853 (11th Cir. 1997) (reversing

8  sanctions award where defendant's refusal to produce documents was justified),

9  particularly in light of Plaintiff's abject failure to offer any evidence of the

10 necessary "causal nexus" between the alleged infringement and Mr. Carter's concert

11 profits.

12 **VI.   CONCLUSION**

13    For the reasons stated herein and in the opposition submitted by the other

14 defendants, the Court should deny Plaintiff's Motion and reject his request for

15 sanctions.

16 DATED:  November 19, 2014          Respectfully submitted,

17                                   CALDWELL LESLIE & PROCTOR, PC
18                                   LINDA M. BURROW
19                                   ERIC S. PETTIT

20

21                                   By _____/s/_____
22                                        LINDA M. BURROW
23                                   Attorneys for Defendant SHAWN C. CARTER
                                     (professionally known as "JAY Z").
24

25

26

27

28

## DECLARATION OF KASHYAP BAKHAI

I, KASHYAP BAKHAI, declare and state as follows:

1.      I am a principal in the Tax and Accounting Department and head the Sports and Entertainment Group at Morrison, Brown, Argiz & Farra, LLC ("MBAF").  I make this declaration in support of the Opposition to Plaintiff's Motion to Compel filed by Defendant Shawn C. Carter (professionally known as Jay Z) in the action captioned above.  I have personal knowledge of the facts stated herein, and could and would testify competently thereto if called as a witness in this matter.

2.      I am a Certified Public Accountant (CPA) and an IRS Certified Acceptance Agent (CAA).  I am also accredited in Business Valuation (ABV) with a Master of Science in Taxation (MST) from Florida International University.  I have been in practice since 1985 and have represented numerous large and mid-size family owned businesses, professional athletes and entertainers, estates and trusts, broker-dealers, hospitality, telecommunication companies, real estate investors, wholesalers/distributors, international clients, automotive dealerships, community banks and restaurant franchisees.

3.      MBAF is a nationally ranked accounting firm with offices in Miami, New York, Baltimore, Boca Raton, Boulder, Fort Lauderdale, Orlando, Valhalla (Westchester, NY) and India.  MBAF and I have provided tax and financial management services to Mr. Carter since 2009.

4.      Through my work as Mr. Carter's financial manager, I am aware that Mr. Carter's primary sources of income with respect to the song "Big Pimpin'" (the "Song") are royalties paid on sales of sound recordings of the Song and so-called "mechanical" and public performance royalties, which represent Mr. Carter's share of the royalties paid to the Song's composers.  As reflected in a declaration I signed on October 17, 2014 in support of Mr. Carter's production of documents in this

CALDWELL
LESLIE &
PROCTOR

1    litigation, at Mr. Carter's direction I previously provided his counsel in this action

2    statements that reflect these royalty payments to Mr. Carter.

3        5.    I am aware that Plaintiff in this case also claims that he is entitled to

4    compensation relating to the performance of the Song at concerts.  Whenever a

5    copyrighted song is performed at a concert, there is a public performance royalty

6    that is generated and paid to the appropriate songwriters and publishers.  As

7    reflected in a declaration I signed on October 17, 2014 in support of Mr. Carter's

8    production of documents in this litigation, at my direction records of public

9    performance royalties that were paid for each of Mr. Carter's concert appearances

10   were previously provided to Mr. Carter's counsel and produced by Plaintiff in this

11   action.  Those documents reflect the amounts that were paid to the performing rights

12   societies for *all* songs that were performed at any given concert.  A true and correct

13   copy of a report that Mr. Carter produced in this action reflecting the royalties paid

14   on a concert-by-concert (but not a song-by-song) basis has been redacted to remove

15   confidential information and is attached hereto as Exhibit "A."

16       6.    Mr. Carter receives performance royalties from ASCAP, one of the

17   performing rights societies for any public performance of "Big Pimpin'", whether in

18   a concert, over the radio or otherwise.  Documents reflecting those royalties were

19   provided at my direction to Mr. Carter's counsel and produced to Plaintiff in this

20   action.  A true and correct copy of a report that Mr. Carter produced in this action

21   reflecting those royalties has been redacted to remove confidential information and

22   is attached hereto as Exhibit "B."

23       7.    I understand that Plaintiff has filed a motion to compel seeking the

24   production of documents relating to all revenues and expenses for all concerts at

25   which the Song was performed.  Gathering and producing documents responsive to

26   this demand would be significantly burdensome and time-consuming, as it would

27   require searching for and compiling records from a variety of sources in connection

28   with dozens of concerts over a decade-long period.  We would need to search on a

CALDWELL
LESLIE &
PROCTOR

1  concert-by-concert basis for invoices and other contemporaneous documents

2  reflecting concert revenues paid to Mr. Carter and the overhead associated with the

3  generation of those revenues.  While it is impossible to quantify with precision the

4  amount of time that would be necessary to complete this task, based on the broad

5  scope and complicated nature of the endeavor I anticipate that it would take

6  hundreds of person hours of work.

7      8.      In addition to being significantly burdensome and time consuming,

8  producing the documents Plaintiff seeks would force Mr. Carter to divulge highly

9  confidential business information that he is actively trying to protect from

10  disclosure.  At Mr. Carter's direction I have made efforts to ensure that information

11  relating to Mr. Carter's finances, including revenues and expenses for his concerts,

12  is maintained in confidence and is not disclosed to anyone, including his own

13  financial advisors, except on a strictly need-to-know basis.  If this information were

14  to be made available to the public it would substantially prejudice Mr. Carter by,

15  among other things, undermining his negotiating position with respect to concert

16  performances and compromising his ability to negotiate concert-related agreements

17  in the future.

18      9.      I understand Plaintiff's motion to compel also seeks the production of

19  all license agreements relating to the use of any sample in any song by Mr. Carter at

20  any point in his career.  As with the concert revenue information discussed above,

21  gathering and producing documents responsive to this demand would be

22  significantly burdensome and time-consuming, as it would require searching for and

23  compiling records relating to every sample used in every one of Mr. Carter's

24  hundreds of songs over the course of a prolific career spanning more than twenty

25  years.  Because Mr. Carter does not maintain a consolidated file of all license

26  agreements for samples used in his songs, complying with an order requiring Mr.

27  Carter to search for and produce all such agreements would require a considerable

28  amount of work by me and others at my direction.  I have no idea whether Mr.

CALDWELL
LESLIE &
PROCTOR

-3-

1   Carter has any of the license agreements Plaintiff seeks in his possession, custody,

2   and control, and would thus need to conduct an initial investigation before I would

3   even know where to look for these documents.  Moreover, to the extent that we

4   could locate them, we presumably would need to search records relating to each of

5   Mr. Carter's fifteen studio albums released between 1996 and 2013, as well as

6   countless albums on which Mr. Carter has appeared as a featured performer.  While

7   it is impossible to quantify with precision the amount of time that would be

8   necessary to complete this task, particularly given the uncertainties described above,

9   based on the breadth of Plaintiff's request and the size of Mr. Carter's music

10   catalogue, I anticipate that it would take hundreds of person hours of work to

11   comply with an order compelling the production of all agreements to license

12   samples used in Mr. Carter's songs.

13   ////

14   ////

15   ////

CALDWELL
LESLIE &
PROCTOR

-4-

1    10.    In addition to being significantly burdensome and time consuming,

2  producing the license agreements Plaintiff seeks would force Mr. Carter to divulge

3  highly confidential business information that he is actively trying to protect from

4  disclosure.  At Mr. Carter's direction I have made efforts to ensure that information

5  relating to Mr. Carter's finances, including license agreements for samples used in

6  his songs, is maintained in confidence and is not disclosed to anyone, including his

7  own financial advisors, except on a strictly need-to-know basis.  If this information

8  were to be made available to the public it would substantially prejudice Mr. Carter

9  by, among other things, undermining his negotiating position with respect to sample

10  license agreements and compromising his ability to negotiate such agreements in the

11  future.

12    I declare under penalty of perjury under the laws of the United States of

13  America that the foregoing is true and correct.

14    Executed November 19, 2014, at Miami, Florida.

15

16    KASHYAP BAKHAI

17

18

19

20

21

22

23

24

25

26

27

28

CALDWELL
LESLIE &
PROCTOR

4843-2936-5279                                    -5-

22

# EXHIBIT A

**Live Nation**
**Touring Artist Business Plan**



| SHOW INFO | SHOW INFO | SHOW INFO | SHOW INFO | SHOW INFO | SHOW INFO | SHOW INFO | SHOW INFO | METRICS | SHOW INFO | SHOW EXP Promoter Profit |
|---|---|---|---|---|---|---|---|---|---|---|
| Offer ID | Date | Event Name | Artist Name | Venue | Venue City | Business Unit | Promoter | # of Shows | Booking Status | ASCAP/BMI/SES AC/BUMA Expense |

Redacted

Page 1 of 6
Printed 10/14/2014 5:02:02 PM by JMelendez

**EXHIBIT A**

**HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY**

SCC000134



Redacted

Page 2 of 6
Printed 10/14/2014 5:02:02 PM by JMelendez

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

SCC000135



Redacted

Page 3 of 6
Printed 10/14/2014 5:02:02 PM by JMelendez

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

SCC000136



Redacted

Page 4 of 6
Printed 10/14/2014 5:02:02 PM by JMelendez

**HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY**

**SCC000137**



Redacted

Page 5 of 6
Printed 10/14/2014 5:02:02 PM by JMelendez

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

SCC000138



Redacted

Page 6 of 6
Printed 10/14/2014 5:02:02 PM by JMelendez

**HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY**                                        **SCC000139**

**EXHIBIT B**

Domestic Earnings History - "Big Pimpin'" - Jay Z Share
2H04 - 1H14



HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

**EXHIBIT B**
SCC000156

**Foreign Earnings History - "Big Pimpin'" - Jay Z Share**
**2H04 - 1H14**



| | BIG PIMPIN' | | | | | BIG PIMPIN'/PAPERCUT | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | Mech | Perf | Sync | Other | Total | Mech | Perf | Sync | Other | Total | Grand Total |

Redacted

**HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY**

## DECLARATION OF ERIC S. PETTIT

I, ERIC S. PETTIT, declare and state as follows:

1.     I am admitted to practice law in the State of California and a member of the bar of this Court.  I am an attorney at Caldwell Leslie & Proctor, PC, counsel for Defendant Shawn C. Carter (professionally known as Jay Z) in this action.  I make this declaration in support of Mr. Carter's Opposition to Plaintiff's Motion to Compel.  I have personal knowledge of the facts stated herein, and could and would testify competently thereto if called as a witness in this matter.

2.     On October 20, 2014, Mr. Carter produced documents in this action designated as SCC000001-000188.  These documents included concert advertisements and other promotional materials, concert set lists, and information relating to royalty income—including performance royalties—that was designated as "Highly Confidential – Attorneys Eyes Only" pursuant to the protective order entered by the Court on April 16, 2009.

3.     Plaintiff's counsel took Mr. Carter's deposition on October 28, 2014, and questioned him extensively about his concert performances.  A true and correct copy of excerpted testimony from Mr. Carter's deposition transcript is attached hereto as Exhibit C.

4.     None of the concert advertisements or promotional materials that Mr. Carter could locate based on a reasonably diligent search include any reference to *Big Pimpin'* or any other specific song.  A true and correct copy of the concert advertisements and promotional materials the Mr. Carter produced on October 20, 2014 is attached hereto as Exhibit D.

5.     Mr. Carter also produced concert set lists in response to Plaintiff's discovery demands.  A true and correct copy of a concert set list produced by Mr. Carter that does not include any reference to *Big Pimpin'* is attached hereto as Exhibit E.

CALDWELL
LESLIE &
PROCTOR

33

1       I declare under penalty of perjury under the laws of the United States of

2  America that the foregoing is true and correct.

3       Executed November 19, 2014, at Los Angeles, California.

4

5                          _____

6                     ERIC S. PETTIT

CALDWELL
LESLIE &
PROCTOR

# EXHIBIT C

# (TO BE SUBMITTED UNDER SEAL)

**EXHIBIT D**





SCC000065





SCC000067



SCC000071



SCC000072



SCC000076



SCC000077



CARNEGIE HALL

120th Anniversary
A Season to Celebrate

**February
2012**

PLAYBILL

SCC000078



Monday Evening, February 6, 2012, at 8:00
Tuesday Evening, February 7, 2012, at 9:30

Isaac Stern Auditorium / Ronald O. Perelman Stage

## JAY Z

### CARNEGIE HALL

**TWO CONCERTS TO BENEFIT**
UNITED WAY OF NEW YORK CITY AND THE
SHAWN CARTER SCHOLARSHIP FOUNDATION

PLEASE SWITCH OFF YOUR CELL PHONES AND OTHER ELECTRONIC DEVICES.

SCC000088

# Welcome

Welcome, and thank you for joining us for JAY Z at Carnegie Hall—two nights that will go down in history. These performances—sure to be both intimate and larger-than-life—benefit an important cause. Net proceeds from these epic shows will support efforts to fight poverty, boost on-time graduation rates in underserved New York City schools, and put higher education within reach for low-income students across the five boroughs.

We salute JAY Z for his steadfast commitment to giving back to our community and for mobilizing so many others around tonight's greater mission and purpose. A New York City icon performing at the most legendary New York City concert venue is a once-in-a-lifetime experience, and fortunately for us and for low-income students across New York City, he's going to make it happen twice. We could not be more grateful.

Thanks as well to the dedicated teams at Roc Nation, Carnegie Hall, Mission Big, and SW Productions—all who have worked tirelessly to make these special evenings so successful.

United Way of New York City and the Shawn Carter Scholarship Foundation share a common commitment to help low-income students get access to higher education, to build on strategies that are known to be effective, and to rigorously evaluate our work to ensure quality in all that we do. We know very well that we could not make an impact without the support of so many individuals like you, and we deeply value your partnership.

With 40% of New York City students not graduating high school in four years, it is critical that we invest in our city's students. So, again, we thank you for joining us for what will not only be spectacular nights of music at an iconic venue, but a celebration of New Yorkers coming together in support of the next generation.



**Gordon J. Campbell**
*President & Chief Executive Officer*
United Way of New York City

**Gloria Carter**
*President & Chief Executive Officer*
Shawn Carter Scholarship Foundation

## United Way of New York City's Education Initiatives Provide Stability and Support When Home Life Becomes Unpredictable

At 18 years of age, Pedro Hernandez was already serving as a father to his ten-year-old brother and eight-year-old sister. Making it to school each day was becoming harder and harder. Born in the Dominican Republic, Pedro came to the U.S. with his mother at age eight. A fast learner, he picked up English quickly and loved school. It wasn't until he reached high school that his stellar academic performance began to wane. His chaotic home life was taking its toll. Either because of a change in jobs or separation from a boyfriend or husband, Pedro's mother was forced to move the family around frequently. During his junior year of high school, Pedro's family was evicted from their apartment and had nowhere to go.

After spending some time in a homeless shelter, Pedro moved in with his uncle, while his mother and siblings stayed with his grandmother. At this point, Pedro became more motivated than ever to help out his family financially. "I got a job at Bloomingdale's. I was just going to school and working," he said. "I would wake up late for school every day because I was so tired. I ended up failing a couple classes because they were in the morning."

As his attendance continued to slip, Pedro was approached by United Way of New York City's Graduate-Prepare-Succeed (GPS-NYC) initiative. He credits GPS with helping him to manage his attendance and for providing him with much needed mentoring, guidance and stability. "GPS motivates you to show up to school and do well in your classes by rewarding you when you do. The program is there to show you that when you do something right, good things can happen. Ultimately, I got rewarded with a graduation ceremony," says Pedro.

Perhaps the most meaningful reward came in the form of a trip that would change Pedro's life forever. A key component of GPS is its emphasis on college preparation and college visits. Many students—like Pedro—never consider college as an option before GPS actually shows them what a college campus looks like. When Pedro visited the State University of New York at New Paltz, he knew that's where he belonged. He continued to improve his grades and attendance, and soon was a studying full time at SUNY.

Now a few years post-graduation, Pedro is doing well as a financial consultant in Manhattan. He gives back to his community by serving on United Way of New York City's Education Advisory Committee.



For more information on United Way of New York City, please visit unitedwaynyc.org.

SCC000089

## SHAWN CARTER SCHOLARSHIP FOUNDATION

Bringing dreams within reach, one scholar at a time

"Coming from where I'm from, people don't get too many breaks in life. The Shawn Carter Scholarship Foundation has shown me a better way and provides hope for inner-city youth like myself. I have been active with the Foundation since 2007, when I was introduced to Ms. Gloria Carter and participated in the college tours. Ms. Carter shows us that there is life beyond project buildings and subway trains; your life is what you make of it. I am grateful for everything that the Foundation has done and continues to do for me, and others like me."



**William Ray**
Student, Morgan State University



"I have learned that in order to make your mark in this world, it is imperative to have an education. With a college education more opportunities become available to you. I am more than thankful to the Shawn Carter Scholarship Foundation for giving me the platform necessary to learn this."

**Bianca Darby Bell**
Student, Brooklyn College

*For more information on the Shawn Carter Scholarship Foundation, please contact Executive Director Dania Diaz at ddiaz@shawncartersf.com.*

## SHAWN "JAY Z" CARTER

Since 1996, 13-time Grammy Award-winner Shawn "JAY Z" Carter has dominated the evolution of hip-hop. Between multiple businesses and accolades spanning from the recording industry to global investment leaders such as Warren Buffet, JAY Z personifies the "American Dream." Indeed, as the founder and chairman of Rocawear, he is a co-owner of the NJ Nets and the majority owner of the 40/40 sports clubs. He also has a major interest in Translation Advertising and the Carol's Daughter skin line, and is involved in a partnership with the Iconix Brand Group.

JAY Z served as president and CEO of Def Jam Recordings, where he fostered the careers of international stars Rihanna, Ne-Yo, and Kanye West before entering into a partnership with Live Nation to form Roc Nation. With his collaborative effort with Kanye West, *Watch the Throne*, his 12th No. 1 album, he has secured the record for most No. 1 albums by any solo artist. JAY Z continues his philanthropic work through his Water For Life initiative and the Shawn Carter Scholarship Foundation.

## UNITED WAY OF NEW YORK CITY

United Way of New York City fights poverty across the five boroughs. We design and invest in evidence-based programs that help low-income New Yorkers achieve educational success, income stability and good health. We rigorously evaluate our work and use lessons learned to advance citywide policies and practices that support New Yorkers in overcoming poverty and achieving their potential.

We believe that poverty's greatest antidote is education. We partner with educators

and families to ensure that children from low-income neighborhoods are reading proficiently by the time they complete third grade—a vital foundation for success in middle school, high school and beyond. We also work to improve on-time graduation rates and college readiness in 60 underserved public schools through intensive academic, social, and emotional support for students at high risk of dropping out.

## THE SHAWN CARTER SCHOLARSHIP FOUNDATION

The Shawn Carter Scholarship Foundation was conceived of in 2002 and officially established as a 501(c)3 public charity in 2003 by Shawn and Gloria Carter. With an original vision and mission to help individuals facing socioeconomic hardships further his or her

education at institutions of higher learning, Shawn and Gloria Carter kicked off the Foundation's efforts by awarding one student with full college tuition in 2002. From 2003 to 2005, each year the Foundation provided 50 scholarships to students in 50 different states. In 2006,

SCC000090

in addition to providing scholarship awards to a growing number of students in need, the Foundation launched the Shawn Carter Scholarship Foundation College Tours. Since the Foundation's inception, more than 750 students have received awards totaling over $1.3 million dollars. The Foundation is currently on the precipice of growth and is reviewing its current grant-making priorities as it plans for expansion as the Shawn Carter Foundation.

## MISSION BIG

Mission Big is a New York–based cause marketing and live events company focused on education and the most pressing issues of the Millennial Generation. Within the signature and large-scale events sector, the company is lead by Creative Director/ Producer Jamie Rose. Mr. Rose has two decades of live event experience, developing and producing small to festival-sized events with performances from such recording artists as Sir Elton John, Kid Rock, Snoop Dogg, The Red Hot Chili Peppers, Wyclef Jean, Joe Strummer & the Mescaleros, Hector el Bambino, 311, Dave Matthews, Garbage, The English Beat, and Fat Joe, among many others.

## SW PRODUCTIONS

Lead by Stuart Weissman, SW Productions has more than two decades of live event and television production experience, spanning hundreds of events and working with superstars that include Dave Matthews, Garth Brooks, Coldplay, JAY Z, and many others. He has also produced numerous brand activation and nonprofit events, including such clients as Tiffany, LVMH, Hard Rock, NASCAR, and events such as The Princess Grace Awards, The Revlon Run/Walk, The Billy Graham Crusade post 9/11 Event (300,000), and The Little Red Dress, among many others.



Access exclusive giveaways, artist interviews, and insider information about Carnegie Hall's history.

**Facebook**
facebook.com/CarnegieHall

**Twitter**
twitter.com/CarnegieHall

**YouTube**
youtube.com/CarnegieHall

**Blog**
carnegiehall.org/Blog

SCC000091



PLEASE REMEMBER WHEN LEAVING FEEDBACK THAT 5 STARS MEANS EVERYTHING WAS GOOD: ITEM AS DESCRIBED, SHIPPING TIME WAS ACCURATE ETC AND IS A PASSING GRADE WITH EBAY. 5 STARS = PASSING, 4 STARS = FAILED. ANYTHING LOWER IS FOR LESS THAN ACCURATE OR CORRECT.  WE REALIZE THIS IS CONFUSING AND YOUR SUPPORT HELPS US KEEP OUR ITEMS PRICED LOWER SINCE EBAY GIVE US A BETTER FEE STRUCTURE.  THANKS FOR YOUR HELP.

THANKS FOR SUPPORTING A SKATER/SURFER OWNED & OPERATED COMPANY.

Skateboards, Clothing, independendent DVD's, Music, Surf & Related Culture T-shirt printing

**Now on Storenvy**

innovationsurfskate.storenvy.com

NOT SKATEBOARDING IS A CRIME!

SCC000103



SCC000104



SCC000105



SCC000106



SCC000107



SCC000108



SCC000109



SCC000110



SCC000111



SCC000112



SCC000113



SCC000114



SCC000115



SCC000116



SCC000117



SCC000118



SCC000119



SCC000120



SCC000121



SCC000122



SCC000123



SCC000124



SCC000125



SCC000126



SCC000127



SCC000128



SCC000129



SCC000130



SCC000131

**EXHIBIT E**

**Best of Both Worlds- The Tour '04**

**Show Content Schedule**

|  | Video Open |  |  |  |  |
|---|---|---|---|---|---|
|  | Rob & Jay |  |  |  |  |
| Set 1 |  |  |  |  | Four (4) Songs |
|  |  |  |  |  |  |
|  | Song 1 | "Best of Both Worlds" |  |  |  |
|  | Song 2 | "Take You Home With Me" |  |  | at end of song white light up |
|  | Song 3 | "Get This Money" |  |  |  |
|  | Song 4 | "Somebody's Girl" |  |  | screens down Exit upstage L&R |
|  |  |  |  |  |  |

|  | Jay-Z |  |  |  |  |
|---|---|---|---|---|---|
| Set 2 |  |  |  |  | Four (4) Songs |
|  |  | TONE INTRO |  |  |  |
|  | Song 1 | "Godfather Intro/ PSA" |  |  | CHAIR GAG |
|  | Song 2 | "Jigga" |  |  | Pyro Hit Gas on HOVA |
|  | Song 3 | "99 Problems" |  |  |  |
|  | Song 4 | "Bonnie and Clyde" Intro/ "Crazy In Love" Verse |  |  |  |
|  | Song 5 | "You Don't Know" |  |  | Muliple Gas Pyro Shots |
|  |  |  |  |  | ** Keep Cameras out of the way |

|  | R KELLY |  |  |  |  |
|---|---|---|---|---|---|
| Set 3 |  |  |  |  |  |
|  |  |  |  |  |  |
|  | Song 1 | My Mind's Telling Me No... (acapella ) |  |  | Gerb/Pyro w fall |
|  | Song 2 | "Ignition-RMX" |  |  |  |
|  | Song 3 | We Thug'n  (FROM DVD!!) |  |  | (cue:"let me hear you scream..") |
|  | Song 4 | Body's Callin |  |  |  |
|  | Song 5 | Womens Fed Up |  |  |  |
|  | Song 6 | Down Low / RMX |  |  |  |
|  | Song 7 | Sex in The Kitchen (acapella) |  |  |  |
|  | Song 8 | Gtr: Interlude |  |  |  |
|  | Song 9 | Gtr: Feelin' On Your Booty |  |  |  |

**EXHIBIT E**

SCC000003