1   BROWNE GEORGE ROSS LLP
    Peter W. Ross (State Bar No. 109741)
2     pross@bgrfirm.com
    Keith J. Wesley (State Bar No. 229276)
3     kwesley@bgrfirm.com
    Christina J. Johnson (State Bar No. 228869)
4     cjohnson@bgrfirm.com
    2121 Avenue of the Stars, Suite 2400
5   Los Angeles, California 90067
    Telephone: (310) 274-7100
6   Facsimile: (310) 275-5697

7   Attorneys for Plaintiff
    Osama Ahmed Fahmy
8

9                UNITED STATES DISTRICT COURT

10      CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

11  | Osama Ahmed Fahmy, an individual, | Case No. 07-CV-05715 CAS (PJWx) |

12  | Plaintiff, | The Hon. Christina A. Snyder |

13  | vs. | **PLAINTIFF'S REPLY BRIEF IN SUPPORT OF MOTION TO COMPEL FURTHER DISCOVERY RESPONSES** |

14  Jay-Z (aka Shawn Carter), Timothy
    Mosely, Kyambo Joshua, Rob Bourdon,
15  Brad Delson, Mike Shinoda, Dave
    Farrell, Joseph Hahn, Chester
16  Bennington, Big Bad Mr. Hahn Music,
    Chesterchaz Publishing, EMI
17  Blackwood Music, Inc., EMI Music
    Publishing Ltd., Kenji Kobayashi
18  Music, Lil Lulu Publishing, Machine
    Shop Recordings, LLC, Marcy Projects
19  Productions II, Inc., MTV Networks
    Enterprises Inc., Nondisclosure
20  Agreement Music, Paramount Home
    Entertainment, Inc., Paramount Pictures
21  Corporation, Radical Media, Rob
    Bourdon Music, Roc-A-Fella Records,
22  LLC, Timbaland Productions, Inc.,
    UMG Recordings, Inc., Universal
23  Music and Video Distribution, Inc., and
    Warner Music Inc.,
24
           Defendants.
25

**[Declaration of Keith J. Wesley filed concurrently herewith]**

[Assigned to Magistrate Judge Patrick J. Walsh]

Date:    November 24, 2014
Time:    2:00 p.m.
Ctrm:   3 [Telephonic Hearing]

Pretrial Conference:
       April 27, 2015, at 11:00 a.m.
Jury Trial Date:
       May 12, 2015, at 9:30 a.m.

26

27

28

486797.1

## **TABLE OF CONTENTS**

                                                                                              **Page**

I.  INTRODUCTION. ...................................................................................1

II. ARGUMENT. .......................................................................................1

    A.  Issue 1:  Defendants' Revenue from Concerts Where *Big Pimpin'* Was Performed. ...........................................................1

        1.  Defendant Jay-Z. ...........................................................1

            a.  Proof Of A Causal Nexus Is Not A Prerequisite For *Discovery* Of Concert Revenues.............................2

            b.  Even If Some Showing Of A Nexus Is Required For Discovery, The District Court Correctly Found That Plaintiff Has Made Such A Showing.................5

                (i)  Jay-Z Plays *Big Pimpin* At The Vast Majority, If Not All, Of His Concerts. ................6

                (ii)  Fans Purchase Concert Tickets Expecting To Hear *Big Pimpin* At Those Concerts. ......................6

                (iii)  The Success Of *Big Pimpin* Increased Concert Revenue By Boosting Jay-Z's Fame. .........8

            c.  Jay-Z's Position Is Contrary To Prior Court Orders. .........8

            d.  Plaintiff Has Diligently Pursued Discovery Of Concert Revenues. ..............................................9

            e.  Jay-Z's Burden Of Responding Does Not Excuse Compliance. ................................................ 11

        2.  The Remaining Defendants........................................... 11

    B.  Issue 2:  License Agreements for Samples of Other Musical Works Used by Jay-Z and Timbaland............................... 12

        1.  The Agreements are Relevant. ..................................... 12

        2.  No Undue Burden Has Been Shown............................. 14

        3.  The Request for License Agreements Was Timely .................. 15

    C.  Issue 3:  The Original Recordings of *Big Pimpin* (Including The Multi-Track Version).................................................... 15

    D.  Issue 4:  Interrogatory Responses........................................ 17

# TABLE OF CONTENTS
## (cont'd)

Page

1. Plaintiff Should Be Permitted to Exceed 25 Interrogatories Because The Information Sought is Not Easily Obtainable Through Less Burdensome Means.............................................. 17

2. In Responding to Plaintiff's Interrogatories, Defendants Should Not Be Allowed to Simply Refer to Documents Because the Relative Burdens Are Not Equal. .......................... 19

E. The Court Should Impose Sanctions .................................................... 19

III. CONCLUSION............................................................................... 21

# TABLE OF AUTHORITIES

**Page(s)**

## FEDERAL CASES

*Beinin v. Center for The Study of Popular Culture,*
2006 WL 4547171 (N.D. Cal. 2006).................................................3, 14

*Beinin v. Ctr. for Study of Popular Culture,*
No. C06-2298JW(RS), 2007 WL 832962 (N.D. Cal. Mar. 16, 2007) ....................14

*Burns v. Imagine Films Entertainment, Inc.,*
164 F.R.D. 589 (W.D.N.Y. 1996) .................................................3, 8

*Dash v. Mayweather,*
731 F.3d 303 (4th Cir. 2013)....................................................13

*Embry v. Acer America Corp.,*
2011 WL 250397 (N.D. Cal. 2011)..................................................2

*Frank Music Corp. v. Metro-Goldwyn-Mayer, Inc.,*
772 F.2d 505 (9th Cir. 1985)....................................................13

*Gaylord v. United States,*
678 F.3d 1339 (Fed. Cir. 2012)..................................................12

*In re Autohop Litig.,*
No. 12-CV-4155 LTS KNF, 2014 WL 5901220 (S.D.N.Y. Nov. 4, 2014)..............18

*In re Shopping Carts Antitrust Litig.,*
95 F.R.D. 299 (S.D.N.Y. 1982)..............................................17, 18, 19

*Oracle Corp. v. SAPA AG,*
765 F.3d 1081 (9th Cir. 2014)...............................................12, 14

*Shoen v. Shoen,*
5 F.3d 1289 (9th Cir. 1993).....................................................1

*Siegel v. Warner Bros. Entm't Inc.,*
No. CV04-08400-SGLRZX, 2009 WL 2014164 (C.D. Cal. July 8, 2009)..........13, 14

*Sinclair Refining Co. v. Jenkins Petroleum Process Co.,*
289 U.S. 689, 53 S.Ct. 736 - 739 (1933)..........................................2

*Systems America, Inc. v. Rockwell Software, Inc.,*
2007 WL 1593219 (N.D. Cal. 2007)............................................3, 4

-iii-

PLAINTIFF'S REPLY BRIEF IN SUPPORT OF MOTION TO COMPEL FURTHER DISCOVERY RESPONSES

# TABLE OF AUTHORITIES
## (cont'd)

**Page(s)**

*United States v. Bryan,*
  339 U.S. 323 (1950) ...........................................................................................1

*Urband & Lazar Music Pub., Inc. v. Carter,*
  2009 WL 799759 (E.D. La. 2009) ......................................................................6

## STATE STATUTES

Copyright Act...........................................................................................................5, 9

## RULES

Federal Rule of Civil Procedure
  § 1 .....................................................................................................................18
  § 33 .......................................................................................................17, 18, 19
  § 33(d) ..............................................................................................................19

Local Rule 37 ..........................................................................................................11

## I.     INTRODUCTION.

The "broad right of discovery is based on the general principle that litigants have a right to 'every man's evidence' . . . and that wide access to relevant facts serves the integrity and fairness of the judicial process by promoting the search for the truth." *Shoen v. Shoen*, 5 F.3d 1289, 1292 (9th Cir. 1993), quoting *United States v. Bryan*, 339 U.S. 323, 331 (1950).

In this copyright infringement case brought by an Egyptian national against some of the most prominent and wealthy entertainers and entertainment studios in the world, the defendants apparently believe they should not be treated like every other man who is a party in federal civil litigation.  They believe they have the right to block the plaintiff's access to their information at every turn.  Their goal in discovery is not to facilitate Plaintiff's "search for the truth", but to thwart it. Plaintiff therefore regretfully must return to the Court for assistance in obtaining information that is not just relevant, but central to his claims.

In addition, because of the defendants' pattern and practice of obstruction in the discovery process and because of the unreasonableness of their positions on the issues raised herein, Plaintiff also respectfully requests that the Court shift fees related to this motion.

## II.     ARGUMENT.

### A.     Issue 1:  Defendants' Revenue from Concerts Where *Big Pimpin'* Was Performed.

#### 1.     Defendant Jay-Z.

The law of this case is that Plaintiff is entitled to seek at trial profits from concerts wherein the allegedly infringing work, *Big Pimpin'*, was performed.  The District Court has ruled that the jury will decide whether those profits are "direct" or "indirect".  And, of course, the jury will ultimately decide whether Plaintiff is entitled to any profit at all.  However, the District Court has held that Plaintiff is entitled to present to the fact-finder his claim for a portion of defendants' concert

1  revenue and the amount thereof.  (Ex. B at 15, 16.)[1]

2      In light of the law of the case, Jay-Z's position that discovery related to his

3  concert revenue is "irrelevant" is frivolous.  His other objections are likewise

4  unfounded in fact and law.

5          a.      **Proof Of A Causal Nexus Is Not A Prerequisite For**

6                  ***Discovery* Of Concert Revenues.**

7      The highest court in the land has held that where a civil case has not been

8  bifurcated, a party is entitled to discovery regarding damages even if liability for

9  those damages has not been proved:

> There are times when a suit is triable in separate parts, one
> affecting the right or liability, and the other affecting the
> measure of recovery.  In suits of that order a discovery as
> to damages will commonly be postponed till the right or
> liability has been established[, but a] different situation is
> presented where the action is at law and is triable by judge
> and jury.  [T]he case according to common-law practice
> must be tried as a unit and not broken into parts.  In such
> circumstances damages may be proved with the aid of a
> discovery, if the complication of accounts or other
> practical impediments make it necessary that the evidence
> be sifted in advance.

16

17  *Sinclair Refining Co. v. Jenkins Petroleum Process Co.*, 289 U.S. 689, 696-697, 53

18  S.Ct. 736, 738 - 739 (1933).  *See also Embry v. Acer America Corp.*, 2011 WL

19  250397, 3 (N.D. Cal. 2011) (ordering production of damages discovery because,

20  "[i]nasmuch as damages discovery has not been bifurcated, Acer's objection as to

21  the claimed prematurity of the requested discovery is overruled.").

22      There is no exception to this standard framework of federal civil discovery in

23  copyright cases involving claims to the defendants' wrongful gain.  In such cases,

24  discovery on the amount of defendants' revenues and profits that has any reasonable

25  relation to the claimed infringement is required.  That is so even if the plaintiff has

26  not yet definitively proven a causal link between the infringement and revenue, and

27  ---
[1] All lettered exhibits are to Plaintiff's opening email brief.  All numbered exhibits
are to the Declaration of Keith Wesley, filed concurrently herewith.

28

1  even if the court is dubious of whether that link will ultimately be proved at trial.
2  The following cases are instructive:

3       o *Burns v. Imagine Films Entertainment, Inc.*, 164 F.R.D. 589, 592
4           (W.D.N.Y. 1996) (ordering discovery because "[a]s public association
5           of Backdraft with the Backdraft Attraction promoted or elevated the
6           public's interest in the Backdraft Attraction, some profits of the
7           Backdraft Attraction *may* be indirectly attributable to any infringement
8           of the Plaintiffs' screenplays, and the information requested in the
9           Discovery Request *may* be relevant in calculating the damages for any
10          infringement.) (emphasis added).

11      o *Beinin v. Center for The Study of Popular Culture*, 2006 WL 4547171,
12          at *3 (N.D. Cal. 2006) ("The Center argues that Beinen will not be able
13          to prove a sufficient nexus between the use of the photograph and other
14          revenues so as to permit recovery of such 'indirect profits.' The Center
15          may well ultimately be able to persuade the trial judge or a trier of fact
16          that issues of causation and speculation preclude recovery for some or
17          all of the 'indirect profits,' but that is a question that must be decided
18          on a complete factual record. As limited, these requests are reasonably
19          calculated to lead to the discovery of admissible evidence.")

20      o *Systems America, Inc. v. Rockwell Software, Inc.*, 2007 WL 1593219, at
21          *2 (N.D. Cal. 2007) ("Rockwell points to the fact that Systems
22          America must establish a 'causal link' between Rockwell's alleged
23          infringement and the sales of other non-infringing products before it
24          can recover any profits from those other sales. [But] Rockwell relies
25          on cases discussing the circumstances under which indirect profits are
26          *recoverable* at trial on a full record; such cases are only indirectly
27          relevant to the question of what is *discoverable*.") (emphasis in
28          original).

1    In fact, Jay-Z does not cite a single copyright case (or any other intellectual
2   property case) in which a party was denied discovery on the amount of the
3   defendant's wrongful gain because of a failure to prove a causal nexus between the
4   revenue and infringement.  Rather, Jay-Z's cited cases suffer from the same
5   shortcoming as the cases the defendant relied on in *Systems America* – they relate to
6   the evidentiary standards for proving *liability* for, rather than *discoverability* of,
7   damages.  (Jay-Z Opp. at 2-3.)  Indeed, Jay-Z refers repeatedly to the District
8   Court's December 2011 Order requiring a causal nexus between concert revenue
9   and *Big Pimpin.*  But the District Court described this nexus as a requirement for
10   shifting the burden of apportionment, not as a prerequisite to discovery of concert
11   revenue.  *E.g.*, Ex. B at 11 ("The Ninth Circuit has suggested that regardless of
12   whether profits are classified as direct or indirect, a party must first establish a
13   'causal nexus' between the infringement and the gross revenue before the burden
14   shifts to the infringer to apportion the profits.")  In fact, in that very same order, the
15   District Court expressly ordered Defendants to respond to discovery regarding
16   concert revenues.  (Ex. B at 17) ("defendants are directed to respond to discovery
17   requests that go to both the manner of advertising concerts as well as the revenues
18   derived therefrom.").  It seemingly goes without saying – although perhaps it must
19   be said in light of Jay-Z's objection – that the District Court would not have ordered
20   Defendants to respond to discovery regarding concert revenues had it believed such
21   discovery was wholly irrelevant.

22    The case law – as well as the law of this case – establishes that Plaintiff is
23   entitled to discovery regarding concert revenue, even if Plaintiff has not yet proved a
24   causal nexus between Jay-Z's infringement and that revenue.[2]

25

---

26   [2]  In fact, by categorically denying discovery on concert revenue, Jay-Z has not
27   only prohibited Plaintiff from quantifying that category of wrongful gain; he has
    also inhibited Plaintiff's ability to prove the "causal connection" between the
28   (footnote continued)

### b.   Even If Some Showing Of A Nexus Is Required For Discovery, The District Court Correctly Found That Plaintiff Has Made Such A Showing.

Even if Plaintiff is required to establish some minimal nexus between concert revenue and infringement before discovering the amount of that revenue, the District Court has correctly found that such a nexus has been established.  In opposition to Plaintiff's motion for partial summary judgment that concert revenues are recoverable, Defendants made the same argument they make here – that "Jay-Z does not directly profit from performing *Big Pimpin'* at his concerts, but that concertgoers purchase concert tickets for the 'experience' of the event as a whole." (Ex. B at 15.)  The District Court was "unpersuaded by this argument because there are material questions of fact whether Jay-Z directly profited from performances of *Big Pimpin.*"  (*Id.*)  The District Court also found that "there is a triable issue whether Jay-Z's concert revenues constitute direct profits from his infringing live performances of *Big Pimpin'* for purposes of the Copyright Act."  (Ex. B at 15-16.) The District Court's finding of "triable issues" on these matters establishes that a reasonable jury could find a causal nexus between concert revenues and infringement.  This constitutes more than adequate proof of a nexus to entitle Plaintiff simply to discovery on concert revenues.

Indeed, even though discovery has not yet closed (Plaintiff has, *inter alia*, outstanding subpoenas to concert promoters Live Nation and Roc Nation),[3] and even

---

infringement and the revenue.  For example, what if one of the contracts between Jay-Z and his promoter requires him to perform *Big Pimpin'*, or what if an agreement gives Jay-Z a bonus if he performs certain hits?  By drawing a line in the sand on "concert revenue discovery", Jay-Z seeks to do through discovery what he could not on the merits – i.e., get summary judgment on the issue of a disgorgement of a percentage of his concert revenue.

[3]   Those third parties are aware of the issues before this Court and have followed (footnote continued)

though Jay-Z is withholding discovery regarding concert revenues, an abundance of evidence from public sources connects Jay-Z's concert ticket sales to *Big Pimpin*, directly and indirectly.

> **(i)**   **Jay-Z Plays *Big Pimpin* At The Vast Majority, If Not All, Of His Concerts.**

Jay-Z submits with his brief a single set list from a single concert, and proclaims, based on that single set list, that "the set lists also establish conclusively that *Big Pimpin* was not performed at every concert." (Jay-Z Opp. at 5:21.) Jay-Z's reference to "lists" is false. There is a good reason Jay-Z only attached one set list to his brief. Every single one of the other 36 set lists Jay-Z produced in this case includes the song *Big Pimpin*! (Ex. 1 (SCC000001-63).) If Jay-Z's set list production is complete and accurate, it would mean that Jay-Z plays *Big Pimpin* at 97% of his concerts.[4] It is difficult to imagine more probative evidence of a causal nexus between a *Big Pimpin* and Jay-Z's concert revenue.

> **(ii)**   **Fans Purchase Concert Tickets Expecting To Hear *Big Pimpin* At Those Concerts.**

A nexus can also be established with proof that the public purchased a non-infringing work because the public expected that the work would be accompanied by an infringing one. *Urband & Lazar Music Pub., Inc. v. Carter*, 2009 WL 799759, at *1 (E.D. La. 2009) ("there was speculation as to whether the allegedly

---

Jay-Z's lead, refusing to produce any discovery related to concert revenue unless and until the Court rules on the issues raised herein.

[4]   In fact, there is reason to believe Jay-Z performed *Big Pimpin* in at least some of the concerts for the Jay-Z/R Kelly "Best of Both Worlds" Tour – i.e., the tour identified in the lone set list without *Big Pimpin*. (Ex. 9) ("Jay rocked the crowd with street goliaths like 'Give It to Me,' 'U Don't Know' and 'Big Pimpin,' …"). Thus, it is quite possible – particularly in light of Jay-Z's inability to recall a single concert wherein he did not perform *Big Pimpin* – that Jay-Z performed *Big Pimpin* at 100 percent of his shows during the relevant time period.

1 infringing song would appear on Carter's studio album 'Tha Carter III.' Ultimately,

2 it did not; however, plaintiff submits that it 'created a buzz' and free advertising for

3 Carter.").

4      The evidence establishes that *Big Pimpin* contributes to the success of Jay-Z's

5 concerts because fans expect to hear the song when they purchase tickets.  In

6 addition to the fact that the song is played at virtually every (if not every) one of

7 Jay-Z's concerts,  *Big Pimpin* is also used to promote those concerts.

8 Ticketmaster's Jay-Z webpage touts Jay-Z's album "Vol. 2 Life and Times of S.

9 Carter … with hits like 'Big Pimpin.'" (Ex. 2 (PL 00624).)  StubHub's Jay-Z

10 webpage describes a typical Jay-Z concert experience as follows:

> You have been waiting for months, if not years, for this
> night to come and finally as the lights lower you begin to
> see Jay Z making his way out onto the stage.  The crowd
> erupts in applause as the talented performer approaches the
> mic.  A hush falls aver the crowd as Jay Z thanks them and
> launches into a fan favorite like **Big Pimpin'**

14 (*Id.* (PL 00626) (emphasis added).)

15      In addition, media outlets create the expectation among the purchasing public

16 that they will hear *Big Pimpin* at Jay-Z's concerts.  For example, an article

17 describing this year's Magna Carter World Tour entitled "Jay-Z in Cleveland: What

18 to expect when the 'Magna Carter World Tour' comes to The Q Wednesday night"

19 states:

> While Jay-Z is sure to play more than a dozen songs from
> his latest album "Magna Carter Holy Grail" (and rightfully
> so), recent performances have featured a run of back-to-
> back songs that looks something like: "**Big Pimpin'**,"
> "N***a What, N***a Who (Originator 99)," "Dirt Off
> Your Shoulder" and "I Just Wanna Love You (Give It To
> 2 Me)."

24 (*Id.* (PL 00628)) (emphasis added).  A similar article titled "Six things to Know

25 About Beyonce and Jay Z's 'On The Run' Tour" states:

> Expect everything (literaly everything) from Jays "**Big
> Pimpin**" and "Coco Ford" to Yonce's "Love on Top" and
> "XO," as well as couple collabs like "Drunk in Love" and
> "Part II (On the Run)."

1   (*Id.* (PL 00630)) (emphasis added).

2           (iii)    **The Success Of *Big Pimpin* Increased Concert**

3                  **Revenue By Boosting Jay-Z's Fame.**

4           Causation can also be established with evidence that the success of an

5   infringing work established notoriety for the infringer that bolstered future profits

6   from non-infringing works.  *E.g.*, *Burns*, 164 F.R.D. at 592 ("Although the

7   Backdraft Attraction itself contains no infringing materials, the attraction would not

8   exist but for the success of the motion picture Backdraft[, a]s public association of

9   Backdraft with the Backdraft Attraction promoted or elevated the public's interest in

10  the Backdraft Attraction.")

11          *Big Pimpin* unquestionably played a critical role in creating Jay-Z's fame.  As

12  Plaintiff explained in his opening brief, *Big Pimpin* is the most commercially

13  successful song on one of Jay-Z's most successful albums.  It made Rolling Stone's

14  lists of "The 500 Greatest Songs of All Time" and "The 50 Greatest Hip-Hop Songs

15  of All Time," it ranked #1 on the U.S. Billboard Rhythmic Top 40, was selected for

16  Jay-Z's greatest hits album and documentary film.  As a 2012 biography of Jay-Z

17  explains, the song "vaulted [Jay-Z] into the pantheon of mainstream pop culture."

18  (Ex. 3 at 68.)  Jay-Z has himself described the song as a "gem," and explained that

19  when he released the song, "[i]t was [his] biggest single up to that point."  (Ex. 4 at

20  112.)  There is no question that *Big Pimpin* "promoted or elevated the public's

21  interest in" Jay-Z as a concert musician.  *Burns*, 164 F.R.D. at 592.

22          This and other evidence, including expert testimony that is not yet due to be

23  disclosed, proves that fans purchase tickets to Jay-Z's concerts hoping and expecting

24  to hear *Big Pimpin*.  It, at the bare minimum, establishes a sufficient nexus to entitle

25  Plaintiff to full discovery of Defendants' concert revenues.

26          c.     **Jay-Z's Position Is Contrary To Prior Court Orders.**

27          In December 2011, after finding triable issues regarding the causal nexus

28  between *Big Pimpin* and concert revenue, the District Court explicitly directed

Defendants "to respond to discovery requests that go to both the manner of advertising concerts as well as the revenues derived therefrom." (Ex. B at 17.) Jay-Z points out that he was still entitled to assert objections to Plaintiffs' discovery requests, but the specific objection Jay-Z is presently asserting – that concert revenue is irrelevant because it was not caused by Jay-Z's performance of *Big Pimpin* – is directly at odds with the Court's December 2011 Order, in which the Court was "unpersuaded" by that very same argument.

Jay-Z's position is also contrary to the District Court's refusal to bifurcate this case. The District Court ruled that the existence of a causal nexus between infringement and concert revenue will be an issue **for trial**. (Ex. B at 15, 16) ("there is a triable issue whether Jay-Z's concert revenues constitute direct profits from his infringing live performances of Big Pimpin' for purposes of the Copyright Act."). If Plaintiff is denied discovery of concert revenues until he proves causation at trial, the District Court will be forced to permit post-trial discovery on that issue and a second trial on damages. The District Court has already rejected such a schedule. (Ex. E at 10) ("evidence regarding the amount of defendants' profits that are attributable to the alleged infringement may be relevant to the jury's determination of a damages award, and therefore would be an appropriate subject of discovery prior to an adjudication of liability and damages.").

### d.   Plaintiff Has Diligently Pursued Discovery Of Concert Revenues.

Jay-Z suggests that Plaintiff has delayed pursuing discovery of concert revenues. (Jay-Z Opp. at 1:13-17.) Jay-Z is attempting to mislead the Court. Discovery in this case has been phased and periodically stayed over the past several years. Discovery has been open for all purposes only since August 2014. These scheduling issues, combined with Defendants' intransigence, has substantially restricted and delayed Plaintiff's ability to obtain this information. A brief summary of this history is as follows:

- August 31, 2007 – This case is filed.
- May 2008 – The Court phases discovery, limiting discovery to "chain of title" issues (discovery regarding concert revenues was prohibited). (Ex. 5 (Declaration of Edward Lear), ¶ 4.)
- August-December 2011 – Plaintiff moves for partial summary judgment regarding concert revenues; the Court finds triable issues and orders discovery of concert revenues. (Ex. B.)
- March 2012 – Plaintiff serves discovery seeking concert revenues.
- April 2012 – Defendants provide objection-only responses to discovery seeking concert revenues. During a settlement conference shortly thereafter, Judge Woehrle advised counsel not to move to compel further responses until after the parties' settlement negotiations. (Ex. 5 (Declaration of Edward Lear), ¶ 17-18.)
- December 2012 – The parties conclude no settlement will be reached.
- Early 2013 – Plaintiff renews his requests for concert revenues.
- April 2013 – Plaintiff moves for contempt based on Defendants' failure to comply with the December 2011 Order compelling discovery of concert revenues.
- June 2013 – The Court denies the motion for contempt and stays discovery related to concert revenues pending a motion for summary judgment based on laches. (Ex. F.)
- August 2013 - The Court grants summary judgment for Defendants based on laches.
- December 2013 – The Court clarifies the summary judgment ruling, and limits discovery solely to the issue of willful infringement.
- August 2014 – The Court vacates its summary judgment ruling on laches and denies Defendants' request for bifurcation; reopens discovery for all purposes. (Ex. E.)

As soon as discovery was fully reopened, Plaintiff renewed his request for damages discovery, including information relating to concert revenues.  (Ex. 6 (August 29, 2014 letter from K. Wesley to R. Frackman).)  Plaintiff repeated those requests, over and over again, during the following months.  Jay-Z simply ignored Plaintiff until he formally invoked Local Rule 37.  Only then did Jay-Z finally reveal that he had no intention of producing any information regarding concert revenue other than basic royalty information.

Plaintiff has filed this motion as expeditiously as possible under the circumstances.  In any event, there is no dispute that discovery remains open and this motion is timely.

### e. Jay-Z's Burden Of Responding Does Not Excuse Compliance.

Jay-Z's concert revenues may well be the largest component of Plaintiff's damages, and there is no way to prove those damages without the evidence sought herein.  The information is critically important and irreplaceable.

On the other hand, Jay-Z submits a vague declaration from his accountant, claiming that it would take "hundreds of person hours of work" to gather this information.  But even taking his biased, boilerplate assertion at face value, the burden he is describing is not "undue" given the value of this case, the importance of the information, and the years defendants have already had to begin compiling the information.  There are at least ten lawyers from three law firms representing more than a dozen parties, and there are hundreds of millions of dollars at issue. Defendants have known since December 2011 that it is probable they would have to produce information related to concert revenue.  They could have started compiling those materials over the last three years.  There is no legitimate justification for Jay-Z's blanket refusal to produce information regarding concert revenues.

### 2. The Remaining Defendants.

The defendants other than Jay-Z assert that there is nothing to compel from

1  their files because they have no information.  It is hard to fathom that not one of the

2  other defendants has a single sheet of paper related to revenue from Jay-Z shows.

3  Of particular note, two of the defendants – Universal Music and Roc-A-Fella

4  Records – represented Jay-Z before he signed his deal with Live Nation in 2008.

5  Did they truly discard every piece of evidence related to Jay-Z's concert revenue?

6  And, if so, why, considering this case was filed in 2007 and thus a document hold

7  should have been in place?

8       Regardless, as it stands now, the remaining defendants have not stated, in a

9  formal discovery response or declaration, that they have conducted diligent search

10  and no responsive documents exist in their possession, custody or control.  They

11  should be compelled to do so.

12  **B.**     **Issue 2:  License Agreements for Samples of Other Musical Works**

13          **Used by Jay-Z and Timbaland.**

14     **1.**     **The Agreements are Relevant.**

15       All parties – as well as the Ninth Circuit – agree that a reasonable royalty is a

16  valid measure of actual damages in a copyright case.  *Oracle Corp. v. SAPA AG*,

17  765 F.3d 1081, 1093 (9th Cir. 2014).  All parties – as well as the Ninth Circuit –

18  agree that comparable "benchmark" licenses – i.e., license agreements between a

19  party and a third-party involving a similar set of facts – are relevant to a calculation

20  of a reasonable royalty.  *Id.*; see also *Gaylord v. United States*, 678 F.3d 1339, 1343-

21  45 (Fed. Cir. 2012) (in determining hypothetical fair market value for copyright

22  license, lower court erred by *only* looking at license agreements that infringing

23  postal service had entered into with third party artists for use of their artwork on

24  stamps and should also have considered other license agreements into by artist with

25  other licensees).

26       The disagreement between the parties is over who gets to determine whether

27  the third-party licenses are "comparable" – (a) the defendants themselves (through

28  their own "in camera" inspection during discovery), or (b) the court as an

evidentiary matter either before or during trial (and after plaintiff has been given a fair opportunity to inspect and evaluate that evidence).  In other words, the parties' respective positions are as follows:

- Plaintiff submits that he is entitled to discover other licenses entered into between Jay-Z and Timbaland wherein those defendants paid a composer to sample the composer's work.  Plaintiff can then evaluate whether any or all of those licenses are "comparable" to the circumstances herein.  And Plaintiff can attempt to convince the Court or trier of fact that the license agreements are comparable and can be used as a basis for calculating a reasonable royalty in this case.

- Defendants contend that they have determined that none of the sampling licenses that Plaintiff seeks are "comparable."  Therefore, none of them are relevant or discoverable.[5]

Defendants once again confuse admissibility with discoverability.  Those two concepts are distinct and different.  Defendants' own case law is consistent with this distinction.  See *Frank Music Corp. v. Metro-Goldwyn-Mayer, Inc.*, 772 F.2d 505, 514 (9th Cir. 1985) (court merely rejected, as a matter of evidence, the inclusion of "evidence of royalties other Broadway shows had earned in Las Vegas productions.")[6]; see also *Dash v. Mayweather*, 731 F.3d 303, 319 (4th Cir. 2013); *Siegel v. Warner Bros. Entm't Inc.*, No. CV04-08400-SGLRZX, 2009 WL 2014164,

---

[5] How defendants reached that conclusion despite not yet having even looked for the requested agreements is not explained.

[6] In *Frank Music*, the plaintiff presumably sought to introduce evidence of random other Broadway shows used in random other Las Vegas productions by random parties in random other contexts, which could have entailed all conceivable manner and scope of use and infringement.  Here, Plaintiff seeks only license agreements for sampling of musical works by two Defendants to the case and would be naturally limited primarily to one genre of music.

1  at *6 (C.D. Cal. July 8, 2009).

2  In fact, one of defendants' cases expressly supports Plaintiff's position herein,

3  noting that third-party license agreements could well be relevant to the reasonable

4  license value calculation under the liberal discoverability standard. *Beinin v. Ctr.*

5  *for Study of Popular Culture*, No. C06-2298JW(RS), 2007 WL 832962, at *5 (N.D.

6  Cal. Mar. 16, 2007). The *Beinin* court rejected the relevance of a third party license

7  agreement because only one was known to exist and there was no evidence to

8  suggest that it (or theoretical others) would be similar in context to the matter at

9  issue (*id.*), unlike here where the agreements sought are, by nature of the artistic

10  works of the two individual Defendants at issue, largely within one specific genre.

11  Though the songs sampled in any one agreement may be different in kind

12  from *Khosara Khosara*, having additional information about prior licenses would

13  help prevent "undue speculation" about what the *Khosara Khosara* reasonable

14  license amount could have been. *Oracle Corp.*, 765 F.3d at 1093. Further, even if

15  the amount paid for one sample could by itself be deemed irrelevant in the abstract

16  (which would be unlikely), the evidence would nevertheless be discoverable

17  because, in the context of other license agreements, each would add to the

18  understanding of what a reasonable license value for *Khosara Khosara* might have

19  been. In other words, each agreement would be likely to lead to the discovery of

20  admissible evidence because each would contribute to the overall understanding of

21  the reasonable license amount. *See, e.g., Siegel*, 2009 WL 2014164, at *6

22  (recognizing that a more complete record of agreements could allow for a more

23  reasonable license value determination).

24  In short, the license agreements are relevant.

25  ## 2.  No Undue Burden Has Been Shown

26  The defendants other than Jay-Z do not submit any evidence of an undue

27  burden. They say that Jay-Z "likely sampled hundreds of songs," and "Timbaland

28  has likely sampled hundreds of prior works." (Dkt. 431 at 10:5-10.) Their

1  equivocal statements imply they have no idea how many, if any, responsive

2  licensing agreements exist.  Those defendants have not demonstrated an undue

3  burden.

4       Jay-Z attempts to submit evidence of an undue burden through the declaration

5  of his accountant.  His attempt is a ruse.  On the one hand, his accountant says that it

6  would take "hundreds of person hours" to search for the agreements.  On the other

7  hand, he says he "h[as] no idea whether Mr. Carter has any of the license

8  agreements Plaintiff seeks in his possession, custody,  and control. . ." (Dkt. 432,

9  Bakhai Decl., ¶9.)  In other words, Jay-Z may not have any agreements, but if he

10  were to have any, Jay-Z's accountant is sure it would take hundreds of hours to

11  produce them.  Merely stating the proposition exposes its worthlessness.

12       Defendants have failed to demonstrate an undue burden.

**3.      The Request for License Agreements Was Timely**

14       There has been no assertion whatsoever (nor could there be) that the requests

15  at issue were made outside the applicable discovery period, which is currently set to

16  end on November 28, 2014.  More importantly, Plaintiff did not even have the

17  opportunity to bring his request sooner.  As referenced *supra*, discovery was not

18  opened for all purposes until August of this year. *A month later*, on September 9,

19  2014, Plaintiff served the Eighth Set of Requests for Production of Documents.

20  Viewed in this light, Plaintiff's request for these crucial documents is hardly at a

21  "late hour", and there is absolutely no reason why he should be penalized or have

22  aspersions cast against him for having brought these requests when he did.

**C.      Issue 3:  The Original Recordings of *Big Pimpin* (Including The Multi-Track Version).**

26       It simply defies logic that Defendants have failed to produce a single multi-

27  track recording of *Big Pimpin* or *Big Pimpin/Papercut*.  Regardless of any attorney's

28  lack of familiarity with the term "multi-track recording," as previously set forth by

1   Plaintiff (Mot. at §3, ¶1), this is a common term of art used within the music

2   industry and familiar to any professional in that field.  Assuming *arguendo* that

3   Defendants' counsel was unfamiliar with the term, certainly their clients (inarguably

4   some of the most sophisticated music industry companies and individuals in the

5   world) would be well aware of what was being sought in this request.  (Indeed, Jay-

6   Z readily understood the term at his deposition, as noted in Plaintiff's Motion.)

7   Moreover, it is naïve to believe that *no* multi-track recording of one of the 500

8   greatest songs of all-time is within the possession or control of at least one of the

9   Defendants.  How else, for example, could remixes, "mash-ups," and other

10  derivative works of the song be made?  Those recordings – and any other initial

11  recordings that led to the creation of *Big Pimpin* or any of the derivative works in

12  issue – should be ordered to be produced.

13          Finally, in response to Defendants' complaints about the clarity and scope of

14  Plaintiff's requests for materials related to the creation of *Big Pimpin*, it should be

15  noted that during the meet and confer process, Plaintiff's counsel clarified orally,

16  and memorialized in correspondence, that his request included not just the one,

17  original multi-track recording of *Big Pimpin* and/or *Big Pimpin/Papercut*, but any

18  hard copies or digital copies thereof that would serve the same purpose of allowing

19  Plaintiff to essentially isolate and manipulate different parts of the song in order to,

20  *inter alia*, establish infringement and/or demonstrate apportionment.  (Ex. 8 (e-mail

21  correspondence from Jordan Kushner to Defendants' counsel dated November 11,

22  2014).)  And contrary to the assertion of the "Certain Defendants" (*see* Certain

23  Defendants' Opp. at 6:23-7:6), the multi-track recording of *Big Pimpin'/Papercut*

24  was requested in Plaintiff's opening email brief (defining "*Big Pimpin*" to include

25  "*Big Pimpin/Papercut*") and in correspondence of October 28, 2014 by Plaintiff's

26  counsel to Defendants' counsel, which correspondence was attached to Plaintiff's

27  Motion and acknowledged by Defendant Jay-Z (*see* Jay-Z Opp. at 13:23-25).

28

**D.     Issue 4:  Interrogatory Responses.**

As set forth in Plaintiff's Motion (*see* Mot. at §4), the balancing of burdens requires that Plaintiff should be allowed to exceed the presumptive 25 interrogatory maximum, and Defendants should be required to provide substantive responses to Interrogatory Nos. 26 through 29.

**1.     Plaintiff Should Be Permitted to Exceed 25 Interrogatories Because The Information Sought is Not Easily Obtainable Through Less Burdensome Means.[7]**

Defendant Jay-Z contends that Plaintiff's interrogatories may not exceed the presumptive statutory maximum under Federal Rule of Civil Procedure 33 because, *inter alia*, his accountant Kashyap Bahkai's deposition may be taken (although such deposition has not yet been confirmed nor scheduled).  (*See* Jay-Z Opp. at 16:14-23.)

Notwithstanding that the responding party should not dictate to the propounding party which discovery tool must be utilized, Plaintiff had good reason to utilize interrogatories.  The subject of the interrogatories – i.e., financial data – is information that only a witness with a photographic memory could recite at deposition.

And even if Mr. Bakhai could provide the requested information at deposition, an interrogatory binds a party; testimony by the party's accountant does not.  Plaintiff is entitled to Jay-Z's position on the questions, not simply his accountant's position.

Moreover, even if Mr. Bakhai could provide some of the information sought by the interrogatories at deposition, use of the interrogatories will streamline his deposition, which is a positive for all involved.  *See, e.g., In re Shopping Carts*

---

[7] The defendants other than Jay-Z do not object on the basis of the number of interrogatories.

1 | *Antitrust Litig.,* 95 F.R.D. 299, 307-08 (S.D.N.Y. 1982).

2 |       Furthermore, Plaintiff does not even know whether Mr. Bahkai is in fact the

3 | proper person to answer the necessary questions.  During his deposition, Jay-Z

4 | relayed that individuals in addition to Mr. Bahkai are well-informed and intimately

5 | involved with his financial affairs.  Perhaps other individuals would actually be

6 | better positioned to speak to these issues, but Plaintiff may not be able to determine

7 | that until after conducting the full deposition of Mr. Bahkai, and possibly

8 | unwittingly squandering his opportunity to ask other deponents the necessary

9 | questions during their depositions.  (*Id.*)  The burden on Jay-Z is thus less onerous

10 | than on Plaintiff to obtain this information because Jay-Z is uniquely situated to

11 | determine at his leisure the most appropriate individual to weigh in on these issues,

12 | and to eliminate unnecessary inefficiency by compiling the information himself with

13 | that individual's assistance.  Because less burdensome means of obtaining the

14 | information are not available to Plaintiff as they are to Jay-Z, Federal Rule of Civil

15 | Procedure 33 does not prohibit Plaintiff from seeking substantive responses to these

16 | interrogatories.

17 |       Finally, to the extent that Plaintiff did not technically comply with seeking

18 | leave of court (*see* Jay-Z Opp. at 15:20-24) to serve interrogatories in excess of 25

19 | (which, in any event, was done inadvertently), Plaintiff is clearly doing so now

20 | through his Motion.  If, however, the Court were to treat this Motion as simply an

21 | initial request for leave to serve additional interrogatories, and such leave was

22 | granted, the identical interrogatories would simply be re-served and the parties

23 | would likely wind up in the same position several weeks from now, wasting time

24 | and resources in the process.  See *In re Autohop Litig.*, No. 12-CV-4155 LTS KNF,

25 | 2014 WL 5901220, at *4 (S.D.N.Y. Nov. 4, 2014) (notwithstanding procedural

26 | deficiencies, court analyzed motion on the merits to save time and resources in

27 | accordance with Rule 1 of the Federal Rule of Civil Procedure).

28 |

## 2. **In Responding to Plaintiff's Interrogatories, Defendants Should Not Be Allowed to Simply Refer to Documents Because the Relative Burdens Are Not Equal.**

As set forth in his Motion, Plaintiff cannot reliably deduce the requested information simply by looking at the applicable documents. (*See* Mot. at §4, ¶5.) To be sure, Plaintiff can speculate about what certain entries in the documents mean (although others are simply indecipherable).  Therefore, a review of the documents is simply not equivalent to getting clear and complete interrogatory responses. Moreover, interpreting the documents to glean the necessary information should not present an equivalent, onerous burden for the defendants' personnel who created and/or maintain those documents.

The interrogatories are not premature and need not be part of expert testimony because there are undoubtedly lay people who work at certain Defendant companies, are familiar with the terminology and financial figures at issue, and who could easily respond substantively to Plaintiff's inquiries.  In contrast, if Plaintiff must scour the documents and attempt to identify the key points, he nonetheless may be forced to conduct additional, lengthier, and/or more complex depositions in order to receive sufficient information and guidance, an outcome disfavored by courts. *See, e.g., Shopping Carts Antitrust Litig., supra,* 95 F.R.D. at 307-08.

Because the burdens are not equal, under Rule 33 Defendants are not justified in merely referencing documents in their interrogatory responses. (*See* Mot. at §4, ¶5; Fed. R. Civ. P. §33(d).)

### E. **The Court Should Impose Sanctions**

Enough is enough.  In the last year alone:

- Defendants forced Plaintiff to file a motion simply to take Defendants' depositions.

- Jay-Z refused to appear for deposition anywhere except his own office, until this Court intervened.

1  • Jay-Z's counsel practically demanded that the videotape from his
2    deposition be stored at Fort Knox.
3  • Defendants feigned ignorance of the term "multi-track recording".
4  • Defendants refused to produce any information about an issue – *i.e.*,
5    concert revenue – that the District Court held is going to be tried in a
6    few months.
7  • Defendants represented to this Court that <u>Plaintiff</u> was dilatory in
8    requesting discovery, but neglected to mention that discovery on the
9    issues herein had been stayed until three months ago (and they had
10   aggressively invoked the protections of that stay at every turn).
11 • Defendants submitted arguments and a declaration about the undue
12   burden of finding documents that they're not sure even exist.
13 If this is substantially justified and harmless discovery conduct, then the
14 search for the truth contemplated by the federal civil discovery rules has been turned
15 into a farcical game that only millionaires and large corporations can afford to play.
16 This Court no doubt loathes unnecessary discovery disputes.  So does
17 Plaintiff and his counsel.  After seven years of litigation, myriad motions, and
18 various stays and phases, Plaintiff would like nothing more than to get the
19 information to which he is entitled and finally get his day in court.  Unfortunately,
20 Defendants' hard-line, unreasonable discovery positions exponentially increase the
21 cost and burden on Plaintiff and this Court.
22 Orders compelling discovery have not altered Defendants' pattern and
23 practice.  Perhaps a monetary sanction will.  Plaintiff therefore respectfully requests
24 monetary sanctions in an amount of $9900 or an alternative amount deemed
25 reasonable by the Court.  (Wesley Decl., ¶10) (Plaintiff's counsel expended more
26 than 22 hours briefing the issues herein at an hourly rate of $450 per hour).
27
28

486797.1

-20-

III.   **CONCLUSION**

For the above reasons, Plaintiff respectfully requests that his motion be granted.

Dated:  November 20, 2014                BROWNE GEORGE ROSS LLP
                                         Peter W. Ross
                                         Keith J. Wesley
                                         Christina J. Johnson


                                         By: _____ s/ Keith J. Wesley _____
                                                     Keith J. Wesley
                                         Attorneys for Plaintiff Osama Ahmed Fahmy

# PROOF OF SERVICE

**STATE OF CALIFORNIA, COUNTY OF LOS ANGELES**

At the time of service, I was over 18 years of age and not a party to this action. I am employed in the County of Los Angeles, State of California. My business address is 2121 Avenue of the Stars, Suite 2400, Los Angeles, CA 90067.

On November 21, 2014, I served true copies of the following document(s) described as **PLAINTIFF'S REPLY BRIEF IN SUPPORT OF MOTION TO COMPEL FURTHER DISCOVERY RESPONSES** on the interested parties in this action as follows:

**SEE ATTACHED SERVICE LIST**

**BY E-MAIL OR ELECTRONIC TRANSMISSION:** On November 21, 2014 I caused a copy of the document(s) to be sent from e-mail address dtorosyan@bgrfirm.com to the persons at the e-mail addresses listed in the Service List. I sent this transmission at _____ a.m./p.m.. I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on November 21, 2014, at Los Angeles, California.

Diane Torosyan

486797.1

**SERVICE LIST**

*Osama Ahmed Fahmy v. Jay-Z (aka Shawn Carter), et al.*

**United States District Court, Western Division - Case No. 2:07-CV-05715 CAS (PJWx)**

| | |
|---|---|
| Linda M. Burrow<br>CALDWELL LESLIE<br>725 South Figueroa Street, 31st Floor<br>Los Angeles, California 90017<br>Tel.: (213)629-9040<br>Fax: (213)629-9022<br>Email: burrow@caldwell-leslie.com | Attorneys for Defendant<br>Jay-Z (aka Shawn Carter) |
| Russell J. Frackman, Esq.<br>Alexa L. Lewis, Esq.<br>MITCHELL SILBERBERG & KNUPP LLP<br>11377 West Olympic Boulevard<br>Los Angeles, California 90064-1683<br>Tel.: (310)312-2000<br>Fax: (310)312-3100<br>Email:    rjf@msk.com<br>            all@msk.com | Attorneys for Defendants Timothy Mosely, Kyambo Joshua, Rob Bourdon, Brad Delson, Mike Shinoda, Dave Farrell, Joseph Hahn, Chester Bennington, Big Bad Mr. Hahn Music, Chesterchaz Publishing, EMI Blackwood Music, Inc., EMI Music Publishing Ltd., Kenji Kobayashi Music, Lil Lulu Publishing, Machine Shop Recordings, LLC, Marcy Projects Productions II, Inc., MTV Networks Enterprises Inc., Nondisclosure Agreement Music, Paramount Home Entertainment, Inc., Paramount Pictures Corporation, Radical Media, Rob Bourdon Music, Roc-A-Fella Records, LLC, Timbaland Productions, Inc., UMG Recordings, Inc., Universal Music and Video Distribution, Inc., and Warner Music Inc. |

486797.1

PLAINTIFF'S REPLY BRIEF IN SUPPORT OF MOTION TO COMPEL FURTHER DISCOVERY RESPONSES