CALDWELL LESLIE & PROCTOR, PC
LINDA M. BURROW, State Bar No. 194668
  burrow@caldwell-leslie.com
ERIC S. PETTIT, State Bar No. 234657
  pettit@caldwell-leslie.com
725 South Figueroa Street, 31st Floor
Los Angeles, California 90017-5524
Telephone: (213) 629-9040
Facsimile: (213) 629-9022

Attorneys for Defendant
SHAWN C. CARTER (pka Jay Z)

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| OSAMA AHMED FAHMY, an individual,<br><br>              Plaintiff,<br><br>       v.<br><br>JAY-Z (aka SHAWN CARTER), TIMOTHY MOSELY, KYAMBO JOSHUA, BOB BOURDON, BRAD DELSON, MIKE SHINODA, DAVE FARRELL, JOSEPH HAHN, CHESTER BENNINGTON, BIG BAD MR. HAHN MUSIC, CHESTERCHAZ PUBLISHING, EMI BLACKWOOD MUSIC, INC., EMI MUSIC PUBLISHING LTD., KENJI KOBAYASHI MUSIC, LIL LULU PUBLISHING, MACHINE SHOP RECORDINGS, LLC, MARCY PROJECTS PRODUCTIONS II, INC., MTV NETWORKS ENTERPRISES INC., NONDISCLOSURE AGREEMENT MUSIC, PARAMOUNT HOME ENTERTAINMENT, INC., PARAMOUNT PICTURES CORPORATION, RADICAL MEDIA, ROB BOURDON MUSIC, ROC-A-FELLA RECORDS, LLC, TIMBALAND PRODUCTIONS, INC., UMG RECORDINGS, INC., UNIVERSAL MUSIC AND VIDEO DISTRIBUTION, INC., AND WARNER MUSIC INC.,<br><br>              Defendants. | Case No. 07-CV-05715 CAS (PJWx)<br><br>The Honorable Christina A. Snyder<br><br>**DEFENDANT SHAWN C. CARTER (PKA JAY Z)'S NOTICE OF MOTION AND MOTION FOR REVIEW OF NON-DISPOSITIVE RULING OF MAGISTRATE UNDER FRCP 72(a) AND L.R. 72-2; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Date:    January 12, 2015<br>Time:    11:00 a.m.<br>Ctrm:    5<br><br><br>Discovery Cutoff:  Nov. 28, 2014<br>Trial Date:        May 12, 2015 |

CALDWELL
LESLIE &
PROCTOR

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that on January 12, 2015 at 11:00 a.m. in Courtroom 5 of the Court captioned above, located at 312 North Spring Street, Los Angeles, California 90012, before the Honorable Christina A. Snyder, Defendant Shawn C. Carter (professionally known as Jay Z), by and through his attorneys of record, hereby moves pursuant to Federal Rule of Civil Procedure 72(a) and Local Rule 72-2.1 for review of an order filed by the Honorable Magistrate Judge Patrick J. Walsh on November 24, 2014 and served on November 25, 2014 requiring Mr. Carter to disclose concert revenue information to Plaintiff no later than December 19, 2014.  ECF No. 436 (the "Magistrate's Order").  Pursuant to this Court's order approving the parties' stipulation, the Magistrate's Order has been stayed pending the adjudication of this motion.  *See* ECF No. 438.

Mr. Carter brings this motion on the ground that Magistrate based his order on an incorrect interpretation of this Court's December 9, 2011 Order (ECF No. 309) (the "December 2011 Order").  As set forth in the December 2011 Order, Plaintiff is not entitled to *any* concert profits unless he can "first establish a 'causal nexus' between the infringement" and Mr. Carter's profits (if any) from his concert appearances.  *See* December 2011 Order at 11 (citing *Polar Bear Prods., Inc. v. Timex Corp.*, 384 F.3d 700, 711 n.7 (9th Cir. 2004)).  Plaintiff has failed entirely to supply any evidence of such a "causal nexus," and thus has failed to meet his burden to establish the threshold level of relevancy Federal Rule of Civil Procedure 26(b)(1) requires.  As a result, Plaintiff is not entitled to Mr. Carter's highly sensitive and confidential concert revenue information, and the Magistrate's Order compelling the production of such information was in error.

This Motion is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the pleadings and papers on file in this action, any oral argument presented at a hearing on this Motion and this Court's order approving the parties' Joint Stipulation Re: Briefing And Hearing Schedule

CALDWELL
LESLIE &
PROCTOR

**DEFENDANT CARTER'S MOTION FOR REVIEW OF MAGISTRATE'S ORDER**

1    On Motion For Review Of Magistrate Order And Extension Of Expert Deadlines.

2    *See* ECF No. 438.

3        This Motion is made following a conference of counsel pursuant to Local

4    Rule 7-3 conducted on December 2, 2014.

5

6    DATED:  December 8, 2014            Respectfully submitted,

7                                       CALDWELL LESLIE & PROCTOR, PC

8                                       LINDA M. BURROW

9                                       ERIC S. PETTIT

10

11                                      By _____/s/_____

12                                         LINDA M. BURROW

13                                      Attorneys for Defendant SHAWN C. CARTER
                                        (professionally known as "JAY Z").

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ........................................................................................ 1

II.   PROCEDURAL BACKGROUND ............................................................. 3

      A.    This Court Denies Plaintiff's Concert Revenue Motion ....................... 3

      B.    Mr. Carter Produces Documents Reflecting His Revenues from
            Performances of Big Pimpin' ................................................................. 4

      C.    This Court Denies Plaintiff's Contempt Motion .................................... 4

      D.    This Court Did Not Address The Relevancy Or Discoverability
            Of Concert Revenue Information In Its Reconsideration Order ............. 5

      E.    Plaintiff Moves To Compel Concert Revenue Information ................... 6

      F.    The Magistrate Judge Grants Plaintiff's Motion To Compel
            Concert Revenue Information Based On An Erroneous Reading
            Of The December 2011 Order ................................................................. 7

III.  STANDARD OF REVIEW ........................................................................ 8

IV.   PLAINTIFF IS NOT ENTITLED TO FURTHER DISCOVERY ON
      CONCERT PROFITS ................................................................................ 9

      A.    Contrary To The Magistrate Judge's Order, The December 2011
            Order Does Not Compel The Production Of The Revenue
            Information Plaintiff Seeks ................................................................... 10

      B.    Plaintiff Fails To Meet His Burden To Establish The Relevance
            Of The Concert Information He Seeks .................................................. 12

            1.    Mr. Carter *Has* Produced Evidence of Royalties He
                  Receives In Connection With Live Performances of *Big
                  Pimpin'* ....................................................................................... 13

            2.    Plaintiff Fails to Meet His Burden to Show the Relevance
                  of Other Concert-Related Information ......................................... 13

                  (a)    Plaintiff Offers No Evidence of a "Causal Nexus"
                         Between "Khosara Khosara" and Mr. Carter's
                         Concert Revenues ............................................................... 13

                  (b)    Plaintiff Fails to Cite Any Authority Supporting His
                         Position ............................................................................... 16

      C.    The Undue Burden on Mr. Carter Far Outweighs any Minimal
            Relevance of the Requested Documents ............................................... 17

V.    CONCLUSION ........................................................................................ 20

1

## <u>TABLE OF AUTHORITIES</u>

2

3

**Page(s)**

4

<u>Cases</u>

5

*ABKCO Music, Inc. v. Harrisongs Music, Ltd.*,
    508 F.Supp. 798 (S.D.N.Y. 1981),
    *modified*, 722 F.2d 988 (2d Cir. 1983) ........................................................... 2, 13

6

7

*Beinin v. Center for The Study of Popular Culture*,
    No. C06-2298JWRS,
    2006 WL 4547171 (N.D. Cal. Oct. 31, 2006) ................................................ 16, 17

8

9

*Burns v. Imagine Films Entm't, Inc.*,
    164 F.R.D. 589 (W.D.N.Y. 1996) .......................................................................... 16

10

11

*Crispin v. Christian Audigier, Inc.*,
    717 F.Supp.2d 965 (C.D.Cal. 2010) ....................................................................... 8

12

13

*Dash v. Mayweather*,
    731 F.3d 303 (4th Cir. 2013) ........................................................................... 18, 20

14

15

*Ellis v. J.P. Morgan Chase & Co.*,
    No. 12-cv-03897-YGR (JCS),
    2014 WL 1510884 (N.D. Cal. Apr. 1, 2014)....................................................2, 9, 13

16

17

*Frank Music Corp. v. Metro-Goldwyn-Mayer, Inc.*,
    772 F.2d 505 (9th Cir. 1985) .................................................................................. 9

18

19

*Haines v. Liggett Group, Inc.*,
    975 F.2d 81 (3d Cir. 1992) ..................................................................................... 8

20

21

*Jarvis v. A&M Records*,
    827 F.Supp. 282 (D.N.J. 1993).............................................................................. 1

22

23

*Jarvis v. K2 Inc.*,
    486 F.3d 526 (9th Cir. 2007) .................................................................................. 9

24

25

*Mackie v. Reiser*,
    296 F.3d 909 (9th Cir. 2002) .........................................................................*passim*

26

27

28

*Mattel, Inc. v. MGA Entm't, Inc.*,
    No. CV 04-9049 DOC,
    2010 WL 3705864 (C.D. Cal. Sept. 2, 2010) ....................................... 17

*Med. Imaging Ctrs. of Am., Inc. v. Lichtenstein*,
    917 F.Supp. 717 (S.D.Cal. 1996) ......................................................... 8

*Petrella v. Metro-Goldwyn-Mayer, Inc.*,
    --- U.S. ---, 134 S.Ct. 1962 (2014) ..................................................... 5

*Polar Bear Prods., Inc. v. Timex Corp.*,
    384 F.3d 700 (9th Cir. 2004) .......................................................... 1, 11

*Rich v. Shrader*,
    No. 09-CV-0652-AJB(BGS),
    2013 WL 3710806 (S.D.Cal. July 11, 2013) ............................... 1, 9, 14

*Rogers v. Koons*,
    960 F.2d 301 (2d Cir. 1992) ............................................................... 18

*Sheldon v. Metro-Goldwyn Pictures Corp.*,
    309 U.S. 390 (1940) .......................................................................... 19

*Systems Am., Inc. v. Rockwell Software, Inc.*,
    No. C03-02232 JF(RS),
    2007 WL 1593219 (N.D. Cal. June 1, 2007) ...................................... 17

*United States v. Smith*,
    389 F.3d 944 (9th Cir. 2004) ............................................................... 7

*Walker v. Forbes, Inc.*,
    28 F.3d 409 (4th Cir. 1994) ............................................................... 19


**Statutes**

17 U.S.C. 504(b) ...................................................................................... 18

17 U.S.C. § 504 ........................................................................................ 13

28 U.S.C. § 636(b)(1)(A) ........................................................................... 8

1

## **Rules and Regulations**

Fed. R. Civ. P. 26(b)(1) ...................................................................*passim*

Fed. R. Civ. P. 26(b)(1) ................................................................ 10

Fed. R. Civ. P. 26(b)(2)(C) ...........................................................17

Fed. R. Civ. P. 72(a) ...................................................................... 8

Local Rule 37................................................................................ 6

Local Rule 72................................................................................ 8

## **Other Authorities**

8 Charles Alan Wright & Arthur R. Miller, *Federal Prac. & Proc. Civ*.
 § 2008.1 (3d. ed. 2010) ............................................................17

Melville D. Nimmer & David Nimmer, *Nimmer on Copyright*, §
 8.19[A] (2014) .........................................................................13

**DEFENDANT CARTER'S MOTION FOR REVIEW OF MAGISTRATE'S ORDER**

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

This Motion concerns the proper interpretation of this Court's December 9, 2011 Order (ECF No. 309) (the "December 2011 Order") as it affects the discoverability of Mr. Carter's highly-sensitive and confidential concert revenue information.  Plaintiff contends, and the Magistrate Judge agreed, that the December 2011 Order should be read broadly to require Mr. Carter to undertake the substantial burden of producing concert revenue information without first requiring Plaintiff to make *any* showing that this information is, in fact, relevant to Plaintiff's copyright infringement claim.  The Magistrate Judge's ruling was in error, for a number of reasons:

*First*, both Plaintiff and the Magistrate Judge appeared to misconstrue the Plaintiff's burden, which is not simply to establish that Mr. Carter performed *Big Pimpin'* at concerts for which tickets were sold, *see, e.g.,* ECF No. 433 at 1 (arguing that Plaintiff is "entitled to seek at trial profits from concerts wherein the allegedly infringing work, *Big Pimpin'*, was performed"), but that there is a non-speculative basis that any profits from those concerts is attributable to the use of "Khosara Khosara" in *Big Pimpin'*.  *See, e.g., Polar Bear Prods., Inc. v. Timex Corp.*, 384 F.3d 700, 711 (9th Cir. 2004) (rejecting claims for profits that are only "remotely and speculatively attributable to the infringement") (citation omitted); *see also Jarvis v. A&M Records*, 827 F.Supp. 282, 294 n.6 (D.N.J. 1993) (holding that plaintiff's "profits from defendants' performances of plaintiff's song . . . must be denied as too speculative").  Plaintiff offered no *evidence* that it could ever meet this burden, as Federal Rule of Civil Procedure 26(b)(1) requires, and Plaintiff's motion to compel should have been denied.  *See Rich v. Shrader*, No. 09-CV-0652-AJB(BGS), 2013 WL 3710806, at *8 (S.D.Cal. July 11, 2013) (denying motion to compel production of documents where the plaintiff failed to meet its burden to show relevance).

*Second*, both Plaintiff and the Magistrate Judge ignored the fact that Mr. Carter has already produced documents reflecting performance royalties, which are the only concert revenues which are attributable to performances of *Big Pimpin'*. *See ABKCO Music, Inc. v. Harrisongs Music, Ltd.*, 508 F.Supp. 798, 799-800 (S.D.N.Y. 1981), *modified*, 722 F.2d 988 (2d Cir. 1983) (observing that the categories of profits available from exploitation of the George Harrison hit "My Sweet Lord," which infringed Plaintiff's work, were mechanical royalties, performance royalties, the sale of sheet music and folios, and the profits of Apple Records, Inc., the Harrison-owned manufacturer of the principal recordings of "My Sweet Lord").

*Third,* the Magistrate Judge also ignored the overwhelming burden that Mr. Carter would suffer if forced to produce concert revenues.  This burden includes not only the cost of locating and producing documents relating to *years* of concert performances, *see* Dkt. No. 432 at 20 (Bakhai Decl., ¶ 8), but also the cost to both parties—and the Court—of analyzing the "myriad factors" the Court would need to consider to apportion those profits that are attributable to the countless factors that drove concert revenues other than the alleged use of Plaintiff's song in *Big Pimpin'*, *see Mackie v. Reiser*, 296 F.3d 909, 916 (9th Cir. 2002), for which there is no evidence.

Plaintiff failed to make even a minimal showing of any "'causal nexus' between the infringement" and Mr. Carter's profits (if any) from performing "Khosara Khosara" at concerts.  In the absence of such a showing, Mr. Carter's concert revenue information is wholly irrelevant, *see* December 2011 Order at 11 (citing *Polar Bear Prods.*, 384 F.3d at 711 n.7), and Plaintiff's motion to compel should have been denied.  *See* Fed. R. Civ. P. 26(b)(1); *see also, e.g., Ellis v. J.P. Morgan Chase & Co.*, No. 12-cv-03897-YGR (JCS), 2014 WL 1510884, at *3 (N.D. Cal. Apr. 1, 2014).  The Magistrate Judge, however, incorrectly interpreted this Court's December 2011 Order to permit discovery in the absence of such a

1  showing.  *See* Magistrate's Order at 2 ("The Court reads the December 9, 2011
2  Order more broadly than Defendants.  *Based on its reading of that order*, the Court
3  orders Defendants Carter and Mosely to produce discovery relating to the concert
4  revenues . . . .") (emphasis added).  Given the sensitivity of the revenues associated
5  with Mr. Carter's concerts, and the burden Mr. Carter and the Court would suffer if
6  forced to produce this information, Mr. Carter brings this motion to correct the
7  Magistrate Judge's erroneous interpretation of this Court's December 2011 Order.[1]

8  **II.    PROCEDURAL BACKGROUND**

9       Without attempting to recount the long and winding procedural history of this
10 case (with which this Court is all too familiar), a short summary of proceedings and
11 discovery relating to concert revenues is set forth below.

12       **A.    *This Court Denies Plaintiff's Concert Revenue Motion***

13       Plaintiff claims that the song *Big Pimpin'* infringes a composition entitled
14 "Khosara Khosara," to which Plaintiff claims to hold the rights.  *Big Pimpin'*, which
15 was produced by Defendant Tim Mosely and performed by Mr. Carter, was released
16 in 1999.  Although Plaintiff first became aware of the alleged infringement in
17 December 2000, *see* ECF No. 309 at 2, he waited until August 2007 to bring this
18 action.  *Id.* at 3.

19       On August 25, 2011, Plaintiff filed a motion for partial summary judgment,
20 asking this Court to hold, as a matter of law, that if Plaintiff were able to establish
21 infringement, he would be entitled to a portion of Mr. Carter's profits from concerts
22 at which *Big Pimpin'* was performed.  *See* ECF No. 277-1 (the "Concert Revenue
23 Motion").  Plaintiff argued that profits derived from concerts at which the allegedly
24 infringing song was performed "are direct profits, and are undeniably recoverable"

25

26 ───────────────
27 [1] As set forth in this Court's December 5, 2014 order, implementation of the
   Magistrate's Order has been stayed pending this Court's decision.  *See* ECF No.
28 438.

1   and that, as a result, "there is no legitimate reason for Defendants to continue

2   withholding all discovery regarding concert revenues, as they have done." *Id.* at 3.

3           This Court denied Plaintiff's motion, holding that Plaintiff is not entitled to

4   *any* concert profits unless he can "first establish a 'causal nexus' between the

5   infringement" (the use of "Khosara Khosara") and Mr. Carter's concert revenues.

6   *See* Dkt. No. 309 at 11 (citing *Polar Bear Prods.,* 384 F.3d 700, 711 n.7 (9th Cir.

7   2004)).  Far from ordering Defendants to "produce information regarding concert

8   revenues," as Plaintiff now claims (*see* Plaintiff's Motion to Compel (ECF No. 429)

9   at 2), the Court instead directed Defendants to respond to discovery requests

10  concerning "both *the manner of advertising concerts* as well as *the revenues derived*

11  *therefrom.*"  Dkt. No. 309 at 17 (emphases added).

### B.      Mr. Carter Produces Documents Reflecting His Revenues from Performances of Big Pimpin'

14          At the time the Court issued its December 2011 Order, Plaintiffs had not

15  served any discovery requests that went either to "the manner of advertising

16  concerts" or "the revenues derived therefrom," despite having litigated this case for

17  more than four years.  Plaintiff finally served such requests in early 2012, to which

18  Defendants responded on April 9, 2012 by objecting on various grounds, including

19  burden, overbreadth, and that the requested discovery was not reasonably calculated

20  to lead to the discovery of admissible evidence, and declining to produce *any*

21  documents other than those responsive to a single request for concert set lists.  *See*

22  ECF No. 432.

### C.      This Court Denies Plaintiff's Contempt Motion

24          Despite the supposed centrality of concert revenue information to Plaintiff's

25  case (*see* Plaintiff's Motion to Compel (ECF No. 429) at 2), Plaintiff did not

26  challenge Defendants' objections immediately after receiving them in 2012.  Indeed,

27  Plaintiff took no action *at all* with respect to concert revenues for another year,

28  when, in April 2013, he attempted to avoid his meet and confer obligations by

1  moving for contempt of the December 2011 Order without first moving to compel

2  on any specific request.  *See* ECF No. 329.

3       This Court denied Plaintiff's contempt motion on June 10, 2013, holding that

4  the December 2011 Order required only that Defendants *respond* to discovery

5  requests and found that Plaintiff had failed to make a showing—or even an

6  argument—that "defendants have improperly resisted any specific discovery

7  request."  *See* ECF No. 357 at 4.  The Court also observed that

8             "by objecting to specific discovery requests propounded

9             by plaintiff, defendants are not necessarily acting in a

10            manner inconsistent with the Court's order, but merely

11            asserting their rights related to the discovery process."

12  *See id*.  This Court thus left open the possibility that Defendants would object to

13  Plaintiff's requests, and left its assessment of those objections for another day.

14       **D.**    **This Court Did Not Address The Relevancy Or Discoverability Of**

15            **Concert Revenue Information In Its Reconsideration Order**

16       This Court granted Defendants' motion for summary judgment on laches

17  grounds in August 2013, finding that Plaintiff had unreasonably delayed bringing

18  this action for more than six years after discovering the alleged infringement.  *See*

19  ECF No. 377.  In July 2014, however, following the United States Supreme Court's

20  decision in *Petrella v. Metro-Goldwyn-Mayer, Inc.*, --- U.S. ---, 134 S.Ct. 1962

21  (2014), this Court vacated its summary judgment order and, further, denied

22  Defendants' request to bifurcate liability and damages.  *See* ECF No. 418.  The

23  Court again did not deprive Defendants of their right to object to Plaintiff's

24  discovery requests.  Nor did the Court relieve Plaintiff of his burden to demonstrate

25  the relevance of Mr. Carter's concert profits by offering evidence of a "nexus"

26  between those concert profits and the alleged infringement.  *See generally id.*

27

28

### E.     *Plaintiff Moves To Compel Concert Revenue Information*

On October 20, 2014, Mr. Carter produced concert set lists, documents relating to "the manner of advertising concerts" and documents showing performance royalties that were paid for each of the concerts at which Mr. Carter performed, and those he received from performances of *Big Pimpin'*.  *See* Carter Opposition to Motion to Compel (ECF No. 432) (Pettit Decl., ¶¶ 2-4, Exh. D; Bakhai Decl., ¶¶ 4-6, Exhs. A, B).  Such royalties are paid to the performing rights societies (ASCAP, BMI and SEASAC) each time a song is performed, *id.*, Bakhai Decl., ¶ 5, and thus reflect Mr. Carter's actual revenues from performances of *Big Pimpin'*.

Again making an end-run around Local Rule 37, Plaintiff sent an email to all counsel and the Magistrate Judge's chambers on November 12, 2014.  *See* ECF No. 429.  In that email, Plaintiff asked the Court to compel Defendants to produce several categories of additional discovery, including concert revenue information. *See id*.  Plaintiff did not, however, offer any affirmative evidence of a causal link between the performance of "Khosara Khosara" and concert ticket sales in the portion of his "motion" addressing concert revenues.  *See id.* at 2.  Instead, citing the December 2011 Order, Plaintiff argued – incorrectly – that "[t]he Court has already ruled that Plaintiff's entitlement to recover Defendants' concert revenues is an issue for trial, and therefore ordered Defendants to produce information regarding concert revenues." *Id.*

Rather than consider the issues raised in Plaintiff's email informally, as Plaintiff had requested, the Magistrate Judge filed Plaintiff's email on the Court's docket, *see* ECF No. 429, and set a briefing and hearing schedule.  In response to Mr. Carter's arguments for why concert revenue information should *not* be compelled (which included, among other things, evidence that Mr. Carter receives a more positive response when he performs *Big Pimpin'* without music (and thus without "Khosara Khosara"), *see* ECF No. 432, Exh. C), continued to insist that the

-6-

**DEFENDANT CARTER'S MOTION FOR REVIEW OF MAGISTRATE'S ORDER**

discoverability of financial concert revenue information had already been resolved by this Court in its December 2011 Order.  *See* ECF No. 433 at 1 ("The law of this case is that Plaintiff is entitled to seek at trial profits from concerts wherein the allegedly infringing work, *Big Pimpin'*, was performed.").[2]  Plaintiff still did not, however, offer any actual *evidence* of the necessary "causal nexus" between Mr. Carter's concert revenues and "Khosara Khosara"—the infringement at issue here—but instead relied on inadmissible speculation as to what may, in Plaintiff's mind, be "possible"  *See* ECF No. 433 at 6 n.4.

> **F.     The Magistrate Judge Grants Plaintiff's Motion To Compel Concert Revenue Information Based On An Erroneous Reading Of The December 2011 Order**

The Magistrate Judge issued a tentative order granting Plaintiff's request for production of concert revenue information, and convened a telephonic hearing with all parties on November 24, 2014.  Following oral argument, the Magistrate Judge filed an order largely adopting his tentative, which was served by ECF on November 25, 2014.  *See* ECF No. 436.  On the issue of concert revenues, the Magistrate Judge did not address the factual question of whether Plaintiff had supplied evidence of a "causal nexus" between the alleged infringement and Mr. Carter's concert revenues sufficient to meet his burden under Federal Rule of Civil Procedure 26(b)(1).  The Magistrate Judge also did not address the burden that Mr. Carter would suffer if

---

[2] Even if this Court *had* ruled that Plaintiff need not show a "causal nexus" between the alleged infringement and Mr. Carter's concert revenues (which it did not), that ruling would not be "law of the case," as this Court maintains jurisdiction to reconsider that order at any time up to and including trial.  *See United States v. Smith*, 389 F.3d 944, 949 (9th Cir. 2004) (finding the law of the case doctrine "'wholly inapposite' to circumstances where a district court seeks to reconsider an order over which it has not been divested of jurisdiction") (quoting *City of Los Angeles v. Santa Monica Baykeeper,* 254 F.3d 882, 888 (9th Cir. 2001)).

forced to produce concert revenue and did not rule on the admissibility of what could only be Plaintiff's speculation about whether the alleged infringement drove ticket sales. *See, e.g,* ECF No. 433. Instead, the Magistrate Judge said only that he read this Court's December 2011 Order "more broadly than Defendants" and ordered Mr. Carter and another defendant to "produce discovery related to the concert revenues no later than December 19, 2014." *Id.* at 2. The Magistrate Judge found, however, "that there was merit to both sides' positions and that the issues raised herein were legitimate discovery disputes," and thus denied Plaintiff's request for sanctions. *Id.* at 4.

## III.   STANDARD OF REVIEW

A party can challenge a non-dispositive order by a magistrate judge "within 14 days after being served with a copy." Fed. R. Civ. P. 72(a); *see also* Local Rule 72. "The district judge in the case *must* consider timely objections and modify or set aside any part of the order that is clearly erroneous or is contrary to law." *Id.* (emphasis added); *see also* 28 U.S.C. § 636(b)(1)(A); *Crispin v. Christian Audigier, Inc.*, 717 F.Supp.2d 965, 970 (C.D.Cal. 2010) (reversing and vacating magistrate decision on motion to quash subpoenas).[3] "The 'contrary to law' standard … permits independent review of purely legal determinations by the magistrate judge." *Id.* at 971 (quoting *F.D.I.C. v. Fidelity & Deposit Co. of Md.*, 196 F.R.D. 375, 378 (S.D.Cal. 2000)); *see also Haines v. Liggett Group, Inc.*, 975 F.2d 81, 91 (3d Cir. 1992) ("the phrase 'contrary to law' indicates plenary review as to matters of law"); *Med. Imaging Ctrs. of Am., Inc. v. Lichtenstein*, 917 F.Supp. 717, 719 (S.D.Cal.

---

[3] "The clearly erroneous standard, which applies to a magistrate judge's findings of fact, is 'significantly deferential, requiring a definite and firm conviction that a mistake has been committed.'" *Crispin*, 717 F.Supp.2d at 971 (quoting *Concrete Pipe & Prods. v. Constr. Laborers Pension Trust*, 508 U.S. 602, 623 (1993)). As the Magistrate Judge did not rely on any findings of fact in granting Plaintiff's Motion to Compel, the "clearly erroneous" standard does not apply here.

1996) ("Section 636(b)(1) ... has been interpreted to provide for *de novo* review by the district court on issues of law").

There is no question that the portion of the Magistrate Judge's Order addressing the discoverability of concert revenues involved an issue of law, and hence is subject to *de novo* review by this Court.  Indeed, the Magistrate Judge did not evaluate whether Plaintiff had met his burden to establish the relevance of the information sought, but instead based his decision entirely on his interpretation of this Court's December 2011 Order.  *See* Magistrate's Order at 2.  Moreover, because Plaintiff's Motion to Compel and this Motion for Review both involve the proper interpretation of the law of the case as expressed by this Court's December 2011 Order, this Court is indisputably in the best position to resolve this legitimate dispute over what the December 2011 Order did and did not say about Plaintiff's right to obtain concert revenue information.

## IV.   PLAINTIFF IS NOT ENTITLED TO FURTHER DISCOVERY ON CONCERT PROFITS

Before Plaintiff is entitled to *any* discovery (on concert revenues or otherwise) he must first satisfy the relevancy requirements in Federal Rule of Civil Procedure 26(b)(1).  *See, e.g., Ellis*, 2014 WL 1510884, at *3; *Rich v. Shrader*, 2013 WL 3710806, at *8-9 (denying motion to compel production of documents where the plaintiff failed to meet its burden to show relevance).  Specifically here, Plaintiff must offer some evidence linking Mr. Carter's concert profits to the use of "Khosara Khosara." In the absence of such evidence, Plaintiff's damages claims nothing more than rank speculation, and such claims (and by extension the discovery related thereto) should therefore be denied.  *Jarvis v. K2 Inc.*, 486 F.3d 526, 534 (9th Cir. 2007) (observing that "[e]xcessively speculative claims of damages are to be rejected"); *Frank Music Corp. v. Metro-Goldwyn-Mayer, Inc.*, 772 F.2d 505, 513 (9th Cir. 1985) (concluding that "[i]n a copyright action, a trial court is entitled to reject a proffered measure of damages if it is too speculative").

Both Plaintiff and the Magistrate Judge ignored Rule 26(b)(1)'s relevancy requirements.  Indeed, Plaintiff claims that a showing of relevancy is unnecessary because this Court had already ruled in its December 2011 Order that Plaintiff is entitled to discover the amount of concert revenues and profits earned by Mr. Carter (*see* ECF No. 429 at 2-3 and No. 433 at 1-4), and the Magistrate Judge's Order appears to endorse this position.  *See* Magistrate's Order (ECF No. 436) at 1-2.  As explained below, however, this Court's December 2011 Order did *not* include any such ruling, nor does it obviate the need to demonstrate the relevance of the concert revenue information Plaintiff seeks to compel.  To the contrary, the December 2011 Order confirmed that, to recover concert revenues, Plaintiff must establish a "causal connection" between those revenues and "Khosara Khosara."  ECF No. 309 at 12. Because Plaintiff has not and cannot provide *any* evidence of such a nexus (despite the fact that it was Plaintiff's burden to do so on his motion), he cannot establish that the amount of those revenues are in any way relevant to Plaintiff's claims, and his motion to compel should therefore have been denied.

> **A.** **Contrary To The Magistrate Judge's Order, The December 2011 Order Does Not Compel The Production Of The Revenue Information Plaintiff Seeks**

Although not entirely clear from the text of his Order, the Magistrate Judge appeared to interpret this Court's December 2011 Order as requiring Defendants to disclose all revenues and profits they received in connection with concerts at which *Big Pimpin'* was performed.  *See* Magistrate's Order (ECF No. 436) at 2.  As this Court expressly recognized, however, Plaintiff is not entitled to recover *any* concert profits unless he can "first establish a 'causal nexus' between the infringement" and Mr. Carter's profits (if any) from his concert appearances.  *See* December 2011 Order (ECF No. 309) at 11; *see also Mackie*, 296 F.3d at 915-16 (upholding summary judgment for defendant based on plaintiff's failure to adduce any non-speculative evidence suggesting a link between the infringement and concert

revenues); *Polar Bear Prods.,* 384 F.3d at 714 (vacating jury verdict because plaintiff's circumstantial evidence of a connection between the infringement and the profits sought was "woefully insufficient" as a matter of law).

Importantly, the December 2011 Order was the result of *Plaintiff's* motion asking the Court to decide, as a matter of law, that Plaintiff was entitled to concert profits. *See* December 2011 Order (ECF No. 309) at 2. This Court correctly denied that motion, and identified certain factors that would inform its analysis "as to whether plaintiff is able to prove the required causal nexus" between the alleged infringement and the profits from Mr. Carter's concerts. *Id.* at 15-17. The Court, for example, questioned whether Mr. Carter "used *Big Pimpin'* in his advertisements for a particular concert or concert series," whether he performed *Big Pimpin'* at every concert, and whether there was advance notice that *Big Pimpin'* would be played at any particular show. *See id.* at 15. Ultimately, the Court "reserve[d] judgment as to whether plaintiff is able to prove the requisite causal nexus," and directed defendants "to respond to discovery requests that go to both the manner of advertising concerts and the revenues derived therefrom." *Id.* at 17.

Contrary to Plaintiff's assertion, these closing lines of the December 2011 Order do not entitle him to discover any and all information regarding the amount of concert revenues and profits Mr. Carter has earned during the relevant period. *See* ECF No. 429 at 2. Plaintiff's interpretation—which the Magistrate Judge's Order appears to have adopted—takes the sentence fragment "concerts and the revenues derived therefrom" completely out of context so as to distort its meaning. The portion of the December 2011 Order on which Plaintiff relies was the culmination of the Court's discussion regarding what Plaintiff would need to prove at trial to establish a causal nexus necessary to create a right to recover concert revenues. Viewed in this context, the Court's order did not compel Defendants to disclose the *amount* of concert revenues they received, but instead to produce information

probative of whether any causal nexus existed between the alleged infringement and those revenues.

Thus, read correctly, the term "revenues derived therefrom" does not mean all revenues derived from concerts, but instead refers to revenues derived from concert *advertising*, presumably featuring *Big Pimpin'*.  As explained below, *none* of the advertising or promotional materials that Mr. Carter produced in discovery, or that Plaintiff has located from public or other sources, suggest that the song *Big Pimpin'* or references thereto were ever used in advertising or promoting Mr. Carter's concerts.  In the absence of any such evidence, Plaintiff may not seek concert revenues as damages, and the amount of those revenues accordingly is irrelevant to this case.

Nor is Mr. Carter confusing Plaintiff's burden to prove concert revenue damages at trial with his burden to establish that he is entitled to discover concert revenue amounts, as Plaintiff claimed in his Motion to Compel.  *See* ECF No. 433 at 4.  To the contrary, as Mr. Carter made clear, Plaintiff's obligation under Rule 26(b)(1) is simply to make a minimal showing of a nexus between concert revenues and the allegedly infringing activity—and, as described below, Plaintiff failed entirely to meet that burden.

## B.   *Plaintiff Fails To Meet His Burden To Establish The Relevance Of The Concert Information He Seeks*

Mr. Carter has already produced documents reflecting performance royalties – the only revenues for which a "causal nexus" between the performance and the amounts Mr. Carter received can be established.  *See* ECF No. 309 at 11.  To the extent Plaintiff seeks documents relating to any other concert-related receipts, Plaintiff fails to offer any explanation, much less evidence, linking those receipts to the infringement alleged in this case, and thus falls short of his burden to establish that this information could in any way be relevant.

### 1.    Mr. Carter *Has* Produced Evidence of Royalties He Receives In Connection With Live Performances of *Big Pimpin'*

Each time any song is performed, the venue pays a royalty to the performing rights societies (ASCAP, BMI and SEASAC), which in turn pay those royalties to the song's writers and publishers.  *See* Melville D. Nimmer & David Nimmer, *Nimmer on Copyright*, § 8.19[A] (2014); *ABKCO Music*, 508 F.Supp. at 799-800 (observing that the categories of profits available from exploitation of the George Harrison hit "My Sweet Lord," which infringed Plaintiff's work, were mechanical royalties, performance royalties, the sale of sheet music and folios, and the profits of Apple Records, Inc., the Harrison-owned manufacturer of the principal recordings of "My Sweet Lord").  If Plaintiff were able to establish infringement, he would be entitled to a portion of those royalties relating to *Big Pimpin'*, to the extent those royalties could be attributable to the "Khosara Khosara" sample.  *See* 17 U.S.C. § 504.  For that reason, Mr. Carter has produced documents reflecting income he received from performances of *Big Pimpin'* throughout the limitations period.  *See* ECF No. 432 (Pettit Decl., ¶ 2; Bakhai Decl., ¶¶ 4-6).

### 2.    Plaintiff Fails to Meet His Burden to Show the Relevance of Other Concert-Related Information

#### (a)    Plaintiff Offers No Evidence of a "Causal Nexus" Between "Khosara Khosara" and Mr. Carter's Concert Revenues

Plaintiff, however, offered no evidence at all in support of his motion to compel, let alone evidence sufficient to satisfy his threshold burden to show that the evidence he seeks is, in fact, relevant.  *See Ellis*, 2014 WL 1510884, at *3 (requiring that a plaintiff seeking to compel discovery must first satisfy the relevancy requirements in Federal Rule of Civil Procedure 26(b)(1)).  Instead, Plaintiff inaccurately claims that requiring him to produce *any* evidence of a causal nexus at

1  all would be improper, given the District Court's denial of Defendants' bifurcation

2  motion.  *See* ECF No. 429 at 3 (citing ECF No. 418).

3        Plaintiff's reliance on the Court's bifurcation ruling is misplaced.  The issue

4  of bifurcation would arise only if Plaintiff *had* made a threshold showing of

5  relevance for discovery purposes, but Defendants nonetheless sought to postpone

6  discovery until after Plaintiff had met his burden of proof at trial.  Here, however,

7  Plaintiff cannot even meet his initial threshold for discoverability.  Indeed, if

8  Plaintiff's position were correct, it would read Rule 26(b)(1) out of the Rules

9  entirely, by relieving parties from the need to establish relevance before compelling

10  discovery.  Plaintiff's position is not, however, the law, and his failure to

11  demonstrate the relevance of the information he seeks dooms his motion to compel.

12  *See Rich v. Shrader*, 2013 WL 3710806, at *8-9 (denying motion to compel

13  production of documents where the plaintiff failed to meet its burden to show

14  relevance).

15        Not only has Plaintiff failed to offer any evidence to suggest a "nexus"

16  between concert revenues and the alleged infringement, the evidence that has been

17  discovered affirmatively establishes that no such connection exists.  Since this Court

18  issued its December 2011 Order, Defendants, including Mr. Carter, have produced

19  numerous concert-related documents—including concert advertisements and

20  promotional materials, as well as set lists identifying songs that Mr. Carter

21  performed at concerts since 2004—and Mr. Carter was questioned extensively at his

22  deposition regarding his concert performances.  *See* ECF No. 432 at 33 (Pettit Decl.,

23  ¶ 3).  The evidence makes clear that Mr. Carter *never* advertised or promoted his

24  concerts by referencing *Big Pimpin'* (let alone "Khosara Khosara"), *see id.*, ¶ 4,

25  Exh. D, and the evidence before the Magistrate Judge further established that Mr.

26  Carter did not, in fact, perform *Big Pimpin'* at every concert.  *See id.*, ¶ 5, Exh. E.[4]

----

27

28  [4] Plaintiff speculates that "there is reason to believe" Mr. Carter "performed *Big*

CALDWELL
LESLIE &
PROCTOR

**DEFENDANT CARTER'S MOTION FOR REVIEW OF MAGISTRATE'S ORDER**

1  Plaintiff further fails in his Motion to Compel to offer any evidence linking concert

2  ticket sales to the use of "Khosara Khosara" in live peformances of *Big Pimpin'*.

3          Moreover, Plaintiff's theory reflects a fundamental misunderstanding of how

4  concerts are promoted.  As this Court recognized, unlike patrons of classical music,

5  opera, or musical theater, who know ahead of time what piece(s) of music will be

6  performed when they purchase their seats, *see* December 2011 Order (ECF No. 309)

7  at 15 (citing *Frank Music II*, 886 F.2d 1545, 1550 n.3 (9th Cir. 1989)), consumers

8  who purchase concert tickets for a Jay Z show do so without knowing with any

9  certainty which songs Mr. Carter is going to perform on any given night.  *See id.* at

10  16 n.5 (observing that "a concert is not identical to a musical production because

11  concerts often vary dramatically from venue to venue . . .").  Each Jay Z concert

12  tour, indeed, each Jay Z concert, is unique, featuring different artists, including

13  many, such as Kanye West, Eminem and Beyonce, with their own extensive fan

14  base.  *See* ECF No. 432 (Pettit Decl., Exh. D).  As is clear from the promotional

15  materials in the record in this case, Mr. Carter's recent tours have been promoted

16  either in connection with then-current albums (*e.g.* 2011-2012's "Watch the Throne"

17  tour with Kanye West) or with artists with whom Mr. Carter shared the stage, such

18  as the 2010 Jay Z-Eminem "Home and Home" tour.  *See id.*  The idea that *any*

19  revenues from *any* of these concerts can be attributed to the use of a sample in a

20  now-fifteen-year-old song like *Big Pimpin'* is wholly unsupported by any evidence.

21

22

23

24

_____

25  *Pimpin'* in at least some of the concerts" that were part of the same tour for the

26  concert for which the set list does not include *Big Pimpin'*.  *See* ECF No. 433 at 6 n.4.  Plaintiffs offer no *evidence* however that *Big Pimpin'* was performed at *all* of

27  his concerts, and indeed the evidence is to the contrary.  *See* ECF No. 432 (Pettit

28  Decl., ¶ 5, Exh. E).

**(b)   Plaintiff Fails to Cite Any Authority Supporting His Position**

Plaintiff cited three cases in his reply—each concerning claims for indirect profits— in support of his Motion to Compel that he claimed "required" Mr. Carter to produce evidence of his concert revenues, even in the absence of any link between those revenues and the alleged infringement.  *See* ECF No. 433 at 8. Contrary to Plaintiff's assertions, however, each of these cases supports *Mr. Carter's* position, another reason why Plaintiff's motion to compel should have been denied.

In *Burns v. Imagine Films Entertainment, Inc.*, for example, plaintiffs contended that the theatrical film *Backdraft* infringed their copyrighted screenplays and sought discovery relating to revenues from a *Backdraft*-themed attraction at the Universal Studios Hollywood theme park.  164 F.R.D. 589, 590-91 (W.D.N.Y. 1996).  The Court first recognized that, under Federal Rule of Civil Procedure 26(b)(1), information is only discoverable if it is relevant or reasonably calculated to lead to the discovery of admissible evidence, *id.* at 591, but ruled that plaintiffs had met their burden, based on evidence that "the attraction would not exist but for the success of the motion picture *Backdraft,*" and the "public association of *Backdraft* with the Backdraft Attraction promoted or elevated the public's interest in the Backdraft Attraction."  *Id.* at 592.  Here, by contrast, not even Plaintiff has contended that the attraction (*i.e*., a Jay Z concert) would not exist but for the success of *Big Pimpin'*, and Plaintiff failed to supply *any* evidence (because there is none) that *Big Pimpin'* (much less the portions of *Big Pimpin'* that allegedly contains Plaintiff's song) "promoted or elevated the public's interest" in Mr. Carter's concerts.

Plaintiff's other two cases also support Mr. Carter's position in this Motion for Review.  In *Beinin v. Center for The Study of Popular Culture*, plaintiff, a Stanford professor, sued a conservative non-profit organization for copyright

1   infringement based on its use of his photograph for the cover of a pamphlet

2   containing an article accusing him of supporting terrorism.  No. C06-2298JWRS,

3   2006 WL 4547171, at *1 (N.D. Cal. Oct. 31, 2006).  Plaintiff successfully sought

4   discovery of fundraising revenues earned by the non-profit organization as indirect

5   profits of the infringement by offering evidence that the allegedly infringing

6   pamphlet cover was "depicted prominently" on the organization's website.  *Id.* at

7   *3.  Similarly, in *Systems America, Inc. v. Rockwell Software, Inc.*, No. C03-02232

8   JF(RS), 2007 WL 1593219 (N.D. Cal. June 1, 2007), the Court permitted discovery

9   of profits related to non-infringing software products based on "unrebutted evidence

10   that [the defendant] touted its ability to offer [the infringing software] in connection

11   with its sales and marketing of all the products in issue."  *Id.* at *2.

12        Unlike in *Beinin* or *Systems America*, the evidence here is undisputed that

13   neither Mr. Carter nor any other Defendant used *Big Pimpin'* or, more to the point,

14   "Khosara Khosara" to advertise or otherwise promote his live performances.

15   Indeed, discovery produced by Defendants establishes that Mr. Carter did not use

16   *Big Pimpin'* or any other song to advertise his concerts, and, despite having now had

17   more than seven years, Plaintiff is unable to offer any contrary evidence.

18      **C.**    ***The Undue Burden on Mr. Carter Far Outweighs any Minimal***

19           ***Relevance of the Requested Documents***

20        Even if Plaintiff could show some minimal relevance of the remaining

21   documents he seeks (which he cannot), that relevance would be more than

22   outweighed by the burden on Mr. Carter to gather and produce these documents.

23   *See* Fed. R. Civ. P. 26(b)(2)(C); 8 Charles Alan Wright & Arthur R. Miller, *Federal*

24   *Prac. & Proc. Civ*. § 2008.1 (3d. ed. 2010) (observing that "[j]udges relatively

25   frequently limit or forbid discovery when the cost and burden seem to outweigh the

26   likely benefit in producing evidence"); *see also Mattel, Inc. v. MGA Entm't, Inc.*,

27   No. CV 04-9049 DOC (RNBx), 2010 WL 3705864, at *1 (C.D. Cal. Sept. 2, 2010)

28   (rejecting discovery where potential relevance was "greatly outweighed" by the

CALDWELL
LESLIE &
PROCTOR

-17-

**DEFENDANT CARTER'S MOTION FOR REVIEW OF MAGISTRATE'S ORDER**

burden on the producing party).  Gathering and producing documents relating to Mr. Carter's revenues and costs for concerts from 2004 to the present—even if such documents exist—would require hundreds of person hours of work.  *See* ECF No. 432 at 19 (Bakhai Decl., ¶ 7).  Moreover, the information Plaintiff seeks is highly confidential and made available only to Mr. Carter's financial advisors on a need-to-know basis.  *See id.*, ¶ 8.

This burden is not limited to the cost of gathering and producing Mr. Carter's sensitive financial information.  Plaintiff is entitled only to a share of only those profits attributable to the use of "Khosara Khosara."  *See* 17 U.S.C. 504(b); *see Dash v. Mayweather*, 731 F.3d 303, 326 (4th Cir. 2013) (observing that, when "the infringement occurs as a small part of a much larger work, the fact finder properly focuses not on the profit of the work overall, but only on the profit that the infringement contributes") (citation and quotation marks omitted).  Plaintiff is not entitled to *any* profits whatsoever for any tickets purchased by consumers prior to discovering that "Khosara Khosara" would be played at any particular concert, *see id.* at 332 (rejecting claims for profits for WWE matches where Plaintiff's song was played).  Even for tickets purchased by consumers who knew—or even hoped—to hear Mr. Carter perform *Big Pimpin'* including the "Khosara Khosara" sample, the Court would need to consider myriad factors that drove concert revenues, each of which must be deducted from any profits, *see Mackie*, 296 F.3d at 916 (describing the "virtually endless permutations to account for an individual's decision" to purchase tickets) including:

- Mr. Carter's own popularity, and his ability to command ticket prices for his concerts, regardless of the songs being performed, *see, e.g., Rogers v. Koons*, 960 F.2d 301, 313 (2d Cir. 1992) (holding that the artist Jeff Koons was not liable for profits due to his "own notoriety and his related ability to command high prices for his work") ,
- The popularity of other artists with whom Mr. Carter shared a bill,

**DEFENDANT CARTER'S MOTION FOR REVIEW OF MAGISTRATE'S ORDER**

including major artists such as Beyonce, Eminem, Kanye West and R. Kelly, *see* ECF No. 432 at 49-91, *see Sheldon v. Metro-Goldwyn Pictures Corp.*, 309 U.S. 390, 407 (1940) (observing that, with respect to "profits from the exhibition of a motion picture, the talent and popularity of the 'motion picture stars' generally constitutes the main drawing power of the picture");

- The question of whether any concert goer would not have purchased a ticket based on a possibility that Mr. Carter would not perform *Big Pimpin'* including "Khosara Khosara" at a particular show, *cf. Walker v. Forbes, Inc.*, 28 F.3d 409, 413 (4th Cir. 1994) (questioning whether the alleged infringement influenced the consumer's decision to subscribe to a magazine could be attributed "the use of a particular photograph in a particular issue of the magazine");

- The question of whether any concert goer ever sought a refund if "Khosara Khosara" was not played;

- The relative value of "Khosara Khosara" compared to the non-allegedly-infringing elements of *Big Pimpin'* – including the lyrics and other musical elements to *Big Pimpin'*, including whether that value is enhanced when Mr. Carter performs *Big Pimpin'* a cappella, *see* ECF No. 432, Exh. C;

- The value of seeing any artist live, including the social aspects of experience music in a crowd, *see Mackie*, 296 F.3d at 916;

- The marketing and promotion of the concerts;

- The production values of any particular concert, as well as other ancillary entertainment, *see id.*;

- The venue, the time of year and other factors unrelated to any particular song or, for that matter, performer, *see id.*;

- The value of any other song performed at the same concert.

1      This list is just some of the many examples of factors that would have to be

2 examined and their relative values apportioned from any calculation of profits, and

3 the outcome will vary from concert to concert and from concertgoer to concertgoer.

4 *See Mackie*, 296 F.3d at 916 (finding the plaintiff's damage theory "no less

5 speculative than [the court's] effort . . . to enumerate even a relatively short list of

6 the myriad factors that could influence an individual's purchasing decision").

7      Although Plaintiff bears the burden of establishing that Mr. Carter's concert

8 profits are "reasonably related" to the alleged infringement of "Khosara Khosara",

9 *see Dash*, 731 F.3d at 329-30; *see also* December 2011 Order at 11, Plaintiff has

10 offered no benchmarks (and Mr. Carter is not aware of any) on which an expert

11 could base an opinion as to how these –or any other factors—should be applied.  If

12 Mr. Carter were compelled to produce his concert revenues, the parties would incur

13 untold costs on the preparation of expert reports, presumably to endeavor to value

14 the myriad of factors that may or may not have driven concert ticket sales, in order

15 to determine whether any percentage of profits could possibly be attributable to the

16 appearance of a portion of "Khosara Khosara" in one of the many songs that may or

17 may not have been performed at certain shows.  As a result, this Court would be

18 inundated with motions seeking to exclude those reports, on the ground that there is

19 no acceptable methodology for determining whether any particular element drove

20 sales and whether any profits can be said to be any way related to Plaintiff's work.

21 *See, e.g., Dash*, 731 F.3d at 333 (rejecting expert report on the ground that it failed

22 to establish any connection between alleged infringement and the defendant's

23 profits).  Given the burden on the parties and the Court and Plaintiff's failure, on his

24 own motion to demonstrate the required "nexus," Plaintiff's motion to compel

25 should be denied.

26 **V.   CONCLUSION**

27      If there were any way to establish a reasonable relationship between "Khosara

28 Khosara" and Mr. Carter's concert revenues, it would have been incumbent on

Plaintiff to provide some inkling of the basis for that relationship at some point over the seven years since this case was filed.  Plaintiff offered no such basis below, but as he has throughout the case, he relies solely on surmise and speculation, none of which comes close to establishing even the threshold "nexus" necessary for Mr. Carter's concert revenue information to be relevant.  *See* December 11 Order at 17 ("reserv[ing] judgment as to whether plaintiff is able to prove the requisite causal nexus").  Nothing in this Court's prior orders relieves Plaintiff of this burden, and the fact that Plaintiff still cannot point to a single fact (or precedent) supporting his damage claim strongly indicates that no such support exists.  This Court should therefore grant Mr. Carter's motion, reverse the Magistrate Judge's Order and deny Plaintiff's motion to compel Mr. Carter's concert revenues.

DATED:  December 8, 2014          CALDWELL LESLIE & PROCTOR, PC
                                 LINDA M. BURROW
                                 ERIC S. PETTIT


                                 By _____/s/_____
                                     LINDA M. BURROW
                                 Attorneys for Defendant
                                 SHAWN CARTER (pka Jay Z)

CALDWELL
LESLIE &
PROCTOR

**DEFENDANT CARTER'S MOTION FOR REVIEW OF MAGISTRATE'S ORDER**