MITCHELL SILBERBERG & KNUPP LLP
RUSSELL J. FRACKMAN (SBN 49087)
rjf@msk.com
DAVID A. STEINBERG (SBN 130593)
das@msk.com
ALEXA L. LEWIS (SNB 235867)
all@msk.com
11377 West Olympic Boulevard
Los Angeles, California 90064-1683
Telephone:    (310) 312-2000
Facsimile:    (310) 312-3100

CHRISTINE T. LEPERA (Pro Hac Vice)
ctl@msk.com
MITCHELL SILBERBERG & KNUPP LLP
12 East 49th Street, 30th Floor
New York, NY 10017
Telephone:    (212) 509-3900
Facsimile:    (212) 509-7239

Attorneys for Various Defendants

CALDWELL LESLIE &
PROCTOR, PC
LINDA M. BURROW (SBN 194668)
burrow@caldwell-leslie.com
ERIC S. PETTIT (SBN 234657)
pettit@caldwell-leslie.com
725 South Figueroa Street, 31st Floor
Los Angeles, California 90017-5524
Telephone: (213) 629-9040
Facsimile: (213) 629-9022

Attorneys for Defendant Shawn Carter
(pka Jay Z)

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Osama Ahmed Fahmy, | Case No. CV 07-05715 CAS (PJWx) |
| Plaintiff, | The Honorable Christina A. Snyder |
| v. | **DEFENDANTS' JOINT OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON DEFENDANTS' LICENSE AFFIRMATIVE DEFENSE** |
| Jay-Z (aka Shawn Carter), Timothy Mosely, Kyambo Joshua, Rob Bourdon, Brad Delson, Mike Shinoda, Dave Farrell, Joseph Hahn, Chester Bennington, Big Bad Mr. Hahn Music, Chesterchaz Publishing, EMI Blackwood Music, Inc., EMI Music Publishing Ltd., Kenji Kobayashi Music, Lil Lulu Publishing, Machine Shop Recordings, LLC, Marcy Projects Productions II, Inc., MTV Networks Enterprises Inc., Nondisclosure Agreement Music, Paramount Home Entertainment, Inc., Paramount Pictures Corporation, Radical Media, Rob Bourdon Music, Roc-A-Fella Records, LLC, Timbaland Productions, Inc., UMG Recordings, Inc., Universal Music and Video Distribution, Inc., and Warner Music Inc., | Date:        March 30, 2015<br>Time:        10:00 a.m.<br>Ctrm:        5<br><br>Pre-Trial<br>  Conference:    April 27, 2015<br>Trial:        May 12, 2015 |
| Defendants. | |

Mitchell
Silberberg &
Knupp LLP

1

# **TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ................................................................1

RELEVANT PROCEDURAL HISTORY ...............................................2

STATEMENT OF FACTS ......................................................................3

LEGAL STANDARD .............................................................................7

ARGUMENT ..........................................................................................8

I.    PLAINTIFF'S "NEW" ARGUMENTS ARE FACTUALLY AND
      LEGALLY UNSUPPORTED. ........................................................9

      A.    Plaintiff Consented to Sublicenses ......................................9

      B.    EMI Music Arabia's Rights Did Not Terminate, And Plaintiff Has
            No Standing To Assert That They Did. .............................11

            1.    EMI Music Arabia's Rights Were Extended and Its
                  Grantors Have Not Claimed Otherwise. ....................11

            2.    In Any Event, Even If EMI Music Arabia's Rights Did
                  Terminate, They Would Belong To Alam El Phan. .....13

      C.    To The Extent It Is Necessary, Defendants Have The Right to
            "Publicly Perform Khosara at Concerts". ..........................14

II.   PLAINTIFF LACKS STANDING TO ASSERT THE CLAIMS
      REMAINING AFTER THIS COURT'S ORDER ON THE STATUTE
      OF LIMITATIONS. ......................................................................16

CONCLUSION......................................................................................19

Mitchell
Silberberg &
Knupp LLP

i

**DEFENDANTS' JOINT OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY
JUDGMENT ON DEFENDANTS' LICENSE AFFIRMATIVE DEFENSE**

# **TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*Ariel (UK) Ltd. v. Reuters Group PLC*,
  2006 U.S. Dist. LEXIS 79319 (S.D.N.Y. Oct. 31, 2006),
  *aff'd,* 277 F. App'x 43 (2d Cir. 2008) ...................................................... 9

*Autohaus Brugger, Inc. v. Saab Motors, Inc.*,
  567 F.2d 901 (9th Cir. 1978) .................................................................. 13

*Broadcast Music, Inc. v. Columbia Broad. Sys., Inc.*,
  441 U.S. 1, 99 S. Ct. 1551, 60 L.Ed.2d 1 (1979) ................................... 15

*Broadcast Music, Inc. v. McDade & Sons, Inc.*,
  928 F. Supp. 2d 1120 (D. Ariz. 2013) ..................................................... 15

*Celotex Corp. v. Catrett*,
  477 U.S. 317 (1986) .................................................................................. 7

*Chapman v. Pier 1 Imports (US), Inc.*,
  631 F.3d 939 (9th Cir. 2011) ................................................................... 16

*Crispin v. Christian Audigier, Inc.*,
  839 F. Supp. 2d 1086 (C.D. Cal. 2011) .................................................. 10

*Field v. Google, Inc.*,
  412 F. Supp. 2d 1106 (D. Nev 2006) ...................................................... 13

*Freeplay Music, Inc. v. Cox Radio, Inc.*,
  404 F. Supp. 2d 548 (S.D.N.Y. 2005) ..................................................... 15

*Gardner v. Nike, Inc.*,
  279 F.3d 774 (9th Cir. 2002) ................................................................... 10

*I.A.E., Inc. v. Shaver*,
  74 F.3d 768 (7th Cir. 1996) ..................................................................... 13

*Nafal v. Carter*,
  No. CV 05-2480 SVW, Dkt. No. 140 (C.D. Cal. April 21, 2006) ............. 5

*Petrella v. Metro-Goldwyn-Mayer, Inc.*,
  134 S.Ct. 1962, 188 L.Ed.2d 979 (2014) .................................................. 3

Mitchell
Silberberg &
Knupp LLP

ii

# TABLE OF AUTHORITIES
## Table of Contents

**(continued)**

**Page(s)**

*Stoll v. Runyon*,
    165 F.3d 1238 (9th Cir. 1999) ..................................................................... 7

*Superior Eng'g & Elecs. Co., Inc. v. Sanders*,
    833 F.2d 823 (9th Cir. 1987) ...................................................................... 8

*Ward v. Nat'l Geographic Soc'y*,
    208 F. Supp. 2d 429 (S.D.N.Y. 2002) ..................................................... 10

*Warren v. Fox Family Worldwide, Inc.*,
    328 F.3d 1136 (9th Cir. 2003) ................................................................. 18

**STATUTES**

17 U.S.C. § 501(b) ......................................................................................... 16

Egypt's Intellectual Property Law of 2002 ............................................ 15, 17, 18

**OTHER AUTHORITIES**

F.R.C.P. 12(b)(1) .......................................................................................... 19

Fed. R. Civ. P. 56(c) ....................................................................................... 7

3 M & D. Nimmer, Nimmer On Copyright § 10.03 [A][7]
    (Matthew Bender Rev. Ed. 2014) ............................................................ 14

Mitchell
Silberberg &
Knupp LLP

**DEFENDANTS' JOINT OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY
JUDGMENT ON DEFENDANTS' LICENSE AFFIRMATIVE DEFENSE**

# PRELIMINARY STATEMENT

Plaintiff's renewed motion for partial summary judgment relies on cursory arguments in a vain attempt to revisit this Court's May 2011 ruling that Defendants' chain of title, authorizing the alleged use of a portion of the musical composition *Khosara Khosara* ("*Khosara*") in the work *Big Pimpin',* presented issues of fact requiring resolution by a jury.  While Plaintiff, relying on scant, conclusory, and self-serving "evidence" contained in a Local Rule 56-1 Statement of only three paragraphs' length, offers three reasons why he believes the Court should revisit its prior decision, his claims are not supported by the material cited. Instead, each of Plaintiff's assertions is in fact rebutted by evidence that includes Plaintiff's own documents, agreements, and testimony:  (1) Plaintiff's claim that he did not "consent" to sublicensing of his works, including *Khosara Khosara*, is directly contradicted by evidence showing that he did, in fact, consent; (2) Plaintiff's claim that the 1995 agreement between EMI Music Arabia and its Egyptian licensor, Sout el Phan, terminated is refuted by evidence showing that this agreement remains in effect; and (3) Plaintiff's assertion that EMI Music Arabia did not hold the right to publicly perform *Khosara Khosara* at concerts (and thus did not have the right to license that right) is belied by Plaintiff's express statements confirming that he did not own performance rights, and, in any event, Defendants were not required to obtain any additional performance rights as they were conveyed through the relevant performing rights societies.

Plaintiff's claims are further – and fatally – undermined by his lack of standing to assert *any* claims for relief in this action.  This Court has determined that any recovery is limited to the period beginning on August 31, 2004.  Docket No. 309.  Plaintiff does not have standing to sue for claims during the period remaining at issue (*i.e.*, after August 31, 2004) because, in 2002, in a written agreement not discussed by Plaintiff, he transferred ***any and all*** of his then-existing

1   economic rights in *Khosara* to the Alam el Phan company, a successor to Sout el

2   Phan.  As a result, only Alam el Phan can bring any claim for the period after

3   August 31, 2004.  Therefore, in addition to denying Plaintiff's motion, the Court

4   should dismiss the action for lack of standing.

5

6                    **RELEVANT PROCEDURAL HISTORY**

7          Plaintiff's motion is nothing more than a request that this Court reconsider

8   its prior order *denying* Plaintiff's first summary judgment motion on Defendants'

9   license defense.  As the Court is aware, Defendants' license defense is based on the

10  following chain of title:  (1) a February 1968 agreement between Baligh Hamdy,

11  the composer of *Khosara*, and the Egyptian music company Sout el Phan; (2) an

12  August 1995 agreement between Plaintiff and Sout el Phan; (3) a December 1995

13  agreement between Sout el Phan and EMI Music Arabia (confirmed by Plaintiff in

14  1997 when he entered into a settlement with EMI Music Arabia); and (4) the 2001

15  settlement agreement between EMI Music Arabia and Defendant Mosley

16  (authorizing existing and future exploitation of *Big Pimpin'* by all Defendants).

17         In denying Plaintiff's previous motion for summary judgment on the license

18  defense, the Court rejected the proposition (which Plaintiff attempts to resurrect)

19  that Egyptian law governed.  The Court held that (1) there is no claim for violation

20  of "moral rights" under U.S. law, and (2) relatedly, that the right to use *Khosara* in

21  the manner alleged in *Big Pimpin'* could, in fact, have been conveyed under

22  Egyptian law as a transferable "economic" right:

23                 "To the extent that plaintiff argues that these [chain of

24                 title] documents do not contain the right to make

25                 derivative works because to do so would necessarily

26                 violate Egyptian law …, the Court finds that this

27                 argument is unsound."

Silberberg &
Knupp LLP

28

                                           2
                    **DEFENDANTS' JOINT OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY
                    JUDGMENT ON DEFENDANTS' LICENSE AFFIRMATIVE DEFENSE**

1   Docket No. 271 at 18 ("May 2011 Order").  The Court then held that the validity

2   of Defendants' license defense presented an issue of fact.  *Id.*

3       Subsequently, in December 2011, the Court granted Defendants' motion for

4   partial summary judgment on the statute of limitations, holding that any claims for

5   infringement would be limited to the period beginning on August 31, 2004.

6   Docket No. 309.  Following this Court's December 2011 Order, only claims after

7   August 31, 2004 remained in the case.[1]

8   ## STATEMENT OF FACTS

9       Many of the facts at issue have been recited on multiple occasions, and the

10  Court is familiar with the basic chain of title.[2]  All of the relevant facts are set forth

11  in greater detail in Defendants' Statement of Genuine Issues ("SGI") and

12  Additional Material Facts ("AMF") and are summarized here:

13      ***In February 1968***, Plaintiff's uncle, Baligh Hamdy, entered into an

14  exclusive agreement with the Egyptian company, Sout el Phan, conveying certain

15  rights, including "publishing rights," in the *Khosara* composition (and other

16  Hamdy songs).  AMF 4-5.

17      ***In August 1995***, Plaintiff, on behalf of the Hamdy heirs, entered into an

18  exclusive agreement with Sout el Phan (the "August 1995 Agreement") that, in

19  Plaintiff's words, was a "renewal" of the 1968 agreement between Hamdy and

20  Sout el Phan.  AMF 6-7.  Among other things, the August 1995 Agreement

21  authorized Sout el Phan "to print and publish [songs including *Khosara*] on all

22  currently known mechanical printing matter and those to be introduced in the

---

24  [1] After the ruling on the statute of limitations, the discovery focused on
    Defendants' laches and estoppel defense leading to Defendants' motion for
25  summary judgment.  After the Court's initial ruling on these defenses, the Supreme
    Court, in *Petrella v. Metro-Goldwyn-Mayer, Inc.*, 134 S.Ct. 1962, 188 L.Ed.2d 979
26  (2014), held that laches could not bar infringement claims entirely, but could be
    applied at a later stage with respect to equitable relief.  This Court then
27  reconsidered its ruling.  Docket Nos. 380, 386, 418.

    [2] Attached hereto as Appendix A, solely for the Court's convenience, is a chart
28  depicting the main elements of this chain of title.

3

future;" gave Sout el Phan, or those "*selected*" by Sout el Phan, "the right to publish and sell [songs including *Khosara*] using all means and in all parts of the world;" and confirmed that Sout el Phan was thereafter "authorized …solely, fully, and irrevocably…to use this music [which included *Khosara*] *whichever way [Sout el Phan] deems necessary*…"  AMF 7-9 (emphasis added).

A few months later in *December 1995*, Sout el Phan entered into an exclusive License Agreement with EMI Music Arabia (the "EMI Agreement"), granting EMI Music Arabia, among other things, "the sole and exclusive right to protect, publish and/or sub-publish songs contained on records" from the entire catalogue of sound recordings owned or controlled by Sout el Phan in the world, excluding Egypt.  AMF 10-11.  The term of the EMI Agreement, which foresaw renewal, was later extended from "10 (ten) years and 6 (six) months" to "11 (eleven) years and 6 (six months)" (*i.e.,* until June 2007).  AMF 12-13.  Sout el Phan's president, Magdi al Amrousi, confirmed to EMI Music Arabia in September 2000 that the EMI Agreement granted EMI Music Arabia the right to "exploit" and to "publish and or sub-publish songs" subject to that agreement including *Khosara*.  AMF 21.  EMI Music Arabia's publishing rights were renewed several times, and continue through at least September 30, 2015.  AMF 37-39.

Despite having expressly authorized Sout el Phan in the August 1995 Agreement to allow others to exercise the licensed rights, Plaintiff sent a cease and desist letter to EMI Music Arabia in 1997, objecting to its exploitation of Hamdy's musical compositions.  AMF 14.  This dispute soon was resolved and the rights EMI Music Arabia acquired from Sout el Phan were *ratified and confirmed* by Plaintiff (on behalf of the Hamdy heirs) in return for a substantial payment.  AMF 15.  As part of that settlement, Plaintiff signed a release attesting that "*neither I*

4

1    ***nor the heirs have any other right to discuss [the August 1995 Agreement]***

2    ***between Hamdy and Sout el Phan] again***." *Id.*[3]

3         *Big Pimpin'* was released in December 1999 on the Jay Z album "Vol. 3…

4    The Life and Times of S. Carter."  AMF 20.  In or about **October 2000**, EMI Music

5    Arabia asserted a claim that *Big Pimpin'* infringed its rights in the *Khosara*

6    composition.  AMF 22.  EMI Music Arabia and Defendant Timothy Mosley, the

7    producer of *Big Pimpin'* entered into an agreement in 2001 (the "Mosley

8    Agreement"), pursuant to which EMI Music Arabia granted Mosley the right to

9    exploit the *Big Pimpin'* composition, including to the extent the composition

10   incorporated a portion of the *Khosara* composition, "in perpetuity throughout the

11   world, excluding Egypt, free and clear of any claim by [EMI Music Arabia] that

12   such exploitation in any way violates any of [EMI Music Arabia's] copyright

13   interest in [*Khosara*]."[4]  AMF 23.  Among other things, EMI Music Arabia in the

14   Mosley Agreement agreed to release any past, present, or future claims, including

15   as related to public performance of *Big Pimpin'*.  *Id.*  EMI Music Arabia made

16   multiple warranties and representations in the Mosley Agreement affirming its

17   ownership of exclusive rights in the *Khosara* composition.  *Id.*

18        During this time, in or about the first half of 2001, control of Sout el Phan's

19   musical catalog passed from Sout el Phan to other Egyptian entities known as

20   Fonoun and Alam el Phan (by 2002, Fonoun was no longer involved).  AMF 24,

21

22   [3]    Thereafter, the publishing rights in *Khosara* were exploited by EMI Music
23   Arabia, including in a CD containing a sound recording of *Khosara*, whose liner
     notes stated "Publisher: EMI Music Arabia."  AMF 16.  By contrast, in response to
     discovery requests, Plaintiff did not produce any documents or other information
24   reflecting revenues ***he*** derived from exploitation of *Khosara* since the year 2002.
     AMF 35-36.

25   [4] It does not matter how the 2001 Mosley Agreement is titled, or how it is
26   characterized, whether by EMI Music Arabia or otherwise, because its terms
     control.  It has been previously held to be a license.  *See Nafal v. Carter,* No. CV
27   05-2480 SVW (PJWx) (C.D. Cal. April 21, 2006), Dkt. No. 140 at 17 (referring to
     when "EMI Music Arabia…licensed…'Khosara, Khosara' to the producers and
28   creators of *Big Pimpin'*").

**DEFENDANTS' JOINT OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY
JUDGMENT ON DEFENDANTS' LICENSE AFFIRMATIVE DEFENSE**

27.  Fonoun and Alam el Phan, along with Sout el Phan, were aware of and ratified EMI Music Arabia's claims and ratified EMI Music Arabia's negotiation of a settlement with Mosley.  AMF 24-25.  Indeed, neither Alam el Phan nor any associated party has ever challenged EMI Music Arabia's ability to enter into the 2001 Mosley Agreement permitting exploitation of *Big Pimpin'* in perpetuity, or asserted that EMI Music Arabia's rights in *Khosara* had expired.  AMF 26.

On or about ***December 11, 2002***, Plaintiff entered into an agreement with Alam el Phan's owner, Mohsen Jaber (collectively "Alam el Phan") (the "December 2002 Agreement").  AMF 27.  In return for a payment of 115,000 Egyptian pounds, the December 2002 Agreement unequivocally conveyed to Alam el Phan ***complete economic rights*** in *Khosara* (and other works) for the life of the copyrights.  AMF 27-28.  Plaintiff testified that, with the exception of the change of entity from Sout el Phan to Alam el Phan (which necessitated the agreement in his view), this agreement "was the same contract that was existing with Sout el Phan," and that he understood this contract to grant the exact same rights that had been granted in the previous agreements (*e.g.,* the August 1995 Agreement). AMF 31.  Plaintiff also testified that following the December 2002 Agreement, Alam el Phan had no royalty obligations and has never accounted or made any payments to him, nor did it need to.  AMF 35.  Plaintiff's motion never mentions this critical agreement.  Among other things, the December 2002 Agreement:

   (1)   provided that for the works at issue (which expressly included *Khosara*), Jaber and his successors were "***solely the owners of the financial usage rights***" identified within the Egyptian 2002 Intellectual Property Law.  AMF 28, 32;

   (2)   granted Alam el Phan, or anyone Jaber "selects," "the right to print, publish and use the music of the [listed] songs" by "all currently known audio and/or visual [means]," ***including*** "performances," as

Mitchell Silberberg & Knupp LLP

6

**DEFENDANTS' JOINT OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON DEFENDANTS' LICENSE AFFIRMATIVE DEFENSE**

1   well as for "records, cassette tapes, and cartridges in addition to all the

2   modern technological and digital means such as the internet,

3   telephones, satellites, or any other means …in the future," and

4   specified that the rights so transferred included "all the usage means

5   and methods whether those currently available or those that will be

6   invented in the future."  AMF 27;

7   (3)   granted Alam el Phan rights for "musical re-segmentation and

8         alteration methods while maintaining the original segment of the

9         music."  AMF 29;

10  (4)   provided that "Jaber [*i.e.*, Alam el Phan] and his successor become the

11        sole publisher of the melodies of these songs in all the current

12        publishing means and in any way he deems," and that "[Alam el

13        Phan] also has the right to transfer all these rights or some of them or

14        dispose it to another company or institution using any trademark he

15        selects."  AMF 29-30; and

16  (5)   provided that Plaintiff also had "fully assign[ed]" to Jaber "any other

17        contracts and/or rights pertaining to [these] pieces of music."  AMF

18        34.

19     The effect of the December 2002 Agreement was to convey any and all

20  economic rights in *Khosara* to Alam el Phan – which necessarily included any of

21  the rights to pursue any claims relating to *Big Pimpin'* from that point forward.

22

23  ## LEGAL STANDARD

24     Plaintiff has the burden of demonstrating the absence of any genuine issue of

25  material fact on his claim.  Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S.

26  317, 322-23 (1986).  When considering a motion for summary judgment, a Court

27  may determine that entry of summary judgment in favor of the *non-moving* party is

28

Mitchell
Silberberg &
Knupp LLP

7

appropriate.  *Stoll v. Runyon*, 165 F.3d 1238, 1243 n.1 (9th Cir. 1999) ("Summary judgment for the non-moving party is appropriate if it is apparent from the record and at the hearing that there is no genuine issue of material fact, that the moving party has had a full opportunity to ventilate the issue, and the non-movant is entitled to judgment as a matter of law"); *Superior Eng'g & Elecs. Co., Inc. v. Sanders*, 833 F.2d 823, 825 (9th Cir. 1987) (same).

## ARGUMENT

As described in detail below, Plaintiff's motion should be denied and judgment entered in favor of Defendants on the following grounds:

(1) <u>License</u>: Each of Plaintiff's arguments concerning Defendants' chain of title is factually and legally without merit for at least the following reasons:

(a)  Plaintiff gave any necessary consent to grant rights in the *Khosara* composition under the 2001 Agreement between EMI Music Arabia and Defendant Timothy Mosley.

(b)  In 2001, EMI Music Arabia entered into a "perpetual" agreement with Mosley regarding *Khosara* (the "Mosley Agreement").  EMI Music Arabia's rights in *Khosara* did not terminate on June 10, 2007, and it holds to this day continuing worldwide publishing rights in *Khosara* (excluding Egypt), ***including*** the right to grant and administer "sample" licenses. Further, even assuming EMI Music Arabia's rights somehow terminated (which neither Sout el Phan nor its successor, Alam el Phan, ever claimed), Plaintiff still would not own ***any*** of the economic rights in *Khosara*, based on his prior assignment of those rights.

(c)  ***Defendants*** possess the right to publicly perform *Big Pimpin'* (including to the extent it includes *Khosara*) as one of the subjects encompassed by the Mosley Agreement.  Moreover, to any extent not

**DEFENDANTS' JOINT OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON DEFENDANTS' LICENSE AFFIRMATIVE DEFENSE**

previously granted, at a minimum, Plaintiff granted performance rights in 2002 to Alam el Phan, the successor to Sout el Phan, and thus cannot assert any claim for alleged infringement of those rights.  Indeed, Plaintiff *confirmed* that he does not own the performance right in *Khosara,* which makes his claim even more confounding.  In any event, performance of *Khosara* is covered by a blanket BMI license.

(2)  <u>Standing</u>:  Independent of the validity of Defendants' chain of title (which at the very least presents an issue of fact), Plaintiff assigned to Alam el Phan any and all of his economic rights in *Khosara* as of December 2002.  After that, he was neither an actual nor a beneficial owner of the allegedly infringed exclusive rights during the only time period that remains at issue.

# I.   PLAINTIFF'S "NEW" ARGUMENTS ARE FACTUALLY AND LEGALLY UNSUPPORTED.

## A.   <u>Plaintiff Consented to Sublicenses.</u>

Relying solely upon his own declarations,[5] Plaintiff asserts that he did not consent to the 2001 Mosley Agreement, thus rendering that agreement invalid.  UF No. 1.  This is not correct.  Plaintiff *twice* agreed to provisions authorizing his licensees to "select" others to exercise the rights conveyed – first to Sout el Phan in the August 1995 Agreement and then to Alam el Phan in the December 2002 Agreement.  AMF 7, 27, 30.  Plaintiff's motion does not even reference the December 2002 Agreement and Plaintiff's declaration does not discuss it.  This is not surprising, because these agreements, each of which conveys a right to sublicense, constitute the requisite consent to that sublicense as a matter of law. *See, e.g., Ariel (UK) Ltd. v. Reuters Group PLC*, 2006 U.S. Dist. LEXIS 79319 at

---

[5]  Plaintiff has submitted an eleven-paragraph declaration in English after testifying that he does not read or speak the language and that prior declarations had been translated for him.  *See* Defendants' Evidentiary Objections to Declaration of Osama Ahmed Fahmy.

*18 (S.D.N.Y. Oct. 31, 2006), *aff'd,* 277 F. App'x 43 (2d Cir. 2008) (dismissing case and holding that consent to challenged sublicense was granted insofar as agreement in question "expressly authorized [defendant] to grant sub-licenses").

Each of the cases cited by Plaintiff is inapposite, because in each instance, the underlying agreements were ***silent*** as to any right of the licensee to allow others to exercise the same rights. *See Gardner v. Nike, Inc.*, 279 F.3d 774, 776 (9th Cir. 2002), (noting that "[t]he agreement was silent as to Sony's right to assign its rights under the exclusive license."); *Ward v. Nat'l Geographic Soc'y*, 208 F. Supp. 2d 429, 441-43 (S.D.N.Y. 2002) (looking to agreements to decide if authority to sublicense was granted). *See Crispin v. Christian Audigier, Inc.*, 839 F. Supp. 2d 1086, 1095 (C.D. Cal. 2011) ("In *Gardner v. Nike, Inc.* [...] the Court found that an exclusive licensee whose license was silent as to a right of assignment *could not* assign that license without the copyright holder's express consent.") (emphasis in original).

Perhaps in an attempt to avoid the fact that Plaintiff (twice) expressly granted the right to sublicense, Plaintiff's motion returns to the concept of "moral rights," which this Court previously rejected.  Plaintiff suggests, without reference to applicable authority, that certain uses need to be ***specifically*** approved (apparently, even when the right to sublicense already has been assigned) not just generally approved in advance, lest the author permit a use he or she would consider to be a "distortion" or "mutilation."  Motion at 11-13.  Plaintiff's argument seeks to invoke elements of Egyptian law that do not apply here, as this Court already has held that moral rights and economic rights are distinct, and that an author's "inalienable" moral rights under Egyptian law have no application to his claim under United States law.  May 2011 Order at 15 and n.8 (finding "a transferable adaptation right exists independently of inalienable moral rights," and that a claim for violation of moral rights "does not arise under U.S. copyright law"

**DEFENDANTS' JOINT OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY
JUDGMENT ON DEFENDANTS' LICENSE AFFIRMATIVE DEFENSE**

except merely as a "reformulation" of whether the economic rights in question had been licensed); *see also* AMF 32-33.

The only question, then, is whether Plaintiff transferred the ***economic*** right allowing the use of *Khosara* in another work, and in so doing also allowed that right to be conveyed to and used by others.  At the very least, in the December 2002 Agreement, Plaintiff made it clear that he was, in fact, transferring ***all*** economic rights in *Khosara* to Alam el Phan and that Alam el Phan had the "right to transfer all these rights or some of them or dispose of it to another company or institution…."  AMF 28, 30.  He later testified that those very same rights had been transferred to Sout el Phan in the ***August 1995*** **Agreement**.  AMF 31.  In both instances, he ***agreed*** that other parties could be "selected" to exercise those economic rights, without the need for additional consent, and he cannot now claim otherwise here.

### B.   EMI Music Arabia's Rights Did Not Terminate, And Plaintiff Has No Standing To Assert That They Did.

   1.   EMI Music Arabia's Rights Were Extended and Its Grantors Have Not Claimed Otherwise.

Plaintiff concedes that the rights Sout el Phan granted to EMI Music Arabia in the 1995 EMI Agreement extended to June 2007.  Plaintiff ignores, however, that the EMI Agreement also granted to EMI Music Arabia the absolute right to renew the agreement on the same terms, and to match any third party offers:

> "EMI shall have the ***right to renew*** this Agreement on identical terms and financial conditions, otherwise the parties undertake to enter into good faith negotiations to renew this Agreement at the expiry of the Term and shall commence discussion at 1st January 2005.  To the extent that Agreement cannot be reached, [Sout el Phan] may enter into negotiations with other parties but EMI shall have the right to match any

bona fide offer received from such third parties."  AMF 12
(emphasis added). [6]

Thereafter, on or about August 1, 2008, EMI Music Arabia and Arab Audio
FZ LLC ("Arab Audio"), the licensing arm of Alam el Phan (the successor to Sout
el Phan), entered into an agreement (the "August 2008 Agreement"), bearing the
subtitle "publishing rights."  AMF 37.  In this agreement, Arab Audio extended the
broad rights in the musical compositions contained in the Sout el Phan and Alam el
Phan catalogs to EMI Music Arabia.  *Id.*  These rights included the "exclusive
administration right … for the synchronization rights relating to audio or audio-
visual broadcast of Licensor's Catalogue and Musical Reproductions (including
***sampling***, cover versions, remixes etc.)…."  *Id.*  (emphasis added).  The
August 2008 Agreement was renewed and extended in January 2010 and
January 2013, and remains in effect today.  AMF 38.  Thus, EMI Music Arabia's
rights in *Khosara* were ***extended*** to the present and through at least September 30,
2015, ***including*** specifically for the very same type of use alleged here.  AMF 37,
38.

Not only was the 1995 EMI Agreement validly renewed, but neither Alam el
Phan nor any associated party has ever revoked or challenged the continuing
validity of any rights or sublicenses EMI Music Arabia granted to third parties for
the *Khosara* composition.  AMF 39.  In fact, Sout el Phan and its successor Alam
el Phan were aware of and ***encouraged*** EMI Music Arabia's negotiation and
execution of EMI Music Arabia's settlement agreement with Mosley in 2001, and
thereafter never objected to the Mosley Agreement, nor deemed the rights granted
to Defendants, *i.e.*, the "perpetual right" to exploit *Big Pimpin,'* to have lapsed.

---

[6]   A separate agreement among Sout el Phan, EMI Music Arabia, and EMI Music
Publishing France summarized the 1995 EMI Agreement as providing it would be
"***automatically extended***…whatever the period may be."  (emphasis added).  AMF
17-19.  That document also confirms that EMI's exclusive rights included rights of
public performance and in derivative works.  AMF 17.

Mitchell
Silberberg &
Knupp LLP

12

AMF 24, 26.  At the very least, Sout el Phan and Alam el Phan's consent to the Mosley Agreement constitutes an implied license for Defendants to continue to use *Khosara* and *Big Pimpin'*.  "A contract implied in fact derives from the 'presumed' intention of the parties as indicated by their conduct. When an agreement expires by its terms, if, without more, the parties continue to perform as theretofore, an implication arises that they have mutually assented to a new contract containing the same provisions as the old."  *See, e.g*., *Autohaus Brugger, Inc. v. Saab Motors, Inc*., 567 F.2d 901, 915 (9th Cir. 1978)*, quoting Martin v. Campanaro,* 156 F.2d 127, 129 (2d Cir. 1946)

   Plaintiff, who gave Sout el Phan and Alam el Phan the right to sublicense in 1995 and 2002 (and who affirmed to Alam el Phan he had given them ***all*** of his economic rights in exchange for a lump sum), cannot now claim that the agreement between Sout el Phan and EMI Music Arabia Agreement was "terminated."

    2. In Any Event, Even If EMI Music Arabia's Rights Did Terminate, They Would Belong To Alam El Phan.

   Even assuming, contrary to the evidence, that EMI Music Arabia's rights did terminate, all of the economic rights in *Khosara* would have reverted to Sout el Phan's successor, Alam el Phan – not to Plaintiff.  In the August 1995 Agreement, Plaintiff assigned his rights in *Khosara* to Sout el Phan.  More important, Plaintiff conveyed "complete economic rights" in *Khosara* to Alam el Phan in the December 2002 Agreement for the lifetime of the copyright (*i.e.,* "the whole legal protection period specified by the law"), and then testified that the same rights had been provided to Sout el Phan.  AMF 28, 31.  Neither Sout el Phan nor Alam el Phan has contended that their right to use, license, or exploit *Khosara* in *Big Pimpin'* has expired.  AMF 26, 39.  *See, e.g. I.A.E., Inc. v. Shaver*, 74 F.3d 768, 775 (7th Cir. 1996) ("[C]onsent given in the form of mere permission ***or lack of objection*** is also equivalent to a nonexclusive license and is not required to be in

Mitchell Silberberg & Knupp LLP

1  writing") (emphasis added); *Field v. Google, Inc.*, 412 F. Supp. 2d 1106, 1116

2  (D. Nev 2006) (consent to use copyrighted work "may be inferred based on

3  silence").  *See also* 3 M & D. Nimmer, <u>Nimmer On Copyright</u> § 10.03 [A][7]

4  (Matthew Bender Rev. Ed. 2014) ("nonexclusive licenses may therefore be granted

5  orally, or may even be implied from conduct").  As a result, even if EMI Music

6  Arabia's right to license the *Khosara* composition has expired (which it has not),

7  because Plaintiff gave up all of his economic rights to Alam el Phan, the question

8  of the allocation of those rights as between Alam el Phan and EMI Music Arabia is

9  of no aid to Plaintiff.

10  **C.    <u>To The Extent It Is Necessary, Defendants Have The Right to</u>**

11  **<u>"Publicly Perform Khosara at Concerts".</u>**

12  Finally, Plaintiff asserts that, even if EMI Music Arabia had the right to

13  license *Khosara* for use in *Big Pimpin',* "EMI Music Arabia never possessed the

14  exclusive right to publicly perform *Khosara* at concerts."  (UF No. 3.)  Plaintiff's

15  assertion again ignores the evidence, including his own testimony.  Indeed, in

16  July 2007, only a month before filing this lawsuit, Plaintiff disavowed ownership

17  of the performance rights in *Khosara*, stating in a letter to a U.S. attorney that he

18  was "keen not to include reference to our performing rights and reproduction rights

19  ***because we do not own [them]***," as those rights were "totally owned" by

20  SACERAU, the Egyptian performing rights society, and its French counterpart,

21  SACEM.  AMF 40.[7] (emphasis added).

22  In any event, the evidence shows that whatever performance rights Plaintiff

23  might have owned were conveyed by him and no longer may be asserted by him.

24  In the August 1995 Agreement, Plaintiff granted Sout el Phan the right to "use this

25  _____

26  [7]   Baligh Hamdy was a member of SACERAU, and all SACERAU members automatically join the French performing rights society SACEM, which "represents SACERAU all over the world.".  AMF 41.  By virtue of adhering to

27  SACEM, members agree that only SACEM (and not the member) has standing to assert claims in any action brought against third parties on the basis of the

28  performance or mechanical rights given to it.  AMF 42-43.

Mitchell Silberberg & Knupp LLP

14

**DEFENDANTS' JOINT OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON DEFENDANTS' LICENSE AFFIRMATIVE DEFENSE**

music [including *Khosara*] whichever way [Sout el Phan] deems necessary," and to sublicense those rights to anyone it "selected."  AMF 7-8.  Similarly in the December 2002 Agreement with Alam el Phan, Plaintiff specifically granted all rights in "***performances***" and further provided that ***all*** economic rights including "public performance" rights under Egyptian law were being transferred.  AMF 27-28; *see also* AMF 29-30, 34-36; Wesley Decl. Ex. 6 (Egypt's Intellectual Property Law of 2002) at Article 147 (identifying "public performance" as among such rights).

Moreover, because *Khosara* is part of the BMI repertoire, both directly and through a license with EMI Music Arabia and through a reciprocal agreement with SACEM (AMF 41, 44-46), any public performance of *Khosara* at concerts would be covered by the blanket license obtained by the relevant venue.  *See, e.g., Freeplay Music, Inc. v. Cox Radio, Inc.*, 404 F. Supp. 2d 548, 553-55 (S.D.N.Y. 2005) (finding television commercials alleged to be derivative works incorporating plaintiff's musical compositions were covered by blanket performance license from BMI despite author's alleged lack of royalties).  As a result, to the extent Defendants required the right to "publicly perform *Khosara*," as Plaintiff now claims, they obtained that right through the BMI blanket license.  *See also, e.g., Broadcast Music, Inc. v. Columbia Broad. Sys., Inc.,* 441 U.S. 1, 5, 99 S. Ct. 1551, 1555, 60 L.Ed.2d 1, 7 (1979) ("blanket licenses…give the licensees the right to perform any and all of the compositions owned by the members or affiliates as often as the licensees desire for a stated term"); *Broadcast Music, Inc. v. McDade & Sons, Inc.,* 928 F. Supp. 2d 1120, 1124 (D. Ariz. 2013) (observing that "BMI grants music users such as broadcasters, owners and operators of concert halls, restaurants, nightclubs, and hotels the right to publicly perform any of the works in the BMI repertoire through 'blanket license agreements.'").

**DEFENDANTS' JOINT OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON DEFENDANTS' LICENSE AFFIRMATIVE DEFENSE**

1   Consistent with the grant of performance rights, affiliates of EMI Music

2   Arabia, along with Sout el Phan, registered the right of public performance in

3   *Khosara*.  BMI, an entity solely concerned with public performance, produced

4   records identifying various EMI entities and Soutelphan as the publishers of

5   "Khasara Khasar [*sic*]."  AMF 44-45.  The online BMI database lists an EMI entity

6   (EMI Blackwood, a Defendant) as the "publisher."  AMF 46.

7   Plaintiff's admission that he does not own performance rights in *Khosara*

8   (supported by the evidence) by itself disposes of Plaintiff's claim that Defendants

9   lacked the right to perform *Khosara* publicly as part of *Big Pimpin'*.  And even if

10   Plaintiff ever had performance rights in *Khosara*, the uncontroverted evidence

11   makes clear that Plaintiff transferred – and thus no longer owns – whatever

12   performance rights he may have owned (or claimed to have owned).

13   **II.   PLAINTIFF LACKS STANDING TO ASSERT THE CLAIMS**
     **REMAINING AFTER THIS COURT'S ORDER ON THE STATUTE**
14   **OF LIMITATIONS.**

15   "[F]ederal courts are required sua sponte to examine jurisdictional issues

16   such as standing."  *Chapman v. Pier 1 Imports (US), Inc.*, 631 F.3d 939, 954 (9th

17   Cir. 2011), *quoting Bernhardt v. Cnty. of Los Angeles*, 279 F.3d 862, 868 (9th Cir.

18   2002).  Only "[t]he legal or beneficial owner of an exclusive right under a

19   copyright is entitled … to institute an action for any infringement of that particular

20   right committed while he or she is the owner of it."  17 U.S.C. § 501(b).  Plaintiff

21   is neither.

22   In its December 2011 Order, this Court held that "Plaintiff shall not be

23   permitted to seek damages from any alleged infringement occurring prior to

24   August 31, 2004."  Docket No. 309 at 16.  Prior to that time, including at the time

25   of Plaintiff's initial motion for partial summary judgment, Plaintiff's claims of

26   infringement and related damages covered the entire period beginning at the

27   release of *Big Pimpin'* in or about December 1999.  *See, e.g.*, Complaint at ¶¶ 12,

28

Mitchell
Silberberg &
Knupp LLP

**DEFENDANTS' JOINT OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY**
**JUDGMENT ON DEFENDANTS' LICENSE AFFIRMATIVE DEFENSE**

20.  As the case then stood, the Court found nominally (and with little commentary) "that plaintiff Osama Fahmy has standing to bring claims that defendants' works infringed the 'Khosara, Khosara' copyright."  May 2011 Order at 18.[8]  At the same time, the Court denied Plaintiff's contention, "to the extent it conflicts with this [O]rder," that "the copyright [in *Khosara*], insofar as it includes 'moral rights' in Egypt and the exclusive right to make derivative works, descended to and is controlled by Hamdy's heirs."  *Id.* at 18-19.

Upon this Court's order limiting this case to alleged infringement occurring after August 31, 2004, ***the December 2002 Agreement*** became dispositive on the issue of Plaintiff's rights, and thus his standing to assert the remaining claims (*i.e.*, after August 31, 2004).  As the Court already has held, Egypt's Intellectual Property Law of 2002 contains a "transferable adaption right" as one of these economic, non-moral rights.  *See* Order at 15 and n.8; AMF 32-33.  As a result, regardless of the chain of title ***prior*** to the December 2002 Agreement, the December 2002 Agreement conclusively divested Plaintiff of any claim to the economic rights in *Khosara,* including his claims in this case, from that time forward.

As this Court has recognized, the December 2002 Agreement described Alam el Phan as "publisher of the melodies of these songs and all current publishing means in any way," including via "musical re-segmentation and alteration methods while maintaining the original segment of the song."  May 2011 Order at 17.  The December 2002 Agreement states several times that the rights

---

[8]   The Court did not analyze standing more fully in its May 2011 Order and, therefore, correctly noted that "[t]here does not seem to be any dispute that 'Khosara, Khosara' was authored by Baligh Hamdy, nor that plaintiff is among his heirs," and that "[t]he gravamen of plaintiff's motion is that the treatment of moral rights and of the right to make derivative works under Egyptian law precludes a finding that defendants had a license to make the work at issue" (a contention with which the Court disagreed).  May 2011 Order at 7.  However, this limited finding only held that Plaintiff had standing to seek damages from 1999.  As discussed herein, that crucial fact changed after the Court's ruling on the statute of limitations.

**DEFENDANTS' JOINT OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON DEFENDANTS' LICENSE AFFIRMATIVE DEFENSE**

1    conveyed (in exchange for a payment of 115,000 Egyptian pounds) were the

2    broadest rights conceivable.  Among other things, the December 2002 Agreement

3    confirmed that:

4    • Alam el Phan (and its president) were becoming **sole owners** of the

5    "financial usage rights stated in [Egypt's Intellectual Property Law of

6    2002] for the pieces of music listed hereinafter in … the whole

7    world,"

8    • the uses permitted included "all the usage means and methods whether

9    those currently available or those that will be invented in the future,"

10   and

11   • the ownership of these rights would endure "during the whole legal

12   protection period specified by the law."

13   AMF 28.  Plaintiff additionally confirmed that the assignment to Alam el Phan

14   included "*any other contracts and/or rights* pertaining to [these] pieces of music."

15   AMF 34 (emphasis added).

16   Therefore, Plaintiff unequivocally transferred in 2002 whatever interest he

17   still might have had in the exploitation of *any* economic rights pertaining to the

18   *Khosara* composition.  He is not the legal or a beneficial owner of any exclusive

19   right in *Khosara* for any period remaining in this lawsuit.  Plaintiff thus lacks

20   standing to sue for alleged infringement after December 2002, and as all of his

21   claims prior to *2004* are barred by the statute of limitations, his complaint should

22   be dismissed for lack of standing.  *See Warren v. Fox Family Worldwide, Inc.*,

23   328 F.3d 1136, 1144-45 (9th Cir. 2003) (affirming dismissal where plaintiff was

24   neither legal nor beneficial owner).

25

26

27

28

18

## <u>CONCLUSION</u>

Defendants respectfully request that Plaintiff's Motion be denied. Additionally, Defendants respectfully request that the Court review Plaintiff's standing to assert any remaining claims and dismiss this matter pursuant to F.R.C.P. 12(b)(1).

Dated:  February 27, 2015          MITCHELL SILBERBERG & KNUPP LLP


                                   By:/David A. Steinberg/
                                      Russell J. Frackman
                                      Christine T. Lepera
                                      David A. Steinberg
                                      Alexa L. Lewis

                                      Attorneys for Defendants Rob Bourdon,
                                      Brad Delson, Mike Shinoda, Dave Farrell,
                                      Joseph Hahn, Chester Bennington, Big Bad
                                      Mr. Hahn Music, Chesterchaz Publishing,
                                      Kenji Kobayashi Music, Machine Shop
                                      Recordings LLC, Nondisclosure Agreement
                                      Music, Rob Bourdon Music, Warner Music,
                                      Inc., UMG Recordings, Inc., Roc-A-Fella
                                      Records, LLC, Universal Music Group
                                      Distribution, Corp. f/k/a Universal Music &
                                      Video Distribution, Corp., MTV Networks
                                      Enterprises, Inc., EMI Blackwood Music
                                      Inc., Timbaland Productions, Inc., Timothy
                                      Mosley, Paramount Home Entertainment,
                                      Inc., Paramount Pictures Corporation

Dated:  February 27, 2015          CALDWELL LESLIE & PROCTOR, PC


                                   By:/Linda M. Burrow/
                                      Linda M. Burrow
                                      Eric S. Pettit

                                      Attorneys for Defendant
                                      Shawn Carter (pka Jay Z)

# APPENDIX A

# APPENDIX A

