1 | MITCHELL SILBERBERG & KNUPP LLP
RUSSELL J. FRACKMAN (SBN 49087)
2 | rjf@msk.com
DAVID A. STEINBERG (SBN 130593)
3 | das@msk.com
ALEXA L. LEWIS (SBN 235867)
4 | all@msk.com
11377 West Olympic Boulevard
5 | Los Angeles, California 90064-1683
Telephone:   (310) 312-2000
6 | Facsimile:   (310) 312-3100

7 | CHRISTINE T. LEPERA (Pro Hac Vice)
ctl@msk.com
8 | MITCHELL SILBERBERG & KNUPP LLP
12 East 49th Street, 30th Floor
9 | New York, NY 10017
Telephone:   (212) 509-3900
10 | Facsimile:   (212) 509-7239

11 | Attorneys for Various Defendants

CALDWELL LESLIE &
PROCTOR, PC
LINDA M. BURROW (SBN 194668)
  burrow@caldwell-leslie.com
ERIC S. PETTIT (SBN 234657)
  pettit@caldwell-leslie.com
725 South Figueroa Street, 31st Floor
Los Angeles, California 90017-5524
Telephone: (213) 629-9040
Facsimile: (213) 629-9022

Attorneys for Defendant Shawn Carter
(pka Jay Z)

FILED
CLERK, U.S. DISTRICT COURT

March 26, 2015

CENTRAL DISTRICT OF CALIFORNIA
BY: ___CMJ___ DEPUTY

12
13
14

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

15 | Osama Ahmed Fahmy,

16 |          Plaintiff,

17 |     v.

18 | Jay-Z (aka Shawn Carter), Timothy
Mosely, Kyambo Joshua, Rob Bourdon,
19 | Brad Delson, Mike Shinoda, Dave Farrell,
Joseph Hahn, Chester Bennington, Big
20 | Bad Mr. Hahn Music, Chesterchaz
Publishing, EMI Blackwood Music, Inc.,
21 | EMI Music Publishing Ltd., Kenji
Kobayashi Music, Lil Lulu Publishing,
22 | Machine Shop Recordings, LLC, Marcy
Projects Productions II, Inc., MTV
23 | Networks Enterprises Inc., Nondisclosure
Agreement Music, Paramount Home
24 | Entertainment, Inc., Paramount Pictures
Corporation, Radical Media, Rob Bourdon
25 | Music, Roc-A-Fella Records, LLC,
Timbaland Productions, Inc., UMG
26 | Recordings, Inc., Universal Music and
Video Distribution, Inc., and Warner
27 | Music Inc.,

28 |          Defendants.

Case No. CV 07-05715 CAS (PJWx)

The Honorable Christina A. Snyder

[PROPOSED] JOINT SURREPLY
OF DEFENDANTS IN
OPPOSITION TO PLAINTIFF'S
MOTION FOR PARTIAL
SUMMARY JUDGMENT

Date:          March 30, 2015
Time:          10:00 a.m.
Ctrm:          5

Pre-Trial Conf.:   September 14, 2015
Trial:          October 13, 2015

Mitchell
Silberberg &
Knupp LLP

[PROPOSED] JOINT SURREPLY OF DEFENDANTS
IN OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

## TABLE OF CONTENTS

INTRODUCTION ....................................................................................................1

ARGUMENT ..........................................................................................................2

I.   Plaintiff's New Submissions and Arguments on Reply Do Not Save His
     Challenge to Defendants' License Defense. ...................................................2

     A.   Sufficient Consent was Given for Any Sublicenses. ...........................3

     B.   EMI Music Arabia's Rights in *Khosara* Were Renewed By Alam
          El Phan, Sole Owner of Economic Rights in *Khosara* Since 2002. .....6

     C.   To Any Extent Necessary, Defendants Are Licensed to "Perform
          *Khosara Khosara* at Concerts". ..........................................................7

II.  Plaintiff Lacks Standing to Maintain this Action Under the 1909 Act or
     Under the 1976 Act. .....................................................................................10

     A.   The Alam el Phan "License" Was an Assignment of the Entire
          Copyright..............................................................................................11

     B.   Invoking Moral Rights Does Not Assist Plaintiff................................12

     C.   Plaintiff is Not a "Beneficial Owner" of Any Rights at Issue. ...........12

     D.   Plaintiff's Self-Serving Reply Declaration and Related "Evidence"
          Asserting Unexpressed Intentions Are Irrelevant...............................13

i

Mitchell
Silberberg &
Knupp LLP

# TABLE OF AUTHORITIES

**Page(s)**

## FEDERAL CASES

*All Steel Engines, Inc. v. Taylor Engines, Inc.*,
  88 F. Supp. 745 (N.D. Cal. 1950)........................................................... 3

*Chaveriat v. Williams Pipe Line*,
  11 F.3d 1420 (7th Cir. 1993) ............................................................... 10

*DRK Photo v. McGraw-Hill Cos.*,
  2014 U.S. Dist. LEXIS 78864 (D. Ariz. June 10, 2014) ............................ 10-11

*Freeplay Music, Inc. v. Cox Radio, Inc.*
  404 F. Supp. 2d 548 (S.D.N.Y. 2005) .................................................... 13

*Gardner v. Nike*,
  279 F.3d 774 (9th Cir. 2002) ................................................................ 5

*Peer Int'l Corp. v. Latin Am. Music Corp.*,
  161 F. Supp. 2d 38 (D.P.R. 2001) ........................................................ 11

*Righthaven LLC v. Hoehn*,
  716 F. 3d 1166 (9th Cir. 2013) ............................................................ 10

*United Commercial Ins. Serv., Inc. v. Paymaster Corp.*,
  962 F.2d 853 (9th Cir.1992) ................................................................. 14

*Ward v. Nat'l Geographic Soc'y*,
  208 F. Supp. 2d 429 (S.D.N.Y. 2002) ..................................................... 5

## FEDERAL STATUTES

Federal Rules of Evidence
  Rule 801(d)2(A) ................................................................................. 8

U.S. Copyright Act. 17 U.S.C.
  § 106(4)............................................................................................ 7
  § 501(b)........................................................................................... 11

## OTHER AUTHORITIES

3 M & D. Nimmer, Nimmer On Copyright
  § 10.03 [A][7] (Matthew Bender Rev. Ed. 2014) ...................................... 6

Black's Law Dictionary 69 (9th ed. 2009) ................................................ 3

ii

Mitchell
Silberberg &
Knupp LLP

Exhibit A, Page 4

# TABLE OF AUTHORITIES

## (Cont'd)

**Page(s)**

Egyptian Intellectual Property Law of 2002 (Law No. 82 of 2002 on the
   Protection of Intellectual Property Rights)
   Article 147 ........................................................................................2, 7-8, 11, 12
   Article 149 ...........................................................................................2, 7, 11, 12

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Mitchell
Silberberg &
Knupp LLP

iii

**[PROPOSED] JOINT SURREPLY OF DEFENDANTS**
**IN OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

**INTRODUCTION**

In a twenty-five page reply accompanied by three new declarations (the most recent untimely filed on Wednesday, March 18), Plaintiff makes new arguments and produces (largely inadmissible) new evidence, but cannot avoid that Defendants' chain of title authorizing any use of the "Khosara Khosara" musical composition ("*Khosara*") in *Big Pimpin'* is sound.  None of the arguments or evidence presented mandates the entry of partial summary judgment on Defendants' license defense.  At the very least, there are triable issues of fact concerning whether (1) Plaintiff consented to sublicenses (or that Plaintiff's consent was necessary since he assigned away *all* economic rights in *Khosara*); (2) EMI Music Arabia's rights to license *Khosara* continue to this day; and (3) Defendants have the right to publicly perform *Khosara* to the extent contained in *Big Pimpin'*.

In May 2011, the Court denied Plaintiff's motion for summary judgment challenging Defendants' license defense, holding (1) that the scope of rights conveyed in a chain of title underlying the 2001 Settlement Agreement between Defendant Timothy Mosley and EMI Music Arabia presented issues of fact; and (2) that Plaintiff's attempts to assert Egyptian "moral rights" were not relevant to the license of economic rights under U.S. copyright law.  Docket No. 271 ("May 2011 Order") at 18.  Plaintiff's renewed motion similarly should be denied.

Egyptian copyright law provides for two sets of "rights": economic (financial) rights which can be freely transferred, and "moral" rights which always remain with the author.  *See* May 2011 Order at 15-16.   As the Court recognized, only "economic rights" are at issue here.  In December 2002, after Plaintiff had previously granted exclusive licensing rights to Sout el Phan in 1995, Plaintiff entered into another agreement with Alam el Phan (the successor to Sout el Phan) (the "2002 Agreement").  This 2002 Agreement, completely ignored in Plaintiff's motion, was a total assignment of all rights in *Khosara* cognizable under U.S.

Mitchell
Silberberg &
Knupp LLP

1

1   copyright (*i.e., **all*** economic rights under Egypt's 2002 IP Law, which include
2   "reproduction, broadcasting, re-broadcasting, public performance, public
3   communication, translation, [***and***] adaptation").   *See* Wesley Decl. Ex. 6 (Docket
4   No. 452-5) at Articles 147, 149 (emphasis added).   Accordingly, as of 2002, only
5   Alam el Phan or EMI Music Arabia possessed rights to bring any claim for
6   infringement of any economic rights in *Khosara*.   But in the 2001 Settlement
7   Agreement, EMI Music Arabia licensed to Mosley (and through him the other
8   Defendants) the right to use *Khosara* in *Big Pimpin'* and, to the extent necessary,
9   Sout el Phan and Alam el Phan ***approved of*** the 2001 Settlement Agreement.
10  Neither has ever claimed that Defendants do not possess these rights.

11

12                                      **ARGUMENT**

13  **I.      Plaintiff's New Submissions and Arguments on Reply Do Not Save His**
14          **Challenge to Defendants' License Defense.**

15          Plaintiff would like the Court to completely ignore his 2002 Agreement with
16  Alam el Phan, and focus exclusively on the terms of the 1995 Agreement with Sout
17  el Phan.   Plaintiff argues that, since the 2002 Agreement came after the 2001
18  Mosley Agreement, it must be irrelevant to Defendants' chain of title.   Plaintiff is
19  wrong.   First, Plaintiff ***conceded*** that the rights transferred in the 2002 Agreement
20  were the same as those transferred in the 1995 Agreement.   Defendants' Statement
21  of Genuine Issues and Additional Material Facts (Docket No. 465) ("AMF") ¶ 31.
22  Therefore, the language in the 2002 Agreement helps to confirm what rights
23  Plaintiff transferred to Sout el Phan in 1995.   Second, even if Sout el Phan did not
24  have each of the rights it initially licensed to EMI Music Arabia in ***1995*** (which
25  Defendants dispute), EMI Music Arabia's license (and Mosley's sublicense)
26  became fully authorized, valid, and effective in ***2002*** when Plaintiff assigned ***all***

27

28

Mitchell
Silberberg &
Knupp LLP

                                         2

Exhibit A, Page 7

economic rights in *Khosara* to Sout el Phan's successor, Alam al Phan.[1]  At that time, as between the owner, Alam el Phan, and EMI Music Arabia, there was no dispute.  And Plaintiff, having given away those rights, could not dispute that EMI Music Arabia acquired the necessary rights.

### A.   Sufficient Consent was Given for Any Sublicenses.

In 2002, after granting exclusive rights in *Khosara* to Sout el Phan in 1995, Plaintiff confirmed that grant and independently assigned all rights in *Khosara* to that company's successor, Alam el Phan:

> "I hereby assign to Mr. Mohsen Mohammad Jaber [*i.e.*, Alam el Phan] … ***and to whoever he selects,*** the right to print, publish and use the music of the songs stated in this statement on all currently known audio and/or visual of videos, ***performances***, records, cassette tapes, and cartridges in addition to all the modern technological and digital means such as the internet, telephones, satellites, or any other means that may be invented in the future ***including musical re-segmentation and alteration methods*** while maintaining the original segment of the music…
>
> I do hereby further state that by signing this authorization and waiver of these pieces of music to Mr. Mohsen Mohammad Jaber, ***I would have authorized him solely and/or whoever he selects, fully, and irrevocably the right to use this music in whatever way he deems necessary***.  Mr. Mohsen Mohammad Jaber or his successors are ***solely the owners of the financial usage rights stated in the*** Law No.

---

[1]  According to the after-acquired title doctrine, "title to property automatically vests in a person who bought the property from a seller who acquired title only after purporting to sell the property to the buyer."  Black's Law Dictionary 69 (9th ed. 2009).  By analogy, upon Plaintiff's 2002 assignment, to any extent Sout el Phan and Alam el Phan did not previously acquire them from Plaintiff, Alam al Phan's after-acquired rights automatically vested in EMI Music Arabia and Mosley.  While most prevalent in real property law, the after-acquired title doctrine has been applied to other types of property, including intellectual property.  *See, e.g., All Steel Engines, Inc. v. Taylor Engines, Inc.*, 88 F. Supp. 745, 747 (N.D. Cal. 1950) (implied warranty of title in patent license "draws to it any after-acquired right or title of the warrantor, which is carried to the benefit of the person to whom the warranty runs").  Application of this doctrine here is entirely logical, since Plaintiff granted perpetual rights to Alam el Phan in 2002.

3

**[PROPOSED] JOINT SURREPLY OF DEFENDANTS
IN OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

Exhibit A, Page 8

1
2
3

> 82 FOR THE YEAR 2002 for the pieces of music listed hereinafter in the Arab Republic of Egypt and the whole world….

4
5
6
7
8

> Mr. Mohsen Mohammad Jaber and his successor become the *sole publisher of the melodies of these songs* in all the current publishing means and in any way he deems whether it was direct or indirect.  Mr. Mohsen Mohammad Jaber *also has the right to transfer all these rights or some of them or dispose them to another company or institution* using any trademark he selects....

9
10
11
12
13

> I did also fully assign to Mr. Mohsen Mohammad Jaber all our rights clarified in the contract signed on 2/12/1968 between Sout El Phan Company and the musician Mr. Baleegh Hamdi, *or any other contracts and/or rights pertaining to those pieces of music*." (Lewis Decl., Ex. 10 (emphases added); *see* AMF 27-36.)

14
15

The key facts concerning Plaintiff's express consent to sublicenses cannot genuinely be disputed:

16
17
18
19
20
21

● Plaintiff *twice* agreed that his exclusive licensees (Sout el Phan in 1995, and its successor Alam el Phan in 2002) had the right to "transfer" and "select" others to exercise the rights conveyed in the Hamdy "catalog" (including *Khosara.*)  AMF 7, 27, 29-31.  In 2002, he agreed to this *notwithstanding* having learned the previous year of the Settlement Agreement between EMI Music Arabia and Mosley.  *See* Order dated August 12, 2013 (Docket No. 380) at 3.

22
23
24
25
26
27

● In 1995, Sout el Phan licensed exclusive rights to exploit its catalog of musical compositions (which included the Hamdy catalog) to EMI Music Arabia. These rights included the rights to "publish and sub-publish songs" contained in the catalog and the right to "renew" the license and "match" any third party offer.  AMF 10-12.  Later, through Alam el Phan and its associated licensing company Arab

28

Mitchell
Silberberg &
Knupp LLP

4

Exhibit A Page 9

1   Audio, the licensed rights in the Sout el Phan catalog were extended

2   to EMI Music Arabia at least through 2015.  AMF 37-39.

3   • In 2001, EMI Music Arabia issued a "perpetual" license to

4   Defendant Mosley for any use of *Khosara* in *Big Pimpin'*.  Sout el

5   Phan and Alam el Phan knew of, consented to, and encouraged that

6   agreement.  AMF 21, 24-25.  Neither Sout el Phan nor Alam el Phan

7   has ever claimed since 2001 that this settlement was improper or that

8   any use of *Khosara* in  *Big Pimpin'* was unlicensed.  AMF 26, 39.

9   Despite these undisputed facts, Plaintiff now argues that Defendants' license

10  defense fails unless it can be shown that Plaintiff or other Hamdy heirs

11  *additionally* gave consent directly to EMI Music Arabia at the time of the 2001

12  Settlement Agreement.  Plaintiff ignores the express ***unrestricted*** consent to

13  sublicensing given to Sout el Phan in 1995, and that all rights to sublicense and all

14  rights to grant further sublicenses were exclusively transferred to Alam el Phan

15  with all other economic rights in 2002.  Just as importantly, Plaintiff ignores that

16  from 2002 forward, the ***actual*** owner of the U.S. copyright in *Khosara* (*i.e.,* the

17  exclusive economic rights) was Alam el Phan.  *See infra* at 10-12.   Nor can

18  Plaintiff argue that consent from the heirs was ever required on the basis of any

19  inalienable "moral rights," since, as the Court has already found, such rights are

20  inapplicable to claims brought under U.S. Copyright Law.[2]

21

22

23  [2] Plaintiff now appears to concede that the "sublicensing" rule articulated by cases such as *Gardner v. Nike*, 279 F.3d 774 (9th Cir. 2002), pertains only where, unlike here, the original licensing agreement is ***silent*** as to any right to sublicense.  *See* Opp. at 10; *Gardner* at 776, 781 (describing agreement as "silent" and finding consent from licensor necessary "absent explicit contractual language to the contrary").  Moreover (although a moot point here), the cases cited by Plaintiff, including *Gardner*, do not stand for the proposition that a copyright owner must approve each sublicense throughout an entire chain of exploitation, but instead for the necessity of obtaining consent from the immediate source of a sublicensing party's rights, *i.e.,* the "licensors"  rather than owners.  *See id.*; *Ward v. Nat'l Geographic Soc'y*, 208 F. Supp. 2d 429, 443 (S.D.N.Y. 2002) (licensee wishing to sublicense must "get explicit consent from his or her licensor").

28

Mitchell
Silberberg &
Knupp LLP

5

Exhibit A Page 10

1   Plaintiff concedes that either Sout el Phan or Alam el Phan **could** have

2   issued a sublicense directly to Mosley.  However, Plaintiff also argues (incorrectly)

3   that Sout el Phan and/or Alam el Phan were **required** to approve the EMI Arabia-

4   Mosley Sublicense – and submits new evidence purporting (wrongly) to show that

5   they never did.  *See* Reply at 3-7.  On the contrary, even if such approval was

6   necessary, the evidence demonstrates both Sout el Phan and Alam el Phan **did** in

7   fact "select" (and indeed license) Mosley as the recipient of rights in *Khosara*

8   through the 2001 Settlement Agreement they encouraged EMI Music Arabia to

9   conclude, just as Plaintiff's contracts permitted them to.[3]  *See* 3 M & D. Nimmer,

10  Nimmer On Copyright § 10.03 [A][7] (Matthew Bender Rev. Ed. 2014)

11  ("nonexclusive licenses may …be granted orally, or may even be implied from

12  conduct").  Plaintiff simply has no right to complain about these transactions when

13  he agreed to allow Sout el Phan and Alam el Phan to extend their rights to

14  whomever they wanted, in whatever way they deemed necessary, and where Alam

15  el Phan effectively became the copyright owner for the entire period now at issue.

16     **B.**   **EMI Music Arabia's Rights in *Khosara* Were Renewed By Alam**

17          **El Phan, Sole Owner of Economic Rights in *Khosara* Since 2002.**

18       Plaintiff's assertion that EMI Music Arabia's license expired is similarly

19  meritless, as the grantors of such license (Sout el Phan and Alam el Phan) have not

20  disputed that the license remains in effect.  AMF 26, 39.  Again, the key facts

21  remain undisputed:  (1) the 1995 agreement between Sout el Phan and EMI Music

22  Arabia provided for renewal of rights (including a right of first refusal and a right

23  to match other bona fide offers) in the catalog that included *Khosara*;  (2) Sout el

---

24  [3] In a telling admission, Plaintiff states that  "[t]o be sure, attached to the Ancliff

25  Declaration are emails from Alam el Phan indicating that it wanted EMI Arabia to do something about *Big Pimpin'*."  Reply at 6.  But even this dramatically

26  understates what these documents show.  Plaintiff instead concocts scenarios that are contradicted by the evidence and that even if true would be irrelevant. *Id.* at 6-

27  7; To the contrary, the testimony and documents plainly show that all three parties were fully in agreement that EMI Music Arabia negotiate and conclude a

28  settlement agreement in 2001 concerning any use of *Khosara* by *Big Pimpin'*. *See, e.g.,* AMF 21, 24-26; Ancliff Decl. ¶¶ 6-7, 9-14 & Exs. 5, 7-9.

Mitchell
Silberberg &
Knupp LLP

**[PROPOSED] JOINT SURREPLY OF DEFENDANTS
IN OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

**Exhibit A, Page 11**

1   Phan and Alam el Phan knew in 2001 that EMI Arabia were entering into a

2   settlement with Mosley concerning *Khosara* and *Big Pimpin'* ; (3) Plaintiff

3   transferred all economic rights in *Khosara* exclusively to Alam el Phan in 2002 for

4   the entire life of the copyright; (4) EMI Music Arabia renewed its broad publishing

5   rights in the Sout el Phan catalog, including for purposes of sampling, and has

6   continued to renew these rights through 2015; and (5) neither Sout el Phan nor

7   Alam el Phan has ever asserted that 1995 agreement was terminated or that the

8   2001 Settlement Agreement was no longer effective.  *See* AMF 26, 39.

9        Plaintiff ignores these critical facts, insinuating instead that *Khosara* might

10  somehow, through some unspecified mechanism, have been removed from the

11  Sout el Phan catalog of which it had been a fixed part since at least 1968.  Reply at

12  8.  Such speculation hardly comports with the 2009-produced business records and

13  online database of BMI, which have continued to show Sout el Phan and affiliates

14  of EMI Music Arabia as the publishers of *Khosara* in the United States.  AMF 44-

15  46.[4]

16      **C.**   **To Any Extent Necessary, Defendants Are Licensed to "Perform**

17          ***Khosara Khosara* at Concerts".**

18       The right to "publicly perform" Khosara is an assignable "economic" right

19  under both Egyptian Copyright Law (Articles 147, 149) and the U.S. Copyright

20  Act. 17 U.S.C. §106(4).  Plaintiff wholly ignores that his 1995 agreement with

21  Sout el Phan conveyed the right "to publish [*Khosara*] using all means and in all

22  parts of the world" and "to use this music whichever way it deems necessary,"

23  including not only for embodiment on records but "***for any other use***."  AMF 7-8.

24  Plaintiff also ignores that his 2002 Agreement with Alam el Phan conveyed rights

25  to "***performances***" and confirmed that the rights being assigned included ***all***

26

27  ---
    [4] Even if one assumed, contrary to the evidence, that EMI Music Arabia's license
    in the Sout el Phan catalog was ***not*** renewed, under the 2002 Agreement, any
    exclusive economic rights in *Khosara* not currently in the hands of EMI Music

28  Arabia would be solely owned by Alam el Phan.

Mitchell Silberberg & Knupp LLP

7

1 economic rights under Egypt's 2002 IP Law, which as noted specifically *include*

2 rights of public performance (Article 147).   As Plaintiff testified, these are the

3 very same rights that had earlier been conveyed to Sout el Phan in 1995.  AMF 27-

4 29, 31-32.   Plaintiff himself cannot own any such rights, both by virtue of these

5 agreements and because his own lawyer conceded that he *did not own* them.

6 Reply at 23 and n.9; AMF 40.[5]

7 　　　In an effort to avoid his transfer of *all* economic rights, Plaintiff seizes upon

8 a single sentence at the conclusion of the 2002 Agreement as purportedly showing

9 that he "did not give away all of his rights to publicly perform *Khosara Khosara*,"

10 and tries to cobble together a theory that Defendants are not licensed to use these

11 rights, or at least that Plaintiff is the beneficial owner of certain performance rights

12 pertaining to this case.  Reply at 22.  Both assertions fail.

13 　　　The 2002 Agreement (several times) clearly and unambiguously transferred

14 to Alam el Phan all of the Hamdy heirs' rights to exploit *Khosara* through public

15 performance, along with all other economic rights.  Therefore, the single line at the

16 conclusion of the 2002 Agreement whereby Plaintiff claims to reserve "our rights

17 in respect of the public performance and mechanical printing" (after noting his

18 lump-sum payment from Alam el Phan of 115,000 Egyptian pounds) cannot mean

19 that Plaintiff retained any exclusive "economic" rights – including the right to

20 public performance – since those rights are transferred exclusively to Alam el Phan

21 in the body of the Agreement.  That transfer is consistent with the entirety of the

22 2002 Agreement that repeatedly refers to a complete and unrestricted transfer of all

23 rights.

24 　　　Plaintiff's argument that he is the "beneficial owner" of public performance

25 rights that could support an infringement claim also fails.  Initially, even if that

26

27 [5] Plaintiff's attempt to disavow his lawyer's statement (without explaining why his lawyer made the statement) is unavailing. An admission by a party representative, which Plaintiff produced and authenticated, hardly counts as hearsay. *See* Reply at 23 n.9; Fed. R. Evid. 801(d)2(A).

28

**[PROPOSED] JOINT SURREPLY OF DEFENDANTS
IN OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

**Exhibit A, Page 13X**

1  were true, Defendants would still possess a valid license from the legal owner –

2  Alam el Phan and/or EMI Music Arabia.  Moreover, despite producing no

3  documents showing him or the other Hamdy heirs' to have **any** beneficial income

4  stream from *Khosara* after 2001 (AMF 35-36), Plaintiff now claims that he is

5  "recognized as a rights holder by, and subject to [performance] royalties from,

6  BMI."  Reply at 23.  He disregards however that the very same documents list **Sout**

7  **el Phan** as *Khosara's* publisher.  AMF 45.   Likewise, the new "Declaration of

8  Louis Diringer" is woefully inadequate to demonstrate that Plaintiff retained any

9  economic right involving public performance of *Khosara* and/or *Big Pimpin'* (or

10  any other economic right), or any beneficial interest in such rights.[6]  And nothing

11  in the new Diringer declaration disputes that Alam el Pham, Sout el Phan, and/or

12  EMI currently own full economic rights, including all rights of public performance,

13  in *Khosara.*

14       While Defendants do not dispute that *Khosara* is part of the

15  SACEM/SACERAU repertoire, Plaintiff cannot show that Defendants lack any

16  necessary rights to publicly perform *Khosara* to any extent used in *Big Pimpin'*.

17  Nor can he show that he retains some slender beneficial ownership interest in

18  rights involving *Khosara* managed through collective rights organizations

19  sufficient to confer standing for purposes of this case.

20

21

22

23  ───────────────

24  [6] There is no foundation for the Diringer declaration or any explanation of its contents.  Rather, it is based on an untranslated "royalty statement" created on March 17, 2015, purporting to be for "*Khossara Ya Gara*" by "Mr Hamdi BALIGHE," prepared apparently for the express purpose of this litigation. Mr. Diringer does not state that his declaration is made on the basis of personal knowledge or the business records of SACEM on which it is purportedly based, and does not even indicate how he would be competent to testify to the matters addressed.  Further, neither his declaration nor the untranslated "statement" show how they pertain to this litigation, to *Big Pimpin'*, to rights within the United States, or to exclusive rights of public performance.

25

26

27

28

Mitchell
Silberberg &
Knupp LLP

9

**[PROPOSED] JOINT SURREPLY OF DEFENDANTS**
**IN OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

## II.   Plaintiff Lacks Standing to Maintain this Action Under the 1909 Act or Under the 1976 Act.

Regardless of the procedural posture, two undisputed facts demonstrate that Plaintiff lacks standing to pursue the only claims remaining in this case:  (1) Plaintiff assigned all economic rights in *Khosara* to Alam el Phan in 2002 for a one-time payment or "buyout," thereby ceasing to be the "owner" of those rights; and (2) only the period after August 2004 remains at issue.  Plaintiff eventually must confront this dispositive defect in his ability to pursue his claims.[7]  Whether the matter is decided in terms of standing or simply as confirmation of the validity of Defendants' license, the fact remains: after 2002, only Alam el Phan or its exclusive licensees could pursue claims for infringement of the full set of exclusive rights that Plaintiff assigned to it.  Plaintiff argues that he may nevertheless maintain this claim because (1) he never transferred his "moral rights" to Alam el Phan; and (2) as noted above, he is the "beneficial" owner of certain "performance rights."  Both arguments are flawed.  And Plaintiff lacks standing whether examined under the 1976 Act, as Plaintiff alleged in his Complaint (Docket No. 1 at ¶ 1), or under the 1909 Act, as now he now argues in his Reply.[8]

---

[7] Plaintiff submits various "evidence" to argue without merit that Defendants should be judicially estopped from asserting his lack of standing, because they have at times, including in the *Nafal* actions, referred to Fahmy and the other Hamdy heirs as "copyright owners."  As an initial matter, Plaintiff belatedly produced the 2002 Alam el Phan agreement on the eve of his deposition nearly eighteen months into this action, in February 2009, long after the first *Nafal* case (where it should have been produced) was dismissed.  In the *Nafal* actions, Defendants accepted the allegations of the complaints as true for purposes of showing that Nafal was without standing, and that ***as between Nafal and the Hamdy heirs***, the heirs were the owners.  *See, e.g.,* Wesley Reply Decl. Exs. D, F. Even if Defendants mistakenly previously conceded Plaintiff to be an "owner," this could not serve as a basis for judicial estoppel.  *See Chaveriat v. Williams Pipe Line*, 11 F.3d 1420, 1428 (7th Cir. 1993) (judicial estoppel not mandated if position initially taken was "clearly wrong yet had been advanced in good faith").

[8] Plaintiff cites a single district court opinion for the proposition that *Righthaven LLC v. Hoehn*, 716 F. 3d 1166 (9th Cir. 2013), is no longer binding authority for the proposition that a lack of legal or beneficial ownership of exclusive rights under the Copyright Act implicates subject matter jurisdiction.  But as pointed out by another court in this Circuit, the Supreme Court's 2014 holding in *Lexmark* was narrowly tailored to apply only to the Lanham Act, not the Copyright Act.  *DRK*

10

Mitchell Silberberg & Knupp LLP

**Exhibit A Page 15**

**A.      The Alam el Phan "License" Was an Assignment of the Entire Copyright.**

As set forth above, as of 2002, Plaintiff and the other heirs ***ceased*** to be owners of U.S. copyright rights, *i.e.,* of exclusive economic rights.  In the 2002 Agreement, Plaintiff assigned away the entire panoply of economic (or "financial") rights available under Egypt's 2002 IP Law.  Because Egyptian law does not rigidly fix a delimited set of exclusive rights, the 2002 Agreement recites a detailed list of various rights conveyed (including rights in "performances" as well as "musical re-segmentation and alteration methods," *i.e.* musical sampling) and separately recites, as permitted by Egyptian law, that Plaintiff was transferring to Alam el Phan "***all*** …of his economic rights stated in [the 2002 IP Law]."  Wesley Decl. Ex. 6 at Article 149 (emphasis added); Lewis Decl. Ex. 10 at 77 (Alam el Phan becomes "solely the owners of the financial usage rights stated in the [2002 IP Law]").  Twice this conveyance is described by using the term "assign," and Plaintiff is identified in the agreement as the "assigner" (*sic*).

Either under the 1976 Act or the 1909 act, the transaction in the 2002 Agreement amounts to a complete assignment of all interests in the U.S. copyright in *Khosara*, not a mere license.  *See, e.g., Peer Int'l Corp. v. Latin Am. Music Corp.*, 161 F. Supp. 2d 38, 49 (D.P.R. 2001) (under the 1909 Act, "[a]n assignment carried the entire copyright to a person (a 'proprietor')," whereas "[a] license carried less than the entire copyright").  Accordingly, through the 2002 Agreement, Alam el Phan became the new "owner" of the only copyright interests in *Khosara* recognized under U.S. law.

---

*Photo v. McGraw-Hill Cos.*, 2014 U.S. Dist. LEXIS 78864 at *17-18 (D. Ariz. June 10, 2014) ("[T]he holding in *Lexmark* does not address, let alone alter, the test for standing under 17 U.S.C. § 501(b)").

**[PROPOSED] JOINT SURREPLY OF DEFENDANTS**
**IN OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

Mitchell
Silberberg &
Knupp LLP

**Exhibit A, Page 16**

### B.     Invoking Moral Rights Does Not Assist Plaintiff.

Plaintiff contends that the 2002 transfer to Alam el Phan was less than a full assignment, arguing that under Egyptian law, "an author and his heirs cannot assign away their entire interest in a copyright" because certain moral rights are always retained "to make derivative works."  Reply at 18.  Plaintiff, however, misunderstands the nature of moral rights and, as this Court determined, that they do not apply under United States law.

This Court has already held that an *economic* right to create derivative works exists under Egyptian law, and that moral rights have no application in this case except as they might be incidentally "reformulated" as a matter of economic rights.  May 2011 Order at 15-16; *see also* 2002 IP Law (Wesley Decl. Ex. 6) at Articles 147, 149 (providing transferable economic rights including rights of adaptation).   Plaintiff even acknowledges that "***the economic right*** to create derivative works may be used to prohibit the publication of unauthorized modifications of [an] author's work."  Reply at 19 (emphasis added).  However, that economic right was precisely among those Plaintiff chose to assign to Alam el Phan when he irrevocably assigned all rights under the 2002 IP Law in exchange for a lump sum.  AMF 27-29, 32, 34-36.  ***Plaintiff even agrees that all economic rights were assigned to Alam el Phan.***  *See* Reply at 21 (not contesting that Alam el Phan became "solely the owners of the financial usage rights" and explaining "[i]n other words, [the 2002 Agreement] clarifies that [Alam el Phan] owns financial rights, not moral rights…").  Under United States law, as the Court already has determined, Plaintiff cannot now invoke "moral rights" to object to the exercise of *economic* rights in derivative works.

### C.     Plaintiff Is Not a "Beneficial Owner" of Any Rights at Issue.

Plaintiff's claim that he is a "beneficial" owner of certain rights in *Khosara* is based solely on a belated contention that he receives (unidentified) payments through SACEM.  Reply at 23.  However, the sole "evidence" he provides is the

Mitchell Silberberg & Knupp LLP

12

1   Diringer Declaration and its attached "royalty statement" for "*Khossara Ya Gara*."

2   In addition to contradicting Plaintiff's discovery responses, this declaration is

3   inadmissible to (and does not) rebut Plaintiff's complete assignment of all

4   economic rights to Alam el Phan, including because it establishes no relationship

5   to *Big Pimpin'* or any rights within the United States. *See supra*, n. 6.

6       Even if one were to assume, *arguendo,* that rights in *Khosara* administered

7   by SACEM, BMI, or other collective rights organizations were exclusive and

8   pertained to a suit concerning *Big Pimpin'*, Plaintiff cannot explain how they could

9   serve as the basis of an infringement claim when they are commonly understood to

10  be subject to blanket licensing arrangements.  It cannot be disputed that *Khosara* is

11  a licensed work within the SACEM and BMI repertoires.  *See* AMF 41-45.  At

12  best, any claim by Plaintiff with respect to rights in *Khosara* administered by such

13  organizations is thus not a copyright claim at all, but a contractual or quasi-

14  contractual claim for royalties.  *See, e.g., Freeplay Music, Inc. v. Cox Radio, Inc.*

15  404 F. Supp. 2d 548, 554-55 (S.D.N.Y. 2005) (plaintiff's action regarding alleged

16  derivative version of BMI-registered work was properly framed as a contractual

17  matter with BMI, not a copyright claim against broadcasters).

18      **D.    Plaintiff's Self-Serving Reply Declaration and Related "Evidence"**

19          **Asserting Unexpressed Intentions Are Irrelevant.**

20      The 2002 Agreement does not require parol evidence.  It assigned the

21  exclusive rights it delineated, including **all** financial rights in *Khosara* under the

22  Egyptian 2002 IP law, among these being rights to perform, "re-segment," and

23  alter the composition, as well as the right to use the compositions in any other way.

24  AMF 27-30, 32, 34.  Plaintiff's final argument in an attempt to salvage his standing

25  – including in a belated English-language declaration (accompanied by an unsworn

26  translation) – consists of an attempt to disavow his 2002 Agreement in its entirety.

27  O. Fahmy Declaration dated March 18, 2015 at ¶¶ 4-7, 10; *see also* Reply at 24

28  (referring to other "direct testimony" by Plaintiff of what 2002 Agreement

Mitchell
Silberberg &
Knupp LLP

13

**Exhibit A, Page 18**

1  "was…intended to be").  However, his claim more than a decade after the fact that

2  the plain language of the 2002 Agreement was contrary to his subjective "purpose"

3  and "intention" is not only belied by the language of the agreement, it is irrelevant.

4  *See United Commercial Ins. Serv., Inc. v. Paymaster Corp.,* 962 F.2d 853, 856 (9th

5  Cir. 1992) ("[T]he true intent of a party is irrelevant if it is unexpressed.")

6  (citations omitted).

7

8  Dated:  March 24, 2015                    MITCHELL SILBERBERG & KNUPP LLP

9                                            By: /David A. Steinberg/

10                                               Russell J. Frackman
                                                 David A. Steinberg

11                                               Alexa L. Lewis
                                                 Christine T. Lepera

12                                               Attorneys for Various Defendants

13

14  Dated:  March 24, 2015                   CALDWELL LESLIE & PROCTOR, PC

15                                            By: /Linda M. Burrow/

16                                               Linda M. Burrow
                                                 Eric S. Pettit

17                                               Attorneys for Defendant
                                                 Shawn Carter (pka Jay Z)

18

19

20

21

22

23

24

25

26

27

28

Mitchell
Silberberg &
Knupp LLP

14

**[PROPOSED] JOINT SURREPLY OF DEFENDANTS**
**IN OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**