

Caldwell Leslie & Proctor, PC
725 South Figueroa Street, 31st Floor
Los Angeles, CA 90017-5524
Tel 213.629.9040 Fax 213.629.9022
pettit@caldwell-leslie.com

**www.caldwell-leslie.com**

The information contained in this electronic mail message is privileged and confidential and is intended for the personal use of the designated recipients only. This message may not be shared with, or forwarded to, third parties without the express written permission of the sender. If you have received this message in error, please notify the sender immediately and delete all copies. Thank You.

**From:** Jonathan L. Gottfried [mailto:JGottfried@bgrfirm.com]
**Sent:** Friday, April 17, 2015 9:22 AM
**To:** 'pjw_chambers@cacd.uscourts.gov'
**Cc:** Keith Wesley; Christina J. Johnson; Linda M. Burrow; Eric S. Pettit
**Subject:** Fahmy v. Carter, Case No. CV 07-05715: Plaintiff's request for clarification of Magistrate Judge's order of November 24, 2014

Dear Magistrate Judge Walsh:

Plaintiff seeks the Court's guidance in interpreting its order of November 24, 2014, which was affirmed by the district-court judge on January 12, 2015. In particular, plaintiff asks the Court to clarify whether its order on plaintiff's motion to compel required defendant Sean Carter ("defendant") to produce documents responsive to RFP Nos. 133 and 136. Plaintiff believes that the Court's order addressed these Requests for Production; defendant rejects that interpretation.

This is a straight-forward issue that does not require extensive argument from the parties. Nor should it be an opportunity for any party to file a motion for reconsideration. Indeed, the Court should be able to resolve this issue by reviewing its own order and the parties' prior, substantial briefing. These 450+ pages consisted of motion practice before both the Magistrate Judge and the district-court judge, as a result of defendant's objections. The briefs and the Court's orders are available on CM/ECF at Docket Numbers 429, 432, 433, 436 (order of Magistrate Judge), 439, 442, 443, 444 and 447 (order of district court). To the extent that the Court wishes additional information, plaintiff provides the summary below. Plaintiff notes that, on April 16, plaintiff's and defendant's counsel telephoned the Magistrate Judge's clerk who indicated that the parties could submit emails on disputes to the Magistrate Judge. Defendant's counsel, with whom plaintiff's counsel met and conferred extensively on this issue, are copied on this email.

Plaintiff's Motion to Compel
In November 2014, plaintiff moved to compel defendant "to fully respond to Plaintiffs' RFPs 131-136 by disclosing, *inter alia*, their revenue, profits, and other compensation for all concerts at which *Big Pimpin* was performed...." (Dkt. No. 429 at p. 1) RFP No. 133 sought any "agreement providing for any form of ... remuneration to any defendant, applicable to any ... live performance in which or at which any song or composition titled ... 'Big Pimpin' or 'Big Pimpin'/Papercut' was performed in whole or in part, including...any touring agreement...between Jay Z (or any entity controlled by him) and Live Nation." (*Id*. at Ex. 10) RFP No. 136 sought documents "sufficient to determine all merchandising revenues...and all other compensation received by any defendant for any concert at which any song or composition titled in whole or in part 'Big Pimpin' or 'Big Pimpin'/Papercut' was performed in whole or in part." (*Id*.)

<u>Defendant's Opposition to Plaintiff's Motion to Compel</u>
In opposing plaintiff's motion to compel RFP Nos. 131-136, defendant argued that documents regarding these concert-related revenues were not relevant. *See* Dkt. No. 432 at 1:8-9 ("Before Plaintiff can obtain discovery on Mr. Carter's concert profits...he must first establish the relevance of the facts he seeks to discover,...which he fails entirely to do here.")  Defendant claimed he had produced documents reflecting some "income he received from performances of *Big Pimpin'* " and should not be required to produce any other responsive documents. (*Id* . at 2:25-27) Defendant further argued that it would be unduly burdensome to produce documents responsive to RFP Nos. 131-136, and defendant emphasized the sensitive nature of any responsive documents. (*Id* . at 9:15-10:4)

<u>Magistrate Judge's Order of 11/24/14</u>
The Magistrate Judge granted plaintiff's motion to compel responses to RFP No. 131-36. The Magistrate Judge summarized plaintiff's request as follows: "In Requests for Production Nos. 131-136, plaintiff seeks information regarding revenue from concerts at which Big Pimpin' was performed." (Dkt. No. 436 at p.1) After summarizing defendant's opposition, the Court "order[ed] Defendants Carter and Mosely to produce discovery relating to the concert revenues no later than December 19, 2014." (*Id* . at p.2)

<u>Defendant's Objection to the Magistrate Judge's Order of 11/24/14</u>
Defendant appealed to the district-court judge, claiming that the Magistrate Judge had "ignored Rule 26(b)(1)'s relevancy requirements" and had failed to address several of defendant's objections to plaintiff's motion to compel RFP Nos. 131-136. (Dkt. No. 439 at 10:1-2) Defendant argued that plaintiff should not be allowed "to discover any and all information regarding the amount of concert revenues and profits Mr. Carter has earned during the relevant period." (*Id* . at 11:18-19) Defendant repeated its arguments regarding the sensitive nature of the information and the burden of its production. (*Id* .) Plaintiff submitted an opposition (Dkt. No. 443), which was followed by defendant's reply (Dkt. No. 444).

<u>The District Court's Order of 1/12/15</u>
The Court denied defendant's motion for review and adopted the Magistrate Judge's ruling. (Dkt. No. 447)

<u>Defendant's Production of a Single Document in Response to the Court's Order</u>
In response to the district court's order, defendant produced a single document: a spreadsheet entitled "Jay Z Touring Settlements" that listed "Net Due/(Owed)" to defendant from Live Nation. Subsequently on March 30, 2015, defendant produced a revised version of this spreadsheet that appeared to correct various errors on the prior document. According to defendant, this spreadsheet was generated from information that Live Nation maintains electronically. (Ex. 1 at p.2) Defendant offered to stipulate to the accuracy of the numbers in the spreadsheet, while claiming that the numbers were inaccurate insofar as they overstated defendant's concert revenues. *Id* . at pp. 2-3

<u>Defendant Refuses to Produce Documents Responsive to RFP No. 133 or 136 or to Substantiate the Spreadsheet</u>
After receiving defendant's spreadsheet, plaintiff's counsel again requested that defendant produce documents responsive to RFP Nos. 133 and 136. (Ex. 2)  Defense counsel responded that "Judge Walsh never ordered[] the production of all documents responsive to Request for Production ('RFP') No. 133"

or No. 136. (Ex. 1) Defense counsel likewise refused to produce any documents that would confirm the numbers in the spreadsheet. *Id*.

Plaintiff's counsel deposed a representative from Live Nation regarding the spreadsheet. According to the representative, the revenue numbers in the spreadsheet were derived from an agreement between defendant and Live Nation (*i.e.*, an agreement which was responsive to RFP No. 133). *See* Ex. 3 at 62:1-4 ("Q. In order to fill in the numbers on percentage shared on Exhibit 4, would you refer to the agreement between Jay-Z and Live Nation? A. Yes.") But the deponent, the deponent's counsel, and defendant's counsel repeatedly stonewalled efforts by plaintiff's counsel to understand the spreadsheet (which had been marked as Exhibit 4 at the deposition). For example:

"Q. Do you see there is a row that states extra 5% above $5 million split point?
A. Yes.
Q. What does that mean?
A. It's the same objection from before. That's our business.
Q. Are you refusing to tell me what that means?
A. Yes."
(*Id*. at 68:14-22)
***

"Q...[L]ooking at the first row of the Jay-Z touring settlement it indicates net due owed to Jay-Z of 278,000 and something. When does Live Nation pay that to Jay-Z?
A. Again, that's something that is incorporated in our overall agreement of how we pay Jay-Z, so I'm not comfortable answering that unless instructed."
(*Id*. at 75:20-76:1)
***

"Q. [W]hy is this 1.5 million going to Jay-Z?
...THE WITNESS: That's what we negotiated.
Q. What's the rationale for that?
A. It's our own business reason.
Q. What is that business reason?
MS. CRAWSHAW-SPARKS: I'm not going to allow him to answer that question. This is far beyond the scope of this deposition. Jay-Z received a million dollars or 1.5 million, whatever it is. The why doesn't matter."
(*Id*. at 66:7-19)
***

"Q. What's your understanding as to why there was an increase in the percentage?
A. It triggers at a certain point.
MS. CRAWSHAW-SPARKS: Counsel, we're now getting into the terms of the agreement that you don't need to know about." (*Id*. at 63:8-13)

The deponent also testified that the spreadsheet produced by defendant did not include revenues from merchandise sold at defendant's concerts. (*Id*. at 49:19-23)

<u>The Magistrate Judge Should Clarify That His Order Required Defendant to Produce Documents Responsive to RFP Nos. 133 & 136.</u>
In November of 2014, plaintiff moved to compel defendant to produce documents responsive to RFP Nos. 131-36. The Magistrate Judge's order summarized plaintiff's motion as such. While the Magistrate

Judge referred generally to these requests as seeking "information regarding revenue from concerts at which Big Pimpin' was performed," there is no indication that the Magistrate Judge intended to truncate RFP Nos. 133 & 136. Nor is there any indication that the district-court judge intended to limit RFP Nos. 133 & 136.

It is unreasonable for defendant to argue that he can comply with the Court's order by assembling a spreadsheet that he refuses to explain and for which he refuses to produce any of the underlying documents. Plaintiff is not required to accept whatever statements defendant makes without the benefit of discovery. *See U.S. Ethernet Innovations, LLC v. Acer, Inc.* , No. C 10-3724 CW, 2013 WL 6671774, at *2 (N.D. Cal. Dec. 18, 2013) ("Because the Court ordered limited jurisdictional discovery, [the third-party plaintiff] is entitled to exercise that right, in the form of its own choosing."); *Pressley v. City of New York* , No. 11-CV-3234, 2013 WL 1561466, at *2 (E.D.N.Y. Apr. 12, 2013) (rejecting party's "'trust me' argument" and ordering discovery); *Petrashishin v. BAC Home Loans Servicing P'ship Recontrust Co.* , No. 3:11-CV-1105-HO, 2012 WL 1278046, at *2 (D. Or. Apr. 13, 2012) ("Even though defendants assert all transfers have been recorded, plaintiff must be permitted discovery to test such an assertion."). Moreover, plaintiff is not required to accept defendant's questionable argument that Jay Z merchandise (including some likely related to Big Pimpin') sold at concerts at which Big Pimpin' was performed is unrelated to Big Pimpin'.

Conclusion
Plaintiff respectfully requests that the Court clarify that its order of November 24, 2014 required defendant to produce documents responsive to RFP Nos. 133 and 136.

Respectfully,
Jonathan Gottfried
Counsel for Plaintiff Osama Ahmed Fahmy

---

This e-mail message may contain legally privileged and/or confidential information. If you are not the intended recipient(s), or the employee or agent responsible for delivery of this message to the intended recipient(s), you are hereby notified that any dissemination, distribution or copying of this e-mail message is strictly prohibited. If you have received this message in error, please immediately notify the sender and delete this e-mail message from your computer.

IRS CIRCULAR 230 DISCLOSURE: To ensure compliance with Treasury Department regulations, we inform you that any U.S. federal tax advice contained in this correspondence (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties that may be imposed under the U.S. Internal Revenue Code or (ii) promoting, marketing or recommending to another party any transaction or matter addressed herein.



"Eric S. Pettit"
<pettit@caldwell-leslie.com>

04/17/2015 04:14 PM

To      "'pjw_chambers@cacd.uscourts.gov'"
        <pjw_chambers@cacd.uscourts.gov>
cc      "Jonathan L. Gottfried" <JGottfried@bgrfirm.com>, Keith
        Wesley <kwesley@bgrfirm.com>, "Christina J. Johnson"
        <cjohnson@bgrfirm.com>, "Linda M. Burrow"
bcc

Subject  RE: Fahmy v. Carter, Case No. CV 07-05715:  Plaintiff's
         request for clarification of Magistrate Judge's order of
         November 24, 2014

Dear Magistrate Judge Walsh,

Defendant Shawn Carter respectfully requests that Plaintiff be required to comply with Local Rule 37 in connection with the discovery motion described in the email below.  While recognizing that this Court has previously resolved certain straightforward discovery disputes between the parties in this case without mandating strict compliance with Local Rule 37, Mr. Carter submits that Plaintiff's motion is too complicated and consequential to be adjudicated through an informal exchange of emails.  As Plaintiff's email concedes, the adjudication of this dispute requires an analysis of more than 450 pages of briefing in connection with the orders issued by you and Judge Snyder on Plaintiff's prior motion to compel. Under these circumstances, the procedure laid out by Local Rule 37 will be particularly helpful in narrowing, framing, and, ultimately, adjudicating the dispute in a fair and efficient manner.  On the other side of the ledger, there is no compelling need here to deviate from the requirements for addressing discovery disputes prescribed by the Local Rules.  Indeed, Plaintiff's counsel has been aware of the information Mr. Carter produced in response to this Court's prior order since mid-February, yet waited nearly two months before raising any issue regarding the adequacy of the production. Moreover, Judge Snyder has continued the trial date in this case until October 13, and no expert depositions have been noticed to date.  There are thus no legitimate time constraints limiting Plaintiff's ability to comply with the Local Rules, and Mr. Carter accordingly requests that this Court instruct Plaintiff's counsel to follow the procedures set forth in Local Rule 37 in connection with their discovery motion.

In the alternative, Mr. Carter requests that he be permitted a minimum of two weeks to prepare a written opposition to Plaintiff's motion.  Mr. Carter's counsel requested yesterday that Plaintiff's counsel meet and confer regarding an appropriate briefing schedule, but Plaintiff's counsel refused to participate in such a discussion, instead insisting that Mr. Carter raise the issue directly with this Court in the first instance.  Mr. Carter's request for two weeks to respond to Plaintiff's motion is both necessary and appropriate.  As noted above, although Mr. Carter produced discovery relating to concert profits in mid-February, Plaintiff's counsel did not raise any issue regarding Mr. Carter's compliance with this Court's prior discovery order until April 9, when it claimed for the first time that this Court's prior order compelled the production of (1) Mr. Carter's touring agreement(s) with non-party Live Nation, and (2) information relating to Mr. Carter's merchandising revenue.  In addition, by claiming that these issues were already previously litigated and ruled upon in this Court's prior discovery order, Plaintiff has left Mr. Carter with no alternative but to address the prior proceedings and explain why they did not require production of the discovery sought by Plaintiff's instant motion.  Finally, because Plaintiff's motion, if successful, would require the disclosure of documents revealing highly sensitive business information belonging to non-party Live Nation, Live Nation should be permitted an adequate opportunity to demonstrate how an order granting Plaintiff's motion would unfairly prejudice Live Nation without yielding any relevant information beyond what Mr. Carter has already produced.

Unfortunately, however, Live Nation's lead counsel for this matter is out of the country through April 22. Accordingly, any briefing schedule that requires a response to Plaintiff's motion in less than two weeks would unfairly deprive Live Nation a sufficient opportunity to present its concerns to this Court.

For these reasons, Mr. Carter requests that this Court instruct Plaintiff's counsel to comply with Local Rule 37 prior to moving forward with the instant discovery motion, or in the alternative, that Mr. Carter be permitted until at least Friday, May 1 to submit a brief in opposition to Plaintiff's motion. Mr. Carter further requests a hearing on this issue following the submission of his written opposition.

Respectfully,
Linda M. Burrow and Eric S. Pettit
Counsel for Defendant Shawn Carter

---

Eric S. Pettit

**Caldwell Leslie**
Caldwell Leslie & Proctor, PC
725 South Figueroa Street, 31st Floor
Los Angeles, CA 90017-5524
Tel 213.629.9040 Fax 213.629.9022
pettit@caldwell-leslie.com

**www.caldwell-leslie.com**
The information contained in this electronic mail message is privileged and confidential and is intended for the personal use of the designated recipients only. This message may not be shared with, or forwarded to, third parties without the express written permission of the sender. If you have received this message in error, please notify the sender immediately and delete all copies. Thank You.



| "Gutierrez, Susan L." <sgutierrez@proskauer.com> | To | "'pjw_chambers@cacd.uscourts.gov'" <pjw_chambers@cacd.uscourts.gov> |
| 04/17/2015 05:01 PM | cc | "Crawshaw-Sparks, Sandra A." <SCrawshaw@proskauer.com>, "Linda M. Burrow" <burrow@caldwell-leslie.com>, "Eric S. Pettit |
| | bcc | |
| | Subject | Fahmy v. Carter et al., No. CV 07-05715 |

Dear Magistrate Judge Walsh,

I, along with Sandra A. Crawshaw-Sparks (copied here) are counsel to non-party Live Nation Entertainment, Inc. ("Live Nation") in the matter of *Fahmy v. Shawn Carter* , professionally known as "Jay Z" and others, No. CV 07-05715.

It has come to our attention that plaintiff Osama Ahmed Fahmy recently submitted an email to Your Honor regarding a discovery dispute with Jay Z that implicates, in part, non-party Live Nation's most sensitive business interests and agreements (the "Confidential Documents").

Based on this understanding, Live Nation respectfully requests to be heard on the discovery dispute to the extent it concerns the Confidential Documents, as well as an opportunity to fully brief the issue pursuant to Local Rule 37.  Relatedly, Live Nation concurs with the briefing schedule proposed by counsel for Jay Z, and note that Ms. Crawshaw-Sparks—lead counsel in this matter for Live Nation—is out of the country until April 22 and traveling out of state for another matter from April 28 through May 5.

We appreciate Your Honor's consideration of the above-described request.

Thank you,
Susan L. Gutierrez
Counsel for Non-Party Live Nation Entertainment, Inc.

**Susan L. Gutierrez**
Attorney at Law

Proskauer
2049 Century Park East
Suite 3200
Los Angeles, CA 90067-3206
d 310.284.5624
f  310.557.2193
sgutierrez@proskauer.com


greenspaces
Please consider the environment before printing this email.



"Jonathan L. Gottfried"
<JGottfried@bgrfirm.com>
04/20/2015 08:16 AM

To    "'pjw_chambers@cacd.uscourts.gov'"
      <pjw_chambers@cacd.uscourts.gov>
cc    Keith Wesley <kwesley@bgrfirm.com>, "Christina J.
      Johnson" <cjohnson@bgrfirm.com>, "Linda M. Burrow"
      <burrow@caldwell-leslie.com>, "'Eric S. Pettit'"
bcc

Subject   RE: Fahmy v. Carter, Case No. CV 07-05715:  Plaintiff's
          request for clarification of Magistrate Judge's order of
          November 24, 2014

1 attachment


Scheduling Order of 12-5-14.pdf


Dear Magistrate Judge Walsh:

The following points may be relevant to the Court's evaluation of the scheduling issues raised by defense counsel: (1) The parties are in the midst of expert discovery.  Initial reports have been exchanged; expert rebuttal reports are due shortly; and expert depositions will soon be taken.  The fact discovery that plaintiff seeks will likely be relevant to these experts' testimony.  (2) In the past, defense counsel has asked the Court to review the Magistrate Judge's recommendations, which will add weeks to any final determination of this dispute (the briefing schedule for defendant's last set of objections was 6 weeks).  (3) Fact discovery closed approximately five months ago: on November 28, 2014 ( *scheduling order attached* ).  While the Court provided limited exceptions to this cut-off (including for the Court to rule on defendant's objections to the Magistrate Judge's recommendation on plaintiff's motion to compel), the Court's intent appeared to be to efficiently bring fact discovery to a close, particularly given that it has been almost 7.5 years since the Complaint was filed in this case.

Respectfully,
Jonathan Gottfried
Counsel for plaintiff