CALDWELL LESLIE & PROCTOR, PC
LINDA M. BURROW, State Bar No. 194668
  *burrow@caldwell-leslie.com*
ERIC S. PETTIT, State Bar No. 234657
  *pettit@caldwell-leslie.com*
725 South Figueroa Street, 31st Floor
Los Angeles, California 90017-5524
Telephone: (213) 629-9040
Facsimile: (213) 629-9022

Attorneys for Defendant
SHAWN C. CARTER (pka Jay Z)

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| OSAMA AHMED FAHMY, an individual,<br><br>   Plaintiff,<br><br>   v.<br><br>JAY-Z (aka SHAWN CARTER), TIMOTHY MOSELY, KYAMBO JOSHUA, BOB BOURDON, BRAD DELSON, MIKE SHINODA, DAVE FARRELL, JOSEPH HAHN, CHESTER BENNINGTON, BIG BAD MR. HAHN MUSIC, CHESTERCHAZ PUBLISHING, EMI BLACKWOOD MUSIC, INC., EMI MUSIC PUBLISHING LTD., KENJI KOBAYASHI MUSIC, LIL LULU PUBLISHING, MACHINE SHOP RECORDINGS, LLC, MARCY PROJECTS PRODUCTIONS II, INC., MTV NETWORKS ENTERPRISES INC., NONDISCLOSURE AGREEMENT MUSIC, PARAMOUNT HOME ENTERTAINMENT, INC., PARAMOUNT PICTURES CORPORATION, RADICAL MEDIA, ROB BOURDON MUSIC, ROC-A-FELLA RECORDS, LLC, TIMBALAND PRODUCTIONS, INC., UMG RECORDINGS, INC., UNIVERSAL MUSIC AND VIDEO DISTRIBUTION, INC., AND WARNER MUSIC INC.,<br><br>   Defendants. | Case No. 07-CV-05715 CAS (PJWx)<br><br>The Honorable Christina A. Snyder<br><br>**DEFENDANT SHAWN C. CARTER'S NOTICE OF MOTION AND MOTION FOR REVIEW OF NON-DISPOSITIVE RULING OF MAGISTRATE UNDER FRCP 72(a) AND L.R. 72-2; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>[Declarations of Omar Al-Joulani and Eric S. Pettit with Exhibits and *Ex Parte* Application filed concurrently herewith]<br><br>[Proposed Order lodged concurrently herewith]<br><br>Date:   June 8, 2015<br>Time:   10:00 a.m.<br>Courtroom: 5<br><br>Complaint filed: Aug. 31, 2007<br>Discovery Cutoff: Nov. 28, 2014<br>Trial Date:  Oct. 13, 2015 |

CALDWELL
LESLIE &
PROCTOR

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that on June 8, 2015 at 10:00 a.m. in Courtroom 5 of the Court captioned above, located at 312 North Spring Street, Los Angeles, California 90012, before the Honorable Christina A. Snyder, Defendant Shawn C. Carter (professionally known as Jay Z), by and through his attorneys of record, will and hereby does move pursuant to Federal Rule of Civil Procedure 72(a) and Local Rule 72-2.1 for review of an order filed by the Honorable Magistrate Judge Patrick J. Walsh on May 5, 2015 requiring Mr. Carter "to produce documents that are responsive to Requests for Production Nos. 133 and 136 no later than May 18, 2015." Dkt. No. 498 (the " May 2015 Order").  As set forth in his *ex parte* application filed concurrently herewith, Mr. Carter further requests that the Court stay the May 18, 2015 compliance date for the time necessary to permit full briefing and an opportunity to be heard on this Motion for Review.

Mr. Carter brings this Motion for Review because (1) he was deprived of the opportunity to oppose Plaintiff's application to compel (which Plaintiff made in an informal email to the Magistrate Judge) on the merits despite requesting an opportunity to do so; (2) the Magistrate Judge issued a discovery order based on Plaintiff's email, without requiring compliance with Local Rule 37; (3) Plaintiff mischaracterized his previous motion to compel and ignored the obligation to narrow discovery disputes through the meet and confer process; (4) the documents Plaintiff seeks are neither relevant nor reasonably likely to lead to the discovery of admissible evidence; and (5) the production of Mr. Carter's agreements with non-party Live Nation Entertainment, Inc. ("Live Nation") and other information called for by Request For Production Nos. 133 and 136 would severely and unnecessarily prejudice the business interests of Mr. Carter and Live Nation.

Mr. Carter's Motion for Review is based on this Notice, the accompanying Memorandum of Points and Authorities, the supporting declarations of Omar Al-

Joulani and Eric S. Pettit and associated exhibits, the concurrently filed *ex parte* application and supporting declaration and exhibits, the pleadings and papers on file in this action, and any oral argument presented at a hearing.

On May 6, 2015, counsel for Mr. Carter met and conferred with Plaintiff's counsel Jonathan Gottfried pursuant to Local Rule 7-3 regarding Mr. Carter's intention to seek review of the Magistrate Judge's May 2015 Order, and attempted to stipulate to a short but reasonable briefing and hearing schedule.  Declaration of Eric S. Pettit ("Pettit Decl."), ¶ 24.  While Mr. Gottfried agreed to stipulate to the proposed schedule during the call, he sent an email to Mr. Carter's counsel shortly thereafter stating that Plaintiff would not agree to a proposed briefing schedule in light of the May 18, 2015 compliance date set forth in the Magistrate Judge's May 2015 Order, and suggesting that the Motion for Review could be heard on an *ex parte* basis.  *See id.* ¶ 25, Exh. P.

DATED:  May 11, 2015              Respectfully submitted,

                                 CALDWELL LESLIE & PROCTOR, PC
                                 LINDA M. BURROW
                                 ERIC S. PETTIT


                                 By  _____/s/_____
                                     LINDA M. BURROW
                                 Attorneys for Defendant SHAWN C. CARTER
                                 (professionally known as "JAY Z").

# <u>TABLE OF CONTENTS</u>

**Page**

I.    INTRODUCTION ........................................................................................ 1

II.   BACKGROUND ........................................................................................ 4

    A.    Plaintiff Moves to Compel Mr. Carter's Concert Revenues................... 4

        1.    Plaintiff Meets and Confers to address requests seeking Revenues from Concert Ticket Sales............................................ 4

        2.    Plaintiff Limits His Motion to Compel to Concert Revenues ....................................................................................... 5

        3.    Mr. Carter Complies with this Court's Order Regarding Concert Revenues .......................................................... 7

    B.    Plaintiff Attempts to Expand the Scope of the Magistrate Judge's Order ........................................................................................ 8

    C.    The Magistrate Judge Grants Plaintiffs' "Request for Clarification" Without Allowing Mr. Carter or Non-Party Live Nation to be Heard ............................................................................. 9

        1.    Plaintiff Emails the Magistrate Judge's Chambers and Suggests that the Magistrate Judge Rule Without "Extensive Argument" or an Opportunity to Seek Reconsideration ............................................................................. 9

        2.    Mr. Carter and Live Nation Request an Opportunity to be Heard on Plaintiff's Request........................................................ 10

        3.    The Magistrate Judge Rejects Mr. Carter's and Live Nation's Request to be Heard and Grants Plaintiff's Request................................................................................................ 11

III.  STANDARD OF REVIEW ...................................................................... 12

IV.   THIS COURT SHOULD VACATE THE MAGISTRATE JUDGE'S MAY 2015 ORDER AND DENY PLAINTIFF'S REQUEST ................. 14

    A.    The Magistrate Judge Violated Local Rule 37 And Plainly Erred In Denying Mr. Carter The Opportunity To Be Heard ....................... 14

    B.    Plaintiff's "Request for Clarification" Should be Denied ................... 15

        1.    The Meet and Confers and Briefing Leading up to the November 2014 Order Never Addressed Either the Live Nation Agreement or Merchandising Profits ............................. 15

        2.    Mr. Carter was Ordered to Produce Only His Concert Revenues ....................................................................................... 16

**NOTICE OF MOTION AND MOTION FOR REVIEW OF NON-DISPOSITIVE MAGISTRATE ORDER**

3.    Plaintiff Cannot Meet His Burden to Establish the Relevance of the Newly Sought Categories of Documents ....... 17

(a)    The Live Nation Agreement is not Relevant nor Reasonably Calculated to Lead to the Discovery of Admissible Evidence .......................................................... 18

(b)    Mr. Carter's Merchandising Profits are not Relevant or Reasonably Calculated to Lead to the Discovery of Admissible Evidence ................................................... 20

C.    The Information Plaintiff Seeks Is Highly Sensitive, And Its Disclosure Would Expose Mr. Carter And Non-Party Live Nation To Severe Prejudice ................................................ 22

V.    CONCLUSION .............................................................. 24

CALDWELL
LESLIE &
PROCTOR

-ii-

# TABLE OF AUTHORITIES

1

2

**Page(s)**

3

**Cases**

*Amini Innovation Corp. v. McFerran Home Furnishings, Inc.*,
   300 F.R.D. 406 (C.D. Cal. 2014) ...........................................................15-16

*Crispin v. Christian Audigier, Inc.*,
   717 F.Supp.2d 965 (C.D.Cal. 2010) ......................................................12-13

*Ellis v. J.P. Morgan Chase & Co.*, No. 12-cv-03897-YGR (JCS),
   2014 WL 1510884 (N.D. Cal. Apr. 1, 2014) ...............................................18

*Garrison v. Waddington*, No. C05-5487 RJB/KLS,
   2007 WL 4510296 (W.D.Wash. Dec. 18, 2007) .........................................16

*Haines v. Liggett Group, Inc.*,
   975 F.2d 81 (3d Cir. 1992) ..........................................................................13

*Kruszka v. Toyota Motor Corp.*, No. CV 11-01578-RGK(FFMx),
   2011 WL 9820198 (C.D. Cal. Aug. 2, 2011) ..............................................17

*Mackie v. Rieser*,
   296 F.3d 909 (9th Cir. 2002) ..................................................................20-21

*Mannington Mills, Inc. v. Armstrong World Indus., Inc.*,
   206 F.R.D. 525 (D. Del. 2002) ...................................................................23

*Med. Imaging Ctrs. of Am., Inc. v. Lichtenstein*,
   917 F.Supp. 717 (S.D.Cal. 1996) ...............................................................13

*Petrashishin v. BAC Home Loans Servicing P'Ship*
   *Recontrust Co., N.A.*, No. 3:11-CV-1105-HO,
   2012 WL 1278046 (D.Or. Apr. 13, 2012) ..................................................19

*Polar Bear Prods., Inc. v. Timex Corp.*,
   384 F.3d 700 (9th Cir. 2004) ..............................................................4, 21-22

*Pressley v. City of New York*, No. 11-CV-3234 (SLT)(RER),
   2013 WL 1561466 (E.D.N.Y. Apr. 12, 2013) ...........................................19

*Rich v. Shrader*, No. 09-CV-0652-AJB(BGS),
   2013 WL 3710806 (S.D. Cal. July 11, 2013) .............................................18

*Schneider v. San Diego*,
   28 F.3d 89 (9th Cir.1994) ...........................................................................15

*Sea-Land Serv., Inc. v. Lozen Int'l, LLC*,
   285 F.3d 808 (9th Cir. 2002) ......................................................................19

*U-Haul Int'l Inc. v. Lumbermens Mut. Cas. Co.*,
   576 F.3d 1040 (9th Cir. 2009) ....................................................................19

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**NOTICE OF MOTION AND MOTION FOR REVIEW OF NON-DISPOSITIVE MAGISTRATE ORDER**

*U.S. Ethernet Innovations, LLC v. Acer, Inc.*, No. C 10-3724 CW,
    2013 WL 6671774 (N.D.Cal. Dec. 18, 2013) ............................................. 19

**<u>Statutes</u>**

17 U.S.C. § 504(b) ............................................................................................. 18

28 U.S.C. § 636(b)(1)(A) .................................................................................. 12

**<u>Rules and Regulations</u>**

Fed.R.Civ.P. 26(b)(1) ....................................................................................... 18

Fed.R.Civ.P. 72(a) ............................................................................................ 12

L.R. 37 ....................................................................................................passim

L.R. 37-1 ........................................................................................................... 14

L.R. 37-2.2 ........................................................................................................ 14

L.R. 37-2.3 ........................................................................................................ 14

L.R. 37-3 ........................................................................................................... 14

L.R. 72 .............................................................................................................. 12

**NOTICE OF MOTION AND MOTION FOR REVIEW OF NON-DISPOSITIVE MAGISTRATE ORDER**

1

### MEMORANDUM OF POINTS AND AUTHORITIES

2

## I.   INTRODUCTION

3        This Motion arises from an email Plaintiff sent to Magistrate Judge Patrick J.

4  Walsh asking the Magistrate Judge to "clarify" a prior discovery order.  While the

5  email was denominated a request to clarify, it was, in fact, a disguised attempt to

6  expand that order to include documents Plaintiff had not asked for and the

7  Magistrate Judge had not previously ordered produced.  Perhaps not recognizing

8  that Plaintiff was seeking a substantial modification of the prior order, the

9  Magistrate Judge rejected requests by Defendant Shawn C. Carter (professionally

10  known as Jay Z) and non-party Live Nation Entertainment, Inc. ("Live Nation") to

11  brief the issue and be heard, and granted Plaintiff's request.  The Magistrate Judge's

12  ruling was in error, and should be vacated.

13        On January 12, 2015, this Court affirmed an order from Magistrate Judge

14  Walsh requiring Mr. Carter to "produce the amount of revenue he earned from

15  concerts where he performed 'Big Pimpin''."  Dkt. No. 447 (the "January 2015

16  Order"); *see also* Dkt. No. 436 (November 24, 2014 order from Magistrate Judge

17  Walsh requiring Mr. Carter "to produce discovery relating to the concert revenues")

18  (the "November 2014 Order").  Plaintiff's meet and confer letters, his arguments

19  supporting his motion to compel, and the expert reports he has submitted since the

20  January 2015 Order was issued all confirm that the "concert revenues" he sought

21  were those revenues that derived from concert ticket sales.

22        Mr. Carter complied with this Court's order on February 15, 2015 by

23  producing detailed spreadsheets showing all of Mr. Carter's revenues and expenses

24  relating to the concerts at issue.  Two months later, on April 17, 2015, Plaintiff sent

25  an email to Magistrate Judge Walsh seeking "guidance in interpreting" his

26  November 2014 Order.  Plaintiff claimed that the November 2014 and January 2015

27  Orders (collectively, the "Concert Revenue Orders") should be construed to include

28

(1) Mr. Carter's agreement with Live Nation (which is not a party to this case) (the "Live Nation Agreement") and (2) Mr. Carter's revenues from sales of merchandise at concerts—documents that Plaintiff had *not* requested during the meet and confer leading up to the Concert Revenue Orders and had *not* requested in his motion to compel.  Moreover, at no time has Plaintiff demonstrated any relevance whatsoever of these documents to any of the issues in this case.  While both Mr. Carter and Live Nation immediately asked to be heard on Plaintiff's "request for clarification," the Magistrate Judge ignored their requests and, solely on the basis of Plaintiff's *ex parte* submission, ordered that the documents in question be produced no later than May 18, 2015, less than 14 days after the order.  *See* Dkt. No. 498 at 2 (the "May 2015 Order").

The Magistrate Judge's May 2015 Order was clearly erroneous and contrary to law, and should therefore be reversed, for at least the following reasons:

- *First*, the Magistrate Judge violated Local Rule 37, and his own standing order providing that "**Strict Compliance with Local Rule 37 is required**" (emphasis in original) when he ignored requests by Mr. Carter and Live Nation for an opportunity to oppose Plaintiff's email request for "guidance," despite the fact that the relevance and discoverability of the Live Nation Agreement or Mr. Carter's merchandising revenues had not previously been argued, let alone decided;

- *Second*, neither the Live Nation Agreement nor Mr. Carter's merchandising revenues have any relevance to the claims or defenses in this case, nor are these documents reasonably calculated to lead to the discovery of admissible evidence.  Mr. Carter has already produced his profits from concert ticket sales (the relevance of which is itself questionable) and Plaintiff has not alleged and cannot allege a causal

NOTICE OF MOTION AND MOTION FOR REVIEW OF NON-DISPOSITIVE MAGISTRATE ORDER

nexus between the performance of the alleged infringing sample, "Khosara Khosara," at Mr. Carter's concerts and the sale of merchandise.

- *Third*, the burden of production on Mr. Carter – and on non-party Live Nation[1] – far outweighs any marginal relevance of the requested documents.  Although there is a protective order in this case, the Live Nation Agreement contains highly-confidential, sensitive business terms that, if publicly disclosed, would substantially prejudice and interfere with Live Nation's business and cause Mr. Carter to suffer significant competitive harm.  The information as to merchandising revenue that Plaintiff seeks is similarly sensitive, and the unfair prejudice that would result if it were publicly disclosed is further reason not to compel its production.

Plaintiff asked the Magistrate Judge for an order compelling production of Mr. Carter's revenues from sales of concert tickets—nothing more—and Mr. Carter has complied with that request.  Plaintiff cannot now seek *additional* documents, which he did not previously seek to compel and which are not otherwise discoverable.  This Court should reject Plaintiff's efforts to expand the scope of its ruling, vacate the Magistrate Judge's May 2015 Order, and deny Plaintiff's discovery motion entirely.

---

[1] In February 2015 – more than seven years after filing this action – Plaintiff filed a separate action against Live Nation arising from the same alleged infringement of "Khosara Khosara."  *See* Case No. 15-CV-1158 CAS (PJWx).  Live Nation has moved to dismiss Plaintiff's complaint.

## II. BACKGROUND

### A. *Plaintiff Moves to Compel Mr. Carter's Concert Revenues*

#### 1. Plaintiff Meets and Confers to address requests seeking Revenues from Concert Ticket Sales

As this Court is well aware, Plaintiff alleges that he owns the copyright in the musical composition "Khosara Khosara," and claims that the incorporation of a portion of a sound recording of "Khosara Khosara" in the Jay Z song *Big Pimpin'* infringes his rights. *See* Compl., ¶¶ 8-11, 19-25.  The present dispute arises out of this Court's December 2011 order denying Plaintiff's motion for partial summary judgment, in which Plaintiff asked the Court to decide, as a matter of law, that Plaintiff was entitled to a portion of Mr. Carter's concert profits. *See* Dkt. No. 309 at 2 (the "December 2011 Order").  This Court correctly denied that motion, holding, among other things, that the burden was on Plaintiff to show "a 'causal nexus' between the [alleged] infringement" and Mr. Carter's concert revenues before he could recover any portion of Mr. Carter's concert profits. *Id.* at 11 (quoting *Polar Bear Prods., Inc. v. Timex Corp.*, 384 F.3d 700, 711 n.7 (9th Cir. 2004)).

Nearly three years later, in October 2014, Plaintiff commenced meet and confer efforts regarding his request for discovery of Mr. Carter's revenues from sales of concert tickets. *See* Pettit Decl., ¶ 2.  Plaintiff sent three letters and an email in the course of the meet and confer process, all focused entirely on his request for Mr. Carter's revenues and costs relating to sales of concert tickets. *Id.* ¶ 2, Exh. A (October 22, 2014 email from C. Johnson); ¶ 3, Exh. B (October 28, 2014 letter from J. Kushner); ¶ 4, Exh. C (November 7, 2014 letter from J. Kushner).

Plaintiff *never* mentioned the Live Nation Agreement in any of his meet and confer correspondence, and never indicated that he would seek to compel its production. *See id.*  Indeed, while Plaintiff had previously served a document

**NOTICE OF MOTION AND MOTION FOR REVIEW OF NON-DISPOSITIVE MAGISTRATE ORDER**

request (Request for Production No. 133) that sought Mr. Carter's agreements providing for any form of compensation relating to performances at which *Big Pimpin'* was performed, Plaintiff never addressed this Request for Production in his meet and confer correspondence.  *See id.* ¶ 5, Exh. D (Plaintiff's Fifth Set of Requests for Production).

Plaintiff similarly failed to address the subject of merchandising revenues in his meet and confer correspondence.  While Plaintiff's correspondence generally referenced Request for Production No. 136—which purports to seek, *inter alia*, merchandising revenues— that request is far broader than the relief addressed by the parties in their meet and confer correspondence.  *See id.*, Exhs. A-D.  In those communications, Plaintiff made no arguments regarding his alleged right to discover merchandising revenues, and instead focused entirely on concerts.  *See id.*, Exhs. A-C.  In his November 7, 2014 letter, Plaintiff's counsel thus summarized Mr. Carter's response to Request for Production Nos. 135 (which does, in fact, seek concert profit information) and 136 as

> Jay-Z would not agree to produce documents relating to concert revenues, on the grounds that Jay-Z believes the evidence does not establish that Big Pimpin caused any *concert ticket sales*.

Pettit Decl., Exh. C at 1 (emphasis added).

### 2.   Plaintiff Limits His Motion to Compel to Concert Revenues

On November 12, 2014, Plaintiff's counsel sent an email to Magistrate Judge Walsh

> respectfully request[ing] an order compelling Defendants to provide the following discovery:
>
> 1) Information regarding revenues from concerts at which *Big Pimpin* was performed (RFPs 131-136)

-5-

Dkt. No. 429 at 1.[2]  Plaintiff claimed in his email that "[i]nformation regarding Defendants' concert revenue is among the most critical discovery in this case" (*id.* at 2), and cited this Court's December 2011 Order – in which Plaintiff had argued that "he is entitled to at least a portion of concert revenues because Jay-Z's live performances of *Big Pimpin'* directly contributed to his profits from those *concert ticket sales*."  Dkt. No. 309 at 10-11 (emphasis added).  Plaintiff therefore asked for an order requiring Defendants to disclose "their revenue, profits, and other compensation for all concerts at which *Big Pimpin* was performed, any deductible expenses, and any concert revenue Defendants believe is not attributable to *Big Pimpin*."  Dkt. No. 429 at 3.  Plaintiff likewise devoted eleven pages of his reply brief to his request for concert revenues, but again did not seek merchandising revenues, and mentioned the Live Nation Agreement only in a footnote.  *See* Dkt. No. 433 at 1-11.

Defendants objected to Plaintiff's attempt to compel production of documents through an informal email and asked the Magistrate Judge to require Plaintiff to comply with Local Rule 37, noting in particular that the email procedure would neither require Plaintiff to set out verbatim the requests at issue and Defendants' responses thereto, nor allow the parties to fully brief their position.  Pettit Decl., ¶ 6, Exh. E (11/7/14 email from A. Lewis and E. Pettit to Magistrate Judge's chambers).  Magistrate Judge Walsh denied Defendants' request, but granted Defendants additional time to respond to Plaintiff's email.  *Id.* ¶ 7, Exh. F (11/12/14 email from Magistrate Judge's chambers).  Magistrate Judge Walsh granted Plaintiff's motion to compel on November 24, 2014 without the benefit of the joint stipulation required under the local rules.  *See* Dkt. No. 436 (November 2014 Order). The current

---

[2] Plaintiff also sought three other categories of documents, none of which are at issue in this Motion.  *See* Dkt. No. 429 at 2.

1  dispute can be tied directly back to the Magistrate Judge's decision not to adhere to
2  Local Rule 37 back in November.

3       In opposing Mr. Carter's request for review of the November 2014 Order,
4  Plaintiff again made no reference to merchandising revenues, and referred to Mr.
5  Carter's agreements only to the extent they might show that Mr. Carter was given a
6  financial incentive to perform "Big Pimpin'"—a fact that Mr. Carter and Live
7  Nation have confirmed under oath is not true. *See* Dkt. No. 444 at 12 n.4; *see also*
8  Pettit Decl, ¶ 9; Declaration of Omar Al-Joulani ("Al-Joulani Decl."), ¶ 8.  This
9  Court denied Mr. Carter's motion for review on January 12, 2015.  *See* Dkt. No. 447
10  (January 2015 Order).  In its January 2015 Order, this Court confirmed its
11  understanding that the November 2014 Order was limited to concert revenues,
12  holding that "the discovery of concert revenue 'appears reasonably calculated to
13  lead to the discovery of admissible evidence' concerning the existence and amount
14  of damages."  *Id.* at 3.

15           **3.  Mr. Carter Complies with this Court's Order Regarding**
16                **Concert Revenues**

17       Mr. Carter produced detailed spreadsheets containing his concert revenues,
18  costs and profits on February 15, 2015.  Pettit Decl., ¶ 8.  These spreadsheets were
19  generated from databases that Live Nation, which manages Mr. Carter's tours,
20  maintains electronically in its ordinary course of business.  Al-Joulani Decl., ¶ 6.
21  Live Nation then produced a 30(b)(6) witness whom Plaintiff deposed for several
22  hours regarding the information reflected on the spreadsheets.  *Id.* ¶ 7; Pettit Decl., ¶
23  9.  Live Nation's witness confirmed the accuracy of the spreadsheets, and explained
24  both the source of the information and the manner in which the resulting sums were
25  calculated.  *See id.*  Mr. Carter has also repeatedly confirmed that he would not
26  dispute the accuracy of the numbers in the spreadsheets for the purposes of this
27  litigation.  *See* Pettit Decl., ¶ 10.

28

### B.      *Plaintiff Attempts to Expand the Scope of the Magistrate Judge's Order*

On March 3, 2015, Plaintiff's counsel sent an email to counsel for Mr. Carter making altogether new demands for additional documents, including "[d]ocuments constituting a contract for compensation for tours/concerts, including the Live Nation agreement," and "[d]ocuments regarding concert merchandising revenue." Pettit Decl., ¶ 11, Exh. G.  Counsel for Mr. Carter responded two days later, on March 5, 2015, and responded to a further email from Plaintiff's counsel on March 9, 2015.  Mr. Carter's counsel confirmed in that email exchange that the amount of Mr. Carter's concert revenues—the subject of the prior motion practice—was not in dispute, and that neither category of documents covered by Plaintiff's new demand had been requested in the prior meet and confer or ordered produced.  *Id.* ¶ 12, Exh. H.  Counsel further explained that neither category of documents was relevant or reasonably calculated to lead to the discovery of admissible evidence.  *Id.*

Plaintiff made no further effort to meet and confer until April 9, 2015, when his counsel sent a letter to counsel for Mr. Carter reiterating his demand for the Live Nation Agreement and merchandising profit information.  *Id.* ¶ 13, Exh. I.  Counsel for Mr. Carter responded on April 13, 2015, explaining again that Mr. Carter had not previously been ordered to produce the Live Nation Agreement or his merchandising revenues, and providing additional authority for why the documents were not discoverable.  *Id.* ¶ 14, Exh. J.

Plaintiff's delay in pursuing meet and confer efforts wholly belies his demand that this issue be decided on an expedited basis.  *See* Dkt. No. 501 at 1.  Indeed, while Plaintiff claims that its "clarification" request should be expedited in light of the upcoming depositions of its experts, *see* Pettit Decl., ¶ 17, Exh. L (4/17/15 email from J. Gottfried), none of Plaintiff's experts ever mention merchandising revenues,

nor would the Live Nation Agreement inform any of Plaintiff's experts' opinions. Pettit Decl., ¶¶ 22-23, Exhs. N, O.

### C.    The Magistrate Judge Grants Plaintiff's "Request for Clarification" Without Allowing Mr. Carter or Non-Party Live Nation to be Heard

#### 1.    Plaintiff Emails the Magistrate Judge's Chambers and Suggests that the Magistrate Judge Rule Without "Extensive Argument" or an Opportunity to Seek Reconsideration

Counsel for Plaintiff and Mr. Carter contacted Magistrate Judge Walsh's clerk on April 16, 2015 regarding Plaintiff's planned motion to compel the production of the Live Nation Agreement and Mr. Carter's merchandising revenues. Pettit Decl., ¶ 15. The clerk advised Plaintiff's counsel to send an email to chambers identifying the issue and the relief Plaintiff was seeking, and advised counsel for Mr. Carter to send its own email requesting a briefing and hearing schedule. *Id.* Based on the clerk's statements, counsel for Mr. Carter reached out to counsel for Plaintiff that same day to set a mutually-convenient briefing schedule that would also accommodate the needs of non-party Live Nation. *Id.* ¶ 16, Exh. K. Plaintiff's counsel refused on April 17 (*id.* ¶ 17, Exh. L), and, less than two minutes later, sent an email to the Magistrate Judge's chambers titled "Request for Clarification," which asked the Magistrate Judge for "guidance in interpreting its order of November 24, 2014, which was affirmed by the district-court judge on January 12, 2015." Dkt. No. 501 at 1.[3]

Recognizing that neither the briefing nor the prior Concert Revenue Orders ever addressed the documents sought in his belated requests, Plaintiff's counsel disingenuously labeled his request as an attempt to "clarify whether [his] order on

---

[3] The Magistrate Judge ordered that Plaintiff's email, along with the responding emails submitted by Mr. Carter and Live Nation, be filed collectively as a single document. *See* Dkt. No. 501.

**NOTICE OF MOTION AND MOTION FOR REVIEW OF NON-DISPOSITIVE MAGISTRATE ORDER**

plaintiff's motion to compel required defendant Sean [*sic*] Carter ("defendant") to produce documents responsive to RFP Nos. 133 and 136." *Id.*  Plaintiff's description failed to advise the Court of the radical modification he was seeking of the November 2014 Order. While the cited discovery requests covered a variety of subjects, the topics addressed by his "request for clarification" (*i.e.* any touring agreements between Mr. Carter and non-party Live Nation, and information sufficient to show Mr. Carter's revenues from merchandise sold at Mr. Carter's concerts) had not been the subject of prior meet and confers, briefing or orders.  *See supra* Section III.A.   To minimize the risk that this sleight of hand would be perceived by the Court, Plaintiff's counsel not only asked that this "clarification" be made without "extensive argument from the parties," he also argued that Mr. Carter should not be permitted to seek reconsideration of any order.  *See* Dkt. No. 501 at 1.

### 2. Mr. Carter and Live Nation Request an Opportunity to be Heard on Plaintiff's Request

Mr. Carter's counsel responded the same day, asking that Plaintiff be required to comply with Local Rule 37, or in the alternative, that Mr. Carter be afforded an opportunity to submit an opposition brief.  *Id.* at 5.  Counsel emphasized that Plaintiff's request for "clarification" required an analysis of more than 450 pages of prior briefing, and was "too complicated and consequential to be adjudicated through an informal exchange of emails."  *Id.*  Counsel explained that the meet and confer requirements and joint stipulation procedure of Local Rule 37 would be particularly helpful under these circumstances in framing the dispute, and that there were no immediate time pressures or other exigencies that would justify deviating from the requirements set forth in the Local Rules.  *Id.*  Finally, counsel noted that Plaintiff's request, if successful, would require the disclosure of highly sensitive business information belonging not only to Mr. Carter but also to non-party Live

CALDWELL
LESLIE &
PROCTOR

Nation, and that Live Nation should therefore have an adequate opportunity to establish unfair prejudice.  *Id.*

Live Nation's counsel sent a separate email to Magistrate Judge Walsh's chambers later the same afternoon.  *See id.* at 7.  Live Nation confirmed that Plaintiff's "request for clarification" implicated its "most sensitive business interests and agreements," and joined in Mr. Carter's request that Plaintiff be required to comply with Local Rule 37 or, in the alternative, that the Magistrate adopt the briefing schedule Mr. Carter had proposed.  *Id.*  Live Nation's counsel also specifically requested that it be permitted to be heard on this discovery dispute, as its concerns had not previously been brought to the Magistrate Judge's attention.  *Id.*

Plaintiff's counsel sent a responsive email on Monday, April 20, 2015.  *See id.* at 8.  The email noted several points that Plaintiff believed were "relevant to the Court's evaluation of the scheduling issues raised by defense counsel."  *Id.*  Thereafter, Mr. Carter awaited the Magistrate Judge's ruling on the scheduling issues addressed by the parties.  Pettit Decl., ¶ 18.

### 3. The Magistrate Judge Rejects Mr. Carter's and Live Nation's Request to be Heard and Grants Plaintiff's Request

After not hearing anything from the Magistrate Judge's chambers for more than a week, Mr. Carter's counsel contacted the Magistrate Judge's court clerk, Isabel Martinez, on Thursday, April 30, 2015.  Pettit Decl., ¶ 19.  Counsel emphasized to Ms. Martinez that Mr. Carter wanted an opportunity to submit an opposition and be heard in connection with the dispute, and was awaiting the Court's instructions on how to move forward in light of his Rule 37 objections and request for a briefing schedule.  *Id.*  Ms. Martinez confirmed that Magistrate Judge Walsh was aware that the dispute was pending, but would be out of chambers until the following Monday.  *Id.* ¶ 20.  Ms. Martinez advised counsel that he could expect

1  to hear from the Magistrate Judge sometime in the next week as to how to proceed.
2  *Id.*

3       Rather than informing the parties how to proceed, on Tuesday, May 5, 2015,
4  Magistrate Judge Walsh issued his order granting Plaintiff's "Request for
5  Clarification" without first giving Mr. Carter or Live Nation an opportunity to be
6  heard.  Dkt. No. 498 (May 2015 Order).  While Magistrate Judge Walsh correctly
7  noted that Mr. Carter and Live Nation had requested compliance with Local Rule 37
8  or, in the alternative, a reasonable briefing schedule, he nonetheless granted
9  Plaintiff's request "over Defendant's and Live Nation's objections."  *See id.*  The
10 Magistrate Judge did not independently analyze either the relevance of the Live
11 Nation Agreement or Mr. Carter's merchandising revenues, or the prejudice that Mr.
12 Carter and Live Nation would be exposed to if their production were compelled.
13 *See id.*  Instead, he found, based entirely on Plaintiff's submissions, that the
14 November 2014 Order and this Court's January 2015 Order encompassed Plaintiff's
15 newly-asserted requests, and ordered "Plaintiff [*sic*]…a third time to produce
16 documents that are responsive to Requests for Production Nos. 133 and 136 no later
17 than May 18, 2015."  *Id.* at 2.

18 **III.    STANDARD OF REVIEW**

19       A party can challenge a non-dispositive order by a magistrate judge "within
20 14 days after being served with a copy."  Fed.R.Civ.P. 72(a); *see also* Local Rule
21 72.  "The district judge in the case *must* consider timely objections and modify or set
22 aside any part of the order that is clearly erroneous or is contrary to law."
23 Fed.R.Civ.P. 72(a) (emphasis added); *see also* 28 U.S.C. § 636(b)(1)(A); *Crispin v.*
24 *Christian Audigier, Inc.*, 717 F.Supp.2d 965, 970, 991 (C.D.Cal. 2010) (reversing
25 and vacating magistrate decision on motion to quash subpoenas).  "The 'contrary to
26 law' standard … permits independent review of purely legal determinations by the
27 magistrate judge."  *Id.* at 971 (quoting *F.D.I.C. v. Fidelity & Deposit Co. of Md.*,

28

196 F.R.D. 375, 378 (S.D.Cal. 2000)); *see also Haines v. Liggett Group, Inc.*, 975 F.2d 81, 91 (3d Cir. 1992) ("the phrase 'contrary to law' indicates plenary review as to matters of law"); *Med. Imaging Ctrs. of Am., Inc. v. Lichtenstein*, 917 F.Supp. 717, 719 (S.D.Cal. 1996) ("Section 636(b)(1) ... has been interpreted to provide for *de novo* review by the district court on issues of law").

The May 2015 Order was both clearly erroneous and contrary to law, for multiple reasons.  Specifically:

- The Magistrate Judge violated Local Rule 37 by granting Plaintiff's "request for clarification" "over Defendant's and Live Nation's objections," thus denying Mr. Carter and non-party Live Nation their right to be heard; and

- The Magistrate Judge ordered production of documents responsive to Request for Production Nos. 133 and 136, including the Live Nation Agreement, which were not addressed either in the prior motion to compel or in this Court's order affirming the Magistrate Judge's November 2014 Order.

These questions should be addressed *de novo*, as Magistrate Judge Walsh did not even consider the former, and the latter depends on this Court's understanding of its own order.  The Court should also independently consider the relevance of the requested documents relative to the prejudice Mr. Carter and Live Nation would suffer if they were disseminated as a result of their production, as Magistrate Judge Walsh has never considered those issues, either in his prior discovery order or his more recent ruling.

**IV.   THIS COURT SHOULD VACATE THE MAGISTRATE JUDGE'S MAY 2015 ORDER AND DENY PLAINTIFF'S REQUEST**

**A.   *The Magistrate Judge Violated Local Rule 37 And Plainly Erred In Denying Mr. Carter The Opportunity To Be Heard***

Local Rule 37 sets forth the procedures that parties must follow when bringing a "motion relating to discovery . . . ." L.R. 37-1.[4]  The Rule first requires the parties to the discovery dispute to "confer in a good faith effort to eliminate the necessity for hearing the motion or *to eliminate as many of the disputes as possible*." *Id.* (emphasis added).  Any remaining disputes are then submitted to the Court through a procedure whereby the moving party prepares a joint stipulation setting forth its positions and the bases for those positions, and the opposing party has an opportunity to prepare and include its response in the joint stipulation.  *See* L.R. 37-2.2.  The parties are each then entitled to file a supplemental memorandum in support of their positions.  L.R. 37-2.3.

Compliance with Local Rule 37 is not voluntary.  To the contrary, Local Rule 37-3 provides that, "[u]nless the Court in its discretion otherwise allows, no discovery motions shall be filed or heard on an ex parte basis, absent a showing of irreparable injury or prejudice not attributable to the lack of diligence of the moving party," a showing wholly absent here.  Indeed, Magistrate Judge Walsh's own procedures specifically state, in bold, that "**[s]trict compliance with Local Rule 37 is required**."  *See* Pettit Decl., ¶ 21, Exh. M.

Plaintiff's failure to comply with Local Rule 37 is not simply a matter of form, as Plaintiff's current "request for clarification" makes clear.  Plaintiff previously met, conferred and moved to compel a narrow set of documents, and Mr.

---

[4] Although Plaintiff styled his email to the Magistrate Judge as a request for clarification of the Magistrate Judge's prior discovery order, the relief Plaintiff sought in the email falls squarely within the ambit of a "motion relating to discovery" within the meaning of Local Rule 37-1.  *See* Dkt. No. 501 at 1-4.

CALDWELL LESLIE & PROCTOR

1   Carter has complied with the order granting Plaintiff's motion.  Plaintiff has now

2   exploited the informal procedures permitted by the Magistrate Judge and

3   mischaracterized the Magistrate Judge's prior ruling to expand the November 2014

4   Order, without complying with his obligation to meet and confer in good faith and

5   without giving Mr. Carter or non-party Live Nation a meaningful opportunity to be

6   heard.  *See Schneider v. San Diego,* 28 F.3d 89, 92 (9th Cir.1994), *as amended*

7   (observing that due process requires "notice and an opportunity to be heard at a

8   meaningful time and in a meaningful manner") (citation and internal quotation

9   marks omitted).

10       This Court should therefore vacate the Magistrate Judge's May 2015 Order

11   and instruct the parties to follow the procedures set forth in Local Rule 37 in

12   connection with any motion relating to discovery, including Plaintiff's request for

13   the Live Nation Agreement and Mr. Carter's merchandising revenues.

14       **B.     *Plaintiff's "Request for Clarification" Should be Denied***

15       This Court, however, need not send this issue back to the Magistrate Judge,

16   because, as set forth below, Plaintiff cannot establish that the Live Nation

17   Agreement or Mr. Carter's merchandising revenues are discoverable, let alone that

18   these documents were the subject of the Magistrate Judge's November 2014 Order.

19       **1.     The Meet and Confers and Briefing Leading up to the**

20       **November 2014 Order Never Addressed Either the Live**

21       **Nation Agreement or Merchandising Profits**

22       As set forth in detail above, Plaintiff's meet and confer efforts leading up to

23   the Magistrate Judge's November 2014 Order focused entirely on Mr. Carter's

24   revenues from concert ticket sales—not the Live Nation Agreement or Mr. Carter's

25   merchandising revenues.  The meet and confer process has value only insofar as it

26   allows the parties to narrow disputes and reach agreement on contested matters, *see,*

27   *e.g., Amini Innovation Corp. v. McFerran Home Furnishings, Inc.*, 300 F.R.D. 406,

28

408 n.4 (C.D. Cal. 2014), which is of course impossible unless the issues in question are affirmatively identified and discussed.  *See Garrison v. Waddington*, No. C05-5487 RJB/KLS, 2007 WL 4510296, at *1 (W.D.Wash. Dec. 18, 2007) ("Before a party may bring a motion to compel discovery, he needs to make [a] good faith effort to meet and confer *regarding the outstanding discovery at issue*") (emphasis added) (citing Fed.R.Civ.P. 37(2)(b)).  Because Plaintiff did not meet and confer on the documents he now seeks, those documents were not part of the November 14 Order, and thus cannot be compelled now through Plaintiff's "request for clarification."

### 2.    Mr. Carter was Ordered to Produce Only His Concert Revenues

In the "motion to compel" it submitted to the Magistrate Judge via email on November 12, 2014, Plaintiff identified four categories of information, one of which was "[i]nformation regarding revenues from concerts at which *Big Pimpin* was performed (RFPs 131-136) . . . ."[5]  Dkt. No. 429 at 1; *see also id.* at 2 (arguing that "The Court Should Compel Production of Concert Revenue Information (RFPs 131-136)").  Plaintiff's November 2014 motion included no discussion whatsoever regarding touring agreements or merchandising revenues.  *See id.*  Instead, in both his motion and his subsequent reply brief, Plaintiff sought only revenues from concert ticket sales.  *See id.*; Dkt. No. 433 (Plaintiff's Reply in Support of November 2014 Motion) at 8 ("This and other evidence . . . proves that fans *purchase tickets to Jay Z's concerts* hoping and expecting to hear *Big Pimpin*.").  Indeed, there was no mention of merchandising revenue in any of Plaintiff's papers, and the only mention of the Live Nation Agreement was in a footnote in Plaintiff's reply.  *See* Dkt. No. 433 at 4, n.2.  By failing to raise the Live Nation Agreement in

---

[5] The other categories of documents and information sought by Plaintiff's previous motion to compel are unrelated to the instant dispute.

his motion and failing to raise merchandising revenues at all, Plaintiff waived his right to seek their production.  *See Kruszka v. Toyota Motor Corp.*, No. CV 11-01578-RGK(FFMx), 2011 WL 9820198, at \*3 (C.D. Cal. Aug. 2, 2011) (citing *United States v. Patterson,* 230 F.3d 1168, 1172 n. 3 (9th Cir.2000) (holding that "arguments raised for the first time in a reply are waived").[6]

Magistrate Judge Walsh correctly described Plaintiff's November 2014 motion as seeking information regarding revenue from concerts at which *Big Pimpin'* was performed, and ordered Mr. Carter to "produce discovery related to the concert revenues no later than December 19, 2014."  Dkt. No. 436 at 2.  Like Plaintiff's November 2014 motion and meet and confer letters, the Magistrate Judge's November 2014 Order was silent regarding touring agreements and merchandising revenues.  *See id.*

In denying Mr. Carter's prior motion for review, this Court also accurately described the Magistrate Judge's November 2014 Order as requiring only that Mr. Carter "produce *the amount of revenue he earned from concerts where he performed 'Big Pimpin'* in order to allow plaintiff Osama Ahmed Fahmy to calculate his damages."  *See* Dkt. No. 447 at 1 (emphasis added).  This Court's January 2015 Order made no mention of touring agreements or merchandising revenues.  *See id*.

### 3.    Plaintiff Cannot Meet His Burden to Establish the Relevance of the Newly Sought Categories of Documents

Plaintiff's email asks the Magistrate Judge for "guidance in interpreting" his November 2014 Order and this Court's January 2015 Order, and seeks specifically the production of (1) any touring agreements between Mr. Carter and Live Nation; and (2) information sufficient to show Mr. Carter's revenues from merchandise sold

---

[6] Even if Plaintiff had not waived his right to seek the Live Nation Agreement, the single footnote in his Reply contains only speculation as to the Agreement's potential relevance.  *See* Dkt. No. 433 at 4, n.2.  As set forth in Section IV.B.(3)(a), *infra*, the facts wholly bely Plaintiff's speculative claim.

at his concerts.  The burden is on Plaintiff to establish that either of these categories of information are relevant or reasonably calculated to lead to the discovery of admissible evidence.  *See* Fed.R.Civ.P. 26(b)(1); *see also Rich v. Shrader*, No. 09-CV-0652-AJB(BGS), 2013 WL 3710806, at *8-9 (S.D. Cal. July 11, 2013) (denying motion to compel production of documents where plaintiff failed to meet his burden to show relevance); *Ellis v. J.P. Morgan Chase & Co.*, No. 12-cv-03897-YGR (JCS), 2014 WL 1510884, at *3 (N.D. Cal. Apr. 1, 2014) (same).  For the reasons set forth below, Plaintiff cannot meet this burden:

> ### (a)   The Live Nation Agreement is not Relevant nor Reasonably Calculated to Lead to the Discovery of Admissible Evidence

If Plaintiff is able to establish liability *and* a causal nexus between "Khosara Khosara" and Mr. Carter's concert profits, then he will be entitled to an award of the portion of those profits "that are attributable to the infringement."  17 U.S.C. § 504(b).  Mr. Carter has already produced the entirety of his concert revenues and expenses, and both he and Live Nation have stipulated, or agreed to stipulate, that these numbers are correct.  Pettit Decl., ¶¶ 7-9 ; Al-Joulani Decl., ¶ 7.[7]

The only potential basis identified by Plaintiff for production of the Live Nation Agreement is his baseless and self serving assertion that the spreadsheets prepared by Live Nation may not be reliable. Not only is there no evidentiary foundation for that argument, but Plaintiff cites no authority that permits him to, in effect, audit Live Nation's records on Mr. Carter's behalf.  Live Nation's Rule 30(b)(6) witness testified that the spreadsheets Mr. Carter produced were compiled by Live Nation using information contained in a proprietary database that Live

---

[7] Plaintiff misleadingly claims in his email to the Magistrate Judge that Mr. Carter has contended "that the numbers [in the spreadsheets] were inaccurate insofar as they overstated [Mr. Carter's] concert revenues."  Dkt. No. 501 at 2.  Plaintiff's assertion is demonstrably untrue.  *See* Pettit Decl., ¶ 10.

1   Nation maintains in the ordinary course of business.  *See* Al-Joulani Decl., ¶ 6.  The

2   Ninth Circuit has repeatedly held that such computer-generated database records are

3   sufficiently reliable to be admissible in evidence.  *U-Haul Int'l Inc. v. Lumbermens*

4   *Mut. Cas. Co.*, 576 F.3d 1040, 1043 (9th Cir. 2009) (holding that "evidence that has

5   been compiled from a computer database is also admissible as a business record");

6   *Sea-Land Serv., Inc. v. Lozen Int'l, LLC*, 285 F.3d 808, 819 (9th Cir. 2002)

7   (admitting information "produced from the same electronic information that was

8   generated contemporaneously") (emphasis omitted).

9       In arguing that he is entitled to additional discovery from Mr. Carter, Plaintiff

10  relies on numerous unpublished cases, none of which involve even remotely similar

11  circumstances to those presented here.  Indeed, in the primary case on which

12  Plaintiff relies, *U.S. Ethernet Innovations, LLC v. Acer, Inc.*, No. C 10-3724 CW,

13  2013 WL 6671774 (N.D.Cal. Dec. 18, 2013), the defendant refused to respond to

14  jurisdictional discovery, and instead submitted a one paragraph declaration from its

15  director of legal affairs purporting to explain why the discovery sought was

16  unnecessary.  Mr. Carter, by contrast, has produced concert profits in response to

17  Plaintiff's discovery requests, and *Acer* is thus wholly inapposite.  The other cases

18  on which Plaintiff relies are also inapt.  *See Pressley v. City of New York*, No. 11-

19  CV-3234 (SLT)(RER), 2013 WL 1561466 (E.D.N.Y. Apr. 12, 2013) (rejecting a

20  plaintiff's efforts to avoid discovery based on an incorrect claim that the records

21  sought were not relevant); *Petrashishin v. BAC Home Loans Servicing P'Ship*

22  *Recontrust Co., N.A.*, No. 3:11-CV-1105-HO, 2012 WL 1278046 (D.Or. Apr. 13,

23  2012) (same).

24      More important, the Live Nation Agreement would not in any way assist

25  Plaintiff in determining whether the information concerning Mr. Carter's concert

26  profits is, in fact, accurate.  Live Nation's 30(b)(6) witness testified at length and

27  under oath regarding the database from which the concert revenue numbers were

28

1   retrieved and what the revenue numbers on the spreadsheets represent.  Pettit Decl.,

2   ¶ 8; Al-Joulani Decl., ¶ 7.  As Live Nation has also explained,

3         there is nothing in Mr. Carter's agreement with Live

4         Nation that would disclose what I understand the plaintiff

5         in this case purports to want to know—that is, the amount

6         of money that Live Nation, in fact, paid to Mr. Carter in

7         connection with his performances (generally, or of *Big*

8         *Pimpin'* specifically).

9   Al-Joulani Decl., ¶ 5.  Similarly, while Plaintiff speculates (again without basis)

10  that the Live Nation Agreement may require, or give Mr. Carter a financial

11  incentive to, perform *Big Pimpin'* at concerts, the evidence makes clear that

12  Plaintiff's speculation is unfounded.  *Id.* ¶ 8 ("there is no provision in any Live

13  Nation agreement with Mr. Carter that ties Mr. Carter's compensation … in any

14  way to the live personal performance of any individual songs, including *Big*

15  *Pimpin'*"); *see also* Pettit Decl., ¶ 9.

16          **(b)**    **Mr. Carter's Merchandising Profits are not Relevant**

17              **or Reasonably Calculated to Lead to the Discovery of**

18              **Admissible Evidence**

19      Plaintiff does not even attempt to explain how merchandising revenue could

20  possibly be relevant to his alleged damages, but claims only that he "is not required

21  to accept defendant's questionable argument that Jay Z merchandise (including

22  some likely related to Big Pimpin') sold at concerts at which Big Pimpin' was

23  performed is unrelated to Big Pimpin'."  Dkt. No. 501 at 4.  It is Plaintiff, however,

24  who bears the burden of demonstrating a non-speculative causal nexus between the

25  performance of "Khosara Khosara" at concerts and the revenues he seeks to recover

26  as damages, and he has never made any proffer in that regard.  *See* Dkt. No. 309

27  (December 2011 Order) at 11; *see also Mackie v. Rieser*, 296 F.3d 909, 915-16 (9th

28

1    Cir. 2002) (upholding summary judgment for defendant based on plaintiff's failure
2    to adduce any non-speculative evidence suggesting a link between the infringement
3    and concert revenues); *Polar Bear Prods.*, 384 F.3d at 714 (vacating jury verdict
4    because plaintiff's circumstantial evidence of a connection between the
5    infringement and the profits sought was "woefully insufficient" as a matter of law).
6        Plaintiff's conjecture is not evidence, and there are no *facts* supporting
7    Plaintiff's claim that any of the merchandise sold at Jay Z concerts during the
8    relevant time period was in any way related to *Big Pimpin'*, let alone "Khosara
9    Khosara."  Indeed, the facts are to the contrary – Live Nation's corporate
10   representative has confirmed on information and belief that "Live Nation has not
11   used the *Big Pimpin'* name and/or lyrics on any merchandise sold at Jay Z concerts
12   produced by, promoted by, or otherwise involving Live Nation."  Al-Joulani Decl.,
13   ¶ 9.
14       Tellingly, *none* of Plaintiff's experts purport to link Mr. Carter's merchandise
15   sales to performances that include Khosara Khosara.  Pettit Decl., ¶ 22.  Instead, of
16   the seven experts Plaintiff disclosed, only two opine on a purported "causal nexus"
17   between the alleged infringement and Mr. Carter's profits from *concert ticket sales*
18   – Dr. Michael Kamins, who opined that "[h]ad Jay-Z not performed "Big Pimpin'"
19   during the relevant time period, it would have had a negative impact on his ability to
20   sell tickets and maintain the prices charged for concert tickets," *id.*, Exh. N at 1, and
21   local television personality Sam Rubin, who opined that "an appreciable number of
22   fans buy tickets to Jay-Z concerts, in part or whole, to see him perform *Big Pimpin*."
23   *Id.* ¶ 23, Exh. O at 2.  Given the failure of Plaintiff's experts to even address this
24   issue, there is no means for Plaintiff to utilize this information at trial, even if it was
25   required to be produced.
26       "When an infringer's profits are only remotely and speculatively attributable
27   to infringement, courts will deny recovery to the copyright owner."  *Polar Bear*

28

1  *Prods.*, 384 F.3d at 711 (citing 4 *Nimmer On Copyright* § 14.03, 14–34).  With the

2  expert disclosure deadline passed, Plaintiff will be unable to offer evidence that *any*

3  of Mr. Carter's merchandise sales are in any way related to performances of

4  "Khosara Khosara," and the amount of those sales is thus irrelevant to the issues in

5  this case.

6      **C.**    ***The Information Plaintiff Seeks Is Highly Sensitive, And Its***

7          ***Disclosure Would Expose Mr. Carter And Non-Party Live Nation To***

8          ***Severe Prejudice***

9      The agreement between Mr. Carter and Live Nation contains highly

10  confidential and sensitive business information, and the risk of disclosure that would

11  necessarily accompany the production of any such agreement in this case would be

12  severely prejudicial to both Mr. Carter and Live Nation.  The terms of the Live

13  Nation Agreement are highly individualized, and are kept strictly confidential.  *See*

14  Al-Joulani Decl., ¶¶ 2-3.  Should those terms become public, Mr. Carter's ability to

15  negotiate with other potential tour promoters in the future would be undermined, as

16  those promoters would have complete insight into the terms of Mr. Carter's current

17  deal.  Live Nation likewise considers the terms and conditions of its agreements

18  with recording and performing artists as the functional equivalent of the formula for

19  Coca-Cola, and is extremely careful to protect and maintain the secrecy of these

20  agreements, even as to other employees within Live Nation.  *See id*.  Revelation of

21  terms that Live Nation negotiated with any particular artist would put Live Nation at

22  a serious competitive disadvantage in negotiating deals with artists new to Live

23  Nation, and could also jeopardize Live Nation's relationships with other artists who

24  are already signed with Live Nation.  *See id.* ¶ 4.

25      The Live Nation Agreement is extremely long and detailed (more than one

26  hundred pages) and the overwhelming majority of the terms and information

27  contained in that Agreement has absolutely no bearing on any issue in this case.  *See*

28

*id.* ¶ 5.  Mr. Carter has already produced the only information Live Nation has that is relevant to this case (*i.e.*, the amount of revenues and profits from sales of tickets to Mr. Carter's concerts).  An order compelling the production of any agreements between Live Nation and Mr. Carter would serve no legitimate purpose, and provide no relevant evidence beyond what Mr. Carter has already produced in response to this Court's previous order.[8]

While Plaintiff is likely to point to the protective order in this case as a means of mitigating against the risk of prejudice to Mr. Carter or Live Nation, the mere existence of a protective order is no guarantee against the dissemination of information designated thereunder as confidential (or even "highly confidential – attorneys' eyes only").  *See, e.g. Mannington Mills, Inc. v. Armstrong World Indus., Inc.*, 206 F.R.D. 525, 530-31 (D. Del. 2002) (granting motion to quash production of sensitive trade secret information notwithstanding the opposing party's argument that the protective order in the case "limits disclosure of confidential information to attorney's eyes only").  Given the magnitude of the harm that would result from the improper disclosure of the discovery Plaintiff seeks, combined with the fact that the production of this discovery would not disclose information of any probative value that has not already been produced by Mr. Carter, this Court should reject Plaintiff's efforts to compel its production.

---

[8] As noted above, there is nothing in Mr. Carter's agreement with Live Nation that would disclose the only relevant fact at issue here—that is, the amount of money that Live Nation has paid to Mr. Carter in connection with his concert performances. *See* Al-Joulani Decl., ¶ 5.

**NOTICE OF MOTION AND MOTION FOR REVIEW OF NON-DISPOSITIVE MAGISTRATE ORDER**

# V.    CONCLUSION

For the foregoing reasons, this Court should vacate the Magistrate Judge's May 2015 Order, confirm that Plaintiff has already received the concert revenue information to which this Court previously ruled he is entitled, and reject Plaintiff's continuing efforts to expand the scope of this Court's prior orders.


DATED:  May 11, 2015                  Respectfully submitted,

                                      CALDWELL LESLIE & PROCTOR, PC
                                      LINDA M. BURROW
                                      ERIC S. PETTIT


                                      By  _____/s/_____
                                          LINDA M. BURROW
                                      Attorneys for Defendant
                                      SHAWN CARTER (pka Jay Z)

CALDWELL
LESLIE &
PROCTOR

-24-