BROWNE GEORGE ROSS LLP
Peter W. Ross (State Bar No. 109741)
  pross@bgrfirm.com
Keith J. Wesley (State Bar No. 229276)
  kwesley@bgrfirm.com
Jonathan Gottfried (State Bar No. 282301)
  jgottfried@bgrfirm.com
2121 Avenue of the Stars, Suite 2400
Los Angeles, California 90067
Telephone: (310) 274-7100
Facsimile: (310) 275-5697

Attorneys for Plaintiff
Osama Ahmed Fahmy

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| Osama Ahmed Fahmy, an individual,<br><br>Plaintiff,<br><br>vs.<br><br>Jay-Z (aka Shawn Carter), Timothy Mosely, Kyambo Joshua, Rob Bourdon, Brad Delson, Mike Shinoda, Dave Farrell, Joseph Hahn, Chester Bennington, Big Bad Mr. Hahn Music, Chesterchaz Publishing, EMI Blackwood Music, Inc., EMI Music Publishing Ltd., Kenji Kobayashi Music, Lil Lulu Publishing, Machine Shop Recordings, LLC, Marcy Projects Productions II, Inc., MTV Networks Enterprises Inc., Nondisclosure Agreement Music, Paramount Home Entertainment, Inc., Paramount Pictures Corporation, Radical Media, Rob Bourdon Music, Roc-A-Fella Records, LLC, Timbaland Productions, Inc., UMG Recordings, Inc., Universal Music and Video Distribution, Inc., and Warner Music Inc.,<br><br>Defendants. | Case No. 07-CV-05715 CAS (PJWx)<br><br>The Hon. Christina A. Snyder<br><br>**PLAINTIFF OSAMA AHMED FAHMY'S OPPOSITION TO DEFENDANT SHAWN C. CARTER'S: (1) *EX PARTE* APPLICATION FOR STAY AND FOR ORDER SHORTENING TIME FOR HEARING; AND (2) MOTION FOR REVIEW OF THE MAGISTRATE JUDGE'S NON-DISPOSITIVE RULING**<br><br>Complaint filed: Aug. 31, 2007<br>Discovery Cutoff: Nov. 28, 2014<br>Trial Date: Oct. 13, 2015 |

526312.1

# **TABLE OF CONTENTS**

Page

I. INTRODUCTION ...................................................................................................1
II. BACKGROUND ....................................................................................................3
    A. Plaintiff Moved to Compel Responses to RFP Nos. 131-36...................3
    B. Defendants Opposed Plaintiff's Motion to Compel on November 19, 2014. .................................................................................................4
    C. The Magistrate Judge Granted Plaintiff's Motion to Compel RFP Nos. 131-36. .............................................................................................5
    D. Defendant Objected to the Magistrate Judge's Order. ............................5
    E. This Court Adopted the Magistrate Judge's Ruling. ...............................5
    F. Defendant Produced a Single Document of 11 Pages in Response to the Court's Order. ..................................................................................6
    G. Plaintiff Asked Defendant to Comply with the Magistrate Judge's Order Adopted by the Court.....................................................................7
    H. Plaintiff Asked the Magistrate Judge to Clarify His Order of November 2014. ........................................................................................8
    I. Defense Counsel Proposed to Plaintiff's Counsel a Briefing Schedule that Contradicted the Magistrate Judge's Order......................9
III. ARGUMENT ..........................................................................................................9
    A. The Court Should Not Stay the Magistrate Judge's Recommendation in Order to Provide for an Extended Briefing Schedule..................................................................................................9
    B. The Magistrate Judge Did Not Violate Local Rule 37......................... 10
    C. Contrary to Defendant's Argument, the Magistrate Judge's Clerk Did Not Mislead Counsel. ..................................................................... 11
    D. Contrary to Defendant's Argument, the Magistrate Judge Did Not Interpret His Own Order in a Way That Was Clearly Erroneous or Contrary to Law. .............................................................. 11
IV. CONCLUSION .................................................................................................... 13

# TABLE OF AUTHORITIES

Page(s)
**FEDERAL CASES**

*Petrashishin v. BAC Home Loans Servicing P'ship Recontrust Co.*,
   No. 3:11-CV-1105-HO, 2012 WL 1278046 (D. Or. Apr. 13, 2012) ..................... 12

*Pressley v. City of New York*,
   No. 11-CV-3234, 2013 WL 1561466 (E.D.N.Y. Apr. 12, 2013) ......................... 12

*U.S. Ethernet Innovations, LLC v. Acer, Inc.*,
   No. C 10-3724 CW, 2013 WL 6671774 (N.D. Cal. Dec. 18, 2013) ..................... 12

**RULES**

Fed. R. Civ. P.
   Rule 26(b)(1) ......................................................................................................... 5
   Rule 72(a) ..................................................................................................... 2, 3, 9

Local Rules
   Rule 37 ..................................................................................................... 8, 10, 11
   Rule 72-2 ............................................................................................................... 9

**OTHER AUTHORITIES**

Black's Law Dictionary ............................................................................................. 11

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

The Court should deny defendant's *ex parte* application for: (1) a stay of the Magistrate Judge's order coupled with an extended briefing schedule for defendant's objections, or (2) in the alternative, a hearing prior to May 18 on defendant's objections. (*Ex Parte* Appl. at 5:26-6:3)[1]

The Court should deny the first *ex parte* request because an extended briefing and hearing schedule would be unreasonable. Fact discovery should have closed almost six months ago; the parties are in the midst of expert discovery; the resolution of other discovery issues is dependent upon the resolution of this dispute; and defendant's delays in providing basic fact discovery are obstructive. As the Magistrate Judge's order explained, this is the third time in six months that defendant has been ordered to respond to plaintiff's Request for Production Nos. 133 and 136. The issues currently before the Court have been addressed *ad nauseam* in prior briefing before the Magistrate Judge and this Court that totaled more than 450 pages. As detailed in the Table appended to the end of this brief, defendant's objections are recycled from prior briefs on the same issues. Consequently, the Court should deny defendant's request for more delays and address the merits of the dispute directly.

The Court should deny defendant's second *ex parte* request (a hearing on defendant's objections), which is an effort to get around the Court's rule that "[n]o hearing will be held on any *ex parte* application unless deemed necessary by the

---

[1] The following abbreviations are used in this Opposition: (1) Defendant's *Ex Parte* Application for Stay ("*Ex Parte* Appl."); (2) Declaration of Eric S. Pettit in Support of Defendant's Motion for Review of Non-Dispositive Ruling of Magistrate ("Pettit Decl."); (3) Declaration of Eric S. Pettit in Support of Defendant's *Ex Parte* Application for Stay of Magistrate Judge Order ("Pettit *Ex Parte* Decl."); (4) Declaration of Jonathan Gottfried in Support of Plaintiff's Opposition to Defendant's *Ex Parte* Application and Motion for Review ("Gottfried Decl.").

Court." Defendant has provided no reason why its *ex parte* application is different from other applications that the Court regularly hears without hearings. Defendant filed his objections with the Court, and plaintiff has incorporated his response to defendant's objections in these papers. Consequently, defendant's objections are ripe for adjudication.

Once these procedural issues are addressed, then defendant's objections to the substance of the Magistrate Judge's recommendation can be readily resolved. Defendant argues that the Magistrate Judge's interpretation of his own order of November 2014 is "clearly erroneous or contrary to law" (Fed. R. Civ. P. 72(a)) because the Magistrate Judge, contrary to his own understanding, did not actually compel defendant to respond to RFP Nos. 133 and 136. This argument is absurd: the Magistrate Judge knows what he ordered. Moreover, when briefing plaintiff's motion to compel, plaintiff and defendants all acknowledged that plaintiff was moving to compel responses to RFP Nos. 131-136.

- Plaintiff's Motion to Compel: "Defendants should be ordered to fully respond to Plaintiffs' RFPs 131-136 by disclosing, *inter alia*, their revenue, profits, and other compensation for all concerts at which *Big Pimpin* was performed...." (Dkt. No. 429 at p. 3)
- Defendants' Opposition to Motion to Compel: "Plaintiff argues...that 'Defendants should be ordered to fully respond to Plaintiff's RFPs 131-136 by disclosing, *inter alia*, their revenue, profits, and other compensation for all concerts at which Big Pimpin was performed, any deductible expenses, and any concert revenue Defendants believe is not attributable to *Big Pimpin*.'" (Dkt No. 431 at 5:12-16)

In light of what everyone understood to be the point of plaintiff's motion to compel, Judge Walsh's conclusion this his own order addressed RFP Nos. 133 and 136 was not clearly erroneous or contrary to law. It was obviously correct.

The remainder of defendant's objections consist of baseless accusations

against the Magistrate Judge and his clerk. According to defendant, the Magistrate Judge violated the local rules by refusing to allow defendant to state his position; and the Magistrate Judge's clerk deceived defense counsel.[2] But contrary to defense counsel's representations, the Magistrate Judge did not deny defendant an opportunity to "help" the Magistrate Judge interpret his own order. Defense counsel asked for "a minimum of two weeks" to respond to a four-page e-mail submitted by plaintiff. Defense counsel then had 2.5 weeks to respond and chose not to do so. Defense counsel played a game in which they withheld their arguments from the Magistrate Judge so that they can now criticize him for not considering their arguments. Moreover, contrary to defense counsel's claims, there is no evidence that the Magistrate Judge's clerk misled defense counsel by promising a hearing. Plaintiff's counsel never heard any such promise from the clerk; it is improbable that a law clerk would make such a promise to a litigant; and defense counsel's evidence fails to support this claim. Defense counsel's aspersions on Magistrate Judge's clerk are as groundless as they are inappropriate.

      Consequently, the Court should follow its standard *ex parte* procedure and, after evaluating the arguments already submitted by all parties, reject defendant's objections to the Magistrate Judge's order.

## II. BACKGROUND

### A. Plaintiff Moved to Compel Responses to RFP Nos. 131-36.

      In November 2014, plaintiff moved to compel defendant "to fully respond to Plaintiffs' RFPs 131-136 by disclosing, *inter alia*, their revenue, profits, and other compensation for all concerts at which *Big Pimpin* was performed...." (Dkt. No. 429 at p. 1) RFP No. 133 sought any "agreement providing for any form of ...

---

[2] There is no indication that the Magistrate Judge (who has held his position for more than thirteen years and is a former trial attorney with the U.S. Department of Justice and a former civil and criminal Assistant U.S. Attorney in this district) is unfamiliar with the Local Rules or with the notion of due process.

remuneration to any defendant, applicable to any ... live performance in which or at which any song or composition titled ... '*Big Pimpin*' or '*Big Pimpin'/Papercut*' was performed in whole or in part, including...any touring agreement...between Jay Z (or any entity controlled by him) and Live Nation." (*Id*. at Ex. 10) RFP No. 136 sought documents "sufficient to determine all merchandising revenues...and all other compensation received by any defendant for any concert at which any song or composition titled in whole or in part '*Big Pimpin*' or '*Big Pimpin'/Papercut*' was performed in whole or in part." (*Id*.)

### B. Defendants Opposed Plaintiff's Motion to Compel on November 19, 2014.

The defendants filed oppositions to plaintiff's motion.[3] Defendants explained in their papers that plaintiff's motion requested that "Defendants should be ordered to fully respond to Plaintiff's RFPs 131-136 by disclosing, *inter alia*, their revenue, profits, and other compensation for all concerts at which *Big Pimpin* was performed, any deductible expenses, and any concert revenue Defendants believe is not attributable to *Big Pimpin*." (Dkt No. 431 at 5:12-16) Defendant Carter argued that the Magistrate Judge should deny plaintiff's motion because:

- Documents regarding these concert-related revenues were irrelevant. (Dkt. No. 432 at 1:8-9)

- It would be unduly burdensome to produce documents responsive to RFP Nos. 131-136 because it "would require hundreds of person hours of work." (*Id*. at 9:28) Defendant's financial manager stated in a declaration that complying with plaintiff's document requests "would require searching for and compiling records from a variety of sources in connection with dozens of concerts over a decade-long period." (*Id*. Declaration of K. Bakhai ¶ 7)

---

[3] Mr. Carter filed an opposition and joined the other defendants' opposition. (Dkt Nos. 431 & 432 at 10:14)

- The documents were too confidential to disclose in this litigation. (*Id.* at 9:15-10:4)

### C. The Magistrate Judge Granted Plaintiff's Motion to Compel RFP Nos. 131-36.

In November 2014, the Magistrate Judge granted plaintiff's motion to compel responses to RFP No. 131-36. (Dkt. No. 436)

### D. Defendant Objected to the Magistrate Judge's Order.

Defendant appealed to the district-court judge, claiming that the Magistrate Judge had:

- "ignored Rule 26(b)(1)'s relevancy requirements" (Dkt. No. 439 at 10:1)
- failed to appreciate that the discovery was sensitive (*id.* at 1:22-24)
- failed to appreciate the burden of responding to the document requests (*id.* at 18:3)

Plaintiff submitted an opposition, in which he explained that these discovery requests were relevant because, among other reasons, "Plaintiff has no idea how Jay-Z has made money from any of his performances (e.g., lump sum payments, percentage of ticket revenue, something else?), whether Jay-Z is paid a premium for shows at which he performs certain hits such as *Big Pimpin*, whether the agreements between Jay-Z and his promoters require him to perform hits such as *Big Pimpin*, etc. Those questions, and more, are relevant to the existence of a connection between the infringing work and revenue from concerts at which it is performed which was followed by defendant's reply." (Dkt. No. 443 at 7:1-7)

Defendant then submitted a reply, repeating his prior arguments of relevancy, confidentiality and burden. (Dkt. No. 444)

### E. This Court Adopted the Magistrate Judge's Ruling.

In January 2015, the Court denied defendant's motion for review and adopted the Magistrate Judge's ruling. (Dkt. No. 447)

### F. Defendant Produced a Single Document of 11 Pages in Response to the Court's Order.

Despite defendant's repeated representations to the Court that hundreds of hours would be required to respond to plaintiff's document requests, defendant, in the end, produced a single document: a spreadsheet entitled "Jay Z Touring Settlements" that listed "Net Due/(Owed)" to defendant from Live Nation. Subsequently on March 30, 2015, defendant produced a revised version of this spreadsheet that appeared to correct various errors on the prior document. According to defendant, this spreadsheet was generated from information that Live Nation maintains electronically. (Pettit Decl. Ex. J at p. 2) Defendant offered to stipulate to the accuracy of the numbers in the spreadsheet, while acknowledging testimony from third parties that the numbers were inaccurate insofar as they overstated defendant's concert revenues. *Id.* at pp. 2-3 (referring to "statement from Live Nation's witness that the revenue numbers *overstate* tour-related income paid to Mr. Carter").

In April, Plaintiff's counsel deposed a representative from Live Nation regarding the 11-page spreadsheet. According to the representative, the revenue numbers in the spreadsheet were derived from an agreement between defendant and Live Nation (*i.e.*, an agreement which was responsive to RFP No. 133 but that defendant refused to produce). See Dkt No. 501 ("Q. In order to fill in the numbers on percentage shared on Exhibit 4, would you refer to the agreement between Jay-Z and Live Nation? A. Yes.") But the deponent, the deponent's counsel, and defendant's counsel repeatedly stonewalled efforts by plaintiff's counsel to understand the spreadsheet. For example:

Q. Do you see there is a row that states extra --% above $-- million split point?

A. Yes.

Q. What does that mean?

A. It's the same objection from before. That's our business.

Q. Are you refusing to tell me what that means?

A. Yes.

(Dkt No. 501)

\*\*\*

Q...[L]ooking at the first row of the Jay-Z touring settlement it indicates net due owed to Jay-Z of 278,000 and something. When does Live Nation pay that to Jay-Z?

A. Again, that's something that is incorporated in our overall agreement of how we pay Jay-Z, so I'm not comfortable answering that unless instructed.

(Dkt No. 501)

\*\*\*

Q. What's your understanding as to why there was an increase in the percentage?

A. It triggers at a certain point.

MS. CRAWSHAW-SPARKS: Counsel, we're now getting into the terms of the agreement that you don't need to know about.

(Dkt No. 501)

The deponent also testified that the spreadsheet produced by defendant did not include revenues from merchandise sold at defendant's concerts. (Dkt No. 501)

### G. Plaintiff Asked Defendant to Comply with the Magistrate Judge's Order Adopted by the Court.

Plaintiff began an extensive meet-and-confer process with defense counsel regarding RFP Nos. 133 and 136 that included two letters (Pettit Decl. Exs. I & J) and five emails (*id*. Exs. G & H) (the letters and emails totaled thirteen pages) and an extended colloquy among counsel at the offices of plaintiff's counsel during a deposition. (Gottfried Decl. ¶ 2) Over the course of these communications, plaintiff asked that defendant produce documents responsive to RFP No. 133 and 136. Defense counsel responded that "Judge Walsh never ordered[] the production of all documents responsive to Request for Production ('RFP') No. 133" or No. 136. (Pettit Decl. Ex. I at p. 1) Defense counsel likewise refused to produce any

documents that would confirm the numbers in the spreadsheet. *Id.*

### H. Plaintiff Asked the Magistrate Judge to Clarify His Order of November 2014.

In light of defense counsel's claim that "Judge Walsh never ordered[] the production of all documents responsive to Request for Production ('RFP') No. 133" or No. 136 (Pettit Decl. Ex. I), plaintiff's counsel proposed that the parties submit the issue of what Judge Walsh ordered to Judge Walsh. On April 16, counsel for plaintiff and defendant spoke with Judge Walsh's clerk, who indicated that the parties could submit their positions via email. (Gottfried Decl. ¶ 3)

Plaintiff then emailed Judge Walsh's chambers on April 17 and requested that he clarify whether his ruling of November 2014 "required defendant Sean Carter…to produce documents responsive to RFP Nos. 133 and 136. Plaintiff believes that the Court's order addressed these Requests for Production; defendant rejects that interpretation." (Dkt No. 501) Instead of addressing the substance of Judge Walsh's ruling of November 2014, defense counsel emailed Judge Walsh's chambers on April 17 that: (1) the parties' counsel should meet and confer in person under Local Rule 37 in order to narrow the issues, or (2) defense counsel be permitted two weeks to submit a written opposition to plaintiff's email.[4] (Dkt No. 501)

Judge Walsh issued his order on May 5: 2 ½ weeks after the parties had submitted their emails. (Dkt No. 498) At no point during those 2½ weeks did defense counsel submit any additional arguments to the Magistrate Judge. Nor did defense counsel seek to meet again in person with plaintiff's counsel to narrow the issues in dispute.

After defendant had 2½ weeks to submit any argument he wanted, Judge

---

[4] Defendant could have done (but chose not to do) what he did before this Court: request an extended briefing schedule while emphasizing his substantive arguments by filing them at any point.

-8-
PLAINTIFF'S OPPOSITION TO DEFENDANTS' *EX PARTE* APPLICATION

Walsh issued the following order:

> Plaintiff's request for clarification is granted over Defendant's and Live Nation's objections. Plaintiff is now ordered a third time to produce documents that are responsive to Requests for Production Nos. 133 and 136 no later than May 18, 2015. Failure to do so will result in sanctions. The documents will be produced subject to a protective order and will not be disseminated to the public absent further order of the Court.

(Dkt No. 498)

### I. Defense Counsel Proposed to Plaintiff's Counsel a Briefing Schedule that Contradicted the Magistrate Judge's Order.

Defense counsel proposed a briefing schedule for its objection that extended past Judge Walsh's compliance date of May 18. (Gottfried Decl. ¶ 4) Plaintiff objected to any schedule that contradicted the Magistrate Judge's order. (Pettit Decl. Ex. P)

## III. ARGUMENT

### A. The Court Should Not Stay the Magistrate Judge's Recommendation in Order to Provide for an Extended Briefing Schedule.

Under Federal Rule of Civil Procedure 72(a) and Local Rule 72-2, a party may file objections to a magistrate judge's order. There is no requirement for a hearing. Furthermore, the local rules state that the Magistrate Judge's order remains in effect unless the ruling is stayed. L.R. 72-2.2. There is no compelling reason to alter this default rule. Defendant has submitted his objections in a 22-page brief accompanied by a 19-page declaration. (Dkt No. 502) Plaintiff has submitted his opposition. There is no need for further briefing or to wait almost a month for a hearing.

Although defendant is not in a rush to produce the requested documents, that does not mean that the issue is not time-sensitive. The documents that are the subject of this motion may be relevant to expert testimony, and expert discovery closes next month. Moreover, as discussed above, third parties such as Live Nation have refused to answer questions at depositions or provide discovery as a result of

defendant's position with respect to RFP Nos. 133 and 136. Defendant's compliance with Judge Walsh's order will enable plaintiff to resolve other discovery disputes that have been dependent upon the resolution of this dispute. Finally, enough is enough. As the Magistrate Judge observed, this is the third time in the past six months that defendant has been ordered to produce the requested documents. Defense counsel's tactics should not be rewarded with further delays.

### B. The Magistrate Judge Did Not Violate Local Rule 37.

Under Local Rule 37-3, "the Court in its discretion" may provide for expedited consideration of discovery motions. On April 16, all counsel called Judge Walsh's chambers to inquire about the procedure for seeking clarification of his order of November 2014, and the clerk indicated that the parties should submit a summary of the issue via email to Judge Walsh's chambers. (Gottfried Decl. ¶ 3) This is not unusual—the parties have followed this procedure for other discovery disputes. Consistent with the clerk's instructions and past practice, plaintiff's counsel emailed a brief summary of the issue to Judge Walsh's chambers. (Dkt No. 501) Defense counsel, however, decided not to summarize his position. Instead, he complained that the parties needed more time to meet and confer under Local Rule 37 in order to interpret the Magistrate Judge's order of November 2014. *Id.* Defense counsel then asked for "a minimum of two weeks" to respond to plaintiff's email. (*Id.*)

Defense counsel got his "minimum of two weeks." Judge Walsh did not issue his order for 2½ weeks—but defense counsel never submitted any written brief to the Magistrate Judge in the interim. Nothing prevented defense counsel from doing so. Nor did defense counsel ever engage in any additional meet and confers with plaintiff's counsel in order to address whatever unexplored issues defense counsel claimed to exist.

A streamlined procedure for resolving discovery disputes is particularly appropriate in this case, where fact discovery should have ended more than six

months ago and where the Complaint was filed more than seven years ago. Defendant's efforts to use Local Rule 37 as a tool for obstruction of timely discovery is inappropriate.

### C. Contrary to Defendant's Argument, the Magistrate Judge's Clerk Did Not Mislead Counsel.

Defense counsel's criticism of the Magistrate Judge's clerk is inaccurate and unprofessional. According to defense counsel, "[t]he Magistrate Judge's clerk…assured counsel for Mr. Carter that he would have an opportunity to be heard on the issues raised by Plaintiff's email." (*Ex Parte* Appl. at 3:20-22); but then (according to defense counsel) the Magistrate Judge—contrary to his clerk's assurance—issued an order without a hearing. *Id.* It is difficult to imagine any judge's clerk promising a litigant a hearing, and defense counsel's description of his *ex parte* call with the clerk does not support his claim. Mr. Pettit's declaration indicates only that he called the Magistrate Judge's clerk (without opposing counsel present) in order to "emphasize[]…that Mr. Carter wanted an opportunity to submit an opposition and be heard in connection with the dispute." (Pettit *Ex Parte* Decl. ¶ 8) According to Mr. Pettit, the clerk responded that "the parties could expect to hear from the Magistrate Judge sometime in the next week as to how to proceed." (*Id.* ¶ 9) There is no indication that the Magistrate Judge's clerk promised anyone a hearing or misled any counsel in this case. The accusations by counsel for defendant are baseless.

### D. Contrary to Defendant's Argument, the Magistrate Judge Did Not Interpret His Own Order in a Way That Was Clearly Erroneous or Contrary to Law.

In November of 2014, plaintiff moved to compel defendant "to fully respond to Plaintiffs' RFPs 131-136 by disclosing, *inter alia*, their revenue, profits, and other compensation for all concerts at which *Big Pimpin* was performed…."[5] (Dkt. No.

---

[5] Black's Law Dictionary defines "inter alia" to mean "among other things." It does (footnote continued)

429 at p. 1) In their opposition, defendants acknowledged that plaintiff was asking that "Defendants should be ordered to fully respond to Plaintiff's RFPs 131-136 by disclosing, *inter alia*, their revenue, profits, and other compensation for all concerts at which *Big Pimpin* was performed, any deductible expenses, and any concert revenue Defendants believe is not attributable to *Big Pimpin*." (Dkt No. 431 at 5:12-16)  In November 2014, the Magistrate Judge granted plaintiff's motion. (Dkt. No. 436 at p.1)  It was not clearly erroneous or contrary to law for the Magistrate Judge to conclude that his order of November 2014 granted plaintiff's motion to compel RFP Nos. 133 and 136. Moreover, in opposing plaintiff's motion, defendant alleged that it "would require hundreds of person hours of work" to respond to plaintiff's document requests. (Dkt No. 431 at 9:28) While defendant's representation seemed improbable, it would have been even less probable if all that defendant thought was at issue during motion practice was the 11-page spreadsheet that defendant eventually produced in response to these document requests.

It is unreasonable for defendant to now argue that he has complied with the Court's order because he produced a spreadsheet that he has refused to explain and for which he has refused to produce any of the underlying documents. Plaintiff is not required to accept whatever statements defendant makes without the benefit of discovery. *See U.S. Ethernet Innovations, LLC v. Acer, Inc.*, No. C 10-3724 CW, 2013 WL 6671774, at *2 (N.D. Cal. Dec. 18, 2013) ("Because the Court ordered limited jurisdictional discovery, [the third-party plaintiff] is entitled to exercise that right, in the form of its own choosing."); *Pressley v. City of New York*, No. 11-CV-3234, 2013 WL 1561466, at *2 (E.D.N.Y. Apr. 12, 2013) (rejecting party's "'trust me' argument" and ordering discovery); *Petrashishin v. BAC Home Loans Servicing P'ship Recontrust Co.*, No. 3:11-CV-1105-HO, 2012 WL 1278046, at *2 (D. Or. Apr. 13, 2012) ("Even though defendants assert all transfers have been recorded,

---

not indicate that what follows is an exhaustive list.

plaintiff must be permitted discovery to test such an assertion."). Moreover, plaintiff is not required to accept defendant's questionable argument that Jay Z merchandise (including some likely related to *Big Pimpin'*) sold at concerts at which *Big Pimpin'* was performed is unrelated to *Big Pimpin'*.

## IV.   CONCLUSION

The Court should deny defendant's *ex parte* application for: (1) a stay of the Magistrate Judge's order and extended briefing schedule, or (2) an exception to the Court's rules to allow what is essentially a hearing on an *ex parte* application. Instead, plaintiff respectfully requests that the Court review the Magistrate Judge's order of May 5, 2015, and all objections and oppositions thereto, and conclude that the order was not clearly erroneous or contrary to law.

Dated: May 13, 2015

BROWNE GEORGE ROSS LLP
Peter W. Ross
Keith J. Wesley
Jonathan Gottfried

By   /s/ Jonathan Gottfried
    Jonathan Gottfried

Attorneys for Plaintiff Osama Ahmed Fahmy

# TABLE OF DEFENDANT'S ARGUMENTS

526700.1

| Defendant's Argument Against Responding to RFP Nos. 133 & 136 | Defendant's Opposition to Motion to Compel RFP Nos. 131-136 (11/19/14) (Dkt No. 432) | Defendant's Motion for Review of Magistrate Judge's Ruling on Motion to Compel (12/8/14) (Dkt. No. 439) | Defendant's Current Motion for Review of Magistrate Judge's Ruling (5/11/15) (Dkt. No. 502) |
|---|---|---|---|
| *Irrelevant* | Criticizing "Plaintiff's abject failure to offer any evidence of the necessary 'causal nexus' between the alleged infringement and Mr. Carter's profits" (17:9-11) | "Plaintiff is not entitled to any concert profits unless he can 'first establish a 'causal nexus' between the infringement and Mr. Carter's profits (if any) from his concert appearances. Plaintiff has failed entirely to supply any evidence of such a 'causal nexus'…." (1:16-22) | "It is Plaintiff, however, who bears the burden of demonstrating a non-speculative causal nexus between the performance of 'Khosara Khosara' at concerts and the revenues he seeks to recover as damages, and he has never made any proffer in that regard." (20:23-25) |
| *Too confidential* | "[T]he information Plaintiff seeks is highly confidential and made available only to Mr. Carter's financial advisors on a need-to-know basis." (10:1-3) | "Plaintiff is not entitled to Mr. Carter's highly sensitive and confidential concert revenue information…." (1:22-23) | "The agreement between Mr. Carter and Live Nation contains highly confidential and sensitive business information…." (22:9-10) |
| *Violation of Local Rule 37 in November 2014* | | "[M]aking an end-run around Local Rule 37, Plaintiff sent an email to all counsel and the Magistrate Judge's chambers on November 12, 2014." (6:11-12) | "Magistrate Judge Walsh granted Plaintiff's motion to compel…without the benefit of the joint stipulation required under the local rules. The current dispute can be tied directly back to the Magistrate Judge's decision not to adhere to Local Rule 37 back in November." (6:22-24) |

526700.1