UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL     'O'

| | | | |
|---|---|---|---|
| Case No. | 2:07-cv-05715-CAS(PJWx) | Date | May 27, 2015 |
| Title | OSAMA AHMED FAHMY V. JAY-Z, ET AL. | | |

| | | | |
|---|---|---|---|
| Present: The Honorable | CHRISTINA A. SNYDER | | |
| Catherine Jeang | Not Present | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

Attorneys Present for Plaintiffs:     Attorneys Present for Defendants

Not Present     Not Present

**Proceedings:**     (IN CHAMBERS): PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON DEFENDANT'S LICENSE AFFIRMATIVE DEFENSE (Dkt. No. 450, filed February 2, 2015)

## I. INTRODUCTION

On August 31, 2007, plaintiff Osama Ahmed Fahmy ("plaintiff") filed suit against defendants Jay-Z, (aka Shawn Carter) ("Jay-Z"), Timothy Mosley ("Mosley"), Kyambo Joshua, Rob Bourdon, Brad Delson, Mike Shinoda, Dave Farrell, Joseph Hahn, Chester Bennington, Big Bad Mr. Hahn Music, Chesterchaz Publishing, EMI Blackwood Music Inc., EMI Publishing Ltd., Kenji Kobayashi Music, Lil Lulu Publishing, Machine Shop Recordings LLC, Marcy Projects Productions II, MTV Networks Enterprises Inc., Nondisclosure Agreement Music, Paramount Home Entertainment Inc., Paramount Pictures Corporation, Radical Media, Rob Bourdon Music, Roc-A-Fella Records LLC, Timbaland Productions Inc., UMG Recordings Inc., Universal Music and Video Distribution Inc., and Warner Music Inc., alleging various claims of copyright infringement. The gravamen of plaintiff's claims is that defendants' song *Big Pimpin'* infringes plaintiff's rights in the song *Khosara, Khosara*.

On February 2, 2015, plaintiff filed a motion for partial summary judgment as to defendants' affirmative defense that they had a license to use and perform *Khosara, Khosara*. Dkt. No. 450. Plaintiff seeks an order adjudicating this defense in plaintiff's favor or, in the alternative, an order "holding that Defendants had no license to use *Khosara, Khosara* at all after June 10, 2007 or to publicly perform *Khosara, Khosara* at concerts at any time." Id. at 4. Defendants filed a joint opposition on February 27, 2015, and plaintiff filed a reply on March 16, 2015. Dkt. Nos. 464, 481. With leave of Court,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**     'O'

| Case No. | 2:07-cv-05715-CAS(PJWx) | Date | May 27, 2015 |
|---|---|---|---|
| Title | OSAMA AHMED FAHMY V. JAY-Z, ET AL. | | |

defendants filed a surreply on March 26, 2015. Dkt. No. 494.[1] On March 30, 2015, the Court held a hearing. After considering the parties' arguments, the Court finds and concludes as follows.

## II. FACTUAL BACKGROUND

Plaintiff is an heir of Baligh Hamdi ("Hamdi"), an Egyptian composer who co-authored the song *Khosara, Khosara* in or about 1957. Compl. ¶ 8. Plaintiff alleges that in approximately 1999, defendants Jay-Z and Mosley authored and recorded *Big Pimpin'*, wherein Jay-Z sings rap lyrics over a recording of *Khosara, Khosara*. Id. ¶¶ 3, 12. Uses of this song and allegedly related derivative works form the basis of plaintiff's infringement claims.

On May 2, 2011, the Court granted in part a prior motion for partial summary judgment filed by plaintiff, finding as a matter of law (1) that Hamdi authored and owned the copyright in the *Khosara, Khosara* musical composition; (2) that plaintiff is an heir of Hamdi and became a co-owner in the *Khosara, Khosara* copyright by virtue of that fact; and (3) that plaintiff has standing to bring claims that defendants' works infringed the *Khosara, Khosara* copyright. See Dkt. No. 271 at 18. In that same order, the Court denied plaintiff's request for summary judgment on the issue that "defendants do not have a grant of permission to make derivative works from the *Khosara, Khosara* musical composition," which the Court found presented triable issues of fact. Id. at 18. In so concluding, the Court determined that a transferable right to adapt or make derivative works from copyrighted material "exists independently of inalienable moral rights" under Egyptian law. Id. at 15.

The Court then considered plaintiff's argument that, as a matter of law, the right to create derivative works based on *Khosara, Khosara* could not have been transferred by

---

[1] Defendants also filed numerous evidentiary objections. See Dkt. Nos. 466, 467, 490, 491. The Court does not cite to most of the objected-to evidence and therefore does not address those objections. The Court overrules defendants' objections to the extent the objected-to evidence is cited in this order; however, the Court's conclusions that plaintiff's motion and defendants' request for dismissal should both be denied would not be affected by striking any of that evidence.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**  'O'

| Case No. | 2:07-cv-05715-CAS(PJWx) | Date | May 27, 2015 |
|---|---|---|---|
| Title | OSAMA AHMED FAHMY V. JAY-Z, ET AL. | | |

any license that defendants claim to have had. The Court explained that the "relevant documents to determine the chain of title" included (1) a 1968 agreement between Hamdi and an Egyptian record company named "Sout el Phan," through which some rights in *Khosara, Khosara* were originally transferred; (2) an August 1995 agreement between plaintiff and Sout el Phan, "through which Hamdi's heirs confirmed the continuing viability of the rights transferred through the 1968 agreement"; (3) a December 1995 agreement through which Sout el Phan transferred some exclusive rights in *Khosara, Khosara* to a company called "EMI Music Arabia" (hereinafter "EMI Arabia"); and (4) a March 2001 settlement agreement in which EMI Arabia granted Mosley the right to exploit *Big Pimpin'* in perpetuity free and clear of any claim by EMI Arabia.[2] Id. at 16. In that motion, plaintiff argued that these "chain of title" documents addressed only sound recordings and did not grant (and could not have granted) the right to make derivative works. The Court concluded that plaintiff's argument "that these documents do not contain the right to make derivative works because to do so would necessarily violate Egyptian law with respect to an artist's moral rights" was "unsound," and that "a triable question of fact otherwise exists with respect to the scope of the grant." Id. at 18.[3] The Court stated that in determining the scope of the grant, the jury could consider "whether the grant was specific enough under Egyptian law," as well as defendants' argument that the chain of title "includes the right to make the type of use of *Khosara, Khosara* complained of here." Id.

On December 9, 2011, the Court granted defendants' motion for partial summary judgment on statute of limitations issues. The Court found that because plaintiff could not prove a basis for equitably tolling the Copyright Act's three-year statute of

---

[2] The Court hereinafter refers to these agreements, respectively, as (1) the "1968 Agreement," (2) the "August 1995 Agreement," (3) the "December 1995 Agreement," and (4) the "2001 Settlement Agreement." The parties do not dispute that sometime around 2001, control of Sout el Phan's musical catalog passed from Sout el Phan to another Egyptian entity called Alam el Phan, to which plaintiff later granted at least some rights in *Khosara, Khosara*. See Ancliff Decl. Exs. 7–9; Fahmy Depo (Lewis Decl. Ex. 1) at 197:21–198:17; Lewis Decl. Ex. 10.

[3] See also Dkt. No. 309 at 9 (noting that in its May 2, 2011 order, the Court "already determined that whether defendants had a license to produce "Big Pimpin'" is a question for the jury").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES - GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:07-cv-05715-CAS(PJWx) | Date | May 27, 2015 |
| Title | OSAMA AHMED FAHMY V. JAY-Z, ET AL. | | |

limitations, he was barred from recovering damages from any alleged infringement preceding August 31, 2004. Dkt. No. 309 at 4–10. The Court subsequently found portions of plaintiffs' claims barred by the equitable defense of laches, but vacated those findings after the Supreme Court held in Petrella v. Metro-Goldwyn-Mayer, Inc., 134 S. Ct. 1962, 1967 (2014), that "[l]aches cannot be invoked to preclude adjudication of a claim for damages brought within the three-year window" of the Copyright Act's statute of limitations. Dkt. Nos. 380, 386, 418.

### III. LEGAL STANDARD

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of identifying relevant portions of the record that demonstrate the absence of a fact or facts necessary for one or more essential elements of each claim upon which the moving party seeks judgment. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

If the moving party meets its initial burden, the opposing party must then set out specific facts showing a genuine issue for trial in order to defeat the motion. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986); see also Fed. R. Civ. P. 56(c), (e). The nonmoving party must not simply rely on the pleadings and must do more than make "conclusory allegations [in] an affidavit." Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 888 (1990); see also Celotex, 477 U.S. at 324. Summary judgment must be granted for the moving party if the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Id. at 322; see also Abromson v. Am. Pac. Corp., 114 F.3d 898, 902 (9th Cir. 1997).

In light of the facts presented by the nonmoving party, along with any undisputed facts, the Court must decide whether the moving party is entitled to judgment as a matter of law. See T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 631 & n.3 (9th Cir. 1987). When deciding a motion for summary judgment, "the inferences to be drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citation omitted); Valley Nat'l Bank of Ariz. v. A.E. Rouse & Co., 121 F.3d 1332, 1335 (9th Cir. 1997). Summary judgment for the moving party is proper

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES - GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:07-cv-05715-CAS(PJWx) | Date | May 27, 2015 |
| Title | OSAMA AHMED FAHMY V. JAY-Z, ET AL. | | |

when a rational trier of fact would not be able to find for the nonmoving party on the claims at issue.  See Matsushita, 475 U.S. at 587.

## IV.   ANALYSIS

### A.   Plaintiff's Standing

The Court first addresses defendants' argument, raised in their opposition brief, that the Court should "sua sponte" dismiss this case based on plaintiff's alleged lack of standing.  The Court previously found that plaintiff may not seek damages for alleged infringement occurring prior to August 31, 2004.  Dkt. No. 309 at 16.  And under the Copyright Act, only "[t]he legal or beneficial owner of an exclusive right under a copyright is entitled . . . to institute an action for any infringement of that particular right committed while he or she is the owner of it."  17 U.S.C. § 501(b).  Defendants argue that the combination of the statute of limitations ruling and plaintiff's conveyance of certain rights in *Khosara, Khosara* means that plaintiff has no standing to pursue any non-time-barred claims.

Defendants point to a December 2002 agreement between plaintiff and Mohsen Mohammad Jaber ("Jaber"), who owns an Egyptian company called Alam el Phan, which acquired a majority stake in Sout el Phan (the "2002 Agreement").[4]  See Dkt. No. 464-1 (Lewis Decl.) Ex. 10. This agreement, titled "Authorization to Print, Publish, Sell, and Circulate"), reads in relevant part:

> I, [plaintiff] . . . . hereby assign to Mr. Mohsan Mohammad Jaber . . . . and to whoever he selects, the right to print, publish and use the music of the songs stated in this statement [including *Khosara, Khosara*] on all currently known audio and/or visual of videos, performances, records, cassette tapes, and cartridges in addition to all the modern technological and digital means such as the internet, telephones,

---

[4]Plaintiff testified that the reason for the agreement was to "authorize the same rights that had been authorized originally from Baligh Hamdi to Sout El Phan . . . because of the sale of Sout el Phan" to Alam el Phan.  Fahmy Depo. Feb 12, 2009 (Lewis Decl. Ex. 1) at 206:25–207:7.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**          'O'

| Case No. | 2:07-cv-05715-CAS(PJWx) | Date | May 27, 2015 |
|---|---|---|---|
| Title | OSAMA AHMED FAHMY V. JAY-Z, ET AL. | | |

> satellites, or any other means that may be invented in the future including musical re-segmentation and alteration methods while maintaining the original segment of the music. This authorization grants . . . Jaber solely/or to whoever he selects, the right to publish and sell these songs using all the means available in all parts of the world. . . .
>
> I do hereby further state that by signing this authorization and waiver of these pieces of music to . . . Jaber, I would have authorized him solely and/or whoever he selects, fully, and irrevocably the right to use this music in whatever way he deems necessary. [Jaber] or his successors are solely the owners of the financial usage rights stated in the Law. No. 82 FOR THE YEAR 2002, for the pieces of music listed hereinafter in the Arab Republic of Egypt and the whole world, and the use includes all the usage means and methods whether those currently available or those that will be inventedd [sic] in the future and whether it was audio, visual or audiovisual including the new digital and technology means during the whole legal protection period specified by the law. . . .
>
> [Jaber] and his successor become the sole publisher of the melodies of these songs in all the current publishing means and in any way he deems whether it was direct or indirect. [Jaber] also has the right to transfer all these rights or some of them or dispose them to another company or institution using any trademark he selects. . . . .
>
> I [plaintiff] received the amount of 115,000 (only one hundred fifteen thousand Egyptian Pounds) for this waiver and declaration while maintaining our rights in respect of the public performance and mechanical printing.

Lewis Decl. Ex. 10. Defendants argue that because this Court has already determined that Egypt's Intellectual Property Law of 2002 "contains a 'transferable adoption right' as [an] economic, non-moral right . . . regardless of the chain of title prior to the December 2002 Agreement, the December 2002 Agreement conclusively divested Plaintiff of any

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**  'O'

| Case No. | 2:07-cv-05715-CAS(PJWx) | Date | May 27, 2015 |
|---|---|---|---|
| Title | OSAMA AHMED FAHMY V. JAY-Z, ET AL. | | |

claim to the economic rights in [*Khosara, Kosara*] . . . from that time forward." Opp'n at 17 (emphasis in original) (citing Dkt. No. 271 at 15).

    The 2002 Agreement contains some language that could support a conclusion that plaintiff transferred all of his economic rights in *Khosara, Khosara*, but the Court finds the contract to be ambiguous on this point, and not properly adjudicated as a matter of law on the current record. For example, although language making Jaber and his successors "solely the owners of the financial usage rights stated in" the Egyptian intellectual property law may weigh in favor of a finding that plaintiff transferred the entirety of his economic rights, other features of the contract cut against that finding. Most inconsistent with a complete transfer of all rights, the agreement states that plaintiff "maintain[s] [his] rights in respect of the public performance and mechanical printing." This alone creates ambiguity as to whether plaintiff gave up all of his rights in *Khosara, Khosara*. Similarly, "musical re-segmentation and alteration methods while maintaining the original segment of the music" could arguably be read to expressly refer to sampling or derivative works, as defendants urge. But it is not clear that this language does indeed refer to the making of derivative works, and defendants do not submit expert testimony suggesting that its use in an Egyptian contract would carry that meaning. Further, the agreement is titled an "Authorization to Print, Publish, Sell, and Circulate," and expressly spells out a number of individual rights to be conveyed, but does not clearly authorize the modification or adaptation of the included songs (which, as defendants point out, this Court has previously found to be a distinct conveyable economic right under Egyptian law). Especially given that Egyptian law provides that a transfer of economic rights must "contain an explicit and detailed indication of each right to be transferred with the extent and purpose of transfer," Egyptian Law. No. 82 of 2002 (Wesley Decl. Ex. 6), the Court finds that there are genuine issues of fact as to whether plaintiff conveyed all of his rights, and that plaintiff's claims should not be dismissed on the basis of lack of standing at this juncture.[5]

---

[5] Because the Court is not persuaded by the merits of defendants' argument for dismissal for lack of standing, the Court does not address the parties' dispute over whether 17 U.S.C. § 501 is jurisdictional, or plaintiff's arguments that defendants' request for dismissal in opposition to the instant motion is procedurally improper and should be barred by the doctrine of judicial estoppel.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES - GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:07-cv-05715-CAS(PJWx) | Date | May 27, 2015 |
| Title | OSAMA AHMED FAHMY V. JAY-Z, ET AL. | | |

### B. Defendants' License Defense

A license is a defense to copyright infringement that must be affirmatively pleaded. Oddo v. Ries, 743 F.2d 630, 634 n.6 (9th Cir. 1984). Accordingly, an alleged infringer has the burden of showing that he holds a license. Bourne v. Walt Disney Co., 68 F.3d 621, 631 (2d Cir. 1995). However, where "the scope of the license is at issue, the copyright owner bears the burden of proving that the defendant's copying was unauthorized." Netbula, LLC v. BlindView Dev. Corp., 516 F. Supp. 2d 1137, 1151 (N.D. Cal. 2007 ) (citing Bourne, 68 F.3d at 631); see S.O.S., Inc. v. Payday, Inc., 886 F.2d 1081, 1085 (9th Cir. 1989) (explaining that a copyright owner must prove copying beyond the scope of a license).

Plaintiff concedes that the Court has already ruled that a material issue of triable fact exists with respect to plaintiff's argument "that defendants do not have a grant of permission to make derivative works from the *Khosara, Khosara* musical composition." Dkt. No. 271 at 18. Nevertheless, plaintiff now argues that he is entitled to judgment on defendants' license defense "for other reasons[] not previously raised to or addressed by this Court," namely: (1) that the 2001 Settlement "is void as a matter of law" because the *Khosara, Khosara* copyright owners did not consent to it; (2) that even if the 2001 Agreement could have conveyed a valid license to defendants, that license expired; and (3) that any license conveyed to defendants could not have extended to the right to publicly perform *Khosara, Khosara* at concerts, because EMI Arabia did not possess that right to convey. Mot. at 3. The Court addresses each argument in turn.

### 1. Plaintiff Is Not Entitled to Summary Judgment on the Ground That the 2001 Settlement Agreement Could Not Have Conveyed Valid Rights in *Khosara, Khosara*.

In Gardner v. Nike, Inc., 279 F.3d 774, 781 (9th Cir. 2002), the Ninth Circuit held that an exclusive license may only be assigned or sublicensed "with the consent of the licensor." Plaintiff argues that neither he nor any other owner of the *Khosara, Khosara*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL** 'O'

| Case No. | 2:07-cv-05715-CAS(PJWx) | Date | May 27, 2015 |
|---|---|---|---|
| Title | OSAMA AHMED FAHMY V. JAY-Z, ET AL. | | |

copyright consented to the 2001 Settlement Agreement that forms part of defendants' asserted chain of title, and that the agreement is therefore void as a matter of law.[6]

As an initial matter, to the extent that plaintiff argues that, under Gardner, the original copyright owner must consent to every step in a chain of exploitation, even if the first licensing agreement expressly gives the licensee the right to sublicense the work in question, the Court disagrees. First, the facts in Gardner were limited to a single original exclusive license that "was silent as to [the licensee's] right to assign its rights under the exclusive license," and a subsequent assignment of all of the licensee's rights. 279 F.3d at 776. This Court has characterized Gardner as holding "that an exclusive licensee whose license was silent as to a right of assignment could not assign that license without the copyright holder's express consent." Crispin v. Christian Audigier, Inc., 839 F. Supp. 2d 1086, 1095 (C.D. Cal. 2011) (emphasis added and omitted). As discussed below, the agreements through which plaintiff conveyed rights in *Khosara, Khosara* are not silent as to sublicensing rights. Moreover, the Gardner court focused on the need to obtain the "consent of the licensor." Gardner, 279 F.3d at 781 (emphasis added). Accordingly, the Court concludes that Gardner requires an exclusive licensee who wishes to sublicense its rights to obtain consent from the party that licensed those rights—and not, additionally, from the original creator of the copyrighted works. See Ward v. Nat'l Geographic Soc'y, 208 F. Supp. 2d 429, 443 (S.D.N.Y. 2002) (citing Gardner, 279 F.3d at 778) (stating that a "licensee [must] get explicit consent from his or her licensor" (emphasis added)).

Arguing that no rights holder with the authority to do so consented to the 2001 Settlement Agreement, plaintiff points to his own declaration testimony. On June 30, 2010, plaintiff declared: "Permission has never been given by the heirs of Baligh Hamdi

---

[6]In places, plaintiff appears to reassert his argument that defendants could not have obtained a valid license to create derivative works "because to do so would necessarily violate Egyptian law with respect to an artist's moral rights." The Court declines to revisit its ruling that to the extent plaintiff "requests that the Court determine whether defendants' use of *Khosara, Khosara* violated plaintiff's moral rights in the work by making changes that might be considered 'mutilation or distortion' of the original work, the Court agrees with defendants that the claim does not arise under U.S. copyright law, except to the extent that it is a reformulation of the question of whether defendants acted outside of the scope of the relevant licenses." Dkt. No. 271 at 15–16 & n.8.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**                 'O'

| Case No. | 2:07-cv-05715-CAS(PJWx) | Date | May 27, 2015 |
|---|---|---|---|
| Title | OSAMA AHMED FAHMY V. JAY-Z, ET AL. | | |

to alter . . . *Khosara Khosara* by using it in the *Big Pimpin'* song or in any of the other music, albums, films, videos or other work identified by my attorney in my Complaint [in this case]." Wesley Decl. Ex. 8 ¶ 9. On February 2, 2015, plaintiff declared that no opportunity was ever given for him to consent to the 2001 Settlement Agreement, that he never consented to that agreement, and that it "has never been [his] intent nor belief that the 2001 Settlement Agreement constitutes a license of [his] interest in the *Khosara, Khosara* copyright. Fahmy Decl. ¶¶ 4–9.[7]

     Defendants respond that plaintiff, in the August 1995 and 2002 Agreements, authorized licensees of rights in *Khosara, Khosara* to select others to exercise those rights. In the August 1995 Agreement, plaintiff, in his "capacity as an agent for the heirs of the late Mr. Baleegh Hamdi . . . authorize[d] Sout el Phan . . . to print and publish [songs including *Khosara, Khosara*] on all known mechanical printing matter and those to be introduced in the future, including records, cassette tapes, and cartridges." Lewis Decl. Ex. 6. The August 1995 Agreement further stated: "This authorization gives Sout el Phan company alone, <u>or to those it selects</u>, the right to publish and sell these songs using all means and in all parts of the world . . . ." <u>Id.</u> (emphasis added). Plaintiff also "pledge[d] not to dispose once again of this music, or republish, resell, or present them." <u>Id.</u> As noted above, the 2002 Agreement contains similar language, granting rights in songs including *Khosara, Khosara* to Jaber "and/or whoever he selects, fully, and irrevocably the right to use this music in whatever way he deems necessary," and making Jaber "or his successors [] solely the owners of the financial usage rights stated in the Law No. 82 FOR THE YEAR 2002 for the pieces of music hereinafter." Lewis Decl. Ex. 10. The 2002 Agreement also stated that Jaber "has the right to transfer all these rights or some of them or dispose them to another company or institution using any trademark he selects." <u>Id.</u>

     In reply, plaintiff concedes that defendants' evidence could support a finding that plaintiff granted to Sout el Phan and Jaber rights to sublicense certain uses of *Khosara Khosara*, but denies that the evidence creates a triable issue as to whether Sout el Phan or Jaber (1) had the right to authorize EMI Arabia to sublicense rights in that song, or (2) in fact granted to EMI Arabia "the right to sublicense without obtaining the consent of it or

---

    [7]Plaintiff also makes similar representations about the other copyright co-owners' lack of consent, based "[o]n information and belief." Fahmy Decl. ¶¶ 5, 6, 8, 10.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL     'O'

| Case No. | 2:07-cv-05715-CAS(PJWx) | Date | May 27, 2015 |
|---|---|---|---|
| Title | OSAMA AHMED FAHMY V. JAY-Z, ET AL. | | |

the copyright owners."⁸ As to the first point, because the two agreements granted at least some exclusive rights in *Khosara, Khosara* to Sout el Phan and Jaber and whomever they selected, and do not seem to limit that selection, there is a triable issue of fact as to whether those parties could validly grant licenses that themselves allowed for further sublicensing. That is, it is not clear that "those it selects" and "whoever he selects" were limited to one level of choice by Sout el Phan and Jaber.

      Independently, there is a triable issue of material fact as to whether Sout el Phan granted an implied license for Mosley to nonexclusively use *Khosara, Khosara*. Because the Copyright Act's requirement of a written instrument "applies solely to a 'transfer of copyright ownership,' which by definition does not include nonexclusive licenses . . . . nonexclusive licenses may . . . be granted orally, or may even be implied from conduct. When the totality of the parties' conduct indicates an intent to grant such permission, the result is a nonexclusive license." 3 Nimmer on Copyright § 10.03[A][7] (Matthew Bender, rev. ed. 2014) (footnotes omitted); see 17 U.S.C. § 101 (defining "transfer of copyright ownership" to exclude "a nonexclusive license"). This Court has explicitly stated that a "a nonexclusive license can be transferred . . . by implication." Crispin, 839 F. Supp. at 1092 (emphasis in original) (citing Foad Consulting Grp., Inc. v. Azzalino, 270 F.3d 821, 826–28 (9th Cir. 2001))). Explaining that courts "universally have recognized that a nonexclusive license may be implied from conduct," the Seventh Circuit has held that "consent given in the form of mere permission or lack of objection is also equivalent to a nonexclusive license and is not required to be in writing," and that a nonexclusive license "creates an affirmative defense to copyright infringement." I.A.E., Inc. v. Shaver, 74 F.3d 768, 775 (7th Cir. 1996) (citing Effects Assocs. v. Cohen, 908 F.2d 555, 559 (9th Cir. 1990)).

---

⁸Plaintiff also argues that because the 2002 Agreement postdated the 2001 Settlement Agreement, it is irrelevant to the validity of the 2001 Settlement. However, plaintiff testified that he understood the 2002 Agreement "to authorize the same rights that had been authorized originally from Baligh Hamdi to Sout El Phan and then renewed after Baligh Hamdi's death." Fahmy Depo. Feb. 13, 2009 (Lewis Decl. Ex. 1) at 205:9–207:4. Therefore, to the extent the 1995 Agreement is ambiguous, the 2002 Agreement may provide some interpretive aid.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**     'O'

| Case No. | 2:07-cv-05715-CAS(PJWx) | Date | May 27, 2015 |
|---|---|---|---|
| Title | OSAMA AHMED FAHMY V. JAY-Z, ET AL. | | |

      Defendants submit a declaration from Christopher Ancliff, who served as general counsel for EMI Arabia between 1998 and 2002, during which time EMI Arabia asserted that *Big Pimpin'* infringed EMI Arabia's rights in *Khosara, Khosara* that it obtained through the December 1995 Agreement. Ancliff Decl. ¶¶ 1, 6. Ancliff declares that "Sout el Phan and Alam el Phan were aware of, and encouraged, the negotiation of a permanent settlement in 2001 between EMI Music Arabia and Defendant Timothy Mosley concerning the alleged 'sample' of the *Khosara Khosara* composition." Id. ¶ 14. Defendants have produced evidence that in September 2000, the president of Sout el Phan "confirm[ed] that in line with the [December 1995 Agreement between Sout el Phan and EMI Arabia], EMI Music Arabia has the sole and exclusive right to exploit, to protect, to publish and or sub-publish songs contained or records from the catalogue." Id. Ex. 5; Dhamodiwala Ex. 3. Defendants also submit letters that tend to indicate that Alam el Phan supported EMI Arabia's efforts to enforce and settle rights in *Khosara, Khosara*, and (at least by May 21, 2001), was authorized to defend the Sout el Phan catalogue against illegal use and handle negotiations regarding *Khosara Khosara*. Id. Exs. 7–9. Finally, defendants produce declaration testimony from former EMI Arabia employees to the effect that neither Alam el Phan nor any associated party has ever challenged EMI Arabia's ability to enter into the 2001 Settlement Agreement, or otherwise revoked or objected to the validity of rights or sublicenses extended to defendants by EMI Arabia in connection with *Khosara, Khosara*. Dhamodiwala Decl. ¶ 9; Ancliff Decl. ¶ 14. The Court finds that this evidence raises a triable issue of material fact as to whether Sout el Phan authorized EMI Arabia to sublicense the rights at issue, or itself impliedly authorized a nonexclusive license for defendants to use *Khosara, Khosara* in *Big Pimpin'*.[9]

---

      [9]The Court acknowledges that much of the evidence of Sout El Phan's acquiescence in the 2001 Settlement Agreement postdates the effective date of that agreement, but still finds the evidence relevant to a "totality of the circumstances" inquiry of whether a jury could conclude that Sout El Phan and Alam El Phan consented to defendants' use of *Khosara, Khosara* as contemplated in that settlement.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES - GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:07-cv-05715-CAS(PJWx) | Date | May 27, 2015 |
| Title | OSAMA AHMED FAHMY V. JAY-Z, ET AL. | | |

### 2. Plaintiff Is Not Entitled to Summary Judgment on the Ground that Any License Defendants Possessed Would Have Expired.

Next, plaintiff argues that any license defendants could have been granted would have expired on June 10, 2007. Plaintiff reasons that the December 1995 Agreement between Sout el Phan and EMI Arabia was entered into on December 11, 1995, and originally had a term of ten years and six months. See Ancliff Decl. Ex. 1 at 7. Plaintiff adds that the term of the December 1995 Agreement was extended by an additional year through an April 23, 1996 agreement. Dkt. No. 461 (Wesley Decl. Ex. 5). Plaintiff therefore concludes that the December 1995 Agreement expired on June 10, 2007, and that any rights in *Khosara, Khosara* licensed to defendants after that date are invalid because EMI Arabia did not have those rights to convey. See Delacroix v. Lublin Graphics, Inc., 993 F. Supp. 74, 82 (D. Conn. 1997) (stating in reference to copyright that a party "could only assign . . . those contract rights which it still possessed").

In opposition, defendants argue that they have had rights to *Khosara, Khosara* throughout the entire time period relevant to this suit because EMI Arabia's rights in the December 1995 Agreement remain valid to this day. Defendants first point to a renewal provision in the December 1995 Agreement:

> EMI shall have the right to renew this Agreement on identical terms and financial conditions, otherwise the parties undertake to enter into good faith negotiations to renew this Agreement at the expiry of the Term and shall commence discussions at 1st January 2005. To the extent that Agreement cannot be reached, LICENSOR [Sout El Phan] may enter into negotiations with other parties but EMI shall have the right to match any bona fide offer received from such third parties.

Ancliff Decl. Ex. 1. Plaintiff replies, however, that [t]here is no evidence that EMI Arabia exercised its right to renew the December 1995 [A]greement with Sout el Phan." Reply at 8. The Court agrees that the fact that the agreement could have been renewed—without any evidence that it was in fact renewed—is not sufficient to create a triable issue of material fact as to its continued validity.

However, defendants also argue that there is a triable issue of fact as to whether defendants had an implied license or contract implied in fact to continue to use *Khosara,*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**     'O'

| Case No. | 2:07-cv-05715-CAS(PJWx) | Date | May 27, 2015 |
|---|---|---|---|
| Title | OSAMA AHMED FAHMY V. JAY-Z, ET AL. | | |

*Khosara* in *Big Pimpin'*. Defendants cite <u>Autohaus Brugger, Inc. v. Saab Motors, Inc.</u>, 567 F.2d 901, 915 (9th Cir. 1978), in which the Ninth Circuit repeated the following statement of law:

> A contract implied in fact derives from the 'presumed' intention of the parties as indicated by their conduct. When an agreement expires by its terms, if, without more, the parties continue to perform as theretofore, an implication arises that they have mutually assented to a new contract containing the same provisions as the old. . . . Ordinarily, the existence of such a new contract is determined by the 'objective' test, i. e., whether a reasonable man would think the parties intended to make such a new binding agreement whether they acted as if they so intended.

<u>Autohaus Brugger</u>, 567 F.2d at 915 (quoting <u>Martin v. Campanaro</u>, 156 F.2d 127 (2nd Cir. 1946)). Defendants argue that the evidence discussed above that Sout el Phan and Alam el Phan were aware of, encouraged, and did not object to the 2001 Settlement Agreement purporting to give defendants a perpetual right to use *Khosara, Khosara* in *Big Pimpin'*, and did not object to defendants' subsequent use, could also support a finding of EMI Arabia's continued rights in *Khosara, Khosara*. Viewing the evidence in the light most favorable to defendants and drawing reasonable inferences in their favor, the Court agrees that where defendants continued to exploit the song in question, and neither Sout El Phan nor Alam El Phan protested after the expiration of the December 1995 Agreement that its rights were being violated, there is a genuine issue of material fact as to whether a continued contract implied in fact was created.

      Defendants also argue that a series of subsequent documents extended EMI Arabia's rights in *Khosara, Khosara*. Defendants first point to an August 1, 2008 "License Agreement" between EMI Arabia and Arab Audio FZ LLC ("Arab Audio"), which is a licensing company associated with Alam El Phan (which, as noted previously, succeeded to Sout el Phan's rights in *Khosara, Khosara*). Dhamodiwala Decl. ¶ 6 & Ex. 4. Through this agreement, Arab Audio "grant[ed] EMI the exclusive administration right . . . for the synchronization rights relating to audio or audio-visual broadcast of Licensor's Catalogue and Musical Reproductions (including sampling, cover versions, remixes, etc.) . . . . in and all music or literary compositions, existing as on date and any other compositions added during the term of the agreement . . . ." Dhamodiwala Decl.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES - GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:07-cv-05715-CAS(PJWx) | Date | May 27, 2015 |
| Title | OSAMA AHMED FAHMY V. JAY-Z, ET AL. | | |

Ex. 4 ¶ 2. "Catalogue" is defined as "the Alam El Phan and Sout El Phan Audio Catalogue." Id. ¶ 1. This agreement had a term of one year. Id. ¶ 1. Defendants then point to addenda renewing this August 1, 2008 Agreement through at least September 30, 2015. Dhamodiwala Decl. Exs. 5, 6.

Plaintiff replies that there is "no admissible evidence that Arab Audio ever owned any rights in *Khosara, Khosara*," and points out that the Arab Audio agreements do not themselves mention *Khosara, Khosara*. Reply at 8 & n.4. But it is uncontested that, prior to August 1, 2008, plaintiff granted to both Sout El Phan and Alam El Phan rights in songs including *Khosara, Khosara*. Plaintiff does not contest that Arab Audio is associated with Alam El Phan. And the Arab Audio agreements specifically refer to the "Alam El Pham and Sout El Phan Audio Catalogue." Defendants also point to records produced by Broadcast Music, Inc. ("BMI") in 2009, which list Sout El Phan and EMI affiliates as the publishers of "Khasara Khasar" in the United States. Lewis Decl. Ex. 11. From this evidence, a jury could conclude that the agreements could have validly conveyed or renewed rights in *Khosara Khosara*.

For these reasons, the Court concludes that triable issues of material fact remain as to whether any license defendants may have had in the rights at issue expired at any point relevant to this lawsuit.[10]

### 3. Plaintiff Is Not Entitled to Summary Judgment on the Ground that Defendants Had No License to Publicly Perform *Khosara, Khosara.*

Finally, plaintiffs argue that even if the 2001 Settlement Agreement could have conveyed a valid license, it could not extend to public performances of *Khosara, Khosara* at concerts because EMI Arabia did not possess that right to convey. "Copyright

---

[10]Defendants also argue that even if EMI Arabia's rights did expire, those rights would revert to Alam el Phan—not plaintiff—because of the 2002 Agreement. As discussed in Section IV.A above, the Court finds that there are triable issues of fact as to the scope of rights plaintiff maintained in *Khosara, Khosara* after that agreement. To the extent that defendants through this argument renew their request that the Court dismiss plaintiff's claims on the basis that plaintiff lacks standing, that request is denied.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**          'O'

| Case No. | 2:07-cv-05715-CAS(PJWx) | Date | May 27, 2015 |
|---|---|---|---|
| Title | OSAMA AHMED FAHMY V. JAY-Z, ET AL. | | |

ownership is comprised of a bundle of rights." Effects Assocs, 908 F.2d at 559. For musical works, the Copyright Act specifically states that a copyright owner has the exclusive right to perform the copyrighted work publicly, or to authorize the same. 17 U.S.C. § 106(4).[11] "Any of the exclusive rights comprised in a copyright, including any subdivision of any of the rights specified by section 106, may be transferred . . . and owned separately." Id. § 201(d)(2).

Plaintiff argues that the chain of agreements purportedly granting EMI Arabia rights in *Khosara, Khosara* did not specifically convey the right to publicly perform *Khosara, Khosara*, and points to his declaration testimony that the permission he gave to Sout El Phan solely concerned printing, production, and release of a certain recording of the song. Wesley Ex. 8 ¶ 7. Defendants respond that plaintiff himself does not possess any public performance rights he can enforce, and that there is evidence that defendants own performance rights.

   a. There Are Factual Disputes As to Whether Plaintiff Has Public Performance Rights in *Khosara, Khosara*.

Defendants first argue that in a July 2007 letter, plaintiff disavowed any ownership of performance rights in *Khosara, Khosara*, and therefore may not enforce such rights. This letter, which bears the signature "Osama" under plaintiff's name, states that "[w]e were keen to avoid indicating any reference to our performing rights and reproduction rights as we do not own it (totally owned by SACEM/SACERAU)."[12] Lewis Decl. Ex. 4.

---

[11] Article 147 of the 2002 Egyptian Intellectual Property Law also specifically protects a public performance right, and provides that each economic right must be specifically conveyed. Wesley Decl. Ex. 6.

[12] SACERAU is an Egyptian performing and mechanical rights society; SACEM is a similar French organization that collects music royalties and distributes them to authors, composers, and publishers. See Diringer Decl. ¶ 1. Mohamed-Hossam Mhmoud Loutfi Ibrahim, plaintiff's legal expert, testified that members of SACERAU are also members of SACEM. Loutfi Depo. (Lewis Decl. Ex. 3) at 66:1-16.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES - GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:07-cv-05715-CAS(PJWx) | Date | May 27, 2015 |
| Title | OSAMA AHMED FAHMY V. JAY-Z, ET AL. | | |

In reply, plaintiff contends that the letter was not written by plaintiff, but rather by "an Egyptian lawyer, who clearly does not speak English as a first language," and that "to the extent the lawyer intended to convey a belief that Plaintiff did not own any performance rights in *Khosara, Khosara*, that would be inaccurate" for two reasons. Reply at 23–24.[13] First, plaintiff argues that record evidence clearly demonstrates that the Hamdi heirs continue to own rights in the song. Plaintiff points to a declaration by the Director of SACEM stating that "SACEM records continue to list Mr. Hamdi as owning a share in *Khosara, Khosara*," and that Hamdi's heirs have since 2005 and "will continue to receive royalties from any exploitation of that work." Diringer Decl. ¶¶ 3–4. Plaintiff also highlights the BMI records submitted by defendants, which show Hamdi as a rights holder in *Khosara Khosara*. Lewis Decl. Ex. 11. Second, plaintiff argues that even if SACEM were the legal owner of *Khosara, Khosara*, plaintiff would still be a beneficial owner with standing to sue because he is eligible for royalties from SACEM.[14]

Second, defendants reiterate their position that plaintiff conveyed any performance rights he once owned through agreements with Sout El Phan and Alam el Phan, and therefore cannot enforce those rights. Defendants highlight a passage in the August 1995 Agreement that gives Sout El Phan or those it "selected" the right to use *Khosara, Khosara* "in whichever way it deems necessary." (In fuller context, the passage authorizes Sout El Phan "to use this music whichever way it deems necessary to print them on commercial records or cassettes and cartridge tapes, or for any other use under

---

[13] Plaintiff also argues that the letter is inadmissible hearsay. But plaintiff produced the letter in discovery and does not dispute that it carries his name or signature, and a letter written on behalf of a person by his attorney is not hearsay. See Dailey v. Societe Generale, 915 F. Supp. 1315, 1324 (S.D.N.Y. 1996) ("As a statement made on behalf of Societe Generale by its general counsel, the [] letter was plainly not hearsay pursuant to Fed. R. Evid. 801(d)(2)(C)–(D), which provides that party admissions are not hearsay."), vacated in part on other grounds, 108 F.3d 451 (2d Cir. 1996)).

[14] Plaintiff relies on Love v. The Mail on Sunday, No. CV 05-7798 ABC (PJWx), 2006 WL 4046180 (C.D. Cal. Aug. 15, 2006), in which the court stated that "beneficial owner" under 17 U.S.C. § 501(b) "includes an author who had parted with legal title in exchange for percentage royalties based on sales or license fees." Id. at *10 (quoting H.R. Rep. No. 1476 9th Cong., 2d Sess. 159).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**     'O'

| Case No. | 2:07-cv-05715-CAS(PJWx) | Date | May 27, 2015 |
|---|---|---|---|
| Title | OSAMA AHMED FAHMY V. JAY-Z, ET AL. | | |

the name and trademark of the company." Wesley Decl. Ex. 2.) Defendants then point out that the 2002 Agreement includes the word "performances." See Wesley Decl. Ex. 4 ("I hereby assign to [Jaber] . . . and to whoever he selects, the right to print, publish and use the music of the songs stated in this statement on all currently known audio and/or visual of videos, performances, records, cassette tapes, and cartridges in addition to all the modern technological and digital means . . . ."). Lewis Decl. Ex. 10. Defendants also argue that public performance rights were conveyed by the statement that "Jaber or his successors are solely the owners of the financial usage rights stated in the" Egyptian Intellectual Property Law, which refers to public performance rights. Id.; Wesley Decl. Ex. 6.

As plaintiff points out, however, the August 1995 Agreement and 2002 Agreement both contain language to the effect that plaintiff and the other Hamdi heirs "retain our right to the public performance." Wesley Dec. Ex. 2; Lewis Decl. Ex. 10. For this and the other reasons stated in Section A, *supra*, the Court concludes that there are triable issues of fact as to whether plaintiff retained enforceable public performance rights in *Khosara, Khosara* despite the August 1995 and 2002 Agreements.

> b.  There are Factual Disputes as to Whether Defendants Have Public Performance Rights in *Khosara, Khosara*.

Defendants argue that they gained public performance rights in *Khosara, Khosara* through the August 1995 and 2002 Agreements discussed above.[15] Defendants also contend that *Khosara, Khosara* is part of the BMI repertoire, and that any public performance of *Khosara, Khosara* would therefore be covered by the blanket license obtained by the relevant venue.[16] Defendants point to BMI business records for a song

---

[15] The December 1995 Agreement between Sout el Phan and EMI Arabia stated that it granted EMI Arabia, with respect to Sout el Phan's catalogue, the "non-exclusive right to perform publicly, or to permit the public performance of such Records by means of radio broadcast or other audio means and to advertise Records on radio and television." Wesley Decl. Ex. 3 ¶ 2(A)(v).

[16] On BMI blanket licenses generally, see Broadcast Music, Inc. v. Columbia Broad. Sys., Inc., 441 U.S. 1, 5 (1979) ("BMI . . . . operate[s] primarily through blanket licenses,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL     'O'

| Case No. | 2:07-cv-05715-CAS(PJWx) | Date | May 27, 2015 |
|---|---|---|---|
| Title | OSAMA AHMED FAHMY V. JAY-Z, ET AL. | | |

listed as "Khasara Khasar" written by Baligh Hamdi, with Sout el Phan and EMI entities listed as the publishers in the United States. Lewis Decl. Ex. 11. Defendants reason that EMI affiliates and Sout El Phan registered with BMI rights in *Khosara, Khosara* "[c]onsistent with the grant of performance rights" they had received. Opp'n at 16. Plaintiff argues, however, that there is no evidence that BMI actually "granted Defendants a license to publicly perform *Khosara, Khosara*," and that defendants have therefore failed to raise a triable issue of fact on that point. Reply at 10.

      The Court concludes that, just as there are triable issues of fact as to whether plaintiff conveyed any performance rights he owned in *Khosara, Khosara*, there are also genuine disputes of material fact as to whether defendants received a license to publicly perform the song as part of *Big Pimpin'* through their asserted chain of title or as a result of BMI blanket licenses.

## V.     CONCLUSION

      In accordance with the foregoing, the Court **DENIES** plaintiffs' motion for partial summary judgment in its entirety. The Court also rejects defendants' request to dismiss the case based on plaintiff's alleged lack of standing.

      IT IS SO ORDERED.

|  | 00 | : | 00 |
|---|---|---|---|
| | Initials of Preparer | | CMJ |

---

which give the licensees the right to perform any and all of the compositions owned by the members or affiliates as often as the licensees desire for a stated term."); <u>Broadcast Music, Inc. v. McDade & Sons, Inc.</u>, 928 F. Supp. 2d 1120, 1124 (D. Ariz. 2013) (noting that blanket licenses giving users "the right to publicly perform any of the works in the BMI repertoire" are commonly given to "owners and operators of concert halls, restaurants, nightclubs, and hotels").