CHRISTINE LEPERA (Pro Hac Vice)
   ctl@msk.com
DAVID A. STEINBERG (SBN 130593)
   das@msk.com
MITCHELL SILBERBERG & KNUPP LLP
11377 West Olympic Boulevard
Los Angeles, CA  90064-1683
Telephone: (310) 312-2000
Facsimile: (310) 312-3100

ANDREW H. BART (Pro Hac Vice)
   abart@jenner.com
DANIEL A. ROZANSKY (SBN 161647)
   drozansky@jenner.com
JENNER & BLOCK LLP
633 West 5th Street, Suite 3600
Los Angeles, California 90071
Telephone: (213) 239-5100
Facsimile: (213) 239-5199

Counsel for Defendants – Continued after signatures

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Osama Ahmed Fahmy, | CASE NO. CV 07-05715 CAS (PJWx) |
| Plaintiff, | The Honorable Christina A. Snyder |
| v. | **DEFENDANTS' JOINT MEMORANDUM OF CONTENTIONS OF FACT AND LAW** |
| Jay-Z (aka Shawn Carter), Timothy Mosely, Kyambo Joshua, Rob Bourdon, Brad Delson, Mike Shinoda, Dave Ferrell, Joseph Hahn, Chester Bennington, Big Bad Mr. Hahn Music, Chesterchaz Publishing, EMI Blackwood Music, Inc., EMI Music Publishing Ltd., Kenji Kobayashi Music, Lil Lulu Publishing, Machine Shop Recordings, LLC, Marcy Projects Productions II, Inc., MTV Network Enterprises Inc., Nondisclosure Agreement Music, Paramount Home Entertainment, Inc., Paramount Pictures Corporation, Radical Media, Rob Bourdon Music, Roc-A-Fella Records, LLC, Timbaland Productions, Inc., UMG Recordings, Inc., Universal Music and Video Distribution, Inc., and Warner Music, Inc., | **Final Pretrial Conference**<br>Date:              September 14, 2015<br>Time:             11:00 a.m.<br>Ctrm:            5<br><br>Action<br>Commenced:  August 31, 2007<br>Trial:              October 13, 2015 |
| Defendants. | |

Mitchell
Silberberg &
Knupp LLP

7022438.2

1

# **TABLE OF CONTENTS**

**Page**

I.    INTRODUCTORY STATEMENT ...................................................................1

II.   FACTUAL BACKGROUND .........................................................................3

    A.    *Khosara* ............................................................................................3

    B.    Chain of Title ....................................................................................3

    C.    Plaintiff's 2002 Transfer of all of his Economic Rights to *Khosara*....6

    D.    The Allegedly Infringing Works........................................................8

III.  SUMMARY OF PLAINTIFF'S CLAIMS, AND THE ELEMENTS
     THEREOF .................................................................................................9

IV.   KEY EVIDENCE IN OPPOSITION TO PLAINTIFFS' CLAIMS............10

    A.    Plaintiff Lacks Standing To Assert Any Copyright Infringement
       Claims Regarding *Khosara* ..............................................................10

    B.    Defendants' Obtained A Valid Perpetual License for Any Use of
       *Khosara* in Connection with *Big Pimpin'*..........................................12

    C.    Plaintiff Cannot Establish What The Musical Composition
       *Khosara* is Comprised Of, Or That Hamdy Authored All Of the
       Musical Compositional Elements At Issue In *Big Pimpin'* ...............12

    D.    Any Portion of Revenues From Exploitation Of *Big Pimpin'*
       Attributable To *Khosara* Is Minimal At Best .....................................13

    E.    Plaintiff Cannot Establish Any Concert Revenue Or Merchandise
       Revenue Is Attributable To The Alleged Infringement......................13

V.    SUMMARY OF DEFENSES, THE ELEMENTS THEREOF, AND
     DEFENDANTS' SUPPORT FOR EACH DEFENSE .................................15

    A.    First Defense:  Failure to State a Claim for Relief ............................15

    B.    Second Defense:  Statute of Limitations...........................................15

    C.    Third Defense:  Standing .................................................................15

**DEFENDANTS' JOINT MEMORANDUM OF CONTENTIONS OF FACT AND LAW**

# TABLE OF CONTENTS
## (continued)

**Page**

D.  Fourth Defense:  Failure to Join Necessary or Indispensable
Parties ............................................................................................. 16

E.  Fifth Defense:  Independent Creation .................................................. 16

F.  Sixth Defense:  Adequate Remedy at Law .......................................... 17

G.  Seventh Defense:  Attorneys' Fees Not Recoverable .......................... 17

H.  Eighth Defense:  Laches ..................................................................... 17

I.  Ninth Defense:  Waiver ....................................................................... 18

J.  Tenth Defense:  Estoppel .................................................................... 18

K.  Eleventh Defense: *De Minimis* ......................................................... 19

L.  Twelfth Defense:  Authorization, License, Acquiescence,
Ratification, Consent .......................................................................... 20

M.  Thirteenth Defense:  Lack of Willfulness ........................................... 21

N.  Fourteenth Defense:  Failure to Comply with Statutory
Requirements ...................................................................................... 21

O.  Sixteenth Defense:  Unclean Hands .................................................... 22

P.  Seventeenth Defense:  Good Faith ...................................................... 22

Q.  Eighteenth Defense:  Lack of Originality ........................................... 23

R.  Nineteenth Defense:  Lack of Protectability ....................................... 23

S.  Twentieth Defense:  Forfeiture by General Publication ...................... 23

T.  Twenty-First Defense:  Fair Use ......................................................... 24

U.  Twenty-Second Defense:  Not Copyrightable Expression ................... 24

VI.  EVIDENTIARY ISSUES .............................................................................. 25

VII.  ISSUES OF LAW .......................................................................................... 25

Mitchell
Silberberg &
Knupp LLP

7022438.2

**DEFENDANTS' JOINT MEMORANDUM OF CONTENTIONS OF FACT AND LAW**

# TABLE OF CONTENTS
## (continued)

**Page**

    A.    Burden of Proof ................................................................................... 25

    B.    Issues of Egyptian Law ...................................................................... 26

    C.    Damages ............................................................................................. 26

            1.    Statutory Damages ................................................................. 26

            2.    Actual Damages ..................................................................... 26

            3.    Net Profits ............................................................................. 27

VIII.  BIFURCATION OF ISSUES ......................................................................... 29

    A.    The Liability and Damages Phase of Trial Should be Bifurcated ...... 29

    B.    Plaintiff's Standing To Assert The Claims Remaining In this Action Is A Threshold Dispositive That Should Be Decided First .... 32

IX.    JURY TRIAL ................................................................................................ 33

    A.    Issues Triable To The Jury .................................................................. 33

    B.    Issues Triable to the Court .................................................................. 33

    C.    Issues That Have Previously Been Decided By The Court ................. 34

X.     ATTORNEYS' FEES .................................................................................... 34

XI.    ABANDONMENT OF ISSUES ................................................................... 35

Mitchell Silberberg & Knupp LLP

7022438.2

**DEFENDANTS' JOINT MEMORANDUM OF CONTENTIONS OF FACT AND LAW**

# TABLE OF AUTHORITIES

Page(s)

## FEDERAL CASES

A&M Records, Inc. v. Napster, Inc.,
  239 F.3d 1004 (9th Cir. 2001) ...................................................................... 18

Apple Computer, Inc. v. Microsoft Corp.,
  821 F. Supp. 616 (N.D. Cal. 1993) ................................................................ 31

Bates v. United Parcel Serv.,
  204 F.R.D. 440 (N.D. Cal. 2001) ................................................................... 30

Bouchat v. Baltimore Ravens Football Club, Inc.,
  346 F.3d 514 (4th Cir. 2003) .................................................................. 28, 29

Broadcast Music, Inc. v. Columbia Broad. Sys., Inc.,
  441 U.S. 1 (1979) ........................................................................................... 20

Brown Bag Software v. Symantec Corp.,
  960 F.2d 1465 (9th Cir. 1992) ....................................................................... 25

Burns v. Imagine Films Entm't., Inc.,
  2001 U.S. Dist. LEXIS 24653 (W.D.N.Y. Aug. 23, 2001) ............................ 29

Compaq Computer Corp. v. Ergonome, Inc.,
  210 F. Supp. 2d 845 (S.D. Tex. 2002) ........................................................... 18

Cream Records, Inc. v. Jos. Schlitz Brewing Co.,
  754 F.2d 826 (9th Cir. 1985) .................................................................. 27, 28

Danjaq LLC v. Sony Corp.,
  263 F.3d 942 (9th Cir. Cal. 2001) ................................................................. 32

Data General Corp. v. Grumman Systems Support Corp.,
  36 F.3d 1147 (1st Cir. 1994) ......................................................................... 28

Davis v. The Gap, Inc.,
  246 F.3d 152 (2d Cir. 2001) .......................................................................... 27

DeCarlo v. Archie Comic Pubs.,
  127 F. Supp. 2d 497 (S.D.N.Y. 2001) ........................................................... 19

**DEFENDANTS' JOINT MEMORANDUM OF CONTENTIONS OF FACT AND LAW**

Mitchell
Silberberg &
Knupp LLP

7022438.2

# TABLE OF AUTHORITIES
### (continued)

Page(s)

*Dollar Sys., Inc. v. Avcar Leasing Sys., Inc.,*
  890 F.2d 165 (9th Cir. 1989) .................................................................... 22

*Dos Santos v. Telemundo Communs. Group, LLC,*
  2012 U.S. Dist. LEXIS 189524 (C.D. Cal. Dec. 19, 2012) ................... 17, 21, 34

*Fleischer Studios, Inc. v. A.V.E.L.A., Inc.,*
  654 F.3d 958 (9th Cir. 2011) .................................................................. 25

*Frank Music Corp. v. Metro-Goldwyn-Mayer, Inc.,*
  772 F.2d 505 (9th Cir. 1985) .................................................................. 28

*Frank Music Corp. v. Metro-Goldwyn-Mayer, Inc.,*
  886 F.2d 1545 (9th Cir. 1989) ................................................................ 28

*Freeplay Music, Inc. v. Cox Radio, Inc.,*
  404 F. Supp. 2d 548 (S.D.N.Y. 2005) ..................................................... 20

*General Patent Corp. Int'l v. Hayes Microcomputer Prods.,*
  1997 U.S. Dist. LEXIS 21342 (C.D. Cal. Oct. 20, 1997) ........................ 32

*Hadady Corp. v. Dean Witter Reynolds,*
  739 F. Supp. 1392 (C.D. Cal. 1990) ............................................... 18, 19, 24

*Hampton v. Paramount Pictures Corp.,*
  279 F.2d 100 (9th Cir. 1960) .................................................................. 18

*Hopkins v. Dow Corning Corp.,*
  33 F.3d 1116 (9th Cir. 1994) .................................................................. 30

*Jefferson Pilot Life Ins. Co. v. Goold,*
  2005 U.S. Dist. LEXIS 45931 (C.D. Cal. Nov. 15, 2005) ........................ 34

*Jim Marshall Photography, LLC v. Varvatos,*
  2013 U.S. Dist. LEXIS 92471 (N.D. Cal. June 28, 2013) ........................ 25

*Kamar Int'l, Inc. v. Russ Berrie & Co.,*
  752 F.2d 1326 (9th Cir. 1984) ................................................................ 29

*Kling v. Hallmark Cards Inc.,*
  225 F.3d 1030 (9th Cir. 2000) ................................................................ 17

v

Mitchell
Silberberg &
Knupp LLP

7022438.2

**TABLE OF AUTHORITIES**
<u>(continued)</u>

<u>**Page(s)**</u>

<u>M2 Software, Inc. v. Madacy Entm't</u>,
   421 F.3d 1073 (9th Cir. 2005) ...................................................................... 30, 31

<u>Mackie v. Reiser</u>,
   296 F.3d 909 (9th Cir. 2002) ........................................................................ 27, 28

<u>Morales v. Trans World Airlines, Inc.</u>,
   504 U.S. 374 (1992) ............................................................................................ 17

<u>Newton v. Diamond</u>,
   349 F.3d 591 (9th Cir. 2003) .............................................................................. 19

<u>Petrella v. Metro-Goldwyn-Mayer, Inc.</u>,
   134 S.Ct. 1962 (2014) .................................................................................. 17, 29

<u>Polar Bear Prods. v. Timex Corp.</u>,
   384 F.3d 700 (9th Cir. 2004) .................................................................. 26, 27, 28

<u>Reed Elsevier, Inc. v. Muchnick</u>,
   559 U.S. 154 (2010) ............................................................................................ 28

<u>Sheldon v. Metro-Goldwyn Pictures Corp.</u>,
   309 U.S. 390 (1940) ............................................................................................ 27

<u>Shropshire v. Canning</u>,
   2011 U.S. Dist. LEXIS 4025 (N.D. Cal. Jan. 11, 2011) ................................... 16

<u>T.D.W. v. Riverside County</u>,
   2009 U.S. Dist. LEXIS 69189 (C.D. Cal. July 27, 2009) ................................. 31

<u>Three Boys Music Corp. v. Bolton</u>,
   212 F.3d 477 (9th Cir. 2000) ......................................................................... 16, 29

<u>Worldwide Church of God v. Phila. Church of God, Inc.</u>,
   227 F.3d 1110 (9th Cir. 2000) ............................................................................ 20

**FEDERAL STATUTES**

17 U.S.C ("Copyright Act"). ...............................................................................
   § 107 ................................................................................................................... 24
   § 412 ................................................................................................................... 26

**DEFENDANTS' JOINT MEMORANDUM OF CONTENTIONS OF FACT AND LAW**

Mitchell
Silberberg &
Knupp LLP

7022438.2

1

# TABLE OF AUTHORITIES
## (continued)

2

3

**Page(s)**

4

§ 504 ..................................................................................................... 26
§ 504(b)............................................................................................... 27

5

§ 505 ..................................................................................................... 34

6

## RULES

7

Federal Rule of Civil Procedure

8

Rule 19................................................................................................ 16
Rule 19(a)........................................................................................... 16

9

Rule 42(b) .......................................................................................... 29
Rule 44.1.................................................................................... 26, 34

10

11

12

Local Rule 16-4 .................................................................................... 1

## OTHER AUTHORITIES

13

9A Charles A. Wright & Arthur Miller, Federal Practice and

14

Procedure

15

§ 2390 (3rd ed. 2008) ..................................................................... 31

16

William W. Schwarzer et al. Federal Civil Procedure Before Trial

17

§ 16:157 (The Rutter Group, Rev. #1 2012); ................................ 30

18

19

20

21

22

23

24

25

26

27

28

Mitchell
Silberberg &
Knupp LLP

7022438.2

**DEFENDANTS' JOINT MEMORANDUM OF CONTENTIONS OF FACT AND LAW**

Pursuant to Local Rule 16-4, all Defendants jointly submit this Memorandum of Contentions of Fact and Law in advance of the Final Pretrial Conference currently scheduled for September 14, 2015.

## I.    INTRODUCTORY STATEMENT

At issue in this copyright infringement lawsuit is the use of a licensed portion of the instrumental section of a 1957 Egyptian musical composition entitled *Khosara Khosara* ("*Khosara*") in a sound recording entitled *Big Pimpin'*. *Big Pimpin'* was one of 15 tracks (and the fifth single released) in "Vol. 3 . . . Life & Times of S. Carter," a 1999 album by recording artist Shawn Carter, who performs as Jay Z, released seven and a half years before this lawsuit was filed. *Big Pimpin'* is an anthemic rap song grounded in American cultural phenomena and is centered on a compelling, memorable and easily repeatable chanted vocal hook, brought to life via Jay Z's unique flow and rhythm.  The background track contains a sample of a sound recording of *Khosara*, which admittedly is not owned by Plaintiff, and which was licensed to Defendants from non-party ARC Music, its owner.

Plaintiff's only claim in this litigation has been that Defendants' license, allowing the perpetual use of the *Khosara* musical composition in all manners in connection with *Big Pimpin'*, obtained from EMI Music Arabia in 2001, was secured from the wrong entity.  Plaintiff claims that only he or other heirs of *Khosara's* composer could issue such a license implicating the heirs' avowed "moral rights."  Plaintiff is wrong on both the facts and applicable law.

Throughout the course of this litigation, Plaintiff has consistently tried to make this a case about so-called "moral rights," complaining for example that under Egyptian law, authors and their heirs can always refuse to permit use of a composition in manners deemed to be "objectionable," regardless of whether they previously gave up all of their economic rights in connection therewith.  This Court, however, already has properly determined that moral rights have no

1  application in the United States, and cannot support Plaintiff's copyright

2  infringement claims.

3      Moreover, in December 2002, Plaintiff assigned away (in fact, sold for a

4  lump sum) **all** of his economic rights in *Khosara* under Egyptian law – **including**

5  all rights to prepare and commercially exploit adaptations or derivative works.

6  Having now limited the statutory period to acts occurring after August 31, 2004,

7  this Court or any jury must decide whether Plaintiff retains standing to assert any

8  claim for the time period remaining in the case.

9      In the unlikely event that Plaintiff is found to have standing **and** Defendants'

10  license from EMI Music Arabia is deemed somehow insufficient, and that all of

11  Defendants' other affirmative defenses fail, this Court has already ruled that

12  Defendants suffered economic and evidentiary prejudice as a result of Plaintiff's

13  lengthy delay, and that the conditions of laches have been met.  Dkt. Nos. 380 at

14  10-13; Dkt. 418 at 7-10.  As a result, any recovery normally available to Plaintiff

15  would be subject to equitable adjustment, which would include a potential total bar

16  to any recovery of Defendants' apportionable profits.  Id.

17      Plaintiff seeks a portion of profits for any and all exploitations containing

18  *Big Pimpin'*, including Jay Z records, the collaborative Jay Z/Linkin Park

19  "Collision Course" album, and the "Fade to Black" Jay Z concert documentary

20  film.  If Plaintiff is allowed to recover any profits from such exploitations, they

21  would be minimal at best after accounting for the multiple other far more

22  significant contributing factors.

23      Moreover, Plaintiff's claim that *Big Pimpin'* drives Mr. Carter's concert

24  ticket and merchandise sales ignores his lengthy, iconic career.  Mr. Carter is one

25  of the most successful musicians of all time, having sold more than 100 million

26  records to date.  Thirteen of Mr. Carter's albums have reached the number one slot

27  on the Billboard 200 – a record.  Mr. Carter's music has not only been

28  commercially popular, but has also received widespread critical acclaim.  Mr.

Mitchell
Silberberg &
Knupp LLP

7022438.2

2

1   Carter has been awarded 21 Grammy Awards and has received numerous other

2   accolades and honors. Thus the claim for concert and merchandising revenue

3   ignores his immense popularity, as well as that of his co-headliners and also

4   ignores the intricate production values of his shows, inherent intensity of live

5   performances and numerous other factors.  Indeed, it profoundly misconstrues the

6   very nature of concert sales and is unsupported by any evidence. The notion that

7   people buy concert tickets to Mr. Carter's concerts to hear one song—never mind

8   an instrumental sample contained in one song that may or may not be played—is

9   patently absurd.

10  **II.    FACTUAL BACKGROUND**

11       **A.    _Khosara_**

12       Plaintiff alleges that in or around 1957, Baligh Hamdy ("Hamdy"), an

13  Egyptian composer, wrote the music to _Khosara_ (the lyrics were written by non-

14  party Mamoun El Shinnawy).  Hamdy died in 1993.  According to Plaintiff, the

15  _Khosara_ musical copyright interests have been owned by Plaintiff and certain other

16  Hamdy heirs under Egyptian law.  Plaintiff does not purport to own any rights in

17  any _Khosara_ sound recordings.  Plaintiff and the other heirs are Egyptian nationals

18  and residents.

19       **B.    Chain of Title**

20       In 1968, Hamdy entered into a written agreement with an Egyptian

21  company, Sout el Phan (the "1968 Agreement"), that included a conveyance to

22  Sout el Phan of rights in the _Khosara_ composition as well as other songs.  The

23  1968 Agreement provided "[t]he works of the second party [Hamdy] are limited

24  (transferred) – as a composer – to 'Sout El Phan ….'"  The 1968 Agreement was

25  negotiated and executed on behalf of Sout el Phan by Magdi El Amrousi, its

26  President.

27       In September 1995, as a result of Hamdy's death and after Egypt's revision

28  of its copyright laws, Plaintiff (on behalf of the Hamdy heirs) entered into his own

1   agreement with Sout el Phan (the "1995 Agreement") (again represented by Mr. El

2   Amarousi), which included rights in Hamdy's musical compositions, including

3   *Khosara*.  In that agreement, Fahmy broadly "authorize[ed] Sout El Phan Company

4   . . . to print and publish the following songs on all currently known mechanical

5   printing matter and those to be introduced in the future, including records, cassette

6   tapes, and cartridges.  This authorization gives Sout El Phan Company alone, ***or to***

7   ***those it selects***, the right to publish and sell [songs including *Khosara*] ***using all***

8   ***means*** and in all parts of the world . . . ." (emphasis added).

9           Shortly thereafter, on December 11, 1995, pursuant to its right to "select

10   others" (*i.e.*, to sub-publish), Sout el Phan entered into a License Agreement with

11   EMI Music Arabia (Defendants' eventual licensor).  This agreement (signed again

12   by Mr. El Amarousi) granted to EMI Music Arabia, among other things, "the sole

13   and exclusive right to protect, publish and/or sub-publish songs" contained on

14   records in the Sout el Phan catalog, including *Khosara*.  Thereafter, Sout el Phan

15   repeatedly confirmed to EMI Music Arabia that EMI Music Arabia had the right to

16   issue licenses for *Khosara*—including the one ultimately issued to Defendants.

17           In 1999, highly acclaimed music producer Tim Mosley collaborated with

18   Mr. Carter to create the song *Big Pimpin'*.  In creating the musical "track," Mosley

19   utilized an unidentified sound recording from a CD that he believed contained

20   public domain or otherwise freely usable Middle Eastern music, commonly

21   referred to in the music industry as "royalty free."  No title, publisher, composer,

22   or record company was identified.  Such recordings were and are common.

23   Approximately one year later, Mosley learned for the first time that the track he

24   used was a recording of *Khosara* owned by non-party ARC Recordings, Inc.

25           In late 2000, EMI Music Arabia asserted that *Big Pimpin'* contained an

26   unauthorized sample of the composition *Khosara*, and that ***it*** owned the exclusive

27

28

Mitchell Silberberg & Knupp LLP

7022438.2

4

**DEFENDANTS' JOINT MEMORANDUM OF CONTENTIONS OF FACT AND LAW**

rights to the *Khosara* composition.[1]  Two years after the release of *Big Pimpin'*, Mosley, with no notice or knowledge of any claim by Plaintiff, entered into an agreement with EMI Music Arabia dated March 30, 2001, pursuant to which EMI Music Arabia represented and warranted that (1) it controlled the copyright in the musical composition *Khosara* throughout the world (excluding Egypt), and (2) "that it has no reason to believe that any third party or entity not a party to this agreement could assert claims of ownership or authorship in and to [EMI Music Arabia's] right in the Hamdy composition."  In return for a payment of $100,000, EMI Music Arabia granted the right to exploit the *Big Pimpin'* composition, to the extent it used *Khosara*, "in perpetuity throughout the world, excluding Egypt, free and clear of any claim by [EMI Music Arabia] that such exploitation in any way violates any of EMI's copyright interest in [*Khosara*]."  EMI Music Arabia, in turn, shared the proceeds of the Mosley license with Sout el Phan's successor, the Egyptian music company Alam el Phan.

This Court has already held it undisputed that Plaintiff knew of his potential claim no later than December 2000.  Dkt. No. 309 at 2, 7, 10.  In March 2001, while EMI Music Arabia was settling its claim by licensing the composition to Mosley, Plaintiff hired David Braun, a well-known U.S.-based intellectual property attorney (with Akin Gump), to investigate Plaintiff's potential claim of infringement against Defendants.  On March 2, 2001, Braun wrote to EMI Music Publishing, stating that he had seen EMI Music Arabia listed as the publisher of *Khosara* in the liner notes of an album released by EMI Music Arabia in 1997 or 1998, and requesting the details of the song's ownership.  In April, EMI Music Arabia confirmed that it was "the exclusive publisher of [*Khosara*] … for the World excluding Egypt," and provided supporting documentation.

---

[1] ARC Recordings, Inc. also asserted a claim regarding the sound recording of *Khosara*.  A license for use of the sound recording was thereafter obtained from ARC Recordings by Defendant Roc-A-Fella Records LLC.

Mitchell
Silberberg &
Knupp LLP

7022438.2

**DEFENDANTS' JOINT MEMORANDUM OF CONTENTIONS OF FACT AND LAW**

1       Braun did not deny EMI Music Arabia's claim of right.  Neither Braun nor

2   Plaintiff contacted any Defendant.  Mosley, unaware of Plaintiff's claims,

3   concluded the agreement with EMI Music Arabia and paid the required

4   consideration, confident both at the time and for years afterward that EMI Music

5   Arabia had whatever publishing rights in *Khosara* may have been necessary.

6       **C.**     **Plaintiff's 2002 Transfer of all of his Economic Rights to _Khosara_**

7       In or about the first half of 2001, control of Sout el Phan's musical catalog

8   passed from Sout el Phan to other Egyptian entities known as Fonoun and Alam el

9   Phan.  At the same time, Alam el Phan ratified EMI Music Arabia's claims with

10  regard to *Khosara* and EMI Music Arabia's settlement license with Mosley.

11  Neither Alam el Phan nor any associated party has ever challenged EMI Music

12  Arabia's ability to enter into the 2001 Mosley Agreement permitting exploitation

13  of *Big Pimpin'* in perpetuity, or asserted that EMI Music Arabia's rights in

14  *Khosara* had expired.

15      On or about December 11, 2002, ***Plaintiff*** entered into an agreement with

16  Alam el Phan's owner, Mohsen Jaber (collectively "Alam el Phan") (the

17  "December 2002 Agreement"), superseding and replacing the 1995 Agreement

18  between Plaintiff and Sout el Phan.  In return for a lump-sum payment of 115,000

19  Egyptian pounds—representing a "buyout"—the December 2002 Agreement

20  unequivocally assigned to Alam el Phan all economic rights in *Khosara* and other

21  Hamdy compositions under Egyptian law for the remaining life of the copyrights,

22  and ceased any continuing financial obligations from either Sout el Phan or Alam

23  el Phan.  Plaintiff testified that, with the exception of the change of entity from

24  Sout el Phan to Alam el Phan (which necessitated the agreement in his view), this

25  agreement "was the same contract that was existing with Sout el Phan," and that he

26  understood this contract to grant the exact same rights that had been granted in the

27  previous agreements (*e.g.*, the August 1995 Agreement).

28      Among other things, the December 2002 Agreement:

(1) provided that for the works at issue (expressly including *Khosara*), Jaber and his successors were becoming "solely the owners of the financial usage rights" delineated within Egypt's 2002 Intellectual Property Law;

(2) granted to Alam el Phan, or anyone Jaber "select[ed]," "the right to print, publish and use the music of the [listed] songs" by "all currently known audio and/or visual [means]," including "performances," as well as for "records, cassette tapes, and cartridges in addition to all the modern technological and digital means such as the internet, telephones, satellites, or any other means …in the future," and specified that the rights so transferred included "all the usage means and methods whether those currently available or those that will be invented in the future";

(3) provided that "Jaber [i.e., Alam el Phan] and his successor become the sole publisher of the melodies of these songs in all the current publishing means and in any way he deems," and that "[Alam el Phan] also has the right to transfer all these rights or some of them or dispose it to another company or institution using any trademark he selects"; and

(4) provided that Plaintiff also had "fully assign[ed]" to Jaber "any other contracts and/or rights pertaining to [these] pieces of music."

The effect of the December 2002 Agreement was to unequivocally confirm that any and all economic rights in *Khosara* were conveyed to Alam el Phan—which necessarily included any of the rights to pursue any claims relating to *Khosara*—from that point forward.  In deposition testimony, both Plaintiff's experts and Defendants' experts agreed that a single sentence in the closing lines of this agreement did not reserve any exercisable exploitation rights to Plaintiff, but merely addressed the ability of Plaintiff and his co-heirs to continue receiving the so-called "writer's share" of performance or mechanical royalties directly from collection societies akin to BMI or ASCAP.[2]

_____

[2] As translated into English, this sentence reads as follows: "I received the amount of 115,000 (only one hundred fifteen thousand Egyptian Pounds) for this waiver

**DEFENDANTS' JOINT MEMORANDUM OF CONTENTIONS OF FACT AND LAW**

Mitchell
Silberberg &
Knupp LLP

7022438.2

1

**D.**     <u>**The Allegedly Infringing Works**</u>

2

      The works that contain *Big Pimpin'* (among other original music and

3

elements) are:

4

- <u>"Vol. 3"</u>:  This album was released by Defendant UMG Recordings,

5

      Inc. on December 28, 1999, and contains, as one of 15 songs, *Big*

6

      *Pimpin'*, which was produced by Mosley.

7

- <u>"Collision Course"</u>:  On November 30, 2004, Mr. Carter and the well-

8

      known band Linkin Park released a new album of "mash-ups" titled

9

      "Collision Course," which also included a bonus DVD containing live

10

      footage and a 30 minute MTV documentary.  Warner Music, Inc.,

11

      which is affiliated with the company that made this album, is a

12

      Defendant but was not involved in any way in the original 1999

13

      release of "Vol. 3."  "Collision Course" combines 12 songs in six

14

      "mash-ups," one of which, *Big Pimpin'/ Papercut*, includes Mr.

15

      Carter's *Big Pimpin'* mixed with Linkin Park's *Papercut*.

16

- <u>"Fade to Black"</u>:   In or about November 2004, a 110-minute

17

      documentary film, "Fade to Black," was released theatrically by

18

      Defendant Paramount Pictures Corporation (which did not create or

19

      edit the film, and which also had not previously been involved with

20

      *Big Pimpin'*).  The film chronicled Mr. Carter's 2003 "retirement"

21

      performance in Madison Square Garden and included approximately

22

      two minutes of a performance of *Big Pimpin'*.  The film was

23

      subsequently released by the Paramount Defendants on DVD in or

24

      about April 2005.

25

26

27

_____

(…continued)

28

and declaration while maintaining our rights in respect of the public performance and mechanical printing."

- "Unplugged":  This album contains 13 acoustic performances and was released on December 18, 2001.  One of those acoustic performances is of *Big Pimpin'*.

- "Hits":  This album released in 2010 is a "greatest hits" album and contains 14 previously released "hits" by Jay Z, among them *Big Pimpin'* as it was first released in 1999.  A "deluxe edition" also included five previously unreleased recordings.

- The *Big Pimpin'* Composition. This composition was administered in part by EMI Blackwood Music, a music publishing company that used to administer musical compositions written or co-written by Defendant Mr. Carter.  Its conduct was essentially passive.

- Tours.  *Big Pimpin'* has been performed by Mr. Carter at concerts held post-August 31, 2004 as a part of sets incorporating multiple (almost always over 20) songs from Mr. Carter's wide-ranging catalog – as well as the songs of other co-headliners and artists in several instances.  At many of these concerts, Mr. Carter performed *Big Pimpin'* acapella without the instrumental backtrack.

## III.   SUMMARY OF PLAINTIFF'S CLAIMS, AND THE ELEMENTS THEREOF

On August 31, 2007, Plaintiff initiated the instant suit against defendants Jay Z, Timothy Mosley, Kyambo Joshua, Rob Bourdon, Brad Delson, Mike Shinoda, Dave Farrell, Joseph Hahn, Chester Bennington, Big Bad Mr. Hahn Music, Chesterchaz Publishing, EMI Blackwood Music Inc., EMI Publishing Ltd., Kenji Kobayashi Music, Lil Lulu Publishing, Machine Shop Recordings LLC, Marcy Projects Productions II, MTV Networks Enterprises Inc., Nondisclosure Agreement Music, Paramount Home Entertainment Inc., Paramount Pictures Corporation, Radical Media, Rob Bourdon Music, Roc-A-Fella Records LLC,

**DEFENDANTS' JOINT MEMORANDUM OF CONTENTIONS OF FACT AND LAW**

Timbaland Productions Inc., UMG Recordings Inc., Universal Music and Video Distribution Inc., and Warner Music Inc.

The claims currently being asserted by Plaintiff are as follows:

1.  <u>Claim 1</u>:  Copyright Infringement relating to *Big Pimpin'*/"Vol. 3, Life and Times of S. Carter";

2.  <u>Claim 2</u>:  Copyright Infringement relating to *Big Pimpin'/Papercut*;

3.  <u>Claim 3</u>:  Copyright Infringement relating to "Fade to Black."[3]

The elements' required to establish each of Plaintiff's copyright infringement claims are that:

1.  Plaintiff is the current owner of a valid copyright in *Khosara*;

2.  The defendants copied original, protectable elements from the *Khosara* composition.

<u>See</u> Ninth Circuit Manual of Model Jury Instructions – Civil, Instruction Nos. 17.4 & 17.5 (July 2015 ed.).

## IV.  KEY EVIDENCE IN OPPOSITION TO PLAINTIFFS' CLAIMS

### A.  <u>**Plaintiff Lacks Standing To Assert Any Copyright Infringement Claims Regarding *Khosara***</u>

As discussed above, in December 2002, after the 2001 Mosley-EMI Music Arabia agreement, and after Plaintiff was well aware of *Big Pimpin'* and his purported claims, Plaintiff entered into an agreement with Alam el Phan (which recently had acquired Sout el Phan).  In this 2002 agreement, Plaintiff, in exchange for a lump-sum buyout, unequivocally assigned to Alam el Phan ***all*** of his and the

---

[3] The fourth cause of action in Plaintiff's Complaint, for violation of unfair business practices, was dismissed with prejudice pursuant to the Court's rulings of March 7, 2008 and March 19, 2008.  <u>See</u> Dkt. No. 67.

other Hamdy heirs' economic rights to *Khosara*, including, but not limited to, performance rights, publishing rights, rights to "musical re-segmentation," and alteration rights in all modern and future technical means.

Plaintiff could not have been more clear in granting these expansive and exclusive rights.  He specifically referenced and invoked the brand new copyright law enacted in Egypt just a few months before, stating that ***all*** economic rights delineated therein were being transferred.  Article 147 of that law, which outlines these rights non-exhaustively, refers to "any form of exploitation of [a] work," including examples such as "reproduction," "performance," "adaptation," or "making the work available to the public in any manner." As this Court has already determined, the right to create adaptations or derivative works (as alleged by Plaintiff here) is transferrable economic right under Egyptian copyright law.  Dkt. No. 271 at 15-16.

Pursuant to the 2002 Agreement, Plaintiff gave up exclusive control of ***all*** rights in *Khosara* that have application in the United States, and therefore he has no standing to bring any claims based on exploitation of *Khosara* after 2002. Since the Court has determined that the statute of limitations bars claims prior to August 31, 2004, Plaintiff can no longer assert a cognizable claim and can recover nothing.  Only Alam el Phan could pursue copyright infringement claims after 2002 – unsurprisingly, they have not done so, as they both knew and approved of (and received payment for) EMI Music Arabia's perpetual license and settlement with Defendant Mosley regarding *Big Pimpin'*.

The key evidence that Defendants will rely on to demonstrate that Plaintiff no longer has standing to assert claims in this action includes (i) the 2002 Agreement; (ii) the expert testimony of Defendants' experts Walid Abou Farhat and Bob Kohn (and Plaintiff's own experts Keith Cooper and Mohamed-Hossam Loutfi); and (iii) copyright laws in Egypt.

**B.**     **Defendants' Obtained A Valid Perpetual License for Any Use of _Khosara_ in Connection with _Big Pimpin'_**

Pursuant to the chain of title described above, Defendants received a valid perpetual license for any use of _Khosara_ in connection with _Big Pimpin'_ from EMI Music Arabia in 2001, three years before the start of the applicable statutory period.

**C.**     **Plaintiff Cannot Establish What The Musical Composition _Khosara_ is Comprised Of, Or That Hamdy Authored All Of the Musical Compositional Elements At Issue In _Big Pimpin'_**

Even if Plaintiff had not assigned away all of his economic rights in _Khosara_ in 2002, Plaintiff will still be unable to meet his burden of demonstrating that he is the owner of all of the musical compositional elements at issue in _Big Pimpin'_ or that such elements constitute protectable expression.  Plaintiff's alleged ownership of _Khosara_ is entirely derivative of the authorship of Hamdy.  Plaintiff, however, has failed to produce evidence demonstrating which compositional elements of _Khosara_ were authored by Hamdy, and utilized in _Big Pimpin'_.

Defendants believe that, at most, Plaintiff will be able to demonstrate that Hamdy was the author of what is transcribed in a lead sheet that Plaintiff produced, and authenticated, and which he testified reflected Hamdy's composition _Khosara_. The composition reflected in this lead sheet is different from the various sound recordings of _Khosara_ that exist, including in the ARC recording.  Indeed, the ARC recording contains numerous musical elements that are not present in the lead sheet and which were likely authored by third-party arrangers, musicians, and instrumentalists who participated in the creation of the sound recordings of _Khosara_ – not Hamdy.  Further, many of the similarities between the _Khosara_ lead sheet and _Big Pimpin'_ are commonplace, unoriginal and therefore unprotectable, and cannot support any claim for infringement by Plaintiff against Defendant with respect to _Big Pimpin'_.

Mitchell
Silberberg &
Knupp LLP

7022438.2

12

1    The key evidence that Defendants will rely on to demonstrate that Plaintiff

2    cannot meet his burden of proof as set forth above include (i) the expert testimony

3    of Lawrence Ferrara (and Plaintiff's experts Judith Finell and Scott Marcus); (ii)

4    the 1995 lead sheet transcription of *Khosara*; (iii) the ARC Music sound recording

5    of *Khosara*; and (iv) the sound recording of *Big Pimpin'*.

6        **D.    Any Portion of Revenues From Exploitation Of *Big Pimpin'***

7               **Attributable To *Khosara* Is Minimal At Best**

8        Plaintiff seeks to recover a portion of Defendants' profits from the sales of

9    works containing *Big Pimpin'*, including Jay Z record albums ("Vol 3… Life and

10   Times of S. Carter," "Unplugged," and "The Hits Collection, Vol. 1"), a Jay Z

11   concert movie ("Fade to Black"), and the collaborative album of mash-ups with

12   Linkin Park ("Collision Course").

13       As Defendants' expert will demonstrate, any analysis of profits attributable

14   to the *Khosara* musical composition (to whatever extent used in *Big Pimpin'*) must

15   necessarily include myriad far more significant factors driving these products'

16   sales: these factors include, *inter alia*, celebrity star power, marketing, other tracks

17   contained on the albums and in the concert movie, Jay Z's lyrical phrases and

18   hooks, and production and arrangement.  Once these factors are taken into account,

19   at best, only a ***de minimis*** share of net profits (after all deductible expenses) could

20   be deemed attributable to the inclusion of the small portion of the *Khosara* musical

21   composition alleged to be contained in *Big Pimpin'*.

22       **E.    Plaintiff Cannot Establish Any Concert Revenue Or Merchandise**

23              **Revenue Is Attributable To The Alleged Infringement**

24       As is true with regard to all exploitations at issue, it is Plaintiff's burden to

25   demonstrate a causal connection between the alleged infringement and Defendant

26   Carter's receipt of revenues from concert performances or merchandise sales.

27   Plaintiff is wholly unable to do so.  All of his proffered expert testimony on this

28   point is purely speculative and counterintuitive.  Plaintiff has neither factual

Mitchell
Silberberg &
Knupp LLP

7022438.2

13

1   evidence nor competent expert opinion that establishes that the alleged

2   infringement is responsible for any incremental revenue from the sale of concert

3   tickets or merchandise.

4        Such a failure of proof is hardly surprising.  The notion that people buy

5   concert tickets to hear one song, never mind an instrumental sample contained in

6   one song, that may or may not be performed at any given concert is beyond

7   speculative—it is farcical.  People buy tickets to concerts in response to substantial

8   marketing efforts to see stars perform, to see co-stars, to see production values, to

9   be at an event, to enjoy the communal experience, and for a variety of other

10  reasons.  For a superstar like Mr. Carter, with well over a decade of multiplatinum

11  hits, they also come to hear a representative sample of his overall body of work.

12  But there is no evidence that anyone buys a ticket to hear an instrumental snippet

13  contained in a single song, which they are unsure will even be played.  Plaintiff has

14  no evidence demonstrating such a connection between the alleged infringement

15  and Mr. Carter's concert revenue.

16       The connection between the alleged infringement and merchandise sales is

17  even more attenuated.  Given that Plaintiff has no non-speculative evidence that

18  people purchased tickets to Jay Z's concert because of *Big Pimpin'* – never mind

19  the instrumental snippet of *Khosara* – it is self evident that Plaintiff does not have

20  any evidence or testimony establishing that there were any enhanced merchandise

21  sales tied to the potential performance of *Big Pimpin'*.  Moreover, there is no

22  evidence of any merchandise referencing the song *Big Pimpin'*, let alone the

23  instrumental fragment at issue in this case.

24       Even if the jury were to find a causal nexus between the alleged

25  infringement and Defendant Carter's concert and merchandise revenue, Defendant

26  Carter is entitled to deduct expenses incurred in connection with generating such

27  revenues. He is also entitled to apportion the resulting profits among the numerous

28  factors contributing to ticket and merchandise sales. The evidence – and common

sense – compel the conclusion that Jay Z's star power resulting from a 20-year career, his vast catalog of hits, marketing, branding, the Jay Z concert experience, performance, production values, and co-headlining performers – drove ticket sales, not the potential to hear the short sample of *Khosara contained in a single 15-year-old song*.  The portion of concert revenues that could be attributable to the use of *Khosara* in *Big Pimpin'*, if any, is infinitesimal in light of these numerous, more significant factors.  By extension, merchandise revenue attributable to the allegedly infringing instrumental snippet is non-existent.

The key evidence that Defendant Carter will rely on to demonstrate that Plaintiff cannot meet his burden of proving a causal nexus between the alleged infringement and Defendant Carter's concert and merchandise revenue, as well as to establish deductible expenses and revenue attributable to other factors include (i) the expert testimony of Dr. Jason King; (ii) the testimony of Shawn Carter; (iii) the testimony of Al Joulani; (iv) the testimony of Kashyap Bakhai; (v) the Live Nation concert revenues and costs spreadsheets; and (vi) the pre-Live Nation concert revenues and costs.

## V.    SUMMARY OF DEFENSES, THE ELEMENTS THEREOF, AND DEFENDANTS' SUPPORT FOR EACH DEFENSE

### A.    <u>First Defense</u>:  Failure to State a Claim for Relief

Plaintiff's Complaint fails to state the elements of his own claims.  <u>See</u> Section IV, *supra*.

### B.    <u>Second Defense</u>:  Statute of Limitations

The Court has already ruled that Plaintiff's purported claims are barred prior to August 31, 2004.  <u>See</u> Dkt. No. 309 at 16.

### C.    <u>Third Defense</u>:  Standing

This defense is based on the same facts and law as discussed in Section IV.A, *supra*.

**D.     Fourth Defense:  Failure to Join Necessary or Indispensable Parties**

1.     In determining whether a party is "necessary" under Federal Rule of Civil Procedure 19(a), a court must consider whether "complete relief" can be accorded among the existing parties, and whether the absent party has a "legally protected interest" in the subject of the suit.

2.     A party is also "necessary" if disposing of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect the interest; or (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

See Fed. R. Civ. P. 19; Shropshire v. Canning, 2011 U.S. Dist. LEXIS 4025, at *20-21 (N.D. Cal. Jan. 11, 2011).

Support:  Plaintiff should not be permitted to pursue his claims, as he has failed to join necessary parties to this litigation, including, *inter alia*, including Sout el Phan, Alam el Phan, Mohsen Jaber, or the other heirs to the Hamdy estate.

The evidence that Defendants intend to use to support this defense includes Plaintiff's own testimony regarding the other purported heirs to Hamdy's estate and owners of *Khosara*, and evidence regarding Plaintiff's transfer of his rights in *Khosara*, as discussed in Section IV.A, *supra*.

**E.     Fifth Defense:  Independent Creation**

See Ninth Circuit Manual of Model Jury Instructions – Civil, Instruction No. 17.15 (July 2015 ed.); Three Boys Music Corp. v. Bolton, 212 F.3d 477, 486 (9th Cir. 2000).

To the extent Plaintiff seeks to claim any musical element in *Big Pimpin'* beyond those contained in the ARC sound recording are derived from *Khosara*, Defendants will rebut that by demonstrating the authors' independent creation.

The evidence that Defendants intend to use to support this defense includes the testimony of the authors of *Big Pimpin'*, Defendants Carter and Mosley, and their expert L. Ferrara.

**F.     Sixth Defense:  Adequate Remedy at Law**

Plaintiff is not entitled to equitable relief because there is an adequate remedy at law in the form of money damages, and there is no risk of irreparable injury.

See <u>Morales v. Trans World Airlines, Inc.</u>, 504 U.S. 374, 381 (1992).

**G.     Seventh Defense:  Attorneys' Fees Not Recoverable**

Plaintiff cannot recover attorneys' fees, as he did not register the composition in *Khosara* prior to the alleged infringement.

See <u>Dos Santos v. Telemundo Communs. Group, LLC</u>, 2012 U.S. Dist. LEXIS 189524, at *22 n.6 (C.D. Cal. Dec. 19, 2012).

**H.     Eighth Defense:  Laches**

1.     Plaintiff unreasonably delayed in bringing this lawsuit.

2.     Defendants suffered prejudice as a result thereof.

<u>See</u> <u>Kling v. Hallmark Cards Inc.</u>, 225 F.3d 1030, 1036 (9th Cir. 2000).

<u>Support</u>:  Laches may "warrant limiting relief at the remedial stage." <u>Petrella v. Metro-Goldwyn-Mayer, Inc.</u>, 134 S.Ct. 1962 (2014).  Even if Plaintiff prevails on liability within the statute of limitations period, his recovery based on net profits should be eliminated or severely curtailed, as this Court has already ruled that Plaintiff's lengthy delay between 2000 and 2007 satisfied the conditions of laches by imposing economic and evidentiary prejudice on Defendants in multiple ways.  Dkt. No. 380 at 11-13.

The evidence in support of this Defense includes: (1) evidence of Plaintiff's knowledge and delay in commencing suit; (2) evidence of Defendants' lack of knowledge of Plaintiff's claim, reliance, and the unavailability of a declaratory

1  judgment action; and (3) evidence of the economic and evidentiary prejudice

2  incurred by Defendants as a result.

3  **I.     Ninth Defense:  Waiver**

4  Plaintiff intentionally surrendered his rights to *Khosara*.

5  See A&M Records, Inc. v. Napster, Inc., 239 F.3d 1004, 1026 (9th Cir.

6  2001).

7  Support:  The evidence in support of Defendants' waiver is the same as that

8  associated with Defendants' lack of standing defense.  See Section IV.A, supra.

9  **J.     Tenth Defense:  Estoppel**

10  1.     Plaintiff knew the facts of Defendants' infringing conduct;

11  2.     Plaintiff intended that Defendants act on his conduct, or Plaintiff acted

12         in such a way that Defendants had a right to believe that Plaintiff so

13         intended;

14  3.     Defendants were ignorant of the true facts;

15  4.     Defendants relied on Plaintiff's conduct to their injury.

16  See Hampton v. Paramount Pictures Corp., 279 F.2d 100, 104 (9th Cir.

17         1960); Hadady Corp. v. Dean Witter Reynolds, 739 F. Supp. 1392,

18         1399 (C.D. Cal. 1990).

19  Support:  Plaintiff is estopped to deny that EMI Music Arabia had

20  publishing rights in *Khosara* and, therefore, cannot deny that EMI Music Arabia

21  could and did grant to Mosley (and through Mosley, the other Defendants) the

22  right to use *Khosara* in *Big Pimpin'*.  Equitable estoppel "'focuses on what the

23  [accused infringer] has been led to reasonably believe from the [claimant's]

24  conduct.'"  Compaq Computer Corp. v. Ergonome, Inc., 210 F. Supp. 2d 845, 849

25  (S.D. Tex. 2002).  The elements of estoppel are: (1) Knowledge: plaintiff's

26  knowledge of the allegedly infringing conduct; (2)  Intent/Right to Believe:

27  plaintiff either intended reliance on his acts or omissions or acted or created a right

28  to believe he so intended; (3) Ignorance: defendant was ignorant of the true facts;

1  and (4) Reliance: defendant relied to his detriment.  See, e.g., DeCarlo v. Archie

2  Comic Pubs., 127 F. Supp. 2d 497, 509 (S.D.N.Y. 2001); Hadady Corp. v. Dean

3  Witter Reynolds, Inc., 739 F. Supp. 1392, 1399 (S.D. Cal. 1990).

4         The evidence on which Defendants intend to rely in support of this defense

5  includes evidence regarding: (i) the communications between Plaintiff's lawyer

6  David Braun and EMI Music Arabia in 2001; (ii) EMI Music Arabia's unequivocal

7  assertion that it owned publishing rights in *Khosara* (reiterated to Braun by ARC

8  Music); (iii) Plaintiff's knowledge that EMI Music Arabia had made a claim

9  against the "producer" of *Big Pimpin'* and was entering into an agreement with

10  him and receiving payment; (iv) Plaintiff's subsequent years of silence in the face

11  of open and public exploitation of *Big Pimpin'*; (v) the reliance of EMI Music

12  Arabia and Mosley in granting and receiving the right to use *Khosara* in *Big

13  Pimpin'*; and (vi) the inclusion of *Big Pimpin'* in new exploitations in the face of

14  Plaintiff's silence after receiving the perpetual license.

15         **K.       Eleventh Defense:** *De Minimis*

16         1.     Plaintiff bears the burden of substantiating that the amount of

17                protectable expression of *Khosara* that was allegedly copied by *Big

18                Pimpin'* was more than *de minimis*.  A use of a copyrighted work is *de

19                minimis* if the average audience would not recognize the

20                appropriation.

21         See Newton v. Diamond, 349 F.3d 591, 594 (9th Cir. 2003).

22         Support:  Even if Plaintiff is able to bear his burden of demonstrating that he

23  is the owner of any protectable expression in *Khosara*, Plaintiff's copyright

24  infringement claim still must fail as any use of such protectable expression in *Big

25  Pimpin'* was *de minimis*.  See Newton, 349 F.3d at 594. The evidence that

26  Defendants will use to support this defense include the works at issue (*i.e.*, the

27  composition *Khosara* and *Big Pimpin'*), and the expert testimony of L. Ferrara.

28

L.   **Twelfth Defense**:  Authorization, License, Acquiescence, Ratification, Consent

1.   Defendants obtained a valid license to use Plaintiff's copyrighted work from a person entitled to grant such a license.

See Worldwide Church of God v. Phila. Church of God, Inc., 227 F.3d 1110, 1114 (9th Cir. 2000); Freeplay Music, Inc. v. Cox Radio, Inc., 404 F. Supp. 2d 548, 552 (S.D.N.Y. 2005) (holding that defendant was not liable for copyright infringement because the relevant "BMI licenses cover the public *performance* of [the plaintiff's] compositions"); see also Broadcast Music, Inc. v. Columbia Broad. Sys., Inc., 441 U.S. 1, 5 (1979).

Support:  Defendants have a valid perpetual license to exploit *Khosara* based on an agreement with EMI Music Arabia and the chain of title set forth above. Because Defendants had a valid license, none of their uses are infringing.

The evidence that supports this defense includes the agreements and correspondence that form the chain of title, testimony from former employees of EMI Music Arabia regarding its contracts with Sout el Phan, and additional extrinsic evidence, including the expert testimony of W. Abou Farhat, N. Shanmuganathan, and B. Kohn reflecting the meaning of the contracts at issue.

2.   All alleged performances of *Khosara* that occurred at Jay Z's concerts were covered by a blanket license from BMI (the "BMI License"). *Khosara* belongs to BMI's repertory under a direct license from EMI Music Arabia.[4]  Because Plaintiff has licensed the public performance of *Khosara* at concert venues where Jay Z performed, Plaintiff cannot validly claim that Defendants infringed on his copyrights by publicly performing portions of the composition at concerts.

---

[4] Even if Plaintiff successfully contests EMI Music Arabia's right to sublicense performances of *Khosara*, any public performances in venues licensed by BMI would still be covered by a blanket license via BMI's reciprocal agreements with SACEM.

The evidence Defendants will present in support of this license defense includes documentary evidence and business records from BMI and testimony from Al Joulani regarding venue licenses.

**M.**   **Thirteenth Defense:  Lack of Willfulness**

1.   Plaintiff bears the burden of demonstrating the Defendants acted willfully in allegedly infringing Plaintiff's copyright.  In order to meet this burden, Plaintiff must demonstrate that:

   a.   Defendants engaged in acts that infringed the copyright; and;

   b.   Defendants knew that those acts infringed the copyright.

<u>See</u> Ninth Circuit Manual of Model Jury Instructions – Civil, Copyright, Instruction No. 17.27 (Aug. 2015 ed.).

<u>Support</u>:  Even if Plaintiff could establish that any infringement occurred (which this Court previously ruled is not relevant), Plaintiff will be unable to establish that any such infringement was willful.  For any alleged infringement that occurred during the relevant time period (*i.e.*, after August 31, 2004), Defendants at all times reasonably believed they had a valid and appropriate license to use *Khosara* in *Big Pimpin'*.  Even if one looks prior to the statutory period (an exercise this Court previously agreed not to be relevant), the facts demonstrate that Defendants' conduct was hardly willful.  <u>See</u> Section II.B, *supra*.

**N.**   **Fourteenth Defense:  Failure to Comply with Statutory Requirements**

Plaintiff has not complied with his pre-suit registration requirements, and cannot recover statutory damages or attorneys' fees, as he did not register the composition in *Khosara* prior to the alleged infringement.

<u>See</u> <u>Dos Santos v. Telemundo Communs. Group, LLC</u>, 2012 U.S. Dist. LEXIS 189524, at *22 n.6 (C.D. Cal. Dec. 19, 2012)

**DEFENDANTS' JOINT MEMORANDUM OF CONTENTIONS OF FACT AND LAW**

Support:  Plaintiff's claims are barred in their entirety by his failure to register the composition copyright in *Khosara* prior to initiating this lawsuit, or otherwise by Plaintiff's failure to comply with other statutory requirements. Plaintiff is also barred from recovering statutory damages or attorneys' fees as a result of his failure to register the composition copyright in *Khosara* prior to the alleged infringement.

**O.   Sixteenth Defense:  Unclean Hands**

1.   Plaintiff violated conscience, good faith or other equitable principles in prior conduct or dirtied its hands in acquiring the right presently asserted; and

2.   The alleged misconduct by Plaintiff relates directly to the transaction concerning which the complaint is made.

See Dollar Sys., Inc. v. Avcar Leasing Sys., Inc., 890 F.2d 165, 173 (9th Cir. 1989).

Support:  The arguments in support of this defense are the same as those set forth in connection with Defendants' estoppel defense.  See Section V.J, *supra*.

**P.   Seventeenth Defense:  Good Faith**

1.   Defendants were not aware that their acts constituted infringement of Plaintiff's copyright; and

2.   Defendants had no reason to believe that their acts constituted an infringement of Plaintiff's copyright.

See Ninth Circuit Manual of Model Jury Instructions – Civil, Instruction No. 17.26 (Aug. 2015 ed.).

Support:  Even if Plaintiff could establish that any infringement occurred, any such infringed was innocent and done in good faith.  For any alleged infringement that occurred during the relevant time period (i.e., after August 31, 2004), Defendants at all times reasonably believed they had a valid and appropriate license to use *Khosara* in *Big Pimpin'*.  See Section II.B, *supra*.

**Q.**   **Eighteenth Defense**:  Lack of Originality

1.   In order to establish his copyright infringement claims, Plaintiff bears the burden of establishing that he is the owner of original works that were infringed by Defendants.  In order to qualify as an original part of *Khosara*, the part or parts must have been created:

   a.   Independently by *Khosara*'s author, that is, the author did not copy it from another work; and

   b.   by the use of at least some minimal creativity.

See Ninth Circuit Manual of Model Jury Instructions – Civil, Copyright, Instruction No. 17.12 (Aug. 2015 ed.).

Support:  This defense is based on the same facts and law as discussed in Section IV.C, *supra*, regarding Plaintiff's inability to establish that any protectable elements of *Khosara* were infringed by *Big Pimpin'*.

**R.**   **Nineteenth Defense**:  Lack of Protectability

1.   Only the parts of *Khosara* comprised of original works of authorship fixed in a tangible medium of expression from which it can be perceived, reproduced, or otherwise communicated, either directly or with the aid of a machine or device, is protected by the Copyright Act.

See Ninth Circuit Manual of Model Jury Instructions – Civil, Copyright, Instruction No. 17.02 (Aug. 2015 ed.).

Support:  This defense is based on the same facts and law as discussed in Section IV.C, *supra*, regarding Plaintiff's inability to establish that any protectable elements of *Khosara* were infringed by *Big Pimpin'*.

**S.**   **Twentieth Defense**:  Forfeiture by General Publication

1.   Plaintiff, or his predecessors-in-interest, forfeited his interest in the copyright to *Khosara* by publishing the work without proper notice of copyright.

Mitchell
Silberberg &
Knupp LLP

7022438.2

23

DEFENDANTS' JOINT MEMORANDUM OF CONTENTIONS OF FACT AND LAW

See Hadady Corp. v. Dean Witter Reynolds, Inc., 739 F. Supp. 1392, 1399 (C.D. Cal. 1990)

Support:  Plaintiff has no copyrighted interest in *Khosara* because Plaintiff, or his predecessors-in-interest, forfeited his interest in the copyright to *Khosara* by publishing the work without proper notice of copyright.

**T.     Twenty-First Defense:  Fair Use**

1.    Defendant's use of *Khosara* constitutes fair use under 17 U.S.C. § 107.  In determining whether the use made of *Khosara* was fair, the jury should consider the following factors:

   a.    the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes;

   b.    the nature of the copyrighted work;

   c.    the amount and substantiality of the portion used in relation to the copyrighted work as a whole;

   d.    the effect of the use upon the potential market for or value of the copyright work.

See Ninth Circuit Manual of Model Jury Instructions – Civil, Copyright, Instruction No. 17.18 (Aug. 2015 ed.).

Support:  Even if Plaintiff were to be able to establish any copying of protectable expression in *Khosara* that is owned by Plaintiff, his copyright infringement claims must fail because any alleged infringement constitutes fair use.  Any use of protectable expression from *Khosara* in *Big Pimpin'* is entirely transformative.

**U.     Twenty-Second Defense:  Not Copyrightable Expression**

1.    Only the parts of *Khosara* comprised of original works of authorship fixed in a tangible medium of expression from which it can be

**DEFENDANTS' JOINT MEMORANDUM OF CONTENTIONS OF FACT AND LAW**

1    perceived, reproduced, or otherwise communicated, either directly or

2    with the aid of a machine or device, is protected by the Copyright Act.

3    See Ninth Circuit Manual of Model Jury Instructions – Civil, Copyright,

4    Instruction No. 17.02 (Aug. 2015 ed.).

5    Support:  This defense is based on the same facts and law as discussed in

6    Section IV.C, *supra*, regarding Plaintiff's inability to establish that any protectable

7    elements of *Khosara* were infringed by *Big Pimpin'*.

8    **VI.   EVIDENTIARY ISSUES**

9    Pursuant to the Court's June 11, 2015, Order [Dkt. No. 523], on August 11,

10   2015, the parties will meet and confer to discuss potential evidentiary issues.

11   Thereafter, the parties will be filing any motions *in limine* with respect to such

12   issues by August 21, 2015.

13   **VII.  ISSUES OF LAW**

14   **A.   Burden of Proof**

15   Plaintiff bears the burden of proving infringement, which means that

16   Plaintiff bears the burden of establishing that (i) Plaintiff is the owner of a valid

17   copyright in the portion of *Khosara* that has allegedly been infringed; and (ii)

18   Defendants copied protected elements of Plaintiff's work.  See Brown Bag

19   Software v. Symantec Corp., 960 F.2d 1465, 1472 (9th Cir. 1992); Fleischer

20   Studios, Inc. v. A.V.E.L.A., Inc., 654 F.3d 958, 962 (9th Cir. 2011); Jim Marshall

21   Photography, LLC v. Varvatos, 2013 U.S. Dist. LEXIS 92471, at *29-30 (N.D.

22   Cal. June 28, 2013) ("Plaintiff must come forward with affirmative proof of legal

23   or beneficial ownership.").

24   It is therefore Plaintiff's burden to establish the following issues:

25   (1)  That Hamdy was the author of original, protectable elements of the

26   musical composition *Khosara*;

27   (2)  The exact compositional elements of *Khosara* that were authored by

28   Hamdy and used in *Big Pimpin'*  (i.e., the actual work at issue);

Mitchell
Silberberg &
Knupp LLP

7022438.2

25

**DEFENDANTS' JOINT MEMORANDUM OF CONTENTIONS OF FACT AND LAW**

(3)  That Plaintiff obtained ownership of the copyright in *Khosara* from Hamdy;

(4)  That Plaintiff did not transfer away his assertable economic rights to *Khosara* prior to the remaining statutory period at issue beginning August 31, 2004; and

(5)  That protectable elements of *Khosara* were copied in *Big Pimpin'*.

## B.    Issues of Egyptian Law

The trial in this action will involve a determination of a number of issues governed by Egyptian law.  Those issues are for the Court to determine, rather than the jury.  See FRCP 44.1

## C.    Damages

The Copyright Act provides for three potential measures of damages: (1) the net profits of the infringer that are attributable to the infringement; (2) any provable actual damages suffered by the plaintiff; and (3) statutory damages. 17 U.S.C. § 504.

### 1.    Statutory Damages

Plaintiff is not entitled to statutory damages or attorneys' fees because he failed to register his copyright interest.  17 U.S.C. § 412.  Even as a foreign work, timely registration of *Khosara* was required to recover statutory damages and attorneys' fees.  On the other hand, if Defendants prevail they can recover their substantial attorneys' fees.

### 2.    Actual Damages

"Actual damages are usually determined by the loss in the fair market value of the copyright, measured by the profits lost due to the infringement or by the value of the use of the copyrighted work to the infringer."  <u>Polar Bear Prods. v. Timex Corp.</u>, 384 F.3d 700, 708 (9th Cir. 2004)

**DEFENDANTS' JOINT MEMORANDUM OF CONTENTIONS OF FACT AND LAW**

### 3.    Net Profits

Plaintiff must initially demonstrate a causal nexus between the alleged infringing use and the claimed profits.  Mackie v. Reiser, 296 F.3d 909, 915-16 (9th Cir. 2002); Polar Bear Prods., 384 F.3d at 700.   "[R]egardless of whether profits are classified as direct or indirect, a party must first establish a 'causal nexus' between the infringement and the gross revenue before the burden shifts to the infringer to apportion the profits."[5]  Dkt. No. 309 at 11; Polar Bear, 384 F.3d at 711 & n.7 ; see also Ninth Circuit Manual of Model Jury Instructions – Civil Instruction No. 17.24.

If Defendants' profits are determined to be recoverable at all, only *net* profits in excess of any actual damages that are "attributable" to the alleged infringement are potentially recoverable.  The Plaintiff – as the purported copyright owner – bears the initial burden of proving the gross receipts realized by the Defendants and that the gross receipts are "attributable," *i.e.*, causally related, to the infringement.  See Polar Bear Prods., Inc., 384 F.3d at 711; Davis v. The Gap, Inc., 246 F.3d 152, 160 (2d Cir. 2001).

Only *if* Plaintiff is able to sustain his burden to establish a causal nexus with Defendants' gross revenues does the burden then shift to Defendants to apportion the profits attributable to the infringement and to deduct expenses.  17 U.S.C. § 504(b); Mackie, 296 F.3d at 915.  Where, as here, an infringer's profits so clearly derive from factors other than the infringement, an apportionment must be made.  Cream Records, Inc. v. Jos. Schlitz Brewing Co., 754 F.2d 826, 828-29 (9th Cir. 1985).  Defendants do not need to prove to a mathematical certainty the profits that are attributable to other factors – Defendants need only provide a rational division.  See Sheldon v. Metro-Goldwyn Pictures Corp., 309 U.S. 390, 408-09 (1940);

---

[5] Carter's concert and merchandise revenues are indirect profits, at best, and "[i]t is therefore particularly important for the plaintiff . . . to demonstrate the alleged causal link between the infringement and profits sought."  Polar Bear, 384 F.3d at 711 n. 7; Dkt. Nos. 284 & 299-1.

1  Frank Music Corp. v. Metro-Goldwyn-Mayer, Inc. ("Frank Music I"), 772 F.2d
2  505, 518 (9th Cir. 1985); Cream Records, 754 F.2d at 829; Data General Corp. v.
3  Grumman Systems Support Corp., 36 F.3d 1147, 1175 (1st Cir. 1994), abrogated
4  on other grounds by Reed Elsevier, Inc. v. Muchnick, 559 U.S. 154 (2010); Frank
5  Music Corp. v. Metro-Goldwyn-Mayer, Inc. ("Frank Music II"), 886 F.2d 1545,
6  1549 (9th Cir. 1989).

7        With regard to the commercial exploitation of actual products containing *Big*
8  *Pimpin'* (such as records and audiovisual works), Defendants' apportionment
9  expert will demonstrate that, the attribution of any profits to the inclusion of a
10 small portion of the *Khosara* musical composition would be minimal at best.  See
11 Sections IV.D-E, *supra*.

12       With respect to Jay Z's live concert performances, there is no non-
13 speculative nexus.  Courts have held that parties have failed to prove the requisite
14 causal nexus when (1) there is "no conceivable connection between the
15 infringement and the revenue stream"; and (2) although there may be a conceivable
16 connection between the infringement and the revenue stream, "the plaintiff failed
17 to offer anything more than mere speculation as to the existence of a causal
18 connection."  Bouchat v. Baltimore Ravens Football Club, Inc., 346 F.3d 514, 520
19 (4th Cir. 2003); see also Polar Bear, 384 F.3d at 711.  This is such a case.

20       Plaintiff plainly cannot establish that Carter's purportedly infringing
21 performances of *Khosara* had an effect on concert and merchandise profits.  See
22 Mackie, 296 F.3d at 915; see also Polar Bear, 384 F.3d at 711.  As discussed in
23 Section IV.E, *supra*, Plaintiff has only speculative and counterintuitive evidence
24 that does not demonstrate a causal nexus for those revenues.  As the purported
25 nexus is based on nothing more than a straw man, Plaintiff will not be entitled to
26 disgorge any of Defendants' profits.

27       Since, as described above, Defendant Carter can show that concert and
28 merchandise revenue are attributable almost entirely to factors other than the

infringement, even if the jury does find that Plaintiff has sustained his initial burden of establishing a causal nexus, Plaintiff is still not entitled to recover any such profits.  See Bouchat, 346 F.3d at 519.

Further, Defendants are entitled to deduct from gross receipts both (1) direct and indirect expenses, see Burns v. Imagine Films Entm't., Inc., 2001 U.S. Dist. LEXIS 24653, at *19 (W.D.N.Y. Aug. 23, 2001) ("defendants must be given some leeway in calculating indirect expenses"); and (2) overhead, see Kamar Int'l, Inc. v. Russ Berrie & Co., 752 F.2d 1326, 1333 (9th Cir. 1984).  Additionally, non-willful infringers may deduct income taxes and management fees paid on the infringing profits.  Three Boys Music Corp. v. Bolton, 212 F.3d 477, 488 (9th Cir. 2000).

Finally, under Petrella, this Court, not the jury, would make the final equitable determination whether Plaintiff is entitled to any share of Defendants profits at all.  Although laches is no longer a complete bar to a plaintiff's copyright claims, where the elements of laches have been established, as the Court here has already found, the award of profits is subject to equitable adjustment or – as Defendants submit is most appropriate here – outright elimination.

## VIII.  BIFURCATION OF ISSUES

Defendants seek bifurcation of trial, as set forth below.

### A.    The Liability and Damages Phase of Trial Should be Bifurcated

Federal Rule of Civil Procedure 42(b) grants courts the power, "[f]or convenience, to avoid prejudice, or to expedite or economize…to order a separate trial of one or more separate issues…."  Fed. R. Civ. P. 42(b).  Among those factors a court considers when determining whether to bifurcate a trial include: "avoiding prejudice, separability of the issues, convenience, judicial economy, and

1  reducing risk of confusion."[6]  "'Bifurcation' is most commonly used to separate

2  liability and damages issues."[7]

3      Liability and damages are completely separate issues in this case—there will

4  be no overlap between documents and witnesses on the two subjects, and the

5  outcome on liability may well render damages testimony moot.  The liability issues

6  will require consideration of evidence regarding, *inter alia*, (i) Plaintiff's alleged

7  ownership of the composition *Khosara* and the exact contours and limitations of

8  the scope of that copyright; (ii) Plaintiff's assignment of all economic rights in and

9  to the composition copyright in *Khosara* in 2002, and whether such assignments

10 bars Plaintiff's claims; (iii) whether Defendants obtained a valid license to use

11 *Khosara* in *Big Pimpin'*; (iv) whether any protectable elements of *Khosara* were

12 used in *Big Pimpin'*; and (vi) Defendants' other affirmative defenses, such as

13 laches and estoppel.

14      The damage issues, by contrast, will involve accounting and damages

15 witnesses, including experts who will be testifying about complicated financial

16 data and economic and accounting practices in the entertainment industry.  As

17 there are numerous Defendants in this action, the presentation of financial

18 information pertaining to Plaintiff's claimed damages will be extensive, with at

19 least seven separate fact witnesses expected to testify for the various Defendants as

20 to such information.  There will also be extensive testimony from multiple experts

21 on damages issues, including detailed and lengthy testimony on apportionment.

22 These experts include Jason King, Michael Kamins, and Sam Rubin.  Mr. King's

23 initial written expert opinion alone contains nearly 60 pages of single-spaced text.

24 The broad scope of damages testimony is further compounded by the fact that

25

26 ---

[6] See <u>Bates v. United Parcel Serv.</u>, 204 F.R.D. 440, 448 (N.D. Cal. 2001).

27 [7] William W. Schwarzer et al. Federal Civil Procedure Before Trial § 16:157 (The Rutter Group, Rev. #1 2012); <u>M2 Software, Inc. v. Madacy Entm't</u>, 421 F.3d 1073, 1088 (9th Cir. 2005) (affirming decision to bifurcate liability and damages); <u>Hopkins v. Dow Corning Corp.</u>, 33 F.3d 1116, 1119 (9th Cir. 1994) (same).

28

Mitchell
Silberberg &
Knupp LLP

7022438.2

30

**DEFENDANTS' JOINT MEMORANDUM OF CONTENTIONS OF FACT AND LAW**

Plaintiff has alleged disparate products (and disparate events) of infringement, with each requiring its own financial and apportionment analysis.  An analysis pertaining to concert revenues, including the threshold question of whether such revenues can be meaningfully attributed to *Big Pimpin'* in the first place, is much different than an analysis associated with album sales, which is in turn different than analyzing sales of a digital "single," or exploitation of a mash-up or movie.

In light of the entirely separate evidence that will be presented with respect to liability and damages, bifurcation does not create any risk of duplication.  On the contrary, bifurcation promotes judicial economy because the need for the time-consuming presentation of complex evidence on damage issues will be entirely unnecessary if Defendants prevail on liability issues.  Defendants estimate that the liability phase of the trial could be completed in less time than any damages phase.  This is precisely the reason that courts routinely bifurcate liability from damages for trial purposes, and why bifurcation is appropriate here.[8]

Finally, having damages tried at the same time as liability would be highly prejudicial to Defendants.  Indeed, Plaintiff has made it clear that they intend to "white board" the gross revenue of Jay Z's concerts over the past seven years, with the hope of implanting the jury with the idea of giving some of those revenues to Plaintiff.  Not surprisingly, the dollar numbers to which the jury will be exposed will be high.  It is not beyond human nature for jurors to be influenced by evidence of wealth when considering liability, and to give the benefit of the doubt to the so-called "little guy" in a manner that risks compromising the jury's fact-finding task.

---

[8] See, e.g., M2 Software, 421 F. 3d at 1078, 1088 (affirming order bifurcating trial of liability and damages in Lanham Act case for judicial economy, among other reasons); Apple Computer, Inc. v. Microsoft Corp., 821 F. Supp. 616, 630 (N.D. Cal. 1993), aff'd in relevant part 35 F.3d 1435 (9th Cir. 1994), cert. denied 513 U.S. 1184 (1995) (same).  See also 9A Charles A. Wright & Arthur Miller, Federal Practice and Procedure § 2390 (3rd ed. 2008) ("Moreover, the evidence pertinent to the two issues often is wholly unrelated and there is no efficiency in trying them together."); T.D.W. v. Riverside County, 2009 U.S. Dist. LEXIS 69189, at *27 (C.D. Cal. July 27, 2009) (Snyder, J.) (bifurcating punitive damages issues from liability issues "in order to prevent the need for the presentation of complex financial testimony if . . . damages are not awarded.").

1   Since there is no need to try damages and liability together, there is no

2   reason to create the risk of such prejudice.  That is particularly true where, as here,

3   there is no prejudice whatsoever to Plaintiff if liability is bifurcated from damages.

4   **B.**   **Plaintiff's Standing To Assert The Claims Remaining In this**

5   **Action Is A Threshold Dispositive That Should Be Decided First**

6   To further conserve judicial and party resources, the Court should also

7   initially determine the threshold question of whether Plaintiff has standing to assert

8   his remaining copyright infringement claims.  This is a critical threshold issue that

9   requires little in the way of evidence and testimony, and which could moot

10  Plaintiff's entire case.  Simply put, if Plaintiff lacks standing to assert a claim for

11  the remaining post-August 2004 period, all of his claims must fail.

12  It is well-recognized that bifurcation is appropriate where a single, simple

13  issue may be dispositive as to an entire case.[9]   Subsequent to this Court's initial

14  ruling on chain title of issues, in May 2011, the Court held that, due to the

15  operation of the Copyright Act's statute of limitations, "Plaintiff shall not be

16  permitted to seek damages from any alleged infringement occurring prior to

17  August 31, 2004."  Dkt. No. 309 at 16.  As a result, regardless of whether Plaintiff

18  may have had "standing" to assert claims for the period between 1999 and 2002,

19  Plaintiff's December 2002 Agreement has become dispositive on Plaintiff's

20  relevant rights and on his standing to assert any remaining claims (*i.e.*, those after

21  August 31, 2004).

22  In its Order dated May 27, 2015 [Dkt. No. 509], the Court held that the

23  effect of the 2002 Agreement on Plaintiff's right to bring the remaining claims in

24

25  [9] See Danjaq LLC v. Sony Corp., 263 F.3d 942, 961 (9th Cir. Cal. 2001) ("One favored purpose of bifurcation is to accomplish just what the district court sought

26  to do here -- avoiding a difficult question by first dealing with an easier, dispositive issue."); General Patent Corp. Int'l v. Hayes Microcomputer Prods., 1997 U.S.

27  Dist. LEXIS 21342, at*5-6 (C.D. Cal. Oct. 20, 1997) (in patent infringement action, bifurcating threshold issues of patent validity and enforceability as "[i]f the

28  patents are found invalid or unenforceable there will be no need to resolve the infringement and damages claims.").

this action could not be determined on the then-current record as a matter of law. Specifically, the Court found ambiguities in the translated 2002 Agreement regarding whether Plaintiff has transferred the full scope of his economic rights in and to *Khosara*.  The Court also expressly noted that there had not been any expert testimony presented regarding the meaning of the 2002 Agreement under controlling Egyptian law.

The parties have now conducted expert discovery concerning the meaning of the pertinent terms of the 2002 Agreement under Egyptian law.  The parties have conducted the depositions of two experts, Walid Abou Farhat and Mohamed-Hossam Loutfi, who have testified regarding the applicable law and the meaning of the 2002 Agreement, and in particular the meaning of the final clause of this agreement in its original Arabic *on which they do not disagree*.  *See* Section II.C & n.2, *supra*.  The testimony of these experts is all that is required for this Court to determine, now as a matter of law, the key issue of whether Plaintiff retains standing to pursue his remaining claims.  Defendants respectfully submit this matter should be briefed and submitted for determination prior to trial.

Once the Court applies foreign law to this issue, it will then be fully equipped to determine whether Plaintiff has standing to assert his claims.  Defendants submit he does not.  By deciding the issue of Plaintiff's standing first, the Court could well obviate the need for any trial whatsoever.

## IX.   JURY TRIAL

### A.   Issues Triable To The Jury

A timely demand for a jury trial has been made.  All issues other than those set forth below in Sections IX.B and IX.C are triable by jury.

### B.   Issues Triable to the Court

The following issues are triable to the Court:

1.    Defendants' equitable affirmative defenses, including laches and estoppel;

2.      The interpretation and application of foreign law (see FRCP 44.1);

3.      Contractual interpretation, where such interpretation does not turn on credibility determinations regarding extrinsic evidence (see Jefferson Pilot Life Ins. Co. v. Goold, 2005 U.S. Dist. LEXIS 45931, at *7-8 (C.D. Cal. Nov. 15, 2005).

### C.      Issues That Have Previously Been Decided By The Court

The following issues have already been properly determined by the Court during this litigation, and need not be revisited by either the Court or the jury:

1.      Plaintiff is time-barred from asserting any claim for infringement prior to August 31, 2004.  Dkt. No. 309 at 16.

2.      No claim for violation of "moral rights" exists under United States copyright law.  Dkt. No. 271 at 15-16 & n.8.

3.      The right to make derivative works or adaptations is an economic right under Egyptian copyright law, and is freely transferrable.  Id.

4.      The elements of Defendants' laches defense have been established. Dkt. No. 380 at 10-13; Dkt. No. 418 at 7-10.

5.      Any evidence of purported willfulness prior to the applicable statutory period is irrelevant.  Dkt. No. 386 at 3, 8.

## X.      ATTORNEYS' FEES

Defendants intend to seek attorney's fees as the prevailing party.  17 U.S.C. Sect. 505.  Plaintiff, however, cannot recover attorneys' fees in any event, as he did not register the composition in *Khosara* prior to the alleged infringement.  See Dos Santos v. Telemundo Communs. Group, LLC, 2012 U.S. Dist. LEXIS 189524, at *22 n.6 (C.D. Cal. Dec. 19, 2012) ("The Berne Convention is not self-executing and does not supersede the requirement that even foreign works be registered in order to be eligible for statutory damages and attorneys' fees.").

# XI.    ABANDONMENT OF ISSUES

Defendants do not intend to pursue certain affirmative defenses not identified above in Section V.

DATED: August 10, 2015          MITCHELL SILBERBERG & KNUPP LLP


By:/s/David A. Steinberg
Christine Lepera
Russell J. Frackman
David A. Steinberg
Bradley J. Mullins
Attorneys for Various Defendants

DATED: August 10, 2015          JENNER & BLOCK LLP


By:/s/Daniel Rozansky
Andrew H. Bart
Daniel Rozansky
Attorneys for Defendant Shawn Carter (pka Jay Z)

RUSSELL J. FRACKMAN (SBN 49087)
  rjf@msk.com
DAVID A. STEINBERG (SBN 130593)
  das@msk.com
BRADLEY J. MULLINS (SBN 274219)
  bym@msk.com
MITCHELL SILBERBERG & KNUPP LLP
11377 West Olympic Boulevard
Los Angeles, CA  90064-1683
Telephone: (310) 312-2000
Facsimile: (310) 312-3100

CHRISTINE LEPERA (CL 9311)
  ctl@msk.com
MITCHELL SILBERBERG & KNUPP LLP
12 East 49th Street, 30th Floor
New York, New York 10017-1028
Telephone: (212) 509-3900
Facsimile: (212) 509-7239

*Attorneys for Various Defendants*

DEFENDANTS' JOINT MEMORANDUM OF CONTENTIONS OF FACT AND LAW

1   DANIEL A. ROZANSKY (SBN 161647)
    drozansky@jenner.com
2   JENNER & BLOCK LLP
3   633 West 5th Street, Suite 3600
   Los Angeles, California 90071
4   Telephone: (213) 239-5100
   Facsimile: (213) 239-5199
5

6   ANDREW H. BART (Pro Hac Vice)
    abart@jenner.com
7   JENNER & BLOCK LLP
   919 Third Avenue
8   New York, NY 10022
   Telephone: (212) 891-1600
9   Facsimile: (212) 891-1699

10

11   *Attorneys for Defendant SHAWN CARTER
(pka Jay Z)*

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Mitchell
Silberberg &
Knupp LLP

7022438.2

36
**DEFENDANTS' JOINT MEMORANDUM OF CONTENTIONS OF FACT AND LAW**