ANDREW H. BART (Pro Hac Vice)
  abart@jenner.com
DANIEL A. ROZANSKY (SBN 161647)
  drozansky@jenner.com
JENNER & BLOCK LLP
633 West 5th Street, Suite 3600
Los Angeles, California 90071
Telephone: (213) 239-5100
Facsimile: (213) 239-5199

Attorneys for Defendant SHAWN CARTER (pka Jay Z)

CHRISTINE LEPERA (Pro Hac Vice)
  ctl@msk.com
DAVID A. STEINBERG (SBN 130593)
  das@msk.com
MITCHELL SILBERBERG & KNUPP LLP
11377 West Olympic Boulevard
Los Angeles, CA 90064-1683
Telephone: (310) 312-2000

Attorneys for all other Defendants

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Osama Ahmed Fahmy, an individual, | Case No. 2:07-cv-05715 CAS (PJWx) |
| Plaintiff, | The Honorable Christina A. Snyder |
| v. | **DEFENDANTS' BRIEF RE: HIGHLY CONFIDENTIAL LIVE NATION AGREEMENT (EXHIBIT 290)** |
| Jay Z (aka Shawn Carter), Timothy Mosely, Kyambo Joshua, Bob Bourdon, Brad Delson, Mike Shinoda, Dave Farrell, Joseph Hahn, Chester Bennington, Big Bad Mr. Hahn Music, Chesterchaz Publishing, EMI Blackwood Music, Inc., EMI Music Publishing Ltd., Kenji Kobayashi Music, Lil Lulu Publishing, Machine Shop Recordings, LLC, Marcy Projects Productions II, Inc., MTV Networks Enterprises Inc., Nondisclosure Agreement Music, Paramount Home Entertainment, Inc., Paramount Pictures Corporation, Radical Media, Rob Bourdon Music, Roc-A-Fella Records, LLC, Timbaland Productions, Inc., UMG Recordings, Inc., Universal Music and Video Distribution, Inc., and Warner Music Inc., | Complaint filed: Aug. 31, 2007<br>Discovery Cutoff: Nov. 28, 2014<br>Current Trial Date: Oct. 13, 2015 |
| Defendants. | |

## MEMORANDUM OF POINTS AND AUTHORITIES

In the Pre-Trial Order, Plaintiff identified the Global Rights Agreement between Live Nation Entertainment, Inc. and Defendant Shawn Carter, and several amendments thereto (collectively, the "Live Nation Agreement," Exhibit 290) as a trial exhibit. *See* Decl. of Daniel A. Rozansky ("Rozansky Decl."), ¶ 2. Plaintiff, however, has been unable to articulate how this exhibit is relevant to any issue being tried or how he plans to use the document at trial. The reason for Plaintiff's inability to provide this explanation is clear – the Live Nation Agreement is wholly irrelevant to any issue in this case.

The Live Nation Agreement contains extraordinarily sensitive business information regarding the terms of Mr. Carter's business relationship with Live Nation. While it provides the formula governing how Mr. Carter is to be compensated for concerts, Defendants have produced spreadsheets detailing the *actual* revenue Mr. Carter generated from relevant concerts, which have been verified under oath by Mr. Carter. *See* Rozansky Decl., ¶ 3. These spreadsheets and discovery responses, not the Live Nation Agreement, are the relevant documents for Plaintiff's damages case (if he prevails in the liability phase of trial). Indeed, if there is a damages phase, Carter has agreed to stipulate to the accuracy and admissibility of these documents. *See id.*

Both Live Nation and Mr. Carter take great pains to maintain the confidentiality of the Live Nation Agreement. Indeed, Live Nation significantly limits its employees' access to the document. The Live Nation Agreement is so sensitive that when Mr. Carter produced the agreement to Plaintiff's counsel, it was not produced to co-defendants or their counsel. Given that the Live Nation Agreement is irrelevant and contains trade secrets, and that all of Jay Z's relevant concert revenues are set forth in verified interrogatory responses, Defendants respectfully request that this Court exclude the Live Nation Agreement from

evidence.

## I. The Live Nation Agreement Is Irrelevant.

"Only relevant evidence, defined as 'evidence having any tendency to make any fact . . . of consequence to the determination of the action more probable or less probable than it would be without the evidence,' is admissible in federal court." *Boyd v. City & County of San Francisco*, 576 F.3d 938, 943 (9th Cir. 2009) (quoting Fed. R. Evid. 401 & 402). There is no good faith dispute that the Live Nation Agreement is irrelevant to the liability phase.[1]

As to the damages phase, while the Live Nation Agreement defines the terms of Mr. Carter's business relationship with Live Nation – including the formula used to determine the amount of concert revenues he would receive – it does not set forth the amount of revenue Carter actually earned from concerts.[2] The money Mr. Carter earned from those concerts is instead quantified in verified discovery responses. *See* Rozansky Decl., ¶ 3. These discovery responses include up-to-date spreadsheets compiled by Live Nation that detail the amount of revenue generated at concerts and paid to Mr. Carter. *See id.*

There is no genuine dispute as to the accuracy of these spreadsheets: Mr. Carter has sworn to their accuracy, Defendants have agreed to stipulate to their authenticity and admissibility in the damages phase, and Plaintiff's damages expert, Dr. Patrick Kennedy, relied on those spreadsheets in formulating his opinion regarding the total amount of damages in controversy. *See id.* ¶¶ 3-4.

---

[1] The terms of Mr. Carter's agreement with Live Nation – which was negotiated in 2008 – has no conceivable bearing on the question of whether the 1999 single *Big Pimpin'* infringed Plaintiff's alleged copyright in *Khosara Khosara*. Indeed, Plaintiff's counsel does not dispute this point. *See* Rozansky Decl., ¶ 7.

[2] As the Court previously recognized, there are two relevant questions in the damages phase: (1) whether there is a "causal nexus" between the infringement and Defendants' gross revenues; and (2), if so, what amount of that revenue is attributable to the infringement. ECF No. 309 at 11; *see generally Mackie v. Reiser*, 296 F.3d 909, 914-16 (9th Cir. 2002). Even if the *amount* of Carter's revenue is relevant, the *formula* whereby Carter is compensated for concerts is not relevant to either inquiry.

1  Importantly, Dr. Kennedy never alleged any inaccuracies in the numbers set forth
2  therein. *See id.* ¶ 4. Thus, these verified discovery responses provide Plaintiff
3  with the total amount of concert revenue paid to Jay Z. The Live Nation
4  agreement adds nothing that would help the trier of fact understand this
5  information. *See United States v. Kinchen*, 729 F.3d 466, 473 (5th Cir. 2013)
6  (citing Fed. R. Evid. 403).
7        Pursuant to the Court's instruction at the Final Pretrial Conference, Mr.
8  Carter's counsel met and conferred with Plaintiff's counsel about the need to
9  introduce the Live Nation Agreement at trial. Mr. Carter's counsel explained that
10 the Live Nation Agreement was irrelevant. First, it had no conceivable bearing on
11 liability. Second, it was not relevant in any damages trial since the agreement did
12 not identify the concert revenue received by Mr. Carter. Rather, that information
13 was provided in Mr. Carter's verified discovery responses. Rozansky Decl., ¶ 6.
14       Plaintiff's counsel could not articulate why the Live Nation Agreement was
15 relevant or what it would add to the information about concert revenues disclosed
16 in those discovery responses.[3] *Id.* ¶ 7. Instead, he admitted that Plaintiff had no
17 specific plans to use the Live Nation Agreement at trial but stated that he did not
18 want to foreclose its use for impeachment or as rebuttal evidence. *Id.* Plaintiff's
19 inability to identify the relevance of the Live Nation Agreement this close to trial
20 highlights that there is no legitimate reason for its use at trial.
21 **II. The Live Nation Agreement Is Highly Confidential.**
22       While the starting point is always relevance, any attempt to introduce the

---

[3] Even if the Live Nation Agreement contains the formula that determined Carter's compensation, no witness designated in this action could read the document and extrapolate the amount Carter actually earned. Nor has Plaintiff designated any witness who can intelligibly interpret and testify about the contents of the Live Nation Agreement. Indeed, Dr. Kennedy did not consider the Live Nation Agreement in reaching his opinion; instead, he relied on the spreadsheets provided in Mr. Carter's verified discovery responses. *See* Rozansky Decl., ¶ 4. Dr. Kennedy cannot now state opinions and rely on materials not set forth in his report. *See* Fed. R. Civ. P. 37(c); *Carson Harbor Vill., Ltd. v. Unocal Corp.*, No. 96-3281, 2003 WL 22038700, at *2 (C.D. Cal. Aug. 8, 2003).

Live Nation Agreement into evidence is particularly inappropriate because it is an extraordinarily confidential document. Many courts have emphasized that exhibits of this sort – i.e. documents that contain trade secrets or other "sources of business information that might harm a litigant's competitive standing" – merit special attention so that sensitive financial information is not inadvertently disclosed.[4] *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 599 (1978); *see also Kamakana v. City & County of Honolulu*, 447 F.3d 1172, 1179 (9th Cir. 2006).

The Live Nation Agreement is a highly confidential agreement reflecting years of negotiations between Carter and Live Nation. *See* Rozansky Decl., ¶ 5; Decl. of Omar Al-Joulani (ECF No. 502-2), ¶¶ 2-3. It is over eighty pages long and sets forth in detail the terms of Mr. Carter's business relationship with Live Nation – most of which have no conceivable relation to this case. Its disclosure would severely undermine Live Nation's ability to negotiate deals with new artists, as it would significantly change the artists' bargaining position if they knew the formula Live Nation uses to compensate Mr. Carter. *Id.* ¶ 4. It would similarly compromise Mr. Carter's bargaining power in the future. *Id.* Live Nation treats the details of its agreement with Mr. Carter like the formula for Coca-Cola: it is so sensitive that Live Nation shields it from its own employees. *Id.*

Both Live Nation and Mr. Carter would be "irreparably damaged" by the disclosure of the Live Nation Agreement in open court. *In re Elec. Arts, Inc.*, 298 F. App'x at 570. Given its lack of relevance, the availability of probative evidence on the subject of concert revenues and the consequences of disclosing this

---

[4] The Live Nation Agreement – which contains royalty rates, licensing arrangements, and other confidential financial information – is precisely the sort of trial exhibit the Ninth Circuit has held should not be disclosed to the public. *See In re Elec. Arts, Inc.*, 298 F. App'x 568, 569-70 (9th Cir. 2008); *see also Apple Inc. v. Samsung Elecs. Co.*, 727 F.3d 1214 (Fed. Cir. 2013) (applying Ninth Circuit law). Indeed, because the Live Nation Agreement is irrelevant and inadmissible, the public interest in that information is *de minimis*. *Apple*, 727 F.3d at 1222-23. And even if it were admissible – which it is not – the Live Nation Agreement should not be made public for the reasons set forth above. *See id.* at 1225-26.

document to the public, the Court should not admit the Live Nation Agreement.[5]

## CONCLUSION

For the foregoing reasons, this Court should exclude the Live Nation Agreement from being used at trial.

Dated: September 21, 2015     JENNER & BLOCK LLP

By: s/ Andrew H. Bart
    Andrew H. Bart

Attorneys for Defendant
SHAWN CARTER (pka Jay Z)

Dated: September 21, 2015     MITCHELL SILBERBERG & KNUPP LLP

By: s/ Christine Lepera
    Christine Lepera
    Russell J. Frackman
    David A. Steinberg
    Bradley J. Mullins

Attorneys for VARIOUS DEFENDANTS

///
///
///
///
///
///

---

[5] Given its manifest lack of relevance and the extraordinary steps taken to maintain the confidentiality of the Live Nation Agreement, Defendants believe that discussions about procedures for using this document at trial – e.g., sealing, closing the courtroom, or turning the monitors away from the gallery – are premature. Nonetheless, Defendants are prepared to discuss such procedures if the Court deems it appropriate.

# ATTESTATION OF FILER

Pursuant to Local Rule 5-4.3.4, I attest that all other signatories listed, and on whose behalf this filing is submitted, concur in the filing's content and have authorized the filing.

Dated: September 21, 2015         JENNER & BLOCK LLP

By: s/ Andrew H. Bart
Andrew H. Bart

Attorneys for Defendant
SHAWN CARTER (pka Jay Z)