UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**   'O'

| Case No. | 2:07-cv-05715-CAS(PJWx) | Date | September 24, 2015 |
|---|---|---|---|
| Title | OSAMA AHMED FAHMY V. JAY Z, ET AL. | | |

| Present: The Honorable | CHRISTINA A. SNYDER | |
|---|---|---|
| Catherine Jeang | Not Present | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| Not Present | Not Present |

**Proceedings:**      (IN CHAMBERS) - MOTIONS *IN LIMINE*

DEFENDANTS' REQUEST TO BIFURCATE TRIAL

## I.    INTRODUCTION

On August 31, 2007, plaintiff Osama Ahmed Fahmy ("plaintiff") filed suit against defendants Jay-Z, (aka Shawn Carter) ("Jay-Z"), Timothy Mosley ("Mosley"), Kyambo Joshua, Rob Bourdon, Brad Delson, Mike Shinoda, Dave Farrell, Joseph Hahn, Chester Bennington, Big Bad Mr. Hahn Music, Chesterchaz Publishing, EMI Blackwood Music Inc., EMI Publishing Ltd., Kenji Kobayashi Music, Lil Lulu Publishing, Machine Shop Recordings LLC, Marcy Projects Productions II, MTV Networks Enterprises Inc., Nondisclosure Agreement Music, Paramount Home Entertainment Inc., Paramount Pictures Corporation, Radical Media, Rob Bourdon Music, Roc-A-Fella Records LLC, Timbaland Productions Inc., UMG Recordings Inc., Universal Music and Video Distribution Inc., and Warner Music Inc. (collectively "defendants"), alleging various claims of copyright infringement.  The gravamen of plaintiff's claims is that defendants' song *Big Pimpin'* ("*Big Pimpin'*") infringes plaintiff's rights in the song *Khosara, Khosara* ("*Khosara*").

A trial in this matter is currently scheduled to begin on October 13, 2015.  The Court held a hearing on September 16, 2015.  Having carefully considered the parties' arguments, the Court finds and concludes as follows.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| CIVIL MINUTES - GENERAL | | | 'O' |
|---|---|---|---|
| Case No. | 2:07-cv-05715-CAS(PJWx) | Date | September 24, 2015 |
| Title | OSAMA AHMED FAHMY V. JAY Z, ET AL. | | |

## II.   PLAINTIFF'S MOTIONS *IN LIMINE*

### A.   Plaintiff's Motion *in limine* No. 1

Plaintiff seeks to exclude the testimony of defendants' expert witness Jason King ("King") regarding the impact of various factors, including *Khosara*, to the commercial success of *Big Pimpin'* and other albums, films, and performances of Jay-Z. Pl.'s Mot. in Lim. No. 1. Plaintiff contends that King's conclusions are the product of unreliable methods and are not based on sufficient facts or data. Id. at 1. In addition, plaintiff seeks to exclude King as a rebuttal witness for plaintiff's expert witnesses Michael Kamins ("Kamins"), Sam Rubin ("Rubin"), and Judith Finell ("Finell"). Id. at 2.

Under Federal Rule of Evidence 702, a trial judge acts as a "gatekeeper" to insure that expert testimony "is not only relevant, but reliable." Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 589 (1993). A trial judge executes this "gatekeeper" role regardless of whether expert testimony is scientific or non-scientific, with the purpose of ensuring that "an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." Kumho Tire Co., v. Carmichael, 526 U.S. 137, 152 (1999).

The Supreme Court in Daubert enumerated a list of factors useful for evaluating the reliability of an expert. These factors include: (1) whether the theory or technique can be (and has been) tested, (2) whether the theory or technique has been subjected to peer review and publication, (3) whether there is a known or potential error rate, and (4) whether the theory or technique is generally accepted in the relevant community. Daubert, 509 U.S. at 587-89. When an expert's testimony is not scientific or technical, the reliability of that testimony need not be based on "a particular methodology or technical framework," but instead can be found reliable based on the expert's knowledge and experience alone. Hangarter v. Provident Life & Acc. Ins. Co., 373 F.3d 998, 1018 (9th Cir. 2004).

In addition to evaluating an expert's reliability, a trial court must also determine whether an expert has "appropriate qualifications – i.e., some special knowledge, skill, experience, training or education." United States v. Hankey, 203 F.3d 1160, 1168 (9th

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**          **'O'**

| Case No. | 2:07-cv-05715-CAS(PJWx) | Date | September 24, 2015 |
|----------|-------------------------|------|--------------------|
| Title | OSAMA AHMED FAHMY V. JAY Z, ET AL. | | |

Cir. 2000). "Rule 702 contemplates a broad conception of expert qualifications." Hangarter, 373 F.3d at 1015.

### 1.    King's testimony regarding the contributions of various factors to Jay-Z's success

King is an associate professor at the Clive Davis Institute of Recorded Music at New York University. Dkt. 561-1, Ex. A ("King Report"), at 6. As a professor at the Clive Davis Institute, King has helped to establish a curriculum focusing on the study of hip-hop music and the recording industry. Id. He has taught courses on the labeling and branding of celebrities, including a course focused specifically on the music and cultural significance of Jay-Z. Id. at 6-7. He has also worked and consulted with numerous individuals and companies in the music recording industry including Spotify and Russell Simmons. Id. Ex. A, at 4-5. Based on this experience, King claims to have specialized knowledge regarding the historical, cultural, and social aspects of popular music, celebrity, and stardom. Id. at 6. He also claims to have expertise in the business of marketing and branding, particularly as it relates to music. Id.

Defendants intend to present King's testimony regarding the various factors that have contributed to the commercial success of Jay-Z and his music, including *Big Pimpin'*. Opp. to Mot. in Lim. No. 1, at 3-4. In his expert report, King asserts that it is possible to deconstruct the factors that contributed to the success of a particular song or sound recording. King Report, at 12-13. Specifically, King reviews evidence of marketing campaigns, chart successes, and historical and journalistic discussions of a sound recording. Id. at 13. From this evidence, King is able to place the work in a "larger context" from which he can identify and prioritize the factors that contributed to the work's success. Id.

Applying this method to *Big Pimpin'*, King identifies six factors that drove the success of the song and prioritizes them as either primary, secondary, or tertiary factors. Id. at 32. For example, King determined that the primary factor which drove the success of *Big Pimpin'* was the song's lyrics. Id. at 24. Specifically, King explains in his expert report that the release of *Big Pimpin'* coincided with the emergence of certain lifestyle movements, such as "pimp chic" and "corporate rap" as well as the entrance of various terms and phrases such as "ghetto fabulousness" and "bling," into the popular lexicon. Id. at 24-25. King asserts that *Big Pimpin'* was an anthem in relation to these trends and

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**                    'O'

| Case No. | 2:07-cv-05715-CAS(PJWx) | Date | September 24, 2015 |
|---|---|---|---|
| Title | OSAMA AHMED FAHMY V. JAY Z, ET AL. | | |

drew success largely based on its ability to connect with these popular movements of the late 1990's and early 2000's.  Id.  Accordingly, King concludes that lyrics were the most significant factor contributing to *Big Pimpin*'s success.  Id. at 24.  By contrast, while King admits that defendants' use of *Khosara* contributed to the success of *Big Pimpin*', he concludes that "in consideration of the other more pressing primary and secondary factors [*Khosara*] is only a tertiary factor."  Id. at 32.

King then assigns a percentage range to each factor which he asserts represents his professional opinion of the extent to which the success of *Big Pimpin*' can be apportioned to that factor.  Id.  For example, he states that the primary factor, lyrics, contributed 40-60% to the success of *Big Pimpin*', whereas the tertiary factor, *Khosara*, contributed only 1-5% to the success of *Big Pimpin*'.  Id.

Finally, King applies this analysis to various other products, such as albums, movies, and performances in which *Big Pimpin*' was featured.  Id. at 34-59.  For each of these products, King performed a similar factor-based analysis to determine the extent to which *Big Pimpin*' contributed to the overall success of the product and to assign a percentage range reflecting that contribution.  Id.  King then multiplied that percentage range by the 1-5% range that he determined represents *Khosara*'s contribution to *Big Pimpin*'.  Id.  Based on these calculations, King claims that he has been able to estimate the impact of defendants' use of *Khosara* on each of the products analyzed.  Id.  For example, he estimates that use of Khosara contributed between .004% and .03% to defendants' total concert revenues, id. at 59, and between .0071% and .0714% to the success of the album *Jay-Z: The Hits Collection, Volume One*, id. at 50.

As a preliminary matter, the Court finds that King is qualified to testify regarding cultural and social factors that contribute to the success of musicians and their songs. The Court also finds that, King is qualified to engage in a comparative discussion of these factors, including a discussion of the relative influence of defendants' use of *Khosara* in comparison to other factors contributing to *Big Pimpin*'s success.  As explained above, King has extensive academic and professional credentials with regard to the music industry and the convergence of pop culture and hip-hop music.  Furthermore, his research has focused on how artists label and brand themselves to appeal to commercial audiences, and he has specific knowledge about Jay-Z's career and music.  Based on his experience and scholarship, King bears the necessary qualifications to engage in the type of comparative discussion set forth in his expert report.  See also Ty, Inc. v. Publications

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**          **'O'**

| Case No. | 2:07-cv-05715-CAS(PJWx) | Date | September 24, 2015 |
|---|---|---|---|
| Title | OSAMA AHMED FAHMY V. JAY Z, ET AL. | | |

Int'l Ltd., 2004 WL 2359250, at *6 (N.D. Ill. Oct. 19, 2004) ("[A]n expert informed by observation and experience might determine the relative importance of the infringing content to the value of the infringing work as a whole.").

Moreover, the Court finds that King's basic methodology for evaluating the relative importance of various factors to the success of *Big Pimpin'* may be considered by the jury. King's opinion is informed by a lengthy and detailed analysis of relevant sources such as chart successes, marketing materials, and journalistic and historical evidence of defendants' and *Big Pimpin'*'s success. And King's methodology stems from the apparently reasonable assumption that the success of a given work of music can best be understood within its cultural and historical context. Accordingly, the Court finds that King's qualitative analysis, which is based on his demonstrated expertise, may be helpful to the factfinder in determining the relative importance of *Khosara* to the success of *Big Pimpin'*. See Daubert, 509 U.S. at 597 (Expert testimony may be admissible if it "rests on a reliable foundation and is relevant to the task at hand.").

Notwithstanding the foregoing, King's use of precise percentage ranges to quantify the importance of factors he deems relevant does not appear to be supported by any objective methods of reliable calculation. Applying the factors enumerated in Daubert, the Court finds that King's methodology for assigning percentages to the factors in his report is not sufficiently reliable to pass muster under Rule 702 and Daubert.

First, King has identified no means for testing his method of calculating percentage ranges. His report does not explain how numbers were calculated and when asked in his deposition whether someone could replicate his analysis, he responded: "I cannot speculate on that." Dkt. 561-1, Ex. B, ("King deposition"), at 176:19-23; See also Id. at 179:9-14 ("I would *hope* that if [another expert] had my expertise they would come up with a number that's inside that range or that's similar to that range.") (emphasis added).

Second, King's method has not been peer-reviewed by any journal nor has he established that it is generally accepted in the relevant field. King himself was unable to identify other academics or experts who have attempted to quantify the factors he identifies, let alone with the specificity contained in his report. See Id. at 158:11-14. Defendants contend that the underlying factors King considered, such as celebrity and star power, are widely recognized as relevant factors that influence the sale of music and concert tickets. Opp. to Pl.'s Mot. in Lim. No. 1, at 10. However, while defendants may

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**                    **'O'**

| Case No. | 2:07-cv-05715-CAS(PJWx) | Date | September 24, 2015 |
|---|---|---|---|
| Title | OSAMA AHMED FAHMY V. JAY Z, ET AL. | | |

be correct regarding the general use of these factors, they have provided no evidence that quantifying these factors to the extent King attempts in his report is a generally accepted practice in any field. Further, defendants do not deny that King's method has never been published in any peer-reviewed journal. See Id. at 9-10. By contrast, King has practiced his qualitative methodology for many years as a professor and with his assistance, the Clive Davis Institute has developed an entire curriculum related to the qualitative factors King will testify about. See King report, at 6-9.

Finally, with regard to the "rate of error" factor, King stated throughout his deposition that "while he was quite confident about the percentages," his methodology could not be evaluated on a strictly mathematical basis. King deposition, at 133:7-134:15; See also Id. at 180:10-11 ("It's not a strict numerical statistics exercise."). Accordingly, King's quantitative analysis satisfies none of the Daubert factors. See also CSL, L.L.C. v. Imperial Building Products, Inc., 2006 WL 67891, at *1 (9th Cir. 2006) (affirming exclusion of expert testimony where district court relied on "the absence of peer review, the lack of general acceptance in the scientific community, and the absence of a known rate of error").

Furthermore, the Court finds that King's use of percentages may mislead and confuse the jury. Defendants assert that King's use of percentages is merely intended to illustrate his analysis. Opp. to Pl.'s Mot. in Lim No. 1, at 2. However his expert report reads differently. For example, King's report states that Khosara could have "contributed at most to…between .004% and .03% of total concert revenues." King Report, at 59 (emphasis added). Rather than providing merely an estimate of Khosara's influence, as defendants suggest, King's opinion is phrased as an absolute ceiling on the amount of concert revenues that can reasonably be apportioned to Khosara. King's other apportionments are phrased similarly.

Additionally, given the complexity of apportioning profits in a copyright infringement case, it may be misleading to present the jury with numbers as remarkably precise as those in King's report. See also Sheldon v. Metro-Goldwyn Pictures, Corp., 309 U.S. 390, 408 (1940) (In an apportionment analysis "what is required is not mathematical exactness but only a reasonable approximation."). Indeed, King himself has acknowledged that his percentages cannot be treated as precise calculations. See, e.g., King Deposition at 127:20-21 ("So, it's not a numbers game for me in terms of decimal points and so on."). However, presenting testimony with the degree of precision

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**            **'O'**

| Case No. | 2:07-cv-05715-CAS(PJWx) | Date | September 24, 2015 |
|---|---|---|---|
| Title | OSAMA AHMED FAHMY V. JAY Z, ET AL. | | |

contained in King's report carries a substantial risk that the jury will attach undue weight to the numbers provided, even if they are ostensibly characterized to be only an illustration. This risk is particularly high in copyright infringement cases given the high degree of uncertainly involved in apportionment analyses. Melville B. Nimmer, Nimmer on Copyright §14.03[D][1] ("One of the most difficult problems in the computation of profits for which the defendant is liable [for infringement] arises when the infringing work inextricably intermingles non-infringing material with the plaintiff's protectable material.").

Accordingly, defendants may present King's testimony regarding the factors that contribute to the success of musicians and their music, as well as the relative importance of these factors. However, King may not testify regarding the percentage values by which he quantifies these factors. In accordance with the foregoing, plaintiff's motion is GRANTED in part and DENIED in part.

## 2.    King's rebuttal testimony

Plaintiff also seeks to preclude King from testifying in rebuttal against Plaintiff's experts Rubin, Finell, and Kamins. Pl.'s Mot. in Lim. No. 1, at 2. Plaintiff argues that King is not qualified to critique the methodologies and qualifications of these witnesses. Id.

As a preliminary matter, the Court has granted defendant's motion to exclude the testimony of Rubin. Accordingly, plaintiff's motion is moot to the extent it seeks to exclude rebuttal regarding Rubin's testimony.

Next, plaintiff argues that King is not qualified to critique Finell's opinions because he is not a musicologist. Id. at 13. However, King does not intend to testify regarding musicology. Opp. to Pl.'s Mot. in Lim. No. 1, at 12. Rather, applying a similar qualitative analysis to that described in his expert report, King will critique Finell's opinions regarding the musical elements of Big Pimpin' which contributed to its commercial success. Id. at 12-13. This analysis is based not on musicology, but King's background in hip-hop music. As already stated, King is qualified to offer testimony of this kind.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**          **'O'**

| Case No. | 2:07-cv-05715-CAS(PJWx) | Date | September 24, 2015 |
|---|---|---|---|
| Title | OSAMA AHMED FAHMY V. JAY Z, ET AL. | | |

Similarly, plaintiff contends that King is not qualified to critique Kamins' use of consumer surveys. Pl.'s Mot. in Lim. No. 1, at 12. Plaintiff argues that King has never conducted a consumer survey and has no specialized knowledge on consumer surveys. Id. King intends to testify that the list of songs Kamins tested in his survey ignored many of Jay-Z's most significant hits and was therefore unrepresentative of Jay-Z's body of work. Opp. to Mot. in Lim. No. 1, at 13. In addition, King will critique Kamins' conclusions for failing to consider other factors, such as celebrity and star power, which King believes contributed more to the success of Jay-Z's concerts than the individual songs performed. Id. at 14. Finally, King will critique some of the questions Kamins asked, such as whether survey respondents would be "less likely" to attend a Jay-Z concert had they known particular songs would not be performed. Id. King believes questions of this type may overstate the influence of songs on concert attendance. Dkt. 561, Ex. C, ("King Rebuttal Report"), at 8. As explained above, King has extensive knowledge of the music industry, and Jay-Z specifically, and much of his research has centered on the influence of the various factors that contribute to the commercial success of musicians. The testimony King intends to offer in rebuttal to Kamins' testimony relies on this expertise, not knowledge of consumer surveys. Accordingly, he is qualified to testify regarding these concerns with Kamins' survey.

In accordance with the foregoing, plaintiff's motion to exclude King's rebuttal testimony is DENIED.

**B.   Plaintiff's Motion *in limine* No. 2**

Plaintiff seeks to exclude certain testimony of defendants' expert witness, Lawrence Ferrara ("Ferrara") on the grounds that the testimony relies on evidence that was not timely disclosed. Pl.'s Mot. in Lim. No. 2, at 1. Specifically, plaintiff seeks to exclude testimony regarding three pieces of alleged prior art that plaintiff asserts were first disclosed during the final minutes of Ferrara's deposition. Id.

Pursuant to Federal Rule of Civil Procedure 26(a)(2)(B), an expert witness who intends to testify at trial must provide a written report to the other parties summarizing their expected trial testimony. This report must contain, among other information, (1) "a complete statement of all opinions the witnesses will express and the basis and reasons for them" and (2) "the facts or data considered by the witness in forming them." Fed. R. Civ. P. 26(a)(2)(B)(i)-(ii). "If a party fails to provide information or identify a witness as

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**          **'O'**

| Case No. | 2:07-cv-05715-CAS(PJWx) | Date | September 24, 2015 |
|---|---|---|---|
| Title | OSAMA AHMED FAHMY V. JAY Z, ET AL. | | |

required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence…at trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). Nonetheless, Rule 26(a)(2)(B) "does not limit an expert's testimony simply to reading his report[.] The rule contemplates that the expert will supplement, elaborate upon, and explain his report in his oral testimony." Hall v. City of Fairfield, 2012 WL 1155666, at \*4 (E.D. Cal. Apr. 5, 2012).

Plaintiff contends that Dr. Ferrara will testify that elements of *Khosara* that are featured in *Big Pimpin'* were already in use prior to when *Khosara* was composed. Pl.'s Mot. in Lim. No. 2, at 1. In his expert report, Ferrara identified three pieces of prior art on which he based his opinion. Id. Nonetheless, at Ferrara's deposition, plaintiff's attorneys asked Ferrara whether he had relied upon additional pieces of prior art. Id. at 1-2. Ferrara responded by identifying three new pieces of prior art (the "new prior art") that he had not previously disclosed to plaintiff. Id. at 2. Plaintiff asserts that testimony or evidence regarding the new prior art should be excluded because plaintiff did not have an adequate opportunity to depose Ferrara regarding his use of this evidence and neither plaintiff's counsel nor plaintiff's experts have had an adequate opportunity to review and rebut Ferrara's use of this evidence. Id. at 4-5.

The Court finds that plaintiff has not presented a persuasive reason to preclude Ferrara from testifying regarding the new prior art. First, plaintiff does not deny that he was generally aware that Ferrara intended to testify regarding the existence of prior art and similarities between this prior art and *Khosara*. Moreover, at a minimum the new prior art was disclosed through Ferrara's deposition. See Antonick v. Elec. Arts, Inc., 2014 WL 245018, at \*8 n.3 (N.D. Cal. Jan. 22, 2014) (refusing to strike portions of trial testimony in which expert "opined about matters outside of his initial report and rebuttal report, [because the expert's statements] were sufficiently disclosed in his report or his *deposition*") (emphasis added).

Moreover, plaintiff's counsel has not indicated why they are unable to depose Ferrara at this time regarding the new prior art. And, they have not sufficiently explained why they were unable to question Ferrara regarding his analysis of prior art during his deposition. Plaintiff contends that Ferrara waited until the "last few minutes of his deposition" to disclose the new prior art and therefore plaintiff's counsel was unable to question him regarding this "belatedly" disclosed evidence. Pl.'s Mot. in Lim. No. 2, at 3. However, while plaintiff suggests that this was a deliberate tactic by Ferrara to avoid

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**           **'O'**

| Case No. | 2:07-cv-05715-CAS(PJWx) | Date | September 24, 2015 |
|---|---|---|---|
| Title | OSAMA AHMED FAHMY V. JAY Z, ET AL. | | |

questioning, the transcript of Ferrara's deposition shows that he disclosed this
information in response to specific questions from plaintiff's counsel.  See Dkt. 602, Ex.
1, at 247:21-248:10.  Thus, had plaintiff's counsel opened this line of questioning earlier
in the deposition, or sought additional time to depose Ferrara, they would have had a
greater opportunity to probe Ferrara on the new prior art.

    Accordingly, because the Court finds that Ferrara's reliance on the new prior art
was disclosed to plaintiff and that plaintiff has failed to sufficiently establish that he has
been prejudiced by any alleged delay in disclosing this evidence, plaintiff's motion is
DENIED.

## C.     **Plaintiff's Motion** *in limine* **No. 3**

    Plaintiff seeks to exclude the testimony of defendant's expert witness Niri
Shanmuganathan ("Shan").  Pl.'s Mot. in Lim. No. 3.  Shan is expected to testify as a
rebuttal witness regarding the proper construction of a 1995 License agreement between
Sout el Phan and EMI Arabia (the "1995 agreement"), one of the links in defendants'
chain of title to *Khosara*.  Id. at 1-2.  The 1995 agreement provides that it "shall be
interpreted in accordance with the laws of England."  Id. at 2.  Shan, who is an
experienced English attorney, will offer his opinion of how English contract law would
apply to various provisions in the 1995 agreement.  Id. at 1-2.  Specifically, he will offer
rebuttal testimony for two of plaintiff's expert witnesses, Keith Cooper ("Cooper") and
Mohamed-Hossam Loutfi ("Loutfi").  Opp. to Pl.s' Mot. in Lim. No. 2, at 1.  Cooper and
Loutfi, are expected to testify that the 1995 agreement did not grant EMI Arabia
publishing rights in *Khosara*.  Id. at 4.  Based on his expertise in English law, Shan will
demonstrate how that interpretation of the 1995 agreement is untenable.  Id. at 4-5.
Plaintiff argues that Shan's testimony should be excluded because determinations of law
are the province of the courts, not the jury, and because plaintiff believes Shan is not
qualified to testify regarding the proper construction of the 1995 agreement.  Pl.'s Mot. in
Lim. No. 3, at 1.

    First, the Court finds that a qualified expert may testify regarding the application of
foreign law to the facts of a given case.  While, pursuant to Federal Rule of Civil
Procedure 44.1, determinations of foreign law are treated as questions of law, "[Rule
44.1] does not prohibit testimony about foreign law."  Wright & Miller, Federal Practice
and Procedure, [9A] § 2444.  Rather, "'[e]xpert testimony accompanied by extracts from

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**          **'O'**

| Case No. | 2:07-cv-05715-CAS(PJWx) | Date | September 24, 2015 |
|----------|-------------------------|------|--------------------|
| Title    | OSAMA AHMED FAHMY V. JAY Z, ET AL. | | |

foreign legal materials has been and will likely continue to be the basic mode of proving foreign law.'" <u>Hobaica v. Seypet Resorts, L.L.C.</u>, 2012 WL 6675129, at *5 (C.D. Cal. Dec. 17, 2012) <u>quoting</u> <u>Universe Sales Co. v. Silver Castle, Ltd.</u>, 182 F.3d 1036, 1038 (9th Cir. 1999). Shan's testimony is therefore admissible to assist the jury in evaluating whether the opinions of plaintiff's experts regarding the 1995 agreement are consistent with English law.

Second, the Court finds that Shan is qualified to testify regarding the application of English law to the 1995 agreement. According to Shan's testimony, the proper method for interpreting a contract under English law requires the fact finder to evaluate contract terms using "the natural and ordinary meaning of those words" and from the perspective of a person having all of the background knowledge that would reasonably have been available to the parties to the agreement. Pl.'s Mot. in Lim No. 3, at 1. Plaintiff argues that, first, a jury does not require an expert's assistance in evaluating the "natural and ordinary meaning" of contract terms and, second, Shan does not possess the relevant background knowledge of the parties to the 1995 agreement, who were all members of the Middle Eastern music business. <u>Id.</u> However, plaintiff misunderstands the proffered testimony. Shan does not intend to testify regarding the background knowledge of the parties to the 1995 agreement. Opp. to Pl.'s Mot. in Lim. No. 3, at 5-8. Rather, Shan's testimony will discuss principles of English contract law and how he believes those principles apply to the 1995 agreement. <u>Id.</u> Shan's decades of experience as an English attorney qualify him to testify on these issues. And, even if a jury may not require an expert's assistance to understand the "ordinary meaning" of contract terms, it still will be helpful for the jury to hear how those terms apply under English contract law.

Accordingly, because the Court finds that Shan's testimony will assist the jury and because the Court finds that Shan is qualified to give his intended testimony, plaintiff's motion is DENIED.

**D.    Plaintiff's Motion *in limine* No. 4**

Plaintiff seeks to preclude defendants from referencing conversations with, or reliance on, their attorneys in connection with asserting an "advice of counsel" defense. Pl.'s Mot. in Lim. No. 4. Plaintiff alleges that defendants willfully infringed his copyright in *Khosara*, therefore entitling him to damages for willful infringement. Id. at 1. Plaintiff believes that defendants may assert that they relied on the opinions of their

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**          **'O'**

| Case No. | 2:07-cv-05715-CAS(PJWx) | Date | September 24, 2015 |
|----------|-------------------------|------|--------------------|
| Title | OSAMA AHMED FAHMY V. JAY Z, ET AL. | | |

attorneys that *Big Pimpin'* did not infringe *Khosara* as a defense to willful infringement. Id. at 2. However, plaintiff asserts that throughout this litigation defendants have repeatedly invoked the attorney-client privilege to block discovery of communications between them and their attorneys. Id. Plaintiff argues that this conduct should preclude defendants from introducing evidence of communications with their attorneys in support of an "advice of counsel" defense. Id.

As a general matter, if any defendant asserts that it relied on the advice of its attorneys and that advice was made subject to an objection of attorney-client privilege, then that party may not rely on that advice as a defense to willful infringement. See Columbia Pictures Indus. v. Krypton Broad. of Birmingham, Inc., 259 F.3d 1186, 1196 (9th Cir. 2001) (affirming exclusion of legal advice to demonstrate advice of counsel defense, where attorney-client privilege had been invoked to block discovery of that advice); see also Chevron Corp. v. Pennzoil Co., 974 F.2d 1156, 1162 (9th Cir. 1992) ("The privilege which protects attorney-client communications may not be used both as a sword and a shield.").

However, as currently presented, plaintiff's motion is not sufficiently specific. Plaintiff fails to identify any specific legal advice that was withheld during discovery; rather, plaintiff states broadly that the attorney-client privilege was invoked throughout discovery to block the production of documents and testimony. Accordingly, the Court considers plaintiff's request to be overbroad and therefore his motion is DENIED without prejudice to raising specific objections at trial.

### E.    **Plaintiff's Motion *in limine* No. 5**

Plaintiff contends that defendants did not disclose several witnesses and exhibits during discovery. Plaintiff argues that the late disclosure of these witnesses and exhibits should preclude defendants from offering them at trial. The Court will address each of these disputes in turn.

### 1.    **Shawn Odle, Melissa Sawaya, Jonathan Schwartz, and Karen Schoenrock**

On May 25, 2015, Magistrate Judge Patrick Walsh ordered all defendants, other than defendant Jay-Z, to provide updated and more extensive financial disclosures. Dkt.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL          'O'

| Case No. | 2:07-cv-05715-CAS(PJWx) | Date | September 24, 2015 |
|----------|--------------------------|------|--------------------|
| Title    | OSAMA AHMED FAHMY V. JAY Z, ET AL. | | |

539.  Magistrate Judge Walsh's order resolved an ongoing discovery dispute between the parties regarding allegedly inadequate responses to interrogatories pertaining to defendants' revenues and profits.  Id.

Defendants complied with this order on June 19, 2015 and June 22, 2015.  Opp. to Defs.' Mot. in Lim No.5, at 2.  Witnesses Odle, Sawaya, Schwartz, and Schoenrock's testimony relates solely to verifying the supplemental financial information produced in response to Magistrate Judge Walsh's order.  Id.

Plaintiff's motion is DENIED as to these witnesses because (1) he has not identified any specific prejudice he will suffer from testimony regarding the authenticity of financial documents, and (2) the testimony of these witnesses was only made necessary by virtue of a discovery dispute to which plaintiff was equally a party.

### 2.     Bruce Seckendorf and Kendall Emmons

On November 26, 2014, both witnesses Emmons and Seckendorf were identified to plaintiff's counsel.  Id.  Despite being aware for over ten months that these witnesses possessed potentially relevant information, plaintiff has never requested to depose them.  Id.  Accordingly, plaintiff has failed to demonstrate the requisite diligence in seeking testimony from these witnesses or that any prejudice that he may suffer if these witnesses are permitted to testify has been caused by defendants.  Therefore plaintiff's motion to exclude these witnesses is DENIED.

### 3.     Anita Chinkes-Ratner

On May 20, 2013, defendants identified Julie Horwitz ("Horwitz") as a representative for defendant MTV.  Id.  Nonetheless, plaintiff never deposed Horwitz.  Witness Chinkes-Ratner has simply been selected as a substitute for Horwtiz, who is no longer employed by MTV.  Id; See also Nuance Commc'ns, Inc. v. ABBYY Software House, 2012 WL 2838431, at *2 n.4 (N.D. Cal Jul. 10, 2012) (finding "substantially justified" the late disclosures of witnesses intended as replacements for previously designated individuals who had "left the company.").  Accordingly, because (1) defendants were substantially justified in their late disclosure of this witness, and (2) because plaintiff has not sufficiently demonstrated that he will suffer prejudice if this witness is excluded, plaintiff's motion to exclude witness Chinkes-Ratner is DENIED.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**          **'O'**

| Case No. | 2:07-cv-05715-CAS(PJWx) | Date | September 24, 2015 |
|---|---|---|---|
| Title | OSAMA AHMED FAHMY V. JAY Z, ET AL. | | |

### 4.    Tahemtan Dhamodiwala

Witness Dhamodiwala merely intends to testify to authenticate various books and records obtained from non-party EMI Arabia.  Opp. to Pl.'s Mot. in Lim. No. 5, at 4. Dhamodiwala has previously authenticated similar documents in connection with plaintiff's February 2, 2015 motion for summary judgment.  Id.  Furthermore, other than that Dhamodiwala was not timely disclosed, plaintiff has not identified a particular reason why he will suffer prejudice if this witness is permitted to authenticate EMI Arabia documents.  See Pl.'s Mot. in Lim. No. 5, at 1. Accordingly, plaintiff's motion to exclude Dhamodiwala is DENIED.

### 5.    Exhibit 209

Defendant's obtained exhibit 209 from non-party EMI Arabia on June 18, 2015. Dkt. 605-1, at 5.  Defendants' counsel had not seen this document prior to June 18, 2015 and it was produced to plaintiff's counsel that same day.  Id.  Moreover, this exhibit relates to the 2001 settlement agreement, an agreement which has been central to this litigation for many years.  Id.  Accordingly, because any delay in producing this exhibit was the fault of a non-party, not defendants, and because plaintiff has failed to sufficiently demonstrate that he will suffer prejudice if this document is admitted at trial, plaintiff's motion to exclude exhibit 209 is DENIED.

### 6.    Exhibits 387, 393, and 395-397

Exhibits 387, 393, and 395 through 397 are all publicly available documents, the subject or existence of which plaintiff has been aware for at least several months.  Exhibit 387 is an academic work reviewed by defendants' English law expert, Shan.  Id. at 6.  It was identified in connection with Shan's expert report as a document Shan considered. Id.  Exhibits 393 and 395 through 397 are documents obtained from the website of non-party Broadcast Music, Inc ("BMI").  Id.  BMI has produced various documents in this action and the parties have generally been aware since at least 2009 that issues concerning BMI may be relevant to this case.  Id.  Accordingly, because all of these documents were publicly available and plaintiff was on notice that these documents might be at issue at trial, plaintiff's motion is DENIED.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**          **'O'**

| Case No. | 2:07-cv-05715-CAS(PJWx) | Date | September 24, 2015 |
|---|---|---|---|
| Title | OSAMA AHMED FAHMY V. JAY Z, ET AL. | | |

### 7.    Exhibits 398 and 399

Exhibits 398 and 399 are amendments to agreements between defendants concerning the accounting of revenues from *Collision Course* and *Fade to Black*.  Opp. to Pl.'s Mot. in Lim. No. 5, at 5.  Defendants intend to offer these exhibits to provide further support for the testimony of their financial witnesses and to ensure that any accounting of revenues at trial is accurate.  Id.  Plaintiff alleges that these documents were first produced on August 10, 2015.  Pl.'s Mot. in Lim. No. 5, at 2.  While it may have been possible for defendants to produce these documents at an earlier date, plaintiff has not identified any prejudice that may result if these documents are presented at trial. Accordingly, plaintiff's motion to exclude these exhibits is DENIED.

### F.    Plaintiff's Motion *in limine* No. 6

Plaintiff seeks to pre-admit exhibits 271 through 283.  Pl.s' Mot. in Lim. No. 6, at 1.  These exhibits are documents produced by defendants, regarding digital downloads of *Big Pimpin'* and the revenues of each defendant deriving from *Big Pimpin'*.  Id.  Plaintiff contends that there is no dispute regarding the authenticity of these documents, nor is their a dispute regarding the relevance of these documents to plaintiff's potential damages.  Id.  Defendants respond that plaintiff's motion is improper because it does not comport with established procedures under the Local Rules of this district regarding the method and timing for admitting exhibits.  Opp. to Pl.'s Mot. in Lim. No. 6, at 1-2.

Local Rule 16-6 establishes the procedure for admitting and objecting to exhibits before trial.  Pursuant to this rule, the parties must meet and confer concerning the exhibits to be presented at trial and then jointly file a list of exhibits.  See C.D. Cal. R. 16-6.1.  Either party may then object to the other party's exhibits in their proposed final pretrial conference order.  C.D. Cal. R. 16-6.3.  Plaintiff's motion seeks to circumvent this process and is therefore procedurally improper.  Accordingly, plaintiff's motion is DENIED.

Nonetheless, it appears that defendants do not object to the authenticity of these exhibits and acknowledge that they may be relevant should plaintiff establish that he is entitled to damages.  In the interest of saving time, it would be helpful to the Court if the parties could stipulate to the admissibility of exhibits to which there is no objection.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**          **'O'**

| Case No. | 2:07-cv-05715-CAS(PJWx) | Date | September 24, 2015 |
|----------|-------------------------|------|--------------------|
| Title    | OSAMA AHMED FAHMY V. JAY Z, ET AL. | | |

## III.   DEFENDANTS' MOTIONS *IN LIMINE*

### A.   Defendants' motion *in limine* No. 1

Defendants request an order precluding plaintiff from presenting evidence or argument regarding two issues of foreign law: (1) the applicability of "moral rights" under Egyptian copyright law to this action and (2) evidence that a transferable right of adaptation does not exist under Egyptian copyright law.  Defs.' Mot. in Lim. No. 1, at 1. Defendants argue that plaintiff should be precluded from offering evidence regarding these issues because this Court has already addressed these issues and determined that a claim for violations of plaintiff's "moral rights" does not arise in this action and that Egyptian law recognizes a transferable right of adaptation.  Id. at 1-2.  Plaintiff responds that he does not intend to offer evidence in contravention of the Court's prior rulings, but that evidence regarding Egyptian copyright law remains relevant to other issues in this case, namely the scope of any license plaintiff may have granted to use *Khosara*.  Opp. to Defs.' Mot. in Lim. No. 2, at 1-2.

In an order dated May 2, 2011, the Court found that "a transferable adaptation right exists" under Egyptian law.  Dkt. 271, at 15.  Moreover, the Court found that to the extent plaintiff "requests that the Court determine whether defendants' use of *Khosara, Khosara* violated plaintiff's moral rights in the work by making changes that might be considered 'mutilation or distortion' of the original work, the Court agrees with defendants that the claim does not arise under U.S. copyright law, except to the extent that it is a reformulation of the question of whether defendants acted outside of the scope of the relevant licenses.  To the extent plaintiffs argue that defendants acted outside of those licenses, the Court, as discussed herein, finds that this issue raises there is [sic] a triable question of fact."  Id. at 15–16 n.8.

To the extent defendants argue that plaintiff should be precluded from introducing evidence or argument intended to re-litigate the applicability of "moral rights" in this action or the existence of transferable adaptation rights under Egyptian law, the Court agrees with defendants that these issues have already been resolved and that plaintiff may not submit evidence which contradicts the Court's rulings.  The Court has previously declined to revisit these rulings, Dkt. 509, at 9 n.6, and it similarly declines to revisit them here.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**          **'O'**

| Case No. | 2:07-cv-05715-CAS(PJWx) | Date | September 24, 2015 |
|---|---|---|---|
| Title | OSAMA AHMED FAHMY V. JAY Z, ET AL. | | |

Nonetheless, to the extent defendants argue that all evidence regarding adaptation or moral rights under Egyptian law is precluded in this action, defendants overstate the Court's prior ruling. Indeed, the Court expressly stated that evidence concerning moral rights could raise a question under U.S. copyright law regarding "whether defendants acted outside of the scope of the relevant licenses." Dkt. 271, at 15-16 n.8.

Defendants have asserted a license defense in this action, claiming that because they held a license to use portions of *Khosara* in *Big Pimpin'* they may not be found liable for copyright infringement. Dkt. 532, at 20-21. Plaintiff disputes this claim and contends that the underlying agreement in which plaintiff initially transferred rights in *Khosara* did not include the right to use *Khosara* in *Big Pimpin'*. Dkt. 531, at 3-4. Plaintiff argues that this initial agreement, which forms the first link in the chain of title of defendants' purported license, either incorporated elements of Egyptian law or was negotiated "against the backdrop of Egyptian Copyright law." Pl.'s Opp. to Defs.' Mot. in Lim. No.1, at 3-5. Accordingly, plaintiff argues that evidence relating to Egyptian law is relevant to define the scope of defendants' claimed license. Id.

The Court agrees with plaintiff. While the Court's prior rulings preclude plaintiff from presenting the argument that defendants violated his moral rights in *Khosara* or that Egyptian law does not recognize a transferable right of adaptation, a wholesale exclusion of evidence regarding these issues would ignore the potential relevance of Egyptian copyright law in defining the scope of defendants' license defense. See also Norfolk & Western Ry. Co. v. Am. Train Dispatchers Ass'n, 499 U.S. 117, 130 (1991) ("Laws which subsist at the time and place of the making of a contract, and where it is to be performed, enter into and form a part of it, as fully as if they had been expressly referred to or incorporated in its terms. This principle embraces alike those laws which affect its construction and those which affect its enforcement or discharge."). Accordingly, to the extent defendants' motion would preclude plaintiff from presenting evidence regarding Egyptian copyright law relevant to the scope of defendants' claimed license, defendants' motion is DENIED.

### B.    Defendants' motion *in limine* No. 2

Defendant seeks an order precluding plaintiff from presenting any argument or evidence that defendants willfully infringed *Khosara* prior to June 1, 2006. Defs.' Mot. in Lim. No. 2. Defendants argue that the Court has previously: (1) ruled that plaintiff is

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**          'O'

| Case No. | 2:07-cv-05715-CAS(PJWx) | Date | September 24, 2015 |
|---|---|---|---|
| Title | OSAMA AHMED FAHMY V. JAY Z, ET AL. | | |

barred by the statute of limitations from asserting claims for infringement, willful or otherwise, which accrued prior to August 31, 2004, and (2) granted summary judgment in favor of defendants that any infringement which may have occurred between March 30, 2001 and June 1, 2006 (the "settlement period") could not have been willful because during this period defendants' were subject to a license agreement (the "settlement agreement") with EMI Music Arabia ("EMI Arabia") which gave them, at a minimum, "colorable title" to use *Khosara*. Id. at 1.

Plaintiff opposes this motion by arguing that evidence prior to June 1, 2006 is relevant to prove defendants intent after June 1, 2006 (the "post-settlement period"), when the settlement agreement allegedly expired. Opp. to Defs.' Mot. in Lim. No. 2, at 1-2. Specifically, plaintiff argues that this evidence will show that defendants did not rely on the settlement agreement when they used *Khosara* during the post-settlement period. Id. In addition, plaintiff argues that the Court should revisit its prior ruling regarding willful infringement during the settlement period because deposition testimony produced after the Court's ruling has since indicated that many defendants had little to no knowledge of the license's existence. Id. at 4.

In an order dated August 12, 2013, the Court found that "the settlement with EMI [Arabia] gave defendants colorable title to produce *Big Pimpin'* and derivative works created using *Big Pimpin'*, and under those circumstances, there is no willful infringement." Dkt. 380, at 16 citing Evergreen Safety Council v. RSA Network Inc., 697 F.3d 1221, 1228 (9th Cir. 2012) ("Willfulness does not exist . . . where infringing works were produced under color of title, such as a reasonable belief that the infringer possesses a license or implied license."). Accordingly, the Court granted summary judgment in favor of defendants that any infringement during the settlement period could not be willful. Dkt. 380, at 16.

Plaintiff argues that he was not permitted to depose defendants until after the hearing on these issues and therefore could not contest defendants argument that any infringement of *Khosara* during the settlement period was not willful. Opp. to Defs.' Mot. in Lim. No. 2, at 4. However, recent deposition testimony from defendants, plaintiff contends, indicates that many defendants either had little to no knowledge of the settlement agreement or failed to sufficiently inquire regarding the existence of a license to use *Khosara*. Id. Accordingly, plaintiff argues that the Court should reverse its prior

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**          **'O'**

| Case No. | 2:07-cv-05715-CAS(PJWx) | Date | September 24, 2015 |
|----------|-------------------------|------|--------------------|
| Title | OSAMA AHMED FAHMY V. JAY Z, ET AL. | | |

ruling and find instead that defendants could have infringed willfully during the settlement period.

However, plaintiff cites no authority for the proposition that defendants had an affirmative duty to investigate the existence of a license agreement covering *Khosara*. And, it remains undisputed that defendant Mosley was a party to the settlement agreement and thus, at a minimum, possessed colorable title.  See Opp. to Defs.' Mot. in Lim. No. 2, at 2.  All other defendants' usage of *Khosara* derives from Mosley's agreement and plaintiff has provided no evidence suggesting that defendants could not have reasonably relied on Mosley's representations or assumed that Moseley possessed the necessary licenses to use *Khosara* in *Big Pimpin'*.  Accordingly, the Court declines to revisit its prior ruling that any infringement by defendants during the settlement period could not be willful.

Nonetheless, the Court has never ruled that defendants' infringement *after* the settlement period could not be willful.  Plaintiff alleges that the settlement agreement expired on June 1, 2006.  Id. at 1.  Yet, defendants argue that any infringement after this period could not have been willful because they relied upon the fact that the settlement agreement was supposedly "perpetual."  Id.  However, as plaintiff argues, defendants could not have reasonably relied upon the "perpetual" nature of the agreement if they did not know that the agreement existed at all.  Id.; See also Evergreen, 697 F.3d at 1228 (willfulness determination may turn on whether there is "a reasonable belief that the infringer possesses a license").  Accordingly, evidence of defendants' knowledge of the settlement agreement prior to June 1, 2006, is potentially relevant to demonstrate willful infringement by defendants in the post-settlement period.  See also Arista Records L.L.C. v. Lime Grp. L.L.C., 784 F. Supp. 2d 398, 418 (S.D.N.Y.  May 2, 2011) ("Although Plaintiffs may not recover for conduct that occurred outside the limitations period, 'evidence of such conduct may be admissible to shed light on the motives with which acts within the limitations period were performed.'") (citations omitted).

In accordance with the foregoing, defendants' motion is DENIED.

## C.    **Defendants' motion *in limine* No. 3**

Defendants request an order precluding evidence of plaintiff's ownership of a copyright in *Khosara* based upon sound recordings of *Khosara*.  Defs.' Mot. in Lim. No.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**                    'O'

| Case No. | 2:07-cv-05715-CAS(PJWx) | Date | September 24, 2015 |
|---|---|---|---|
| Title | OSAMA AHMED FAHMY V. JAY Z, ET AL. | | |

3. Plaintiff intends to present evidence at trial regarding two sound recordings of *Khosara*: (1) a 1960 recording of *Khosara* performed by the Egyptian singer, Abdul Halim Hafez ("Hafez"); and (2) a 1992 recording of *Khosara* that appeared on a CD entitled "Best of Abdul Halim Hafiz" (the "1992 recording") (collectively "the sound recordings"). Id. at 2. The parties do not dispute that at least one of these recordings — the 1992 recording — was sampled by defendants in composing *Big Pimpin'*, nor do the parties dispute that plaintiff does not own a copyright in either of the sound recordings.

Plaintiff contends that he may proffer expert testimony regarding similarities between the sound recordings and *Big Pimpin'* as evidence of defendants infringement because, even if he does not own a copyright in the sound recordings, the sound recordings are purportedly illustrative of plaintiff's copyright in the written composition of *Khosara*. Opp. to Defs.' Mot. in Lim. No. 3, at 1. Nonetheless, the case law is legion that when a comparison is made for purposes of ascertaining whether there has been infringement of a copyright in a written composition, the factfinder may only compare those musical elements which are actually protected, which in most cases will be the sheet music of the written composition. See, e.g. Apple Comp. Inc. v. Microsoft Corp., 35 F.3d 1435, 1443 (9th Cir. 1994) ("[O]nly those elements of a work that are protectable and used without the author's permission can be compared when it comes to the ultimate question of illicit copying"); Newton v. Diamond, 204 F. Supp. 2d 1244, 1249 (C.D. Cal. 2002) ("Plaintiff contends that Defendants' sampling infringed upon his underlying musical composition. Accordingly, the court must first determine what elements of plaintiff's work are protected by his copyright in the musical composition, as opposed to those protected by the copyright in the sound recordings, and 'filter out' the latter."). Moreover, defendants argue that permitting plaintiff to introduce as an illustration of his copyright, the same recording defendants sampled in *Big Pimpin'* may confuse and mislead the jury and that this is particularly so where plaintiff concedes that he does not own a copyright in either sound recording. See Defs.' Mot. in Lim No. 3, at 1. Accordingly, defendants argue plaintiff should be limited solely to a "lead sheet" which contains the written composition of *Khosara* (i.e. the "lead sheet") as evidence demonstrating the scope of plaintiff's copyright. Id.

Plaintiff responds that this Court has already ruled that plaintiff owns a copyright in the musical composition underlying the sound recordings and that, in any event, defendants have previously admitted that plaintiff owns the musical composition underlying the sound recordings. Opp. to Defs.' Mot. in Lim. No. 3, at 1. On September

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**          **'O'**

| Case No. | 2:07-cv-05715-CAS(PJWx) | Date | September 24, 2015 |
|---|---|---|---|
| Title | OSAMA AHMED FAHMY V. JAY Z, ET AL. | | |

20, 2010, plaintiff brought a motion for partial summary judgment regarding certain material facts he contended were without substantial controversy in this action. Dkt. 227. Among those facts submitted for summary adjudication was that "Baligh Hamdy was the author of the *Khosara, Khosara* musical composition." Id. at 2. In connection with this motion plaintiff submitted a statement of uncontroverted facts. Dkt. 226-1. Defendants were then required to respond with a statement of genuine issues of fact in dispute asserting their disagreements with plaintiff's statement of uncontroverted facts. Dkt. 243-1. Defendants responded that the following facts were "undisputed": (1) "Baligh Hamdy was the author of the musical composition *Khosara, Khosara*."; (2) "Mr. Hamdy's authorship of *Khosara, Khosara* is evidenced by his 1960 registration of his copyright interest in that musical composition with 'SACEREAU,' the Egyptian Society of Authors, Composers, and Publishers."; and (3) "*Khosara, Khosara* was first released in Egypt in the 1960s when Abdel Halim Hafez recorded it, and was not authorized for release in the United States at that time." Id. at 1-2. Ultimately, in an order dated May 2, 2011, the Court found that "[t]here does not seem to be any dispute that '*Khosara, Khosara*' was authored by Baligh Hamdy" and granted plaintiff's motion for partial summary judgment that Hamdy authored the *Khosara* composition. Dkt. 271, at 7, 18. Based on the Court's order and defendants' responses to plaintiff's statement of undisputed facts, plaintiff now contends that defendants are precluded from asserting that he does not own a copyright in the composition underlying the sound recordings. Opp. to Defs.' Mot. in Lim. No. 3, at 1-3.

Plaintiff's argument is unavailing. First, while plaintiff is correct that defendants have previously stated that certain facts regarding Hamdy's ownership of the *Khosara* composition were "undisputed," defendants' admissions were made only conditionally. In noting that various facts were undisputed, defendants added a footnote stating that "*for purposes of this motion*, Defendants assume to be true this and certain other facts alleged by Plaintiff." Dkt. 243-1, at 1 n.1 (emphasis added). Accordingly, defendants cannot appropriately be said to have admitted these facts for all purposes in their response to plaintiff's motion for partial summary judgment. Furthermore, as the issue was previously presented in plaintiff's motion for summary judgment, the parties did not address whether the sound recordings could be submitted as evidence of plaintiff's copyright in the written composition of *Khosara*. Moreover, to the extent the parties did address the relationship between the sound recordings and the *Khosara* written composition, they appear to have drawn a distinction between the sound recordings and the written composition in their papers. For example, in his reply plaintiff stated that

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| **CIVIL MINUTES - GENERAL** | | | **'O'** |
|---|---|---|---|
| Case No. | 2:07-cv-05715-CAS(PJWx) | Date | September 24, 2015 |
| Title | OSAMA AHMED FAHMY V. JAY Z, ET AL. | | |

"Hamdy's copyright in the *Khosara* musical composition and Sout El Phans's copyright interest in sound recordings are *separately* registered in Egypt." Dkt. 249, at 6 (emphasis added). Accordingly, the Court's prior rulings are best understood as finding that plaintiff, as Hamdy's successor, owns *a* copyright interest in the written composition of *Khosara*, but that the order has no bearing on whether plaintiff may submit the sound recordings as a reflection of that copyright.

Second, plaintiff argues that there is ample evidence that the sound recordings accurately represent plaintiff's copyright in *Khosara*. Opp. to Defs.' Daubert Mot. No. 4, at 3. Specifically, plaintiff identifies several iterations of the sound recordings in which Hamdy is listed as a composer. Id. at 3-4. Additionally, plaintiff argues that Hamdy and Hafez were colleagues who worked together to produce many hit songs, such as *Khosara*, and that the customary procedure in Egypt at the time Khosara was composed was for composers to orally teach their songs to musicians. Id. Based upon this evidence, plaintiff argues there is ample proof that the sound recordings exemplify his copyright in *Khosara*. Id. at 3. Nonetheless, at the hearing plaintiff's counsel confirmed that plaintiff does not claim to hold a copyright in the sound recordings themselves.

Because plaintiff concedes that any copyright he holds in *Khosara* does not include the sound recordings, the relevance of this evidence is unclear. At best, the sound recordings are illustrative of plaintiff's copyright in the written composition of *Khosara*. Moreover, to the extent the sound recordings are illustrative of the musical composition that is the subject of plaintiff's copyright, defendants contend that there are multiple differences between the version of *Khosara* depicted in the sound recordings and the version depicted in the lead sheet. Daubert Mot. No. 4, at 3.

Presenting the sound recordings at trial carries a significant risk of confusing and misleading the jury. The parties do not dispute that at least the 1992 recording was used in *Big Pimpin'*. However, permitting plaintiff to use the exact <u>sound</u> recording of *Khosara* used in *Big Pimpin'* as a representation of his copyright in the <u>written</u> composition of *Khosara* could lead the jury to attach undue weight to the similarities between the two recordings, as distinct from the musical composition itself. The risk that the jury may assign such undue weight is particularly problematic because plaintiff admits that his copyright does not include the 1992 recording.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**                    **'O'**

| Case No. | 2:07-cv-05715-CAS(PJWx) | Date | September 24, 2015 |
|----------|--------------------------|------|--------------------|
| Title | OSAMA AHMED FAHMY V. JAY Z, ET AL. | | |

Of course, plaintiff may prove that defendants have infringed his copyright in the written composition of *Khosara* by other means that carry far less risk of confusing the jury. Plaintiff could, for example, compare the lead sheet of *Khosara* to a lead sheet of *Big Pimpin'*. However, the Court recognizes that because there may not be a musical composition of *Big Pimpin'* such a comparison may not be possible. Nonetheless, regardless of the methodology plaintiff elects to establish infringement, he must prove that the copyrighted lead sheet has been infringed as opposed to the uncopyrighted sound recordings.

In accordance with the foregoing, defendants' motion is GRANTED.

### D.    Defendants' motion *in limine* No. 4

Defendants seek to exclude evidence or argument regarding what plaintiff would or could have received for any license of *Khosara* as a measure of plaintiff's actual damages. Defendants argue that this evidence should be excluded because, throughout discovery, plaintiff has failed to produce any evidence demonstrating what would constitute a reasonable license fee for *Khosara*. Defs.' Mot. in Lim. No. 4, at 1. Plaintiff does not oppose defendants' motion.

The Court agrees that failure to produce any documents regarding the reasonable license fee for *Khosara* is an appropriate grounds for excluding this evidence pursuant to Federal Rules of Civil Procedure 26 and 37. Accordingly, the Court GRANTS defendants' motion.

### E.    Defendants' motion *in limine* No. 5

Defendants seek to preclude plaintiff from introducing evidence of civil actions and other allegations of copying made against defendants. Defs.' Mot. in Lim. No. 5. Plaintiff argues that these prior allegations are relevant to show defendants' state of mind. Opp. to Mot. in Lim. No. 5, at 3. Specifically, plaintiff contends that this evidence is relevant to a finding that defendants were willful infringers because it shows that defendants were aware from past experience that music is subject to copyright protections. Id. at 3-4.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**                    'O'

| Case No. | 2:07-cv-05715-CAS(PJWx) | Date | September 24, 2015 |
|---|---|---|---|
| Title | OSAMA AHMED FAHMY V. JAY Z, ET AL. | | |

Plaintiff's argument is unavailing.  At most, the evidence plaintiff identifies is only minimally probative to establish defendants' willfulness.  Moreover, this evidence has a substantial risk of prejudicing the jury.  As defendants argue, this evidence may "paint the defendants as serial infringers" and "impugn their character."  Defs.' Mot. in Lim. No. 5, at 3.  And, evidence of these prior allegations will result in mini-trials regarding these alleged instances of unrelated copyright infringement.  This will unduly delay these proceedings and may confuse the jury.  Accordingly, pursuant to Federal Rule of Evidence 403, defendants' motion is GRANTED.

## F.    Defendants' motion *in limine* No. 6

Defendants seek to preclude evidence of criminal convictions or other criminal conduct by any of the defendants.  Defs.' Mot. in Lim. No. 6.  Defendants argue that such evidence is irrelevant and poses a substantial risk of prejudicing the jury.  Id. at 1.

Federal Rule of Evidence 609(a)(2) provides that evidence of a criminal conviction "must be admitted if the court can readily determine that establishing the elements of the crime required proving – or the witness's admitting – a dishonest act or false statement."  However, if the conviction is more than ten years old, the court must engage in a rigid balancing test before evidence of the conviction may be admitted at trial.  Fed. R. Evid. 609(b)(1).

Defendants' motion is denied primarily because it is overbroad and premature.  See In re Homestore.com, Inc., 2011 WL 291176, at *2 (C.D. Cal. Jan. 25, 2011) (denying motion to exclude wide category of evidence as "over-broad and vague, and therefore inappropriate for review at the motion *in limine* stage.").  Defendants do not identify a particular criminal conviction that they seek to exclude, and as set forth in the Federal Rules of Evidence, criminal convictions may be admissible in specific cases to impeach a witness's testimony.  Furthermore, in the event plaintiff seeks to admit evidence of a conviction that is more than ten years old, the Rules of Evidence mandate that plaintiff provide defendants with "written notice" and "a fair opportunity to contest" the use of that evidence.  See Fed. R. Evid. 609(b)(2).

Nonetheless, the Court agrees with defendants that evidence of criminal convictions carries a significant risk of causing unfair prejudice.  And as a general matter, evidence of criminal convictions bears no relevance to the underlying dispute in this

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**          **'O'**

| Case No. | 2:07-cv-05715-CAS(PJWx) | Date | September 24, 2015 |
|---|---|---|---|
| Title | OSAMA AHMED FAHMY V. JAY Z, ET AL. | | |

action regarding copyright infringement.  Therefore, the Court is not inclined to admit evidence of defendants' criminal convictions or history.  However, as defendants have not identified any specific evidence to be excluded, the Court will reserve judgment until plaintiff attempts to present evidence of criminal convictions at trial.  Accordingly, Defendants' motion is DENIED without prejudice to making specific objections at trial.

### G.     Defendants' motion *in limine* No. 7

Defendants seek to exclude evidence relating to their wealth and financial resources.  Defs.' Mot. in Lim. No. 7.  Defendants argue that this evidence is unduly prejudicial and may bias the jury to artificially inflate the size of any potential damage award.  Id. at 1.  Plaintiff responds that this evidence is relevant to demonstrate the willfulness of defendants' alleged infringement by establishing that defendants had the necessary resources to investigate the ownership of *Khosara*.  Opp. to Defs.' Mot. in Lim. No. 7, at 3.

Plaintiff's argument is unavailing.  First, defendants do not contest that they had sufficient resources to investigate the ownership of *Khosara.*  Defs.' Mot. in Lim. No. 7, at 2.  And, plaintiff has provided no authority for the proposition that defendants had an affirmative duty to investigate the ownership of *Khosara*.  Thus, at most, this evidence is only minimally relevant to the issue of willfulness.  Second, even if this evidence is minimally relevant, the Court agrees with defendants that evidence of their financial resources will unduly prejudice the jury and could result in an outsized award of damages.  See Geddes v. United Fin. Grp., 559 F.2d 557, 560 (9th Cir. 1977) ("[T]he ability of defendant to pay the necessary damages may inject into the damage determination a foreign, diverting, and distracting issue which may effectuate a prejudicial result."); In re Homestore, Inc., 2011 WL 291176, at *1 ("Evidence of a party's financial condition is generally not relevant and can be unduly prejudicial, as it can distract the jury from the real issues in the case.").  Accordingly, defendants' motion is GRANTED.

Notwithstanding the foregoing, the Court recognizes that plaintiff is seeking an award of defendants' "wrongful profits."  Opp. to Mot. in Lim. No. 7, at 4.  "In establishing the infringer's profits, the copyright owner is required to present proof only of the infringer's gross revenue, and the infringer is required to prove his or her deductible expenses and the element of profit attributable to factors other than the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**          **'O'**

| Case No. | 2:07-cv-05715-CAS(PJWx) | Date | September 24, 2015 |
|----------|-------------------------|------|--------------------|
| Title | OSAMA AHMED FAHMY V. JAY Z, ET AL. | | |

copyrighted work." 17 U.S.C. § 504(b). Therefore, evidence of defendants' financial condition may be necessary to accurately determine their profits deriving from *Big Pimpin'* and *Khosara*. Accordingly, evidence of Defendants' financial resources may be admissible for this purpose alone.

## H.    Defendants' motion *in limine* No. 8

Defendants seek to exclude evidence of concert reviews, books, and similar evidence discussing Jay-Z concerts and live performances. Defs' Mot. in Lim No. 8. Defendants argue that this evidence should be excluded because it is hearsay and may unduly prejudice the jury. Id. at 1-2. Plaintiff responds that this evidence is relevant to show the existence of articles and reports referencing *Big Pimpin'* being performed at Jay-Z shows and therefore to establish a potential connection between *Big Pimpin'* and defendants' sale of Jay-Z concert tickets. Opp. to Defs.' Mot. in Lim. No. 8, at 2-4. Furthermore, plaintiff argues that this evidence is not hearsay because it is offered merely to show the existence of articles and reports referencing *Big Pimpin'*, not to establish the truth of the matters asserted in this evidence. Id. at 4-5.

While this evidence may be probative for the purpose plaintiff identifies, it is only minimally so. First, these articles and reports contain only the subjective impressions of their authors based on their own experiences attending Jay-Z concerts. See Defs.' Mot. in Lim. No. 8, at 3. They provide no evidence regarding how this evidence may have impacted other concert goers to attend Jay-Z performances or whether the concerts described were representative of Jay-Z performances. See Id. Second, the parties have presented additional evidence regarding the significance of *Big Pimpin'* to Jay-Z's performances. For example, defendants have prepared set lists from many of Jay-Z's concerts indicating when and how often *Big Pimpin'* was performed. Defs.' Mot. in Lim. No. 8, at 4. And, plaintiff has dedicated an entire expert, Kamins, to conduct a consumer survey on the impact of *Big Pimpin'* on concert-attendees' experiences at Jay-Z concerts. See Daubert Mot. No. 2. Finally, the Court finds that there is a risk that the jury will be confused by this evidence and use it for the purpose of determining what actually occurs at Jay-Z concerts, a purpose for which this evidence is patently hearsay. See Larez v. City of Los Angeles, 946 F.3d 630, 642 (9th Cir. 1991) ("[N]ewspaper articles have been held inadmissible hearsay as to their content.").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**            **'O'**

| Case No. | 2:07-cv-05715-CAS(PJWx) | Date | September 24, 2015 |
|---|---|---|---|
| Title | OSAMA AHMED FAHMY V. JAY Z, ET AL. | | |

Accordingly, because this evidence poses a greater potential for confusion that probative value, defendants' motion is GRANTED.

## I.     Defendants' motion *in limine* No. 9

Defendants seek an order precluding plaintiff from presenting evidence of Jay-Z's revenue deriving from merchandise sales. Plaintiff alleges that he is entitled to a portion of defendants' revenue derived from sales of merchandise at Jay-Z concerts where *Big Pimpin'* was played. Defendants argue that this claim is merely speculative and that plaintiff has failed to demonstrate a "causal nexus" between defendants' alleged infringement and merchandise revenue. Accordingly, defendants argue that pursuant to Federal Rules of Evidence 401 and 402, this evidence should be excluded as irrelevant.

However, the Court cannot conclude at this juncture, before any evidence has been presented at trial, that plaintiff will not be able to demonstrate that he is entitled to a portion of defendants' merchandise revenue or that this evidence is relevant. Furthermore, the Court has previously determined that the relationship between *Big Pimpin'* and defendants' concert revenues, which may include the sale of merchandise, presents a question of fact to be resolved at trial. Dkt. 309, at 15 ("[T]here are material questions of fact whether Jay-Z directly profited from performances of *Big Pimpin'*."). And, in the related case of Fahmy v. Live Nation Entertainment, Inc., the Court found that plaintiff's allegations support a "reasonable inference that [concert] performances and *associated goods* would have been less profitable if Jay-Z had not performed *Big Pimpin'*." 2015 WL 3617040, at *9 (emphasis added). Accordingly, because evidence of defendants' merchandise revenue may be relevant to determine the appropriate measure of plaintiff's damages, defendants' motion is DENIED.

## IV.    DEFENDANTS' DAUBERT MOTIONS

### A.    Daubert Motion No. 1

Defendants seek to exclude the testimony of plaintiff's expert witness Sam Rubin ("Rubin"). Daubert Mot. No. 1. Defendants argue that Rubin is not qualified to offer an expert opinion in this case and that his conclusions are not based on sufficient facts and data or a reliable methodology. Id. at 1.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**          **'O'**

| Case No. | 2:07-cv-05715-CAS(PJWx) | Date | September 24, 2015 |
| --- | --- | --- | --- |
| Title | OSAMA AHMED FAHMY V. JAY Z, ET AL. | | |

Rubin is an entertainment reporter for the Channel 5 morning news in Los Angeles. Dkt. 551-1, Ex. 2 ("Rubin Report"), at 1. He regularly provides televised reports on recent events in the entertainment business, including reports on recording artists. Id. In this capacity, Rubin asserts that he has interviewed dozens of popular musicians and reported on hundreds of concerts and musical events. Id.

Rubin is proffered to testify regarding: (1) whether any profits from Jay-Z's concerts and performance are attributable to *Big Pimpin'*; and (2) methods of trying to estimate the percentage of profits attributable to *Big Pimpin'*. Opp. to Daubert Mot. No. 1, at 1. In his expert report, Rubin concludes that "some profits from Jay-Z concerts are attributable to *Big Pimpin'*." Rubin Report, at 3. This conclusion is based on Rubin's opinion that, because *Big Pimpin'* was a major Jay-Z hit, and because consumers attend concerts to hear musicians perform their hits, at least some consumers likely purchased tickets to Jay-Z concerts out of a desire to hear *Big Pimpin'*. Id. at 3-6. Having reached this conclusion, Rubin also offers his opinion regarding methods for quantifying the impact of *Big Pimpin'* on Jay-Z concert revenues. He concludes that one way of doing this is to divide the revenue equally among the songs performed at a given concert. Id. at 8. For example, if 20 songs were performed at a concert then one could estimate that 5% of the concert's revenue was attributable to each song. Id. Nonetheless, Rubin contends that a merely pro rata apportionment would substantially understate the value of hit songs, such as *Big Pimpin'*. Id. at 9. Therefore, he concludes that a more accurate apportionment analysis would take into account other factors, such as the significance of hit songs to an artist's popularity and the desire of concert goers to hear hit songs. Id. Accordingly, Rubin states that "in [his] opinion it would be reasonable to attribute at least 15 percent of the revenue from a show to *Big Pimpin'*." Id.

Federal Rule of Evidence 702 provides: "If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise." Fed. R. Evid. 702. The district court must "ensure that the proposed expert testimony is relevant and will serve to aid the trier of fact…Expert testimony assists the trier of fact when it provides information beyond the common knowledge of the trier of fact." United States v. Finley, 301 F.3d 1000, 1008 (9th Cir. 2002) (citing Daubert, 509 U.S. at 591–93).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**          **'O'**

| Case No. | 2:07-cv-05715-CAS(PJWx) | Date | September 24, 2015 |
|----------|--------------------------|------|---------------------|
| Title | OSAMA AHMED FAHMY V. JAY Z, ET AL. | | |

The Court finds that the proposed testimony of Rubin does not meet this standard. Regarding Rubin's testimony that *Big Pimpin'* contributed to "some" of defendants' revenue from Jay-Z concerts, Rubin's underlying conclusions are not "expert" opinions. Rather, Rubin's conclusions are based on his personal experiences attending concerts, an experience millions of members of the public and likely many members of the jury share. While personal observation and experience may form the basis of an expert's opinion, they must ultimately result in a specialized opinion; generalized statements regarding Rubin's observations as a concert-attendee lack the necessary substance to be helpful to a jury.  See Alaska Rent-A-Car, Inc. v. Avis Budget Grp, Inc., 738 F.3d 960, 970 (9th Cir. 2013) ("The district court is not tasked with deciding whether the expert is right or wrong, just whether his testimony has substance such that it would be helpful to a jury.").

Furthermore, Rubin does not adequately support his opinions regarding methods for apportioning concert revenues.  While Rubin states generally that factors such as *Big Pimpin'*'s mainstream popularity might support attributing a greater percentage of defendants' concert revenues to *Big Pimpin'*, he does not state in his expert report that he considered these factors or how those factors might function in connection with his 15 percent valuation.  Rather, Rubin provides only his conclusory statement that "it would be reasonable to attribute at least 15 percent of the revenue from a show to *Big Pimpin'*." Expert opinions must be based on sufficient facts and data and must apply reliable methods.  Fed. R. Evid. 702.  Here, Rubin's opinion appears to be based primarily on speculative conclusions and lacks the factual basis required for expert testimony.

Accordingly, because Rubin's testimony does not meet the requirements set forth in Federal Rule of Evidence 702, the Court GRANTS defendants' motion.

**B.     Daubert Motion No. 2**

Defendants seek an order excluding the testimony of plaintiff's expert Michael Kamins ("Kamins") and the consumer survey on which his testimony is based.  Daubert Mot. No. 2.  Defendants' chief criticism of Kamins' testimony is that the consumer survey that he conducted and on which he relies is unreliable.  Id. at 1.

Kamins is a professor and researcher in the fields of marketing and business.  Opp. to Daubert Mot. No. 2, at 1-2.  He has a background in statistics and has published

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**          'O'

| Case No. | 2:07-cv-05715-CAS(PJWx) | Date | September 24, 2015 |
|---|---|---|---|
| Title | OSAMA AHMED FAHMY V. JAY Z, ET AL. | | |

articles on marketing, and in particular survey methodology. Id. at 2. As an expert witness for plaintiff, Kamins created an online survey whose purpose was to measure the importance to consumers of *Big Pimpin'* in relation to Jay-Z's other songs. Id. Survey respondents were first asked a series of qualifying questions to determine their age and gender and whether they had purchased a ticket to see Jay-Z in concert within the last ten years. Id. If respondents qualified for the survey, they were then presented with a list of ten Jay-Z songs and asked three questions about those songs: (1) The last time they bought a ticket to see Jay-Z perform, which, if any, of the songs were they hoping to see Jay-Z perform; (2) would they have been disappointed, and to what extent, if the song had not been performed by Jay-Z; and (3) had they known in advance that the song would not be performed by Jay-Z, would they have been more likely, less likely, or unaffected to buy a ticket. Id. at 2-3. According to Kamins, more than any of the other songs tested, consumers responded that they hoped to see *Big Pimpin'* performed and would have been less likely to buy a ticket had they known it would not be performed. Dkt. 552-1, Ex. 5 ("Kamins Report"), at ¶¶ 33-41. Based on these responses, Kamins is prepared to testify that *Big Pimpin'* was a substantial factor in the decision of many consumers to purchase tickets for Jay-Z concerts. Id.

The Ninth Circuit has held that under Daubert a survey can be admitted if: (1) it is "conducted according to accepted principles"; and (2) it is "relevant" to the issues in the case. Fortune Dynamic, Inc. v. Victoria's Secret Stores Brand Mgmt., 618 F.3d 1025, 1036 (9th Cir. 2010). Defendants contend that Kamins' survey does not meet this standard.

First, defendants argue that the survey results are not "relevant" to this case because the questions Kamins asked respondents have no bearing on whether a causal nexus exists between Jay-Z concert revenues and *Big Pimpin'*. Daubert Mot. No. 2, at 7. However, the survey asked respondents whether they would be "less likely" to attend a Jay-Z concert had they known *Big Pimpin'* would not be performed. Opp. to Daubert Mot. No. 2, at 2-3. Defendants contend that this question is irrelevant because it does not directly ask respondents why they decided to attend a Jay-Z concert. Daubert Mot. No. 2, at 7. However, the fact that a respondent would have been less likely to attend a Jay-Z concert had they known that *Big Pimpin'* would not be performed is at least relevant to establish that *Big Pimpin'* was a motivating factor for some consumers to purchase concert tickets. Defendants also argue that Kamins' intends to offer testimony apportioning defendant's concert revenues to consumers' desire to see a performance of

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**         **'O'**

| Case No. | 2:07-cv-05715-CAS(PJWx) | Date | September 24, 2015 |
|----------|-------------------------|------|--------------------|
| Title | OSAMA AHMED FAHMY V. JAY Z, ET AL. | | |

*Big Pimpin'* and that this analysis relies on data not present in Kamins' survey. Reply in Support of Daubert Mot. No. 2, at 7-8. Nonetheless, while any opinion Kamins' provides as to the precise impact of *Big Pimpin'* on defendants' concert revenues must be derived from his survey data, as the Court understands plaintiff's position he does not intend to proffer any testimony from Kamin's regarding apportionment of defendants' concert revenues that is not supported by the survey.

Second, defendants argue that Kamins' survey should be excluded because it was not "conducted according to accepted principles." Daubert Mot. No. 2, at 5. Specifically, defendants argue that the song list selected by Kamins was designed to exclude Jay-Z's hit songs other than *Big Pimpin'.'* Id. at 5-7. Defendants also argue that the survey improperly excluded teenagers and that Kamins was not sufficiently involved in the design and management of the survey. Id. at 7-10. Taken together, defendants contend that the survey was designed to inflate the importance of *Big Pimpin'* to Jay-Z's live performances. Id. at 5.

However, while defendants may raise valid criticisms of Kamins' survey, generally, "[c]hallenges to survey methodology go to the weight given the survey, not its admissibility." See Wendt v. Host Int'l, Inc., 125 F.3d 806, 814 (9th Cir. 1997); see also Clicks Billiards, Inc. v. Sixshooters, Inc., 251 F.3d 1252, 1263 (9th Cir. 2001) ("Once the survey is admitted, however, follow-on issues of methodology, survey design, reliability, the experience and reputation of the expert, critique of conclusions, and the like go to the weight of the survey rather than its admissibility."). Moreover, Kamins has provided reasonable justifications for the criticisms defendants raise. For example, defendants argue that the survey is unreliable because Kamins excluded respondents who were under eighteen years old, even though consumers in this age group constitute a significant portion of the fan base for hip-hop music. Daubert Mot. No. 2, at 9. However, Kamins' survey asked respondents questions regarding Jay-Z concerts over the past ten years. Respondents who were under eighteen would therefore have been less than eight years old at the start of the survey period. See Opp. to Daubert Mot. No. 2, at 5. Accordingly, while defendants may take issue with Kamins' survey there is at least a rational basis to support his methodology. Defendants' critiques can be effectively addressed through cross-examination. See also Freeland v. Irridium World Commc'ns., Ltd., 545 F. Supp. 2d 59, 88 (D.D.C. Apr. 3, 2008) ("Motorola may cross-examine Saunders about the factual basis of his opinions, but its disagreements with that factual basis does not affect the testimony's admissibility.").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**                    **'O'**

| Case No. | 2:07-cv-05715-CAS(PJWx) | Date | September 24, 2015 |
|---|---|---|---|
| Title | OSAMA AHMED FAHMY V. JAY Z, ET AL. | | |

Finally, defendants argue that Kamins should be excluded because he is not qualified to make the inferences he draws from his survey. Dauber Mot. No. 2, at 10-13. Kamins' survey did not directly ask respondents why they attend concerts. Id. at 12. Nonetheless, based on survey respondents' answers that they hoped to see *Big Pimpin'* performed and would have been less likely to purchase a ticket had they known *Big Pimpin'* would not have been performed, Kamins infers that *Big Pimpin'* was a motivating factor for consumers to purchase Jay-Z tickets. Id. Defendants argue that because Kamins does not have experience in the music industry he is not qualified to draw this inference. Id. at 13. However, the inferences Kamins draws rely not on his knowledge of the music industry, but rather his knowledge of marketing and consumer behaviors generally. Opp. to Daubert Mot. No. 2, at 12. And, he has previously conducted research on the relationship between music and consumer behaviors. Id. Therefore, the Court disagrees with defendants and finds that Kamins possesses the necessary expertise to draw these inferences. [1]

Accordingly, because the Court finds that Kamins' survey is based on sufficiently reliable methodology and that Kamins bears the necessary qualifications to offer his intended testimony, defendants' motion is DENIED.

---

[1] Defendants also assert that Kamins should be precluded from testifying regarding any apportionment analysis because they allege that this analysis was not disclosed in Kamins expert report. Daubert Mot. No. 2, at 13-14. However, Kamins' apportionment analysis is simply an extrapolation from the findings in his consumer survey, which were fully disclosed in Kamins' expert report. Opp. to Daubert Mot. No. 2, at 14. See also Hall, 2012 WL 1155666, at *4 ("[Rule 26(a)(2)(B)] does not limit an expert's testimony simply to reading his report[.] The rule contemplates that the expert will supplement, elaborate upon, and explain his report in his oral testimony."). And, in any event, defendants acknowledge that they have had the opportunity to depose Kamins regarding his apportionment analysis. See Daubert Mot. No. 2, at 13-14. Accordingly, defendants have not suffered any prejudice justifying exclusion pursuant to Federal Rule of Civil Procedure 37(c).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| CIVIL MINUTES - GENERAL | | | 'O' |
|---|---|---|---|
| Case No. | 2:07-cv-05715-CAS(PJWx) | Date | September 24, 2015 |
| Title | OSAMA AHMED FAHMY V. JAY Z, ET AL. | | |

### C.    Daubert Motion No. 3

Defendants seek to exclude testimony relating to concert revenues from plaintiff's expert Patrick Kennedy ("Kennedy").  Daubert Mot. No. 3.  Defendants argue that this portion of Kennedy's testimony is based on the apportionment analyses of plaintiff's expert witnesses Rubin and Kamins, whom defendants have separately filed motions to exclude at trial.  Id. at 1.

Kennedy is an expert economist.  Opp. to Daubert Mot. No. 3, at 1.  At trial he will testify regarding his analysis of various financial documents produced during discovery which track the revenue and profits of defendants.  Id.  For example, he will testify regarding his assessment of the costs and expenses which may be deducted from defendants' allegedly infringing profits.  Id.  And, he will provide summaries of defendants' revenue separated by individual defendant and revenue stream.  Id.  Defendants do not object to these aspects of Kennedy's testimony.  Rather, defendants' sole objection relates to Kennedy's analysis regarding concert revenues.  In his expert report, Kennedy does not make an independent evaluation of the amount of concert revenues that may be attributed to *Big Pimpin'*.  Daubert Mot. No. 3, at 3.  Rather, he directly applies values identified by plaintiff's other experts, Rubin and Kamins, to defendants' relevant concert revenues.  Id.  Defendants argue that because the testimony of these experts is unreliable, any of Kennedy's testimony which relies on their opinions should be excluded as well.  Id. at 3-4.

As a preliminary matter, while the Court has found that Rubin's testimony should be excluded, it has denied defendants' motion to exclude the testimony of Kamins. Therefore, Kennedy may properly testify regarding Kamins' conclusions.  Moreover, Kennedy does not intend to testify regarding the apportionment values identified by Kamins and Rubin in their expert reports.  Rather, his testimony will be based on the apportionment values actually in evidence at trial.  Accordingly, his testimony regarding concert revenues may change depending on the testimony elicited from other expert witnesses, including defendants' experts such as King and Ferrara, and it will be based on testimony deemed admissible by the Court.  As defendants do not object to Kennedy's qualifications or his ability to apply apportionment values to defendants' concert revenues, the Court finds that there is not a persuasive reason to exclude this testimony. Therefore, while Kennedy may not testify regarding testimony the Court has excluded as

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**          **'O'**

| Case No. | 2:07-cv-05715-CAS(PJWx) | Date | September 24, 2015 |
|---|---|---|---|
| Title | OSAMA AHMED FAHMY V. JAY Z, ET AL. | | |

unreliable, he may testify regarding the apportionment values produced at trial and their application to defendants' concert revenues.

For the foregoing reasons, defendants' motion is DENIED.

### D.     Daubert Motion No. 4

Defendants seek to exclude or limit the testimony of Plaintiff's expert Judith Finell ("Finell"). Defs.' Daubert Mot. No. 4. Finell is a musicologist who intends to testify regarding similarities between *Big Pimpin'* and *Khosara*. Id. at 3. Specifically, in her expert report, Finell states that she performed a "3-Way Comparison" between *Big Pimpin'* and two sound recordings of *Khosara*, the 1960 recording of *Khosara* performed by Hafez and the 1992 recording of *Khosara* that appeared on the album "Best of Abdul Halim Hafiz." Dkt. 566-1, Ex. A ("Finell Report"), at 2. The sound recordings of *Khosara* that Finell reviewed are the same two sound recordings defendants have requested the Court exclude in their motion *in limine* No. 3. See Defs.' Mot. in Lim. No. 3. Finell also states that she reviewed the lead sheet containing the written composition of *Khosara*. Finell Report at 2. Based on her review of these materials, Finell concludes that *Big Pimpin'* "contains material substantially similar" to the two sounds recordings. Id. at 3.

Defendants argue that, because plaintiff does not claim to own any copyright in the sound recordings, Finell's testimony regarding similarities between *Big Pimpin'* and the sound recordings is irrelevant, likely to confuse the jury, and based on unsupported factual assumptions (i.e. that the sound recordings accurately represent the scope of plaintiff's copyright). Daubert Mot. No. 4, at 1. Therefore dependants contend that Finell's testimony should either be excluded or limited solely to a comparison of the lead sheet and the *Big Pimpin'* sound recording. Id. at 2.

As stated above, the Courts finds that plaintiff may not introduce either of the sound recordings as evidence of the scope of his copyright in the written composition of *Khosara*. To the extent Finell's testimony relies on a comparison of *Big Pimpin'* and the sound recordings, on which plaintiff admits he does not own a copyright, her testimony carries the same risk of misleading and confusing the jury as presenting the sound recordings themselves. Moreover, to the extent any of the musical elements in the sound recordings are not present in the written composition of *Khosara*, on which plaintiff may

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**          **'O'**

| Case No. | 2:07-cv-05715-CAS(PJWx) | Date | September 24, 2015 |
|---|---|---|---|
| Title | OSAMA AHMED FAHMY V. JAY Z, ET AL. | | |

hold a copyright, Finell's conclusion that the sound recordings and *Big Pimpin'* contain substantial similarities is irrelevant to a finding of infringement.

Nonetheless, because plaintiff contends that he owns a copyright in the written composition of *Khosara,* Finell may still offer testimony regarding similarities between the written composition of *Khosara* and *Big Pimpin'*. For example, Finell could testify regarding a comparison of the copyrighted composition and a recording of *Big Pimpin'*. Accordingly, defendants' motion to limit the testimony of Finell to only similarities found between *Big Pimpin'* and the written composition of *Khosara* is GRANTED. To the extent, based on this ruling, it is necessary for plaintiff to supplement Finell's expert report, plaintiff may request additional time to do so and defendants may request the opportunity to depose Finell regarding any additions to her testimony or expert report.

### E.    Daubert Motion No. 5

Defendants seek to exclude the testimony of plaintiff's expert Scott Marcus ("Marcus"). Daubert Mot. No. 5. Defendants challenge Marcus' qualifications, the relevance of his opinions, and his reliance on the sound recordings. Id. at 1-2.

Marcus will testify as a musicologist on behalf of plaintiff. Opp. to Daubert Mot. No. 5, at 1. Marcus is an expert on Egyptian music and has a PhD in ethnomusicology. Id. He has experience from living and researching in Egypt over the past thirty years. Id. Marcus is currently a full-time professor of musicology and has published a book on Egyptian music. Id. Based on this expertise, Marcus will testify regarding the *Khosara* composition, its composer Hamdy, and its performer Hafez. Id. Further, he will testify regarding the musical significance of *Khosara* to *Big Pimpin'*. Id. at 2.

First, defendants argue that Marcus should be excluded because his testimony focuses primarily on the fame or popularity of *Khosara*, Hamdy, and Hafez in Egypt. Daubert Mot. No.5, at 1. Defendants argue that these topics are irrelevant to the instant dispute. Id. Plaintiff responds that this evidence is relevant because it provides context to the *Khosara* composition, which forms the center of this action. Opp. to Daubert Mot. No. 5, at 2. For example, plaintiff argues that the relative fame of *Khosara* or Hamdy may be relevant to determining whether the amounts plaintiff and his heirs received for a license in *Khosara* were reasonable given the scope of the license defendants allege was transferred. Id. at 3. Furthermore, plaintiff argues that this evidence may be relevant to

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**          **'O'**

| Case No. | 2:07-cv-05715-CAS(PJWx) | Date | September 24, 2015 |
|---|---|---|---|
| Title | OSAMA AHMED FAHMY V. JAY Z, ET AL. | | |

demonstrate the relationship between Hamdy and Hafez and, in particular, how that relationship contributed to the authorship of the sound recordings. Finally, plaintiff argues that this evidence may be relevant to assessing the impact of *Khosara*'s popularity on the success of *Big Pimpin'*. The Court agrees with plaintiff, and finds that, for all of the reasons plaintiff states, evidence of *Khosara*, Hamdy, and Hafez's position in Egypt may be relevant to several issues in this case.

Second, defendants argue that because Marcus has no experience with hip-hop or other contemporary music, he is not qualified to testify regarding the musical significance of *Khosara* to *Big Pimpin'*. Daubert Mot. No. 5, at 8. However, Marcus' testimony is not based on knowledge of hip-hop music. Opp. to Daubert Mot. No. 5, at 6-7. Rather, he applies his expertise as a musicologist and his knowledge of music generally. Id. Accordingly, he is qualified to testify regarding musical elements, such as melody, harmony, and rhythm, and how those apply to *Big Pimpin'*'s use of *Khosara*. To the extent defendants believe that musicology applies differently when evaluating hip-hop or contemporary music, these difference may be effectively addressed through cross-examination.

Finally, defendants contend that Marcus' analysis comparing *Khosara* and *Big Pimpin'* is based upon a consideration of the sound recordings. As stated above, the Court finds that plaintiff may not introduce either of the sound recordings as evidence of the scope of his copyright in the written composition of *Khosara*. Accordingly, to the extent Marcus' testimony regarding similarities between *Big Pimpin'* and *Khosara* relies on the sound recordings, plaintiff may not offer that testimony at trial. Nonetheless, Marcus may still testify regarding similarities between the written composition of *Khosara* and *Big Pimpin'*.

In accordance with the foregoing, defendants' motion is GRANTED in part and DENIED in part. To the extent, based on this ruling, it is necessary for plaintiff to supplement Marcus' expert report, plaintiff may request additional time to do so and defendants may request the opportunity to depose Marcus regarding any additions to his testimony or expert report.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES - GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:07-cv-05715-CAS(PJWx) | Date | September 24, 2015 |
| Title | OSAMA AHMED FAHMY V. JAY Z, ET AL. | | |

## V.    DEFENDANTS REQUEST TO BIFURCATE TRIAL

Defendants move the Court for an order, pursuant to Federal Rule of Civil Procedure 42(b), bifurcating the trial.  Defendants argue that the trial should be bifurcated on two grounds: (1) to resolve issues of foreign law before reaching the other issues in this case; and (2) to bifurcate the liability and damages phases of the trial.

Federal Rule of Civil Procedure 42(b) permits a court to order separate trials of one or more issues for "convenience, to avoid prejudice, or to expedite and economize."  "Whether to bifurcate is a decision reserved to the trial court's sound discretion.'" Estate of Gonzalez v. Hickman, 2007 WL 3237635, at *10 n.18 (C.D. Cal. June 28, 2007) (citing Davis & Cox v. Summa Corp., 751 F.2d 1507, 1517 (9th Cir. 1985)).  "In exercising this discretion, a court should consider such factors as the 'potential prejudice to the parties, potential confusion to the jury, and the relative convenience and economy which would result.'" Id. quoting Cravens v. Cnty. of Wood, 856 F.2d 753, 755 (6th Cir. 1988).

### A.    Bifurcate Foreign Law Issues

Defendants request that the Court resolve certain issues of foreign law at the outset of the trial.  Dkt. 532, at 32.  Specifically, defendants argue that in a 2002 agreement (the "2002 agreement") governed by Egyptian law, plaintiff may have assigned all of his rights in Khosara to a third party not present in this litigation.  Dkt. 568, at 1.  Defendants contend that, before the parties proceed to trial, the Court should determine whether the 2002 agreement effectuated a complete transfer of plaintiff's rights in Khosara, therefore denying plaintiff standing to bring the instant suit.  Id.

The Court has previously addressed the impact of the 2002 agreement on plaintiff's standing.  In an order dated May 27, 2015, the Court found that, while "the 2002 Agreement contains some language that could support a conclusion that plaintiff transferred all of his economic rights in Khosara, Khosara . . . the Court finds the contract to be ambiguous on this point, and not properly adjudicated as a matter of law on the current record."  Dkt. 509, at 7.  In addition, the Court noted that neither party had presented expert testimony regarding the meaning of the 2002 agreement under Egyptian law.  Id.  Ultimately, the Court concluded that there were "genuine issues of fact as to

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**          **'O'**

| Case No. | 2:07-cv-05715-CAS(PJWx) | Date | September 24, 2015 |
| Title | OSAMA AHMED FAHMY V. JAY Z, ET AL. | | |

whether plaintiff conveyed all of his rights," and accordingly refused to dismiss plaintiff's claims on the basis of lack of standing.  Id.

Defendants now contend that both parties have conducted discovery regarding the proper interpretation of the 2002 agreement. Dkt. 568, at 3.  Specifically, the parties have designated experts on Egyptian law and deposed these experts.  Id.  Therefore, defendants argue that to the extent the court did not have sufficient evidence to rule on the issue of plaintiff's standing in its previous order, the record is now sufficiently complete for the Court to reach a ruling on this issue.  Id. at 15.

The Court disagrees.  While discovery may have provided additional evidence from which to interpret the 2002 agreement, genuine issues of material fact still remain. For example, under Egyptian law, a transfer of economic rights must "contain an explicit and detailed indication of each right to be transferred with the extent and purpose of the transfer."  Egyptian Law No. 82 of 2002.  The Court has previously found that the 2002 agreement is ambiguous with regard to this requirement of Egyptian law because it does not explicitly assign the right to modify or adapt *Khosara*.  Dkt. 509, at 7.  Defendants argue that based on the opinion of their expert, when a copyright holder seeks to transfer *all* of his economic rights, a comprehensive list of the specific economic rights transferred is unnecessary.  Dkt. 568, at 9.  Nonetheless, the 2002 agreement does expressly identify some rights while, notably, not clearly authorizing a transfer of the right to modify or adapt *Khosara*.  See Dkt. 509, at 7.  Therefore, ambiguities persist regarding the extent of the rights plaintiff transferred in the 2002 agreement.

Accordingly, because there are still genuine issues of material fact regarding the scope of the 2002 agreement, the Court declines to address the issue of plaintiff's standing at this juncture, and DENIES defendants' request to bifurcate to resolve issues of foreign law first.

## B.     Bifurcate Liability and Damages

Defendants also seek to bifurcate the liability and damages portions of the trial. Dkt. 532, at 29.  Bifurcating a trial "into a liability and damages phase may be appropriate where doing so would be economical and efficient, and where there is little overlap in the evidence that would be presented at each phase."  Pom Wonderful L.L.C.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL          'O'

| Case No. | 2:07-cv-05715-CAS(PJWx) | Date | September 24, 2015 |
|---|---|---|---|
| Title | OSAMA AHMED FAHMY V. JAY Z, ET AL. | | |

v. Welch Foods, Inc., 2010 WL 4794235, at *4 (C.D. Cal. Nov. 18, 2010) (citing Arthur Young & Co. v. U.S. District Court, 549 F.2d 686, 697 (9th Cir. 1979)).

    The Court finds that bifurcating the liability and damages phases of the trial is appropriate in this case. First, the liability and damages portions of the trial involve separate and distinct issues. The liability portion of the trial centers on whether defendants infringed a copyright owned by plaintiff. See Dkt. 532, at 30. By contrast, the damages portion of the trial involves calculating plaintiff's actual damages and any profits of defendants attributable to infringement of the *Khosara* copyright. See Id. These issues will involve largely different documents and witnesses. For example, in the liability phase, the parties will present evidence on plaintiff's ownership of *Khosara*, the scope of any copyright in *Khosara*, and whether defendants infringed that copyright in *Big Pimpin'*. Id. at 30. However, in the damages phase, the parties will present financial data and records pertaining to defendants' businesses, as well as testimony from experts on methods for apportioning profits to any infringing portions of *Big Pimpin'*. Id. at 30-31. Accordingly, there will be at most only minimal overlap in the evidence presented at each phase of the trial. See also Pom Wonderful, 2010 WL 4794235, at *4 (noting that "it should be easy" to establish liability without reaching evidence of damages).

    Furthermore, bifurcating the trial may conserve judicial resources because the liability portion of the trial may obviate the need for a trial on damages. The damages portion of the trial will require the parties to present extensive financial information as well as numerous witnesses to authenticate and interpret this information. Dkt. 532 at 30-31. In addition, multiple experts will testify regarding the connection between *Big Pimpin'* and defendants' profits and regarding the complex question of apportioning the contribution of *Khosara* to defendants' profits. Id. If defendants prevail on the issue of liability, there will be no need for the parties to present this evidence. See also Bates v. United Parcel Service, 204 F.R.D. 440, 449 (N.D. Cal. Nov. 1, 2001) ("Judicial economy would be further promoted because bifurcation might eliminate the need to consider evidence of damages.").[2]

---

[2] The Court previously denied a request from defendants to bifurcate the trial. Dkt.418, at 9-10. However, in that request defendants proposed bifurcating both trial and discovery, which would have caused undue delay. Id. In contrast, here discovery has already been completed and the Court anticipates back-to-back trials with the same jury.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**          **'O'**

| Case No. | 2:07-cv-05715-CAS(PJWx) | Date | September 24, 2015 |
|---|---|---|---|
| Title | OSAMA AHMED FAHMY V. JAY Z, ET AL. | | |

Accordingly, because the issues of damages and liability may readily be separated in this case and because resolving the issue of liability first may promote judicial economy, the Court GRANTS defendants' request to bifurcate the liability and damages portions of the trial.

IT IS SO ORDERED.

|  | 00 | : | 00 |
|---|---|---|---|
| Initials of Preparer | | CMJ | |

Accordingly, bifurcating the trial into a liability and damages phase at this stage will not cause undue delay.