BROWNE GEORGE ROSS LLP
Peter W. Ross (State Bar No. 109741)
  pross@bgrfirm.com
Keith J. Wesley (State Bar No. 229276)
  kwesley@bgrfirm.com
Jonathan L. Gottfried (State Bar No. 282301)
  jgottfried@bgrfirm.com
2121 Avenue of the Stars, Suite 2400
Los Angeles, California 90067
Telephone: (310) 274-7100 / Facsimile: (310) 275-5697

Attorneys for Plaintiff
OSAMA AHMED FAHMY

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| OSAMA AHMED FAHMY, an individual,<br><br>Plaintiff,<br><br>vs.<br><br>JAY-Z (aka SHAWN CARTER), TIMOTHY MOSELY, KYAMBO JOSHUA, ROB BOURDON, BRAD DELSON, MIKE SHINODA, DAVE FARRELL, JOSEPH HAHN, CHESTER BENNINGTON, BIG BAD MR. HAHN MUSIC, CHESTERCHAZ PUBLISHING, EMI BLACKWOOD MUSIC, INC., EMI MUSIC PUBLISHING LTD., KENJI KOBAYASHI MUSIC, LIL LULU PUBLISHING, MACHINE SHOP RECORDINGS, LLC, MARCY PROJECTS PRODUCTIONS II, INC., MTV NETWORKS ENTERPRISES INC., NONDISCLOSURE AGREEMENT MUSIC, PARAMOUNT HOME ENTERTAINMENT, INC., PARAMOUNT PICTURES CORPORATION, RADICAL MEDIA, ROB BOURDON MUSIC, ROC-A-FELLA RECORDS, LLC, TIMBALAND PRODUCTIONS, INC., UMG RECORDINGS, INC., UNIVERSAL MUSIC AND VIDEO DISTRIBUTION, INC., AND WARNER MUSIC INC.,<br><br>Defendants. | Case No. 2:07-CV-05715 CAS (PJWx)<br>The Hon. Christina A. Snyder<br><br>**PLAINTIFF OSAMA AHMED FAHMY'S OBJECTIONS TO DEFENDANTS' PROPOSED SPECIAL VERDICT FORMS**<br><br>Date:   October 13, 2015<br>Time:   9:30 a.m.<br>Crtrm.: 5<br><br>Jury Trial Date:<br>        Oct. 13, 2015, at 9:30 a.m. |

565969.1

Plaintiff Osama Ahmed Fahmy ("Plaintiff") objects to defendants' proposed special verdict forms (Dkt. 659) as follows:

Plaintiff's general objection to defendants' 40+ page jury verdict is that it is too long and too confusing. In seeking clarity on each aspect of the case, defendants accomplish the opposite goal: creating confusion through numerous questions (and, often, variations on the same question), several of which misstate the law.

1. **Defendants' Liability Section A (License/Standing)**

Question 1 asks, "Did Defendants receive a license to exploit *Big Pimpin'*?" Unless defendants mean "*Khosara Khosara*" instead of "*Big Pimpin'*," this question is confusing. This question is also misleading. Even if defendants received a license to exploit *Khosara,* any such license could have been limited in a way that prevented defendants from using *Khosara* as used in *Big Pimpin'*. Defendants' question leaves no room for such distinctions.

Defendants' three questions create more work for, and a potential for confusion of, the jury. If the jury, following their instructions, determine that the existence of a license leads to a verdict for defendants, they can simply check "No" in question 1 of plaintiff's simpler proposed jury verdict form ("Did the plaintiff prove by a preponderance of the evidence that his copyright in the musical composition *Khosara Khosara* was infringed by *Big Pimpin'*?").

Further, questions 2 and 3 are misleading. Both presume that a transfer of "economic" rights in *Khosara Khosara* leads inexorably to a right for defendants to create and profit from their derivative work of *Khosara Khosara* in *Big Pimpin'*. However, if (as plaintiff explains in his objections to Defendants' proposed jury instructions) plaintiff retained moral rights in *Khosara Khosara* that he could not license away, and if those rights bar defendants' exploitation of *Big Pimpin'*, the passage of economic rights from plaintiff to others does not bar the jury from finding for plaintiff.

### 2. Defendants' Liability Section B (Equitable Estoppel)

Defendants acknowledge that estoppel is an equitable defense. Consequently, the issue should not be submitted to the jury. *See Granite State Ins. Co. v. Smart Modular Technologies, Inc.*, 76 F.3d 1023, 1027 (9th Cir. 1996) ("A litigant is not entitled to have a jury resolve a disputed affirmative defense if the defense is equitable in nature….The doctrine of equitable estoppel is pre-eminently the creature of equity." (internal quotation marks omitted)).

Further, this instruction is perplexing. It tells the jury to consider an issue (estoppel), and *then* tells the jury that if it answered "yes" to any of the questions *in the previous section*, then it has found for defendants. It is not clear why defendants have taken this approach, which is likely to confuse the jury. (Also, as explained above, it is not true that simply answering "yes" to one of the questions in Section A leads automatically to a verdict for defendants.)

### 3. Defendants' Liability Section C (Copyright Ownership)

Defendants' two questions on copyright create more work for, and a potential for confusion of, the jury. If the jury, following their instructions, determine that a lack of authorship or originality leads to a verdict for defendants, they can simply check "No" in question 1 of plaintiff's far simpler proposed jury verdict form.

Further, the Court has already determined as a matter of law that Baligh Hamdy authored the musical composition of *Khosara Khosara*. (Dkt 271 at 18 ("The Court GRANTS plaintiff's motion for partial summary judgment with respect to the following issues: (1) that Baligh Hamdy authored and owned the copyright in the 'Khosara, Khosara' musical composition").) It is therefore improper to ask the jury question 5.

### 4. Defendants' Liability Section D (Copying)

Defendants' eighteen questions (including numerous sub-parts) on copying are unnecessary to the resolution of this action. They merely create more work for,

and a potential for confusion of, the jury. Furthermore, these questions incorrectly assume that plaintiff's copyright is limited to the musical composition in the "lead sheet."

### 5     Defendants' Liability Section E (Blanket License)

As explained in plaintiff's objection to defendants' disputed Jury Instruction No. 17, defendants have not established that the jury should be instructed on the concept of blanket license. It is likewise improper, therefore, to place the issue of blanket license in the jury verdict form.

The sole authority that defendants cite for an instruction on blanket license—a 2005 decision from the Southern District of New York (*Freeplay Music, Inc. v. Cox Radio, Inc.*, 404 F. Supp. 2d 548 (S.D.N.Y. 2005))—does not support defendants' blanket license theory. Although the phrases "blanket license" and "performing rights" each appear once in that opinion, it does not otherwise support defendants' points.

Moreover, defendants' theory is wrong as a matter of facts and law. Even assuming that a performing rights organization had a nonexclusive right to further license the public performance of the *Khosara* musical composition, defendants used a derivative work of *Khosara*, which was not authorized. *See Bridgeport Music, Inc. v. Robert Hill Music,* No. 3:05 0377, 2006 WL 3720349, at *11 (M.D. Tenn. Dec. 14, 2006) ("USOP claims that any income it has received or will receive from BMI for the public performance of *I Know You Got Soul*, even assuming *I Know You Got Soul* is infringing, does not constitute infringement as blanket public performance licenses have been issued to BMI for both *I Know You Got Soul* and *You'll Like It Too*…Bridgeport [responds] that the BMI blanket licenses do not authorize the creation of derivative works of compositions in the BMI repertoire….[The Court concludes that] USOP's argument regarding the blanket licenses is simply nonsensical. If USOP's argument is accepted, any copyright

holder issuing public performance licenses to BMI would then also be permitting any person to create unauthorized derivative works with their copyrighted compositions (and to collect the public performance revenue for these unauthorized derivative works), so long as these unauthorized derivative works were then licensed to BMI. This argument clearly contradicts not only the Copyright Act itself but is also clearly not what the *Freeplay* case purports.").

Finally, question 10 is incomplete in that it treats all venues as one. The jury is not provided the option of deciding that some venues, but not others, possessed the kind of license that defendants (incorrectly) imagine could have protected Carter's performances of *Big Pimpin'*.

### 6. Defendants' Liability Section F (Fair Use)

Defendants' question on fair use is unnecessary to the resolution of this action. It merely creates more work for, and a potential for confusion of, the jury. If the jury, following their instructions, determine that fair use leads to a verdict for defendants, they can simply check "No" in question 1 of plaintiff's far simpler proposed jury verdict form.

### 7. Defendants' Liability Section G (Willful Infringement)

The parties agree that the jury should be asked whether each defendant willfully infringed plaintiff's copyright. Plaintiff submits that his proposed question 2, with accompanying chart, is simpler and easier to understand than defendants' liability question 12, with its sub-parts.

### 8. Defendants' Damages Section A (Apportionment / Song Apportionment)

Throughout these proposed questions, jurors are asked to determine the profits that "directly resulted" from infringing activity. But plaintiff is entitled to "profits of the infringer that are *attributable* to the infringement." 17 U.S.C. § 504(b) (emphasis added). *See also* Ninth Circuit's Model Jury Instruction No.

17.24 ("[T]he copyright owner is entitled to any profits of the defendant attributable to the infringement.").

Furthermore, breaking down apportionment for each separate version of *Big Pimpin'* released merely creates more work for, and a potential for confusion of, the jury. Plaintiff's proposed jury instructions set forth the method of calculating damages in a manner that the jury will be able easily to follow without the addition of an intricate verdict form.

### 9. Defendants' Damages Sections B-J—Apportionment Among Defendants

Defendants' ninety-seven questions on apportionment of damages among defendants are convoluted, confusing, and unnecessary.

*First*, many of the questions say that the parties have stipulated that a party "generated revenue of $xxxxxx in connection with" an album or film. Other questions presume stipulations of, among other things, the amount of royalties or taxes paid. Other questions presume that plaintiff has stipulated that a form of expense is an expense properly deductible from the jury's damages calculation. Plaintiff has made none of these various stipulations.

*Second*, many of the questions are redundant of earlier questions involving liability.

*Third*, some of the questions ask how much a defendant paid in taxes. With regard to Carter, the questions improperly assume that there has been no showing of willful infringement—in which event income tax is not a deductible expense. *See Three Boys Music Corp. v. Bolton*, 212 F.3d 477, 487 (9th Cir. 2000) ("The Supreme Court held that willful infringers could not deduct income taxes...." (citing *L.P. Larson, Jr., Co. v. Wm. Wrigley, Jr., Co.*, 277 U.S. 97, 99–100, 48 S.Ct. 449 (1928)).

*Finally*, throughout these proposed questions, jurors are asked to determine

the profits that "directly resulted" from infringing activity. But plaintiff is entitled to "profits of the infringer that are *attributable* to the infringement." 17 U.S.C. § 504(b) (emphasis added). *See also* Ninth Circuit's Model Jury Instruction No. 17.24 ("[T]he copyright owner is entitled to any profits of the defendant attributable to the infringement.").

### 10. Defendants' Liability Section K (Concert Revenue)

Plaintiff's proposed jury's instructions set forth the method of damages calculation in a manner that the jury will be able easily to follow without the addition of an intricate verdict form, such as that used by defendants.

Defendants' questions on concert revenue contain superfluous commentary (e.g., "Please keep in mind that you may only consider revenue earned after August 31, 2004") that renders the questions argumentative.

Furthermore, the list of supposed "factors" that the jury may use to calculate a deduction of concert revenue is unproven and misleading. For example, the "factors" include "Mr. Carter's celebrity and star power." There is no authority for this statement; and defense expert, Dr. Jason King, admitted that Mr. Carter's celebrity and star power are intertwined with Mr. Carter's music, including *Big Pimpin'*. So it would be improper to deduct revenues relating to celebrity, star power and marketing. Additionally, the list mentions the possibility of deducting revenue based on *Big Pimpin'*'s "hook," even though the copied portion of *Khosara Khosara* is the song's hook.

Further, question 124.c, which asks the jury to deduct "the value of the sound recording of *Khosara Khosara* (as opposed to the musical composition)," is vague and likely to confuse the jury.

Finally, as discussed above, throughout these proposed questions, jurors are asked to determine the profits were a "direct consequence" of the infringing activity. But plaintiff is entitled to "profits of the infringer that are *attributable* to the

infringement." 17 U.S.C. § 504(b) (emphasis added). *See also* Ninth Circuit's Model Jury Instruction No. 17.24 ("[T]he copyright owner is entitled to any profits of the defendant attributable to the infringement."). Defendants' misstate the standard.

Dated: October 9, 2015

BROWNE GEORGE ROSS LLP
Peter W. Ross
Keith J. Wesley
Jonathan L. Gottfried

By  /s/ Keith Wesley
　　　Keith J. Wesley
Attorneys for Plaintiff Osama Ahmed Fahmy

# PROOF OF SERVICE

**STATE OF CALIFORNIA, COUNTY OF LOS ANGELES**

At the time of service, I was over 18 years of age and not a party to this action. I am employed in the County of Los Angeles, State of California. My business address is 2121 Avenue of the Stars, Suite 2400, Los Angeles, CA 90067.

On October 9, 2015, I served true copies of the following document(s) described as **PLAINTIFF OSAMA AHMED FAHMY'S OBJECTIONS TO DEFENDANTS' PROPOSED SPECIAL VERDICT FORMS** on the interested parties in this action as follows:

**SEE ATTACHED SERVICE LIST**

**BY CM/ECF NOTICE OF ELECTRONIC FILING:** I electronically filed the document(s) with the Clerk of the Court by using the CM/ECF system. Participants in the case who are registered CM/ECF users will be served by the CM/ECF system. Participants in the case who are not registered CM/ECF users will be served by mail or by other means permitted by the court rules.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on October 9, 2015, at Los Angeles, California.

/s/ Kathy Hall
Kathy Hall

565969.1

# SERVICE LIST

*Osama Ahmed Fahmy v. Jay-Z (aka Shawn Carter), et al.*

**United States District Court, Western Division –
Case No. 2:07-CV-05715 CAS (PJWx)**

| | |
|---|---|
| Linda M. Burrow, Esq.<br>CALDWELL LESLIE<br>725 South Figueroa Street, 31st Floor<br>Los Angeles, California 90017<br>Tel.: (213)629-9040<br>Fax: (213)629-9022<br>Email: burrow@caldwell-leslie.com | Attorneys for Defendant<br>Shawn Carter (pka Jay Z) |
| JENNER & BLOCK LLP<br>Andrew Bart, Esq.<br>Ava U. McAlpin, Esq.<br>919 Third Avenue<br>New York, NY 10022<br>Tel: 212.891.1600<br>Fax: 212.891-1699<br>Email:   abart@jenner.com<br>        amcalpin@jenner.com | Lead Counsel for Defendant<br>Shawn Carter (pka Jay Z) |
| JENNER & BLOCK LLP<br>Daniel A. Rozansky, Esq.<br>L. David Russell, Esq.<br>633 West 5th Street, Suite 3600<br>Los Angeles, California 90071<br>Tel.: (213) 239-5100<br>Fax: (213) 239-5199<br>drozansky@jenner.com<br>drussell@jenner.com | |

565969.1

PLAINTIFF OSAMA AHMED FAHMY'S OBJECTIONS TO DEFENDANTS'
PROPOSED SPECIAL VERDICT FORMS

| | |
|---|---|
| Russell J. Frackman, Esq.<br>David Steinberg, Esq.<br>Alexa L. Lewis, Esq.<br>MITCHELL SILBERBERG & KNUPP LLP<br>11377 West Olympic Boulevard<br>Los Angeles, California 90064-1683<br>Tel.: 310.312.2000<br>Fax: 310.312.3100<br>Email: rjf@msk.com<br>       all@msk.com<br>       das@msk.com<br><br>Christine T. Lepera (Pro Hac Vice)<br>MITCHELL SILBERBERG & KNUPP LLP<br>12 East 49th Street, 30th Floor<br>New York, NY 10017<br>Tel.: 212.509-3900<br>Fax: 212.5097239<br>Email: ctl@msk.com | Attorneys for Defendants Timothy Mosely, Kyambo Joshua, Rob Bourdon, Brad Delson, Mike Shinoda, Dave Farrell, Joseph Hahn, Chester Bennington, Big Bad Mr. Hahn Music, Chesterchaz Publishing, EMI Blackwood Music, Inc., EMI Music Publishing Ltd., Kenji Kobayashi Music, Lil Lulu Publishing, Machine Shop Recordings, LLC, Marcy Projects Productions II, Inc., MTV Networks Enterprises Inc., Nondisclosure Agreement Music, Paramount Home Entertainment, Inc., Paramount Pictures Corporation, Radical Media, Rob Bourdon Music, Roc-A-Fella Records, LLC, Timbaland Productions, Inc., UMG Recordings, Inc., Universal Music and Video Distribution, Inc., and Warner Music Inc. |

565969.1

PLAINTIFF OSAMA AHMED FAHMY'S OBJECTIONS TO DEFENDANTS' PROPOSED SPECIAL VERDICT FORMS