1  BROWNE GEORGE ROSS LLP
2  Peter W. Ross (State Bar No. 109741)
     pross@bgrfirm.com
3  Keith J. Wesley (State Bar No. 229276)
     kwesley@bgrfirm.com
4  Jonathan L. Gottfried (State Bar No. 282301)
     jgottfried@bgrfirm.com
5  2121 Avenue of the Stars, Suite 2400
6  Los Angeles, California 90067
7  Telephone: (310) 274-7100
   Facsimile: (310) 275-5697
8  Attorneys for Plaintiff
9  Osama Ahmed Fahmy

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| Osama Ahmed Fahmy, an individual, Plaintiff, vs. Jay-Z (aka Shawn Carter), Timothy Mosely, Kyambo Joshua, Rob Bourdon, Brad Delson, Mike Shinoda, Dave Farrell, Joseph Hahn, Chester Bennington, Big Bad Mr. Hahn Music, Chesterchaz Publishing, EMI Blackwood Music, Inc., EMI Music Publishing Ltd., Kenji Kobayashi Music, Lil Lulu Publishing, Machine Shop Recordings, LLC, Marcy Projects Productions II, Inc., MTV Networks Enterprises Inc., Nondisclosure Agreement Music, Paramount Home Entertainment, Inc., Paramount Pictures Corporation, Radical Media, Rob Bourdon Music, Roc-A-Fella Records, LLC, Timbaland Productions, Inc., UMG Recordings, Inc., Universal Music and Video Distribution, Inc., and Warner Music Inc., Defendants. | Case No. 07-CV-05715 CAS (PJWx) The Hon. Christina A. Snyder **PLAINTIFF'S OBJECTIONS TO DISPUTED JURY INSTRUCTIONS PROPOSED BY DEFENDANTS** Complaint filed:  August 31, 2007 Trial Date:  Oct. 13, 2015 |

Plaintiff Osama Ahmed Fahmy hereby lodges the following objections to the disputed jury instructions proposed jointly by defendants.

## DEFENDANTS' DISPUTED JURY INSTRUCTIONS

**1.     Defendants' Instruction No. 1 Re: (Conduct of the Jury)**

The parties agree that the Court should issue an instruction on the conduct of the jury.  But defendants' proposed sentence, "The lawyers are also obligated not to communicate with you during the course of trial," should be stricken.  The sentence is inaccurate; the lawyers will communicate with the jury during opening and closing statements.  The sentence is also unnecessary.  Consequently, the Court should use plaintiff's Jury Instruction No. 1.

**2.     Defendants' Instruction No. 2 Re: Contract Interpretation (General)**

The parties agree that the Court should issue a general instruction regarding contract interpretation.   Plaintiff's Instruction No. 17 is based on the California Civil Jury Instruction ("CACI") No. 314.  Defendants' Instruction No. 2 is also based on CACI No. 314 but adds the unnecessary and argumentative preamble: "in order to determine whether Plaintiff transferred, sold, licensed or otherwise conveyed to another person any or all of his interest in the *Khosara* composition, you must interpret contracts."

Consequently, the Court should use plaintiff's Instruction No. 17 instead of defendants' Instruction No. 2.

**3.     Defendants' Instruction No. 3 Re: (Writing Sole Guide)**

As shown by the content of the instruction itself, the title of the instruction, "Writing Sole Guide," is misleading.  The writing governs if "the language is clear and explicit, and does not involve an absurdity."  Cal. Civ. Code § 1638; see also *id.* § 1647 ("A contract may be explained by reference to the circumstances under which it was made, and the matter to which it relates").  Plaintiff proposes the following title for this instruction: "Importance of Writing."

**4.     Defendants' Instruction No. 4 Re: Contract Interpretation (Giving Effect to General Intent and Purposes)**

This instruction is incomplete and misleading.  If this instruction is given, the Could should also give an instruction—either in this instruction or in the parties' Joint Proposed Instruction No. 30 ("Construction of Contract as a Whole")—informing the jury that "The whole of a contract is to be taken together, so as to give effect to every part."  Cal. Civ. Code § 1641 (emphasis added).

**5.     Defendants Instruction No. 5 Re: Interpretation (Construction by Conduct)**

Plaintiff does not object to this instruction, which defense counsel did not timely provide to plaintiff's counsel during the meet and confer process on jury instructions.

**6.     Defendants' Instruction No. 6 Re: Statute of Limitations**

The manner in which defendants have framed this instruction is argumentative because it suggests that the Court has made rulings against plaintiff's case.   To the extent that the Court gives any instruction on statute of limitations, plaintiff proposes the following:

> Plaintiff is not seeking damages for copyright infringement that occurred prior to August 31, 2004.  You should therefore determine whether any defendant committed copyright infringement only on or after August 31, 2014.

**7.     Defendants' Instruction No. 7 Re:  Introduction to Copyright Claim**

The parties agree that the Court should issue an instruction that introduces the jury to copyright.  Plaintiff's Instruction No. 2 follows the Ninth Circuit's Model Jury Instruction No. 17.1.  Defendants' Instruction No. 7 claims to follow the Model Jury Instruction No. 17.1 but differs from it in important respects.  For example, the Model Jury Instruction No. 17.1 (and plaintiff's Instruction No. 2) list the following exclusive right: "display publicly a copyrighted musical work."  Defendants omit

1  this right.  The Model Rule further provides that "An owner may enforce these
2  rights to exclude others in an action for copyright infringement."  Defendants'
3  Instruction No. 7 does not mention that point.   Moreover, the last line of
4  defendants' Instruction No. 7 ("Copyright does not protect ideas or themes, only an
5  author's particularized expression of an idea or theme.") is not supported by any
6  Ninth Circuit authority cited by defendants and risks confusing the jury without
7  further explanation.

8       Consequently, the Court should adopt plaintiff's Instruction No. 2 instead of
9  defendants' Instruction No. 7.

10       **8.    Defendants' Instruction No. 8 Re:  Explanation of Musical**
11            **Compositions and Sound Recordings.**

12       All parties believe that the Court should issue an instruction on copyrights in
13  musical compositions and sound recordings.

14       Defendants' sole authority for their instruction is a Ninth Circuit opinion that
15  was amended and superseded.   *See Newton v. Diamond*, 349 F.3d 591 (9th Cir.
16  2003) opinion amended and superseded on denial of reh'g, 388 F.3d 1189 (9th Cir.
17  2004).   Moreover, while the superseded opinion states that "[s]ound recordings and
18  their underlying compositions are separate works with their own distinct copyrights"
19  (*id.* at 593), none of the other language in defendants' Instruction No. 8 is found in
20  *Newton.*  Moreover, the language that "Plaintiff may not prove ownership or
21  authorship of any *Khosara* musical composition based upon any sound recordings"
22  is superfluous in light of the fact that the Court has prevented plaintiff from playing
23  the requested sound recordings of *Khosara.*

24       In contrast, plaintiff's Instruction No. 6 follows directly from 17 U.S.C.
25  § 102(a)(2) & (7); case law in this Circuit, and *Nimmer on Copyright.*
26  Consequently, the Court should adopt plaintiff's Instruction No. 6 instead of
27  defendants' Instruction No. 8.

28

**9.     Defendants' Instruction No. 9 Re: Right to Receive Royalties**

Defendants' Instruction No. 9 creates the impression that royalty provisions are irrelevant to any issue in this case because it involves copyright infringement. That is inaccurate.  In the pre-trial conference order, plaintiff indicated that the following issue should be ruled upon by the Court following a jury trial: Is plaintiff entitled to an ongoing royalty from future exploitation of *Big Pimpin*, and, if so, in what amount?  "'[W]here great public injury would be worked by an injunction, the courts might ... award damages or a continuing royalty instead of an injunction in such special circumstances.'"  *Abend v. MCA, Inc.*, 863 F.2d 1465, 1479 (9th Cir. 1988) (quoting 3 M. Nimmer, *Nimmer on Copyright* § 14.06[B] at 14–56.2 (1988)). In *Abend*, the Ninth Circuit found "special circumstances" when asked to enjoin the *Rear Window* film because, among other reasons, "[a]n injunction would...effectively foreclose defendants from enjoying legitimate profits derived from exploitation of the 'new matter' comprising the derivative work." *Id.  See also Petrella v. Metro–Goldwyn–Mayer, Inc.*, 134 S.Ct. 1962, 1979 (2014) (citing with approval Government's observation at oral argument that district court had "considerable leeway" to "fashion[ ] equitable remedies," including permitting the defendant to continue using the allegedly infringing work as "a derivative work upon payment of a reasonable royalty" to the plaintiff); *Practice Mgmt. Info. Corp. v. Am. Med. Ass'n,* 121 F.3d 516, 519 (9th Cir.1997), as amended, 133 F.3d 1140 (9th Cir. 1998) ("mandatory licensing at a reasonable royalty could be required" as remedy for infringement in lieu of injunction); *Williams v. Bridgeport Music, Inc.*, No. LACV1306004JAKAGRX, 2015 WL 4479500, at *42 (C.D. Cal. July 14, 2015) (awarding running royalty for copyright infringement).

Defendants' Instruction No. 9 is misleading in other ways.  Certain agreements at issue in this case contain royalty provisions, which may be relevant to evaluating what rights (including accompanying copyrights) were transferred to whom.

1    Consequently, the Court should exclude defendants' Instruction No. 9.

2    **10.    Defendants' Instruction No. 10 Re: Ownership and Copying**

3    All parties believe the Court should issue an instruction on copyright
4    ownership and copying.  Plaintiff's Instruction No. 3 tracks the Ninth Circuit's
5    Model Jury Instruction No. 17.4.  Defendants have likewise adopted most of this
6    Model Jury Instruction but added: "As I will explain to you in a moment, the term
7    'original' has a special meaning for purposes of copyright law that may be different
8    from your everyday use of the term."  This is unnecessary.  The unmodified model
9    instruction is more concise and clear.

10   Consequently, the Court should adopt plaintiff's Instruction No. 3 instead of
11   defendants' Instruction No. 10.

12   **11.    Defendants' Instruction No. 11 Re: Ownership of a Valid**
13   **Copyright**

14   The Ninth Circuit's Model Jury Instruction No. 17.5 provides a legally
15   accurate, concise and comprehensible statement regarding ownership of a valid
16   copyright.  In contrast, defendants' Instruction No. 11 unnecessarily repeats
17   language from the instruction on "burden of proof."   Furthermore, the statement
18   regarding "compli[ance] with all of the formalities of the copyright law" is
19   confusing in this case, where the work was created in a foreign country.

20   Consequently, the Court should either not include an instruction on ownership
21   or should adopt Model Jury Instruction No. 17.5

22   **12.    Defendants' Instruction No. 12 Re: Originality**

23   The parties agree that the Court should issue a jury instruction on originality.
24   Plaintiff's Instruction No. 4 follows the Ninth Circuit's Model Jury Instruction No.
25   17.12.  Defendants' Instruction No. 12 is convoluted, misstates the law and is
26   unsupported by their authority.  For example, defendants claim that their instruction
27   is based on Federal Jury Practice & Instructions § 160.23 (5th ed. 2001).   But they
28   omit significant parts of that that instruction, including the following: "The work

1  need not be completely, entirely original. It may include or incorporate elements

2  taken from prior works, from works used with their owner's permission or from

3  works in the public domain.  Where plaintiff's work was taken from previous work,

4  there is no precise rule as to how much must have originated from the plaintiff in

5  order for plaintiff to claim copyright protection.  Trivial originality is not enough."

6       Consequently, the Court should use plaintiff's Instruction No. 4 instead of

7  defendants' Instruction No. 12.

8       **13.    Defendants' Instruction No. 13 Re: Fair Use**

9       The Ninth Circuit's Model Jury Instruction No. 17.18 addresses the

10  affirmative defense of fair use.  Defendants' Instruction No. 13 omits important

11  parts of the Model Jury Instruction.  For example, Model Jury Instruction No. 17.18

12  states: "One who is not the owner of the copyright may use the copyrighted work in

13  a reasonable way under the circumstances without the consent of the copyright

14  owner if it would advance the public interest."  Defendants' Instruction No. 13

15  omits "if it would advance the public interest."  Likewise, Model Jury Instruction

16  No. 17.18 states "Defendant contends that defendant made fair use of the

17  copyrighted work for the purpose of [criticism] [comment] [news reporting]

18  [teaching] [scholarship] [research] [other purpose alleged]."  Defendants'

19  Instruction No. 13 omits this phrase.  Moreover, defendants' discussion of

20  transformation is confusing, and "[a] leading treatise on this topic has lamented the

21  frequent misuse of the transformation test, complaining that it has become a

22  conclusory label which is 'all things to all people.'"  *Seltzer v. Green Day, Inc.*, 725

23  F.3d 1170, 1176 (9th Cir. 2013) (citing Melville B. Nimmer & David Nimmer, 4

24  Nimmer on Copyright § 13.05 [A][1][b], 13–168–70 (2011)).

25       Consequently, the Court should use the Ninth Circuit's Model Jury

26  Instruction No. 17.18.

27

28

**14.    Defendants' Instruction No. 14 Re: Copyright Interests—(Assignee)**

Defendants' Instruction No. 14 copies one of the three paragraphs of the Ninth Circuit's Model Jury Instruction No. 17.10.  But it omits that the assignment must be in writing.  That requirement should be included.

**15.    Defendants' Instruction No. 15 Re: Copyright Interests—(Exclusive Licensee)**

Defendants rely upon the Ninth Circuit Model Jury Instruction 17.11.  But Defendants omit the Model Jury Instruction's first paragraph:

> [In this case, the [plaintiff] [defendant] does not claim to be the [author] [creator] [initial owner] of the copyright at issue.  Instead, the [plaintiff] [defendant] claims the copyright by virtue of an exclusive license from the work's [author] [creator] [initial owner] and that the [plaintiff] [ defendant] is now the exclusive licensee of the copyright.]

If this instruction is used, the Court should add the following sentence from the Model Instruction: "In this case, defendants do not claim to be the author, creator, or initial owner of the copyright at issue."

**16.    Defendants' Instruction No. 16 Re: Copyright Interests—(Nonexclusive Licensee)**

Plaintiff objects to this instruction because the original licenses at issue are governed under Egyptian law.  That is so because they are contracts between Egyptians that were entered into in Egypt and relate to Egyptian works.  *Itar-Tass Russian News Agency v. Russian Kurier, Inc.*, 153 F.3d 82, 84 (2d Cir. 1998); *Russian Academy of Sciences v. Am. Geophysical Union*, 1998 WL 34333239, at *1 (D.D.C. 1998); Restatement (Second) Conflicts of Laws, §§ 108-09, 222 (1971).

Egyptian law does not permit licenses to be granted orally or to be implied by conduct.  Dkt. 531-1, Ex. A to Plaintiff's Memorandum of Contentions of Fact and Law, 1954 Law at Art. 37; Ex. B, 2002 Law at Art. 149.  Both parties' Egyptian law experts agree on this point.  Therefore, this instruction is a misstatement of the law.

1  **17.   Defendants' Instruction No. 17 Re: Copyright Interests—(Blanket**
2  **License)**

3      The sole authority that defendants cite for this instruction—a 2005 decision
4  from the Southern District of New York (*Freeplay Music, Inc. v. Cox Radio, Inc.*,
5  404 F. Supp. 2d 548 (S.D.N.Y. 2005))—does not support this lengthy instruction.
6  Although the phrases "blanket license" and "performing rights" each appear once in
7  that opinion, it does not otherwise support defendants' points.  In addition, the
8  instruction is confusing and argumentative.

9      Moreover, defendants' instruction is wrong as a matter of fact and law.  Even
10 assuming that a performing rights organization had a nonexclusive right to further
11 license the public performance of the *Khosara* musical composition, defendants
12 used a derivative work of *Khosara*, which was not authorized.  *See Bridgeport*
13 *Music, Inc. v. Robert Hill Music,* No. 3:05 0377, 2006 WL 3720349, at *11 (M.D.
14 Tenn. Dec. 14, 2006)  ("USOP claims that any income it has received or will receive
15 from BMI for the public performance of *I Know You Got Soul*, even assuming *I*
16 *Know You Got Soul* is infringing, does not constitute infringement as blanket public
17 performance licenses have been issued to BMI for both *I Know You Got Soul* and
18 *You'll Like It Too*…Bridgeport [responds] that the BMI blanket licenses do not
19 authorize the creation of derivative works of compositions in the BMI
20 repertoire….[The Court concludes that] USOP's argument regarding the blanket
21 licenses is simply nonsensical.  If USOP's argument is accepted, any copyright
22 holder issuing public performance licenses to BMI would then also be permitting
23 any person to create unauthorized derivative works with their copyrighted
24 compositions (and to collect the public performance revenue for these unauthorized
25 derivative works), so long as these unauthorized derivative works were then licensed
26 to BMI. This argument clearly contradicts not only the Copyright Act itself but is
27
28

1    also clearly not what the *Freeplay* case purports.").[1]

2           Consequently, the Court should not include this instruction.

3           **18.    Defendants' Instruction No. 18 Re: Covenants vs. Conditions**

4           This instruction is irrelevant.  It is related to none of the issues identified in

5    the parties' pre-trial conference order.  Neither of the authorities that defendants rely

6    upon discusses covenants and conditions in the context of infringement.

7    Defendants' line about "the totality of the agreement" is not supported by either of

8    their authorities.  Furthermore, defendants' instruction is confusing.  It tells the jury

9    that it must "determine whether [a] restriction is a 'covenant'. . or a 'condition,'" but

10   the instruction never defines "condition" and never explains to the jury how to tell

11   one from the other, other than defendants' belief that a broken condition may give

12   rise to an infringement claim while a covenant does not.

13          Consequently, the court should reject defendants' Instruction No. 18.

14          **19.    Defendants' Instruction No. 19 Re: Transfer of Economic Rights**

15          This proposed instruction gives the impression that, in Egypt, any derivative

16

17   [1] The Court in *Bridgeport Music* further explained that:

18           In *Freeplay*, the Plaintiffs sued the Defendant radio stations claiming that these radio stations illegally broadcast its copyrighted music on the radio. *Freeplay*, 404 F.Supp.2d at 550. The Plaintiffs sued the radio

19           stations for both playing broadcast programming containing infringing materials that were supplied by an outside producer as well as for

20           actually producing and then broadcasting infringing materials themselves. *Id.* at 549. The radio stations filed a motion for summary

21           judgment requesting the dismissal of any claims based on their broadcasting infringing material created by others, arguing that the

22           Plaintiff had registered its songs with BMI and the radio stations had secured performance rights from BMI to broadcast Plaintiff's songs. *Id.*

23           at 550-51. The Court ruled that the BMI blanket license allowed the licensee radio stations to broadcast the programming containing the

24           infringing materials supplied by the outside producers. *Id.* at 554-55.

25   2006 WL 3720349, at *11.  Moreover, in *Freeplay*, the Court explained that "[t]he BMI licenses do not purport to authorize licensees to reproduce works of its

26   affiliated copyright owners, however. Thus, holding a BMI blanket license would not authorize a licensee to engage in synchronization." *Freeplay*, 404 F. Supp. 2d at

27   552.

28

1  work is transferable without running afoul of Egypt's moral rights law.  The

2  impression is misleading.  As the Court recognized:

> To the extent that plaintiffs request that the Court determine whether defendants' use of *Khosara, Khosara* violated plaintiff's moral rights in the work by making changes that might be considered "mutilation or distortion" of the original work, the Court agrees with defendants that the claim does not arise under U.S. copyright law, *except to the extent that it is a reformulation of the question of whether defendants acted outside of the scope of the relevant licenses. To the extent plaintiffs argue that defendants acted outside of those licenses, the Court . . . finds that this issue raises . . . a triable question of fact.*

8  (Dkt. 271 at 15 n. 8 (emphasis added))  In other words, it remains possible that

9  (1) due to Egypt's moral rights doctrine, Plaintiff could not license the right to

10  create a certain form of derivative work (*i.e.*, one that "mutilates" or "distorts" the

11  original work), and (2) because that form of derivative work was not licensed,

12  defendants' work infringes rights retained by plaintiff.  By obscuring this

13  possibility, defendants' proposed instruction is likely to confuse the jury.

14      Defendants' characterization of the "adaptation right" as economic (as

15  opposed to moral) under Egyptian law is also inaccurate, as will become clear

16  through expert testimony.  Moreover, defendants are wrong to claim that, under

17  Egyptian law, "[w]hen transferring all economic rights, it is not necessary to

18  specifically list each right."  As the Court has explained:

> under Egyptian law, a transfer of economic rights must "contain an explicit and detailed indication of each right to be transferred with the extent and purpose of the transfer." Egyptian Law No. 82 of 2002. The Court has previously found that the 2002 agreement is ambiguous with regard to this requirement of Egyptian law because it does not explicitly assign the right to modify or adapt Khosara. Dkt. 509, at 7. Defendants argue that based on the opinion of their expert, when a copyright holder seeks to transfer all of his economic rights, a comprehensive list of the specific economic rights transferred is unnecessary. Dkt. 568, at 9. Nonetheless, the 2002 agreement does expressly identify some rights while, notably, not clearly authorizing a transfer of the right to modify or adapt Khosara. See Dkt. 509, at 7.

25  (Dkt. No. 626 at p. 38)

26      Plaintiff's Instruction No. 14, which addresses the issue of economic and non-

27  economic rights, is more concise, less partisan, and more accurately traces the

28

11

1    statutory language of Egyptian copyright law.

2        Consequently, the Court should use plaintiff's Instruction No. 14 instead of

3    defendants' Instruction No. 19.

4        **20.    Defendants' Instruction No. 20 Re: Transferable Adaptation Right**

5             **Under Egyptian Law**

6        It is unlikely that any juror will understand phrases such as "inalienable moral

7    rights" or the meaning of this instruction in an accurate fashion.  Moreover, this

8    instruction, like the previous one, gives the false impression that all derivative uses

9    are transferable "economic rights" under Egyptian law.  The instruction is therefore

10   defective for the same reasons the previous one is.  Consequently, the Court should

11   reject this instruction.

12       **21.    Defendants' Instruction No. 21 Re: Egyptian Moral Rights**

13       All parties agree that the Court should issue an instruction regarding moral

14   right under Egyptian law.  Plaintiffs' Instruction No. 14 provides the following

15   concise explanation: "Under Egyptian law, an author (and, if the author is deceased,

16   the author's heir) possesses the right to prevent any deletion or modification of his

17   work.  Any attempt to transfer this right is null and void."

18       Defendants' Instruction No. 21 is misleading because it suggests that the

19   Court has determined that moral rights are irrelevant to this lawsuit.  To the

20   contrary, the Court "expressly stated that evidence concerning moral rights could

21   raise a question under U.S. copyright law regarding 'whether defendants acted

22   outside of the scope of . . . relevant licenses.'"  (Dkt. No. 626 at 17 (quoting Dkt.

23   No. 271 at pp. 15-16 n.8)).  Plaintiff's Instruction No. 14 captures this point, and

24   says all that matters to this action in regard to Egyptian moral rights.

25       Consequently, the Court should use plaintiff's Instruction No. 14 instead of

26   defendants' Instruction No. 21.

27

28

**22.     Defendants' Instruction No. 22 Re: Copying—(Access and
Substantial Similarity)**

The parties agree that the Court should issue an instruction on access and
substantial similarity.  Plaintiff's Instruction No. 7 tracks the language of the Ninth
Circuit's Model Jury Instruction No. 17.15.  Defendants' Instruction No. 22 adds
unnecessary language to Model Jury Instruction No. 17.15

Consequently, the Court should use plaintiff's Instruction No. 7 instead of
defendants' Instruction No. 22.

**23.     Defendants' Instruction No. 23 Re: Substantial Similarity**

The parties agree that the Court should issue an instruction on substantial
similarity.  Plaintiff's Instruction No. 9 is drawn from the Ninth Circuit's decisions
in *Swirsky v. Carey*, 376 F.3d 841, 852 (9th Cir. 2004) and *Baxter v. MCA, Inc.*, 812
F.2d 421, 425 (9th Cir. 1987).  Defendants' Instruction No. 23 relies on the Ninth
Circuit's Model Jury Instruction No. 17.17, which was withdrawn by the Committee
because it "concluded that the general statement of the test embodied in the former
instruction was not helpful in light of the diverse facts that might arise at trial
pertinent to a substantial similarity assessment."[2]  Defendants' instruction is also
repetitive and, by emphasizing only certain points, argumentative.  For example, the
first paragraph states actionable copying must be "substantial" and then repeats that
actionable copying must be "done to an unfair extent."  These statements also
misstate the law in that they set forth an elevated standard for infringement.  Finally,
the works should not necessarily be considered as a whole.  *See Swirsky v. Carey*,
376 F.3d 841, 852 (9th Cir. 2004) ("Even if a copied portion be relatively small in
proportion to the entire work, if qualitatively important, the finder of fact may
properly find substantial similarity"); *Baxter v. MCA, Inc.*, 812 F.2d 421, 425 (9th

---

[2] *See* http://www3.ce9.uscourts.gov/jury-
instructions/sites/default/files/WPD/Civil_Jury_Instructions_2014_6.pdf

PLAINTIFF'S OBJECTIONS TO DISPUTED JURY INSTRUCTIONS PROPOSED BY DEFENDANTS

1  Cir. 1987) (same).

2      Consequently, the Court should use Plaintiff's Instruction No. 9 instead of

3  Defendants' Instruction No. 23.

4      **24.**    **Defendants' Instruction No. 24 Re: *De Minimis* Use**

5      Plaintiff objects to the portion of this instruction that states "*De minimis* is a

6  Latin term, which the dictionary defines as meaning 'lacking significance or

7  importance.'" Defendants cite no authority that this particular definition should be

8  applied in the copyright context when evaluating infringement. Plaintiff further

9  objects to the instruction (beyond the dictionary definition) because it presents an

10  incomplete and otherwise inaccurate understanding of the *de minims* defense.

11      To the extent that the Court provides a *de minimis* instruction, plaintiff

12  proposes:

13      Substantial similarity does not exist if Defendants can establish, by a
preponderance of the evidence, that the alleged use of the *Khosara*

14  composition in *Big Pimpin'* was *de minimis*. A use is considered *de
minimis* only if it is so meager and fragmentary that the average

15  audience would not recognize the appropriation. You may consider
both quantitative and qualitative factors in determining whether a

16  taking is *de minimis*. A quantitative analysis focuses upon the amount
of the copyrighted work that was allegedly copied. Even if a copied

17  portion is relatively small in proportion to the entire work, you can still
find substantial similarity if the copied material was qualitatively

18  important to the copyrighted work.

19      Plaintiff provides the following authority for its alternative: *Fisher v. Dees*,

20  794 F.2d 432, 434 n.2 (9th Cir. 1986) ("a taking is considered *de minimis* only if it

21  is so meager and fragmentary that the average audience would not recognize the

22  appropriation."); *Newton v. Diamond*, 204 F. Supp. 2d 1244, 1256-57 (C.D. Cal.

23  2002), aff'd 349 F.3d 591 (9th Cir. 2003) ("Courts generally consider both

24  quantitative and qualitative factors in determining whether a taking is *de minimis*.");

25  *Baxter v. MCA, Inc.,* 812 F.2d 421, 425 (9th Cir. 1987) ("Even if a copied portion be

26  relatively small in proportion to the entire work, if qualitatively important, the finder

27  of fact may properly find substantial similarity.").

28

**25.   Defendants' Instruction No. 25 Re: "Thin" Copyright**

Defendants cite no authority that the Ninth Circuit has adopted the "supersubstantial similarity" language.  As one commentator has noted:

> Since the only similarity that matters is similarity in expression, the level of similarity required for infringement to occur is always the same, regardless of the nature of the work or the extent of its originality: substantial.  To require supersubstantial similarity for thin works is merely to repeat the same false principle at an even greater degree of error.  If a work has a thin copyright, it has a thin copyright because of a low level of originality (whether through a minimal level of selection, coordination, or arrangement or through a minimal addition of original material).

2 Patry on Copyright § 3:68.  Moreover, authority suggests that the "thin" copyright analysis does not apply in this situation.  According to *ITC Textile, Ltd. v. Wal-Mart Stores, Inc.*, No. CV 11-1967 RSWL PLAX, 2012 WL 468065 (C.D. Cal. Feb. 14, 2012):

> [T]hin copyright protection only applies where a copyrighted work contains a compilation of non-copyrightable facts and original elements); *Feist Publications, Inc. v. Rural Telephone Service Company, Inc.*, 499 U.S. 340, 349 (1991) (applying thin copyright protection to phonebook that mixed non-copyrightable facts, i.e. names, with original organization).  Courts have found thin copyright protection applicable where the work contains realistic, accurate depictions of items found in nature.  *Satava v. Lowry*, 323 F.3d at 812 (holding that a life-like jellyfish sculpture was only entitled to narrow copyright protection because the artist could not protect the elements of the sculpture that were inherent to jellyfish physiology and were copied directly from nature).  Here, the Court finds that Plaintiff's designs contain neither facts, nor any attempt at realistic depictions of natural objects.

*Id.* at *2.

Nonetheless, to the extent that the Court is inclined to issue a jury instruction on "thin" copyright, plaintiff suggests that the Court adhere to the Ninth Circuit Committee's Comment to Model Rule 17.12:

> Where a work embodies the minimum of creativity necessary for copyright, it is said to have "thin" copyright protection. *See, e.g.*, *Satava v. Lowry*, 323 F.3d 805, 810–12 (9th Cir.), cert. denied, 540 U.S. 983 (2003). A thin copyright would only protect against "virtually identical copying." *Id.*

This would result in the following jury instruction:

15

1   Where a work embodies the minimum of creativity necessary for
2   copyright, it is said to have "thin" copyright protection.  A thin copyright would only protect against virtually identical copying.

3   **26.   Defendants' Instruction No. 26 Re: Agency**

4   Defendants have presented no evidence that David Braun ever acted as

5   plaintiff's attorney or agent.  Nor has plaintiff stipulated to this as a fact, which is

6   contrary to the evidence.  Nor have defendants explained why this instruction is

7   relevant to any issue in the final pretrial order (Dkt. No. 628).

8   Furthermore, the instruction fails to explain what agency is and therefore risks

9   confusing the jury.

10   Consequently, the Court should exclude defendants' Instruction No. 26.

11   **27.   Defendants' Instruction No. 27 Re: Prescription**

12   The Court should reject this instruction for several reasons.

13   *First*, defendants have waived this defense.  Prescription is an affirmative

14   defense, regardless of whether defendants are importing aspects from Egyptian law.

15   *See Virginia v. Maryland,* 540 U.S. 56, 76 2d 461 (2003) (discussing the

16   "affirmative defense of prescription and acquiescence" (quoting *New Jersey v. New*

17   *York*, 523 U.S. 767, 807 (1998)).  Defendants did not plead prescription as an

18   affirmative defense in their Answers.  (Dkt. No. 70-76; 78-81)

19   *Second*, defendants' instruction lists as its source a declaration of defense

20   expert, Walid Farhat, dated August 21, 2015.  But that opinion was submitted after

21   the close of expert discovery.  Although Walid Farhad submitted an expert report

22   and was deposed prior to the close of expert discovery, he never opined on

23   prescription under Egyptian law.  Had he done so, his testimony would have been a

24   topic of plaintiff's deposition of Farhat.  The basis of defendants' Instruction No. 27

25   is therefore inadmissible under Fed. R. Civ. P. 26(a)(2)(B)—and therefore not the

26   proper subject of a jury instruction.

27   *Third*, defendants' instruction is misleading.  Defendants claim that plaintiff

28   is seeking to avoid the 2002 Agreement.  But defendants' claim is based on the

disputed assumption that the 2002 Agreement transferred all of plaintiff's rights in *Khosara* to a third party, whereas plaintiff maintains that the scope of any transfer in the 2002 Agreement was limited.

*Fourth,* unlike the issue of Egyptian moral rights, which involves what rights plaintiff could license while in Egypt, the issue of a limitation goes to what claims plaintiff can assert right now in the United States.

*Fifth*, issues of Egyptian law are to be resolved by the Court, and the Court has yet to resolve this issue. Defendants assert this point of law based on the assertion of Walid Abou Farhat as to the effect of Egyptian law. Farhat has not been cross-examined on this issue (because of Defendants' untimely disclosure) and the Court has made no finding. It is therefore improper to instruct the jury on this point.

Consequently, the Court should exclude defendants' Instruction No. 27.

### 28.   Defendants' Instruction No. 28 Re: Waiver

Defendants' Instruction No. 28 misstates the law. As explained *supra*, the transfer of ownership rights in an Egyptian copyright is governed by Egyptian law, which states that all such transfers must be express and in writing. There is no doctrine analogous to the instruction defendants seek to have the Court give.

Even if the Court were to disagree and apply the law of waiver under California law, the instruction omits material standards regarding waiver and otherwise misstates California law. Defendants do not mention that:

- Waiver must be established by "clear and convincing evidence." CACI 336; *City of Ukiah v. Fones*, 64 Cal.2d 104, 107-08 (1966) ("The burden, moreover, is on the party claiming a waiver of a right to prove it by clear and convincing evidence that does not leave the matter to speculation….").

- "[D]oubtful cases will be decided against waiver." *Id.*

- An implied waiver of rights will be found only "where there is 'clear, decisive and unequivocal' conduct which indicates a purpose to waive the legal rights

1    involved." *United States v. Amwest Sur. Ins. Co.*, 54 F.3d 601, 603 (9th Cir.

2    1995)

3    •    Any waiver (explicit or implied) of copyright "occurs only if there is an intent

4         by the copyright proprietor to surrender rights in his work." *A&M Records,*

5         *Inc. v. Napster, Inc.*, 239 F.3d 1004, 1026 (9th Cir. 2001) (quoting *Nimmer*).

6         To the extent the Court determines that California law were to apply, based

7    on CACI 336 and the above authority from the California Supreme Court and Ninth

8    Circuit, plaintiff proposes the following instruction to the extent that the Court is

9    inclined to provide an instruction on waiver (the first sentence is based on the first

10   sentence of defendants' proposed instruction):

> Defendants assert that Fahmy has waived any right to bring this suit
> because, in December 2002, he signed an agreement with Mohsen
> Jaber allegedly surrendering all economic rights under Egyptian
> copyright law in the Khosara Composition.
>
> To succeed, defendants must prove both of the following by clear and
> convincing evidence:
>
> 1.    That Fahmy knew that he was surrendering all economic rights
> under Egyptian copyright law in the Khosara Composition.
>
> 2.    That Fahmy freely and knowingly gave up these rights.
>
> A waiver may be oral or written or may arise from conduct that shows
> that Fahmy gave up that right.  An waiver of rights based on conduct
> will be found only where there is clear, decisive and unequivocal
> conduct that indicates a purpose to waive the legal rights involved.  A
> waiver occurs only if there is an intent by the copyright owner to
> surrender rights in his work.  Doubtful cases will be decided against
> waiver.

**29.    Defendants' Instruction No. 29 Re: Estoppel**

In defendants' Instruction No. 29, defendants acknowledge that estoppel is an

equitable defense.  Consequently, it should not be submitted to the jury.  *See*

*Granite State Ins. Co. v. Smart Modular Technologies, Inc.,* 76 F.3d 1023, 1027 (9th

Cir. 1996) ("A litigant is not entitled to have a jury resolve a disputed affirmative

defense if the defense is equitable in nature....The doctrine of equitable estoppel is

pre-eminently the creature of equity." (internal quotation marks omitted)).

Even if an instruction were given, the statements regarding the Court's prior rulings are unnecessary and argumentative.  If an element has been pre-determined by the Court (which plaintiff disputes), then it should simply be omitted.  The jury should not hear about issues upon which the Court has ruled against any party.

### 30. Defendants' Instruction No. 30 Re: Unclean Hands.

Unclean hands is an equitable defense.  *See TrafficSchool.com, Inc. v. Edriver Inc.,* 653 F.3d 820, 833 (9th Cir. 2011) (discussing "equitable doctrines such as unclean hands"); *Germon v. Times Mirror Co.,* 520 F.2d 786, 788 (9th Cir. 1975) (referring to "equitable defense" of "unclean hands").  Consequently, the Court should not instruct the jury on unclean hands.  Even if an instruction were given, this instruction is incorrect in that it omits the necessary element that the defendant be prejudiced by the plaintiff's unclean hands.

### 31. Defendants' Instruction No. 31 Re: Evidence Lost as a Result of Delay.

Laches is an equitable defense.  Therefore, the Court should not instruct the jury on issues related thereto.

In addition, the defendants rely solely upon the Court's decision on laches in 2013 (Dkt. No. 380).  In light of the Supreme Court's decision in *Petrella v. Metro-Goldwyn-Mayer, Inc.*, 134 S. Ct. 1962, 1964 (2014), this Court vacated that order. (Dkt. No. 418)

In addition, the instruction contains statements of fact that are not supported by the evidence.

Furthermore, defendants cite no authority that plaintiff should be punished with an adverse inference that a deceased witness associated with a third party would have offered testimony favorable to defendants.  Nor is there any claim that plaintiff engaged in any deliberate destruction of evidence.

### 32. Defendants' Instruction No. 32 Re: Innocent Infringement

Innocent infringement (which is set forth in the second sentence of 17 U.S.C.

1    § 504(c)(2)) pertains to statutory damages, not the profits that plaintiff is seeking in

2    this case.  *See* 1 Howard B. Abrams, The Law of Copyright §9.69 n.2. ("The second

3    sentence of section 504(c)(2) imposes no limit or modification on any of the other

4    remedies for infringement provided by the Copyright Act. . . .  [T]his provision has

5    no effect on the recovery of either actual damages of the infringer's profits by the

6    copyright owner.").  *See also Rosen v. Netfronts, Inc.,* No. CV 12-658 CAS FFMX,

7    2013 WL 3467205, at *4 (C.D. Cal. July 9, 2013) ("The standard amount of

8    statutory damages is $750—$30,000 per work, but if the infringement was

9    'innocent,' a court may award damages as low as $200. Id. §§ 504(c)(1)—(2).").

10       Consequently, the Court should not give this instruction, which is misleading

11   because it suggests that the defense of innocent infringement is available against a

12   plaintiff seeking an award of profits.

13       **33.    Defendants' Instruction No. 33 Re: Willful Infringement**

14       The parties agree that the Court should issue an instruction on willful

15   infringement.  Plaintiff's Instruction No. 20 follows the language of the Ninth

16   Circuit in *Washington Shoe Co. v. A-Z Sporting Goods Inc.*, 704 F.3d 668, 674 (9th

17   Cir. 2012) ("[T]o prove 'willfulness' under the Copyright Act, the plaintiff must

18   show (1) that the defendant was actually aware of the infringing activity, or (2) that

19   the defendant's actions were the result of 'reckless disregard' for, or 'willful

20   blindness' to, the copyright holder's rights" (quoting *Louis Vuitton Malletier, S.A. v.

21   Akanoc Solutions, Inc.*, 658 F.3d 936, 944 (9th Cir. 2011)).  Defendants' Instruction

22   No. 33 omits that willful infringement can be found based on reckless disregard or

23   willful blindness.

24       Defendants' instruction also misstates the Court's ruling on willful

25   infringement.  The Court ruled that there was no willful infringement "during the

26   settlement period," which was defined as March 30, 2001 through June 1, 2006.

27   (Dkt. No. 626 at p. 18 (citing Dkt. No. 380 at 16)).  The Court explained that "the

28   settlement with EMI [Arabia] gave defendants colorable title to produce *Big*

1    *Pimpin'* and derivative works created using *Big Pimpin'*, and under those

2    circumstances, there is no willful infringement." *Id. See also* Dkt. No. 380 at 16

3    ("During this time, the settlement with EMI provided defendants with a reasonable

4    basis upon which to believe that their use of *Big Pimpin'* would not give rise to an

5    infringement claim arising out of *Khosara Khosara*."). The Court further explained

6    that "evidence of defendants' knowledge of the settlement agreement prior to June

7    1, 2006, is potentially relevant to demonstrate willful infringement by defendants in

8    the post-settlement period…. [A]s plaintiff argues, defendants could not have

9    reasonably relied upon the 'perpetual' nature of the agreement if they did not know

10   that the agreement existed at all." (Dkt. No. 626 at p. 18)  Defendants' instruction

11   undermines and suggests the irrelevance of pre-2006 evidence in connection with

12   willful infringement.

13        Consequently, the Court should use plaintiff's Instruction No. 49 instead of

14   defendants' Instruction No. 33.

15        **34.    Defendants' Instruction No. 34 Re: Duty of Jury**

16        Plaintiff objects to the phrase: "In addition, all of the general and closing

17   instructions I read to you before you deliberated regarding the Defendants' liability

18   remain in effect for this second phase of your deliberations, including issues such as

19   the burden of proof, guidelines for considering evidence and witness credibility, and

20   your duties as jurors." This phrase is confusing to the jury because it does not make

21   clear what "general and closing instructions" remain in effect (providing only a

22   handful of examples).  Consequently, the Court should delete this phrase.

23        **35.    Defendants' Instruction No. 35 Re: Damages**

24        The parties agree that the Court should issue a general instruction on

25   damages.  Plaintiff's Jury Instruction Nos. 21-24 focus on defendants' profits and

26   are based on the Ninth Circuit's Model Jury Instruction No. 17.24 as well as

27   decisions from the Ninth Circuit.  Defendants' jury instruction is misleading insofar

28   as it does not explain that profits are an acceptable measure of damages under the

21

1   Copyright Act until the last sentence.  As indicated by defendants' sources (which

2   modify language from three different Model Rules and a Ninth Circuit decision

3   from 1966), defendants are using snippets from various sources to bolster their

4   arguments.

5        Consequently, the Court should issue plaintiff's Jury Instruction Nos. 21-24

6   instead of defendants' Instruction No. 35.

7        **36.    Defendants' Instruction No. 36 Re: Causal Nexus**

8        The Ninth Circuit's Model Jury Instruction 17.24 (incorporated into

9   plaintiff's Instruction No. 21) addresses causation.  *See* Plaintiff's Instruction No. 21

10  ("The defendant's gross revenue is all of the defendant's receipts from the use or

11  sale of *Big Pimpin'*. The plaintiff has the burden of proving the defendant's gross

12  revenue by a preponderance of the evidence....Unless you find that a portion of the

13  profit from the use or sale of *Big Pimpin'* is attributable to factors other than use of

14  *Khosara Khosara*, all of the profit is to be attributed to the infringement. The

15  defendant has the burden of proving the percentage of the profit, if any, attributable

16  to factors other than infringing the copyrighted work.").  There is no reason for a

17  separate jury instruction on this point.

18       Moreover, defendants' Instruction No. 36 is inaccurate.  It fails to note that, as

19  explained in the Ninth Circuit's Model Jury Instruction No. 17.24, "the defendant's

20  gross revenue is all the defendant's receipts from the use of a work containing or

21  using the copyrighted work."  This instruction also states points out of order in a

22  way that is misleading.  It is not clear from defendants' instruction that, once the

23  plaintiff establishes a causal nexus, the plaintiff presumptively receives all revenue;

24  it is for the defendant to show expenses.  *See Polar Bear Prod., Inc. v. Timex Corp.*,

25  384 F.3d 700, 711 (9th Cir. 2004) ("Thus, § 504(b) creates a two-step framework for

26  recovery of indirect profits: 1) the copyright claimant must first show a causal nexus

27  between the infringement and the gross revenue; and 2) once the causal nexus is

28  shown, the infringer bears the burden of apportioning the profits that were not the

22

1  result of infringement."). In fact, "where infringing and noninfringing elements of a

2  work cannot be readily separated, all of a defendant's profits should be awarded to a

3  plaintiff." *Nintendo of Am., Inc. v. Dragon Pac. Int'l*, 40 F.3d 1007, 1012 (9th Cir.

4  1994). "The benefit of the doubt in apportioning profits is given to the plaintiff."

5  *Frank Music Corp. v. Metro-Goldwyn-Mayer, Inc.*, 886 F.2d 1545, 1549 (9th Cir.

6  1989).

7      Also, defendants use "identifiable" in the first paragraph of their instruction in

8  a manner that is likely to cause confusion. And their term "direct result" in

9  connection with plaintiff's recovery in the first and second paragraphs is

10  argumentative. Plaintiff can recover "profits of the infringer that are *attributable* to

11  the infringement." 17 U.S.C. § 504(b) (emphasis added). *See also* Ninth Circuit's

12  Model Jury Instruction No. 17.24 ("[T]he copyright owner is entitled to any profits

13  of the defendant attributable to the infringement.").

14      Consequently, the Court should not include this separate instruction on causal

15  nexus.

16  **37.   Defendants' Instruction No. 37 Re: Concert Revenues**

17      This instruction is unnecessary and argumentative. The jury will already be

18  instructed that plaintiff can only recover profits "attributable to the infringement."

19  *See, e.g.,* Plaintiff's Instruction No. 21. That includes profits from concerts to the

20  extent the profits are attributable to the infringement. All this flows logically from

21  other instructions without a need for a separate instruction specially devoted to

22  concert revenue.

23      Also, the instruction states that the jury should deduct any revenues that

24  resulted from "Defendant Carter's celebrity and star power." There is no authority

25  for this statement; and defense expert, Dr. Jason King, admitted that Mr. Carter's

26  celebrity, star power and marketing are intertwined with Mr. Carter's music,

27  including *Big Pimpin'*. So it would be improper to deduct revenues relating to

28  celebrity, star power and marketing.

1   The lengthy list in the instruction is not only unsupported by law, but also
2   slanted to favor defendants in a fashion that is argumentative (plaintiff could as well
3   parse out the elements of profit to which he is entitled, make a list of the elements,
4   and then add the list to the instruction; this would be equally improper).  If the
5   instruction is used, it should be curtailed, as much of it is repetitive emphasis on
6   points meant to favor defendants.  These points belong in defendants' closing
7   arguments, not in the jury instruction.

8   Above all, it is for the jury, not defendants in their jury instruction, to decide
9   which revenue is deductible.  "The Court finds that there is a triable issue whether
10  Jay-Z's concert revenues constitute direct profits from his infringing live
11  performances of *Big Pimpin'* for purposes of the Copyright Act."  (Dkt. 309 at 16.)

12  Consequently, the Court should reject defendants' Instruction No. 37.

13  **38.    Defendants' Instruction No. 38 Re: Apportionment/Deductions**

14  The Ninth Circuit's Model Jury Instruction No. 17.24 provides a clear
15  discussion of apportionment/deductions, which plaintiff followed in his Instruction
16  No. 21.  Defendants' Instruction No. 38 changes the title and numerous other
17  aspects of the Model Rule.  For example, defendants' instruction states that the jury
18  should deduct any revenues that "resulted from the Defendant's celebrity and star
19  power."  There is no authority for this statement; and defense expert, Dr. Jason
20  King, admitted that Mr. Carter's celebrity and star power are intertwined with Mr.
21  Carter's music, including *Big Pimpin'*.  So it would be improper to deduct revenues
22  relating to celebrity and star power.  In addition, defendants' instruction (like other
23  instructions proposed by defendants) claims that plaintiff can only recover profits
24  that are a "direct result" of defendants' infringement.  But plaintiff can recover
25  "profits of the infringer that are *attributable* to the infringement."  17 U.S.C.
26  § 504(b) (emphasis added).  *See also* Ninth Circuit's Model Jury Instruction No.
27  17.24 ("[T]he copyright owner is entitled to any profits of the defendant attributable
28  to the infringement.").  Defendants' use of "direct result" is improper.

24

1  Consequently, the Court should use plaintiff's Instruction No. 21 instead of
2  defendants' Instruction No. 38.

3  **39.    Defendants' Instruction No. 39 Re: Recoverable Profits Limited to**
4  **Musical Composition**

5  This instruction is duplicative and argumentative. The jury will be instructed
6  elsewhere to award the profit caused by infringement of *Khosara Khosara* (*see, e.g.,*
7  Plaintiff's Instruction No. 21); thus the instruction is duplicative. The intended
8  purpose of the instruction is merely to repeat and emphasize to the jury an aspect of
9  the law defendants think is helpful to them; thus the instruction is argumentative. In
10  addition, defendants' instruction claims that plaintiff can only recover profits that
11  are "directly attributable" to defendants' infringement. But plaintiff can recover
12  "profits of the infringer that are *attributable* to the infringement." 17 U.S.C.
13  § 504(b) (emphasis added). *See also* Ninth Circuit's Model Jury Instruction No.
14  17.24 ("[T]he copyright owner is entitled to any profits of the defendant attributable
15  to the infringement."). Defendants' use of "directly attributable" is improper.

16  Consequently, the Court should reject defendants' Instruction No. 39.

17  **40.    Defendants' Instruction No. 40 Re: Recovery Limited to Share of**
18  **Copyright**

19  This instruction misstates the law. As the Fifth Circuit recently explained
20  when confronted with a similar issue:

21  Apart from the propriety of the jury instructions, DM's argument
essentially seems to be that Bell, as fifty percent owner of the
22  copyright, may not, as a matter of law, recover damages for Tag Team's
share. The jury's award of over $2 million in damages is, in fact, the
23  full amount of all royalties received by DM without a reduction for Tag
Team's fifty percent share. It appears to be an issue of first impression
24  in our court whether a partial owner of a copyright can ever be awarded
infringement damages for his co-owner's share. *In Edward B. Marks
25  Music Corp. v. Jerry Vogel Music Co.*, 140 F.2d 268 (2d Cir. 1944), the
Second Circuit held that "the recovery shall be confined to the
26  plaintiff's own part; that is to say, to its own actual damages, to its
proper share of any statutory damages, and to its proper share of the
27  profits." *Id.* at 270; *see also Manno v. Tenn. Prod. Ctr., Inc.*, 657
F. Supp.2d 425, 433 (S.D.N.Y.2009) ("*Edward B. Marks Music Corp.*
28  makes clear that a co-owner of a copyright is limited to its 'proper

1  share' of any statutory damage award.") (citation omitted). *Edward B.*
2  *Marks* is distinguishable because it dealt with the nonjoinder of a
   copyright co-owner and did not involve a situation where there was
   evidence from which the jury could find that the plaintiff was
3  administrator for all of the royalties. *See Edward B. Marks*, 140 F.2d at
   269. Here, there was evidence in the record from which the jury could
4  have determined, as it did, that Bell is entitled to 100 percent of the
   royalties in the first instance. There was testimony that Bell is the
5  administrator of 100 percent of the royalties and is responsible for
   accounting to Tag Team. As such, the jury could have determined that
6  Bell was properly awarded 100 percent of the royalties, from which it
   could pay Tag Team its share. *See, e.g., Edgenet, Inc. v. GS1 AIBSL*,
7  No. 09–CV–65, 2010 WL 55843, at *5 (E.D. Wis. Jan. 5, 2010) ("In a
   case where infringement damages are awarded to only one of two co-
8  owners of a copyright, redress is properly sought through a suit
   between the co-owners and not through further litigation against the
9  defendant." *872 ) (citation omitted); *Copyright.net Music Publ'g. LLC
   v. MP3.com*, 256 F.Supp.2d 214, 218 (S.D.N.Y. 2003) (upholding
10 damage awards that contained more than the plaintiff's share, ruling
   that the proper resolution was for the co-owner to bring an action
11 against the prevailing plaintiff for its share)

12 *In re Isbell Records, Inc.*, 774 F.3d 859, 872 (5th Cir. 2014). Plaintiff manages

13 Hamdy's estate and holds a general power of attorney to act on behalf of the other

14 co-owners of the copyright to *Khosara, Khosara*, who are his siblings. *See* Dkt. No.

15 337 at p. 2 ("The following facts are not in dispute….Plaintiff is an heir of Hamdy,

16 and since Hamdy's death in 1993, plaintiff has managed Hamdy's estate.").

17     Consequently, the Court should reject defendants' Instruction No. 40.

18 **41.    Defendants' Instruction No. 41 Re: Stipulations of Fact (Damages)**

19     It is unclear what defendants expect the Court to do with this instruction,

20 since it states "to be completed." Regardless, defendants' cited authority, Ninth

21 Circuit Model Instruction 3.3 ("Return of Verdict"), does not support their proposed

22 instruction.

23 **42.    Defendants' Instruction No. 42 Re: Return of Verdict**

24     Plaintiff has no objection to this instruction.

25

26

27

28

1  DATED: October 9, 2015          BROWNE GEORGE ROSS LLP
2                                  Peter W. Ross
                                   Keith J. Wesley
3                                  Jonathan Gottfried

4                                  By _____/s/ Keith Wesley_____
5                                          Keith J. Wesley
                                   Attorneys for Plaintiff Osama Ahmed Fahmy
6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFF'S OBJECTIONS TO DISPUTED JURY INSTRUCTIONS PROPOSED BY DEFENDANTS

## PROOF OF SERVICE

**STATE OF CALIFORNIA, COUNTY OF LOS ANGELES**

At the time of service, I was over 18 years of age and not a party to this action. I am employed in the County of Los Angeles, State of California. My business address is 2121 Avenue of the Stars, Suite 2400, Los Angeles, CA 90067.

On October 9, 2015, I served true copies of the following document(s) described as **PLAINTIFF'S OBJECTIONS TO DISPUTED JURY INSTRUCTIONS PROPOSED BY DEFENDANTS** on the interested parties in this action as follows:

### SEE ATTACHED SERVICE LIST

**BY CM/ECF NOTICE OF ELECTRONIC FILING:** I electronically filed the document(s) with the Clerk of the Court by using the CM/ECF system. Participants in the case who are registered CM/ECF users will be served by the CM/ECF system. Participants in the case who are not registered CM/ECF users will be served by mail or by other means permitted by the court rules.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on October 9, 2015, at Los Angeles, California.

/s/ Kathy Hall
Kathy Hall

PLAINTIFF'S OBJECTIONS TO DISPUTED JURY INSTRUCTIONS PROPOSED BY DEFENDANTS

**SERVICE LIST**

*Osama Ahmed Fahmy v. Jay-Z (aka Shawn Carter), et al.*

**United States District Court, Western Division –
Case No. 2:07-CV-05715 CAS (PJWx)**

Linda M. Burrow, Esq.                              Attorneys for Defendant
CALDWELL LESLIE                                    Shawn Carter (pka Jay Z)
725 South Figueroa Street, 31st Floor
Los Angeles, California 90017
Tel.:   (213)629-9040
Fax:   (213)629-9022
Email: burrow@caldwell-leslie.com

JENNER & BLOCK LLP                                 Lead Counsel for Defendant
Andrew Bart, Esq.                                  Shawn Carter (pka Jay Z)
Ava U. McAlpin, Esq.
919 Third Avenue
New York, NY 10022
Tel: 212.891.1600
Fax: 212.891.1699
Email:      abart@jenner.com
          amcalpin@jenner.com

JENNER & BLOCK LLP
Daniel A. Rozansky, Esq.
L. David Russell, Esq.
633 West 5th Street, Suite 3600
Los Angeles, California 90071
Tel.: (213) 239-5100
Fax: (213) 239-5199
drozansky@jenner.com
drussell@jenner.com

PLAINTIFF'S OBJECTIONS TO DISPUTED JURY INSTRUCTIONS PROPOSED BY DEFENDANTS

1  Russell J. Frackman, Esq.
   David Steinberg, Esq.
2  Alexa L. Lewis, Esq.
   MITCHELL SILBERBERG & KNUPP LLP
3  11377 West Olympic Boulevard
   Los Angeles, California 90064-1683
4  Tel.:  310.312.2000
   Fax:   310.312.3100
5  Email:  rjf@msk.com
           all@msk.com
6          das@msk.com

7  Christine T. Lepera (Pro Hac Vice)
   MITCHELL SILBERBERG & KNUPP LLP
8  12 East 49th Street, 30th Floor
   New York, NY 10017
9  Tel.: 212.509-3900
   Fax: 212.5097239
10 Email: ctl@msk.com

Attorneys for Defendants
Timothy Mosely, Kyambo
Joshua, Rob Bourdon, Brad
Delson, Mike Shinoda, Dave
Farrell, Joseph Hahn, Chester
Bennington, Big Bad Mr. Hahn
Music, Chesterchaz
Publishing, EMI Blackwood
Music, Inc., EMI Music
Publishing Ltd., Kenji
Kobayashi Music, Lil Lulu
Publishing, Machine Shop
Recordings, LLC, Marcy
Projects Productions II, Inc.,
MTV Networks Enterprises
Inc., Nondisclosure Agreement
Music, Paramount Home
Entertainment, Inc., Paramount
Pictures Corporation, Radical
Media, Rob Bourdon Music,
Roc-A-Fella Records, LLC,
Timbaland Productions, Inc.,
UMG Recordings, Inc.,
Universal Music and Video
Distribution, Inc., and Warner
Music Inc.

11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

PLAINTIFF'S OBJECTIONS TO DISPUTED JURY INSTRUCTIONS PROPOSED BY DEFENDANTS