1  ANDREW H. BART (Pro Hac Vice)
      abart@jenner.com
2  DANIEL A. ROZANSKY (SBN 161647)
      drozansky@jenner.com
3  JENNER & BLOCK LLP
   633 West 5th Street, Suite 3600
4  Los Angeles, California 90071
   Telephone:  (213) 239-5100
5  Facsimile:  (213) 239-5199

6  Attorneys for Defendant SHAWN CARTER (pka Jay Z)

7  CHRISTINE LEPERA (Pro Hac Vice)
      ctl@msk.com
8  DAVID A. STEINBERG (SBN 130593)
      das@msk.com
9  MITCHELL SILBERBERG & KNUPP LLP
   11377 West Olympic Boulevard
10 Los Angeles, CA  90064-1683
   Telephone:  (310) 312-2000
11
   Attorneys for all other Defendants
12
                    UNITED STATES DISTRICT COURT
13
                  CENTRAL DISTRICT OF CALIFORNIA
14

15 Osama Ahmed Fahmy, an individual,        Case No. 2:07-cv-05715 CAS (PJWx)

16                          Plaintiff,      The Honorable Christina A. Snyder

17           v.                             **DEFENDANTS' REPLY RE
                                            SUPPLEMENTAL BRIEFING ON
18 Jay Z (aka Shawn Carter), Timothy        HIGHLY CONFIDENTIAL LIVE
   Mosely, Kyambo Joshua, Bob Bourdon,      NATION AGREEMENT (EXHIBIT
19 Brad Delson, Mike Shinoda, Dave Farrell, 290)**
   Joseph Hahn, Chester Bennington, Big
20 Bad Mr. Hahn Music, Chesterchaz          Complaint filed:  Aug. 31, 2007
   Publishing, EMI Blackwood Music, Inc.,   Discovery Cutoff:  Nov. 28, 2014
21 EMI Music Publishing Ltd., Kenji         Current Trial Date:  Oct. 13, 2015
   Kobayashi Music, Lil Lulu Publishing,
22 Machine Shop Recordings, LLC, Marcy
   Projects Productions II, Inc., MTV
23 Networks Enterprises Inc., Nondisclosure
   Agreement Music, Paramount
24 Home Entertainment, Inc., Paramount
   Pictures Corporation, Radical Media, Rob
25 Bourdon Music, Roc-A-Fella Records,
   LLC, Timbaland Productions, Inc., UMG
26 Recordings, Inc., Universal Music and
   Video Distribution, Inc., and Warner
27 Music Inc.,

28                          Defendants.

## MEMORANDUM OF POINTS AND AUTHORITIES

Plaintiff and Defendants are in substantial agreement regarding the sensitive nature of the Live Nation Agreement.  Plaintiff concedes that Live Nation and Mr. Carter have kept the agreement – which includes sensitive information regarding license terms, royalty rates, and other minutiae of the formula that determines Mr. Carter's compensation – confidential.  And Plaintiff acknowledges that Mr. Carter has a strong interest in the confidentiality of this agreement – so strong, in fact, that his attorneys declined to share it with their own co-counsel.

Despite acknowledging the unusual sensitivity of the Live Nation Agreement, Plaintiff insists that it should be treated like any other exhibit.  Plaintiff contends that it should not be sealed, should not be redacted to omit irrelevant and damaging financial information, and should be disclosed to the jury whether or not it is received in evidence.  His opposition to these simple, well-established procedures is unfounded.

Critically, Plaintiff has never suggested that the *entire* Live Nation Agreement is relevant.  Even if the Court determined that certain portions of the Live Nation Agreement were relevant – which they are not – it need not permit irrelevant and sensitive portions of that document to go before the jury.[1]  And it certainly need not permit the public to see this document:  as Plaintiff essentially concedes, it contains trade secrets and other confidential financial information that constitute "compelling reasons" to seal it from the public.  *Kamakana v. City & County of Honolulu*, 447 F.3d 1172, 1179 (9th Cir. 2006).

---

[1] Indeed, the Live Nation Agreement is just one of many irrelevant and prejudicial exhibits – including evidence of prior lawsuits against Defendants, Defendants' bank statements, and Defendants' criminal records – that Plaintiff has offered in a transparent attempt to distract and mislead the jury.  The Court has rejected every one of these gambits – including Plaintiff's efforts to bias the jury by examining Mr. Carter about the lyrics of *Big Pimpin'*.  Given the sensitivity of the Live Nation Agreement, its manifest irrelevance, and the availability of evidence of Mr. Carter's concert revenues from other sources, Plaintiff's opposition to sealing and redacting the Live Nation Agreement is merely another tactical effort to put pressure on Mr. Carter by threatening to expose his most sensitive financial data.

## I.     The Live Nation Agreement Should Be Sealed.

Plaintiff and Mr. Carter agree on the applicable standard for sealing: the party seeking to seal an exhibit must demonstrate "compelling reasons" justifying its request.  *Kamakana*, 447 F.3d at 1179.  Applying this standard, courts in the Ninth Circuit "have repeatedly mentioned trade secrets as an archetypal category of information for which sealing of a court's records is justified."[2]  *Richardson v. Mylan Inc.*, No. 09-1041, 2011 WL 837148, at *2 (S.D. Cal. Mar. 9, 2011) (citing *Kamakana*, 447 F.3d at 1179); *see also In re Elec. Arts,* 298 F. App'x at 569-70.  Indeed, the Supreme Court has long held that "business information that might harm a litigant's competitive standing" should be sealed from the public.  *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 599 (1978).

As Plaintiff concedes, the Live Nation Agreement contains royalty rates, licensing terms, and other elements of the proprietary and confidential formula Live Nation uses to compensate Carter for his concert appearances – the precise sort of data that the Ninth Circuit has held should be sealed from the public.[3]  *See*

---

[2] Despite plaintiff's suggestion to the contrary, courts routinely seal exhibits containing trade secrets even when they are presented at trial.  *See, e.g., In re Elec. Arts, Inc.*, 298 F. App'x 568, 570 (9th Cir. 2008); *TVIIM v. McAfee, Inc.*, No. 13-4545, 2015 WL 4448022, at *3-4 (N.D. Cal. July 19, 2015); *In re Nat'l Consumer Mortg., LLC*, 512 B.R. 639, 641-42 (D. Nev. 2014).  Plaintiff offers no support for his position that the public has a "legally cognizable interest" in every document presented at trial, let alone an interest that outweighs Mr. Carter and Live Nation's "strong interest in keeping their detailed financial ifnromation sealed."  *Apple Inc. v. Samsung Elecs. Co.*, 727 F.3d 1214, 1226 (Fed. Cir. 2013).

[3] Plaintiff is incorrect that the terms of the Live Nation Agreement are outdated.  Exhibit 290 contains both the Live Nation Agreement and a series of amendments, the most recent of which was executed in 2013.  While those amendments materially impact the terms of Carter's compensation and contain highly confidential information, many of the sensitive details regarding his compensation – including numerous elements of the formula that is still used to calculate his compensation for live performances – is set forth in the original 2008 agreement.  More importantly, Plaintiff's claim that the sensitivity of the Live Nation Agreement has diminished over time is meritless.  The Live Nation Agreement is not a technology patent whose value decreases as other technologies render it obsolete.  Instead, it is a highly guarded secret because it sets out the *current* terms on which Mr. Carter, one of the world's most high-profile performing artists, is compensated.  Plaintiff offers absolutely no reason that the advent of streaming technology – or any other purported shift in the "economics of popular music" – would make the terms of Mr. Carter's compensation for live performances any less

---

2

*In re Elec. Arts*, 298 F. App'x at 569. Moreover, the erroneous disclosure of those terms would inflict significant financial harm on Live Nation. It would undermine Live Nation's bargaining position in negotiations with new artists (by disclosing terms to which Live Nation has already agreed), as well as its relationships with existing artists who trust that the terms of their agreements with Live Nation will remain secret.[4] It would similarly weaken Mr. Carter's bargaining position in future negotiations. In short, both Mr. Carter and Live Nation would be "irreparably damaged" by the disclosure of the Live Nation Agreement to the public. *In re Elec. Arts*, 298 F. App'x at 570. Accordingly, if the Court admits any portion of the Live Nation Agreement, it should require that those portions (and any portion of the trial transcript referencing them) remain sealed.[5]

## II.    The Court Should Take Additional Precautions to Prevent the Erroneous Disclosure of the Live Nation Agreement.

Plaintiff agrees that the Live Nation Agreement should not be displayed on the courtroom monitors facing the gallery. *See* ECF No. 682 at 1:27-2:4. The other two measures Mr. Carter proposed – redaction and withholding the Live Nation Agreement from the evidence binders to be sent back with the jury– are commonsense precautions that the Court should adopt to prevent the erroneous disclosure of the Live Nation Agreement.

The Court should redact the Live Nation Agreement so that the jury sees

---

confidential.

[4] Neither Mr. Carter nor Live Nation have disclosed the terms of their agreement to the public. While Plaintiff claims that the relevant terms were disseminated in SEC filings and news articles, those documents only set forth the broad outlines of their agreement and do not contain the intricate details of the formula whereby Mr. Carter is compensated. Moreover, those articles and SEC filings are from 2008 and do not reflect any subsequent amendments to the Live Nation Agreement.

[5] Recognizing that testimony about trade secrets or other confidential information may be just as damaging as the documents themselves, numerous courts in the Ninth Circuit have held that it is appropriate to seal trial transcripts containing such information. *See, e.g.*, *Richardson*, 2011 WL 837148 at *2; *Coloplast A/S v. Generic Med. Devices, Inc.*, No. 10-227, 2012 WL 3629037, at *2 (W.D. Wash. Aug. 22, 2012).

only those portions (if there are any such portions) that are relevant to the narrow question of how much Mr. Carter earned for his live performances of *Big Pimpin'*. As Plaintiff concedes, redaction is proper when "sensitive and irrelevant materials are mixed with . . . irrelevant information."[6]  *N.Y. Times Co. v. Gonzales*, 459 F.3d 160, 170 (2d Cir. 2006).  Even if Plaintiff were correct that specific portions of the Live Nation Agreement are relevant to that question – and he is not – the remainder of that agreement should be redacted so it is not erroneously disclosed to the public.

Nor should the Court place the Live Nation Agreement in the exhibit binders.  The only rationale Plaintiff has offered for using the Live Nation Agreement is to show that the verified discovery responses prepared by Live Nation actually understate his concert revenues.  Plaintiff waived his right to make this argument by stipulating that those discovery responses are "*accurate*, authentic, and admissible statements of the descriptions and amounts of defendants' revenues and expenses."  *See* Rozansky Decl. to Supp. Br., ECF No. 678-1, Ex. 2.  Moreover, even if Plaintiff could use the Live Nation Agreement to challenge the accuracy of those discovery responses, that rationale suggests the Live Nation Agreement is relevant solely for impeachment.  This Court should not permit Plaintiff to use such "impeachment" as a "guise to present substantive evidence to the jury that would otherwise be inadmissible."  *United States v. Gilbert*, 57 F. 3d 709, 711 (9th Cir. 1995).  Accordingly, if the court determines

---

[6] Plaintiff does not dispute that redaction is appropriate in principle, but he nonetheless contends that Mr. Carter has not sufficiently tailored his request to redact the Live Nation Agreement.  It is preposterous for Plaintiff, who has never identified a *single provision* of the Live Nation Agreement that is even arguably relevant, to claim that Mr. Carter has the burden of identifying which portions of the Live Nation Agreement should be withheld from the jury.  Plaintiff, not Mr. Carter, has the burden of identifying those portions of the Live Nation Agreement it considers relevant.  *See, e.g.*, *Cyr. v. Reliance Standard Life Ins. Co.*, 525 F. Supp. 2d 1165, 1169 (C.D. Cal. 2007).  Only if Plaintiff does so – and the Court concludes that those provisions are relevant – does Mr. Carter then bear the burden of identifying portions of the Live Nation Agreement that should be redacted.

that the Live Nation Agreement may be used solely for impeachment, it should not place that exhibit in the binders to be sent back with the jury.[7] *See United States v. Stansfield*, 521 F.2d 1122, 1127-28.

## CONCLUSION

This Court should not admit the Live Nation Agreement and should not permit it to be shown to the jury. If the Court does so, however, it should ensure the confidentiality of that document by placing it under seal, ordering appropriate redactions, and withholding it from the exhibit binders sent to the jury room.

Dated: October 19, 2015          JENNER & BLOCK LLP

                                 By: s/ Andrew H. Bart
                                 _____
                                     Andrew H. Bart

                                     Attorneys for Defendant
                                     SHAWN CARTER (pka Jay Z)

Dated: October 19, 2015          MITCHELL SILBERBERG & KNUPP LLP

                                 By: s/ Christine Lepera
                                 _____
                                     Christine Lepera
                                     Russell J. Frackman
                                     David A. Steinberg
                                     Bradley J. Mullins

                                     Attorneys for VARIOUS DEFENDANTS

///

///

///

---

[7] Moreover, as Plaintiff concedes, the Court may exercise its discretion to withhold exhibits from the jury room even if they are admitted in evidence. *See, e.g.*, *United States v. Hinkson*, 281 F. App'x 651, 653 (9th Cir. 2008); *United States v. An Article of Drug*, 661 F.2d 742, 746 (9th Cir. 1981).

1

# ATTESTATION OF FILER

Pursuant to Local Rule 5-4.3.4, I attest that all other signatories listed, and

on whose behalf this filing is submitted, concur in the filing's content and have

authorized the filing.


Dated:  October 19, 2015                    JENNER & BLOCK LLP


                                    By:  s/ Andrew H. Bart
                                         Andrew H. Bart

                                         Attorneys for Defendant
                                         SHAWN CARTER (pka Jay Z)