CHRISTINE LEPERA (Pro Hac Vice)
  ctl@msk.com
DAVID A. STEINBERG (SBN 130593)
  das@msk.com
MITCHELL SILBERBERG & KNUPP LLP
11377 West Olympic Boulevard
Los Angeles, CA  90064-1683
Telephone: (310) 312-2000
Facsimile: (310) 312-3100

ANDREW H. BART (Pro Hac Vice)
  abart@jenner.com
DANIEL A. ROZANSKY (SBN 161647)
  drozansky@jenner.com
JENNER & BLOCK LLP
633 West 5th Street, Suite 3600
Los Angeles, California 90071
Telephone: (213) 239-5100
Facsimile: (213) 239-5199

Counsel for Defendants – Continued after signatures

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Osama Ahmed Fahmy, | CASE NO. CV 07-05715 CAS (PJWx) |
| Plaintiff, | The Honorable Christina A. Snyder |
| v. | **MEMORANDUM  IN SUPPORT OF DEFENDANTS' MOTION FOR JUDGMENT** |
| Jay-Z (aka Shawn Carter), Timothy Mosely, Kyambo Joshua, Rob Bourdon, Brad Delson, Mike Shinoda, Dave Ferrell, Joseph Hahn, Chester Bennington, Big Bad Mr. Hahn Music, Chesterchaz Publishing, EMI Blackwood Music, Inc., EMI Music Publishing Ltd., Kenji Kobayashi Music, Lil Lulu Publishing, Machine Shop Recordings, LLC, Marcy Projects Productions II, Inc., MTV Network Enterprises Inc., Nondisclosure Agreement Music, Paramount Home Entertainment, Inc., Paramount Pictures Corporation, Radical Media, Rob Bourdon Music, Roc-A-Fella Records, LLC, Timbaland Productions, Inc., UMG Recordings, Inc., Universal Music and Video Distribution, Inc., and Warner Music, Inc., | Trial Date:    October 13, 2015<br>Time:         9:30 a.m.<br>Ctrm:         5 |
| Defendants. | |

# **TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ..................................................................... 1

PRE-TRIAL RULINGS ............................................................................... 3

LEGAL STANDARD ................................................................................. 4

ARGUMENT ............................................................................................ 6

I.   Plaintiff Cannot Assert Egyptian Moral Rights Under United States Copyright Law ........ 6

    A.   *Plaintiff's Case is Solely about Moral Rights* ................................. 6

    B.   *The United States Does Not Recognize Moral Rights In Musical Compositions* ...................................................................... 7

II.  The Trial Evidence Demonstrates That Plaintiff Lacks Standing to Pursue Any Remaining Claims ..................................................................... 9

III. No Genuine Issue of Disputed Fact Exists To Prevent This Court From Granting Judgment On Defendants' License Defense ......................... 12

IV.  The Uncontested Evidence from Trial Requires the Finding That Plaintiff Is Equitably Estopped From Asserting His Claims ............................... 14

V.   Plaintiff's Waiver and Acquiescence Constitutes an Implied License from Plaintiff Himself ................................................................... 18

CONCLUSION ........................................................................................ 18

Mitchell
Silberberg &
Knupp LLP

**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION FOR JUDGMENT**

# TABLE OF AUTHORITIES

Page(s)

## CASES

*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242 (1986) ................................................................................. 4

*Arctic Cat, Inc. v. Injection Research Specialists, Inc.*,
   362 F. Supp. 2d 1113 (D. Minn. 2005) ........................................... 15, 16

*Carson v. Dynegy, Inc.*,
   344 F.3d 446 (5th Cir. 2003) ................................................................. 14

*Carter v. Helmsley-Spear, Inc.*,
   71 F. 3d 77 (2d Cir. 1995) ....................................................................... 9

*Compaq Computer Corp. v. Ergonome, Inc.*,
   210 F. Supp. 2d 845 (S.D. Tex. 2002) .................................................. 15

*Crispin v. Christian Audigier, Inc.*,
   839 F. Supp. 2d 1086 (C.D. Cal. 2011) ................................................ 18

*DeCarlo v. Archie Comic Pubs.*,
   127 F. Supp. 2d 497 (S.D.N.Y. 2001) .................................................. 14

*Donald Frederick Evans & Assocs. v. Cont'l Homes, Inc.*,
   785 F.2d 897 (11th Cir. 1986) ................................................................. 2

*EBC, Inc. v. Clark Bldg. Sys.*,
   618 F.3d 253 (3rd Cir. 2010) ................................................................... 5

*Faggionato v. Lerner*,
   500 F. Supp. 2d 237 (S.D.N.Y. 2007) .................................................. 10

*Feliciano v. Rullan*,
   378 F.3d 42 (1st Cir. 2004) ..................................................................... 5

*Garcia v. Google, Inc.*,
   786 F.3d 733 (9th Cir. Cal. 2015) ..................................................... 8, 10

*Garcia v. Truck Ins. Exch.*,
   36 Cal. 3d 426 (1984) ........................................................................... 10

*Hadady Corp. v. Dean Witter Reynolds, Inc.*,
   739 F. Supp. 1392 (S.D. Cal. 1990) ..................................................... 14

*Hampton v. Paramount Pictures Corp.*,
   279 F.2d 100 (9th Cir. 1960) ................................................................. 14

Mitchell
Silberberg &
Knupp LLP

ii

# TABLE OF AUTHORITIES
## (continued)

**Page(s)**

*Hayden v. Chalfant Press, Inc.*,
    177 F. Supp. 303 (S.D. Cal. 1959) ................................................................ 15, 16

*I.A.E., Inc. v. Shaver*,
    74 F.3d 768 (7th Cir. 1996) ................................................................................. 18

*In re Letterman Bros. Energy Sec. Lit.*,
    799 F.2d 967 (5th Cir. 1986) ............................................................................ 4, 5

*In re Ping Ma*,
    2011 Bankr. LEXIS 1788 (B.A.P. 9th Cir. Apr. 20, 2011) ................................... 5

*Jefferson Pilot Life Ins. Co. v. Gold*, 2005 U.S. Dist. LEXIS 45931, at *7-8 (C.D.
    Cal. Nov. 15, 2005) ............................................................................................. 10

*Kelley v. Chicago Park Dist.*,
    635 F.3d 290 (7th Cir. Ill. 2011), *cert. denied*, 132 S. Ct. 380 (2011)............................ 7, 8, 11

*Linde v. Arab Bank, PLC*,
    944 F. Supp. 2d 217 (E.D.N.Y. 2013) ................................................................ 10

*McGonigle v. Combs*,
    968 F.2d 810 (9th Cir. 1992) ................................................................................. 4

*Rationis Enterprises Inc. of Panama v. Hyundai Mipo Dockyard Co.*,
    426 F.3d 580 (2d Cir. 2005) ............................................................................... 10

*Ritchie v. U.S.*,
    451 F.3d 1019 (9th Cir. 2006) ............................................................................... 5

*Smith v. Carr*,
    2012 U.S. Dist. LEXIS 129 326, at *19 (C.D. Cal. Sept. 10, 2012) (Snyder, J.) ................. 14

*Thandedar v. Time Warner, Inc.*,
    352 Fed. App'x 891 (5th Cir. Nov. 3, 2009) ......................................................... 5

### STATUTES

17 U.S.C.
    § 104(c) ................................................................................................................ 8
    § 106 ..................................................................................................................... 7
    § 106A .................................................................................................................. 7

Copyright Act. ............................................................................................................ 8, 9

Mitchell
Silberberg &
Knupp LLP

7184286.1

**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION FOR JUDGMENT**

1

**TABLE OF AUTHORITIES**
(continued)

2

3

**Page(s)**

4

OTHER AUTHORITIES

5

8 *Moore's Federal Practice*,
    § 44.1.05[3] (Matthew Bender 3d Ed.) ........................................................ 10

6

1988 Berne Convention Implementation Act .................................................... 4, 8

7
    Article 6*bis* ................................................................................................ 6, 10
    Article 7 ...................................................................................................... 12

8
    Article 12 ............................................................................................... 10, 12

9
    Article 37 ..................................................................................................... 12

10

2002 Egyptian Intellectual Property Law .......................................................... 10
    Article 143 ................................................................................................. 6, 10

11
    Article 147 ............................................................................................. 10, 11
    Article 149 ............................................................................................. 10, 11

12

13

Federal Rules of Civil Procedure
    Rule 44.1 ................................................................................................ 2, 3, 10

14
    Rule 50(a) .............................................................................................. 1, 3, 4
    Rule 50(a) and 52 ................................................................................ 1, 3, 18

15
    Rule 52(c) ...................................................................................................... 5

16

Nimmer on Copyright

17
    § 8D.01 ..................................................................................................... 7, 11
    § 10.03[A][7] .............................................................................................. 18

18

19

20

21

22

23

24

25

26

27

Mitchell
Silberberg &
Knupp LLP

28

7184286.1

**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION FOR JUDGMENT**

# PRELIMINARY STATEMENT

Pursuant to Fed. R. Civ. P. 50(a) and 52, Defendants request that judgment be entered against Plaintiff and in Defendants' favor. The undisputed facts and clear law can support only this one conclusion.

Plaintiff elected to bring this action for copyright infringement in Los Angeles under United States copyright law. From the beginning of the trial, Plaintiff made it clear that his case is based solely upon one theory: a violation of his alleged Egyptian moral rights. Plaintiff directly argued that an alleged violation of his Egyptian moral rights allows him to sue for copyright infringement in the United States.[1] Plaintiff is patently wrong, and Defendants are entitled to judgment as a matter of law. Plaintiff's argument has already been rejected by this Court, and certainly presents no jury question. Plaintiff's effort to assert an Egyptian moral rights claim in the United States is wholly improper. Any validation of this effort would not only conflict with existing legislation but would also have catastrophic effects on contracting parties worldwide operating in non-moral rights jurisdictions. Finally, Plaintiff's effort to camouflage this theory as a matter of contractual interpretation does not aid him.[2]

Second, the unrebutted evidence elicited at trial mandates judgment for Defendants as a matter of law on at least four additional grounds: 1) Plaintiff lacks standing after assigning his exclusive economic rights in 2002; 2) Defendants had a valid license since 2001 from EMI Music Arabia; 3) Plaintiff should be equitably estopped from pursuing his claims and 4) Plaintiff waived and acquiesced to the 2001 non-exclusive license by his undisputed knowledge of the impending license and his conduct in 2001. Defendants submit that all of these issues must be

---

[1] Plaintiff's opening statement (improperly) explained to the jury that "***This case is about moral rights here and in Egypt.***" 10/13 Trial Transcript ("Trial Tr.") at 62.

[2] Contrary to his pre-trial representations, Plaintiff has presented no admissible extrinsic evidence of contract interpretation or intent where "moral rights" has any alleged relevance.

Mitchell
Silberberg &
Knupp LLP

1

decided at this time by the Court prior to any jury determination.[3]  Any one of these issues determined in Defendants' favor moots Plaintiff's case in its entirety.

While Defendants anticipate that – Plaintiff will attempt to inject – considerations of Egyptian moral rights law as "evidence" to dispute judgment on these grounds, such effort is unavailing.  EMI Music Arabia licensed the use of the *Khosara* musical composition sample to Defendants in connection with *Big Pimpin'* throughout the world **except** Egypt.  Plaintiff's transfers of rights to Sout el Phan (and later Mohsen Jaber) under Egyptian law granted the right to authorize samples (*i.e.*, to "adapt" or create derivative works using excerpts of a pre-existing musical work) as an independent **transferable economic** right.

Moral rights are wholly independent rights from those discussed above and merely allow an author or his heir to petition an Egyptian court to **enjoin** a particular exercise of that transferable economic right **in Egypt**.  There is absolutely no legal or evidentiary basis that has been proffered by Plaintiff —or that could be proffered by Plaintiff—to read into every transfer of economic rights—a condition or restriction on the transfer of the economic right itself for uses outside of Egypt.  No contractual restrictions express or implied were placed upon Plaintiff's complete assignment of economic rights to third party Mohsen Jaber in 2002 in exchange for a lump sum, nor were any restrictions placed upon

---

[3] Defendants respectfully submit that these issues must be decided before any remaining issues are presented to the jury, which Defendants submit should moot any verdict.  Clearly, no issues related to infringement can be determined prior to a determination that the use was unauthorized.  *See, e.g., Donald Frederick Evans & Assocs. v. Cont'l Homes, Inc.*, 785 F.2d 897, 901 n.7 (11th Cir. 1986) (defendant not liable for copyright infringement based on substantial similarity if did not engage in unauthorized copying or use of copyrighted material).  Certainly, no jury could find improper appropriation if there is a valid, licensed use.

Defendants further note their previously expressed concern that, over their objection, foreign law testimony and argument was presented to the jury.  *See* Fed. R. Civ. P. 44.1.  This testimony and argument may well permeate deliberations and confuse matters for the jury.

the chain of title by which Defendants validly obtained the non-exclusive right to use a sample of the *Khosara* musical composition in *Big Pimpin'* in 2001.

Furthermore, in all events, Defendants have established as a matter of law, by unrebutted proof, that Plaintiff is equitably estopped from pursuing this case. There is no dispute that Plaintiff, through his representative David Braun, raised a potential claim in connection with the use of the *Khosara* musical composition in *Big Pimpin'* in 2001. There is no dispute that EMI Music Arabia promptly rejected the claim, making it clear that it had the requisite rights to grant permission to Tim Mosley to use the *Khosara* musical composition in *Big Pimpin'*. There is no dispute that Plaintiff (and Mr. Braun) then disappeared; this lawsuit was filed more than six years later. It is further undisputed that Defendants were prejudiced by and relied upon Plaintiff's conduct and silence by proceeding to exploit *Big Pimpin'* in CDs, mash-ups, TV shows, a motion picture, and concert performances. This same undisputed evidence also supports judgment in Defendants' favor on their waiver and acquiescence defenses.

Now, these issues are ripe for judicial determination under Fed. R. Civ. P. 50(a) and 52. The issues of foreign law (including foreign moral rights) are solely the province of this Court under Fed. R. Civ. P. 44.1. Plaintiff has not adduced any evidence that disputes Defendants' entitlement to judgment on its license, waiver and acquiescence defenses. As equitable estoppel is an equitable defense, this Court may and should determine judgment in Defendants' favor on this ground as well.

## PRE-TRIAL RULINGS

In its pre-trial ruling on the parties' motions *in limine*, the Court held that "the Court's prior rulings ***preclude*** plaintiff from presenting the argument that defendants violated his moral rights in the *Khosara* composition or that Egyptian law does not recognize a transferable right of adaptation." Docket No. 626 at 17 (emphasis added). The Court also noted that Plaintiff's counsel had represented

Mitchell
Silberberg &
Knupp LLP

3

1  that it would not seek to do so at trial. *Id.* at 16. The first week of trial has
2  confirmed that this is exactly what Plaintiff has sought to do. Plaintiff's prior
3  contention that it would present evidence of intent or ambiguities related to the
4  contracts is belied by his utter failure to do so. Defendants' submit that this
5  misleading contention compelled an unnecessary jury trial.

6          In that regard, it is also important to note that prior to trial the Court
7  additionally held that (1) it was at best unclear whether Plaintiff retained standing
8  to assert claims for the post-August 2004 statutory period remaining in this action,
9  (2) Defendants had strong factual and legal grounds in favor of having received a
10  license under the 2001 settlement agreement between Defendant Mosley and EMI
11  Music Arabia, and (3) Defendants also had strong factual and legal grounds in
12  favor of Plaintiff being equitably estopped to assert claims on the basis of his
13  agent's actions and representations to EMI Music Arabia, Plaintiff's subsequent
14  silence, and Defendants' reasonable reliance on this silence to their detriment. *See*
15  Docket Nos. 271, 380, 509. Now, it is abundantly clear that there are no issues of
16  disputed fact on any of these grounds and judgment should be entered in
17  Defendants' favor now as a matter of law.

18                              **LEGAL STANDARD**

19          Under Fed. R. Civ. P. 50(a), judgment as a matter of law in connection with
20  a jury trial is proper "when the evidence permits only one reasonable conclusion as
21  to the verdict." *McGonigle v. Combs*, 968 F.2d 810, 816 (9th Cir. 1992); *In re
22  Letterman Bros. Energy Sec. Lit.*, 799 F.2d 967, 971 (5th Cir. 1986) (judgment as a
23  matter of law is "a conclusion of law when there is insufficient evidence to create a
24  factual issue for the jury."); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52
25  (1986) ("the relevant inquiry in a motion for judgment as a matter of law is
26  "whether the evidence presents a sufficient disagreement to require submission to a
27  jury or whether it is so one-sided that one party must prevail as a matter of law.");
28  *Letterman*, 799 F.2d at 971 (similar). Judgment as a matter of law is not limited to

Mitchell
Silberberg &
Knupp LLP

**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION FOR JUDGMENT**

1   situations where "there is a complete absence of probative facts to support a jury

2   verdict." *Id.* at 972.  Moreover, a "mere scintilla" of evidence opposed to the

3   motion is insufficient to present a question for the jury.  *Id.* at 971.

4           Under Fed. R. Civ. P. 52(c), in a non-jury trial or a trial with an advisory

5   jury, "[w]hen a party has finished presenting evidence and that evidence is deemed

6   by the trier insufficient to sustain the party's position, the court need not waste

7   time, but rather, may call a halt to the proceedings and enter judgment

8   accordingly." *Feliciano v. Rullan*, 378 F.3d 42, 59 (1st Cir. 2004); *In re Ping Ma*,

9   2011 Bankr. LEXIS 1788, at *23 (B.A.P. 9th Cir. Apr. 20, 2011) ("The court is

10  justified in immediately dismissing the case or claim when a party pursuing the

11  claim fails to demonstrate the elements of the claim in fact or in law.").  Judgment

12  under Rule 52(c) is proper "so long as the party against whom judgment is to be

13  rendered has been 'fully heard' with respect to an issue essential to that party's

14  case." *EBC, Inc. v. Clark Bldg. Sys.*, 618 F.3d 253, 272 (3rd Cir. 2010).  When

15  deciding whether to dismiss a case or claim under Rule 52(c), "the district court is

16  not required to draw any inferences in favor of the non-moving party; rather, the

17  district court may make findings in accordance with its own view of the evidence."

18  *Ritchie v. U.S.*, 451 F.3d 1019, 1023 (9th Cir. 2006); *EBC, Inc.*, 618 F.3d at 272 (in

19  considering whether to grant judgment under Rule 52(c), the district court "does

20  not view the evidence through a particular lens or draw inferences favorable to

21  either party"); *Thandedar v. Time Warner, Inc.*, 352 Fed. App'x 891, 897 n.1 (5th

22  Cir. Nov. 3, 2009).

23          Under these standards, as applicable to each of the issues below, Defendants

24  are entitled to judgment.

25

26

27

28

Mitchell
Silberberg &
Knupp LLP

**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION FOR JUDGMENT**

## ARGUMENT

I. **Plaintiff Cannot Assert Egyptian Moral Rights Under United States Copyright Law**

### A. *Plaintiff's Case is Solely about Moral Rights*

In his opening, Plaintiff's counsel made it clear that Plaintiff's "***case is about moral rights here and in Egypt.***" 10/13 Trial Tr. at 62. As emphasized below, Plaintiff's counsel conceded: "So what are the issues for you to decide here? ***In my view there's really only one issue***. Did [Defendants] get approval from Hamdy or his heirs to change the music by looping the introduction over and over again? ***In other words, did they respect Hamdy's moral rights.***" *Id.* at 66 (emphasis added). He went on to further concede that the economic rights in the *Khosara* composition were granted to Defendants *via* the 2001 agreement with EMI Music Arabia. He unequivocally stated that Mosley "***[got] a license from [EMI Music Arabia] to use the economic rights***," alleging merely that he and Carter did not at the same time go back to Egypt to "seek Hamdy's [sic] approval to use the changed work." *Id.* at 65 (emphasis added).

Plaintiff can no longer pretend that this is not a moral rights claim, that he is seeking to enforce in the United States where no such claim is available. Plaintiff wants this Court (and jury) to manufacture a moral right of "integrity," out of whole cloth when none exists here. Plaintiff's moral rights exist in Egypt, not here. He can (but did not) file an objection with an Egyptian Court to uses ***in Egypt*** deemed to be a "distortion" or "mutilation" of an original work. *See, e.g.*, Berne Convention Article 6*bis*; Deposition of Mohamed Hossam Mahmoud Loutfi Ibrahim dated July 24, 2015 ("Loutfi 2015 Depo.") at 76:23-77:25 (Egyptian law "identical" to Berne Convention); Egypt 2002 Intellectual Property Law (Trial Exhibit 203) at Article 143; 10/15 p.m. Trial Tr. (testimony of Walid Abou Farhat) at 44:2-49:15. Plaintiff cannot make that objection here, period.[4]

---

[4] At other times, Plaintiff has contradictorily invoked the separate Egyptian moral right of "attribution." He has framed this case in terms of whether Baligh Hamdy

(…continued)

Mitchell
Silberberg &
Knupp LLP

**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION FOR JUDGMENT**

1    Plaintiff's above-cited statements, along with many others during the course

2    of the trial, are judicial admissions that any rights asserted by Plaintiff in this

3    action are based on moral rights not recognized here, and ***not economic rights***

4    recognized under 17 U.S.C. Section 106.  Egyptian moral rights are not available

5    under United States law, and they cannot give rise to jurisdiction in a U.S. court.

6    ### B.    *The United States Does Not Recognize Moral Rights In Musical Compositions*

7

8    In jurisdictions where they exist – <u>not</u> the United States – moral rights are

9    ***personal*** rights inherent to an author and his or her heirs that are ***separate*** from the

10   panoply of economic rights which are transferable by contract.  *See Kelley v.*

11   *Chicago Park Dist.*, 635 F.3d 290, 296 (7th Cir. Ill. 2011), *cert. denied*, 132 S. Ct.

12   380 (2011) (describing moral rights as "rights inhering in the artist's personality,

13   transcending property and contract rights and existing ***independently*** of the artist's

14   economic interest in his work.") (emphasis added).  In moral rights jurisdictions –

15   <u>not</u> the United States – such rights persist notwithstanding the total transfer of a

16   copyright (including adaptation or derivative work rights) to another owner.  In

17   countries where moral rights can be exercised, an individual or entity may own ***all***

18   of the relevant economic rights in a work, but still be faced with moral rights

19   claims if an author or heir believes a work's integrity has been compromised or

20   that the author has not received proper credit.  Nimmer on Copyright § 8D.01:

21   "The[] separate viability [of moral rights] is such that a full transfer of copyright

22   may suffice for all economic purposes, but may exert no impact on the assertion of

23   [moral rights] claims." (emphasis added).

24

25   _____

26   (…continued)
     should have received authorial "credit" in connection with *Big Pimpin'*,
     notwithstanding that there is no available claim for that relief, notwithstanding
27   there are no contractual terms for such credit in any licenses or assignments, and
     notwithstanding the simultaneous allegation of *Khosara's* mutilation or distortion.
28   *Id.*

Mitchell Silberberg & Knupp LLP

7

**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION FOR JUDGMENT**

With certain narrow (and wholly inapplicable) exceptions for works of visual art, the United States does ***not*** recognize moral rights.[5]  *See, e.g., Garcia v. Google, Inc.*, 786 F.3d 733, 746 (9th Cir. Cal. 2015) ("Nor is [plaintiff] protected by the benefits found in many European countries, where authors have 'moral rights' to control the integrity of their works and to guard against distortion, manipulation, or misappropriation."), citing *Kelley*, *supra*.

When the United States joined the Berne Convention, Congress in fact took special measures through the Berne Convention Implementation Act of 1988 to assure that no new rights or remedies would be created under U.S. law other than what is expressly provided in Title 17.  After lengthy debate, Congress legislated that moral rights would ***not*** be granted to foreign authors of works *via* the Berne Convention, and that Title 17 would be amended to clarify that the Berne Convention could not be invoked to assert rights not otherwise provided for under American copyright law.  Pub.L. No. 100-568, 102 Stat. 2853 (1988); *see* 17 U.S.C. 104(c) ("Any rights in a work eligible for protection under this title that derive from this title, other Federal or State statutes, or the common law, shall not be expanded or reduced by virtue of, or in reliance upon, the provisions of the Berne Convention, or the adherence of the United States thereto.").  As the Second Circuit explained in 1995:

> Congress passed the Berne Convention Implementation Act of 1988 and side-stepped the difficult question of protecting moral rights.  It declared that the Berne Convention is not self-executing, existing law satisfied the United States' obligations in adhering to the Convention, its provisions are not enforceable through any action brought pursuant to the Convention itself, and ***neither adherence to the Convention nor the implementing legislation expands or reduces any rights under federal, state, or common law to claim authorship of a work or to object to any distortion, mutilation, or other modification of a work***.

---

[5] Notably, for those limited works of visual art that do enjoy moral rights protection under U.S. law, the statute makes clear that such rights are "independent of the exclusive rights [*i.e.*, economic rights] provided in section 106." 17 U.S.C. 106A.

Mitchell Silberberg & Knupp LLP

**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION FOR JUDGMENT**

1    *Carter v. Helmsley-Spear, Inc.*, 71 F. 3d 77, 83 (2d Cir. 1995) (citations omitted,

2    emphasis added).  Accordingly, whether a foreign author may have cognizable

3    moral rights in his or her home country, that right does ***not*** transcend to the United

4    States.  That is made clear by Congress's express decision ***to refuse*** to expand any

5    rights or remedies under the Copyright Act.

6           There are important public policy reasons for Congress so legislating.

7    Without question, if Plaintiff's ill-reasoned and improper claim for recognition of

8    foreign moral rights under U.S. law were to be allowed, it would almost certainly

9    open the floodgates to further improper moral rights claims within the U.S. courts,

10    against the clear intent of Congress and with clear negative implications for

11    American public policy values of free speech and unfettered cultural discourse.

12    Doing so would also threaten to destabilize creative industries that have long

13    operated on the correct premise that foreign moral rights have no enforceability in

14    the U.S.

15           By asking this Court to enforce moral rights not provided for in the

16    Copyright Act, Plaintiff is asking this Court to trump a clear determination made

17    by Congress to preclude such relief.  Clearly this Court may not do so.  Plaintiff

18    has no legal theory that could make his purported moral rights enforceable in this

19    case in violation of Congress's expressed legislative intent.

20
21    **II.**    **<u>The Trial Evidence Demonstrates That Plaintiff Lacks Standing to Pursue Any Remaining Claims</u>**

22           In May 2015, the Court ruled that there were disputed issues of fact

23    regarding Plaintiff's continued standing to assert claims in light of his 2002

24    assignment of rights in the *Khosara* composition to Mohsen Jaber, the principal of

25    Sout el Phan's successor Alam el Phan.  Docket No. 509 at 7; *see* Trial Exhibit

26    210.  The evidence presented at trial now has resolved these issues fully in

27    Defendants' favor.  Plaintiff has no standing to pursue this case as a matter of law.

28

Mitchell
Silberberg &
Knupp LLP

**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION FOR JUDGMENT**

1    Plaintiff's standing to assert claims hinges on one simple question: After

2    December 2002, did Plaintiff maintain the exclusive *economic* right to license or

3    prohibit the use of a sample of the *Khosara* musical composition in the United

4    States? The answer to this question is within the exclusive province of the Court to

5    determine – and it is a resounding " no".

6    First, under the Egyptian Intellectual Property Law of 2002 (Law No. 82 of

7    2002), the right to make adaptations and derivative works is a transferable

8    economic right that "exists independently of inalienable moral rights," as this

9    Court previously recognized. This answer also is confirmed by the Berne

10   Convention, the trial testimony of Defendants' Egyptian law expert Walid Fahat,

11   and by the admissions of Plaintiff's expert at his recent deposition which were read

12   into trial testimony. *See* Docket No. 271 at 15; Docket No. 509 at 2; Egyptian

13   Intellectual Property Law of 2002 (Trial Exhibit 203) at Articles 143, 147, 149;

14   Berne Convention Articles 6*bis* and 12; Loutfi 2015 Depo. at 76:23-77:25;135:8-

15   14; 238:8-12; 360:22-361:08; 10/15 p.m. Trial Tr. (testimony of Walid Abou

16   Farhat) at 44:2-51:25; 53:7-54:9; 56:7-18.[6]

17   Second, Plaintiff's 2002 written assignment of worldwide economic rights to

18   Mohsen Jaber was not limited in any fashion on its face, and there is absolutely no

19   evidentiary basis for any "implied restriction" that would prevent EMI Arabia from

20   granting a valid sample license to Defendants.[7] At trial, Defendants presented

---

[6] As set forth in Defendants' Trial Brief requesting bifurcation and resolution of foreign law issues (Docket No. 568), "foreign law determinations are to be made by the court and not by the jury." *Linde v. Arab Bank, PLC*, 944 F. Supp. 2d 217, 218 (E.D.N.Y. 2013); *see also* 8 *Moore's Federal Practice*, § 44.1.05[3] (Matthew Bender 3d Ed.) ("Because Rule 44.1 determinations are questions of law, a party has no right to have the issue submitted to a jury.") (*citing Linde v. Arab Bank, PLC, supra*); *Faggionato v. Lerner*, 500 F. Supp. 2d 237, 244 (S.D.N.Y. 2007) ("'Ultimately, the responsibility for correctly identifying and applying foreign law rests with the court.'" (quoting *Rationis Enterprises Inc. of Panama v. Hyundai Mipo Dockyard Co.*, 426 F.3d 580, 586 (2d Cir. 2005))).

[7] This and any other matters of contractual interpretation also are matters solely for the Court. *See Jefferson Pilot Life Ins. Co. v. Gold*, 2005 U.S. Dist. LEXIS 45931, at *7-8 (C.D. Cal. Nov. 15, 2005), quoting *Garcia v. Truck Ins. Exch.*, 36 Cal. 3d 426, 439, 204 Cal. Rptr. 435, 682 P.2d 1100 (1984) ("It is solely a judicial function (…continued)

Mitchell Silberberg & Knupp LLP

**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION FOR JUDGMENT**

1   unrebutted evidence establishing that Plaintiff's 2002 assignment of rights in the

2   *Khosara* musical composition was total and unequivocal.  The 2002 Assignment

3   was clear and Plaintiff reiterated his intent to assign all rights without reservation.[8]

4   10/15 p.m. Trial Tr. (testimony of Walid Abou Farhat) at 56:19-67:17;  69:15-24.

5   Defendants also presented unrebutted evidence that Egyptian moral rights did ***not***

6   place any contractual restrictions or limitations upon the conveyance of economic

7   rights therein, since moral rights exist on a completely separate plane from

8   economic rights of exploitation.  To the contrary, they inhere in a personal right to

9   object to certain uses or seek authorial attribution regardless of the transfer of

10  economic rights **–** ***in Egypt only***.  *Id.* at 44:2-49:15; 56:19-67:17; *see also* Nimmer

11  on Copyright § 8D.01; *Kelley v. Chicago Park*, cited *supra*.

12        The dispositive fact is that Plaintiff has offered no legal support, statutory

13  provision, or extrinsic proof to support an argument that Egyptian moral rights are

14  "implied" in the 2002 transfer of Fahmy's economic rights such as to limit the

15  exercise of specifically granted rights ***in non-moral rights countries***.  There is no

16  such law or support.  The transfer was not so limited.  This is a clear legal issue

17  and requires no determination by a jury.

18  _____

19  (…continued)
    to interpret a written contract unless the interpretation turns upon the credibility of

20  extrinsic evidence, even when conflicting inferences may be drawn from
    uncontroverted evidence.")  Here, there is no conflicting extrinsic evidence to be

21  resolved by the jury at all.

22  [8] Defendants' Egyptian law and custom and practice expert, Walid Abou Farhat,
    testified that (1) rights "including musical re-segmentation and alteration methods

23  while maintaining the original segment of the music" means that the economic
    right to issue sample licenses was specifically ***included*** as part of the total

24  assignment of all rights to Jaber (using the Arabic word "*tahwir*," as used in
    Article 147 of the 2002 Intellectual Property Law); (2) the language at the end of

25  the 2002 agreement stating "I received the amount of 115.000 pounds for this
    waiver and declaration while maintaining our rights in respect of the public

26  performance and mechanical printing" does not retain any exclusive rights to
    Plaintiff, instead reserving only his "percentage" share (*nisbah*) of his songwriter

27  royalties; and (3) the total assignment in the 2002 agreement complies with the
    requirements of Article 149.  *See* 10/15 p.m. Trial Tr. at 59:1-60:20; 60:21-65:17;

28  65:18-67:10.

Mitchell
Silberberg &
Knupp LLP

**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION FOR JUDGMENT**

1

2

### III.   No Genuine Issue of Disputed Fact Exists To Prevent This Court From Granting Judgment On Defendants' License Defense

3         No genuine issues of fact remain with respect to the validity of the 2001

4   license issued by EMI Music Arabia to Defendant Mosley, permitting the

5   exploitation of a sample of the *Khosara* musical composition in connection with

6   *Big Pimpin'*.   Trial Exhibit 29 (same as 208).   There are no facts to present to the

7   jury as there is no conflicting proof on this issue.   First, just as stated in Egypt's

8   2002 law, under Egypt's previous copyright law (Law No. 354 of 1954 as amended

9   in 1992), the right to make adaptations and derivative works was a transferable

10   economic right independent of moral rights. *See* Docket No. 271 at 15; Berne

11   Convention Articles 6*bis*, 12; 1954 Law as amended (Trial Exhibit 154) at Articles

12   7, 37 (providing transferable economic right to adapt or modify); Loutfi 2015

13   Depo. at 238:8-12 (no difference in treatment of adaptations or derivative works

14   under Egypt's 2002 and 1954 copyright laws); 10/15 p.m. Trial Tr. (testimony of

15   Walid Abou Farhat) at 68:9-17 .

16         Second, Plaintiff's initial 1995 license of worldwide economic rights to Sout

17   el Phan (Trial Exhibit 205) contained no language restricting the exercise of such

18   rights outside of Egypt by reason of an author's moral rights that are applicable

19   only in Egypt.

20         Third, Plaintiff did transfer the exclusive economic right to make adaptations

21   or derivative works to Sout el Phan, which in turn validly sub-licensed such rights

22   to EMI Music Arabia for outside of Egypt so as to permit the 2001 settlement

23   agreement.   At trial, Plaintiff did not proffer any evidence raising a disputed issue

24   of fact requiring jury determination.   Defendants submit that the validity of each of

25   these transfers of economic rights – and of the entire chain of title they constitute –

26   can only be determined in Defendants favor, and only by the Court.[9]   *See* Trial

27   ---

[9] EMI Music Arabia acquired all music publishing rights – including the right to issue sample licenses for the *Khosara* musical composition – from Sout el Phan.

28   *See* testimony of Chris Ancliff (10/15 a.m. Trial Tr. at 32:11-42:2; 44:18-48:9;

(…continued)

Mitchell
Silberberg &
Knupp LLP

**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION FOR JUDGMENT**

1    Exhibits 29 (same as 208), 205, 207; 10/15 p.m. Trial Tr. (testimony of Walid

2    Abou Farhat) at 69:25-70:12; 10/15 a.m. Trial Tr. (testimony of Christopher

3    Ancliff) at 32:11-42:2; 51:4-55:17.

4         Additionally, all of the putative issues of fact identified in the Court's

5    summary judgment ruling of May 2015 on the basis of the then-current record have

6    emerged at trial as uncontroverted and suitable for resolution in favor of

7    Defendants as a matter of law.  *See* Docket No. 509 at 8-19.  These include:

8         **(1) approval of /consent to the EMI Music Arabia license**:  The

9    undisputed evidence now shows that Sout el Phan, and its successor Alam el Phan

10   (through its principal Mohsen Jaber), directly consented to and approved the 2001

11   settlement agreement between Defendant Mosley and EMI Music Arabia, and even

12   received a portion of the proceeds.  Trial Exhibits 120, 209, 351-353; 10/15 a.m.

13   Trial Tr. (testimony of Christopher Ancliff) at 44:18-48:9; 55:18-60:17; 66:14-

14   67:7; 10/16 p.m. Trial Tr. (testimony of Adrian Cheesley) at 13:12-18:23.

15        **(2) alleged "expiration" of EMI Music Arabia's rights**:  Although

16   irrelevant given Sout el Phan/Alam el Phan's approval of the 2001 settlement

17   agreement, the undisputed evidence now shows that since 1995, EMI Music Arabia

18   has been the uninterrupted worldwide exclusive licensee of publishing rights in the

19   Sout el Phan catalogue for the world excluding Egypt, including rights in the

20   *Khosara* musical composition.  10/15 a.m. Trial Tr. (testimony of Christopher

21   Ancliff) at 37:3-39:17; 10/16 p.m. Trial Tr. (testimony of Adrian Cheesley) at

22   19:24-25:12; Trial Exhibits 162, 207, 307-309.  There was no expiration of EMI

23   Music Arabia's rights, and EMI Music Arabia **remains** the party to whom anyone

24

25   _____

26   (...continued)
     55:18-60:17; 66:14-67:7); testimony of  Adrian Cheesley (10/16 p.m. Trial Tr. at

27   13:12-18:23); and the submitted deposition testimony of Defendants' English law
     expert Niri Shanmuganathan (Deposition Transcript of N. Shanmuganathan at

28   26:13-29:18).

Mitchell
Silberberg &
Knupp LLP

**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION FOR JUDGMENT**

1    seeking the right to sample the *Khosara* musical composition outside of Egypt

2    would need to turn for a license. *Id.*

3        **(3) alleged retention of performance rights**: The evidence now confirms

4    that provisions in Plaintiff's 1995 and 2002 agreements once argued to "reserve"

5    or "retain" exclusive rights of public performance or mechanical printing in fact do

6    no such thing: Egyptian law experts on both sides agree they are boilerplate

7    provisions specifying that the author retains only his specific percentage (*nisbah*)

8    of certain songwriting royalties collected and paid by collective rights

9    organizations such as SACERAU.  10/15 p.m. Trial Tr. (testimony of Walid Abou

10   Farhat) at 65:18-67:10; 69:2-14; Loutfi 2015 Depo. at 344:6-345:4; 345:6-345:9;

11   401:19-25.

12       In light of the above, judgment as a matter of law also is warranted for

13   Defendants on the separate basis of their license defense.

14   **IV.   The Uncontested Evidence from Trial Requires the Finding That**

15   **Plaintiff Is Equitably Estopped From Asserting His Claims**

16       The affirmative defense of equitable estoppel must be decided by the Court.

17   *Smith v. Carr*, 2012 U.S. Dist. LEXIS 129 326, at *19 (C.D. Cal. Sept. 10, 2012)

18   (Snyder, J.).  As set forth by Defendants in the Pre-Trial Conference Order, the

19   elements of estoppel in a copyright action are: (1) Knowledge: plaintiff's

20   knowledge of the allegedly infringing conduct; (2) Intent/Right to Believe: plaintiff

21   either intended reliance on his acts or omissions or acted or created a right to

22   believe he so intended; (3) Ignorance: defendant was ignorant of the true facts; and

23   (4) Reliance: defendant relied to his detriment.  *See, e.g., Hampton v. Paramount*

24   *Pictures Corp.*, 279 F.2d 100, 104 (9th Cir. 1960) (for estoppel purposes, "[a]

25   holding out may be accomplished by silence and inaction"); *Carson v. Dynegy,*

26   *Inc.*, 344 F.3d 446, 453 (5th Cir. 2003) ("[I]t is accepted that estoppel may be

27   accomplished by a plaintiff's silence and inaction"); *DeCarlo v. Archie Comic*

28   *Pubs.*, 127 F. Supp. 2d 497, 509 (S.D.N.Y. 2001); *Hadady Corp. v. Dean Witter*

Mitchell
Silberberg &
Knupp LLP

**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION FOR JUDGMENT**

1   *Reynolds, Inc.,* 739 F. Supp. 1392, 1399 (S.D. Cal. 1990).

2       Equitable estoppel "focuses on what the [accused infringer] has been led to

3   reasonably believe from the [claimant's] conduct." *Compaq Computer Corp. v.*

4   *Ergonome, Inc.,* 210 F. Supp. 2d 845, 849 (S.D. Tex. 2002).  Furthermore, estoppel

5   "inures not only to the benefit of a party, but also to those in privity with or who

6   claim under him whether as assignees or not." *Hayden v. Chalfant Press, Inc.,* 177

7   F. Supp. 303, 308 (S.D. Cal. 1959); *see also Arctic Cat, Inc. v. Injection Research*

8   *Specialists, Inc.,* 362 F. Supp. 2d 1113, 1127 (D. Minn. 2005).

9       As previously found, by Order dated August 12, 2013, and now irrefutably

10  established by uncontroverted evidence at trial:

11      (1) Plaintiff knew of his claim that *Big Pimpin'* was infringing no later than

12  December 2000, seven years before he brought this case.  Docket No. 309 at 2.

13      (2) Commencing in March 2001, Plaintiff hired an attorney named David

14  Braun to investigate his potential copyright claims regarding *Big Pimpin'*.  Docket

15  No. 380 at 3; Trial Exhibits 106, 317-321.

16      (3) Mr. Braun wrote letters on Plaintiff's behalf to EMI Music Arabia and

17  EMI Music Arabia promptly advised Mr. Braun that it held rights to publish the

18  *Khosara* composition and authorize *Big Pimpin's* use.  Docket No. 380 at 3; Trial

19  Exhibits 106, 317-321; 10/15 a.m. Trial Tr. (testimony of Christopher Ancliff) at

20  67:17-77:24.

21      (4) After the 2001 correspondence between Braun and EMI Music Arabia in

22  2001, Plaintiff did not contact or assert any claim against any defendant in this case

23  until 2007, nor did Plaintiff contest EMI Music Arabia's statement to Braun at any

24  earlier time.  Docket No. 380 at 3; Deposition Transcript of Osama Ahmed Fahmy

25  Fathallah at 242:15-243:13; 244:17-244:24; Deposition Transcript of David Braun

26  at 85:18-86:14; 99:13-19; 122:18-123:21; 125:14-126:17; 10/15 a.m. Trial Tr.

27  (testimony of Christopher Ancliff) at 77:25-78:19.

28

Mitchell
Silberberg &
Knupp LLP

**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION FOR JUDGMENT**

1    (5) Defendants lost evidence (including as a result of Sout el Phan's

2    president's death) and incurred adverse economic consequences as a result of

3    Plaintiff's delay in filing suit.  Docket No. 380 at 12-13.

4        The *only* element of equitable estoppel on which the Court previously found

5    a genuine issue of fact remained was whether it was reasonable for each Defendant

6    to rely upon Plaintiff's conduct to believe that he did not intend to assert a claim.

7    *Id*. at 19-20.  Under the guiding case law of *Hayden* and *Arctic Cat,*, such reliance

8    could be either direct or indirect.

9        At trial, undisputed evidence was presented through documents and

10   testimony demonstrating that individually and collectively, Defendants ***did*** act

11   reasonably in relying upon Plaintiff's conduct to believe that he did not intend to

12   assert a claim.  In particular, each Defendant relied upon one or more of the other

13   Defendants, or directly upon EMI Music Arabia, to receive assurance in the form

14   of warranties and representations that title to *Big Pimpin'* was unencumbered by

15   claims or by potential claims by Plaintiff.  As EMI Music Arabia's former counsel

16   Christopher Ancliff testified, if Plaintiff's attorney and agent David Braun had not

17   fallen silent in 2001 after his initial representations to EMI Music Arabia, the

18   settlement agreement would not have been able to proceed as originally foreseen

19   until Plaintiff's claims were assessed and resolved, and might have never been

20   concluded at all.  The testimony now shows that the settlement was not fully

21   finalized until at least July 2001.  10/15 a.m. Trial Tr. (testimony of Christopher

22   Ancliff) at 80:17-81:11; 10/15 p.m. Trial Tr. (testimony of Christopher Ancliff) at

23   28:1-30:6 ; 10/16 p.m. Trial Tr. (testimony of Adrian Cheesley) at 12:11-25; Trial

24   Exhibit 356.  Yet, even had it been concluded earlier, the resulting reliance would

25   have been no different, and various measures could have been adopted if Plaintiff's

26   claims were deemed to have any merit.  10/15 a.m. Trial Tr. (testimony of

27   Christopher Ancliff) at 87:4-21; 10/15 p.m. Trial Tr. (testimony of Christopher

28

1   Ancliff) at 30:7-20; 10/16 p.m. Trial Tr. (testimony of Adrian Cheesley) at 44:1-

2   13.

3        Instead, after Braun's initial inquiries on behalf of "the representatives of the

4   heirs of Baligh Hamdy," Trial Exhibit 320, Plaintiff fell silent and allowed

5   Defendants to rely on this silence, and create multiple new works including *Big*

6   *Pimpin'*, to their detriment.  Plaintiff emerged from his silence to sue more than

7   seven years after *Big Pimpin's* release and six years after he seemingly abandoned

8   his claim.  During that time, it was entirely reasonable for Defendants' to assume

9   that any possible claims would have already been made.  Plaintiff has no evidence

10  to the contrary.  Thus, Mosley relied on EMI Music Arabia; Carter relied on

11  Mosley; the Universal Defendants relied upon not only Mosley and Carter but also

12  EMI Music Arabia and EMI Blackwood; EMI Blackwood as issuer of mechanical

13  licenses relied upon Carter and also upon Mosley and EMI Music Arabia; Warner

14  relied upon Universal and EMI Blackwood; MTV relied upon Carter (and also

15  upon Warner); the Linkin Park Defendants relied on Warner and in turn upon

16  Universal; and Paramount relied on Universal and on EMI Blackwood.  *See* trial

17  testimony of Timothy Mosley, Shawn Carter, Antoinette Trotman (UMG), Dag

18  Sandsmark (EMI Blackwood), Charles Hamilton (Warner), Anita Chinkes Ratner

19  (MTV), Dave Farrell (Linkin Park), and Liz McNicoll (Paramount); *see also, e.g.,*

20  Trial Exhibits 79, 91, 93, 96, 313, 322-323, 326-328.  The testimony from all of

21  these parties was unanimous and uncontroverted: Plaintiff's silence and inaction

22  after his initial contacts with EMI Music Arabia through David Braun in 2001 –

23  until 2007 – induced a false sense of security and reliance that there would be no

24  claim against *Big Pimpin'*.  Such reliance was more than reasonable and certainly

25  detrimental, and the undisputed testimony supporting it completes the last element

26  needed to enter judgment in favor of Defendants on the basis of equitable estoppel.

27

28

Mitchell
Silberberg &
Knupp LLP

17

**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION FOR JUDGMENT**

## V.    **Plaintiff's Waiver and Acquiescence Constitutes an Implied License from Plaintiff Himself**

Finally, the unrebutted evidence set forth in Section IV above also establishes Fahmy's acquiescence to the 2001 EMI Music Arabia non-exclusive license.  Such undisputed acquiescence gives rise to an implied non-exclusive license as a matter of law directly from Fahmy.  This Court already has correctly stated that a non-exclusive license may be "implied from conduct" or given "by implication," and that "consent given in the form of mere permission or ***lack of objection*** is … equivalent to a nonexclusive license," which "creates an affirmative defense to copyright infringement."  Docket 509 at 11, citing, *inter alia*, Nimmer on Copyright § 10.03[A][7] (rev. ed. 2014); *Crispin v. Christian Audigier, Inc.*, 839 F. Supp. 2d 1086, 1092 (C.D. Cal. 2011);  *I.A.E., Inc. v. Shaver*, 74 F.3d 768, 775 (7th Cir. 1996) (emphasis added).  Such is the case here, and Defendants are entitled to judgment as a matter of law on their defenses of waiver, acquiescence, and implied license.

## CONCLUSION

For all of the foregoing reasons, Defendants respectfully request that the Court enter judgment as a matter of law against Plaintiff and in favor of Defendants pursuant to Fed. R. Civ. P. 50(a) and 52.


DATED: October 20, 2015              MITCHELL SILBERBERG & KNUPP LLP


By: /s/David A. Steinberg
Christine Lepera
David A. Steinberg
Attorneys for Various Defendants

Mitchell
Silberberg &
Knupp LLP

**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION FOR JUDGMENT**

1 | DATED: October 20, 2015          JENNER & BLOCK LLP

2

3 |                                   By: /s/Daniel Rozansky
                                          ————————————————
4 |                                       Andrew H. Bart
                                          Daniel Rozansky
5 |                                       Attorneys for Defendant Shawn Carter
                                          (pka Jay Z)
6 | DAVID A. STEINBERG (SBN 130593)
7 |    das@msk.com
   | MITCHELL SILBERBERG & KNUPP LLP
8 | 11377 West Olympic Boulevard
   | Los Angeles, CA 90064-1683
9 | Telephone: (310) 312-2000
   | Facsimile: (310) 312-3100
10

11 | CHRISTINE LEPERA (CL 9311)
   |    ctl@msk.com
12 | MITCHELL SILBERBERG & KNUPP LLP
   | 12 East 49th Street, 30th Floor
13 | New York, New York 10017-1028
   | Telephone: (212) 509-3900
14 | Facsimile: (212) 509-7239

15 | *Attorneys for Various Defendants*

16 | DANIEL A. ROZANSKY (SBN 161647)
17 |    drozansky@jenner.com
   | JENNER & BLOCK LLP
18 | 633 West 5th Street, Suite 3600
   | Los Angeles, California 90071
19 | Telephone: (213) 239-5100
   | Facsimile: (213) 239-5199
20

21 | ANDREW H. BART (Pro Hac Vice)
22 |    abart@jenner.com
   | JENNER & BLOCK LLP
23 | 919 Third Avenue
   | New York, NY 10022
24 | Telephone: (212) 891-1600
   | Facsimile: (212) 891-1699
25

26 | *Attorneys for Defendant SHAWN CARTER*
   | *(pka Jay Z)*
27

28

Mitchell
Silberberg &
Knupp LLP

**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION FOR JUDGMENT**