BROWNE GEORGE ROSS LLP
Peter W. Ross (State Bar No. 109741)
  pross@bgrfirm.com
Keith J. Wesley (State Bar No. 229276)
  kwesley@bgrfirm.com
Jonathan L. Gottfried (State Bar No. 282301)
  jgottfried@bgrfirm.com
2121 Avenue of the Stars, Suite 2400
Los Angeles, California 90067
Telephone: (310) 274-7100 / Facsimile: (310) 275-5697

Attorneys for Plaintiff
OSAMA AHMED FAHMY

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| OSAMA AHMED FAHMY, an individual, | Case No. 2:07-CV-05715 CAS (PJWx) |
| Plaintiff, | The Hon. Christina A. Snyder |
| vs. | **PLAINTIFF'S MOTION FOR JUDGMENT AS A MATTER OF LAW PURSUANT TO FED. R. CIV. P. 50(A)** |
| JAY-Z (aka SHAWN CARTER), TIMOTHY MOSELY, KYAMBO JOSHUA, ROB BOURDON, BRAD DELSON, MIKE SHINODA, DAVE FARRELL, JOSEPH HAHN, CHESTER BENNINGTON, BIG BAD MR. HAHN MUSIC, CHESTERCHAZ PUBLISHING, EMI BLACKWOOD MUSIC, INC., EMI MUSIC PUBLISHING LTD., KENJI KOBAYASHI MUSIC, LIL LULU PUBLISHING, MACHINE SHOP RECORDINGS, LLC, MARCY PROJECTS PRODUCTIONS II, INC., MTV NETWORKS ENTERPRISES INC., NONDISCLOSURE AGREEMENT MUSIC, PARAMOUNT HOME ENTERTAINMENT, INC., PARAMOUNT PICTURES CORPORATION, RADICAL MEDIA, ROB BOURDON MUSIC, ROC-A-FELLA RECORDS, LLC, TIMBALAND PRODUCTIONS, INC., UMG RECORDINGS, INC., UNIVERSAL MUSIC AND VIDEO DISTRIBUTION, INC., AND WARNER MUSIC INC., | Jury Trial Date: October 13, 2015, at 9:30 a.m. |
| Defendants. | |

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that plaintiff Osama Ahmed Fahmy will and hereby does move for an Order granting judgment as a matter of law in favor of plaintiff pursuant to Fed. R. Civ. P. 50(a).

Based upon the evidence adduced at trial, viewing that evidence in the light most favorable to the defendants in this matter, and drawing all reasonable inferences in defendants' favor, plaintiff is entitled to judgment as a matter of law because, on each and all of the following issues, the evidence permits only one reasonable conclusion as to the verdict – namely, a verdict in plaintiff's favor that:

- Plaintiff owns the copyright in the musical composition, *Khosara Khosara*;

- The copyright that plaintiff owns in *Khosara Khosara* is a valid copyright because the work contains original expression;

- The defendants' work, *Big Pimpin'*, contains significant original expression from *Khosara Khosara*;

- Defendants have no license entitling them to use original expression from *Khosara Khosara* in *Big Pimpin'*;

- The use of original expression from *Khosara Khosara* in *Big Pimpin'* does not constitute "fair use"; and therefore,

- Defendants are liable to plaintiff for copyright infringement.

This motion is based upon this Notice of Motion; the Memorandum of Points and Authorities in support thereof; the evidence presented in the trial of this matter, as more specifically identified in the accompanying Memorandum of Points and

//
//
//
//
//

PLAINTIFF'S MOTION FOR JUDGMENT AS A MATTER OF LAW PURSUANT TO FED. R. CIV. P. 50(A)

1  authorities; the files in this action; and all other matters properly presented to the

2  Court prior to its ruling.

3

4  Dated:  October 20, 2015                    BROWNE GEORGE ROSS LLP
                                               Peter W. Ross
5                                              Keith J. Wesley
                                               Jonathan L. Gottfried
6

7                                              By      /s/ Keith Wesley
                                                       Keith J. Wesley
8

9                                              Attorneys for Plaintiff Osama Ahmed Fahmy

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# **TABLE OF CONTENTS**

**Page**

MEMORANDUM OF POINTS AND AUTHORITIES ............................................ 1

I.      INTRODUCTION ................................................................................... 1

II.     LEGAL STANDARD ............................................................................ 1

III.    ARGUMENT ......................................................................................... 2

    A.  As a Matter of Law, Plaintiff Owns the Copyright in *Khosara Khosara* .......................................................................................... 2

        1.  Plaintiff's Ownership of the Copyright Has Already Been Adjudicated in His Favor ............................................................. 2

        2.  Separate and Apart from the Court's Ruling that Hamdy Owned the Copyright, Under Governing Egyptian Law, the Undisputed Evidence Establishes Hamdy's Copyright Ownership as a Matter of Law ...................................................... 3

        3.  Defendants Could Not Permissibly Contest Hamdy's Copyright Ownership at Trial ....................................................... 5

    B.  As a Matter of Law, Plaintiff's Copyright Is Valid Because *Khosara Khosara* Contains Original Expression ................................. 7

    C.  *Big Pimpin'* Contains Original Expression from *Khosara Khosara* ......................................................................................... 10

        1.  Defendants Concede Access, So a Lesser Showing of Substantial Similarity Is Required to Establish Infringement ........................................................................... 10

        2.  Defendants Used the Version of *Khosara Khosara* in the Ramzy Recording, and, in Any Event, *Big Pimpin'* Unquestionably Incorporates Elements of *Khosara Khosara* as Written on the Lead Sheet, Exhibit 133 ................. 10

        3.  No Reasonable Juror Could Find that the Expression in *Big Pimpin'* Is Not Substantially Similar to *Khosara Khosara* ......................................................................................... 11

    D.  As a Matter of Law, Defendants Do Not Have License Rights to Use *Khosara Khosara* in *Big Pimpin'* .......................................... 11

        1.  The License Agreements at Issue Are All Governed by Egyptian Law ............................................................................ 11

        2.  Egyptian Law, Which Is an Implied Term in the Licenses, Requires an Author's Consent Before Changes Can Be Made that Alter the Character of the Author's Work ................. 12

1

**TABLE OF CONTENTS**
**(cont'd)**

2

Page

3

3.   Because Egyptian Law Requires Each Licensed Right to Be Specified, the Licenses' Failure to Specifically Grant Rights to Sample or Use Music with Different Lyrics Means Those Rights Were Not Granted.....................................15

4.   Defendants Have No Rights to Use *Khosara Khosara* Derived from the 1995 License Between Sout El Phan and EMI Arabia .....................................16

a.   Exhibit 207 relates solely to sound recordings ...............16

b.   The grant of rights in Exhibit 207 expired in 2007..........18

E.   As a Matter of Law, Defendants' Use of *Khosara Khosara* Is Not "Fair Use"..........................................................................19

1.   The purpose and character of the use .........................................19

2.   The nature of the copyrighted work ...........................................20

3.   The amount and substantiality of the portion used in relation to the copyrighted work as a whole................................20

4.   The effect of the use upon the potential market for or value of the copyrighted work................................................................21

IV.   CONCLUSION ..........................................................................................22

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## **TABLE OF AUTHORITIES**

2

**Page(s)**

3

4

### **FEDERAL CASES**

5

*A&M Records, Inc. v. Napster, Inc.*,
 239 F.3d 1004 (9th Cir. 2001) ............................................................. 20

6

7

*Cal. Computer Prods., Inc. v. IBM Corp.*,
 613 F.2d 727 (9th Cir. 1979) ............................................................. 1-2

8

*Campbell v. Acuff-Rose Music, Inc.*,
 510 U.S. 569 (1994) ............................................................................ 21

9

10

*CDN, Inc. v. Kapes*,
 197 F.3d 1256 (9th Cir. 1999) ............................................................... 7

11

12

*Cohen v. Paramount Pictures Corp.*,
 845 F.2d 851 (9th Cir. 1988) ............................................................... 16

13

14

*Elvis Presley Enters. v. Passport Video*,
 349 F.3d 622 (9th Cir. 2003) ............................................................... 20

15

16

*Fahmy v. Carter*,
 788 F. Supp. 2d 1072 (C.D. Cal. 2011) ......................................... 2, 3, 6

17

18

*Farmers & Merchants Bank of Monroe v. Fed. Reserve Bank of Richmond*,
 262 U.S. 649 (1923) ............................................................................ 13

19

20

*Feist Publications, Inc. v. Rural Telephone Serv. Co.*,
 499 U.S. 340 (1991) .............................................................................. 9

21

*Fisher v. Dees*,
 794 F.2d 432 (9th Cir. 1986) ............................................................... 11

22

23

*Harper & Row, Publishers, Inc. v. Nation Enters.*,
 471 U.S. 539 (1985) ........................................................................ 20, 21

24

25

*Itar-Tass Russian News Agency v. Russian Kurier, Inc.*,
 153 F.3d 82 (2d Cir. 1998) .............................................................. 3, 12

26

27

*Josephs v. Pac. Bell*,
 443 F.3d 1050 (9th Cir. 2006) ............................................................... 1

28

PLAINTIFF'S MOTION FOR JUDGMENT AS A MATTER OF LAW PURSUANT TO FED. R. CIV. P. 50(A)

1

2

**TABLE OF AUTHORITIES**
**(cont'd)**

**Page(s)**

3

4

*Krechman v. County of Riverside*,
  723 F.3d 1104 (9th Cir. 2013) ...................................................................... 1

5

6

*Los Angeles News Serv. v. KCAL-TV Channel 9*,
  108 F.3d 1119 (9th Cir. 1997) ..................................................................... 20

7

8

*New Hampshire v. Maine*,
  532 U.S. 742 (2001) ...................................................................................... 6

9

*Newton v. Diamond*,
  388 F.3d 1189 (9th Cir. 2004) ............................................................... 11, 16

10

11

*Norfolk & Western Ry. Co. v. Am. Train Dispatchers Ass'n*,
  499 U.S. 117 (1991) ..................................................................................... 13

12

13

*Reeves v. Sanderson Plumbing Prods., Inc.*,
  530 U.S. 133 (2000) ...................................................................................... 1

14

15

*Russian Academy of Sciences v. Am. Geophysical Union*,
  1998 WL 34333239 (D.D.C. 1998).......................................................... 3, 12

16

17

*Sega Enters. Ltd. v. Accolade, Inc.*,
  977 F.2d 1510 (9th Cir. 1992) ..................................................................... 20

18

19

*Swirsky v. Carey*,
  376 F.3d 841 (9th Cir. 2004) ................................................................ 7, 8, 9

20

*Three Boys Music Corp. v. Bolton*,
  212 F.3d 477 (9th Cir. 2000) ................................................................. 9, 10

21

22

*Wells Fargo Bank, N.A. v. Amer. Home Mortgage Inv. Corp.*,
  2008 WL 4753342 (Bankr. D. Del. Oct. 30, 2008)............................... 17

23

**FEDERAL STATUTES**

24

17 U.S.C. § 102(a)(2), (7).......................................................................... 16

25

**RULES**

26

Federal Rule of Civil Procedure
  Rule 50(a) ................................................................................................... 1

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# <u>TABLE OF AUTHORITIES</u>
### (cont'd)

**Page(s)**

Local Rule 56-1 ............................................................................................ 5

Local Rule 56-2 ............................................................................................ 5

## <u>OTHER AUTHORITIES</u>

1954 Egyptian Copyright Law
  Article 7 ................................................................................................ 13
  Article 9 ................................................................................................ 13
  Article 38 .............................................................................................. 13

2002 Egyptian Copyright Law
  Article 138(3) ................................................................................... 3, 4
  Article 143 ............................................................................................ 13

Restatement (Second) Conflict of Laws,
  §§ 108-09, 222 (1971) ......................................................................... 12

## MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Pursuant to Federal Rule of Civil Procedure 50(a), plaintiff Osama Ahmed Fahmy seeks judgment as a matter of law on the following issues:

- Plaintiff owns the copyright in the musical composition, *Khosara Khosara*;

- The copyright that plaintiff owns in *Khosara Khosara* is a valid copyright because the work contains original expression;

- The defendants' work, *Big Pimpin'*, contains significant original expression from *Khosara Khosara*;

- Defendants have no license entitling them to use original expression from *Khosara Khosara* in *Big Pimpin'*;

- The use of original expression from *Khosara Khosara* in *Big Pimpin'* does not constitute "fair use"; and therefore,

- Defendants are liable to plaintiff for copyright infringement.

## II. LEGAL STANDARD

The standard for judgment as a matter of law mirrors that for granting summary judgment: reviewing all evidence in the record, viewing the evidence in the light most favorable to the non-moving party, and drawing all reasonable inferences in the non-movant's favor, a district court should grant a motion for judgment as a matter of law where "there is no legally sufficient basis for a reasonable jury to find for" the non-moving party on an issue. *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 149-50 (2000); *Krechman v. County of Riverside*, 723 F.3d 1104, 1109 (9th Cir. 2013); *Josephs v. Pac. Bell*, 443 F.3d 1050, 1062 (9th Cir. 2006). In "entertaining a motion for judgment as a matter of law, the court . . . may not make credibility determinations or weigh the evidence." *Reeves*, 530 U.S. at 149. After such a review, where "the evidence permits only one reasonable conclusion as to the verdict," the movant is entitled to entry of judgment. *Cal. Computer Prods., Inc. v. IBM Corp.*, 613 F.2d 727, 733

(9th Cir. 1979).  Applying this standard to the record evidence, plaintiff is entitled to entry of judgment as a matter of law that defendants are liable to plaintiff for copyright infringement.

## III.    ARGUMENT

As explained in detail below, plaintiff is entitled to judgment as a matter of law because, after reviewing all the evidence, a reasonable jury could reach only the following conclusions:  that plaintiff owns the copyright in the musical composition of *Khosara Khosara*; that plaintiff's copyright is valid because *Khosara Khosara* contains original expression; that defendants' work *Big Pimpin'* contains original expression from *Khosara Khosara*; that defendants have no right to use *Khosara Khosara* pursuant to license; and that defendants' use of *Khosara Khosara* is not a "fair use."

### A.    As a Matter of Law, Plaintiff Owns the Copyright in *Khosara Khosara*

#### 1.    Plaintiff's Ownership of the Copyright Has Already Been Adjudicated in His Favor

On September 20, 2010, plaintiff moved for partial summary judgment as to certain material facts and issues of law.  In particular, plaintiff sought judgment "that Baligh Hamdy authored and owned the copyright in the '*Khosara, Khosara*' musical composition"; "that Plaintiff Osama Fahmy is a Hamdy heir, and a co-owner of the '*Khosara, Khosara*' copyright"; and "that he [plaintiff] has standing, for purposes of the trial of claims that defendants' works infringed that copyright." *Fahmy v. Carter*, 788 F. Supp. 2d 1072, 1076 (C.D. Cal. 2011).  The only "'*Khosara, Khosara*' musical composition" that was before the Court on that motion – and, hence, the work that was necessarily the subject of the Court's ruling thereon – was the one that was "first released in Egypt in the 1960s when Abdel Hafim Hafez recorded it" and registered with SACEREAU.  (Dkt. No. 243-1.)

The Court awarded plaintiff judgment in his favor on those issues:

1
2
3
4

> The Court GRANTS plaintiff's motion for partial summary judgment with respect to the following issues: (1) that Baligh Hamdy authored and owned the copyright in the 'Khosara, Khosara' musical composition; (2) that plaintiff Osama Fahmy is a Hamdy heir, and a co-owner of the 'Khosara, Khosara' copyright; [and] (3) that plaintiff Osama Fahmy has standing to bring claims that defendants' works infringed the 'Khosara, Khosara' copyright.

5   *Id.* at 1083.  That partial summary judgment was never overturned prior to trial;

6   plaintiff relied on the ruling when conducting discovery and preparing for trial; no

7   new facts or law were introduced that altered that conclusion; and nothing remains

8   of those questions to send to the jury.

9
10
11

**2.   Separate and Apart from the Court's Ruling that Hamdy Owned the Copyright, Under Governing Egyptian Law, the Undisputed Evidence Establishes Hamdy's Copyright Ownership as a Matter of Law**

12   Because the work at issue was created and published in Egypt by an Egyptian

13   national, the laws of Egypt control issues of copyright ownership.  *Itar-Tass Russian*

14   *News Agency v. Russian Kurier, Inc.*, 153 F.3d 82, 84 (2d Cir. 1998); *Russian*

15   *Academy of Sciences v. Am. Geophysical Union*, 1998 WL 34333239, at *1 (D.D.C.

16   1998).  Egyptian law looks to the attribution of a work to determine authorship, and,

17   thus, copyright ownership:

18
19

> Author:  The person who creates the work.  Is considered the author of the work the person whose name is indicated on, or attributed to, the published work as being its author, unless proven otherwise.

20   Law on the Protection of Intellectual Property Rights, Law No. 82 of 2002, Article

21   138(3).  (Exhibit 203)  Thus, under Egyptian law, the person that a work lists as

22   author is presumptively the work's copyright holder.  Defendants offered no

23   evidence to contradict these propositions of law.

24   The evidence is undisputed that two works, both of which were sold to the

25   public, attribute the authorship of *Khosara Khosara* to Baligh Hamdy:  the motion

26   picture *Fata Ahlami*, which does so in its credits (Exhibit 128); and a cassette of

27   recordings performed by Abdul Halim Hafez, which does so on the cover page

28   (Exhibit 127).  Under Article 138(3) of Egypt's copyright law, the motion picture's

1  and cassette's attribution of Hamdy's authorship of the Hafez recording constitutes

2  presumptive proof of Hamdy's copyright in the musical composition that is

3  embodied in the recording.  And, defendants made no effort to prove that anyone

4  other than Hamdy authored the composition, so the presumption established in Law

5  82 is conclusively established.  To be clear, Hamdy does *not* own the copyright in

6  the visual recordings or sound recordings reflected in the motion picture and the

7  cassette; however, because of the crediting, as a matter of Egyptian law, he *does*

8  own the copyright in the musical composition reflected in those works.

9      Hamdy's ownership of the copyright in *Khosara Khosara* is further

10 confirmed by his 1960 registration of his copyright interest in that musical

11 composition with SACEREAU, the Egyptian Society of Authors, Composers, and

12 Publishers.  (Exhibit 103)

13      The undisputed evidence proves that Hamdy owned the copyright reflected

14 not merely in the lead sheet, Exhibit 133, which is a transcription of *Khosara*

15 *Khosara*, Tr. 10/14/15 AM 8:7-12, but in the version of *Khosara Khosara* as

16 performed by Abdel Halim Hafiz in the *Fata Ahlami* motion picture.  Dr. Marcus

17 testified without contradiction that Hamdy composed music for motion pictures by

18 sitting with the instrumentalists on the movie set and not merely teaching them the

19 melody but by telling them how he wanted his composition played; thus, the sheet

20 music, transcribed later, is only a "bare bones" reflection of the work, whereas the

21 recording in the motion picture is the final and full embodiment of Hamdy's

22 composition.  (Tr. 10/14/15 AM 12:1-14:7.)  Although the Court's pretrial ruling

23 observed that "in most cases" the sheet music of a composition will fully embody

24 "those musical elements which are actually protected," Dkt. No. 626 at 20, here, the

25 undisputed evidence establishes as a matter of law that copyrightable elements

26 beyond those contained in the sheet music were created and embodied in the motion

27 picture recording.

28      Regardless, even if limited to the lead sheet that the record shows is <u>not</u> a full

1   representation of the *Khosara Khosara* composition, the undisputed evidence shows

2   that the lead sheet exhibits expression originally authored by Baligh Hamdy.

3   (Tr. 10/14/15 AM at 10:18-11:14; 14:13-18.)

4   ### 3.  <u>Defendants Could Not Permissibly Contest Hamdy's Copyright Ownership at Trial</u>

6   As noted in his 2010 motion for partial summary judgment, plaintiff sought a

7   determination that Hamdy was the author of the *Khosara Khosara* musical

8   composition, and that that composition was first published in Egypt.  (Dkt. No. 227.)

9   Plaintiff supported that motion with his Statement of Uncontroverted Facts, as

10  required by Local Rule 56-1.  (Dkt. No. 226-1.)  Pursuant to Local Rule 56-2,

11  defendants responded with their own "Statement of Genuine Disputes," in which

12  they were required to set forth "all material facts as to which it is contended there

13  exists a genuine dispute necessary to be litigated."  (Dkt. No. 243-1.)  In that

14  document, defendants acknowledged as "Undisputed" the propositions that:  Hamdy

15  "was the author of the musical composition *Khosara, Khosara*"; Hamdy's

16  "authorship of *Khosara, Khosara* is evidenced by his 1960 registration of his

17  copyright interest in that musical composition with 'SACEREAU,' the Egyptian

18  Society of Authors, Composers, and Publishers"; and "*Khosara, Khosara* was first

19  released in Egypt in the 1960s when Abdel Hafim Hafez recorded it, and was not

20  authorized for release in the United States at that time."  (*Id.*)   As noted, in that

21  motion, Hamdy's musical composition was defined as the music in the Hafez

22  recording.  The Court granted those aspects of plaintiff's motion.  Any contrary

23  evidence offered by defendants at trial was improper and cannot form the basis for

24  any decision.[1]

---

25  [1]   Although the defendants attempted to qualify their admission by stating that they

26  were admitting the fact solely for purposes of the motion, the qualification was an absurdity.  The motion was about establishing, as a matter of law, who owns

27  *Khosara Khosara*.  Thus, the whole purpose of the motion was to determine if the

28  (footnote continued)

PLAINTIFF'S MOTION FOR JUDGMENT AS A MATTER OF LAW PURSUANT TO FED. R. CIV. P. 50(A)

1    Further, defendants were judicially estopped from changing their position.  In

2 determining whether judicial estoppel should apply, the Court should consider

3 whether a party's later position is "clearly inconsistent" with its earlier position;

4 "whether the party has succeeded in persuading a court to accept that party's earlier

5 position;" and "whether the party seeking to assert an inconsistent position would

6 derive an unfair advantage or impose an unfair detriment on the opposing party if

7 not estopped."  *New Hampshire v. Maine*, 532 U.S. 742, 750 (2001).

8    Here, defendants have plainly asserted a contrary position, reversing their

9 prior admission that the "*Khosara* musical composition" for which "Hamdy was the

10 author" was "first released in Egypt in the 1960s when Adel Hafim Hafez recorded

11 it".  (Dkt. No. 243-1.)  Instead, they argued, and the Court agreed, that Hamdy's

12 copyright (if any) was only in Exhibit 133, the much later "lead sheet."  (Dkt. No.

13 626 at 19-23.)  Further, they argued (successfully) against plaintiff offering into

14 evidence the Egyptian motion picture and sound recordings they previously

15 admitted evidenced Hamdy's copyright in the musical composition as reflected in

16 those recordings.

17    Next, the Court relied on defendants' prior admissions that the facts about

18 Hamdy' copyright ownership in the *Khosara* musical composition (defined in

19 plaintiff's partial summary judgment motion by reference to the Hafez recording)

20 were "Undisputed".  The prior admissions provided the basis for the Court's ruling

21 "that Baligh Hamdy authored and owned the copyright in the Khosara, Khosara

22 musical composition."  788 F. Supp. 2d at 1083.

23    Finally, defendants sought, and gained, an unfair advantage by being able to

24 switch their position just before trial.  Defendants' representations in their Statement

25 of Genuine Disputes that certain facts were "Undisputed" induced plaintiff not to

26 pursue further discovery on those subjects.  For defendants then to reverse course,

27 ───────────────

defendants had evidence that someone else owned the composition.

28

PLAINTIFF'S MOTION FOR JUDGMENT AS A MATTER OF LAW PURSUANT TO FED. R. CIV. P. 50(A)

1    challenging what they had previously admitted, limiting plaintiff's ability to offer

2    evidence at trial and then faulting plaintiff for not having sufficient proof, is the

3    epitome of deriving unfair advantage and imposing unfair detriment.  Defendants

4    are properly bound by their prior representations to the Court, rendering these issues

5    undisputed and resolved in plaintiff's favor as a matter of law.

6    **B.    As a Matter of Law, Plaintiff's Copyright Is Valid Because**

7    ***Khosara Khosara* Contains Original Expression**

8           As reflected by their proposed jury instructions, the parties on both sides of

9    this case agree, and the Ninth Circuit confirms, that those elements of a work that

10   are original to the author – *i.e.*, the parts of a work that were created independently

11   by the author, by use of some minimal creativity – are properly the subject of

12   copyright protection.  *See* Defendants' Proposed Jury Instruction No. 12

13   ("Originality"); Plaintiff's Proposed Disputed Jury Instruction No. 4 ("Copyright

14   Infringement–Originality"); Ninth Circuit Civil Jury Instruction No. 17.12

15   ("Copyright Infringement–Originality").  Further, the "original element" of a work

16   need not be new or novel.  Ninth Circuit Civil Jury Instruction No. 17.12.  The level

17   of originality that is required to support a valid copyright is "minimal."  *CDN, Inc.*

18   *v. Kapes*, 197 F.3d 1256, 1259-61 (9th Cir. 1999).  The Ninth Circuit has

19   emphasized that "music is comprised of a large array of elements," and that many,

20   many different configurations of those elements – even the particular selection and

21   amalgamation of elements each of which, individually, is unprotectable – are

22   properly the subject of copyright protection.  *Swirsky v. Carey*, 376 F.3d 841, 849

23   (9th Cir. 2004).

24          The portion of *Khosara Khosara* that is at issue here constitutes the first four

25   measures of the composition.  That is the part of Hamdy's work that defendants

26   have conceded was incorporated into *Big Pimpin'*.  Thus, the question is whether

27   there is sufficient originality in the first four measures of *Khosara* to be

28   copyrightable.  As set forth above, the threshold for the requisite originality is

1   extremely low.  That threshold, and, indeed, any standard for originality, is easily
2   satisfied here.

3       Dr. Marcus testified, without substantive contradiction, that the introductory
4   musical phrase contained in the first four measures of *Khosara Khosara* – i.e., the
5   portion of plaintiff's work used by defendants in *Big Pimpin'* – is "original" and "a
6   unique and completely distinct composition" created by its composer, Baligh
7   Hamdi." Tr. 10/14/15 AM at 11:13-18.  Thus, the elements of the work at issue in
8   this case are copyrightable as a matter of law.

9       Defendants' witness, Dr. Ferrara, attempted to show that the first four bars of
10  *Khosara Khosara* contain mostly unprotectable "fundamental musical building
11  blocks," and that any protectable elements are "trite, minimal, fragmentary."  Tr.
12  10/16/15 AM 62:9-63:5.  Whatever Dr. Ferrara's qualifications as a musicologist
13  may be, however, his analysis and testimony fail to create a disputed issue of fact,
14  because they are contrary to the most basic and well-recognized principles of
15  copyright law.

16      Ferrara's fundamental error is that he improperly discounts entirely the
17  significance of musical notes and phrases that he considers basic (such as the
18  repetition of four notes in a measure); according to Ferrara, because that sequence is
19  not novel, no composer can claim a copyright right to it.  See, e.g., Tr. 10/16/15 AM
20  31:2-15, 88:2-21.  That is wrong, as a matter of law.  The type of analysis on which
21  Dr. Ferrara and defendants seek to rely here was categorically rejected by the Ninth
22  Circuit in *Swirsky v. Carey*, 376 F.3d 841 (9th Cir. 2004).  There, as here,
23  defendants argued that a musical sequence – in that case, a single measure – "is not
24  protectable because it lacks originality as a matter of law."  *Id*. at 851.

25      The Ninth Circuit explained the breadth of "originality," stating that it means
26  "little more than a prohibition of actual copying."  *Id*. (citing *Three Boys*, 212 F.3d
27  at 489).  When assessing whether a work is sufficiently "original" to be
28  copyrightable,

1
2

> Original, as the term is used in copyright, means only that the work was *independently created by the author, as opposed to copied from other works*, and that it possesses at least some minimal degree of creativity.

3   *Feist Publications, Inc. v. Rural Telephone Serv. Co.*, 499 U.S. 340, 345 (1991)

4   (emphasis added).  Dr. Ferrara made no effort to claim that Hamdy copied the first

5   four bars of *Khosara Khosara* from any other work, and, in fact, he admitted he had

6   no basis for attributing any particular source for the work.  Tr. 10/16/15 AM 81:23-

7   82:1.  Therefore, "[a]ll that is needed to satisfy originality is for the author to

8   contribute 'something more than merely trivial' variation."  *Swirsky*, 376 F.3d at

9   851 (citing Three Boys, 212 F.3d at 489).  Critically, Ferrara admitted that even as

10  to the notes in the first four bars*, he had not found anything that used the notes at*

11  *issue in the same fashion* as Hamdy did in *Khosara Khosara*.  Tr. 10/16/15 AM

12  90:10-20.  That admission is more than sufficient proof to establish originality, and

13  therefore copyrightability, of the relevant portion of *Khosara* as a matter of law.

14       As for Dr. Ferrara's argument that there is not enough original content in the

15  first four bars of *Khosara Khosara* to be entitled to copyright protection, that

16  premise is likewise refuted by the Ninth Circuit's *Swirsky* decision.  First, as noted,

17  Ferrara's premise that only seven notes in the four measures are original to Khosara

18  is wrong as a matter of law because it uses an impermissibly narrow concept of

19  originality.  But even if it were correct, *Swirsky* expressly held that "[i]t cannot be

20  said that seven notes is too short a length to garner copyright protection."  376 F.3d

21  at 852.

22       Finally, Dr. Ferrara's testimony that two of the four measures of the melody

23  of *Khosara Khosara* is not recognizable in *Big Pimpin'*, Tr. 10/16/15 AM 80:20-22,

24  is simply unfounded – a conclusion that is obvious to anyone who listens to the two

25  works.

26       As a matter of law, plaintiff's copyright in *Khosara Khosara* contains original

27  expression created by the composer, Hamdy, and so the copyright is valid.

28

### C. *Big Pimpin'* Contains Original Expression from *Khosara Khosara*

#### 1. Defendants Concede Access, So a Lesser Showing of Substantial Similarity Is Required to Establish Infringement

Access is undisputed.  Defendant Mosley testified not only that he heard *Khosara Khosara* before *Big Pimpin'* was created, but that the Middle Eastern flute music used in *Big Pimpin'* is in fact an excerpt from *Khosara Khosara*;  Mosley took the first four bars from *Khosara Khosara*, laid them over a beat foundation, and played the result for defendant Carter.  10/14/15 PM Tr. at 16:15-17:18.  Under the "inverse ratio rule," a lesser showing of substantial similarity is required to establish infringement if there is a strong showing of access.  *Three Boys Music Corp. v. Bolton*, 212 F.3d 477, 486 (9th Cir. 2000).

#### 2. Defendants Used the Version of *Khosara Khosara* in the Ramzy Recording, and, in Any Event, *Big Pimpin'* Unquestionably Incorporates Elements of *Khosara Khosara* as Written on the Lead Sheet, Exhibit 133

Although the Court did not allow plaintiff to present the recording of *Khosara Khosara*, it is undisputed that the four bars of *Khosara Khosara* that were used in *Big Pimpin'* in fact came from the Ramzy recording, Exhibit 5; Exhibit 139-4; Tr. 10/16/15 AM 82:6-11.  Moreover, *Big Pimpin'* indisputably incorporates elements of *Khosara Khosara* as written on Exhibit 133, the lead sheet.  Specifically, *Big Pimpin'* contains the first four measures of *Khosara Khosara* from Exhibit 133, played over and over – more than 35 times in total.  10/14/15 AM Tr. at 18:19-20:14, 25:19-26:15 (*Big Pimpin'*, as contained in Exhibits 4, 55, and 56, "incorporates the same four measures of Hamdy's song throughout").  Defendants' own liner notes acknowledge that *Big Pimpin'* "contains elements of *Khosara Khosara*." Exhibit 58.  And even defendants' expert, Dr. Ferrara, admitted that "[p]ortions of the *Khosara* composition constitute important portions of the melody in *Big Pimpin'*." Tr. 10/16/15 AM 88:2-4.

### 3. No Reasonable Juror Could Find that the Expression in *Big Pimpin'* Is Not Substantially Similar to *Khosara Khosara*

This is the rare copyright case where "substantial similarity" is not an issue. The musical phrase used over and over in *Big Pimpin'* does not merely sound like *Khosara Khosara*; as shown above, defendant Mosley has admitted that it **is** *Khosara Khosara*. Plaintiff established the originality of the first four bars of *Khosara Khosara* and, in so doing, established the validity of his copyright in that work. The segment of *Khosara* used by defendants was qualitatively and quantitatively significant. *Big Pimpin'* incorporates a "significant" part of Hamdy's song. Tr. 10/14/15 AM 28:8-10. The four measures used by defendants "are the hook of the song," and are instantly recognizable to people familiar with the work. 10/14/15 AM Tr. at 26:22-28:10. As noted, Dr. Ferrara acknowledged that "[p]ortions of the *Khosara* composition constitute important portions of the melody in *Big Pimpin'*." Tr. 10/16/15 AM 88:2-4. Even defendants' counsel characterized *Khosara Khosara* as "the icing on the cake for *Big Pimpin'*." Tr. 10/13/15 PM 18:9-10. The pervasive use of *Khosara* throughout *Big Pimpin'* renders defendants' work substantially similar to plaintiff's, as a matter of law. *See Newton v. Diamond*, 388 F.3d 1189, 1193 (9th Cir. 2004) (a use is substantially similar when the average audience would recognize the appropriation); *Fisher v. Dees*, 794 F.2d 432, 434 & n.2 (9th Cir. 1986) (copying is substantial when a work's main theme is appropriated and the original is easily recognizable).

Because *Big Pimpin'* is substantially similar to copyrightable elements of *Khosara Khosara*, defendants are liable to plaintiff for copyright infringement unless defendants' uses were permitted by license or constituted "fair use." As shown below, defendants' license and "fair use" defenses fail as a matter of law.

### D. As a Matter of Law, Defendants Do Not Have License Rights to Use *Khosara Khosara* in *Big Pimpin'*

### 1. The License Agreements at Issue Are All Governed by

## Egyptian Law

In their defense, defendants claim to possess rights to use *Khosara Khosara* through license agreements.  Defendant Carter asserts that defendant Mosley got the rights; defendant Mosley asserts that the rights came from EMI Music Arabia.  EMI Music Arabia purportedly got the rights from Sout El Phan, which, in turn, supposedly got rights from Hamdy and/or plaintiff.  But if Sout El Phan never had the right to alter Hamdy's composition, then it could not have transferred that right to anyone else, Tr. 10/15/15 PM 80:6-13 (defendants' expert, Farhat, agrees that Sout El Phan could not pass on rights it did not own) – thereby defeating defendants' license defense and rendering them liable for copyright infringement as a matter of law.

Thus, the key to this litigation lies in the following license agreements:  a 1968 agreement between Baligh Hamdy and Sout el Phan (Exhibit 204); a 1995 agreement between Osama Ahmed Fahmy and Sout el Phan (Exhibit 205); and a 2002 agreement between Osama Ahmed Fahmy and Mohsen Jaber (Exhibit 210).  Because these three agreements are all contracts entered into in Egypt between Egyptian parties and relating to Egyptian works, they are all governed by Egyptian law. *Itar-Tass Russian News Agency*, 153 F.3d at 84; *Russian Academy of Sciences*, 1998 WL 34333239, at *1; Restatement (Second) Conflict of Laws, §§ 108-09, 222 (1971).

### 2. Egyptian Law, Which Is an Implied Term in the Licenses, Requires an Author's Consent Before Changes Can Be Made that Alter the Character of the Author's Work

"Laws which subsist at the time and place of the making of a contract, and where it is to be performed, enter into and form a part of it, as fully as if they had been expressly referred to or incorporated in its terms.  This principle embraces alike those laws which affect its construction and those which affect its enforcement or discharge." *Norfolk & Western Ry. Co. v. Am. Train Dispatchers Ass'n*, 499 U.S.

117, 130 (1991), *quoting Farmers & Merchants Bank of Monroe v. Fed. Reserve Bank of Richmond*, 262 U.S. 649, 660 (1923).  In other words, Egyptian law is as much a part of the agreements at issue as anything expressly written therein.

Under Egyptian law, an author (and his heirs) possesses the right to prevent any deletion or modification of his work that the author (and his heirs) considers to be a "distortion" or "mutilation"; this right is not transferable, and any attempt to transfer this right is null and void.  Exhibit 154 (1954 Law at Articles 7, 9, 38); Exhibit 203 (2002 Law at Articles 143, 145).  As a result, the rights that defendants would have required to legitimately use *Khosara Khosara* in *Big Pimpin'* were never conveyed in any license agreement, meaning that, necessarily, defendants never got a license authorizing them to use plaintiff's work.

Defendant's expert on this issue, Dr. Loutfi, is the single most authoritative figure on this subject in the world.  Loutfi, a lifelong Egyptian citizen and resident, teaches copyright at Cairo University and also teaches the subject to judges and lawyers; he has drafted or reviewed approximately 3,000 intellectual property license agreements over his 30-year career; he has written three books on copyright and intellectual property; he has been retained by the Egyptian government to review and draft Egypt's copyright laws; and he has done the same in other Arab countries outside Egypt.  Dkt. No. 685, Ex. A at 18:1-8, 21:13-25, 21:24-22:19, 22:20-23, 26:1-27:3, 28:3-10.  Dr. Loutfi testified that under Egyptian copyright law, specifically Article 9 of the 1954 Law and Article 143 of the 2002 Law, certain "moral" rights are imprescriptible and inalienable; he identified one of these rights as the right to stop any changes which might affect his work or alter his work.  *Id.* at 43:22-44:12.  The provision contemplates that the original author will be aware of, and have consented to, the use of his copyright by any third party.  Dr. Loutfi testified that under Egyptian law, moral rights cannot be licensed; and, specifically, it is not possible to obtain a *license* to alter a musical composition.  Rather, to do such alteration, one requires a "prior written consent" from the author.  *Id.* at 17:2-

22, 39:12-19.  A license agreement conveying all rights to use a song does not convey the right to make a new version with new lyrics and changes to the musical composition.  *Id.* at 40:5-15, 40:18-41:6.

Dr. Loutfi testified categorically that the agreements at issue in this case do not provide the defendants the right to use *Khosara Khosara* in *Big Pimpin'*.  *Id.* at 39:3-10.  Exhibit 204, the 1968 agreement, does not contain any language indicating that Sout El Phan had the right to alter any of Hamdy's compositions.  Id. at 53:4-55:4.  Exhibit 205, the 1995 Sout El Phan-Fahmy agreement, does not provide Sout El Phan any right to alter or modify *Khosara Khosara*.  *Id.* at 55:5-56:17.  Exhibit 210, the 2002 Fahmy-Mohsen Gaber agreement, does not permit making any changes to existing works and does not permit the licensee to authorize a new version of *Khosara Khosara* with new music and new lyrics.  *Id.* at 59:4-60:10.  And Exhibit 208, the agreement between EMI Music Arabia and defendant Mosley, cannot have validly granted Mosley to right to use *Khosara* in *Big Pimpin'*, because EMI did not own any moral rights to *Khosara* and so could not legitimately convey rights to alter that work.  *Id.* at 58:6-59:2.

Defendants' witness, Mr. Farhat, agreed that moral rights – including "the right to prevent any modification considered by the author as distortion or mutilation of the work" – were not transferred.  Tr. 10/15/15 at 80:16-83:9.  He claims that this restriction applied only in Egypt.  But the relevant question here is what rights were transferred <u>in Egypt</u>.  In Egypt, Mr. Fahmy retained "the right to prevent any modification considered by the author as distortion or mutilation of the work".  Therefore, it was never transferred to either Gaber or Sout el Phan in Egypt.  Therefore, they could not transfer that right to anyone else, including EMI Music Arabia or the defendants.

**3.    Because Egyptian Law Requires Each Licensed Right to Be Specified, the Licenses' Failure to Specifically Grant Rights to Sample or Use Music with Different Lyrics Means Those Rights Were Not Granted**

Under Egyptian law, the author of a copyrighted work has the right to transfer to a third party some or all of his economic rights in the copyright. To be valid, the transfer must: (1) be certified in writing; and (2) contain an explicit and detailed indication of each right to be transferred with the extent and purpose of transfer and the duration and place of exploitation. Dkt. No. 626 at 38; Egyptian Law No. 82 of 2002 (Exhibit 203). It is undisputed that none of the Egyptian license agreements specifically granted rights to sample *Khosara Khosara*, or to use its music with different lyrics. Therefore, those rights were not conveyed in those agreements – and, because defendants claim to have gotten the rights they needed through a chain of licenses stretching back to and including those agreements, as a matter of law, defendants did not have the rights they needed to sample *Khosara* or to overlay it with Mr. Carter's rap.

Defendants' expert, Mr. Farhat, expressed the opinion that under Egyptian law, when a copyright holder seeks to transfer all of his economic rights, a comprehensive list of the specific economic rights transferred is unnecessary. Tr. 10/15/15 PM 51:8-18. Despite Farhat's testimony, no reasonable jury could conclude that the 2002 license agreement, on which defendants' expert relied heavily, conveyed "all" economic rights. First, Mr. Farhat's opinion is contrary to both the express terms of Egyptian Law No. 82 and the Court's ruling in Dkt. No. 626. Second, it is belied by the 2002 license agreement, Exhibit 210. Rather than purporting to transfer "all" economic rights, as defendants' witness suggests, the grant embodied in the 2002 license *expressly* identifies some – *but only some* – rights. Conspicuously, it does not expressly authorize a transfer of the right to modify or adapt *Khosara*. By its plain terms, that document does not transfer "all" rights. Mr. Farhat admitted that when a licensor is transferring only some rights,

1  "you have to be very certain as to which ones you're transferring."  Tr. 10/15/15 PM

2  52:22-25.  Thus, a license that expressly identifies some rights it purports to be

3  granting is inherently inconsistent in form and substance with a license granting all

4  rights.  In this regard, Egyptian law is entirely consistent with U.S. copyright law

5  and, specifically, the law of the Ninth Circuit.  *See Cohen v. Paramount Pictures*

6  *Corp.*, 845 F.2d 851, 854 (9th Cir. 1988) (rights not expressly granted to licensee

7  are reserved to copyright holder).  As a matter of law, defendants did not receive by

8  license the rights to sample *Khosara Khosara* or to use its music with different

9  lyrics.

**4.      Defendants Have No Rights to Use *Khosara Khosara* Derived from the 1995 License Between Sout El Phan and EMI Arabia**

12         Defendants claim they had rights to use the composition of *Khosara Khosara*

13  because those rights were obtained from EMI Music Arabia FZE.  They contend

14  EMI Music Arabia FZE possessed those rights by virtue of Exhibit 207, the 1995

15  license agreement between Sout El Phan Co. and EMI Music Arabia FZE.  Separate

16  and apart from the insufficiencies of defendants' license defense described above,

17  for two additional reasons, as a matter of law, defendants cannot have derived any

18  rights they needed to use *Khosara Khosara* from Exhibit 207.

**a.      Exhibit 207 relates solely to sound recordings**

20         "Sound recordings and their underlying compositions are separate works with

21  their own distinct copyrights."  *Newton v. Diamond*, 388 F.3d 1189, 1191 (9th Cir.

22  2004) (citing 17 U.S.C. § 102(a)(2), (7)).  By its express terms, Exhibit 207

23  conveyed rights only to sound recordings, and not to the underlying compositions.

24         Section 2 of Exhibit 207 is titled "GRANT OF RIGHTS."  The nature of the

25  grant is described in section 2(A), which states:

26         (A)   LICENSOR hereby grants by way of license to EMI the sole and
27         exclusive right throughout the Territory to exploit each and every
           *sound recording* from the Catalogue during the term as hereinafter
28         appears, such right to comprise the following:-

Exhibit 207-0005 (emphasis added). That paragraph is then followed by eight sub-paragraphs. Thus, each of subsections 2(A)(i) through 2(A)(viii) of Exhibit 207 is necessarily limited by section 2(A). In other words, section 2(A) defines the nature of the grant; subsections 2(A)(i) through 2(A)(viii) then itemize the individual rights that flow from what is granted in 2(A). The subsections that follow 2(A) cannot grant rights that are different in nature than the grant in 2(A), because, by the document's express terms, they are all just subparts of 2(A).

This plain reading of the document is confirmed by the sequence of the subsections that follow the grant in section 2(A). The first subsection of section 2(A) states that the grant includes "the sole and exclusive right to manufacture and have manufactured *Records* of *sound recordings* comprising the Catalogue" (section 2(A)(i)). Exhibit 207-0005 (emphasis added). The subsections that follow, 2(A)(ii) through 2(A)(viii), all refer back to "Records" – which, as both 2(A)(i) and 2(A) make clear, encompass rights only to sound recordings, and not to compositions.[2]

Defendants' witness, Mr. Ancliff, testified that the word "publish" in subsection 2(A)(viii) means that the license conveyed composition rights as opposed to sound recording rights. Tr. 10/15/15 AM 36:7-11. As a matter of law, the interpretation proposed by Mr. Ancliff fails for three reasons. First, as shown by its express terms, Exhibit 207 says it is about sound recordings; it says nothing about composition rights. Second, under English law (which governs Exhibit 207, see *id*. at 207-0013), words are to be given their plain meanings when interpreting contracts. *See Wells Fargo Bank, N.A. v. Amer. Home Mortgage Inv. Corp.*, 2008 WL 4753342 (Bankr. D. Del. Oct. 30, 2008), at *4. Suggesting that "publish" refers to composition rights bears no resemblance to the word's plain meaning. Third, in

---

[2] Subsections 2(A)(ii), (iii), (v), (vi), (vii), and (viii) all specifically use the word "Records." Exhibit 207-0005 – 0006. Subsection 2(A)(iv) uses the term "Album," which Exhibit 207 defines as "a Record having on it not less than 40 minutes of playing time." Exhibit 207-0003.

1   any event, even if "publish" might refer to composition rights in certain

2   circumstances, it cannot have done so in Exhibit 207 – because, as shown, the

3   structure of section 2 of the license agreement precludes that meaning in the context

4   of this agreement.  If a right was not granted in section 2(A), it cannot have been

5   granted by subsection 2(A)(viii); the agreement's terms dictate that 2(A)(viii) can

6   only be a component of, but cannot add to, what is granted in section 2(A).

7          As shown above, plaintiff has a valid copyright in *Khosara*'s composition,

8   and it is the rights in the composition that are claimed to be infringed.  As a matter

9   of law, defendants got no rights in the composition from Exhibit 207.

10                  **b.**      **The grant of rights in Exhibit 207 expired in 2007**

11         Even if Exhibit 207 had ever granted defendants any rights to use the

12  composition of *Khosara Khosara*, under any circumstances, those rights expired in

13  2007.  The license agreement between Sout El Phan and EMI Music Arabia is dated

14  December 11, 1995.  Exhibit 207-0003.  It granted rights only "during the Term,"

15  *id*. at 207-0005, and "Term" is defined to mean "the period commencing on the date

16  of this agreement on the date falling 10 (ten) years and 6 (six) months later," *id*. at

17  207-0004.  The license was amended to extend its term to 11 years and 6 months,

18  and to specify that the license expired on June 10, 2007.  Exhibit 162-0001.

19  Although Mr. Ancliff noted that the license agreement contains a  provision, section

20  9(b), under which the parties might negotiate an extension, Tr. 10/15/15 AM 37:9-

21  23, neither he nor any other witness suggested that the term of the license had

22  actually been extended.  On the contrary, Ancliff testified only that Sout El Phan

23  and its successors had not taken the position that the relationship had ended, Tr.

24  10/15/15 AM 39:14-17 – but since section 9(b), the extension provision, states that

25  the agreement would expire absent renewal, Tr. 10/15/15 AM 37:9-23, the license

26  lapsed by its own terms, and no action was required by Sout El Phan or anyone else

27  to terminate it.  It is undisputed that defendants have made uses of *Big Pimpin'* that

28

post-date June 10, 2007.  Therefore, those uses cannot be authorized by the Sout El Phan-EMI license.

Finally, while defendants submitted into evidence additional agreements between a company called "Arab Audio" and EMI Music Arabia, those agreements are inadequate because there is no evidence that Arab Audio owned any of the rights it purported to convey.  Moreover, the first "Arab Audio" agreement in evidence begins in August 2008; therefore, there is at least a gap in the chain of title between June 10, 2007 and August 2008.

**E.**     **As a Matter of Law, Defendants' Use of *Khosara Khosara* Is Not "Fair Use"**

Defendants contended that their use of *Khosara Khosara* is permissible "fair use."  The evidence, however, demonstrates that defendants utterly failed to prove the factors required to establish the affirmative defense of "fair use."  The factors considered in determining whether the use made of *Khosara Khosara* in *Big Pimpin'* was fair are:

1.    the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes;

2.    the nature of the copyrighted work;

3.    the amount and substantiality of the portion used in relation to the copyrighted work as a whole; [and]

4.    the effect of the use upon the potential market for or value of the copyrighted work[.]

Ninth Cir. Model Jury Instruction No. 17.18.  In light of the evidence, no reasonable jury could apply this analysis and conclude that defendants are entitled to the "fair use" defense.

**1.     The purpose and character of the use**

Defendants made use of *Khosara Khosara* for commercial purposes.  There is no evidence to suggest that defendants used *Khosara Khosara* for "criticism," "comment," "news reporting," "teaching," "scholarship," or "research" – the classic

non-commercial uses identified by the Ninth Circuit in its Model Jury Instruction
No. 17.18.  (Indeed, defendants' proposed jury instruction on "fair use" omitted
altogether the sentence listing those non-commercial purposes, conceding that
defendants do not even claim the use is non-commercial.)  Nor can defendants
disguise the commercial nature of the use by claiming their use of *Khosara Khosara*
in *Big Pimpin'* was "transformative," as Dr. Ferrara asserted, Tr. 10/16/15 AM 61:9-
12.  Defendants took a catchy segment of someone else's song and used it as a
catchy segment of their song.  That is not a purpose "distinct from the purpose of the
original material" sufficient to change the fundamentally commercial nature of
defendants' use.  *See Elvis Presley Enters. v. Passport Video*, 349 F.3d 622, 629
(9th Cir. 2003).  This factor cannot support a claim of "fair use."

### 2.     The nature of the copyrighted work

The copyrighted work, *Khosara Khosara*, is a song.  It is by its nature
creative, and the evidence at trial established that it was the product of creativity and
originality by its author.  Tr. 10/14/15 AM 11:13-18.  Where, as here, a copyrighted
work is creative in nature, that cuts against a fair use finding on the second factor.
*A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1016 (9th Cir. 2001).  Whereas
uses of works that are functional, utilitarian, informational, or factual may, by the
nature of those works, be likelier to be "fair," *see Los Angeles News Serv. v. KCAL-
TV Channel 9*, 108 F.3d 1119, 1122 (9th Cir. 1997); *Sega Enters. Ltd. v. Accolade,
Inc.*, 977 F.2d 1510, 1524 (9th Cir. 1992), *Khosara Khosara*  is none of those
things.  It has also had only limited publication in the United States, weighing even
more heavily against a finding of "fair use." *See Harper & Row, Publishers, Inc. v.
Nation Enters.*, 471 U.S. 539, 564 (1985).  This factor cannot support a claim of
"fair use."

### 3.     The amount and substantiality of the portion used in relation to the copyrighted work as a whole

The third "fair use" factor considers whether a substantial part or the "heart"

of the plaintiff's work was taken.  *See Harper & Row*, 471 U.S. at 564-66.  Here,
Dr. Marcus's testimony established that the portion of *Khosara Khosara* taken by
defendants and used in *Big Pimpin'* was the unique and dramatic instrumental
introduction that is "the hook of the song," the component that draws in the
listener's attention and engagement and makes it instantly recognizable.  Tr.
10/14/15 AM 27:21-28:7.  Thus, defendants took the heart of plaintiff's copyrighted
work, and then used it as the defining melodic component of the entire song,
repeating the first four measures of Hamdy's musical composition more than 35
times throughout *Big Pimpin'*.  Tr. 10/14/15 AM 18:19-19:7, 19:19-20:14.

> [T]he fact that a substantial portion of the infringing work was copied
> verbatim is evidence of the qualitative value of the copied material,
> both to the originator and to the plagiarist who seeks to profit from
> marketing someone else's copyrighted expression.

*Harper & Row*, 471 U.S. at 565.  "In view of the expressive value of the excerpts
[used] and their key role in the infringing work," this factor cannot support a finding
of "fair use."  *Id*. at 566.

### 4.   The effect of the use upon the potential market for or value of the copyrighted work

Defendants sampled Khosara Khosara in a song that is one of Jay-Z's greatest
hits.  In the United States, *Big Pimpin'* has stolen the identity of *Khosara Khosara*.
When people hear the opening of *Khosara Khosara*, they think *Big Pimpin'*, not
*Khosara Khosara*.  Thus, the defendants' infringement has severely limited the
potential market for, or value of, *Khosara Khosara* in the U.S.  That is true both as
to *Khosara Khosara* in its original form as to *Khosara Kho*sara in a derivative form,
such as a sample in music other than *Big Pimpin'*.  *See Campbell v. Acuff-Rose
Music, Inc.*, 510 U.S. 569, 590-91 (1994).

//

//

//

1  **IV.**    **CONCLUSION**

2          For all the foregoing reasons, judgment as a matter of law that defendants

3  infringed plaintiff's copyright in *Khosara Khosara* should be entered in favor of

4  plaintiff.

5

6  Dated:  October 20, 2015                BROWNE GEORGE ROSS LLP

7                                                          Peter W. Ross
                                                          Keith J. Wesley

8                                                          Jonathan L. Gottfried

9                                              By    ____/s/ Keith J. Wesley_____

10                                                         Keith J. Wesley

11                                              Attorneys for Plaintiff Osama Ahmed Fahmy

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFF'S MOTION FOR JUDGMENT AS A MATTER OF LAW PURSUANT TO FED. R. CIV. P. 50(A)