UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**  'O'  JS-6

| Case No. | 2:07-cv-05715-CAS(PJWx) | Date | October 21, 2015 |
|---|---|---|---|
| Title | OSAMA AHMED FAHMY V. JAY-Z, ET AL. | | |

| Present: The Honorable | CHRISTINA A. SNYDER | |
|---|---|---|
| Catherine Jeang | Not Present | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |
| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: | |
| Not Present | Not Present | |

**Proceedings:**   (IN CHAMBERS) - DEFENDANTS' MOTION FOR JUDGMENT AS A MATTER OF LAW

PLAINTIFF'S MOTION FOR JUDGMENT AS A MATTER OF LAW

## I.   INTRODUCTION

On August 31, 2007, plaintiff Osama Ahmed Fahmy ("plaintiff") filed suit against defendants Jay-Z, (aka Shawn Carter) ("Jay-Z"), Timothy Mosley ("Mosley"), Kyambo Joshua, Rob Bourdon, Brad Delson, Mike Shinoda, Dave Farrell, Joseph Hahn, Chester Bennington, Big Bad Mr. Hahn Music, Chesterchaz Publishing, EMI Blackwood Music Inc., EMI Publishing Ltd., Kenji Kobayashi Music, Lil Lulu Publishing, Machine Shop Recordings LLC, Marcy Projects Productions II, MTV Networks Enterprises Inc., Nondisclosure Agreement Music, Paramount Home Entertainment Inc., Paramount Pictures Corporation, Radical Media, Rob Bourdon Music, Roc-A-Fella Records LLC, Timbaland Productions Inc., UMG Recordings Inc., Universal Music and Video Distribution Inc., and Warner Music Inc., alleging various claims of copyright infringement.  Dkt. 1.  In brief, plaintiff alleges that the song *Big Pimpin'* ("*Big Pimpin'*") infringes his rights in the song *Khosara, Khosara* ("*Khosara*").

The jury trial commenced on October 13, 2015, and the first phase of a bifurcated trial concluded on October 20, 2015.  On October 20, 2015 defendants filed a motion pursuant to Federal Rules of Civil Procedure 50 and 52 for judgment as a matter of law regarding, among other issues, whether plaintiff has standing to bring the instant suit.  Dkt. 701.  The same day, plaintiff filed his own motion pursuant to Federal Rule of Civil Procedure 50 for judgment as a matter of law regarding his ownership of the *Khosara*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**  'O'  JS-6

| Case No. | 2:07-cv-05715-CAS(PJWx) | Date | October 21, 2015 |
|---|---|---|---|
| Title | OSAMA AHMED FAHMY V. JAY-Z, ET AL. | | |

copyright and several of defendants' affirmative defenses to plaintiff's claim for copyright infringement.[1]  Dkt. 705.  Having carefully considered the parties' arguments, the Court finds and concludes as follows.

## II. BACKGROUND

Plaintiff is an heir of Baligh Hamdi ("Hamdi"), a composer, famous in Egypt, who co-authored the song *Khosara* in or about 1957.  Compl. ¶ 8.  Plaintiff alleges that in approximately 1999, defendants Jay-Z and Mosley authored and recorded *Big Pimpin'*, wherein Jay-Z sings rap lyrics over a recording of *Khosara*.  Id. ¶¶ 3, 12.  Uses of this song and related derivative works form the basis of plaintiff's infringement claims.

Defendants assert that they held a license to use portions of *Khosara* in *Big Pimpin'*, and that this license derives from rights originally granted by Hamdi to an Egyptian recording company named Sout el Phan.  Defs.' Memorandum of Contentions of Fact and Law, at 12.  The Court has previously explained that the "relevant documents to determine the chain of title" for defendants' license defense include: (1) a 1968 agreement between Hamdi and "Sout el Phan," through which some rights in *Khosara* were originally transferred; (2) an August 1995 agreement between plaintiff and Sout el Phan, "through which Hamdi's heirs confirmed the continuing viability of the rights transferred through the 1968 agreement"; (3) a December 1995 agreement through which Sout el Phan transferred some exclusive rights in *Khosara* to a company called "EMI Music Arabia" ("EMI Arabia"); and (4) a March 2001 settlement agreement in which

---

[1] On September 24, 2015, the Court granted defendants request to bifurcate the liability and damages portions of the trial.  Dkt. 626.  The Court determined that at the conclusion of the liability phase of the trial it would make findings regarding several questions of law, particularly: (1) whether plaintiff has standing to bring the instant suit in light of a 2002 agreement in which defendants assert plaintiff assigned all of his economic rights in *Khosara*; and (2) whether defendants held a license to use *Khosara* in *Big Pimpin'*.  As the liability phase of the trial has now concluded, the Court hereby addresses these questions of law.  Plaintiff and defendants' motions are brought pursuant to Federal Rules of Civil Procedure 50 and 52; however, to the extent rules 50 and 52 are inapplicable, the Court has made findings pursuant to its duty to adjudicate the legal questions, and particularly the questions of foreign law, presented in this case.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**   'O'   JS-6

| Case No. | 2:07-cv-05715-CAS(PJWx) | Date | October 21, 2015 |
|---|---|---|---|
| Title | OSAMA AHMED FAHMY V. JAY-Z, ET AL. | | |

EMI Arabia granted Mosley the right to exploit *Big Pimpin'* "in perpetuity, throughout the world . . . free and clear of any claim" by EMI Arabia.[2] Dkt. 509, at 3. Plaintiff does not dispute that either he or Hamdi granted at least some rights in *Khosara* to Sout el Phan. See generally, Tr. of Hearing, Oct. 20, 2015. Rather, he contends that these rights cover only the right to make sound recordings of *Khosara* and not the right to make derivative works using *Khosara* such as *Big Pimpin'*. Id. Plaintiff argues that the 1968 and 1995 Agreements by their own terms did not transfer the right to make derivative works and that, in any event, under Egyptian law the right to make derivative works is an inalienable moral right reserved to the author of a work or his heirs. Id.

Sometime around 2001, control of Sout el Phan's musical catalog passed from Sout el Phan to another Egyptian entity called Alam el Phan. Dkt. 509, at 3 n.2. Independent of the agreements in defendants' purported chain of title, in 2002 plaintiff signed an agreement with Mohsen Mohammed Jaber ("Jaber"), who owns Alam el Phan, entitled "Authorization to Print, Publish, Sell, and Circulate" (the "2002 Agreement"). Trial Ex. 210. This agreement reads, in relevant part:

> I, Osama Ahmed Fahm[y] [plaintiff] . . . in person and in my capacity as the representative of the heirs of the late [Baligh Hamdi] hereby assign to Mr. Mohsen Mohammad Jaber . . . and to whoever he selects, the right to print, publish and use the music of the songs stated in this statement [including *Khosara, Khosara*] on all currently known audio and/or visual of videos, performances, records, cassette tapes, and cartridges in addition to all the modern technological and digital means such as the internet, telephones, satellites, or any other means that may be invented in the future including musical re-segmentation and alteration methods while maintaining the original segment of the music. This authorization grants Mr. Mohsen Mohammad Jaber solely/or to whoever he selects, the right to publish and sell these songs using all the means available in all parts of the world. I do hereby approve, by signing this authorization to pledge not to dispose

---

[2]The Court hereinafter refers to these agreements, respectively, as (1) the "1968 Agreement," (2) the "1995 Agreement," (3) the "Sout el Phan/EMI Arabia Agreement," and (4) the "2001 Settlement Agreement."

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | **CIVIL MINUTES - GENERAL** | | 'O'   JS-6 |
|---|---|---|---|
| Case No. | 2:07-cv-05715-CAS(PJWx) | Date | October 21, 2015 |
| Title | OSAMA AHMED FAHMY V. JAY-Z, ET AL. | | |

once again of this music, or republish, sell, or present them to any other individual, company, authority, or institution.

I do hereby further state that by signing this authorization and waiver of these pieces of music to Mr. Mohsen Mohammad Jaber, I would have authorized him solely and/or whoever he selects, fully, and irrevocably the right to use this music in whatever way he deems necessary.  Mr. Mohsen Mohammad Jaber or his successors are solely the owners of the financial usage rights stated in the [Egyptian] Law. No. 82 FOR THE YEAR 2002, for the pieces of music listed hereinafter in the Arab Republic of Egypt and the whole world, and the use includes all the usage means and methods whether those currently available or those that will be inventedd [sic] in the future and whether it was audio, visual or audiovisual including the new digital and technology means during the whole legal protection period specified by the law. . . .

Mr. Mohsen Mohammad Jaber and his successor become the sole publisher of the melodies of these songs in all the current publishing means and in any way he deems whether it was direct or indirect. Mr. Mohsen Mohammad Jaber also has the right to transfer all these rights or some of them or dispose them to another company or institution using any trademark he selects. . . . .

I did also fully assign to Mr. Mohsen Mohammad Jaber all our rights clarified in the contract 2/12/1968 between Sout El Phan Company and the musician Mr. Baleegh Hamdi, or any other contracts and/or rights pertaining to those pieces of music.  As such, signing on this document is considered as a final quittance from any of our dues from Sout El Phan, and Mr. Mohsen Mohammad Jaber, and his succesor, has the right to request and receive any financial dues relevant to this music from any party . . .

[Plaintiff] received the amount of 115,000 (only one hundred fifteen thousand Egyptian Pounds) for this waiver and declaration while

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES - GENERAL | | 'O' JS-6 |
|---|---|---|---|
| Case No. | 2:07-cv-05715-CAS(PJWx) | Date | October 21, 2015 |
| Title | OSAMA AHMED FAHMY V. JAY-Z, ET AL. | | |

>   maintaining our rights in respect of the public performance and
>   mechanical printing.

Id. Defendants argue that this agreement constitutes a full and complete assignment of all of plaintiff's rights in the copyright for the *Khosara* musical composition. Dkt. 701, at 9-10. Accordingly, defendants contend that by virtue of this agreement, plaintiff lacks standing to bring a claim for infringement of the *Khosara* copyright against defendants. Id. Plaintiff, on the other hand, has testified that the purpose of this agreement was simply to "authorize the same rights that had been authorized originally from Baligh Hamdi to Sout El Phan . . . because of the sale of Sout el Phan" to Alam el Phan. Dkt. 685, Fahmy Deposition, at 206:25–207:7.

### III. LEGAL STANDARD

Judgment as a matter of law is appropriate when "a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue. . . ." Fed. R. Civ. P. 50(a)(1); see also Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 139, 149 (2000). It is well-settled that the standard for judgment as a matter of law is the same as the standard for summary judgment. Reeves, 530 U.S. at 150 (citing Anderson v. Liberty Lobby, Inc., 447 U.S. 242, 250–52 (1986)). Summary judgment is appropriate where "there is no genuine issue as to any material fact" and "the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

In a motion for summary judgment, a court must review the record "taken as a whole." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). Similarly, in entertaining a motion for judgment as a matter of law, the court should review all of the evidence in the record. Reeves, 530 U.S. at 150. In so doing, however, the court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence. Id. (citations omitted); see also Berry v. Bunnell, 39 F.3d 1056, 1057 (9th Cir.1994). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." Anderson, 447 U.S. at 255. Thus, although the court should review the record as a whole, it must disregard all evidence favorable to the moving party that the jury is not required to believe. Reeves, 530 U.S. at 151 (citing 9A Wright & Miller, Federal Practice and Procedure § 2529 at 299 (2d ed.1995)). In other

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**     'O'   JS-6

| Case No. | 2:07-cv-05715-CAS(PJWx) | Date | October 21, 2015 |
|---|---|---|---|
| Title | OSAMA AHMED FAHMY V. JAY-Z, ET AL. | | |

words, the court should give credence to the evidence favoring the nonmovant as well as that "evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that that evidence comes from disinterested witnesses." Reeves, 530 U.S. at 151 (citing Wright & Miller, supra, at 300).

## IV. ANALYSIS

Under the Copyright Act, only "[t]he legal or beneficial owner of an exclusive right under a copyright is entitled . . . to institute an action for any infringement of that particular right committed while he or she is the owner of it." 17 U.S.C. § 501(b). The Court has made two prior rulings that are crucial to determining whether plaintiff has standing under the Copyright Act. First, in an order dated April 29, 2011, the Court found that "[t]o the extent that plaintiff[] request[s] that the Court determine whether defendants' use of *Khosara, Khosara* violated plaintiff's moral rights in the work by making changes that might be considered 'mutilation or distortion' of the original work, the Court agrees with defendants that the claim does not arise under U.S. copyright law." Dkt. 271, at 13, n.8. Second, in an order dated December 9, 2011, the Court granted defendants' motion for partial summary judgment on various statute of limitations issues. Dkt. 309, at 16. The Court found that because plaintiff could not prove a basis for equitably tolling the Copyright Act's three-year statute of limitations, he was barred from recovering damages from any alleged infringement preceding August 31, 2004.[3] Dkt. 309 at 4-10.

Accordingly, in order to have standing to bring the instant action, plaintiff must establish that, after August 31, 2004, he retained rights, other than moral rights, in the *Khosara* musical composition and that defendants infringed those particular rights. In other words, if in 2002 plaintiff transferred to Jaber all of his non-moral rights in the

---

[3] In later orders, the Court also found that portions of plaintiffs' claims were barred by the equitable defense of laches. Dkt. 380, 386. However, the Court subsequently vacated those findings after the Supreme Court held in Petrella v. Metro-Goldwyn-Mayer, Inc., 134 S. Ct. 1962, 1967 (2014), that "[l]aches cannot be invoked to preclude adjudication of a claim for damages brought within the three-year window" of the Copyright Act's statute of limitations. Dkt. 418.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES - GENERAL | | 'O'   JS-6 |
|---|---|---|---|
| Case No. | 2:07-cv-05715-CAS(PJWx) | Date | October 21, 2015 |
| Title | OSAMA AHMED FAHMY V. JAY-Z, ET AL. | | |

*Khosara* musical composition, or at a minimum the rights he alleges defendants infringed, lacks standing to bring this suit.

### A. The Process for Determining Foreign Law

The 2002 Agreement purports to transfer rights under Egyptian copyright law. Therefore, to assess whether plaintiff has standing to bring the instant suit the Court must apply Egyptian law to determine the scope of the conveyance of rights in the 2002 Agreement.

Federal Rule of Civil Procedure 44.1 sets out the procedure by which a federal court applies foreign law. Rule 44.1 provides:

> A party who intends to raise an issue about a foreign country's law must give notice by a pleading or other writing. In determining foreign law, the court may consider any relevant material or source, including testimony, whether or not submitted by a party or admissible under the Federal Rules of Evidence. The court's determination must be treated as a ruling on a question of law.

"[E]xpert testimony accompanied by extracts from foreign legal materials has been and will likely continue to be the basic mode of proving foreign law." Universe Sales Co., Ltd. v. Silver Castle, Ltd., 182 F.3d 1036, 1038 (9th Cir. 1999). Although it is permissible under Rule 44.1 for a court to engage in its own research to determine the content of foreign law, "it is neither novel nor remarkable for a court to accept the uncontradicted testimony of an expert to establish the relevant foreign law." Id. at 1038; but see Trans Chem. Ltd. v. China Nat'l Mach. Import & Export Corp., 161 F.3d 314, 319 (5th Cir. 1998) ("[F]ederal judges may reject even the uncontradicted conclusions of an expert witness and reach their own decisions on the basis of independent examination of foreign legal authorities."). Here, both plaintiff and defendants have submitted testimony and declarations from experts on Egyptian copyright law as well as the texts of the current and former copyright laws of Egypt. The Court has reviewed and relies on these materials in reaching its ruling.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES - GENERAL | | 'O' JS-6 |
|---|---|---|---|
| Case No. | 2:07-cv-05715-CAS(PJWx) | Date | October 21, 2015 |
| Title | OSAMA AHMED FAHMY V. JAY-Z, ET AL. | | |

### B. Moral Rights Versus Economic Rights under Egyptian Law

"Certain countries of the world have long recognized rights personal to authors, and as such viable separate and apart from the economic aspect of copyright." Nimmer on Copyright § 8D.01 (2013). These rights are commonly referred to as "moral rights." While economic rights generally protect the author's right to profit from her work, moral rights protect the authors' personal or moral interests in the work. See H.R. Rep. No. 101-514, 101st Cong., 2d Sess. 16, at 22 (1990) ("Moral rights claims go to creators' reputations, not to rights of economic exploitation."). The rationale for protecting an author's moral interests is "the presumed intimate bond between authors and their works" and the notion that an author's work is "almost universally understood to be an extension of the author's personhood." Cyril P. Rigamonti, *Deconstructing Moral Rights*, 47 Harv. Int'l L.J. 353, 355-56 (2006). In countries that recognize moral rights, those rights exist "independently of the artists' economic interest in his work." Kelley v. Chicago Park Dist., 635 F.3d 290, 296 (7th Cir. 2011). Accordingly, an artist may transfer all of their economic rights in a work while still maintaining moral rights. See Nimmer on Copyright § 8D.01 (2013) ("The[] separate viability of [moral rights] is such that a full transfer of copyright may suffice for all economic purposes, but may exert no impact on the assertion of [moral rights] claims.").

Under Egyptian law, an author holds both moral and economic rights in her work. Article 143 of Egyptian Law No. 82 of 2002 ("Article 143") governs the treatment of moral rights under Egyptian law. Trial Tr., Testimony of Walid Abu Farhat, 47: 18-19 ("This is the article [Article 143] that give[s] the definition and enumerate[s] the moral rights in Egypt."). Pursuant to Article 143:

> The author and his universal successor shall enjoy over the work perpetual imprescriptible and inalienable moral rights. Such rights shall include the following:
>
> 1. The right to make the work available to the public for the first time;
>
> 2. The right to claim authorship;

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**  'O'  JS-6

| Case No. | 2:07-cv-05715-CAS(PJWx) | Date | October 21, 2015 |
|---|---|---|---|
| Title | OSAMA AHMED FAHMY V. JAY-Z, ET AL. | | |

> 3. The right to prevent any modification considered by the author as distortion or mutilation of the work. Modification in the course of translation shall not be considered as an infringement unless the translator fails to indicate deletion or changes or if he causes prejudice to the reputation and status of the author.

Thus, Egyptian law recognizes three moral rights, including the right to prevent modifications of the work considered by the author to be a mutilation or distortion of her work. Moreover, these rights are deemed to be "perpetual," "imprescriptable," and "inalienable." If an author's moral rights are violated, she has the right to object in an Egyptian Court and her remedy is in the nature of an injunction. Trial Tr., Testimony of Walid Abu Farhat, 49: 3-15. At trial, defendants' Egyptian law expert, Walid Abu Farhat ("Farhat"), explained this concept:

> Q: [If] somebody uses [your copyright] in a way that violates your moral rights under Article 143, what is your recourse? What do you do?
>
> A: It's not that he uses the right in a way that violates my moral rights. He uses the rights and I am not listed. I have the right **to go into Egypt before an Egyptian court** and ask it to enforce my — right to be recognized as the original author or I have the right **to go in Egypt** if I think that the new work mutilates my original work, I have the right to go and ask the court ant to — and to object before court the use of such right.
>
> Q: To get an injunction of some sort?
>
> A: Yes.

Id. (emphasis added).[4]

---

[4] Farhat has been a licensed attorney for over twenty years. Trial Tr., Testimony of Walid Abu Farhat, 33:20, 34:8-13. He practices law throughout the Middle East and his work frequently concerns Egyptian intellectual property and copyright law, including as

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**     'O'    JS-6

| Case No. | 2:07-cv-05715-CAS(PJWx) | Date | October 21, 2015 |
|---|---|---|---|
| Title | OSAMA AHMED FAHMY V. JAY-Z, ET AL. | | |

     Economic rights in Egypt, on the other hand, are governed by Article 147 of Egyptian Law No. 82 of 2002 ("Article 147"). See Trial Tr., Testimony of Walid Abu Farhat, 49: 18-19 ("Article 147 is the article that lists in a non-exhaustive manner the economic rights."). Pursuant to Article 147:

> The author and his universal successor shall have the exclusive right to authorise or prevent any form of exploitation of his work, particularly through reproduction, broadcasting, rebroadcasting, public performance, public communication, translation, adaptation, rental, lending or making the work available to the public in any manner, including through computers, internet, information networks, communication networks, and other means.

Unlike moral rights, however, Egyptian law does not treat economic rights as "perpetual," "imprescriptable," and "inalienable." Rather, pursuant to Article 149 of Egyptian Law No. 82 of 2002 ("Article 149"), "[t]he author shall have the right to transfer to a third party all or some of his economic rights stated in [Law No. 82 of 2002]."

     The United States, by and large, does not recognize moral rights. In a recent case, Garcia v. Google, Inc., the Ninth Circuit explained the inapplicability of moral rights in cases arising under United States copyright law:

> Nor is [plaintiff] protected by the benefits found in many European countries, where authors have "moral rights" to control the integrity of their works and to guard against distortion, manipulation, or misappropriation. Except for a limited universe of works of visual art, such as paintings and drawings protected under the Visual Artists

---

those subjects relate to the international music publishing industry. Tr. Ex. 200, Rebuttal Report of Farhat ¶ 1. On numerous occasions he has served as a legal advisor on copyright issues for Egyptian companies, artists, and rightsholders. Id. In addition, Farhat has led seminars and given presentations in connection with the World Intellectual Property Organization and the Intellectual Property Rights Sector of the Arab League. Id.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**     'O'    JS-6

| Case No. | 2:07-cv-05715-CAS(PJWx) | Date | October 21, 2015 |
|---|---|---|---|
| Title | OSAMA AHMED FAHMY V. JAY-Z, ET AL. | | |

Rights Act of 1990, United States copyright law generally does not recognize moral rights.

768 F.3d 733, 746 (9th Cir. 2015) (citations omitted). Accordingly, to the extent defendants have violated any of plaintiff's moral rights, his recourse, as explained by Farhat, is "to go into Egypt before an Egyptian court and ask it to enforce" his moral rights. Trial Tr., Testimony of Walid Abu Farhat, 49: 8-9.

### C. Egyptian Law Recognizes a Transferable Right of Adaptation

Throughout this litigation, and at trial, plaintiff has insisted that, as a matter of Egyptian law, it is not possible to enter into an agreement conveying the right to modify a musical composition. Accordingly, in plaintiff's view, an agreement purporting to convey "all rights" in a musical composition would not convey the right to make changes to the work. Dkt. 705, at 14. In support of this proposition, plaintiff points to the provision of Article 143 which states: "The author and his universal successor shall enjoy over the work perpetual imprescriptible and inalienable moral rights. . . [Including] [t]he right to prevent any modification considered by the author as distortion or mutilation of the work." Dkt. 705, at 13. In addition, plaintiff's expert on Egyptian law, Hossam Loutfi ("Loutfi") testified that, as a matter of Egyptian law, it is not possible "to obtain a license to alter a musical composition."[5] Dkt. 685, Loutfi Deposition, 39:16-17. Therefore, Loutfi contends that none of the agreements at issue in this case, including the 2002 Agreement, could have conveyed the right to make changes to the *Khosara* composition. Id. at 39:3-10, 39:4-60:10.

However, plaintiff's argument improperly conflates moral and economic rights. Plaintiff is correct, and Article 143 clearly states, that under Egyptian law an author has an inalienable moral right to prohibit modifications that he considers to be a mutilitation

---

[5] As explained by plaintiff: "Loutfi, a lifelong Egyptian citizen and resident, teaches copyright at Cairo University and also teaches the subject to judges and lawyers; he has drafted or reviewed approximately 3,000 intellectual property license agreements over his 30-year career; he has written three books on copyright and intellectual property; he has been retained by the Egyptian government to review and draft Egypt's copyright laws; and he has done the same in other Arab countries outside Egypt." Dkt. 705, at 13.

Case 2:07-cv-05715-CAS-PJW   Document 708   Filed 10/21/15   Page 12 of 18   Page ID #:15984

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**  'O'  JS-6

| Case No. | 2:07-cv-05715-CAS(PJWx) | Date | October 21, 2015 |
|---|---|---|---|
| Title | OSAMA AHMED FAHMY V. JAY-Z, ET AL. | | |

or distortion of his work. See Article 143. However, pursuant to Article 147, an author also has an economic right to authorize or prevent "adaptation" of their work. See Article 147. Thus, under Egyptian law an author is vested with both a moral right to prevent "modification" of their work and an economic right to authorize or prevent "adaptation" of their work. These two rights are fundamentally distinct. Whereas the moral right to prevent modification is inalienable, the economic right to authorize or prevent adaptation may be readily transferred by virtue of Article 149. Moreover, and crucially to the issue of plaintiff's standing, because the right to prevent modification of a work is a moral right, it is not enforceable in a suit before this Court.

### D. Whether Plaintiff Has Standing After Entering Into The 2002 Agreement

As already stated, if under the 2002 Agreement plaintiff transferred all of his non-moral rights in *Khosara*, or at a minimum the rights he alleges defendants infringed, he does not have standing to bring the instant suit. In its May 2015 partial summary judgment order, the Court stated that the 2002 Agreement was ambiguous with regard to the scope of the rights transferred. Dkt. 509, at 7 ("The 2002 Agreement contains some language that could support a conclusion that plaintiff transferred all of his economic rights in *Khosara, Khosara*, but the Court finds the contract to be ambiguous on this point, and not properly adjudicated as a matter of law *on the current record*.") (emphasis added). At that time, the Court specifically noted that the lack of expert testimony on the meaning of several ambiguous provisions in the agreement prevented the Court from interpreting the effect of the 2002 Agreement on plaintiff's rights in *Khosara*. Id. However, the testimony presented at trial and the reports of various experts in Egyptian law presented by the parties has clarified many of the ambiguities the Court previously noted.

Defendants contend that under the 2002 Agreement plaintiff assigned all of his economic rights in the *Khosara* musical composition to Jaber and therefore does not have standing to bring the instant copyright infringement suit. Dkt. 701, at 1. As an initial matter, Egyptian law permits the owner of a copyright to make a complete transfer of all of the economic rights in a copyright. Pursuant to Article 149, "[t]he author shall have the right to transfer to a third party *all or some* of his economic rights stated in [the Law No. 82 of 2002]." (emphasis added).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**  'O'  JS-6

| Case No. | 2:07-cv-05715-CAS(PJWx) | Date | October 21, 2015 |
|---|---|---|---|
| Title | OSAMA AHMED FAHMY V. JAY-Z, ET AL. | | |

Here, the 2002 Agreement provides that "[Jaber] or his successors are solely the owners of the **financial usage rights** stated in the Law No. 82 FOR THE YEAR 2002 for the pieces of music [including *Khosara*]." Trial Ex. 210. The Court interprets the phrase "financial usage rights stated in the Law No. 82 FOR THE YEAR 2002" to incorporate all of the economic rights provided for in Article 147 — the economic rights provision of the Egyptian copyright law. See also Colden v. Asmus, 322 F. Supp. 1163, 1165 (S.D. Cal. 1971) ("Where a contract incorporates by reference the contents of another writing, the two documents constitute one agreement and should be read together."). While the agreement does not use the term "economic rights," under Egyptian law the terms "economic rights" and "financial rights" are used interchangeably. Trial Tr., Testimony of Walid Abu Farhat, 51:24-25 ("Q: Are economic rights also called financial rights? [Farhat]: Yes."). Moreover, the phrase "financial usage" closely comports with the language of Article 147 which defines economic rights as the right of "exploitation" of the copyrighted work. See also Oxford English Dictionary Online (2015) ("Exploitation, n.: '*using* for one's own profit' ") (emphasis added). And, apart from Article 147 regarding economic rights, there is no other provision of Law No. 82 of 2002 to which the term "financial usage rights" could reasonably refer. Accordingly, the 2002 Agreement is reasonably construed as an assignment to Jaber of all of the economic rights in the *Khosara* musical composition. These rights include, among others, the exclusive right to authorize or prevent the "reproduction," "broadcasting," "public performance," "*adaptation*," and the making "available to the public in any manner" of the *Khosara* musical composition. Article 147 (emphasis added). Given that plaintiff has disposed of all of the economic rights in *Khosara*, he is not the "legal or beneficial owner of an exclusive right under a copyright." 17 U.S.C. § 504(b).

Plaintiff resists this conclusion. First, plaintiff argues that the 2002 Agreement should be interpreted as merely a renewal of the 1968 and 1995 Agreements. See Dkt. 685, Fahmy Deposition, at 198:1-14. According to plaintiff, the 1995 and 1968 Agreements conveyed merely a license to publish sound recordings of the *Khosara* musical composition. See Dkt. 705, at 14; Tr. of Hearing, Oct. 20, 2015. In support of this argument, plaintiff points to language in the 1995 Agreement conveying "the right to publish and sell these songs [including *Khosara*]" and the absence of any language conveying the right to modify *Khosara*. See id. Plaintiff argues that the 2002 Agreement should similarly be construed as simply conveying a right to publish sound recordings of the *Khosara* musical composition. See id.

Case 2:07-cv-05715-CAS-PJW   Document 708   Filed 10/21/15   Page 14 of 18   Page ID #:15986

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | **CIVIL MINUTES - GENERAL** | | 'O'  JS-6 |
|---|---|---|---|
| Case No. | 2:07-cv-05715-CAS(PJWx) | Date | October 21, 2015 |
| Title | OSAMA AHMED FAHMY V. JAY-Z, ET AL. | | |

However, this interpretation is belied by the plain language of the 2002 Agreement. The first paragraph of the 2002 Agreement provides that plaintiff assigns to Jaber "the right to print, publish, and use the music of the songs [including *Khosara*]." Trial Ex. 210. At first glance this language appears similar to the conveyance in the 1995 Agreement. However, the second paragraph begins "I do hereby *further* state" and then proceeds to convey the rights the Court has interpreted to refer to economic rights under Article 147. Id. (emphasis added). The use of the phrase "I do further state" suggests that plaintiff is making a further conveyance in addition to the conveyance in the first paragraph. Moreover, neither the 1995 or 1968 Agreements contained comparably broad language concerning the potential transfer of economic or financial rights in the *Khosara* musical composition. See Trial Exs. 204, 205.

Finally, the fourth paragraph of the 2002 Agreement states:

> "I did **also** fully assign to Mr. Mohsen Mohammad Jaber **all our rights** clarified in the contract **2/12/1968** between Sout El Phan Company and the musician Mr. Baleegh Hamdi, **or any other contracts and/or rights** pertaining to those pieces of music. As such, signing on this document is considered as a **final quittance from any of our dues from Sout El Phan** . . ."

Trial Ex. 210 (emphasis added). Therefore, in addition to assigning all of the economic rights to *Khosara* in paragraph two, plaintiff also assigned, in paragraph four, any of the rights he may have retained under the 1968 and subsequent agreements with Sout el Phan. If, as plaintiff argues, the 2002 Agreement only transfers the same rights identified in the prior Sout el Phan agreements, it would be entirely inconsistent for the agreement to state that it "also" assigns the rights in the 1968 and subsequent agreements. Accordingly, the Court finds that plaintiff's narrow interpretation of the 2002 Agreement is not supported by the evidence and that the plain language of the agreement indicates that it constitutes a distinct, and likely broader, conveyance of rights than the 1968 and 1995 Agreements.

Next, plaintiff argues that the conveyance is legally deficient because it fails to comply with the requirements of Article 149 for transferring an economic right. Dkt. 621, at 9. Under Egyptian law, "for an assignment or transfer to be valid, it has to fulfill all of the 'imperative rules' contained in Article 149." Makeen F. Makeen, 1 Copyright

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**  'O'  JS-6

| Case No. | 2:07-cv-05715-CAS(PJWx) | Date | October 21, 2015 |
|---|---|---|---|
| Title | OSAMA AHMED FAHMY V. JAY-Z, ET AL. | | |

Throughout the World § 14:29 (2014). These rules require that the transfer be "certified in writing and contain an explicit and detailed indication of each right to be transferred with the extent and purpose of transfer and the duration and place of exploitation." Article 149.

Here, there can be no reasonable dispute that the 2002 Agreement constitutes a writing. Moreover, the agreement appears to comply with the remaining requirements of Article 149. The "extent" of the transfer is defined as "all of the financial usage rights stated in the LAW NO. 82 FOR THE YEAR 2002." Trial Ex. 210. And the "purpose" of the transfer is to grant Jaber and his successors "the right to use the music in whatever way he deems necessary." Id. The "duration" of the agreement is for "the whole legal protection period specified by law" — i.e., the legal duration of the copyright under Egyptian law. Id. And the "place of exploitation" is the "Arab Republic of Egypt and the Whole World." Id.

Plaintiff focuses particularly on the requirement that an assignment of economic rights specifically describe each right to be transferred. Dkt. 621, at 9. Plaintiff argues that this provision precludes a blanket assignment of economic rights such as that contained in the 2002 Agreement. Id. at 10. The Court finds that it would be unreasonable to interpret Egyptian law to require a copyright holder who is purporting to transfer "all" of the economic rights in his copyright to *also* separately identify each economic right to be transferred. First, as defendants argue, if a copyright holder truly intends to transfer "all" economic rights, specifically identifying each right to be transferred would be redundant, if not potentially counterproductive. Dkt. 568, at 9. A list of each of the rights to be transferred, even a comprehensive list, might be used to infer an intent *not* to transfer rights other than those specifically delineated. See id. Moreover, Egyptian law does not provide a comprehensive list of all of the economic rights in a copyright. Article 147, by its own terms, provides only a non-exhaustive list of the economic rights recognized under Egyptian law. See Article 147 ("The author and his universal successor shall have the exclusive right to authorize or prevent any form of exploitation of his work, *particularly through*, reproduction, broadcasting . . .") (emphasis added). See also Makeen F. Makeen, 1 Copyright Throughout the World § 14:19 (2014) ("The legislature, therefore, did not commit a specific number of economic rights. As a result, all the rights, [listed in Article 147], were mentioned as a nonexhaustive list.").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**     'O'    JS-6

| Case No. | 2:07-cv-05715-CAS(PJWx) | Date | October 21, 2015 |
|---|---|---|---|
| Title | OSAMA AHMED FAHMY V. JAY-Z, ET AL. | | |

Given that a comprehensive list of all of the economic rights in a copyright does not exist under Egyptian law, the most effective means, if not the only effective means, for a copyright owner to transfer "all" of his economic rights is to state simply that he is transferring "all" economic rights. Accordingly, the Court reads Article 149 to require that when a copyright holder transfers "some" of the economic rights in a copyright he must specifically delineate each of the rights to be transferred; however, where he seeks to transfer "all" of the rights in a copyright it is sufficient to state merely that he is assigning "all" of his economic rights. This is precisely what plaintiff did in the 2002 Agreement when he assigned the "financial usage rights stated under the Law No. 82 FOR THE YEAR 2002."

Finally, plaintiff argues that, despite defendants' insistence that plaintiff assigned all of his economic rights to Jaber, at least one of the provisions in the 2002 Agreement is inconsistent with this interpretation. Dkt. 621, at 7. Specifically, plaintiff cites a provision in the final clause of the 2002 Agreement which states: "I received the amount of 115,000 [Egyptian Pounds] for this waiver and declaration *while maintaining our rights in respect of the public performance and mechanical printing*." Id. (emphasis added). The Court has previously identified this provision as the "[m]ost inconsistent with a complete transfer of all rights." Dkt. 509, at 7. However, based on testimony elicited at trial, it appears that the phrase "maintaining our rights in respect of the public performance and mechanical printing" refers to the right to receive royalties. Trial Tr., Testimony of Walid Abu Farhat, 65:23-25-66:1-8.[6]

At trial, Farhat, explained that the phrase "maintaining our rights in respect of the public performance and mechanical printing" was translated from the Arabic word *nisbah*. Id. at 66:5. According to Farhat, *nisbah* refers to the right to receive a percentage of the song-writers' royalties associated with a work of music. Id. at 66:6-8.

---

[6] According to plaintiffs, shortly after authoring *Khosara* Baligh Hamdy registered the work with SACERAU, the Egyptian Society of Authors, Composers, and Publishers, a collective rights association similar to organizations in the United States such as BMI or ASCAP. See Dkt. 705, at 4 (citing Trial Ex. 103). When an author registers their work with SACERAU, he and his heirs are generally entitled to receive a percentage of any royalties collected by SACERAU for performances or reproductions of that work. See Dkt. 568, Farhat Decl. ¶ 14

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | **CIVIL MINUTES - GENERAL** | | 'O' JS-6 |
|---|---|---|---|
| Case No. | 2:07-cv-05715-CAS(PJWx) | Date | October 21, 2015 |
| Title | OSAMA AHMED FAHMY V. JAY-Z, ET AL. | | |

Farhat further explained that the right to receive royalties is distinct from any economic rights in a copyright:

> A: . . . So the word used in Arabic is *nisbah*. *Nisbah* is percentage not right and it makes a big difference. He has not reserved rights. He has reserved a percentage from the song writer royalties.
>
> Q: So this doesn't reserve any economic rights that he had transferred; correct?
>
> A: It doesn't reserve, yes.
>
> Q: And it doesn't affect the total assignment that he had just gone through for five or six paragraphs; right?
>
> A: It doesn't affect. It doesn't affect. . . .
>
> Q: He just wants to get his song writer royalties; is that right?
>
> A: He wants to get the song writers royalties that are due to him —

Id. at 66:5-19. Thus, Farhat contends that the retention of royalty rights is not inconsistent with a complete assignment of the economic rights in the *Khosara* copyright.

     This distinction between royalties and economic rights is not unique to Egyptian law. Under the copyright laws of the United States, the right to receive royalties does not arise under copyright law. Rather, it is generally considered to be a contract right distinct from any ownership in the copyright itself. See Yount v. Acuff Rose-Opryland, 103 F.3d 830, 834-35 (9th Cir. 1996) ("[R]oyalty rights reserved in a contract transferring a copyright are a concern of state contract law only and are not a concern of federal law at all."); Hayes v. Carlin Am. Inc., 168 F. Supp. 2d 154, 161-62 (S.D.N.Y. 2001) ("the right to receive royalties is not a copyright interest"). Accordingly, the notion that a copyright holder may assign all of his economic rights in a copyright while maintaining a right to receive royalties is not a foreign one. Therefore, the Court interprets the provision in the final clause of the 2002 Agreement as only a reservation of plaintiff's right to receive

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**  'O'  JS-6

| Case No. | 2:07-cv-05715-CAS(PJWx) | Date | October 21, 2015 |
|---|---|---|---|
| Title | OSAMA AHMED FAHMY V. JAY-Z, ET AL. | | |

royalties. It does not limit the complete assignment of economic rights provided for in the second paragraph of the agreement.[7]

In summary, the 2002 Agreement provides that plaintiff assigns the "financial usage rights as stated in the Law No. 82 OF THE YEAR 2002." As of the signing of that agreement, Jaber was "solely," "fully," and "irrevocably" the owner of all of the economic rights in the *Khosara* musical composition. Of course, plaintiff retains the "moral rights" to the *Khosara* musical composition. As a matter of Egyptian law, no contract could ever purport to assign an artist or his successors' moral rights in a work. However, because plaintiff may only pursue a claim in this court based on infringement of economic rights, he is not the "legal or beneficial owner of an exclusive right under a copyright" for purposes of this suit. Accordingly, plaintiff does not have standing to bring the instant suit for copyright infringement.

## V. CONCLUSION

In accordance with the foregoing the Court finds that plaintiff does not have standing to bring the instant suit and therefore **GRANTS** defendants' motion for judgment as a matter of law. Because the Court finds that plaintiff lacks standing to bring the instant suit, the Court declines to reach plaintiff's motion for judgment as a matter of law.

IT IS SO ORDERED.

|  | 00 : 00 |
|---|---|
| Initials of Preparer | CMJ |

---

[7] In any event, given that under United States law royalties are not viewed as a copyright interest, any claim for royalties to which plaintiff is purportedly entitled would likely arise as a matter of Egyptian contract law. In the present suit plaintiff is only seeking damages under the United States Copyright Act, accordingly his right to receive royalties is not relevant to the issue of his standing to bring the instant suit.